**SMILEY WANG-EKVALL, LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:    714 445-1000
Facsimile:    714 445-1002

Attorneys for Jadelle Jewelry and Diamonds, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>JADELLE JEWELRY AND DIAMONDS, LLC,<br><br>        Putative Debtor. | Case No. 2:20-bk-13530-BR<br><br>Chapter 7<br><br>**PUTATIVE DEBTOR'S MOTION TO DISMISS INVOLUNTARY PETITION AND REQUEST FOR ATTORNEY'S FEES, COSTS, AND DAMAGES; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**[Request for Judicial Notice Filed Concurrently Herewith]**<br><br>**DATE:**    June 9, 2020<br>**TIME:**    10:00 a.m.<br>**CTRM:**   **1668**<br>         **255 E. Temple Street**<br>         **Los Angeles, CA 90012** |

*SMILEY WANG-EKVALL, LLP*
*3200 Park Center Drive, Suite 250*
*Costa Mesa, California 92626*
*Tel 714 445-1000 • Fax 714 445-1002*

2822821.1

1

## *TABLE OF CONTENTS*

2                                                                              *Page*

3   I.      INTRODUCTION ................................................................1

4   II.     BACKGROUND ...............................................................3

5           A.      General Background ............................................3

6           B.      Victor Franco Noval ...........................................3

7                   1.      The Noval Action ...................................3

8                   2.      The Al-Sabah Action Against Noval ............5

9                   3.      The Disputes Regarding Noval's Claim ........6

10          C.      Peter Marco, LLC .............................................7

11                  1.      The Marco Action ..................................7

12                  2.      The Disputes Regarding Marco's Claim .........8

13                  3.      First International Diamond, Inc. ..................9

14                  4.      The Disputes Regarding First International's Claim .................10

15  III.    A Putative Debtor May Contest an Involuntary Petition with a Motion to Dismiss ...........10

16  IV.     The Involuntary Petition Must Be Dismissed Because the Petitioning Creditors'
            Alleged Claims are Subject to Bona Fide Disputes ...........................12

17

18          A.      Whether a Bona Fide Dispute Exists is Determined by an Objective
                    Standard ....................................................12

19          B.      Ninth Circuit Law—A Dispute as to Any Portion of a Claim Disqualifies
                    the Petitioning Creditor ......................................13

20

21  V.      Noval's Alleged Claim is Subject to Bona Fide Disputes ....................14

    VI.     Marco's Alleged Claim is Subject to Bona Fide Disputes ...................16

22

    VII.    First International's Alleged Claim is Subject to a Bona Fide Dispute .............18

23

24  VIII.   THE INVOLUNTARY PETITION MUST BE DISMISSED BECAUSE THE
            PETITIONING CREDITORS FILED THE PETITION IN BAD FAITH ........................19

25  IX.     JADELLE IS ENTITLED TO ATTORNEY'S FEES AND COSTS, AND
            DAMAGES ......................................................22

26

27  X.      CONCLUSION ................................................................24

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ........................................................ 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-557 (2007) ...................................... 10

*Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1186 (9th Cir. 2019)............................ 12, 13, 15

*Fustolo v. 50 Thomas Patton Drive, LLC*, 816 F.3d 1, 10 (1st Cir. 2016)........................... 13

*Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 707 (9th Cir. 2004)................... 19, 21, 22

*In re BDC*, 56 LLC,  330 F.3d 111 (2d Cir. 2003)................................................ 12

*In re Bimini Island Air, Inc., 370 B.R. 408, 413 (Bankr. S.D. Fla. 2007)*......................12

*In re Green Hills Dev. Co.*, 741 F.3d 651, 659, 660 (5th Cir. 2014) ......................... 12, 13

*In re John Richards Homes Bldg. Co.*, 439 F.3d 248 (6th Cir. 2006)............................... 19

*In re Mi La Sul*, 380 B.R. 546 (Bankr. C.D. 2007) ............................................... 19

*In re Mountain Diaries, Inc.*, 372 B.R. 623 (Bankr. S.D.N.Y. 2007) ............................ 19

*In re Reid,* 773 F.2d 945, 946 (7th Cir. 1985) ................................................. 19

*In re Seko Inv., Inc.*, 156 F.3d 1005, 1007-08 (9th Cir. 1998) ................................. 13

*In re Spade*, 269 B.R. 225 (D. Colo. 2001) ..................................................... 19

*In re TPG Troy, LLC*, 492 B.R. 150, 159-60 (Bankr. S.D.N.Y. 2013) .............................. 12

*In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057 (9th Cir. 2001) ............................. 12

*In re Wavelength, Inc.*, 61 B.R. 614 (B.A.P. 9th Cir. 1986) .................................... 19

*In re WLB-RSK Venture*, 296 B.R. 509 (Bankr. C.D.Cal. 2003) ................................. 18, 19

*In the Matter of Smith*, 243 B.R. 169 (Bankr. N.D. Ga. 1999) ................................ 19, 20

*Martinez v. Bally's Louisiana, Inc.*,244 F.3d 474 (5th Cir. 2001)............................... 11

*Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001) .......................................... 10

*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) .................................. 11

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## STATUTES

11 U.S.C. § 105 ................................................................................................ 18

11 U.S.C. § 105(a) ........................................................................................... 18

11 U.S.C. § 303 ..................................................................................... 12, 13, 21

11 U.S.C. § 303(i)(2) ....................................................................................... 18

11 U.S.C. § 305(a)(1) ....................................................................................... 21

11 U.S.C. § 303(b) ........................................................................................... 11

11 U.S.C. § 303(b)(1) ................................................................................. 13, 18

California Business & Professions Code § 17200 ............................................. 7

## OTHER AUTHORITIES

*Bankruptcy Evidence Manual* § 801.22 (2009-2010 ed., vol. 2). ................... 11

Miller and Star, Cal. Real Estate § 37.42 (4th ed.) ......................................... 15

## RULES

Fed. R. Bankr. P. 1011 ...................................................................................... 3

Fed. R. Bankr. P. 1011(b) ............................................................................... 10

Fed. R. Bankr. P. 9006(f) ................................................................................. 3

Federal Rule of Civil Procedure ("Rule") 12 ....................................... 10, 15, 17

Fed. R. Civ. P. 12(b)(6) ................................................................................... 10

Fed. R. Civ. P. 8 .............................................................................................. 10

1    **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

2        Jadelle Jewelry and Diamonds, LLC, the putative debtor ("Jadelle"), hereby submits this

3 *Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs and Damages* (the

4 "Motion") in response to the involuntary petition filed by First International Diamond, Inc., Peter

5 Marco, LLC, and Victor Franco Noval (collectively, the "Petitioning Creditors").  In support of the

6 Motion, Jadelle submits the following memorandum of points and authorities and the concurrently

7 filed Request for Judicial Notice ("RJN").

8

9           **MEMORANDUM OF POINTS AND AUTHORITIES**

10 **I.**     **INTRODUCTION**

11        This case should be dismissed because, under binding Ninth Circuit law, the Petitioning

12 Creditors are not eligible to commence it.

13

14      **A creditor whose claim is the subject of a bona fide dispute as to amount lacks standing to serve as a petitioning creditor under § 303(b)(1) even if a portion of the claim amount is undisputed.**

15

16 *Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1186 (9th Cir. 2019).  A petitioning creditor is

17 ineligible if *any portion* of its claim is subject to a bona fide dispute, even if some amount of the

18 claim is undisputed.  As detailed herein, each Petitioning Creditor's claim is subject to multiple

19 disputes, any single one of which disqualifies the Petitioning Creditor.

