1  Daniel A. Lev (CA Bar No. 129622)
     dlev@sulmeyerlaw.com
2  **Sulmeyer**Kupetz
   A Professional Corporation
3  333 South Grand Avenue, Suite 3400
   Los Angeles, California 90071-1406
4  Telephone: 213.626.2311
   Facsimile: 213.629.4520
5
   Attorneys for Petitioning Creditors
6
7  Ronald Richards (CA Bar No. 176246)
     ron@ronaldrichards.com
   Law Offices of Ronald Richards & Associates, APC
8  P.O. Box 11480
   Beverly Hills, California 90213
9  Telephone:  310.556.1001
   Facsimile:  310.277.3325
10
   Attorneys for Victor Franco Noval
11
   Baruch C. Cohen (CA Bar No. 159455)
12    baruchcohen@baruchcohenesq.com
   Law Office of Baruch C. Cohen, APLC
13 4929 Wilshire Boulevard, Suite 940
   Los Angeles, California 90010
14 Telephone:  323.937.4501
   Facsimile: 888.316.6107
15
   Attorneys for Peter Marco, LLC and First International Diamond, Inc.
16
17         **UNITED STATES BANKRUPTCY COURT**

18    **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

19 | In re | Case No. 2:20-bk-13530-BR |

20 | JADELLE JEWELRY AND DIAMONDS, LLC, | Chapter 7 |

21 | | **NOTICE OF MOTION AND PETITIONING CREDITORS' MOTION FOR** |

22 | | **APPOINTMENT OF INTERIM CHAPTER 7 TRUSTEE; MEMORANDUM OF** |

23 | Alleged Debtor. | **POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

24 | | |

25 | | DATE:      June 9, 2020 |
   | | TIME:      10:00 a.m. |
   | | PLACE:    Courtroom "1668" |

26

27

28

DAL 2700916v1

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

VICTOR FRANCO NOVAL; PETER MARCO, LLC; and FIRST INTERNATIONAL DIAMOND, INC.,

Petitioning Creditors,

vs.

JADELLE JEWELRY AND DIAMONDS, LLC,

Alleged Debtor.

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, PLAINTIFF, AND INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that, on June 9, 2020, at 10:00 a.m., Pacific Time, or as soon thereafter as the matter may be heard, in Courtroom "1668" of the above-entitled Court, located at 255 E. Temple Street, Los Angeles, California 90012, before the Honorable Barry Russell, United States Bankruptcy Judge, presiding, petitioning creditors, Victor Franco Noval ("Noval"), Peter Marco, LLC ("Marco"), and First International Diamond, Inc. ("First International" and together with Noval and Marco, the "Petitioning Creditors"), will, and hereby do, respectfully move this Court for the appointment of an interim chapter 7 trustee pursuant to, among other things, 11 U.S.C. § 303(g).

**PLEASE TAKE FURTHER NOTICE** that the Motion is brought on the grounds that Petitioning Creditors believe that the immediate appointment of an interim trustee will prevent the alleged debtor Jadelle Jewelry and Diamonds, LLC (the "Debtor" or "Jadelle"), through its controlling principals and insiders Jona Rechnitz ("Jona") and Rachel Rechnitz ("Rachel" and together with Jona, the "Rechnitz's"), from further dissipating assets of the estate.  As set forth in the Motion and the declarations in support thereof, Petitioning Creditors believe that there is a serious, immediate, and urgent need

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  for the appointment of an interim trustee over the affairs of the Debtor and that such

2  appointment is exigently necessary to preserve the property of, and prevent further loss

3  to, the Debtor's estate.  Thus, any delay in appointment an interim trustee is likely to

4  further jeopardize the estate to the detriment and prejudice of creditors.

5        **PLEASE TAKE FURTHER NOTICE** that the Motion is based on the

6  concurrently filed notice, the Motion, the memorandum of points and authorities and the

7  concurrently filed "Declaration of Peter Marco in Support of Petitioning Creditors' Motion

8  for Appointment of Interim Chapter 7 Trustee," "Declaration of Oved Anter in Support of

9  Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee," "Declaration

10  of Victor Franco Noval in Support of Petitioning Creditors' Motion for Appointment of

11  Interim Chapter 7 Trustee," "Declaration of Ronald Richards in Support of Petitioning

12  Creditors' Motion for Appointment of Interim Chapter 7 Trustee," and "Request for

13  Judicial Notice in Support of Petitioning Creditors' Motion for Appointment of Interim

14  Chapter 7 Trustee" in support thereof, the documents and pleadings on file herein, all

15  judicially noticeable facts, the arguments and representations of counsel, and such other

16  evidence as may be presented prior to or at the scheduled hearing.

