1 | Daniel A. Lev (CA Bar No. 129622)
  dlev@sulmeyerlaw.com
2 | **Sulmeyer**Kupetz
  A Professional Corporation
3 | 333 South Grand Avenue, Suite 3400
  Los Angeles, California 90071-1406
4 | Telephone: 213.626.2311
  Facsimile: 213.629.4520
5 |
6 | Attorneys for Petitioning Creditors
7 | Ronald Richards (CA Bar No. 176246)
  ron@ronaldrichards.com
  Law Offices of Ronald Richards & Associates, APC
8 | P.O. Box 11480
  Beverly Hills, California 90213
9 | Telephone:  310.556.1001
  Facsimile:  310.277.3325
10 |
11 | Attorneys for Victor Franco Noval
12 | Baruch C. Cohen (CA Bar No. 159455)
  baruchcohen@baruchcohenesq.com
  Law Office of Baruch C. Cohen, APLC
13 | 4929 Wilshire Boulevard, Suite 940
  Los Angeles, California 90010
14 | Telephone:  323.937.4501
  Facsimile: 888.316.6107
15 |
16 | Attorneys for Peter Marco, LLC and First International Diamond, Inc.

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

| In re | Case No. 2:20-bk-13530-BR |
| JADELLE JEWELRY AND DIAMONDS, LLC, | Chapter 7 |
| | **PETITIONING CREDITORS' OPPOSITION TO PUTATIVE DEBTOR'S MOTION TO DISMISS INVOLUNTARY PETITION AND REQUEST FOR ATTORNEY'S FEES, COSTS, AND DAMAGES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| Alleged Debtor. | |
| | DATE:       June 9, 2020
TIME:       10:00 a.m.
PLACE:    Courtroom "1668" |

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

DAL 2700550v1

VICTOR FRANCO NOVAL; PETER MARCO, LLC; and FIRST INTERNATIONAL DIAMOND, INC.,

          Petitioning Creditors,

     vs.

JADELLE JEWELRY AND DIAMONDS, LLC,

          Alleged Debtor.

Petitioning Creditors, Victor Franco Noval ("Noval"), Peter Marco, LLC ("Marco"), and First International Diamond, Inc. ("First International" and together with Noval and Marco, the "Petitioning Creditors"), hereby submit their "Petitioning Creditors' Opposition to Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages; Memorandum of Points and Authorities in Support Thereof" (the "Opposition"), in response to "Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages; and Memorandum of Points and Authorities in Support" (the "Motion"), filed by the putative debtor Jadelle Jewelry and Diamonds, LLC (the "Debtor" or "Jadelle"), and represents as follows:

**I.**

**<u>PREFATORY STATEMENT</u>**

As a matter of statute and controlling case law, none of the asserted bases of the Debtor's Rule 12(b)(6) motion are legal bases for dismissal under the rule. The hollow assertion of "bona fide disputes" regarding Petitioning Creditors' debts cannot be the basis of a Rule 12(b)(6) motion under the logic of the rule and bankruptcy practice, which differs dramatically from civil Rule 12(b)(6) motion practice. And even if this Court could venture into determining whether bona fide disputes exist within the confines of this Motion, there is absolutely no admissible evidence supporting the Debtor's empty and

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  false claims.  How could there be?  The Debtor's controlling insider is a convicted felon

2  and fraudster using the Debtor as a front for his illegitimate and felonious transgressions.

3  Conversely, the involuntary petition form used here is sufficient, as a matter of law, to

4  demonstrate the bona fide status of Petitioning Creditors' claims both as to liability and

5  amount.

6        Equally unavailing is the Debtor's argument that the involuntary petition

7  must be dismissed due to Petitioning Creditors' purported bad faith.  Critically, not only

8  does the Ninth Circuit not recognize bad faith as a basis for dismissal of involuntary

9  petitions, but involuntary petitions enjoy a presumption of good faith.  Hence, even if bad

10  faith is a consideration, a debtor bears the burden of showing, by a preponderance of the

11  evidence, that the filing was in bad faith.  The Debtor fails miserably in this regard.  The

12  Motion is devoid of any evidence, much less credible evidence, proving that Petitioning

13  Creditors acted in bad faith in forcing this non-operating shell into chapter 7.[1]

14        Therefore, not only must the Motion, including its request for damages, be

15  denied, the Debtor must be forced to answer the involuntary petition and file its list of

16  creditors to provide all of its victims an opportunity to participate in this proceeding.

## II.

## FACTUAL BACKGROUND

19        The Debtor was incorporated in December 2017.  Like its predecessor

20  Jadelle, Inc. ("Jadelle Inc." and together with Debtor or Jadelle, the "Jadelle Entities"), the

21  Debtor was formed for the sole purpose of giving its controlling principals and insiders,

22  Jona Rechnitz ("Jona") and Rachel Rechnitz ("Rachel" and together with Jona, the

23  "Rechnitz's"), an air of legitimacy.  Both Jona and Rachel advertised political and

24  powerful celebrity connections to create a false sense of credibility about themselves and

25  their business, posting photos on their social media of Kylie Jenner and Kim Kardashian,

26  _____

27  [1] The Debtor either forgot or simply does not know that this Court is the leading expert on evidence and its interplay with bankruptcy.

28

1    among others.  However, once the veil was lifted, it became apparent that the Debtor was

2    nothing more than a sham entity for Jona to run his fraudulent enterprise, even following

3    being sentenced after pleading guilty to numerous fraud and bribery related charges.

4            Although the Rechnitz's will try, albeit without any evidence, to cajole this

5    Court into believing that the Debtor is a legitimate business enterprise which is

6    conducting jewelry shows, selling merchandise, and paying its creditors, nothing could be

7    further from the truth.  Tellingly, other than a single sentence describing when it was

8    incorporated, the Debtor makes no effort to even attempt to portray itself as an entity not

9    worthy of Section 303(h)'s ultimate remedy.  The silence is deafening.

10           The Debtor is the model case for why Section 303 was enacted; to allow

11   aggrieved creditors to force a non-paying entity into chapter 7 so an independent trustee

12   can recover and liquidate property and recover unauthorized transfers for the benefit of

13   the estate.  Once the full scope of the Debtor's and the Rechnitz's misdeeds are

14   exposed, this Court surely will enter an order for relief and place creditors on the pathway

15   towards recovering a portion of their claims with the assistance of a true fiduciary.

16                                              **III.**

17   **THE PUTATIVE DEBTOR CANNOT SEEK DISMISSAL OF THE INVOLUNTARY**

18   **PETITION UNDER RULE 12(b)(6) AND IT MUST NOT ONLY FILE AN ANSWER,**

19   **BUT IT MUST FILE A LIST OF CREDITORS ALLOWING OTHER**

20   **CREDITORS TO JOIN THE INVOLUNTARY PETITION**

21           The Debtor's Motion largely is based on a single premise - that each of

22   Petitioning Creditors' claims are the subject of "bona fide" disputes.  Not surprisingly, the

23   Debtor does not contest that it is not paying its undisputed debts as they come due.  Nor

24   could it; the Debtor, as illustrated, is a non-operating business which is nothing more than

25   a conduit for Jona's illicit and fraudulent conduct.  Since Jona will do everything in his

26   power to avoid the appointment of a trustee, who will have broad and sweeping powers

27   to uncover his and the Debtor's fraud and recover assets for creditors, the Debtor now

28   seeks dismissal of the involuntary petition under the guise that Petitioning Creditors'

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  claims are the subject of bona fide disputes.  However, a putative debtor's assertion of a

2  bona fide dispute is not a proper basis of a Rule 12(b)(6) motion, and the Debtor must be

3  forced to answer the petition.

4      **A.**    **<u>An Involuntary Petition Cannot Be Dismissed Under Rule 12(b)(6) if</u>**

5      **<u>the Putative Debtor Alleges That the Petitioning Creditors' Claims Are</u>**

6      **<u>the Subject of Bona Fide Disputes</u>**

7          Unlike civil practice, involuntary chapter 7 petitions are commenced by the

8  use of a bankruptcy court approved form.  Therefore, Rule 12(b)(6) authority is not

9  authoritative and runs afoul of controlling law.

10          The deficiencies of putative debtors using Rule 12(b)(6) motions to contest

11  involuntary petitions was on full display in the Bankruptcy Appellate Panel's recent

12  decision in <u>Hayden v. QDOS, Inc. (In re QDOS, Inc.)</u>, 607 B.R. 338 (B.A.P. 9th Cir.