20        The Petitioning Creditors' claims are the subject of pending litigation in other forums.

21 Courts hold that the existence of pending, contested litigation is, on its own, evidence that bona

22 fide disputes exist.  Two of the Petitioning Creditors recently commenced suits against Jadelle and

23 it is clear on the face of their complaints that the alleged claims of all three Petitioning Creditors

24 are subject to bona fide disputes as to both amount and liability.  Among other disputes, the

25 Petitioning Creditors take inconsistent positions regarding the amounts of their alleged claims, fail

26 to account for payments received, seek amounts that Jadelle simply does not owe as a matter of

27 law, and allege unspecified damages "*to be proven at trial*" that have yet to be quantified or

28 adjudicated.  Moreover, two Petitioning Creditors are seeking to collect, in part, the *very same*

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  *claim.*  In short, numerous disputes exist and no amount of mud that the Petitioning Creditors will

2  inevitably sling at Jadelle will change this fact.

3      The Petitioning Creditors carry the heavy burden of demonstrating the absence of a bona

4  fide dispute.  This Court's role is not to resolve the underlying disputes between the parties or to

5  determine the amounts of the alleged claims.  Rather, the Court is to confirm only that "legitimate

6  disputes" exist.  The Petitioning Creditors simply cannot satisfy their high burden of

7  demonstrating that their claims are not subject to any bona fide disputes of law or fact and as to

8  either liability or amount.

9      The involuntary petition should also be dismissed because it was filed in bad faith and for

10  an improper purpose.  Involuntary cases are to be measures "of last resort" and pursued *after*

11  parties exhaust their state law remedies.  The parties are involved in complex, multi-party

12  litigation currently pending in different forums that is in its earliest stages.  The parties' disputes

13  must first be adjudicated elsewhere, not here.  The Petitioning Creditors, apparently unhappy with

14  the progress in their chosen forums, seek to avoid an adjudication on the merits and leverage the

15  payment of their disputed claims.  This is bad faith.

16      Bad faith warranting dismissal exists for multiple reasons.  The Petitioning Creditors

17  commenced this case with claims that are clearly in dispute, which renders them ineligible.  The

18  Petitioning Creditors are using the bankruptcy process as a litigation and collection tactic to

19  leverage the payment of amounts that Jadelle does not owe.  The pending lawsuits demonstrate

20  that state law remedies exist and have not been exhausted.  The Petitioning Creditors are forum

21  shopping; filing this case shortly after one lawsuit was temporarily stayed pending a hearing on

22  the defendants' motion for a stay on 5th Amendment grounds.  The Petitioning Creditors are

23  attempting to circumvent pending court proceedings and Jadelle's constitutional rights.  This

24  involuntary case is the exact type of filing that the safeguards in the Bankruptcy Code are designed

25  to prevent—creditors with disputed claims are not eligible for the extraordinary relief of pushing a

26  business into bankruptcy against its will.  Bankruptcy courts routinely dismiss involuntary cases

27  under these types of circumstances, and this Court should do so here.

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

MOTION TO DISMISS
INVOLUNTARY PETITION

1   For these reasons and as further detailed below, Jadelle respectfully requests that the Court

2   immediately dismiss the involuntary petition and award Jadelle attorney's fees, costs and

3   compensatory and punitive damages.

4

5   **II.    BACKGROUND**

6       **A.    General Background**

7   Jadelle is a Delaware limited liability company.  Rachel Rechnitz is Jadelle's managing

8   member.  Jona Rechnitz is Rachel's husband.

9   On April 6, 2020, the Petitioning Creditors filed an involuntary chapter 7 petition against

10  Jadelle [Docket No. 1] (the "Involuntary Petition").  Through the Involuntary Petition, the

11  Petitioning Creditors alleged claims against Jadelle under penalty of perjury in the following

12  amounts:

| Name of Petitioner | Claim Amount |
|---|---|
| Victor Franco Noval | $5,800,000 |
| Peter Marco, LLC | $7,676,744 |
| First International Diamond, Inc. | $1,976,225 |

18  (*See* RJN, Ex. 1 at Bates Stamp 7.)

19  A response to the Involuntary Petition is due within 21 days of service, plus three

20  additional days if service was by mail.  *See* Fed. R. Bankr. P. 1011 & 9006(f).  Here, the

21  Petitioning Creditors served the Involuntary Petition via mail, and, as a result, Jadelle's response is

22  due on May 1, 2020.

23      **B.    Victor Franco Noval**

24          **1.    The Noval Action**

25  On February 10, 2020, Victor Franco Noval ("Noval") filed a complaint in the Superior

26  Court of the State of California against Jadelle and five other defendants (the "Noval Action").  A

27  true and correct copy of the complaint filed in the Noval Action is attached to the RJN as Exhibit

28  "2" (the "Noval Complaint").  Noval asserts the following causes of action against the defendants:

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   (1) fraud; (2) civil theft; (3) breach of contract; and (4) conspiracy to commit theft, fraud, and

2   fraud by concealment.  (*See* RJN, Ex. 2 at Bates Stamps 29-32.)  Despite listing his claim in the

3   amount of $5.8 million in the Involuntary Petition, in the Noval Complaint, Noval requests

4   damages "in an amount to be proven at trial, but at least $7,000,000," including compensatory

5   damages, treble damages, attorneys' fees, costs of suit, and punitive damages.  (*See id.* at Bates

6   Stamp 30, ¶ 69, and Bates Stamp 33.)  Noval also seeks a constructive trust concerning certain

7   property and the appointment of a receiver.  (*See id.*)

8         In the Noval Complaint, Noval alleges that Jadelle owes him a debt pursuant to a Debt

9   Acknowledgment, Promissory Note and Security Agreement, which is attached to the Noval

10  Complaint as Exhibit "A" (the "Noval Agreement").  (*See* RJN, Ex. 2 at Bates Stamp 32, ¶ 76.)

11  According to the Noval Agreement, Noval loaned Jadelle $2.85 million at 9% interest *per annum*.

12  (*See id.* at Bates Stamp 37.)  The Noval Agreement provides that the monthly interest-only

13  payments were to begin on April 1, 2019 and the maturity date for each installment was six

14  months after such installment was advanced.  (*See id.*)  The Noval Agreement states that the $2.85

15  million loan is secured by unspecified jewelry and a pledge of a 2012 Bugatti vehicle valued at

16  $400,000.  (*See id.* at Bates Stamps 37-38.)  According to the Noval Complaint, the $7,000,000 in

17  purported damages constitutes the value of collateral given to Noval for the loans in the Noval

18  Agreement.  (*See id.* at Bates Stamp 24, ¶ 29.)

19        Noval alleges that "[t]he original principal amount in the Debt Agreement is $2,850,000 at

20  9% interest per month, however, the total debt owed by Defendants later increased to $5,800,000."