17        **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy

18  Rule 9013-1(f), any party opposing the relief requested in the Motion must file and serve

19  a written opposition no later than fourteen (14) days prior to the scheduled hearing on the

20  Motion.

21        **PLEASE TAKE FURTHER NOTICE** that copies of any timely filed

22  opposition must be served upon Petitioning Creditors' counsel of record as set forth on

23  the first page of this Motion.

24               *[Remainder of page intentionally left blank]*

25

26

27

28

1      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy

2    Rule 9013-1(h), the failure to timely file and serve an opposition to the Motion in

3    accordance herewith may be deemed by the Court to be consent to the relief requested

4    in the Motion.

5    DATED: May 19, 2020                          **Sulmeyer**Kupetz
                                                    A Professional Corporation
6

7

8                                                 By: /s/ *Daniel A. Lev*
                                                      Daniel A. Lev
9                                                     Attorneys for Petitioning Creditors

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1

## MOTION

2       Through their "Notice of Motion and Petitioning Creditors' Motion for

3   Appointment of Interim Chapter 7 Trustee; Memorandum of Points and Authorities in

4   Support Thereof" (the "Motion"), petitioning creditors, Victor Franco Noval ("Noval"), Peter

5   Marco, LLC ("Marco"), and First International Diamond, Inc. ("First International" and

6   together with Noval and Marco, the "Petitioning Creditors"), will, and hereby do,

7   respectfully move this Court for the appointment of an interim chapter 7 trustee pursuant

8   to, among other things, 11 U.S.C. § 303(g).  The Motion is brought on the grounds that

9   Petitioning Creditors believe that the immediate appointment of an interim trustee will

10  prevent the alleged debtor Jadelle Jewelry and Diamonds, LLC (the "Debtor" or

11  "Jadelle"), through its controlling principals and insiders Jona Rechnitz ("Jona") and

12  Rachel Rechnitz ("Rachel" and together with Jona, the "Rechnitz's"), from further

13  dissipating assets of the estate.  As set forth herein and in the concurrently filed

14  declarations in support thereof, Petitioning Creditors believe that there is a serious,

15  immediate, and urgent need for the appointment of an interim trustee over the affairs of

16  the Debtor and that such appointment is exigently necessary to preserve the property of,

17  and prevent further loss to, the Debtor's estate.  Thus, any delay in appointment an

18  interim trustee is likely to further jeopardize the estate to the detriment and prejudice of

19  creditors.

20       **WHEREFORE** Petitioning Creditors respectfully request that the Court

21  enter an order:

22       (1)    granting this Motion;

23       (2)    appointing an interim chapter 7 trustee pursuant to 11 U.S.C. §

24              303(g); and

25              *[Remainder of page intentionally left blank]*

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1          (3)    granting such other and further relief as this Court deems just and

2    proper under the circumstances.

3    DATED: May 19, 2020    **Sulmeyer**Kupetz
A Professional Corporation

4

5

6    By: /s/ *Daniel A. Lev*
Daniel A. Lev

7    Attorneys for Petitioning Creditors

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**JURISDICTION AND VENUE**

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in the Motion are 11 U.S.C. §§ 105(a), 303(g), and 701, and Rule 2001 of the Federal Rules of Bankruptcy Procedure.

**II.**

**PREFATORY STATEMENT**

This involuntary chapter 7 case, in combination with the appointment of an interim trustee, is the last hope of creditors who have been abusively defrauded and damaged by the Debtor and its controlling insiders.  These insiders have sacrificed whatever assets the company may have once had in a quest to not only enrich themselves, but the numerous other insiders and parties who have received illicit and improper transfers.  Creditors can no longer endure the insiders' persistent self-dealing, while millions of dollars of precious gems and cash remain unaccounted for.

The appointment of an interim trustee under Section 303(g) of the Code is necessary because having an independent fiduciary replace the dishonest, swindling insiders that currently control the non-operating Debtor clearly is in the best interests of known and unknown victims, of which there are many.  An interim trustee will be able to promptly take the steps necessary to address these issues and to focus on the immediate and longer term needs of recovering assets for the benefit of creditors.  In stark contrast to the Debtor's conflicted and felony-convicted management, an interim trustee is the only person who can fulfill this much needed role.[1]  Moreover, an interim

---

[1] As will be shown shortly, the Debtor's controlling insider, Jona Rechnitz ("Jona"), is a convicted felon sentenced in connection for bribing public officials in New York.  Specifically, Jona pleaded guilty to one count of conspiracy to commit honest-services fraud, and admitted to bribing New York City police, public officials, and a union leader on behalf of a hedge fund.  While he is now out of prison on bond, Jona (footnote continued)

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  trustee can ignore and not be shackled by the multiple motions for stay filed by Jona and

2  his wife seeking a stay of state and civil federal proceedings allegedly due to a separate

3  criminal investigation being conducted by the FBI and the United States Attorney's Office

4  for the Central District of California.