13  2019).  In <u>QDOS</u>, three petitioning creditors filed an involuntary petition against QDOS,

14  Inc. ("QDOS").  Similar to Jadelle, QDOS filed a Rule 12(b)(6) motion to dismiss the

15  petition and it also requested damages.  Also similar to the Debtor, QDOS did not dispute

16  the petition's allegation that it was not paying its debts as they came due; it focused

17  solely on disputing the standing of one of the petitioning creditors.  According to QDOS,

18  since it asserted it had 12 or more claimholders, if it could knock out one of the petitioning

19  creditors the involuntary petition would have to be dismissed since it would not satisfy the

20  numerosity requirement of Section 303(b) of the Code.

21          The petitioning creditors opposed the motion arguing, among other things,

22  that QDOS's grounds for dismissal relied on disputed facts which could not be resolved

23  on a Rule 12(b)(6) motion to dismiss.  Two days before the hearing, the bankruptcy court

24  issued a tentative ruling granting the motion because the disputed petitioning creditor

25  was an investor and, therefore, not a qualifying petitioner, and, as a result, there were

26  less than three qualifying creditors.  Later, however, a new creditor joined the involuntary

27  petition and the court set the matter for trial.

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    After a series of continuances and delays, the replacement creditor did not

2  attend the trial, as required by the court.  As a result, the court entered an order

3  dismissing the petition since it found that QDOS had more than 12 creditors and, due to

4  the newly joined creditor's failure to attend the trial, it concluded that there were an

5  insufficient number of petitioning creditors.  The Panel reversed the bankruptcy court's

6  decision.

7    As the Panel noted, although Rule 12(b)(6) applies in a contested

8  involuntary situation just as it does generally, the court accepts factual allegations in the

9  petition as true, but disregards legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678-

10  79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  It then determines if the remaining factual

11  allegations, construed in the light most favorable to the non-moving party's favor, state a

12  facially plausible claim for relief.  Id., at 679; see also Bell Atl. Corp. v. Twombly, 550 U.S.

13  544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  As a result, "a bankruptcy court will not

14  be able to dismiss an involuntary case solely on a motion to dismiss.  If the petitioning

15  creditors plausibly allege that they have met the standards, the motion must fail, and the

16  involuntary debtor must answer."  QDOS, 607 B.R. at 345.[2]

17  _____

18  [2] The Debtor cites several cases regarding the standards for Rule 12(b)(6) motions.  However, the cases
cited are all civil cases explaining and applying Rule 12(b)(6). As demonstrated above, none of these cases
19  have any relevance to a Rule 12(b)(6) motion where a bankruptcy court-approved form is used as the
complaint.  Here, the Debtor's Motion is limited to the four corners of the bankruptcy petition form.  And, as
20  noted, in ruling on a motion to dismiss, a court must view the complaint, or the involuntary petition in this
case, in the light most favorable to the petitioning creditors, as plaintiffs, and take their allegations as true.
21  Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984).  When a bankruptcy
court considers a motion to dismiss at the pleadings stage, it must apply the Federal Rules of Civil
22  Procedure as incorporated into the Federal Rules of Bankruptcy Procedure.  Rule 8(a) of the Federal Rules
of Civil Procedure, as incorporated into Rule 7008 of the Federal Rules of Bankruptcy Procedure, requires
23  that a complaint contain "a short plain statement of the claim showing that the pleader is entitled to relief."
K'napp v. Brown, 772 Fed. Appx. 473 (9th Cir. 2019).  Courts have interpreted this standard liberally.
24  While the pleading must be sufficient to give the defendant fair notice of what the claim is and the grounds
upon which it rests, the pleader is not required to set forth in detail the facts upon which the claim is based.
25  Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 102-103, 2 L. Ed. 2d 80 (1957).  Finally, the issue is not
whether the plaintiff (or Petitioning Creditors in this case) will ultimately prevail on its claims, but whether
26  the claimant is entitled to offer evidence to support the claims.  Scheuer v. Rhodes, 416 U.S. 232, 236, 94
S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974).  Under this liberal pleading standard, the Motion cannot be
27  granted.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    In other words, the law is quite clear - although an involuntary debtor may

2    initially contest an involuntary petition through a Rule 12(b)(6) motion, where a trial is

3    required for resolution of contested matters, such as the number of creditors or the bona

4    fide nature of the petitioning creditors' claims, the debtor must answer and file the list of

5    creditors required by Rule 1003(b).

6    As the Panel further found:

7    In summary, if resolution of a contested involuntary

8    proceeding requires a trial, there is no procedural path that

9    allows the alleged involuntary debtor to leap over the

10    requirement that it answer and, if appropriate given its

11    answer, file the creditor list mandated by Rule 1003(b).  *The*

12    *mere fact that the involuntary debtor initiated its opposition*

13    *through a Civil Rule 12(b)(6) motion delays, but does not*

14    *invariably negate, the requirement of answer and creditor*

15    *list.*

16    Id., at 345.  (Emphasis added).

17    The court in In re Rambo Imaging, L.L.P., 2007 Bankr. LEXIS 3912 (Bankr.

18    W.D. Tex. 2007) reached the same conclusion.  In Rambo Imaging, one petitioning

19    creditor filed an involuntary chapter 7 petition using the court-approved form.  The

20    putative debtor filed an unspecified Rule 12(b) motion to dismiss, alleging that the debt

21    was subject to a bona fide dispute thereby justifying dismissal under Rule 12(b).

22    Because the motion was not filed under a specific subparagraph, the

23    bankruptcy court engaged in an exhaustive analysis of the various sub parts of Rule

24    12(b) and concluded that the factual assertion of a bona fide dispute could not be the

25    basis for granting a Rule 12(b) motion.  The court's reasoning was that a Rule 12(b)(6)

26    motion (the most likely sub part) challenges the legal sufficiency of the petition's

27    allegations.  However, when the approved involuntary petition form is used, as was used

28    by Petitioning Creditors against Jadelle, the allegations are sufficient as a matter of law

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1 and contesting the factual allegations in a form petition renders dismissal under Rule

2 12(b)(6) unavailable or inappropriate.

3      Relevantly, the court in <u>Rambo Imaging</u> examined the form involuntary

4 petition, which is similar in substance to the involuntary petition filed against Jadelle.  In

5 <u>Rambo Imaging</u>, the involuntary petition form, as completed by the petitioning creditor by

6 the checking of applicable boxes, stated that (i) petitioner was eligible to file the petition

7 pursuant to 11 U.S.C. § 303(b), (ii) the debtor was a person against whom an order for

8 relief may be entered under title 11 of the United States Code, (iii) the debtor was

9 generally not paying such debtor's debts as they become due, unless such debts are the

10 subject of a bona fide dispute as to liability or amount, and (iv) on the second page of the

11 form, where it was asked to list information about all the petitioning creditors, the

12 petitioning creditor listed only itself and inserted "fees for professional services rendered"

13 under the heading of "nature of Claim," and listed $ 218,613.21 under the heading

14 "amount of claim."

15      The alleged debtor specifically contended that the petition, as so drafted,

16 did not allege facts showing that the petitioning creditor's claim was not contingent or

17 subject to a bona fide dispute as to liability or amount.  The <u>Rambo Imaging</u> court

18 disagreed.  In doing so, the court noted that the factual allegations necessary to support

19 an involuntary petition are relatively few and simple.  Similar to the form used by

20 Petitioning Creditors in this case, the petition in <u>Rambo Imaging</u> showed that the

21 petitioner asserted a claim, showed the amount and nature of the claim, and, through

22 reference to Section 303(b), incorporated allegations that addressed that section's

23 requirements that the claim not be contingent or the subject of a bona fide dispute.

24 Nothing more was required to overcome a Rule 12(b)(6) challenge.

25      According to the court:

26      On a Rule 12(b)(6) motion, "[t]he issue is not whether a

27      plaintiff will ultimately prevail but whether the claimant is

28      entitled to offer evidence to support the claims."  <u>Jackson v.</u>

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    Birmingham Bd. of Educ., 544 U.S. 167, 184, 125 S. Ct.