21  (*See* RJN, Ex. 2 at Bates Stamp 22, ¶ 15.)  However, nowhere in the Noval Complaint does Noval

22  specify how he calculated the alleged debt of $5.8 million.  (*See generally, id.* at Bates Stamps 18-

23  33.)  Noval does not explain the nature or terms of the amounts in excess of the loans set forth in

24  the Noval Agreement other than to say that the debt grew after a series of further advance

25  transactions.  (*See id.* at Bates Stamps 22, ¶ 15 & 23, ¶ 17.)  In the Noval Complaint, Noval

26  concedes that the Bugatti vehicle was liquidated and alleges that the proceeds were credited

27  against the principal debt in the amount of $400,000.  (*See id.* at ¶ 18.)

28

1    Noval asserts that he filed the Noval Complaint not because he expects to recover

2    anything, but because he wants to encourage criminal proceedings against the defendants.  (*See,*

3    *e.g.*, RJN, Ex. 2 at Bates Stamp 27, ¶ 49, "At this point, Plaintiff has no realistic belief that

4    Rechnitz will ever pay him back . . . ."; *see also id.* at Bates Stamp 29, ¶ 53, "Plaintiff is hopeful

5    that the publication of this action will cause more victims . . . to report these matters to proper

6    authorities.")

7                    **2.    The Temporary Stay of the Noval Action**

8    On March 10, 2020, the court in the Noval Action entered an order temporarily staying the

9    case pending the hearing on the defendants' motion for a stay of proceedings.  (*See* RJN Ex. 4,

10    Minute Order, at Bates Stamp 56.)  The Defendants sought a stay to protect their constitutional

11    rights because, as set forth in the Noval Complaint, Noval seeks to encourage criminal

12    proceedings and there is now an ongoing criminal investigation.  The hearing on the motion for

13    stay of proceedings is currently set for November 3, 2020.  (*See* RJN Ex. 3, Noval Action Docket,

14    at Bates Stamp 53.)  The time to respond to the Noval Complaint has not yet passed as of the date

15    of this filing.

16                    **3.    The Al-Sabah Action Against Noval**

17    On November 25, 2019, Khaled J. Al-Sabah and Jarrah Khaled Al-Sabah (the "Al-

18    Sabahs") commenced an action in the Superior Court of the State of California against Noval and

19    other defendants (the "Al-Sabah Action").  On April 6, 2020, the Al-Sabah Plaintiffs filed a

20    motion for leave to file a first amended complaint (the "Proposed Al-Sabah First Amended

21    Complaint").   A true and correct copy of relevant excerpts of the Proposed Al-Sabah First

22    Amended Complaint is attached to the RJN as Exhibit "5."

23    Through the Proposed Al-Sabah First Amended Complaint, the Al-Sabahs seek leave to

24    add Jadelle and others as defendants to the Al-Sabah Action.  (*See* RJN, Ex. 5 at Bates Stamp 66.)

25    The primary thrust of the Al-Sabah Action is that Noval's father, Victorino Noval ("Victorino"),

26    and Noval defrauded the Al-Sabahs out of $163 million.  (*See id.* at Bates Stamp 69, ¶ 346.)  In

27    the proposed twenty-eighth cause of action, the Al-Sabahs allege that the monies loaned by Noval

28    to Jadelle and referenced in the Noval Agreement were the monies wrongfully obtained by

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

1  Victorino and Noval from the Al-Sabahs.  (*See id.* at Bates Stamp 68, ¶ 339.)  Moreover, the Al-

2  Sabahs argue that monies loaned by Noval to Jadelle are property of the Al-Sabahs, and not

3  Noval.  (*See id.* at Bates Stamps 69-70, ¶ 347.)  A few of the relevant allegations are as follows:

4       •    "Khaled . . . alleges, that each and every dollar that the Jadelle Entities borrowed

5             from Victorino and Franco pursuant to the written agreement was funded by the

6             above referenced monies belonging to Khaled which have been wrongly and

7             illegally obtained by Victorino, Franco and the other conspiring Defendants. . . ."

8             (*Id.* at Bates Stamp 68, ¶ 339.)

9       •    "Khaled is further informed and believes that the original principal amount

10             borrowed by the Jadelle Entities was $2,850,000, that the loan was secured by

11             $7,000,000 worth of diamonds delivered to Franco and Victorino, as well as a 2012

12             Bugatti, and that after a series of transactions, the debt on the loan grew to

13             $5,800,000."  (*Id.* at Bates Stamp 68, ¶ 340.)

14       •    "Khaled disputes Franco's and Victorino's claim for damages in the Rechnitz

15             Lawsuit, while any damages Franco and Victorino attempt to recover from the

16             Rechnitz Defendants in the Rechnitz Lawsuit . . . are the legal possession of

17             Khaled."  (*Id.* at Bates Stamp 69-70, ¶ 347.)

18          **4.**    **The Disputes Regarding Noval's Claim**

19      As further detailed and analyzed below, the disputes concerning Noval's claim include the

20  following:

21      1.    Noval seeks damages that are disputed and have yet to be quantified or proven (*e.g.*

22          according to Noval, at least $7 million to be proven at trial plus additional

23          amounts);

24      2.    Jadelle made re-payments to Noval that are not reflected in his claim;

25      3.    Noval's claim has not been reduced by the $400,000 he received on account of the

26          Bugatti;

27      4.    Noval has not explained how he calculated the alleged amount of $5,800,000;

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

5.      Noval has not demonstrated the terms of amounts in excess of the Noval

Agreement and that such amounts are now due;

6.      Noval is charging usurious interest; and

7.      The Al-Sabahs assert that any amounts allegedly owed by Jadelle to Noval is their

property.

**C.      Peter Marco, LLC**

        **1.      The Marco Action**

On March 18, 2020, David Rovinsky Inc. ("Rovinsky") filed a complaint against Peter

Marco LLC ("Marco") and Peter Voutsas in the United States District Court for the Central

District of California asserting the following causes of action: (1) negligence; (2) conversion; (3)

fraud; (4) negligent misrepresentation; (5) civil theft; and (6) aiding and abetting conversion and

civil theft (the "Marco Action").  Rovinsky seeks damages of $1.13 million.  (*See* RJN, Ex. 7 at

Bates Stamp 93, ¶ 21.)

On April 24, 2020, *seven days after the Involuntary Petition was filed*, Marco filed an

amended third party complaint (the "Marco Complaint") against Jona Rechnitz, Rachel Rechnitz,

and Levin Prado (collectively, the "Marco Complaint Defendants").  A true copy of the Marco

Complaint is attached to the RJN as Exhibit "7."  Marco asserts the following causes of action: (1)

fraud; (2) civil theft; (3) embezzlement; (4) civil conspiracy to commit theft, fraud, and fraud by

concealment; (5) conversion; (6) breach of contract; (7) breach of the implied covenant of good

faith and fair dealing; (8) account stated; and (9) unethical business practices in violation of

California Business & Professions Code § 17200.  (*See* RJN, Ex. 7 at Bates Stamps 117-128.)

Despite listing his claim in the amount of $7,676,744 in the Involuntary Petition, in the Marco

Complaint, Marco requests damages of $6,950,444.40 but subject to proof at trial, including

compensatory damages, treble damages, attorneys' fees, costs of suit, and punitive damages.  (*See*

*id.* at Bates Stamp 117, ¶ 90.)