5          By incorporating the Debtor in December 2017, Jona and Rachel created

6  the perfect vehicle for theft for themselves and those fortunate enough to benefit from

7  their transgressions.  Even after Jona pled guilty to fraud charges in New York, Jona

8  travelled back to Los Angeles where he engaged in a massive $30,000,000 fraud thinking

9  he was immune from prosecution due to the plea deal he struck with New York

10  prosecutors.  Since this triggered a new investigation and scores of civil suits, Jona now

11  seeks to stay those civil actions on the grounds that he would incriminate himself.

12          In sum, this involuntary proceeding is the only way to stop Jona from using

13  the Debtor to enrich himself and others at the expense of reputable local businessman

14  who trusted him.  Appointing an interim trustee, who will function as an independent

15  fiduciary, will prevent the concealment, waste, or loss of assets, and ameliorate the

16  damage created and caused by the Debtor's insiders' unscrupulous mismanagement.

17  This is the last and best opportunity to salvage any value for creditors.

18          Because the status of the Debtor's creditors and victims is unknown, and

19  because they may not even be aware of recent events, an interim trustee also is

20  necessary to sort through the confusion and uncertainty created by Jona's conviction and

21  the Debtor's collapse.  For instance, there are significant value-creating avoidance power

22  claims to pursue, which the Debtor cannot be trusted to investigate, let alone commence.

23  An interim trustee will provide creditors with the much-needed independent, objective,

24  and value-driven leadership that the Debtor's creditors deserve, thereby providing a

25

26  _____

27  continues to use and control the Debtor to defraud scores of innocent parties.  Petitioning Creditors are but
   three of the recently defrauded parties.

28

1  meaningful opportunity for creditors to realize some value on account of their substantial

2  claims.

3  <div align="center">**III.**</div>

4  <div align="center">**FACTUAL BACKGROUND**</div>

5      Jona and his wife, Rachel, ostensibly operated a jewelry business through

6  two similarly named entities, Jadelle, Inc. ("Jadelle Inc.") and its successor, the alleged

7  debtor Jadelle Jewelry and Diamonds, LLC (the "Debtor" or "Jadelle" and together with

8  Jadelle Inc., the "Jadelle Entities"), whose marque clients were, at one time, the

9  Kardashian family and other well-known sports and entertainment figures.  Both Jona and

10  Rachel advertised political and powerful celebrity connections to create a false sense of

11  credibility about themselves and their business, posting photos on their social media of

12  Kylie Jenner and Kim Kardashian, among others.  What appeared, at first glance, to be a

13  successful jewelry company was, as it tuns out, a complete sham.  In truth, the Jadelle

14  Entities were mere fronts for Jona and Rachel to run their fraudulent enterprise and for

15  Jona to continue his trail of fraud that has followed him from New York to California.

16      To understand the gravity of the situation, and the dire need for the

17  appointment of an interim trustee, it is important for this Court to get to know Jona.  And

18  there is no better way to get to know Jona than to read his own words as he was being

19  sentenced for pleading guilty to numerous fraud and bribery related charges.

20      Jona's story begins back in 2013, when he was caught up in a federal

21  probe into corruption in the NYPD and the Bill de Blasio mayoral campaign.  Not only did

22  Jona funnel money into the 2013 campaign and bribe police commanders, but he also

23  admitted to directing campaign donations to Mayor de Blasio in exchange for access to

24  City Hall and showering NYPD leaders with prostitutes and other bribes to cultivate them

25  as allies.  Eventually, Jona pleaded guilty to charges of providing financial and personal

26  benefits and political contributions to public officials including law enforcement officials in

27  exchange for official action in March of 2017.

28

<div style="writing-mode: vertical">**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520</div>

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    On June 6, 2016, in the criminal matter entitled <u>United States of America</u>

2   <u>vs. Jona Rechnitz</u>, bearing Case No. 1:16-cr-00389-AKH (the "Criminal Action"), pending

3   in the United States District Court, Southern District of New York, a sealed information

4   was filed against Jona for wire fraud.  As just mentioned, Jona would eventually plead

5   guilty.  On March 15, 2017, the information against Jona was unsealed, and Jona was

6   released on bond pursuant to release conditions imposed by Judge Alvin K. Hellerstein.