2    1497, 161 L. Ed. 2d 361 (2005), quoting Scheuer v. Rhodes,

3    416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974).  *A*

4    *petitioner's burden should not be as high on a pre-trial*

5    *motion to dismiss as it would be at the trial on the involuntary*

6    *petition.  All it must show at trial is "a prima facie case that*

7    *no bona fide dispute exists.  Once this is done, the burden*

8    *shifts to the debtor to present evidence demonstrating that a*

9    *bona fide dispute does exist. . . . The court's objective [at*

10    *trial on the merits] is to ascertain whether a dispute that is*

11    *bona fide exists; the court is not to actually resolve the*

12    *dispute."*  Sims, 994 F.2d at 221, quoting In re Rimell, 946

13    F.2d 1363, 1365 (8th Cir. 1991).  *Certainly, to merely*

14    *withstand a Rule 12(b)(6) motion, a petitioner should not be*

15    *required to prove by a preponderance of the evidence that*

16    *its claim is valid, when the only "evidence" that it is not are*

17    *the allegations and arguments of the alleged debtor*

18    *contained in pleadings never ruled on.*

19    Id., at *41-*42.  (Emphasis added).

20    Here, the Debtor is attempting to use the same counsel-asserted "bona fide

21    dispute" argument rejected by the courts in QDOS and Rambo Imaging.  There simply is

22    no reason for this Court to depart from the mandate of these cases.  Counsel's assertion

23    of a bona fide dispute is not a legal or legitimate basis for a Rule 12(b)(6) motion.  See

24    also In re McDougald, 17 F.R.D. 2, 5 (W.D. Ark. 1955) (in considering motion to dismiss

25    involuntary petition, albeit one brought under the Bankruptcy Act, that contained only

26    allegations of the amount and nature of the claims of petitioning creditors, court affirmed

27    bankruptcy referee's decision to deny motion to dismiss, specifically holding that "in the

28

1   absence of affidavits or evidence to the contrary, the well pleaded allegations of the

2   creditors' petition, for purposes of a motion to dismiss, must be accepted as true.").

3   These cases demonstrate the overriding view that dismissal of involuntary

4   petitions at the outset are disfavored.  See In re Calloway, 70 B.R. 175, 179 (Bankr. N.D.

5   Ind. 1986) ("As is generally true, motions to dismiss involuntary petitions pursuant to

6   Bankruptcy Rule 1011(b) and Fed.R.Civ.P. 12(b) are disfavored and should not be

7   granted unless it appears certain that the petitioners would not be entitled to an order for

8   relief under any facts they could prove in support of their allegations.  The petition is to be

9   construed in a light most favorable to the petitioners, whose allegations are taken as

10  true.").  Since Rule 12(b) is an inappropriate vehicle for contesting an involuntary petition,

11  the Court must deny the Motion and force the Debtor to answer.

12  **B.**      **Since Other Creditors Are Entitled to Join An Involuntary Petition to**

13  **Cure Any Numerosity Requirement, the Debtor Must Be Required to**

14  **Answer and File the Requisite List of Creditors**

15  As noted by the Panel in QDOS, "joinder can remedy a deficiency in the

16  number of petitioning creditors; and all creditors have the right to consider joinder where

17  the involuntary debtor is in economic distress."  QDOS, 607 B.R. at 345.  Consequently,

18  even if the Debtor could somehow displace one or more of the Petitioning Creditors,

19  "[w]here there are fewer than the three required petitioning creditors, the Code and Rules

20  allow for Civil Rule 24(a)(1) joinder.  11 U.S.C. § 303(c); Fed. R. Bankr. P. 1018.  Thus,

21  joinder may remedy a defect in the number of petitioning creditors."  Id., at 345.

22  In issuing its ruling, the Panel followed the court's reasoning and decision in

23  In re Kidwell, 158 B.R. 203, 212-13 (Bankr. E.D. Cal. 1993), where the court emphasized

24  that such joinder was a matter of right, and could cure even a tainted initial petition.  Id.,

25  at 211.  The Kidwell court underscored the importance of the right to join given that an

26  involuntary petition may provide significant benefit to all creditors.  The Panel concurred,

27  finding that "where an entity is in true economic distress, an involuntary filing may stop

28  the race to the state courthouse and the dismemberment of a debtor through involuntary

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  liens, level the playing field among unsecured creditors, and otherwise appropriately aid

2  creditors." QDOS, 607 B.R. at 345.

3         The upshot of these decisions is that it is not permissible to deprive eligible

4  creditors of their statutory right to join in an involuntary petition and then to dismiss for

5  insufficiency in number of petitioners, even if an initial petitioning creditor is later

6  excluded.  As a result, all claimholders must receive an opportunity to consider

7  supporting an involuntary petition when the debtor is in financial distress even if there

8  initially are too few petitioning creditors.  The QDOS Panel recognized that this has been

9  the rule since at least 2002, when the Ninth Circuit issued its decision in Liberty Tool, &

10  Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.), 277 F.3d 1057 (9th Cir.

11  2002).

12         In Vortex Fishing the alleged debtor objected to an involuntary petition,

13  claiming that it was not in economic distress and there were an insufficient number of

14  petitioning creditors.  Pending a trial on both disputed issues, the bankruptcy court

15  ordered the debtor to submit a list of its creditors to the bankruptcy court, and the parties

16  agreed that the list could not be released without a court order.  The petitioning creditors

17  did not ask for pre-trial release of the creditor list.  At trial, the bankruptcy court found that

18  the number of then-existing petitioning creditors was insufficient, but it also continued

19  with the trial and determined that the debtor was generally paying its debts as they came

20  due.  It then dismissed the involuntary petition.

21         On appeal, the petitioning creditors argued, based on Rule 1003(b), that the

22  bankruptcy court should have notified all creditors of the involuntary petition, afforded

23  them an opportunity to join, and only then dismissed the involuntary case.  Id., at 1070.

24  In rendering its decision, the Ninth Circuit correctly noted that generally when an alleged

25  debtor answers a petition filed by fewer than three qualifying petitioners, asserts the

26  Section 303(b)(1) three-petitioning creditors requirement, and alleges that it has twelve or

27  more creditors, the bankruptcy court "must assure that other creditors have a 'reasonable

28

1    opportunity' to exercise their § 303(c) statutory power to join as petitioners . . . ." Id., at

2    1071.

3         Vortex Fishing, thus, underscores that all creditors must have a reasonable

4    opportunity to join in an involuntary petition where the number of petitioning creditors is

5    being challenged by the debtor.  It was only unnecessary in Vortex Fishing because, in a

6    consolidated hearing, the bankruptcy court correctly found that the involuntary debtor was

7    not in financial distress; joinder, thus, would have been a meaningless endeavor.  In sum,

8    once a trial is required to resolve issues in a contested involuntary proceeding, the

9    involuntary debtor must answer within 14 days.  See QDOS, 607 B.R. at 345 (a Rule

10   12(b)(6) motion is no substitute for a trial on dispositive issues, and a putative debtor

11   must answer an involuntary petition and file the requisite creditor list).

12        Nothing warrants a departure from this line of cases, especially since the

13   Petitioning Creditors are aware of scores of other creditors and victims of Jadelle's fraud.

14   The Debtor has no choice but to follow controlling law and not only answer the petition,

15   but submit its Rule 1003(b) creditor list.[3]

16                               **IV.**

17   **THE MOTION IS DEVOID OF A SINGLE SHRED OF ADMISSIBLE EVIDENCE**

18        Even presuming that relief could be granted under Rule 12(b)(6), there is no

19   evidentiary basis for any of the Debtor's fanciful contentions.  Since the sworn testimony

20   of a convicted felon and swindler certainly would not be worth the paper it is written on,

21   and possibly would subject him to perjury charges, the Debtor instead relies on a host of

22   hand-selected pleadings from other courts in a fruitless attempt to create an evidentiary

23

24

25

26   _____

27   [3] Petitioning Creditors are aware of other creditors who may be interested in joining the involuntary petition
     to prevent the Debtor and the Rechnitz's from further abusing the legal system and other innocent parties.

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  basis for its Motion under the guise of Rule 201 of the Federal Rules of Evidence.[4]  Its

2  ploy fails miserably.[5]

3      **A.      Rule 201 is Not a Substitute for Admissible Evidence**

4          Upon a properly supported request by a party, a federal court may take

5  judicial notice of adjudicative facts.  Fed. R. Evid. 201(a), (d).  Facts subject to judicial

6  notice are those which are either "(1) generally known within the territorial jurisdiction of

7  the trial court or (2) capable of accurate and ready determination by resort to sources

8  whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  However, a

9  court may not take judicial notice of a matter that is in dispute.  Lee v. City of Los

10 Angeles, 250 F.3d 668, 690 (9th Cir. 2001).  At all times, the party requesting judicial

11 notice bears the burden of persuading the court that the particular fact is not reasonably

12 subject to dispute and is capable of immediate and accurate determination by resort to a

13 source "whose accuracy cannot reasonably be questioned."  In re Tyrone F. Conner

14 Corp., Inc., 140 B.R. 771, 781 (E.D. Cal. 1992).  By relying on non-bankruptcy court

15 pleadings in an effort to prove that Petitioning Creditors' claims are in bona fide dispute,

16 the Debtor flouts the strict requirements and limitations of Rule 201.