Marco did not name Jadelle as a defendant in the Marco Complaint.  (*See id.* at Bates

Stamp 89.)  Marco alleges that he excluded Jadelle due to the automatic stay and that he intends to

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    pursue his disputed litigation claims against Jadelle before this Court  (*See id.* at Bates Stamp 91, ¶

2    10.)

3         Marco alleges that he consigned jewelry to Jona Rechnitz and that Mr. Rechnitz absconded

4    with the consigned jewelry.  (*See generally, id.* at Bates Stamps 119-120, ¶ 103, alleging that

5    "Jona swindled Marco . . . by absconding with Marco's Consigned Jewelry. . . .")  Specifically,

6    Marco alleges that he consigned sixteen pieces of jewelry *to Mr. Rechnitz*, **not Jadelle**, and he

7    includes a table listing the stated values in the total amount of $6,950,444.40.  (*See id.* at Bates

8    Stamp 99, ¶ 33, "Accordingly, Marco LLC consigned the following pieces of Consigned Jewelry

9    *to Rechnitz*." (emphasis added); *see also id.* at Bates Stamp 100, ¶ 35, "Marco LLC consigned

10   Rovinsky's Ring & Necklace *to Rechnitz*." (emphasis added); *id.* at Bates Stamp 118, ¶ 95, "***Jona***

11   ***and Third-Party Defendants*** have obtained and received property from Marco, the $6,950,444.40

12   of Consigned Jewelry. . . ." (emphasis added).)  Marco also admits that Marco asserted the wrong

13   claim amount in the Involuntary Petition:  "The petitioning creditors are . . . Peter Marco, LLC,

14   with Trade Debt/Damages of $7,676,744.00 (**The correct amount is $6,950,444.40**)."  (*See id.* at

15   Bates Stamp 91, ¶ 9.)

16        The time to respond to the Marco Complaint has not yet passed as of the date of this filing.

17   A true copy of the docket in the Marco Action is attached to the RJN as Exhibit "8."

**2.      The Disputes Regarding Marco's Claim**

19        As further detailed and analyzed below, the disputes concerning Marco's claim include the

20   following:

21   1.      According to Marco, Marco consigned jewelry to Mr. Rechnitz, as opposed to

22          Jadelle;

23   2.      Marco seeks damages that that are disputed and have yet to be quantified or proven

24          (*e.g.* according to Marco, an amount to be proven at trial, but at least

25          $6,950,444.40, plus additional amounts, such as punitive damages, interest and

26          attorney's fees);

27   3.      Marco and the third petitioning creditor, First International Diamond, Inc. ("First

28          International") are pursuing Jadelle, in part, for the same exact claim;

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

MOTION TO DISMISS
INVOLUNTARY PETITION

4. Marco's list of items allegedly consigned are subject to multiple disputes, including, without limitation, on the basis that certain items were never consigned or received and memos to the contrary appear to have been fabricated, certain items were provided to customers with Marco's knowledge and permission and are still with those customers, and the stated values asserted by Marco for certain consigned items are incorrect;

5. Marco was previously paid by Jadelle for one particular item; and

6. For the items owned by Rovinsky, Marco seeks to collect amounts in excess of the damages sought by Rovinsky.

### 3. <u>First International Diamond, Inc.</u>

First International alleged a claim for $1,976,225. First International has not commenced any litigation against Jadelle for this claim and it is not entirely clear how First International calculated its claim. However, Jadelle disputes that First International is owed the amount in the Involuntary Petition. It is Jadelle's understanding that First International's claim arises from three different consigned sets of jewelry:

First, Marco's alleged claim includes a stone owned by First International at the stated value of $1,333,695.00. (*See* RJN, Ex. 7 at Bates Stamp 100, lines 9-10.) However, Jadelle understands that First International's claim is primarily based on the consignment of this same stone with a stated value of $1,200,000. Marco and First International are attempting to collect, in part, on the same claim and this claim is already the subject of the pending Marco Action. This is a fact that both Petitioning Creditors must recognize.

Second, First International consigned three rings and a bracelet with a stated collective value of approximately $1,000,000. Jadelle understands that First International later reacquired the items from a third party for $300,000.

Third, First International consigned a stone with a stated value of $950,000. Jadelle understands that First International later paid $440,000 to reacquire the stone, *plus* purchase other jewelry, which was owned by another party and not First International.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**4.    The Disputes Regarding First International's Claim**

As further detailed and analyzed below, the disputes concerning First International's claim include the following:

1.    It is not entirely clear how First International calculated its claim based on the items discussed above;

2.    First International and Marco are pursuing Jadelle, in part, for the same exact claim and any alleged damage arising from that claim is subject to proof and in dispute;

3.    First International seems to assert a claim based on the stated value for certain items, as opposed to the actual cost that First International paid to reacquire those items; and

4.    First International's claim should not include amounts that it paid to acquire jewelry that did not belong to it, and Jadelle should be credited for the value of those items.

## III.    A PUTATIVE DEBTOR MAY CONTEST AN INVOLUNTARY PETITION WITH A RULE 12 MOTION TO DISMISS

Pursuant to the Federal Rules of Bankruptcy Procedure, an alleged debtor may answer and contest an involuntary petition in the manner prescribed by Federal Rule of Civil Procedure ("Rule") 12.  *See* Fed. R. Bank. P. 1011(b).  Rule 12 provides for the service of an answer or the filing of several dispositive motions, including motions to dismiss pursuant to Rule 12(b).

Rule 12(b)(6) tests the legal sufficiency of the averments in the complaint—here, the involuntary petition.  A complaint shall be dismissed when it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  This occurs when a plaintiff's complaint fails to provide grounds for his or her entitlement to relief.  *See* Fed. R. Civ. P. 8; *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-557 (2007).  A plaintiff must allege sufficient facts to support a cognizable legal theory.  *See Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001).

In evaluating the sufficiency of a complaint, the United States Supreme Court employs a two-pronged approach.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  First, the Supreme Court identifies and then disregards any legal conclusions as they are not entitled to an assumption of

1   truth. *See id.* at 678 & 680-81.  Mere "labels and conclusions" and/or "formulaic recitation[s] of

2   the elements of a cause of action" will not suffice to overcome a motion to dismiss.  *See Twombly*,

3   550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of

4   action, supported by mere conclusory statements, do not suffice.").  Second, the Supreme Court

5   evaluates whether the non-conclusory factual allegations support a plausible entitlement to relief.

6   *See Iqbal* at 681.  "A claim has facial plausibility when the plaintiff pleads factual content that

7   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

8   alleged." *Id.* at 678 (internal citations omitted). "Factual allegations must be enough to raise a

9   right to relief above the speculative level. . . ." *Twombly*, 550 U.S. at 555.

10      In deciding a motion to dismiss, a court may consider certain documents as part of the

11   complaint.  A court may consider "documents attached to the complaint, documents incorporated

12   by reference in the complaint, or matters of judicial notice. . . ." *See United States v. Ritchie*, 342

13   F.3d 903, 908 (9th Cir. 2003).  "Even if a document is not attached to a complaint, it may be

14   incorporated by reference into a complaint if the plaintiff refers extensively to the document or the

15   document forms the basis of the plaintiff's claim." *Id.*

16      Factual assertions in pleadings are "judicial admissions binding on the party who made

17   them." *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).  Judicial

18   admissions "have the effect of withdrawing a fact from issue and dispensing wholly with the need

19   for proof of the fact." *Id.*  Also, unlike ordinary evidentiary admissions, judicial admissions

20   cannot be refuted with evidence or otherwise.  In sum, a judicial admission is conclusive, binding,

21   and may not be controverted or explained by the party who made it. *See Lacelaw Corp.*, 861 F.2d

22   at 226; *see also Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476-77 (5th Cir. 2001); Hon.