7   On December 6, 2019, Jona was sentenced to 10 months of custody, and was granted

8   release pending appeal.  Tellingly, among the mandatory conditions of Jona's release

9   was that he not commit another federal, state, or local crime.[2]  When asked about Jona,

10  Mayor de Blasio called him "a liar and a felon."  Those words proved to be most accurate.

11    Indeed, in Jona's October 16, 2019, letter to Judge Hellerstein seeking a

12  reduced sentence, Jona wrote the following:

13    Dear Judge Hellerstein:  *I am a felon.  I am a criminal.*  I am

14    the ONLY person to blame for that.  I have caused

15    tremendous pain and embarrassment to my family, my

16    religion, and to myself.  There is no way to undo what's been

17    done.  It's permanent, and for that I am truly sorry to

18    everyone hurt by my crimes and actions.  It eats me alive

19    each and every day.  When I wake up, when I go to sleep, it

20    is always on my mind for the past 4 years.  My actions

21    harmed the people of New York, The people of Correction

22    Officers Benevolent Association, my friends, my family and

23    my community.  I will forever carry this burden, as I deserve

---

[2] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court is respectfully requested to take judicial notice of the March 3, 2020, judgment (the "Criminal Judgment") entered in the Criminal Action, a true and correct copy of which is attached as Exhibit "A" to Petitioning Creditors' "Request for Judicial Notice in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee" (the "RJN") and incorporated herein by reference.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    to.  *I have read of your Honor asking at various sentencings,*

2    *why do good people do bad things?  In my case, not*

3    *assuming I'm a good person, I can answer this question.*

4    *Arrogance, greed, and insecurity.  Arrogance.  I felt I was*

5    *above the law.*  At this young age in my late 20's I was busy

6    accepting honors at dinners and board positions at

7    prestigious institutions.  It got to my head.  *Greed.  I wanted*

8    *to gain contacts to grow my business, to make money and*

9    *gain stature in the long run.*  Insecurity.  I wanted to gain

10   popularity by my peers and become a big shot in my

11   community and business circles.  Shame on me.  Finally, I

12   couldn't wiggle my way out of this one.  It changed my life as

13   I knew it forever.  As a supposed religious man, I have been

14   a disgrace to my religion.  The only way to fix this is to make

15   serving G-d my main focus for the rest of my life.  I try to

16   every day.  I have changed as a person religiously, through

17   prayer, my public and private behavior, and I always stop

18   and think before I'm about to do something to see if it is

19   something my parents, my family, and G-d would approve of.

20                 *                *                *

21   Your Honor, there are so many examples that I am omitting

22   as I don't want to portray myself as the victim here.  I caused

23   a lot of pain and harm to others through my criminal activity

24   and don't want to detract from that. . . .[3]

25   _____

26   [3] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court is respectfully requested to take judicial
notice of the October 16, 2019, letter from Jona Rechnitz to Judge Hellerstein in the Criminal Action, a true
27   and correct copy of which is attached as Exhibit "B" to the RJN and incorporated herein by reference.

28

1  (Emphasis added).

2          As reflected in the Criminal Judgment, Jona was sentenced to five months

3  in prison and five months of house arrest, followed by three years on parole.  During his

4  December sentencing hearing, Jona again apologized to Judge Hellerstein for his

5  criminal and immoral behavior, and begged for leniency.  The exchange proceeded as

6  follows:

7          JONA:  *I've been a real fraud to God, a fraud to my wife and*

8          *family, a fraud as an American, a fraud as a businessman,*

9          *and a fraud to the people of New York, namely, the hard-*

10         *working COBA members, and I'm truly sorry for that.*  My

11         actions have hurt many people, and I'm very sorry for that. I

12         continue to pay for my mistakes on a daily basis.

13                  *           *           *

14         While living in New York City, I wrongly felt pressure to

15         become a bigshot.  I was working for one of the largest real

16         estate companies in 2007, and it got to my head.  I was in

17         my late 20's, and big people in the real estate industry were

18         dealing with me.  My ego was big, and I so badly wanted to

19         impress these people in order to advance my career and

20         profile.  This is where things started to spiral out of control.

21         This is where I went so off the rails for a number of years.  I

22         assure your Honor that these past years and the experience

23         I've gone through has changed me.  I will never act that way

24         again.

25                  *           *           *

26         I've been a big hypocrite to my religion.  I failed to conduct

27         myself properly between myself and my fellow man and

28         between myself and my relationship with God.  I have

1    strayed. *I did all of these horrible things without worrying*

2    *about God or the consequences that come with this sort of*

3    *behavior.* I cannot express to your Honor how ashamed I

4    am for desecrating my religion. I have and will continue to

5    repent to God every single day. I have and continued to

6    make amends. Part of my efforts to make right included

7    cooperating as a first step. I have a lot more work to do.