17          Consequently, although Rule 201 allows a bankruptcy judge to take judicial

18 notice of a judicial or administrative proceeding which has a direct relation to the matters

19 at issue, a court can only take judicial notice of the existence of those matters of public

20 record, but not of the veracity of the arguments and disputed facts contained therein.

21 _____

22
23 [4] It was no accident that the Debtor did not submit declarations from either Jona or Rachel, as both of them are fearful of waiving their 5th Amendment rights in the face of possibly another criminal investigation or indictment.

24 [5] Rule 12(c) provides that when matters outside of the pleadings are considered by the court, a motion under Rule 12(b)(6) must be treated as a motion for summary judgment governed by Rule 56.  See In re
25 Rothery, 143 F.3d 546, 548-49 (9th Cir. 1998).  Under that rule, summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to
26 judgment as a matter of law." Fed. R. Civ. P. 56(a).  So even if this Court decides to allow the improperly introduced state court pleadings into evidence, this Court must find that there are genuine issues of
27 material fact regarding the bona fide status of Petitioning Creditors' claims, which, on its own, mandates denial of the Motion.

28

1    Similarly, a court may not take judicial notice of one party's opinion of how a matter of

2    public record should be interpreted or construed.  See <u>In re Sinclair</u>, 563 B.R. 554 (Bankr.

3    E.D. Cal. 2017).

4            Fairly stated, the Debtor is perverting the use of Rule 201 by advancing the

5    misleading notion that a court taking judicial notice of records means taking judicial notice

6    of the truth of facts asserted in every document in a court file, including pleadings and

7    affidavits.  As just illustrated, that proposition is utterly false.  A court, for instance, may

8    not take judicial notice of hearsay allegations as being true merely because they are part

9    of a court record or file.  In other words, the mere filing of a document with a court does

10    not magically result in the contents of the document attaining a sufficient degree of

11    reliability to overcome evidentiary objections such as hearsay to its admissibility in a trial

12    before a bankruptcy judge.

13            This is not a new principle.  As the Third Circuit noted in <u>In re</u>

14    <u>Aughenbaugh</u>, 125 F.2d 887 (3d Cir. 1942):

15            In passing upon this question we may consider only the

16            evidence which was presented to the referee at the hearing

17            upon the trustee's exceptions to the mortgagee's priority

18            claim.  We may not consider other evidence which may have

19            been in the files of the referee in the bankruptcy

20            administration proceeding.  To hold otherwise would be to

21            violate the fundamental concept of procedural due process

22            that a party to litigation is entitled to have the evidence relied

23            on by his opponent presented at the hearing of his case so

24            that he may have the opportunity to cross-examine his

25            opponents' witnesses and to offer evidence in rebuttal.

26    <u>Id.</u>, at 889.

27            As highlighted earlier, the Ninth Circuit's view of Rule 201 is no different.

28    See <u>M/V American Queen v. San Diego Marine Constr. Corp.</u>, 708 F.2d 1483, 1491 (9th

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   Cir. 1983) (although a court may take judicial notice of its own records, it cannot take

2   judicial notice of the truth of the contents of all documents found therein).  The taking of

3   judicial notice is often merely a way of simplifying the process of authenticating

4   documents which would generally require certification under Rules 901 and 902 of the

5   Federal Rules of Evidence, and overcoming Rule 1002's best evidence problems (in

6   other words, the concept that because they are in the court's own files they are accepted

7   as genuine).

8           It is clear, however, that authenticating a document does not automatically

9   insure its introduction into evidence in the face of other objections, such as hearsay and

10  relevancy.  As this Court itself has stated, while a bankruptcy judge may take judicial

11  notice of a bankruptcy court's and other tribunal's records, it "may not infer the truth of the

12  facts contained in documents, unfettered by rules of evidence of logic, simply because

13  such documents were filed with the court."  See Barry Russell, Bankruptcy Evidence

14  Manual, § 201.5 at 201 (West 1995).  See also In re Popple, 532 B.R. 581 (Bankr. M.D.

15  Pa. 2015) (bankruptcy court may take judicial notice of the docket events in a case and

16  the contents of the bankruptcy schedules to determine the timing and status of case

17  events, as well as other facts not reasonably in dispute, but not the truth of the facts

18  asserted in them).

19          Even if the Debtor is unwilling to accept the severe restrictions of Rule 201,

20  this Court is keenly aware of the distinction between taking judicial notice of the existence

21  of a document and the truth or falsity of any given document's contents.  In practical

22  effect, therefore, this Court is limited to a finding which is the equivalent of a certificate

23  regarding custody by a judge of a court of record of the court in which the record is kept.

24  This Court can glean nothing further from the hundreds of pages of state court

25  documents presented by the Debtor in support of its procedurally defective Motion.  In

26  other words, merely because this Court can use Rule 201 to find that the documents are

27  genuine does not mean that the Court can automatically accept as true the facts

28  contained in such documents.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1      This is especially true since the Debtor is attempting to use these

2  documents to prove adjudicative facts, in essence, that Petitioning Creditors' claims are

3  the subject of bona fide disputes.  See In re Carter, 570 B.R. 500, 502 n.1 (Bankr.

4  M.D.N.C. 2017) (there is a crucial distinction between taking judicial notice of the fact that

5  an entity has filed a document in the case, or in a related case, on a given date, i.e., the

6  existence thereof, and the taking of judicial notice of the truth or falsity of the contents of

7  any such document for the purpose of making a finding of fact); In re James, 300 B.R.

8  890, 895 (Bankr. W.D. Tex. 2003) (although related to a debtor's case, litigation is a

9  separate judicial proceeding, distinct from the collective proceeding referred to in

10  bankruptcy parlance as the "case" or "base case," therefore, the litigation record, even if it

11  may involve most of the same parties as in the base case, is clearly distinct and although

12  the court can take judicial notice that the documents exist, the litigation documents

13  cannot be admitted into evidence simply through invoking the doctrine of judicial notice).

14      Here, the Court has no choice but to deny the Debtor's request for judicial

15  notice.  The facts set forth in the designated documents are not "generally known within

16  the territorial jurisdiction of the trial court" or "capable of accurate and ready

17  determination by resort to sources whose accuracy cannot reasonably be questioned."

18  By asking the Court to make a finding that Petitioning Creditors' claims are in bona fide

19  dispute merely be attaching state court pleadings and making casual observations about

20  their contents is an improper use of Rule 201.  With no other evidence, the Court simply

21  cannot make such a finding in the confines of this Motion.  See United States v. Ritchie,

22  342 F.3d 903, 908-09 (9th Cir. 2003) (court cannot take judicial notice of underlying facts

23  relevant to the adjudication of a case unless they fit the requirements of Rule 201); NAC

24  Foundation, LLC v. Jodoin, 2017 U.S. Dist. LEXIS 49050 (D. Nev. March 31, 2017)

25  (declining to take judicial notice of declarations in support of pleadings alleging specific

26  statements made by defendant pursuant to Rule 12(b)(6)).

27

28

**B.**    **With Rare Exceptions Not Present Here, the Ninth Circuit**

**Disfavors the Use of Rule 201 to Support a Rule 12(b) Motion**

With limited exceptions, "courts may not consider material outside the

pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the

Federal Rules of Civil Procedure." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988,

998 (9th Cir. 2018), cert. denied sub nom. Hagan v. Khoja, __ U.S. __, 139 S. Ct. 2615,

204 L. Ed. 2d 264 (2019).  Under one recognized exception, a court can take judicial

notice within the limits of Rule 201(c)(2).  However, as noted, courts "cannot take judicial

notice of the contents of documents for the truth of the matters asserted therein when the

facts are disputed." Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC, 268 F. Supp. 3d 1029

(N.D. Cal. 2017).