23   Barry Russell, *Bankruptcy Evidence Manual* § 801.22 (2009-2010 ed., vol. 2).

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**IV.**   **THE INVOLUNTARY PETITION MUST BE DISMISSED BECAUSE THE PETITIONING CREDITORS' ALLEGED CLAIMS ARE SUBJECT TO BONA FIDE DISPUTES**

Here, the case must be dismissed for multiples reasons, including, but not limited to, the fact that the Petitioning Creditors are not eligible to commence this case as required by 11 U.S.C. § 303(b).[1]

Section 303(b) of the Bankruptcy Code provides that:

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> (1) by three or more entities, *each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount,* or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $16,750 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $16,750 of such claims.

11 U.S.C. § 303(b) (emphasis added).

**A.**   **Whether a Bona Fide Dispute Exists is Determined by an Objective Standard**

A claim is subject to a bona fide dispute if "there is an objective basis for either a factual or legal dispute as to the validity of the debt." *See In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1064 (9th Cir. 2001). Importantly, in the Ninth Circuit, "[a] bankruptcy court is not asked to evaluate the potential outcome of a dispute, but merely to determine whether there are facts that give rise to a *legitimate disagreement* over whether money is owed, or, in certain cases, how much." *See id.* (emphasis added); *see also In re BDC*, 56 LLC  330 F.3d 111, 117-18 (2d Cir. 2003) ("The legislative history makes it clear that Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is

---

[1]   For purposes of this Motion, Jadelle has focused on certain disputes concerning the claims of the Petitioning Creditors. However, Jadelle also disputes other elements the Petitioning Creditors must prove for the entry of an order for relief.

1   factual or legal. Congress plainly did not intend to require a debtor to pay a legitimately disputed

2   debt simply to avoid the stigma of bankruptcy.") "[T]he burden is on the petitioning creditors to

3   show that no bona fide dispute exists." *See In re Vortex Fishing Systems, Inc.*, 277 F.3d at 1064;

4   *In re Bimini Island Air, Inc.*, 370 B.R. 408, 413 (Bankr. S.D. Fla. 2007).

5   **"Bankruptcy courts routinely consider the existence and character of pending but**

6   **unresolved litigation as evidence of a bona fide dispute."** *In re Green Hills Dev. Co.*, *L.L.C.*,

7   741 F.3d 651, 659 (5th Cir. 2014); *see also In re TPG Troy, LLC*, 492 B.R. 150, 159-60 (Bankr.

8   S.D.N.Y. 2013), *subsequently aff'd*, 793 F.3d 228 (2d Cir. 2015) (stating that courts have held that

9   the existence of pending litigation strongly suggests the existence of a bona fide dispute).

10   **B.**   **Ninth Circuit Law—A Dispute as to Any Portion of a Claim Disqualifies the**

11   **Petitioning Creditor**

12   The Ninth Circuit made clear that a dispute as to any portion of a claim disqualifies the

13   petitioning creditor.  In *Blixseth,* the Ninth Circuit held unequivocally as follows:

14   A creditor whose claim is the subject of a bona fide dispute as to

15   amount lacks standing to serve as a petitioning creditor under
     § 303(b)(1) *even if a portion of the claim amount is undisputed*."

16   *Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1186 (9th Cir. 2019) (emphasis added); *see also*

17   *Fustolo v. 50 Thomas Patton Drive, LLC*, 816 F.3d 1, 10 (1st Cir. 2016); *In re Green Hills Dev.*

18   *Co.*, 741 F.3d 651, 660 (5th Cir. 2014).

19   The Ninth Circuit specifically rejected the argument that a creditor with a partially

20   undisputed claim should not be disqualified as a petitioning creditor.  *See Blixseth*, 942 F.3d at

21   1186-87.  The Ninth Circuit emphasized that creditors should not be permitted to use any

22   concession or undisputed portion to leverage the collection of the disputed amount.  *See id.* at

23   1186-87; *see also In re Seko Inv., Inc.*, 156 F.3d 1005, 1007-08 (9th Cir. 1998) (Section 303(b)(1)

24   "aim[s] to prevent creditors from using the threat of an involuntary petition to bully an alleged

25   debtor into settling a speculative or validly disputed debt.").

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## V.    THE PETITIONING CREDITORS' CLAIMS ARE SUBJECT TO MULTIPLE DISPUTES

The Petitioning Creditors have not and cannot satisfy their high burden of demonstrating that their claims are not subject to bona fide disputes as to fact or law and as to either liability or amount. While many disputes exist, the disputes demonstrated by pleadings subject to judicial notice are sufficient to disqualify each of the Petitioning Creditors. Moreover, as discussed above, the existence of pending litigation, in and of itself, is evidence of bona fide disputes.

### A.    Noval's Alleged Claim is Subject to Bona Fide Disputes

Noval's alleged $5.8 million claim is subject to several bona fide disputes. Each dispute on its own disqualifies Noval as a petitioning creditor.

First, Noval has not yet quantified or proven his alleged damages. The Noval Complaint is a judicial admission that the amount of Noval's alleged claim is subject to a bona fide dispute. According to Noval, his claim is uncertain and has yet to be stated, liquidated and quantified. Noval seeks damages to "be proven at trial. . . ." (*See, e.g.*, RJN, Ex. 2 at Bates Stamp 30, ¶ 60.) In addition, Noval seeks other types of unquantified damages, such as treble damages, attorney's fees, costs of suit, and punitive damages. (*See id.* at Bates Stamp 33.) By Noval's own admission, Noval's entitlement to damages and the amounts he ultimately seeks *have yet to be proven* (and over Jadelle's defense).

Second, as a matter of law, Noval is not entitled to $7 million. Under no circumstances would Noval be paid this sum. As set forth in the Noval Complaint, the unspecified jewelry was *collateral*. (*See id.* at Bates Stamp 24, ¶ 60.) Like any other lender, at most, Noval is owed the amounts loaned, plus the agreed to interest (subject to the other disputes herein). A lender is not entitled to the surplus from any collateral in excess of the amounts needed to pay the loan. Rather, any surplus is returned to the borrower. Thus, for this reason, Noval's asserted claim of $7 million is subject to bona fide dispute.

Third, Noval has filed conflicting statements under penalty of perjury regarding the amount of his claim. According to the (verified) Noval Complaint, Noval asserts that his claim is *at least* $7 million. (*See, e.g.*, RJN, Ex. 2 at Bates Stamp 30, ¶ 60; *see also id.* at Bates Stamp 35.)

1  However, the Involuntary Petition, which is signed under penalty of perjury, states he is owed

2  only $5.8 million.  These conflicting admissions prove that that amount of Noval's claim is in bona

3  fide dispute.