8                    *            *            *

9    This is one of several jobs that I have in the coming months

10    as I continue to sort out my life in a lawful path. *In fact, I will*

11    *spend the rest of my life trying to make amends for my*

12    *criminal behavior.* I will try to make a better name for my

13    family, for my religion, and for myself. I am on the path to

14    recovery, your Honor. I am a better family man; I am a

15    better friend; I am a more religious person. I am working

16    again to make an honest living.

17    (Emphasis added).

18    THE COURT: What is the new business? Jadelle?

19    JONA: Jadelle, yes. I really paid a hefty price for

20    cooperating with the government for my crimes. Most

21    recently, the New York Post put up an article that was

22    mentioned this morning - your Honor may not be aware -

23    accusing me of hobnobbing and flirting with the rich and

24    famous at a time when I claim I am a pariah to society. In

25    fact, Jadelle Jewelery hosted a jewelery show to promote the

26    brand and new jewelry collection. The event was to make

27    sales and increase business. One attendee was a Kim

28    Kardashian, a client of Jadelle.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1          *          *          *

2          Within my community, within the media, and through self-

3          introspection.  In New York City, I am persona non grata.  *I*

4          *am to blame.*  I burnt a lot of bridges and relationships and

5          had to relocate to California.  I am so truly sorry for my

6          behavior.  I am a changed man.

7          *          *          *

8          THE COURT:  And yet in the life that's been depicted in this

9          court, he cheapens people.  He works on their insecurities

10         and their quest for material possessions and just does the

11         opposite.[4]  He diminishes people. . . .[5]

12 (Emphasis added).

13         These admissions and Jona's conviction, standing alone, is more than

14 sufficient evidence for this Court to appoint an interim trustee during the gap period.  In

15 fact, while Jona was telling Judge Hellerstein how he was a changed man, he was

16 fleecing Petitioning Creditors and other innocent parties.  Jona simply has no

17 compunction about lying to a federal judge or his handlers at the United States Attorney's

18 Office.  The only reason Jona is not behind bars is that he has no formal pre-trial officer

19 as his supervision is in the hands of New York prosecutors.  Thus, Jona has been

20

21

22

[4] In the Jewish religion, the Yiddish word "gonif," loosely translated as a dishonest or disreputable person, best describes Jona.  Jona is the poster child for criminals.  He preys on his false religious connections and on innocent people who foolishly trust him because he has six kids and a wife and he plays the role of an observant religious man.  He lulls his victims with false promises until they are time and time again broken.  Failure to appoint an interim trustee would be an act of injustice.  Only a trustee can bring the necessary actions to recover the gems and money from Jona, his family, and others who profited from his fraud, and it would be a perversion of the legal system if Jona were allowed to remain in control of the Debtor unchecked.

[5] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court is respectfully requested to take judicial notice of the relevant portions of the transcript of the December 12, 2019, sentencing hearing, a true and correct copy of which is attached as Exhibit "C" to the RJN and incorporated herein by reference.

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   allowed to run free to ravage Southern California businesses with impunity and without

2   consequences to himself and the Debtor.

3          This much is clear, neither Jona nor his wife can be expected to preserve

4   whatever assets of the estate remain, particularly since they know full well that an order

5   for relief will eventually be granted and a trustee appointed.  And Jona cannot hide

6   behind his wife or contend that his criminal past cannot be imputed to the Debtor.  Simply

7   stated, the Debtor and Jona are one and the same, and the Debtor, like its predecessor

8   Jadelle Inc., is nothing more than a conduit through which Jona continues to operate his

9   criminal enterprise.

10          Rather than atone for his past crimes, Jona, along with Rachel, have

11  continued to use Jadelle as a front to further defraud innocent parties, such as Petitioning

12  Creditors.  They also have employed a legion of lawyers as part of their collective effort to

13  illegally "lull" victims into sitting on their rights, hoping to gain tactical advantages in

14  litigation and allowing more time for the Rechnitz's and Jadelle to further transfer and

15  conceal assets.[6]  The declarations of Peter Marco, Oved Anter, Victor Franco Noval, and

16  Ronald Richards attest to the massive fraud perpetrated by Jadelle and Jona.  Absent the

17  appointment of an interim trustee during the gap period, creditors will continue to be

18  victimized.

19

20

21

22

23

24   _____

25   [6] As borne out by the declarations filed concurrently herewith, the Rechnitz's and Jadelle have directed
numerous "lulling letters" in furtherance of their scheme to defraud creditors.  A lulling letter is "designed to
lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and

26   therefore make apprehension of the defendants less likely."  United States v. Manarite, 44 F.3d 1407, 1412
(9th Cir. 1995) (quoting United States v. Shaw, 97 F.3d 1463 (9th Cir. 1996).  Most specifically, the exhibits

27   attached to the declaration of Ronald Richards are all examples of lulling letters and display the collective
intent of the Rechnitz's and Jadelle to defraud creditors.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**IV.**

**THE COURT SHOULD ORDER THE IMMEDIATE APPOINTMENT OF AN**

**INTERIM TRUSTEE**

Section 303(g) of the Bankruptcy Code provides that during the "gap" period between the date of an involuntary case's commencement and the date of any order for relief, "the court, on request of a party in interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor."  11 U.S.C. § 303(g).