The Ninth Circuit recently expressed frustration with "[t]he overuse and

improper application of judicial notice," explaining that "[d]efendants face an alluring

temptation to pile on numerous documents to their motions to dismiss to undermine the

complaint, and hopefully dismiss the case at an early stage.  Yet the unscrupulous use of

extrinsic documents to resolve competing theories against the complaint risks premature

dismissals of plausible claims that may turn out to be valid after discovery." Khoja, 899

F.3d at 998.  In particular, the Khoja Court emphasized that courts should tread carefully

in judicially noticing the contents of a record to contradict the complaint's operative

allegations where "there is a reasonable dispute as to what the [record] establishes." Id.,

at 1001.  See also Rollins v. Dignity Health, 338 F. Supp. 3d 1025, 1031 (N.D. Cal. 2018)

("Defendants repeatedly do what Khoja forbids - ask the Court to take judicial notice of

documents that they then use as a basis to challenge the factual averments in the

complaint.").

In line with Khoja, this Court must refrain from permitting the Debtor to use

Rule 201 as a basis to defeat the averments in the involuntary petition, namely, that

Petitioning Creditors possess claims which satisfy the statutory requirements of Section

303(b).  If the Debtor wants to challenge the bona fide status of the claims, then it first

1  must be required to answer the involuntary petition, and file its Rule 1003(b) creditor list,

2  after which the parties can avail themselves of the wide range of discovery devices

3  available to them before trial.[6]  In fact, Petitioning Creditors welcome the opportunity to

4  rebut the inaccuracies and misrepresentations littered throughout the Motion, and subject

5  the Rechnitz's to cross-examination.

6                                                    **V.**

7            **THE PETITIONING CREDITORS' CLAIMS ARE NOT IN BONA FIDE DISPUTE**

8            To commence involuntary bankruptcy proceedings against a debtor, a

9  creditor must be a holder of a claim against the debtor that is not contingent as to liability

10  or the subject of a bona fide dispute as to liability or amount and such noncontingent,

11  undisputed claims must aggregate at least $16,750 more than the value of any lien on

12  property of the debtor securing such claims held by the holders of such claims.  11

13  U.S.C. § 303(b)(1).  Despite the Ninth Circuit's decision in Dep't of Revenue v. Blixseth,

14  942 F.3d 1179 (9th Cir. 2019) that a creditor whose claim is the subject of a bona fide

15  dispute as to amount lacks standing to serve as a petitioning creditor under Section

16  303(b)(1), even if a portion of the claim amount is undisputed, there is no basis for this

17  Court to render such a finding at this time.

18            Initially, the Court must refrain from adopting the Debtor's blatantly false

19  premise that pending or unresolved litigation is evidence of a bona fide dispute.  Aside

20  from the fact that the Debtor only cites two cases from the Fifth and Second Circuits for

21  this proposition, the Ninth Circuit expressly rejects such a bright-line test.  In fact, in

22  Vortex Fishing, the Ninth Circuit unequivocally stated that "the mere existence of pending

23  litigation or the filing of an answer is insufficient to establish the existence of a bona fide

24  _____

25  [6] Where trial is required to adjudicate an involuntary petition, Rule 1018 of the Federal Rules of Bankruptcy
Procedure incorporates many procedural rules and expressly provides that references to adversary
26  proceeding therein include a reference to a proceeding to contest an involuntary petition.  Several of the
incorporated rules, including Rule 26 of the Federal Rules of Civil Procedure, are therefore available to
27  provide the parties with the information they need to either contest or defend the involuntary petition at trial.
QDOS, 607 B.R. at 346.

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  dispute." <u>Vortex Fishing</u>, 277 F.3d at 1066.[7]  <u>Blixseth</u> did not alter this fundamental rule.

2  See also <u>In re Norriss Bros. Lumber Co.</u>, 133 B.R. 599, 604 (Bankr. N.D. Tex. 1991)

3  ("The mere existence of State Court litigation and the assertion by an alleged debtor of

4  various defenses or counterclaims is not per se a bona fide dispute."); <u>In re TLC Med.</u>

5  <u>Grp., Inc.</u>, 2005 Bankr. LEXIS 2959 (E.D. La. March 4, 2005) ("Generally, the existence

6  of pending litigation between the debtor and creditor does not make the claim subject per

7  se a bona fide dispute.").

8           As addressed earlier, for purposes of a Rule 12(b)(6) motion, Petitioning

9  Creditors' allegations in the court-approved involuntary petition form regarding the nature

10 and amount of their claims, in the absence of affidavits or evidence to the contrary, must

11 be accepted as true for purposes of a motion to dismiss.  Once a petitioning creditor

12 establishes a prima facie case that no bona fide dispute exists, the burden shifts to the

13 alleged debtor to present evidence demonstrating that a bona fide dispute does exist.  <u>In</u>

14 <u>re Biogenetic Technologies, Inc.</u>, 248 B.R. 852, 856 (Bankr. M.D. Fla. 1999).  "Otherwise,

15 any debtor could defeat an involuntary petition under § 303(h)(1) by merely asserting that

16 a bona fide dispute exists."  <u>In re Taylor</u>, 75 B.R. 682, 684 (N.D. Ill. 1987).

17          In response to the involuntary petition, the Debtor has not introduced any

18 admissible or relevant evidence, never mind evidence which demonstrates that any of

19 Petitioning Creditors' claims are the subject of bona fide disputes.  Rather, all the Debtor

20 can muster are unsupported legal conclusions and suppositions.[8]

21          For example, the Debtor contends that Noval's claim is subject to a bona

22 fide dispute because litigation is pending, the Debtor allegedly made re-payments that

23 are not reflected in Noval's claim, the claim has not been reduced by the liquidation of the

24 _____

25 [7] In any event, only the claims of Marco and Noval were the subject of pre-petition litigation.

26 [8] Local Bankruptcy Rule 9013-1(c)(3) requires that a motion be supported by all documentary evidence that
the moving party intends to rely on in support of the motion, including declarations.  Therefore, to the extent
27 the Debtor attempts to ameliorate its evidentiary deficiencies by introducing evidence in its reply,
Petitioning Creditors intend to file the necessary motion to strike the inappropriately submitted evidence.

28

DAL 2700550v1

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    Bugatti, Noval is charging usurious interest, and a third party may be claiming an

2    entitlement to any sums paid by the Debtor to Noval.  The Debtor makes similar vague

3    and unsupported allegations regarding Marco's claim.

4           In this regard, the Debtor claims that Marco's claim is disputed because

5    litigation is pending, Marco's claims are against Jona and not the Debtor (even though

6    the Debtor concedes that it was not named a defendant in the litigation because of the

7    automatic stay and, as readily demonstrated, Jona and Jadelle are legally

8    indistinguishable), that certain of the invoices are fabricated, and that the Debtor

9    allegedly made re-payments that are not reflected in Marco's claim.  First International's

10   claim, according to the Debtor, also is subject to a bona fide dispute since the Debtor is

11   unclear how the claim was calculated, First International is pursuing duplicate claims, it is

12   seeking damages based on the value of the misappropriated jewelry as opposed to its

13   cost, and First International's claim should not include amounts that it paid to acquire

14   jewelry that did not belong to it, and the Debtor should be credited for the value of those

15   items.

16          Of course, there is no evidence supporting any of these purported disputes.

17   Rather, in arguing that there are bona fide disputes, the Debtor has resorted to "an

18   approach aptly described by the Tenth Circuit in another context as 'throw - as - much -

19   mud - against - the - wall - as - you - can - and - hope - some - of - it - sticks.'"  See Cook

20   v. Rockwell Int'l Corp., 580 F. Supp. 2d 1071, 1086 (D. Col. 2006) (quoting Dodd Ins.

21   Servs., Inc. v. Royal Ins. Co., 935 F.2d 1152, 1158 (10th Cir. 1991)).  "This approach is

22   rarely, if ever, effective."  Protect Lake Pleasant, LLC v. Connor, 2010 U.S. Dist. LEXIS

23   77991, *141 (D. Ariz. July 29, 2010).  Here, the result is undeveloped and ultimately

24   unpersuasive arguments which can only be tested by discovery and an evidentiary

25   hearing.[9]

26   _____

27   [9] And if there were lingering questions regarding the bona fide status of Petitioning Creditors' claims, those
     concerns were answered in the "Declaration of Oved Anter in Support of Petitioning Creditors' Motion for
28   (footnote continued)

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1        And even if there is any truth to these allegations, which, up until the date of

2   the Motion have never been raised by the Debtor or the Rechnitz's, at most they are

3   potential counterclaims or defenses.  To be given any credence, the counterclaims or

4   defenses themselves must be "bona fide."  In other words, while the existence of

5   counterclaims or defenses may establish that a dispute exists, they do not establish that

6   a "bona fide" dispute exists.  Vortex Fishing, 277 F.3d at 1066 (9th Cir. 2007) (the

7   existence of a counterclaim does not automatically render the claim subject to a bona fide

8   dispute); accord In re Onyx Telecomms., Ltd., 60 B.R. 492, 495-96 (Bankr. S.D.N.Y.