4      Noval's apparent attempt to sidestep disputes concerning his claim by listing a different,

5  lower amount in the Involuntary Petition does not render him eligible.  Noval is taking

6  inconsistent positions in two different forums.  Noval's complaint proves that, on the one hand, he

7  is trying to recover at least $7 million, plus more in the Noval Action, while, on the other hand, he

8  attempts to force Jadelle into bankruptcy by representing he has a much lower claim.  However,

9  Noval cannot avoid Ninth Circuit precedent.  The Ninth Circuit's decision in *Blixseth* prevents this

10  type of maneuver.  The fact remains that Noval's claim is in bona fide dispute.  Contrary to the

11  Involuntary Petition, Noval is not asserting a claim of only $5.8 million, but of millions more.

12  Besides, as explained herein, Jadelle disputes that Noval is owed even $5.8 million.

13      Fourth, Noval's claim is disputed because it does not account for payments made by

14  Jadelle.  In the Noval Complaint, Noval claims that he liquidated the Bugatti vehicle, received

15  proceeds of $400,000, and applied the proceeds against the debt allegedly owed.  (*See* RJN, Ex. 2

16  at Bates Stamp 23, ¶ 18.)  Yet, it appears that neither the Involuntary Petition nor the Noval

17  Complaint actually reflect a $400,000 reduction to Noval's claim.  This is in addition to payments

18  made by Jadelle.  Thus, from the Noval Complaint alone, there are legitimate, bona fide disputes

19  over the amount of Noval's claim against Jadelle.

20      Fifth, Noval has not substantiated the amount and terms of his claim.  To the extent Noval

21  asserts that he is owed $5.8 million, he has not explained how he calculated that sum.  The Noval

22  Agreement reflects loans totaling only $2.85 million and the terms of repayment for *those loans*.

23  (*See* RJN, Ex. 2 at Bates Stamp 37.)  Noval's assertion that the maturity dates for advances in

24  excess of the amounts set forth in the Noval Agreement are reflected in the Noval Agreement is

25  directly contradicted by the terms of that agreement.  (*Compare id.* at Bates Stamp 22, ¶ 15 & 23,

26  ¶ 17; *with id.* at Bates Stamp 37, § 3, stating the maturity date is based on the date of each advance

27  set forth in § 1.)  Noval has not demonstrated the terms of amounts in excess of the Noval

28  Agreement or demonstrated that such amounts are currently due.  In addition to disputes

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

MOTION TO DISMISS
INVOLUNTARY PETITION

1  concerning the amounts subject to the Noval Agreement, Jadelle disputes that any amounts in

2  excess of the Noval Agreement are due.

3      Sixth, Noval is charging usurious interest.  Noval claims to be charging "9% interest *per*

4  *month*[.]"  (*See* RJN, Ex. 2 at Bates Stamp 22, ¶ 15 (emphasis added).)  However, the Noval

5  Agreement specifies that the interest on the loans reflected in the agreement are to accrue interest

6  at 9% *per annum* (paid monthly).  (*See id.* at Bates Stamp 37, § 2.)  Noval's usurious interest

7  creates a host of remedies and disputes.  A borrower charged usurious rates can bring an action for

8  money paid, can recover penalty damages, can cancel future interest, and can have payments

9  applied to principal.  *See, e.g.*, Miller and Star, Cal. Real Estate § 37.42 (4th ed.) (detailing various

10  remedies).

11      Seventh, the Al-Sabah Action complicates matters further and casts Noval's claim into

12  further dispute.  As demonstrated by their complaint, the Al-Sabahs allege that amounts loaned to

13  Jadelle by Noval belong to them.  (*See* RJN, Ex. 5 at Bates Stamp 69-70, ¶ 347.)  Thus, according

14  to the Al-Sabahs, they should be paid and not Noval, and Noval has no claim against Jadelle at all.

15  (*See id.* at Bates Stamp 69-70 ¶ 347, "Khaled disputes Franco's and Victorino's claim for damages

16  in the Rechnitz Lawsuit. . . .")

17      For all of these reasons, Noval's claim is subject to multiple bona fide disputes.  The

18  majority of these disputes are demonstrated by Noval's own words in his complaint, which is

19  subject to judicial notice and is appropriate to consider on a Rule 12 motion to dismiss.

20  Accordingly, Noval is not eligible to commence the petition.

**B.**      **Marco's Alleged Claim is Subject to Bona Fide Disputes**

22      Marco's alleged claim for $7,676,744 against Jadelle is subject to bona fide disputes as to

23  both liability and amount.  Each dispute on its own disqualifies Marco as a petitioning creditor.

24      First, the Marco Complaint is a judicial admission that the amount of Marco's claim in the

25  Involuntary Petition is incorrect and, as such, is subject to a bona fide dispute.  Marco admits that

26  the amount of the $7,676,744 claim that Marco alleges in the Involuntary Petition is incorrect.

27  (*See* RJN, Ex. 7 at Bates Stamp 91,  ¶ 9, "The petitioning creditors are . . . Peter Marco, LLC, with

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

16                                  MOTION TO DISMISS
                                                                                       INVOLUNTARY PETITION

1  Trade Debt/Damages of $7,676,744.00 (**The correct amount is $6,950,444.40**).)"  Despite

2  knowledge of this material error, Marco has not attempted to correct it.

3       Second, Marco is taking inconsistent positions across different forums with respect to *who*

4  he consigned jewelry to.  Marco cannot have it both ways.  Marco cannot allege that he consigned

5  items to Mr. Rechnitz to bolster his action against Mr. Rechnitz in district court, then

6  simultaneously assert the same claim against Jadelle to pursue the Involuntary Petition.  In the

7  Marco Action, Marco is separately trying to collect the same debt from Mr. Rechnitz (not Jadelle)

8  based on goods that Marco alleges were consigned to Mr. Rechnitz (not Jadelle).  In the Marco

9  Complaint, Marco repeatedly states that he consigned jewelry to Mr. Rechnitz:

10    •   "Accordingly, Marco LLC consigned the following pieces of Consigned Jewelry ***to***

11        ***Rechnitz***." (RJN, Ex. 7 at Bates Stamp 99, ¶ 33, (emphasis added).)

12    •   "Marco LLC consigned Rovinsky's Ring & Necklace ***to Rechnitz***."  (*Id.* at Bates

13        Stamp 100, ¶ 35 (emphasis added).)

14    •   "***Jona and Third-Party Defendants*** have obtained and received property from

15        Marco, the $6,950,444.40 of Consigned Jewelry . . . ." (*Id.* at Bates Stamp 118, ¶ 95

16        (emphasis added).)

17       Third, Marco is taking inconsistent positions with respect to the amount of his claim.  Like

18  Noval, it appears that Marco is attempting to understate the amount he is seeking to recover.  In

19  the Marco Action, Marco is seeking damages to be proven at trial, but *at least* $6,950,444.40.

20  (*See id.* at Bates Stamp 117, ¶ 90.)  Marco also seeks treble damages, punitive damages, interest,

21  and attorney's fees.  (*See id.* at Bates Stamps 119-120, ¶¶ 98, 104, and 105.)  Therefore, by

22  Marco's own admission, his total claim has yet to be liquidated and quantified, and is subject to

23  proof.  Moreover, to the extent that Marco seeks to recover damages based on the alleged value of

24  consigned items, the amount of damages must be proven at trial.  Like Noval, the nature of

25  Marco's allegations alone also create a number of factual disputes and legal issues to be

26  adjudicated.