Rule 2001(a) of the Federal Rules of Bankruptcy Procedure similarly states that:

> At any time following the commencement of an involuntary liquidation case and before an order for relief, the court on written motion of a party in interest may order the appointment of an interim trustee under § 303(g) of the Code.  The motion shall set forth the necessity for the appointment and may be granted only after hearing on notice to the debtor, the petitioning creditors, the United States trustee, and other parties in interest as the court may designate.

As illustrated, appointment of an interim chapter 7 trustee under Section 303(g) is appropriate under various circumstances, including, but not limited to, when "assets are missing or are in danger of being dissipated," "the debtor's assets are perishable," which has been interpreted "broadly to include 'not only that which may deteriorate physically, but that which is liable to deteriorate in price and value,'" or "the debtor or insiders have resisted examination into the debtor's affairs."  Hill v. Douglass, 78 F.2d 851, 854 (9th Cir. 1935).  See also In re Alpine Lumber & Nursery, 13 B.R. 977,

1    979 (Bankr. S.D. Cal. 1981) (in an involuntary case an interim trustee should be

2    appointed if such appointment is necessary to preserve property of the estate or prevent

3    loss to the estate); In re James Plaza Joint Venture, 62 B.R. 959, 961 (Bankr. S.D. Tex.

4    1986) (appointing interim trustee in an involuntary chapter 7 case under Section 303(g)

5    based on potential loss of assets in advance of trial on involuntary petition); In re Tradex

6    Swiss AG, 2007 Bankr. LEXIS 4246 (Bankr. D. Mass. Dec. 12, 2007) (appointing interim

7    trustee to take possession of assets pending adjudication of involuntary petition and

8    noting that, "in a chapter 7 case, when assets of the estate are to be secured for the

9    benefit of creditors, the task should be undertaken by a chapter 7 trustee"); In re R. S.

10   Grist Co., 16 B.R. 872 (S.D. Fla. 1982) (upholding appointment of interim trustee under

11   Section 303(g), on ex parte basis, upon showing of potential irreparable loss to estate).

12          Section 105(a) of the Code also supports the authority of the Court to

13   appoint an interim trustee where, as here, there is a demonstrated potential for

14   substantial harm to the estate and its creditors in the absence of the appointment of an

15   interim trustee.  See In re Professional Accountants Referral Services, Inc., 142 B.R. 424,

16   429-31 (Bankr. D. Colo. 1992) (holding that "the appointment of a trustee during the gap

17   period - before an order for relief is entered - is authorized and proper under 11 U.S.C. §§

18   1104(a)(1), 105 and, by analogy, 303(g).").  And once cause has been found to exist for

19   purposes of appointing an interim trustee, the alleged debtor may remove the trustee only

20   by either posting bond or by convincing the court, after notice and hearing, that the

21   factors which led to the trustee's appointment in the first place are no longer present.

22   Alpine Lumber, 13 B.R. at 979.

23          The theme running through these cases is clear, although the appointment

24   of an interim trustee lies within the sound discretion of the bankruptcy court, the court

25   must be guided, in large part, by the best interests of creditors.  And this Court should not

26   be swayed from imposing this remedy simply because the Debtor filed a Rule 12(b)(6)

27   motion to dismiss the involuntary petition.  Petitioning Creditors are confident that the

28   motion will be denied, and more damage will be done if the Court defers the appointment

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  of a trustee until it is able to conduct a trial on the dispositive issue of whether an order

2  for relief should be granted.[7]

3  　　　　The bankruptcy court's decision in <u>Messer v. Peykar Int'l Co. (In re Fine</u>

4  <u>Diamonds, LLC)</u>, 501 B.R. 159 (Bankr. S.D.N.Y. 2016) demonstrates the benefit of an

5  interim trustee. In <u>Fine Diamonds</u>, which is eerily similar to this case, a creditor filed an

6  involuntary chapter 7 petition against Fine Diamonds, LLC.  The same day, the

7  petitioning creditor (i) moved for the immediate appointment of an interim chapter 7

8  trustee under Section 303(g) of the Code pending consideration of its request for an

9  order for relief, (ii) filed an adversary proceeding seeking to recover, on behalf of the

10  alleged debtor's estate, "over $36 million" of diamonds allegedly converted or embezzled

11  from the alleged debtor, and (iii) sought an ex parte temporary restraining order freezing

12  the alleged debtor's and the defendant's assets.  The court initially signed the ex parte

13  TRO (after finding that advance notice of the TRO request would cause irreparable harm

14  to the alleged debtor's estate and its creditors).