9   1985); Norriss Bros., 133 B.R. at 604; In re High Plains Inv., Inc., 2012 Bankr. LEXIS

10  6071 (Bankr. S.D. Iowa Sept. 13, 2012).

11       In a word, the Debtor simply has manufactured these "disputes" in order to

12  defeat the involuntary petition.  To date, despite ample opportunity, the Debtor has never

13  questioned Petitioning Creditors' claims whether as to liability or amount.  Only on the

14  eve of the entry of an order for relief did the Debtor first decide to concoct imaginative

15  theories to bolster its fabricated allegations of bona fide disputes.  Moreover, it is well

16  established that the previous recognition of a debt is evidence that no bona fide dispute

17  exists, and that a putative debtor's self-serving testimony is insufficient to prove the

18  existence of a bona fide dispute.  See In re CorrLine Int'l, LLC, 516 B.R. 106, 148 (Bankr.

19  S.D. Tex. 2014); In re Faberge Rest. of Florida, Inc., 222 B.R. 385, 389 (Bankr. S.D. Fla.

20  1997).  Because the standard is an objective one, a debtor's subjective intent or belief is

21  irrelevant, and the mere or conclusory denial of a claim's validity or amount is not

22  sufficient to create a bona fide dispute.  Mechanical Inc. v. BDC 56 LLC (In re BDC LLC),

23  330 F.3d 111, 118 (2d Cir. 2003); Rimell v. Mark Twain Bank (In re Rimell), 946 F.2d

24  1363, 1365 (8th Cir. 1991).

25  _____

26  Appointment of Interim Chapter 7 Trustee" [Docket No. 15], the "Declaration of Victor Franco Noval in
    Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee" [Docket No. 16], and
27  the "Declaration of Peter Marco in Support of Petitioning Creditors' Motion for Appointment of Interim
    Chapter 7 Trustee" [Docket No. 17], each filed on May 19, 2020.

28

1    Here, once the Court looks beyond the self-serving rhetoric and judges the

2    Motion on its vacuous evidentiary record, it cannot find that Petitioning Creditors' claims

3    are subject to bona fide disputes.

4                                   **VI.**

5    **THE NINTH CIRCUIT DOES NOT RECOGNIZE THE DISMISSAL OF INVOLUNTARY**

6                    **PETITIONS FOR "BAD FAITH" AND THERE ARE NO**

7                         **FACTS SUPPORTING SUCH A FINDING**

8    Noticeably absent from the Motion is any Ninth Circuit decision permitting

9    an involuntary petition to be dismissed on the grounds of "bad faith," a phrase which is

10    not defined by the Code.  And although the Debtor provides a litany of non-binding

11    decisions which have dismissed involuntary petitions for bad faith, this Court is not

12    compelled to follow them, especially since doing so would violate the Supreme Court's

13    edict prohibiting courts from using 11 U.S.C. § 105(a) to create substantive rights that are

14    otherwise unavailable under applicable law.[10]

15    Section 303(b) governs the standing requirements of petitioning creditors

16    filing involuntary petitions against alleged debtors.  Good faith is not an explicit

17    requirement for granting involuntary relief under Section 303.  See 2 <u>Collier on</u>

18    <u>Bankruptcy</u> ¶ 303.16 (16th 2020) (Section 303 "does not require that an involuntary

19    petition be filed in good faith[.]").  As such, bad faith is not an independent cause of

20    dismissal (or defense) for involuntary bankruptcy proceedings under Section 303(b) and

21    the Court should not apply principles of equity under Section 105(a) to create exceptions

22    that do not exist according to the Bankruptcy Code.

23

24

25

_____

[10] In fact, the only case the Debtor refers to within this district - <u>In re WLB-RSK Venture</u>, 296 B.R. 509
26    (Bankr. C.D. Cal. 2003) - does not even support the Debtor's argument that the Code permits the dismissal
of an involuntary petition for bad faith.  At most, the Court states that the Code "seems to imply" that an
27    involuntary petition can be dismissed for bad faith.  This is far from a definitive ruling, and the decision has
no precedential effect on this Court in any event.

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    The Supreme Court in <u>Law v. Siegel</u>, 571 U.S. 415, 134 S. Ct. 1188, 188 L.

2  Ed. 2d 146 (2014) expressly restricted the use of equity in bankruptcy to expand the text

3  of the Bankruptcy Code.  See <u>In re Reyes Colon</u>, 558 B.R. 563 (Bankr. D.P.R. 2016)

4  (following <u>Law</u>, court refused to create an exception to requirements to commence an

5  involuntary petition pursuant to Section 303(b) based on equity principles).  Although

6  court have considered "bad faith" as an independent basis for dismissal of voluntary

7  petitions, there is no reason this Court should depart from <u>Law</u> and equate voluntary and

8  involuntary petitions and their requirements under the equitable powers of Section

9  105(a).  In short, the Court should not incorporate to the Bankruptcy Code additional

10  provisions that were purposely excluded by Congress because equitable powers under

11  Section 105(a) do "not authorize the bankruptcy courts to create substantive rights that

12  are otherwise unavailable under applicable law, or constitute a roving commission to do

13  equity."  <u>United States v. Sutton</u>, 786 F. 2d 1305, 1308 (5th Cir. 1986).

14    What is more, for involuntary relief to be granted pursuant to Section 303(b)

15  the following requirements must be satisfied: (i) the involuntary petition must be filed by at

16  least three petitioning creditors; (ii) with claims that are not contingent as to liability or that

17  are not the subject of a bona fide dispute as to liability or amount; and (iii) whose

18  unsecured, noncontingent, undisputed claims are at least in the aggregate amount of

19  $16,750.  11 U.S.C. § 303(b).  Section 303(b) does not provide for the inclusion of

20  additional requirements to granting an involuntary petition given that it does not include a

21  non-exhaustive list of additional requirements anteceded by the word "including."

22    Conversely, Section 303 contains a limited and exhaustive list of

23  requirements for granting or denying an order for relief in relation to an involuntary

24  petition.  The term "bad faith" is not included in Section 303(b) or (h) as a defense to be

25  raised by the debtor upon the petitioning creditors' filing of an involuntary petition.

26  Therefore, there is no statutory requirement that the petitioning creditors commence an

27  involuntary petition in good faith.  See <u>In re Datacom Sys.</u>, 2015 Bankr. LEXIS 4579

28  (Bankr. D. Nev. 2015) (it is generally inappropriate for a bankruptcy court to consider the

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  good faith or bad faith of petitioning creditors when deciding whether to enter an order for

2  relief, as a result, bankruptcy courts do not ordinarily reach the issue of bad faith unless

3  and until an involuntary petition is dismissed).

4         In fact, only Section 303(i)(2) includes the term "bad faith" in connection

5  with the possible awarding of damages if a court dismisses an involuntary petition.

6  Section 303(i)(2) provides in pertinent part:

7             (i) [i]f the court dismisses a petition under this section other

8             than on consent of all petitioners and the debtor, and if the

9             debtor does not waive the right to judgment under this

10            subsection, the court may grant judgment -

11            (1) against the petitioners and in favor of the debtor for -

12            (A) costs; or

13            (B) a reasonable attorney's fee; or

14            (2) against any petitioners that filed the petition in bad faith,

15            for -

16            (A) any damages proximately cause by such filing; or

17            (B) punitive damages.

18  11 U.S.C. § 303(i)(2).

19         Since bad faith is only mentioned in Section 303(i)(2), in which bad faith is a

20  requirement for the recovery of actual or punitive damages after an involuntary petition is

21  dismissed, if the petitioning creditors meet the initial statutory requirements pursuant to

22  Section 303, as Petitioning Creditors do here, a finding of bad faith is inappropriate.  See

23  In re Kennedy, 504 B.R. 815, 823-24 (Bankr. S.D. Miss. 2014).

24         Consequently, the Court should limit its analysis of Section 303 to the clear

25  and unequivocal language of the statute as "it is also where the inquiry should end, for

26  where, as here, the statute's language is plain, 'the sole function of the courts is to

27  enforce it according to its terms.'"  United States v. Ron Pair Enterprises, Inc., 489 U.S.