27       Fourth, and incredibly, Marco and First International are double-counting the same claim.

28  As reflected in the Marco Complaint, one item was owned by First International and the stated

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    value, according to Marco, is $1,333,695.00.  (*See id.* at Bates Stamp 100, lines 9-10.)  However,

2    Jadelle understands that First International is pursuing that same claim (albeit in the amount of

3    $1,200,000).  Marco and First International cannot dispute that they both are attempting to

4    recover, in part, the same claim, and Jadelle cannot be obligated to pay both.  This fact alone puts

5    the claims of both Marco and First International into bona fide dispute.

6          Fifth, numerous disputes exist with respect to the items allegedly consigned by Marco.

7    Disputes exist as to the terms of consigned items and whether any amount is due on certain items.

8    Disputes exist as to whether particular items included in Marco's claim were consigned and

9    whether memos were fabricated.  Disputes exist as to the stated value of items that were

10   consigned, whether Marco is entitled to be paid the stated value (or some lesser amount), and

11   whether Marco was previously paid on account of other items.  For example, with respect to the

12   items owned by Rovinsky, Marco seeks to recover damages from Jadelle in excess of the amounts

13   asserted by Rovinsky.  (*Compare* RJN, Ex. 7 at Bates 93, ¶ 21; *with id.* at Bates Stamp 99, lines

14   12-13 and 16.)  While a determination regarding the existence of certain of these disputes may not

15   be appropriate in connection with the Motion, Jadelle wants the Court to be aware of the full scope

16   of the disputes with Marco's claim.

17         For all of these reasons, Marco's claim is subject to multiple bona fide dispute.  The

18   majority of these disputes are demonstrated by Marco's own words in his complaint, which is

19   subject to judicial notice and is appropriate to consider on a Rule 12 motion to dismiss.

20   Accordingly, Marco is not eligible to commence the petition.

21         **C.    First International's Alleged Claim is Subject to a Bona Fide Dispute**

22         Jadelle disputes that First International is owed $1,976,225.  It appears that the majority of

23   First International's claim is premised on the same item included in Marco's claim.  (*See* RJN, Ex.

24   7 at Bates Stamp 100, lines 9-10.)  The fact that two Petitioning Creditors (Marco and First

25   International) are knowingly overstating their claims by seeking to collect the same sum, standing

26   alone, creates a bona fide dispute.  Moreover, to the extent that First International is seeking to

27   recover the alleged stated value of consigned items and amounts it paid to purchase jewelry

28   belonging to third parties, First International's claim is subject to bona fide disputes.  First

International's claim should not include amounts that it paid to acquire jewelry that did not belong to it and Jadelle should be credited for the value of those items. Accordingly, First International's claim is subject to bona fide disputes and First International is not eligible to commence the petition.

First International (as well as the other Petitioning Creditors) bear the burden of demonstrating that their claims are not the subject of bona fide disputes. First International has yet to even itemize its claim and it is not entirely clear how First International calculated its claim. Under the Supreme Court decisions in *Twombly* and *Iqbal*, the Petitioning Creditors cannot rely on conclusory statements regarding the amount of their respective claims or that their claims are not subject to bona fide disputes to overcome the Motion.

In sum, each Petitioning Creditor's claim is subject to multiple bona fide disputes. Moreover, the disqualification of any one of the Petitioning Creditors requires dismissal of the Involuntary Petition. Because the Petitioning Creditors are pursuing the Involuntary Petition on the theory that Jadelle had at least twelve creditors as of the petition date, pursuant to § 303(b)(1), the Involuntary Petition requires three eligible petitioning creditors. *See* 11 U.S.C. § 303(b)(1). Accordingly, each of the foregoing disputes requires the case to be dismissed.

## VI.   THE INVOLUNTARY PETITION MUST BE DISMISSED BECAUSE THE PETITIONING CREDITORS FILED THE PETITION IN BAD FAITH

Bankruptcy courts uniformly recognize the authority to dismiss an involuntary case commenced in bad faith. The fact that an involuntary petition can be dismissed is implicit in § 303(i)(2), which authorizes damages against any petitioner that commences a case in bad faith. The bankruptcy courts also have the inherent authority embodied in § 105 to dismiss bad-faith filings. *See In re WLB-RSK Venture*, 296 B.R. 509, 513 (Bankr. C.D. Cal. 2003) ("Since § 303(i)(2) seems to imply that an involuntary petition can be dismissed for bad faith, and numerous cases support the proposition that bankruptcy petitions of any kind should not be employed for improper purposes, § 105(a) would seem to authorize the court to dismiss an involuntary based on a finding of bad faith.").

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    In the Ninth Circuit, the existence of bad faith is a question of fact measured by an

2 objective test.  *See In re Wavelength, Inc.*, 61 B.R. 614, 620 (B.A.P. 9th Cir. 1986).  That is, if a

3 reasonable person would believe that the subject conduct constitutes bad faith, then a finding of

4 bad faith is appropriate.  *See id.*; *see also In re Mi La Sul*, 380 B.R. 546, 557 (Bankr. C.D. Cal.

5 2007).

6    Bad faith typically exists where, as here, the petitioners file the involuntary petition for an

7 improper purpose.  Courts have found that an involuntary petition was filed in bad faith when the

8 petitioning creditor actually knows that it's claim is subject to a bona fide dispute as to liability or

9 amount.  *See In re John Richards Homes Bldg. Co.*, 439 F.3d 248 (6th Cir. 2006) (holding that a

10 petition was filed in bad faith given the overwhelming evidence of a bona fide dispute); *see also In*

11 *re Mountain Diaries, Inc.*, 372 B.R. 623 (Bankr. S.D.N.Y. 2007) (finding that it was untenable

12 that a single petitioning creditor could have filed its claim in good faith when a substantial portion

13 of its claim was subject to legitimate dispute); *Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d

14 701, 707 (9th Cir. 2004) ("Filing an involuntary petition should be a measure of last resort because

15 even if the petition is filed in good-faith, it can chill the alleged debtor's credit and sources of

16 supply, and scare away his customers."); *In re Reid,* 773 F.2d 945, 946 (7th Cir. 1985) ("[T]he

17 filing of an involuntary petition is an extreme remedy with serious consequences to the alleged

18 debtor, such as loss of credit standing, inability to transfer assets and carry on business affairs, and

19 public embarrassment.").

20    Similarly, courts have found bad faith where the petitioners used the involuntary process as

21 a customary collection action prior to exhausting available state law remedies.  *See In re Smith*,

22 243 B.R. 169, 197-98 (Bankr. N.D. Ga. 1999) (dismissing a case commenced by the petitioner

23 after an unfavorable ruling in state court and without exhausting state law remedies).  Bankruptcy

24 courts also routinely dismiss involuntary cases commenced as a litigation tactic to gain an

25 advantage in ongoing litigation or to control the forum of the dispute.  *See, e.g.*, *In re WLB-RSK*

26 *Venture*, 296 B.R. 509, 514 (Bankr. C.D. Cal. 2003) (dismissing an involuntary petition filed "as

27 part of a forum shopping litigation tactic. . . ."); *In re Spade*, 269 B.R. 225, 229 (D. Colo. 2001)

28 (dismissing an involuntary petition filed as "a self-serving litigation tactic to control the forum and

1  enlist a trustee to conduct and pay for discovery into the Debtor's affairs.").  According to the

2  Ninth Circuit, an involuntary case "should be a measure of last resort. . . ."  *See Higgins*, 379 F.3d

3  at  707.