15  　　　　Two days later, an interim trustee was appointed.  Shortly thereafter, the

16  trustee filed an amended complaint, substituting himself as plaintiff in place of the

17  petitioning creditor.  The trustee sought the return (or a cash judgment for the value) of

18  diamonds worth more than $37 million that had been entrusted to the defendant pursuant

19  to a consignment agreement negotiated with the alleged debtor prior to being forced into

20  bankruptcy.  Along with the turnover claim, the trustee sought the value of those

21  diamonds under three other legal doctrines, notably, Sections 544 and 548 of the Code,

22  as well as state law conversion and fraudulent misrepresentation claims.

23  　　　　After trial, the court found that the diamonds were indeed consigned to the

24  corporate-defendant, and neither returned nor paid for.  Turnover, or its equivalent, was

25  _____

26  [7] It should not go unnoticed that in the Debtor's Rule 12(b)(6) motion to dismiss, there was not a single
declaration from Jona or Rachel under oath disputing any of the claims made by the Petitioning Creditors.

27  This was not by accident as Jona wisely is avoiding adding perjury to his criminal history which starts with
federal wire fraud.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    plainly required, the court ruled.  In addition, the court further found that the corporate-

2    defendant was liable to the trustee as the transferee of a fraudulent transfer, and that

3    each of the defendants were jointly and severally liable to the trustee for conversion.

4    Since there was no reason to believe that the diamonds could be returned in kind, the

5    court entered judgment for their value (shown to be $37,593,930.34), on the turnover,

6    fraudulent transfer, and conversion claims.

7            Similar to <u>Fine Diamonds</u>, an interim trustee must be appointed before any

8    estate assets are further placed beyond reach.  Petitioning Creditors are certain that once

9    an interim trustee investigates the Debtor's financial history, a plethora of similar

10    fraudulent conveyance and conversion claims will be uncovered.  Only an independent

11    trustee can be trusted to investigate and pursue those claims, and, with each day that

12    passes, Jona and Rachel are given more time to conceal and destroy crucial evidence.[8]

13    See <u>In re Gems N' Things, Inc.</u>, 60 B.R. 288 (Bankr. S.D.N.Y. 1986) (interim trustee

14    appointed pursuant to Section 303(g) in order to preserve debtor's property and to

15    prevent loss to the estate based on petitioning creditors' allegations that (i) debtor was

16    engaged in the operation of a retail store selling jewelry, giftware, silverware, and

17    dinnerware, (ii) debtor posted notice that it was liquidating, and (iii) debtor was diverting

---

18

19    [8] For instance, it is undisputed that Jadelle profited from its business dealings with Noval, and that Jadelle

20    was the quarterback and conduit to receive and then disburse funds.  Once Jadelle is operated by a trustee
     and not a criminal, the trustee can focus on recovering assets and returning them to the Debtor's creditors

21    and victims.  In fact, there already is a trustee of a New York entity suing Jona Rechnitz individually, for,
     what else, fraudulent conveyances to the tune of $45,000,000.  Pursuant to Rule 201 of the Federal Rules
     of Evidence, the Court is respectfully requested to take judicial notice of the "Complaint" styled <u>Kenneth P.</u>

22    <u>Silverman, Esq., Chapter 7 Trustee for the Jointly Administered Estates of National Events Holdings, LLC,</u>
     <u>et al. v. JSR Capital LLC, and Jona Rechnitz</u>, bearing Adv. No. 19-01236 (JLG), pending in the United

23    States Bankruptcy Court, Southern District of New York, a true and correct copy of which is attached as
     Exhibit "D" to the RJN and incorporated herein by reference.  Jona also is subject to a "Stipulation for

24    Conditional Entry of Judgment" in favor of American Express National Bank in the amount of $308,058.15.
     $300,000 judgment in favor of American Express.  Pursuant to Rule 201 of the Federal Rules of Evidence,

25    the Court is respectfully requested to take judicial notice of the "Stipulation for Conditional Entry of
     Judgment" entered in the case styled <u>American Express National Bank f/k/a/ American Express Centurion</u>

26    <u>Bank v. Jona S. Rechnitz, aka Jona Rechnitz, aka Jonas Rechnitz, et al.</u>, bearing Case No. 19STCV29830,
     pending in the Superior Court of the State of California, Los Angeles County, a true and correct copy of

27    which is attached as Exhibit "E" to the RJN and incorporated herein by reference.  In other words, Jona is a
     walking scam artist who can no longer be allowed anywhere near Jadelle.