28  235, 241, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989).  Here, the language of Section 303

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   is clear because the terms "bad faith," "good faith," and the term "cause" as a non-

2   exhaustive basis for dismissal are not included in this section, but have been explicitly

3   included in other sections of the Code such as 11 U.S.C. §§ 1112(b)(1), 921(c), 930(a),

4   707(a), 1208(c), and 1307(c).

5         Therefore, under Section 303(b), it is irrelevant whether any involuntary

6   bankruptcy petitions are filed in good or bad faith because such requirement is lacking in

7   this particular statute.  Likewise, "since bad faith was explicitly included in section

8   303(i)(2) but explicitly excluded from the rest of section 303, this Court should find that if

9   Congress had intended to include 'bad faith' as a defense or as an independent basis for

10  dismissal of an involuntary petition, it would have included the term in that particular

11  section of the Code or it would have created a non-exhaustive list of bases for dismissal

12  for 'cause.'  Applying equity under section 105 following the <u>Law</u> determination would

13  equate erroneously and unfoundedly with assuming 'that Congress has omitted from its

14  adopted text requirements that it nonetheless intends to apply,' particularly, 'when

15  Congress has shown elsewhere in the same statute that it knows how to make such a

16  requirement manifest.'"  <u>Watt v. GMAC Mortg. Corp.</u>, 457 F.3d 781, 783 (8th Cir. 2006).

17        Thus, based upon case law regarding statutory interpretation of the Code

18  as applied by <u>Law</u>, the explicit exclusion of a good faith requirement in the filing of an

19  involuntary petition was not the result of inadvertence, given that, "[u]nder normal

20  statutory construction, we would not assume that the failure to include some item in a

21  statute is an oversight that the court may correct."  <u>United States v. Neal</u>, 249 F.3d 1251,

22  1255 (10th Cir. 2001).

23        To reiterate, "bad faith" is mentioned only in Section 303(i), which

24  "contemplates bad faith only as a requirement for the recovery of punitive damages after

25  the involuntary petition is dismissed."  <u>Kennedy</u>, 504 B.R. at 823-24; see also <u>Kidwell</u>,

26  158 B.R. at 217 (Section 303(i) "makes plain that bad faith is not relevant unless

27  consequential and punitive damages are under consideration.").  Simply put, if the

28  petitioning creditors satisfy "the prerequisite requirements under § 303, 'a finding of bad

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  faith [is] inappropriate.'" Aigner v. McMillan (In re McMillan), 2013 Bankr. LEXIS 2269

2  (Bankr. N.D. Tex. June 4, 2013) (bad faith only becomes relevant in assessing a request

3  for damages under Section 303(i)(2)).  For these reasons, the Court cannot dismiss the

4  involuntary petition on the alleged basis of bad faith.

5          But even if the judicially-created "good faith" requirement renders a finding

6  of bad faith sufficient to dismiss an involuntary petition, the Court cannot find that

7  Petitioning Creditors acted in bad faith.  As a reminder, an involuntary petition enjoys a

8  presumption of good faith, and a debtor bears the burden to show, by a preponderance of

9  the evidence, that the filing was in bad faith.  See Lubow Machine Co. v. Bayshore Wire

10 Products Corp. (In re Bayshore Wire Products Corp.), 209 F.3d 100, 105 (2d Cir. 2000);

11 In re Synergistic Techs., 2007 Bankr. LEXIS 2660 (Bankr. N.D. Tex. Aug. 6, 2007); In re

12 Alta Title Co., 55 B.R. 133 (Bankr. D. Utah 1985).

13         Here, although the Debtor attempts to impute wrongful motives to

14 Petitioning Creditors, there is no evidence, let alone a preponderance of the evidence,

15 supporting any of its contentions.  Generally, bad faith is dependent upon a finding that

16 the petitioner acted with illegitimate purposes and/or objectives.  There is no evidence in

17 the record that Petitioning Creditors sought relief under Section 303 for a purpose other

18 than to cause the Debtor's assets to be recovered and dedicated to satisfying the debts

19 of all creditors.  In addition, since the involuntary petition satisfies Section 303(h)(1),

20 Petitioning Creditors, as a matter of law, had sufficient basis to believe that involuntary

21 relief was proper to avoid a finding of bad faith.

22         More to the point, each of the Debtor's contrived reasons that the

23 involuntary petition was filed in bad faith are based not on fact, but on conjecture and

24 sheer legal speculation.

25         For instance, in order to excuse its failure to even attempt to demonstrate

26 that bona fide disputes exist, the Debtor contends that the mere fact that litigation is

27 pending is evidence of bona fide disputes.  Contrary to the Debtor's contention, this is not

28 the law of the Ninth Circuit.  As emphasized earlier, the Ninth Circuit, in Vortex Fishing,

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   specifically rejected the notion that the mere pendency of litigation or the filing of an

2   answer is sufficient to establish the existence of a bona fide dispute.  Vortex Fishing, 277

3   F.3d at 1066.  Even the Ninth Circuit's decision in Blixseth does not state that the bare

4   existence of pending litigation evidences a bona fide dispute.  As such, pending litigation

5   between the Debtor and certain of Petitioning Creditors cannot possibly serve as a basis

6   for a bad faith finding.

7         Next, the Debtor asserts, again without any legal authority, that a petitioning

8   creditor must exhaust all available state law remedies before an involuntary is

9   commenced, or risk a finding of bad faith.  The Debtor makes no attempt to define what is

10   meant by this requirement, and what constitutes the exhaustion of a state law remedy.

11   Such a definition is irrelevant, however, since there is no law supporting such a draconian

12   restriction on when an involuntary petition can be filed; Section 303(b) certainly imposes

13   no such requirement.  See Kennedy, 504 B.R. at 827 (although the complete failure to

14   pursue state-law remedies may amount to bad faith in the Eleventh Circuit, there is no

15   rule requiring the exhaustion of all possible state-law collection remedies before filing an

16   involuntary petition).

17         The suggestion that Petitioning Creditors engaged in bad faith since they

18   are "forum shopping" or they have taken "inconsistent positions" suffers from the same

19   infirmities as the Debtor's other unpersuasive bad faith arguments.  As illustrated, there is

20   no restriction placed on petitioning creditors who have previously commenced state court

21   actions against an alleged debtor, and there certainly is no evidence that Petitioning

22   Creditors have adopted inconsistent positions with respect to their claims that would

23   warrant a bad faith finding.  And, as noted by the court in Synergistic, forum shopping in

24   the context of involuntary petitions is perfectly acceptable.  Synergistic, 2007 Bankr.

25   LEXIS 2660 at *20 (petitioning creditors may file involuntary petitions to accomplish a

26   more orderly, supervised liquidation of the company than might be accomplished outside

27   the bankruptcy court).

28

1    Further, if this bankruptcy case proceeds, creditors would have a single

2    forum in which to seek an orderly liquidation and pursue the efficient resolution of any

3    preference or fraudulent transfer actions that may exist, which is certainly a proper motive

4    to initiate an involuntary case.  See In re Tucker, 2011 U.S. Dist. LEXIS 125972 (Bankr.

5    N.D. W. Va. Oct. 31, 2011) (noting that alleged debtor "failed to show how invoking the

6    bankruptcy court's jurisdiction to recover and liquidate property for his bankruptcy estate

7    is not something that a reasonable person in the position of the petitioning creditors

8    would attempt" and stating that petitioning creditors can properly be motivated by a desire

9    to recover fraudulent transfers and to initiate a liquidation of an alleged debtor's assets,

10    both of which goals can be achieved through the bankruptcy process).

11    As the court in In re Cook, 384 B.R. 282 (Bankr. N.D. Ala. 2008) sensibly

12    acknowledged:

13    *When a creditor discovers his debtor is making preferential*

14    *payments, providing collateral to rival creditors, suffering*

15    *default or consent judgments, executing fraudulent transfers,*

16    *or expending limited resources defending other creditors'*

17    *lawsuits and foreclosure actions in multiple forums, or when*

18    *the creditor finds himself in litigation with the debtor and*

19    *competing creditors in an unfriendly jurisdiction, an*

20    *involuntary bankruptcy petition against the debtor may be an*

21    *attractive remedy.*  If one or more of these circumstances is

22    the reason a creditor files an involuntary petition against a

23    debtor, it may indeed be considered forum shopping.

24    *However, it is forum shopping permitted by Congress* and is

25    not unlike removal of a civil action to federal district court

26    based on diversity of citizenship of the parties because a

27    defendant is uncomfortable in a foreign state court and

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    believes he will receive a more favorable result in district

2    court.