4        The Petitioning Creditors commenced this case in bad faith as follows:

5        The Petitioning Creditors commenced this case despite the fact that their claims are subject

6  to multiple bona fide disputes.  The disputes are self-evident from the Petitioning Creditors' own

7  pleadings, conflicting statements, and the positions they have chosen to take.  The fact that

8  litigation is pending is evidence of bona fide disputes.  Moreover, the Petitioning Creditors seek

9  amounts that, by their own admissions, have yet to be quantified, proven at trial, and adjudicated.

10 The Petitioning Creditors knew or reasonably should have known they were not eligible to

11 commence this case under binding Ninth Circuit law.

12       The Petitioning Creditors are not using the bankruptcy process as a measure of last resort.

13 The Petitioning Creditors have clearly not exhausted available state law remedies.  Rather, as the

14 pending lawsuits unequivocally demonstrate, state law remedies exist and have just begun.

15 Moreover, the Petitioning Creditors who have commenced suits are seeking remedies at odds with

16 bankruptcy, such as constructive trusts on certain property and proceeds for their individual

17 benefits.  The Petitioning Creditors must first exhaust their non-bankruptcy remedies to liquidate

18 their disputed claims.

19       As evidenced by the timing of the filing, the Petitioning Creditors are forum shopping.

20 Two of the Petitioning Creditors initially chose to pursue their respective claims in other, non-

21 bankruptcy forums.  The Involuntary Petition was filed less than one month after the court in the

22 Noval Action, where Noval is seeking the appointment of a receiver over Jadelle, temporarily

23 stayed that case. *See In the Matter of Smith*, 243 B.R. 169, 197-98 (Bankr. N.D. Ga. 1999)

24 (dismissing a case commenced by the petitioner after an unfavorable ruling in state court and

25 without exhausting state law remedies).  Having received an unfavorable decision in his chosen

26 forum, Noval has tried to avoid that decision by pursuing his claim in this Court.

27       The Petitioning Creditors are seeking to circumvent Jadelle's due process and

28 constitutional rights.  Jadelle has not even answered the complaints.  Moreover, Noval's suit has

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 ● Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   been temporarily stayed on 5th Amendment grounds.  Jadelle expects that the Petitioning Creditors

2   may attempt to use the bankruptcy process to seek discovery that would not otherwise be

3   permitted pending the stay ordered in the Noval Action.  The Petitioning Creditors are using

4   bankruptcy as a shortcut to avoid an adjudication on the merits and to leverage the payment of

5   their disputed claims.

6          The Petitioning Creditors' inconsistent positions are further examples of bad faith.  Both

7   Noval and Marco have asserted claims in different amounts in their respective suits than listed in

8   the Involuntary Petition.  Marco and First International are both knowingly seeking to recover, in

9   part, on the same claim.  Marco has taken inconsistent positions regarding who he consigned

10  jewelry to in attempt to collect the same claim from two different people in different forums.

11  Moreover, the Petitioning Creditors have taken these inconsistent positions to gain strategic

12  advantages in the various pending suits.

13         In sum, this is not a matter that belongs in bankruptcy court.  It is a litigation matter, in its

14  early stages and pending in multiple forums amongst many parties (the Petitioning Creditors,

15  Jadelle, and others).  Moreover, the Petitioning Creditors hold disputed claims and thus, are not

16  eligible to commence this case.  This complicated web of disputed claims belongs in civil court

17  (where they are already pending).  Accordingly, the case should be dismissed.

18

19  **VII.    JADELLE IS ENTITLED TO ATTORNEY'S FEES AND COSTS, AND DAMAGES**

20         Pursuant to § 303(i):

21             (i) If the court dismisses a petition under this section other than on
               consent of all petitioners and the debtor, and if the debtor does not
22             waive the right to judgment under this subsection, the court may grant
               judgment—
23
               (1) against the petitioners and in favor of the debtor for—
24             (A) costs; or
               (B) a reasonable attorney's fee; or
25             (2) against any petitioners that filed the petition in bad faith, for—
               (A) any damages proximately caused by such filing; or
26             (B) punitive damages.

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  11 U.S.C. § 303(i).  Bankruptcy courts may award the fees authorized under § 303(i) whether the

2  petition is dismissed under § 303 or via § 305(a)(1).  *See In re Macke Int'l Trade, Inc.*, 370 B.R.

3  236, 248 (B.A.P. 9th Cir. 2012).

4        Whether to award fees pursuant to § 303(i)(1) is determined using a totality of the

5  circumstances test.  *See Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 707 (9th Cir.

6  2004).  However, the Ninth Circuit has made clear that, if an involuntary petition is dismissed, the

7  petitioners *should routinely expect* to pay the putative debtor's attorney's fees and costs.  *See id.*;

8  *see also In re Macke Int'l Trade, Inc.*, 370 B.R. at 249 ("[U]nsuccessful involuntary petitioners

9  should routinely expect to pay the debtor's legal expenses arising from the involuntary filing.").

10  "Thus, when an involuntary petition is dismissed on some ground other than consent of the parties

11  and the debtor has not waived the right to recovery, an involuntary debtor's motion for attorney's

12  fees and costs under § 303(i)(1) raises a rebuttable presumption that reasonable fees and costs are

13  authorized."  *Higgins*, 379 F.3d at 707.  The presumption is intended to remind petitioners that an

14  involuntary case is a "measure of last resort" and to "reinforce the idea that the filing of an

15  involuntary petition should not be undertaken lightly, and will serve to discourage inappropriate

16  and frivolous filings."  *See Higgins*, 379 F.3d at 707 (internal citations and quotation marks

17  omitted).

18        Here, Jadelle is entitled to an award of attorney's fees, costs, and damages.  Dismissal of

19  the case, without more, entitles Jadelle to attorney's fees and costs.  No reason exists to exclude

20  the Petitioning Creditors from the general rule—they did not use bankruptcy as a last resort and

21  should have expected to pay Jadelle's fees.  Moreover, for the reasons discussed above, this case

22  was commenced in bad faith and for an improper purpose when it was clear that the Petitioning

23  Creditors were ineligible to commence the case under binding Ninth Circuit law.  This is the type

24  of bad faith involuntary filing that § 303(i) was designed to prevent.  Accordingly, Jadelle

25  respectfully requests that the Court award it attorney's fees, costs, and damages, subject to proof

26  upon dismissal of the case.

27

28

## VIII.    <u>CONCLUSION</u>

Based on the foregoing, Jadelle respectfully requests that the Court immediately dismiss the involuntary petition, and award Jadelle attorney's fees, costs, and damages, including punitive damages, subject to proof.

Respectfully submitted,

DATED:  May 1, 2020                    SMILEY WANG-EKVALL, LLP


By:    _____*/s/ Robert S. Marticello*_____
            ROBERT S. MARTICELLO
            MICHAEL L. SIMON
            Attorneys for Jadelle Jewelry and Diamonds,
            LLC.

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*): **Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages; and Memorandum of Points and Authorities in Support** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **05/01/2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Baruch C Cohen    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- Neal Salisian    ECF@salisianlee.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **05/01/2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.
<u>Via First Legal:</u>
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 05/01/2020 | Lynnette Garrett | */s/ Lynnette Garrett* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.