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   its cash receipts and collections to improper uses and was removing valuable jewelry

2   from store, was reappointed trustee after debtor converted to chapter 11).

3          As established not just by Jona's conviction and admissions, but by the

4   declarations of Petitioning Creditors, an interim chapter 7 trustee is necessary to prevent

5   the further concealment of assets, and both preserve the property of the estate and to

6   prevent additional loss.  It is inarguable that the Debtor is not paying its debts as they are

7   becoming due and that there is a serious risk that, if not abated by the appointment of a

8   trustee, Jona will continue to divert the Debtor's remaining assets to third parties,

9   including family members.  Thus, there is a serious, immediate, and urgent need for the

10  appointment of an interim trustee over the Debtor's affairs and such appointment is

11  exigently necessary to preserve the property of, and prevent loss to, the Debtor's estate.

12  See In re DiLorenzo, 161 B.R. 752, 754 n.8 (Bankr. S.D.N.Y. 1993) (interim trustee

13  warranted where a need has been found to protect and preserve property of the estate by

14  preventing concealment, waste or loss of assets by the alleged debtor, or preventing

15  irreparable harm which would likely result during the gap period).

16                                **V.**

17     **A BOND SHOULD NOT BE REQUIRED, OR IF ONE IS REQUIRED,**

18                  **IT SHOULD BE MINIMAL**

19          Rule 2001(b) of the Federal Rules of Bankruptcy Procedure generally

20  requires a bond from the petitioner in order to appoint an interim trustee.  Rule 2001(b)

21  specifically states that "[a]n interim trustee may not be appointed under this rule unless

22  the movant furnishes a bond in an amount approved by the court, conditioned to

23  indemnify the debtor for costs, attorney's fee, expenses, and damages allowable under §

24  303(i) of the Code."  However, a bond is not necessary here because the Debtor has

25  ceased operating in the traditional sense of the word, meaning there is no harm that can

26  possibly be done to the company, and there is a clear emergency based on the unknown

27  status of the Debtor's creditors and victims.

28

1    This Motion is seeking to preserve the Debtor's assets for the benefit of its

2 creditors.  Petitioning Creditors are not asking that the Court grant relief specific to them.

3 The Debtor is a non-operating shell, and certainly is not paying its debts as they are

4 becoming due.  At the same time, however, Jona is continuing to conceal and transfer

5 what remaining assets the Debtor still may have for his own benefit and to further his illicit

6 and likely criminal conduct.  Petitioning Creditors have sufficiently demonstrated the need

7 for an interim trustee simply to preserve the Debtor's assets during the gap period.  Given

8 the facts of this case, and the overwhelming likelihood that an order for relief will be

9 entered, this Court should not require a bond.  If, however, the Court requires a bond, the

10 amount should be nominal, especially since the Debtor retains the right to seek damages

11 under Section 303(i) of the Code.  Alternatively, any bond should be established after the

12 interim trustee is appointed.

13    **VI.**

14    **<u>CONCLUSION</u>**

15    This case presents the prime example of why Section 303(g) was crafted -

16 to permit petitioning creditors to redress abuses which could diminish, if not entirely

17 eliminate, any potential return to legitimate creditors.  The Debtor cannot shield itself from

18 the appointment of a trustee merely by arguing that it has a pending motion to dismiss or

19 that the Petitioning Creditors' claims are the subject of bona fide disputes, particularly

20 when the Debtor continues to be controlled by a convicted felon.  An interim trustee is the

21 only safeguard creditors can count on to protect them from the Rechnitz's

22 unconscionable management of the Debtor.

23 DATED: May 19, 2020        **Sulmeyer**Kupetz
                                      A Professional Corporation

24

25

26                                      By: /s/ *Daniel A. Lev*
                                          Daniel A. Lev
27                                        Attorneys for Petitioning Creditors

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*):  NOTICE OF MOTION AND PETITIONING CREDITORS' MOTION FOR APPOINTMENT OF INTERIM CHAPTER 7 TRUSTEE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  May 19, 2020  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)  May 19, 2020 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| May 19, 2020 | Cheryl Caldwell | */s/ Cheryl Caldwell* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**ADDITIONAL SERVICE INFORMATION** (if needed):

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **Baruch C Cohen**    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- **Daniel A Lev**    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- **Robert S Marticello**    Rmarticello@swelawfirm.com,
  gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- **Ronald N Richards**    ron@ronaldrichards.com,
  morani@ronaldrichards.com,justin@ronaldrichards.com
- **Neal Salisian**    ECF@salisianlee.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**