3    Id., at 294.  (Emphasis added).

4    The Debtor's due process concerns are equally spurious.  Petitioning

5    Creditors are not seeking to abridge any Constitutional rights the Debtor may have once

6    an order for relief is entered.  This Circuit already has disregarded such concerns as a

7    basis to dismiss an involuntary petition.  See Knedlik v. Spark Networks Ltd. (In re

8    Knedlik), 2008 Bankr. LEXIS 4670 (B.A.P. 9th Cir. 2008) (the privilege against self-

9    incrimination applies to bankruptcy proceedings).  The illusory deprivation of the Debtor's

10    due process rights, therefore, cannot possibly form the basis of a bad faith finding.

11    In sum, even if an involuntary petition can be dismissed upon a finding of

12    bad faith, the Debtor's arguments are based upon unsupported and contradictory

13    allegations that fail to establish any semblance of bad faith.  Even though Petitioning

14    Creditors could themselves benefit from dismissal, since two of them already have

15    commenced state court litigation, they have set aside their own self-interests in favor of

16    an independent trustee who will investigate the Debtor's financial affairs.  By filing the

17    involuntary petition, Petitioning Creditors have ensured that piecemeal litigation will be

18    halted and other unsecured creditors will be able to share in the dividends from the

19    bankruptcy estate.  Therefore, the Debtor's request for dismissal on the grounds of bad

20    faith is unfounded and should not be used as an alternative remedy for a motion to

21    dismiss.

22                                          **VII.**

23    **THE DEBTOR'S REQUEST FOR ATTORNEY'S FEES, COSTS, AND DAMAGES**

24                                  **IS PREMATURE**

25    Although the Debtor claims that it is entitled to attorney's fees and costs,

26    the plain language of Section 303(i) reveals that it only applies after a case is dismissed.

27    In other words, the Debtor's request for damages entirely is premature.  See In re S.

28    California Sunbelt Developers, Inc., 608 F.3d 456, 462 (9th Cir. 2010) ("Fees may not be

1  awarded unless the court dismisses a petition"); <u>In re Corn-Pro Nonstock Co-op., Inc.</u>,

2  317 B.R. 56 (B.A.P. 8th Cir. 2004) ("The plain language of this section requires dismissal

3  before the alleged debtor becomes entitled to damages.").

4         In addition, Rule 1018 of the Federal Rules of Bankruptcy Procedure

5  provides that Rule 7054 applies to adversary proceedings.  Rule 7054(b)(2)(A), which

6  incorporates Rule 54(d)(2)(A) of the Federal Rules of Civil Procedure, expressly requires

7  a claim for attorney's fees to be made by a separate motion.  As such, presuming the

8  involuntary petition is dismissed, the Debtor must then file a separate motion seeking

9  attorney's fees and costs, which Petitioning Creditors will respond to in due course.  Any

10 request for attorney's fees in the context of this Motion, therefore, must be denied.

11                                **VIII.**

12 <u>**IF THE MOTION IS GRANTED, IN WHOLE OR IN PART, PETITIONING CREDITORS**</u>

13 <u>**MUST BE PERMITTED LEAVE TO AMEND THE INVOLUNTARY PETITION**</u>

14 <u>**TO CORRECT ANY PERCEIVED DEFICIENCIES**</u>

15        To whatever extent, if any, this Court finds merit to the conclusory

16 statements in the Motion, leave to amend the petition should be granted.  Rule 7015(a)(2)

17 of the Federal Rules of Bankruptcy Procedure provides that a court "should freely give

18 leave [to amend a complaint] when justice so requires."  Fed. R. Bankr. P. 7015(a)(2).

19 The rule, moreover, should be interpreted with "extreme liberality."  <u>United States v.</u>

20 <u>Webb</u>, 655 F.2d 977, 979 (9th Cir. 1981).  "[D]ismissal without leave to amend is

21 improper unless it is clear … that the complaint could not be saved by any amendment."

22 <u>Polich v. Burlington North, Inc.</u>, 942 F.2d 1467, 1472 (9th Cir. 1991).  In addition, when

23 granting a motion to dismiss, a court "is generally required to grant the plaintiff leave to

24 amend, even if no request to amend the pleading was made."  <u>In re Rackable Systems,</u>

25 <u>Inc. Securities Litigation</u>, 2010 U.S. Dist. LEXIS 2663, *9 (N.D. Cal. 2010) (citing <u>Cook,</u>

26 <u>Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.</u>, 911 F.2d 242, 246-47 (9th Cir.

27 1990)).

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    Indeed, dismissal without leave to amend is proper only in extraordinary

2  cases.  See <u>Broam v. Bogan</u>, 320 F.3d 1023, 1028 (9th Cir. 2003) (citing <u>United States v.</u>

3  <u>City of Redwood City</u>, 640 F.2d 963, 966 (9th Cir. 1981)); <u>Angelov v. Wilshire Bancorp,</u>

4  <u>Inc.</u>, 331 Fed. Appx. 471, 472 (9th Cir. 2009).  Where it appears that a complaint may be

5  saved by the allegation of additional facts, the complaint should not be dismissed without

6  leave to amend.  See <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[A]

7  district court should grant leave to amend ... unless it determines that the pleading could

8  not possibly be cured by the allegation of other facts").

9    Whether leave to amend should be granted is generally determined by

10  considering the following factors:  (i) undue delay; (ii) bad faith; (iii) futility of amendment;

11  and (iv) prejudice to the opposing party.  See <u>Texaco, Inc. v. Ponsoldt</u>, 939 F.2d 794, 798

12  (9th Cir. 1991).  Prejudice to the opposing party is the most important factor.  See <u>Zenith</u>

13  <u>Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 330-31, 91 S. Ct. 795, 802-03, 28

14  L. Ed. 2d 77 (1971).  Here, the Debtor cannot demonstrate that an amendment would be

15  futile, would be in bad faith, or would cause prejudice.  In fact, by virtue of the clear

16  allegations in the involuntary petition, the Debtor is fully aware of the nature of the claims

17  asserted and the facts upon which Petitioning Creditors' claims are based.  Any attempt

18  to argue that it would be prejudiced if Petitioning Creditors were granted time to amend

19  the petition would be disingenuous.

20                                          **IX.**

21                                  <u>**CONCLUSION**</u>

22    Vague statements, which are not based on personal knowledge, are not

23  sufficient to create "an objective basis for either a factual or a legal dispute as to the

24  validity of the debt."  <u>Vortex Fishing</u>, 277 F.3d at 1064.  The Debtor's Motion, which

25  presumes to demonstrate that Petitioning Creditors' claims are subject to bona fide

26  disputes, must, therefore, be disregarded since it is nothing more than a series of

27  rambling and untested accusations and legal theories.  For purposes of a Rule 12(b)(6)

28  motion, Petitioning Creditors met their burden of proving, by a preponderance of the

1    evidence, that their claims against the Debtor are not subject to a bona fide dispute as to

2    liability or amount.  At that point, the burden of proof shifted to the Debtor to prove the

3    existence of such a bona fide dispute.  The Debtor failed to carry that burden of proof.

4    Petitioning Creditors now welcome a trial on these and other issues so the Court can

5    understand the depths and magnitude of the Debtor's fraud.  The Motion, therefore, must

6    be denied, and the Debtor forced to answer the petition and file its creditor list.

7    DATED: May 26, 2020                    **Sulmeyer**Kupetz
                                            A Professional Corporation
8

9

10                                          By: /s/ *Daniel A. Lev*                          
                                                Daniel A. Lev
11                                              Attorneys for Petitioning Creditors

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAL 2700550v1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): <u>PETITIONING CREDITORS' OPPOSITION TO PUTATIVE DEBTOR'S MOTION TO DISMISS INVOLUNTARY PETITION AND REQUEST FOR ATTORNEY'S FEES, COSTS, AND DAMAGES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>May 26, 2020</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠ Service information continued on attached page.

**2. <u>SERVED BY UNITED STATES MAIL</u>:**
On (*date*) <u>May 26, 2020</u> , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page.

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| May 26, 2020 | Cheryl Caldwell | */s/ Cheryl Caldwell* |
| *Date* | *Printed Name* | *Signature* |

CC 2701503v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                  **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION (if needed):**

**1.** **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **Baruch C Cohen**    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- **Daniel A Lev**    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- **Robert S Marticello**    Rmarticello@swelawfirm.com,
  gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- **Ronald N Richards**    ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- **Neal Salisian**    ECF@salisianlee.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

---

CC 2701503v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                 **F 9013-3.1.PROOF.SERVICE**