**SMILEY WANG-EKVALL, LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:     714 445-1000
Facsimile:     714 445-1002

Attorneys for Jadelle Jewelry and Diamonds, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>JADELLE JEWELRY AND DIAMONDS, LLC,<br><br>            Putative Debtor. | Case No. 2:20-bk-13530-BR<br><br>Chapter 7<br><br>**PUTATIVE DEBTOR'S OPPOSITION TO PETITIONING CREDITORS' MOTION FOR APPOINTMENT OF INTERIM CHAPTER 7 TRUSTEE**<br><br>**[Declaration of Levin Prado; Declaration of Marc Williams; Index of Exhibits; Request for Judicial Notice; Evidentiary Objections to Declaration of Oved Anter; Evidentiary Objections to Declaration of Victor Franco Noval; Evidentiary Objections to Declaration of Peter Marco; Evidentiary Objections to Declaration of Ronald Richards; and Evidentiary Objections to Request for Judicial Notice Filed Concurrently]**<br><br>**DATE:   June 9, 2020**<br>**TIME:   10:00 a.m.**<br>**CTRM:  1668**<br>        **255 E. Temple Street**<br>        **Los Angeles, CA 90012** |

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2825668.1

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................1

II.    BACKGROUND .................................................................................................3

    A.    General Background .................................................................................3

    B.    Jadelle's Motion to Dismiss .....................................................................3

    C.    Victor Franco Noval .................................................................................4

        1.    The Noval Action .........................................................................4

        2.    The Temporary Stay of the Noval Action ...................................5

        3.    The Al-Sabah Action Against Noval ...........................................5

    D.    Peter Marco, LLC .....................................................................................6

        1.    The Marco Action .........................................................................6

    E.    First International Diamond, Inc. ..............................................................7

        1.    First International Diamond, Inc. Background.............................7

        2.    The Parties' Pre-Petition Communications .................................9

III.    THE MOTION MUST BE DENIED BECAUSE the petitioning creditors' claims
    are in bona fide dispute .................................................................................9

    A.    Petitioning Creditors Are Required to Demonstrate that an Order for Relief
        Will Be Entered as a Prerequisite to the Appointment of an Interim Trustee...........9

    B.    Binding Ninth Circuit Law—A Dispute as to Any Portion of a Claim
        Disqualifies the Petitioning Creditor ......................................................10

    C.    A Creditor Cannot Avoid a Dispute by Asserting a Claim in a Lesser
        Amount ....................................................................................................11

    D.    All Three Petitioning Creditors' Claims Are Disputed Litigation Claims ...............12

    E.    Noval's Alleged Claim is Subject to Bona Fide Disputes ......................13

        1.    Noval's Claim is Subject to Bona Fide Dispute Because He Seeks
            Unliquidated and Unproven Damages .....................................13

        2.    Noval's Conflicting Testimony Amounts to an Admission that his
            Claim is Subject to Bona Fide Dispute .......................................13

        3.    Noval's Claim is Subject to Bona Fide Dispute Because He Failed to
            Account for Payments Received ................................................14

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

4.  Noval's Claim is Subject to Bona Fide Dispute Because He Has Not Demonstrated that the Entire Amount is Due ...............15

5.  The Documents Attached to the Noval Declaration Further Demonstrate that Noval's Claim Is Subject to Bona Fide Disputes ...........15

6.  Noval's Claim Is Subject to Bona Fide Dispute Because He Is Charging Usurious Interest.........................................16

F.  Marco's Alleged Claim is Subject to Bona Fide Disputes ....................16

1.  Marco's Claim Is Subject to Bona Fide Dispute Because He Seeks to Collect for Items that Were Not Consigned to Jadelle................16

2.  The Marco Complaint Contains Judicial Admissions that Bona Fide Disputes Exist...................................................18

G.  First International's Alleged Claim is Subject to Bona Fide Disputes ...................19

1.  The Claims of First International and Marco Are in Bona Fide Dispute Because They Are, in Part, Seeking to Collect on the Same Claim ...............................................................19

2.  First International Is Taking Inconsistent Positions with Respect to Its Claim ............................................................20

3.  First International Has Failed to Substantiate Its Claim.............20

4.  First International Seeks to Collect for Amounts it Paid to Purchase Third Party Merchandise .............................................20

IV.  THE MOTION MUST BE DENIED BECAUSE THE PETITIONING CREDITORS HAVE NOT MET THEIR BURDEN OF DEMONSTRATING THAT AN INTERIM TRUSTEE IS NECESSARY .............................21

A.  The Appointment of a Trustee Is an Extraordinary Remedy ..................21

B.  The Petitioning Creditors Misstate the Legal Standard and Misquoted the Ninth Circuit.........................................................22

C.  The Petitioning Creditors Have Not Met the Extremely High Burden for an Interim Trustee ...........................................................24

1.  Evidence of the Prior Conviction Is Inadmissible and Irrelevant ............25

2.  The Petitioning Creditor's Unsupported and Disputed Allegations Do Not Support the Appointment of a Trustee ..........................26

V.  THE MOTION IS FURTHER EVIDENCE OF THE PETITIONING CREDITORS' BAD FAITH .................................................28

VI.  IF THE COURT GRANTS THE MOTION, BANKRUPTCY RULE 2001(b) REQUIRES THAT THE PETITIONING CREDITORS POST A BOND.....................29

VII.  CONCLUSION .......................................................30

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# TABLE OF AUTHORITIES

**Page**

## CASES

*Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1186 (9th Cir. 2019) ...................................... 2, 11, 14

*Harris v. U.S.*, 2003 WL 25781906, at *1 (C.D. Cal. 2003) ............................................................. 25

*Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 707 (9th Cir. 2004) ................................. 28

*Hill v. Douglass*, 78 F.2d 851, 854 (9th Cir. 1935) ................................................................ 22, 23

*In re Alpine Lumber & Nursery*, 13 B.R. 977, 978-79 (Bankr. S.D. Cal. 1981) ............................. 23

*In re BDC, 56 LLC,* 330 F.3d 111, 117-18 (2d Cir. 2003) ............................................................. 11

*In re Diamondhead Casino Corp.*, 540 B.R. 499, 505, 507, 508
    (Bankr. D. Del. 2015) ...................................................... 9, 21, 22, 24, 25, 26

*In re DiLorenzo, 61 B.R. 752, 754-55 (Bankr. S.D.N.Y. 1993)* .....................................................24

*In re Fine Diamonds, LLC*, 501 B.R. 159, 175, (Bankr. S.D.N.Y. 2013) ....................................... 23

*In re Gems N' Things, Inc.*, 60 B.R. 288, 287-89 (Bankr. S.D.N.Y. 1986) .................................... 23

*In re Green Hills Dev. Co., L.L.C.*, 741 F.3d 651, 659 (5th Cir. 2014) ......................................... 12

*In re Mountain Dairies, Inc.*, 372 B.R. 623, 626-27, 633, 635
    (Bankr. S.D.N.Y. 2007) ........................................... 11, 12, 14, 27, 28

*In re Professional Accountants Referral Services, Inc.*, 142 B.R. 424, 429, 430-431 (Bankr.
    D. Colo. 1992) ...................................................................... 10, 23

*In re Spade*, 269 B.R. 225 (D. Colo. 2001) .................................................................................. 28

*In re The Ctr. for Mgmt. & Tech., Inc.*, 2007 WL 3197221, at *6 (Bankr. D. Md. 2007) ........ 22, 29

*In re TPG Troy, LLC*, 492 B.R. 150, 159-60 (Bankr. S.D.N.Y. 2013) ........................................... 12

*In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1064 (9th Cir. 2001) ..................................... 11

*In re Weed*, 11 B.R. 755, 757 (Bankr. S.D. W.Va. 1981) ............................................................. 22

*In the Matter of Smith*, 243 B.R. 169 (Bankr. N.D. Ga. 1999) .................................................... 28

*Venture*, 296 B.R. 509 (Bankr. C.D. Cal. 2003) .......................................................................... 28

*Wilson v. City Bank*, 84 U.S. 473, 481-82 (1873) ....................................................................... 22

1

## STATUTES

2    11 U.S.C. § 105 ............................................................................................................ 23

3    11 U.S.C. § 303 ...................................................................................................... 10, 11

4    11 U.S.C. § 303(i) ......................................................................................................... 29

5    11 U.S.C. § 303(g) .................................................................................... 2, 21, 23, 25

6    California Business & Professions Code § 17200 ........................................................ 6

7

## OTHER AUTHORITIES

9    *Bankruptcy Evidence Manual* § 801.22 (2009-2010 ed., vol. 2). ................................. 24

10   Miller and Star, Cal. Real Estate § 37.42 (4th ed.) ................................................... 16

11

12   ## RULES

13   Bankruptcy Rule 2001(b) .............................................................................................. 29

14   Federal Rule of Civil Procedure 12(b) ........................................................................... 3

15   Federal Rule of Evidence 609 ...................................................................................... 25

16

17

18

19

20

21

22

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

Jadelle Jewelry and Diamonds, LLC, the putative debtor ("Jadelle"), hereby submits this opposition (the "Opposition") to the *Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* [Docket No. 12] (the "Motion") filed by First International Diamond, Inc. ("First International"), Peter Marco, LLC ("Marco"), and Victor Franco Noval ("Noval" and collectively with First International and Marco, the "Petitioning Creditors").  In support of the Opposition, Jadelle submits the concurrently filed Index of Exhibits, the Request for Judicial Notice, the Declarations of Levin Prado and Marc Williams, and evidentiary objections to the Declarations of Oved Anter [Docket No. 15] ("Anter Declaration"), Victor Franco Noval [Docket No. 16] ("Noval Declaration"), Peter Marco [Docket No. 17] ("Marco Declaration"), Ronald Richards [Docket No. 14] ("Richards Declaration") and the Petitioning Creditors' Request for Judicial Notice [Docket No. 13].

The Motion is to be heard on the same date as the *Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages* [Docket No. 8] (the "Motion to Dismiss").  Jadelle submits that the Motion to Dismiss should be heard and decided prior to the Motion.

## I.    <u>INTRODUCTION</u>

The Motion must be denied for at least three reasons:  (1) the Petitioning Creditors are not eligible to commence this case; (2) the Petitioning Creditors failed to sustain their evidentiary burden warranting the extraordinary relief of an interim trustee; and (3) the Petitioning Creditors commenced this case in bad faith.

***First***, the Petitioning Creditors must demonstrate that it is reasonably likely that an order for relief will be entered in this case as a prerequisite to the appointment of an interim trustee.  The Petitioning Creditors failed to satisfy (or even address) this threshold requirement.  For this reason alone, the Motion must be denied.

As briefed by Jadelle in the Motion to Dismiss, an order for relief cannot be entered in this case because the Petitioning Creditors are not eligible to commence it under binding Ninth Circuit

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  precedent.  According to the Ninth Circuit, a petitioning creditor is ineligible if *any portion* of its

2  claim is subject to a bona fide dispute.  *See Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1186 (9th

3  Cir. 2019).  The Petitioning Creditors' claims are subject to pending litigation in federal and state

4  court and there are multiple bona fide disputes as to liability and amount, any single one of which

5  disqualifies the Petitioning Creditors.  The Petitioning Creditors seek amounts that Jadelle simply

6  does not owe and damages that have yet to be liquidated based on unproven and disputed

7  allegations of fraud.  The Motion and the Petitioning Creditors' declarations confirm that bona fide

8  disputes exist.

9      *Second*, the Petitioning Creditors have not met the extremely high burden for an interim

10  trustee.  The Code requires that an interim trustee be ***necessary to preserve estate property or to***

11  ***prevent loss to the estate***.  *See* 11 U.S.C. § 303(g).  The Petitioning Creditors have not provided

12  any admissible evidence on this critical question.  Rather, the Motion is based entirely on the

13  inadmissible, irrelevant, and unrelated prior conviction of Mr. Jona Rechnitz.  The personal attack

14  on Mr. Rechnitz is a red herring meant to detract from the Petitioning Creditors' shortcomings—

15  their lack of supporting case law and admissible, relevant evidence.  Moreover, the Petitioning

16  Creditors' allegations of "unknown" victims and yet-to-be uncovered fraudulent transfers are pure

17  speculation.  The Petitioning Creditors' *allegations* do not warrant the extreme remedy of a trustee.

18  In short, the Petitioning Creditors have failed to allege, and substantiate with admissible evidence,

19  the standard that the Code requires—proof that an interim trustee is necessary to protect or

20  preserve property of the estate pending any order for relief.

21      *Third*, the Petitioning Creditors are acting in bad faith.  According to the Ninth Circuit, the

22  involuntary bankruptcy process should be a measure of *last resort* after a creditor pursues its

23  available state law remedies.  The pending litigation commenced by the Petitioning Creditors is

24  evidence in and of itself that state law remedies exist and have not been exhausted.  As the Motion

25  reinforces, the Petitioning Creditors are forum shopping to circumvent the stay of Noval's lawsuit

26  and obtain expedited relief on their disputed allegations.  Jadelle has been tasked with defending,

27  in 7 days, the same disputed and unproven allegations of fraud that are the subject of the pending

28  litigation.  Moreover, the Petitioning Creditors knew their claims were subject to bona fide

1  disputes, and yet, they still filed this case in the face of binding Ninth Circuit authority

2  establishing that they are ineligible.  The Petitioning Creditors have (1) misquoted Ninth Circuit

3  law, (2) taken inconsistent positions under penalty of perjury, and (3) provided inaccurate

4  testimony.  It also appears that one Petitioning Creditor, Marco, submitted fabricated evidence.

5  These are all further examples of bad faith.  Accordingly, Jadelle respectfully requests that the

6  Court deny the Motion and dismiss the case.

7

8  **II.    BACKGROUND**

9        **A.    General Background**

10        Jadelle is a Delaware limited liability company.  Rachel Rechnitz is Jadelle's managing

11  member.  Jona Rechnitz is Rachel's husband.

12        On April 6, 2020, the Petitioning Creditors filed an involuntary chapter 7 petition against

13  Jadelle [Docket No. 1] (the "Involuntary Petition").  Through the Involuntary Petition, the

14  Petitioning Creditors alleged claims against Jadelle under penalty of perjury in the following

15  amounts:

| Name of Petitioner | Claim Amount |
|---|---|
| Victor Franco Noval | $5,800,000 |
| Peter Marco, LLC | $7,676,744 |
| First International Diamond, Inc. | $1,976,225 |

21  (*See* Ex. 1 at Bates Stamp 7.)[1]

22        **B.    Jadelle's Motion to Dismiss**

23        On May 1, 2020, Jadelle filed the Motion to Dismiss.  Jadelle moved to dismiss the case

24  pursuant to Federal Rule of Civil Procedure 12(b) and based on controlling Ninth Circuit law

25  because the Petitioning Creditors' claims are subject to multiple bona fide disputes.  The Motion to

26

27        [1]    Unless otherwise specified, citations to exhibits herein are citations to the exhibits attached to

28  Jadelle's concurrently filed Index of Exhibits.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

1   Dismiss is set to be heard on the same date (June 9, 2020) and at the same time as the Motion.

2   The eligibility of the Petitioning Creditors to commence this case and the propriety of an order for

3   relief are issues raised by both motions.  However, Jadelle did not want to merely incorporate

4   arguments in the Motion to Dismiss herein by reference.  The background and certain arguments

5   concerning the bona fide disputes with the Petitioning Creditors' claims contained herein have

6   some overlap with, but are not identical to, those contained in the Motion to Dismiss.  This

7   Opposition takes into consideration and addresses the assertions in the Motion and the declarations

8   filed in support.  If the Court grants the Motion to Dismiss, the Petitioning Creditors' request for a

9   trustee is moot.  If the Court is inclined to deny the Motion to Dismiss, then the arguments

10  contained herein regarding the Petitioning Creditors' claims remain important due to the different

11  legal standards.

12      **C.    <u>Victor Franco Noval</u>**

13          **1.    <u>The Noval Action</u>**

14          On February 10, 2020, Noval filed a complaint in the Superior Court of the State of

15  California against Jadelle and five other defendants (the "Noval Action").  In his complaint (the

16  "Noval Complaint"), Noval asserts the following causes of action:  (1) fraud; (2) civil theft; (3)

17  breach of contract; and (4) conspiracy to commit theft, fraud, and fraud by concealment.  (*See* Ex.

18  2 at Bates Stamps 29-33.)  Despite listing his claim in the amount of $5.8 million in the

19  Involuntary Petition, in the Noval Complaint, Noval requests damages "in an amount to be proven

20  at trial, but at least $7,000,000," plus treble damages, attorneys' fees, costs of suit, and punitive

21  damages.  (*See id.* at Bates Stamp 31, ¶ 67, and Bates Stamp 33.)  Noval also seeks a constructive

22  trust concerning certain property and the appointment of a receiver over Jadelle.  (*See id.*)

23          Noval alleges that Jadelle owes him a debt pursuant to a Debt Acknowledgment,

24  Promissory Note and Security Agreement, which is attached to the Noval Complaint as Exhibit

25  "A" (the "Noval Agreement").  (*See id.* at Bates Stamp 22, ¶ 14, and Bates Stamp 32, ¶ 76.)

26  According to the Noval Agreement, Noval loaned Jadelle $2.85 million at 9% interest *per annum*.

27  (*See id.* at Bates Stamp 37.)  The Noval Agreement provides that the monthly interest-only

28  payments were to begin on April 1, 2019 and the maturity date for each installment is six months

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 ● Fax 714 445-1002

1    after such installment was advanced.  (*See id.*)  The Noval Agreement states that the $2.85 million

2    loan is secured by unspecified jewelry and a pledge of a 2012 Bugatti vehicle valued at $400,000.

3    (*See id.* at Bates Stamps 37-38.)  According to the Noval Complaint, the $7,000,000 in purported

4    damages constitutes the value of collateral given to Noval for the loans in the Noval Agreement.

5    (*See id.* at Bates Stamp 24, ¶ 29.)

6         In the Noval Complaint, Noval concedes that the Bugatti vehicle was liquidated and

7    alleges that the proceeds were credited against the principal debt in the amount of $400,000.  (*See

8    Id.* at Bates Stamp 23, ¶ 18.)

9         Noval asserts that he filed the Noval Complaint not because he expects to recover

10    anything, but because he wants to encourage criminal proceedings against the defendants.  (*See,

11    e.g.*, *id.* at Bates Stamp 27 ¶ 49, "At this point, Plaintiff has no realistic belief that Rechnitz will

12    ever pay him back . . . ."; *see also id.* at Bates Stamp 29 ¶ 53, "Plaintiff is hopeful that the

13    publication of this action will cause more victims . . . to report these matters to proper

14    authorities.")

15         **2.    The Temporary Stay of the Noval Action**

16         On March 10, 2020, the court in the Noval Action entered an order temporarily staying the

17    case pending the hearing on the defendants' motion for a stay of proceedings.  (*See* Ex. 3 at Bates

18    Stamp 53.)  The defendants sought a stay to protect their constitutional rights because, as set forth

19    in the Noval Complaint, Noval seeks to encourage criminal proceedings and there is now an

20    ongoing criminal investigation.  The hearing on the motion for stay of proceedings is currently set

21    for November 3, 2020.  (*See* Ex. 4 at Bates Stamp 55.)  The time to respond to the Noval

22    Complaint has not yet passed as of the date of this filing.

23         **3.    The Al-Sabah Action Against Noval**

24         On November 25, 2019, Khaled J. Al-Sabah and Jarrah Khaled Al-Sabah (the "Al-

25    Sabahs") commenced an action in the Superior Court of the State of California against Noval and

26    other defendants (the "Al-Sabah Action").  On April 6, 2020, the Al-Sabah Plaintiffs filed a

27    motion for leave to file a first amended complaint (the "Proposed Al-Sabah First Amended

28    Complaint").

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

OPPOSITION TO MOTION TO
APPOINT INTERIM TRUSTEE

1    Through the Proposed Al-Sabah First Amended Complaint, the Al-Sabahs seek leave to

2    add Jadelle and others as defendants to the Al-Sabah Action. (*See* Ex. 5 at Bates Stamp 61, ¶ 10.)

3    The primary thrust of the Al-Sabah Action is that Noval's father, Victorino Noval ("Victorino"),

4    and Noval defrauded the Al-Sabahs out of $163 million. (*See id.* at Bates Stamp 70, ¶ 346.)  In

5    the proposed twenty-eighth cause of action, the Al-Sabahs allege that the monies loaned by Noval

6    to Jadelle and referenced in the Noval Agreement were the monies wrongfully obtained by

7    Victorino and Noval from the Al-Sabahs. (*See id.* at Bates Stamp 69, ¶ 339.)  Moreover, the Al-

8    Sabahs argue that monies loaned by Noval to Jadelle are property of the Al-Sabahs, and not

9    Noval. (*See id.* at Bates Stamps 69-71, ¶¶ 339 & 347.)

10    **D.    Peter Marco, LLC**

11    **1.    The Marco Action**

12    On March 18, 2020, David Rovinsky Inc. ("Rovinsky") filed a complaint against Marco

13    and Peter Voutsas in the United States District Court for the Central District of California

14    asserting the following causes of action:  (1) negligence; (2) conversion; (3) fraud; (4) negligent

15    misrepresentation; (5) civil theft; and (6) aiding and abetting conversion and civil theft, and sought

16    damages of $1.13 million (the "Marco Action").   Rovinsky seeks damages of $1.13 million. (*See*

17    Ex. 6 at Bates Stamp 77, ¶ 21.)

18    On April 24, 2020, seven days after the Involuntary Petition was filed, Marco filed an

19    amended third-party complaint (the "Marco Complaint") against Jona Rechnitz, Rachel Rechnitz,

20    and Levin Prado (the "Marco Complaint Defendants").  Marco asserts the following causes of

21    action:  (1) fraud; (2) civil theft; (3) embezzlement; (4) civil conspiracy to commit theft; fraud and

22    fraud by concealment; (5) conversion; (6) breach of contract; (7) breach of the implied covenant of

23    good faith and fair dealing; (8) account stated; and (9) unethical business practices in violation of

24    California Business & Professions Code § 17200. (*See* Ex. 6 at Bates Stamps 100-111.)  Despite

25    listing his claim in the amount of $7,676,744 in the Involuntary Petition, in the Marco Complaint,

26    Marco requests damages of at least $6,950,444.40, subject to proof at trial, plus treble damages,

27    attorneys' fees, costs of suit, and punitive damages. (*See id.* at Bates Stamp 101, ¶ 90.)

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

2825668.1

OPPOSITION TO MOTION TO
APPOINT INTERIM TRUSTEE

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    Marco did not name Jadelle as a defendant in the Marco Complaint.  (*See id.* at Bates

2    Stamp 89.)  Marco alleges that he excluded Jadelle due to the automatic stay and that he intends to

3    pursue his disputed claims against Jadelle before this Court.  (*See id.* at Bates Stamp 75, ¶ 10.)

4    Marco alleges that he consigned jewelry to Jona Rechnitz, as opposed to Jadelle, and that

5    Mr. Rechnitz absconded with the consigned jewelry.  (*See generally id.* at Bates Stamps 103-104 ¶

6    103, alleging that "Jona swindled Marco . . . by absconding with Marco's Consigned Jewelry . . .

7    .")  Specifically, Marco alleges that he consigned sixteen pieces of jewelry *to Rechnitz*, ***not***

8    ***Jadelle***, and he includes, in the Marco Complaint, a table listing the stated values in the total

9    amount of $6,950,444.40.  (*See id.* at Bates Stamp 83, ¶ 33, "Accordingly, Marco LLC consigned

10    the following pieces of Consigned Jewelry ***to Rechnitz***." (emphasis added); *see also id.* at Bates

11    Stamp 84, ¶ 35, "Marco LLC consigned Rovinsky's Ring & Necklace ***to Rechnitz***." (emphasis

12    added); *id.* at Bates Stamp 102,  ¶ 95, "***Jona and Third-Party Defendants*** have obtained and

13    received property from Marco, the $6,950,444.40 of Consigned Jewelry . . . ." (emphasis added).)

14    Marco also admits that Marco asserted the wrong claim amount in the Involuntary Petition:  "The

15    petitioning creditors are . . . Peter Marco, LLC, with Trade Debt/Damages of $7,676,744.00 **(The**

16    **correct amount is $6,950,444.40)**."  (*See id.* at Bates Stamp 75, ¶ 9.)

17    On May 18, 2020, the Marco Complaint Defendants filed a motion to stay the prosecution

18    of the claims in the Marco Complaint.  (*See* Ex. 7 at Bates Stamp 168, Docket No. 47.)  The

19    motion to stay is set to be heard on June 15, 2020.  The time to respond to the Marco Complaint

20    has not yet passed as of the date of this filing.

21    **E.    First International Diamond, Inc.**

22    **1.    First International Diamond, Inc. Background**

23    In the Involuntary Petition, First International alleged a claim for $1,976,225.  However, it

24    now appears that First International asserts that $2,826,890 is owed.  (*See* Anter Decl. at ¶ 4)

25    First International has not commenced any litigation against Jadelle for this claim and it is not

26    entirely clear how First International is calculating its claim.  However, Jadelle disputes that First

27    International is owed the amount in the Involuntary Petition or in the Anter Declaration.  It was

28

       OPPOSITION TO MOTION TO
APPOINT INTERIM TRUSTEE

1    Jadelle's understanding that the amount of First International's claim as set forth in the Involuntary

2    Petition arose from three different consigned sets of jewelry:

3        First, Marco's alleged claim includes a stone owned by First International at the stated

4    value of $1,333,695.00.  (*See* Ex. 6 at Bates Stamp 84, lines 9-10.)  However, Jadelle understands

5    that First International's claim is primarily based on the consignment of this same stone with a

6    stated value of $1,200,000.  (*See* Anter Decl. at ¶ 5.)  Marco and First International are attempting

7    to collect, in part, on the same claim and this claim is already the subject of the pending Marco

8    Action.  This is a fact that both Petitioning Creditors recognized through counsel pre-petition.

9    (*See* Williams Decl. at ¶ 4; *see also* Ex. 10 at Bates Stamp 191 "As to which of my clients, or

10   both, will sue Jona for the EID MT 13.62 D/VVSI, # 11776564 piece for $1,333,695.00, has yet to

11   be determined.")

12       Second, First International consigned three rings and a bracelet with a stated collective

13   value of approximately $1,000,000.  Jadelle understands that First International later reacquired

14   the items from a third party for $300,000.  (*See* Williams Decl. at ¶ 4; *see also* Ex. 10 at Bates

15   Stamps 193-194.)

16       Third, First International consigned a stone with a stated value of $950,000.  Jadelle

17   understands that First International later paid $440,000 to reacquire the stone, *plus* purchase other

18   jewelry, which was owned by another party and not First International.  (*See* Williams Decl. at ¶

19   4; *see also* Ex. 10 at Bates Stamp 193.)

20       In light of the disputes, counsel for Jadelle and Mr. and Mrs. Rechnitz requested

21   documents from First International to substantiate First International's ownership of any consigned

22   items.  (*See* Ex. 9 at Bates Stamp 175, requesting "documentation proving ownership of all

23   merchandise ever given to any of my clients, whether on memo or invoice, including the date on

24   which Mr. Anter acquired the goods, from whom, for what amount, and with what source of

25   funds.")  As reflected in First International's response to this letter, First International did not

26   provide the requested information.  (*See* Ex. 10 at Bates Stamps 191-194.)

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

OPPOSITION TO MOTION TO
APPOINT INTERIM TRUSTEE

2.    **The Parties' Pre-Petition Communications**

Each Petitioning Creditor testifies that, at no time, was he told by Jadelle or Mr. Rechnitz, or anyone acting on their behalf, that his respective debt is disputed.  (*See, e.g.*, Noval Decl. at ¶ 12, lines 20-24; Richards Decl. at ¶ 11, lines 1-3; Marco Decl. at ¶ 26, lines 21-23; Anter Decl. at ¶ 13, lines 17-20.)  This testimony is not accurate.  Contrary to the testimony of Noval and Mr. Richards, the email from Mark Hardiman attached to the Richards Declaration as Exhibit "C" reflects the position that the balance had been paid down to $4.5 million.  (*See* Richards Decl., Ex. C at Bates Stamp 016.)  Contrary to the testimony of Messrs. Anter and Marco, their counsel received a letter from counsel for Mr. and Mrs. Rechnitz and Jadelle detailing certain of the disputes with the claims asserted by Marco and First International.  (*See* Williams Decl. at ¶ 3; *see also* Ex. 9 at Bates Stamps 173-76.)  Counsel for Marco and First International responded to the letter, confirming receipt.  (*See* Ex. 10 at Bates Stamps 191-94.)

On February 4, 2020, counsel for Mr. and Mrs. Rechnitz and Jadelle contacted the Petitioning Creditors via email with an update toward the goal of resolving the disputes amicably. (*See, e.g.* Noval Decl., Ex. E at Bates Stamp 018.)  The Petitioning Creditors attempt to characterize this email as proof that their respective claims are not in dispute.  First, the email in question constitutes an inadmissible settlement communication.  Second, nowhere in the email does counsel for Jadelle and Mr. Rechnitz assert or concede that the overstated and disputed claims of the Petitioning Creditors are, in fact, owed in the amounts that they assert.

III.    **THE MOTION MUST BE DENIED BECAUSE THE PETITIONING CREDITORS' CLAIMS ARE IN BONA FIDE DISPUTE**

A.    **Petitioning Creditors Are Required to Demonstrate that an Order for Relief Will Be Entered as a Prerequisite to the Appointment of an Interim Trustee**

In deciding whether to appoint an interim trustee, courts, as a threshold matter, determine whether there is a reasonably likelihood that an order for relief will be entered.  *See In re Diamondhead Casino Corp.*, 540 B.R. 499, 505 (Bankr. D. Del. 2015) ("[T]he court must determine, as a preliminary matter, that there is a reasonable likelihood that an order for relief will

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    be entered.")  This threshold requirement is recognized in a case upon which the Petitioning

2    Creditors rely.  *See In re Professional Accountants Referral Services, Inc.*, 142 B.R. 424, 429

3    (Bankr. D. Colo. 1992) (finding that, as a preliminary or threshold matter, "this Debtor will

4    eventually be found to be a proper involuntary debtor under 11 U.S.C. § 303 and that an order for

5    relief will enter.").  According to the bankruptcy court in *Professional Accountants Referral*

6    *Service, Inc.*, in the absence of a finding that it is reasonably likely that an order for relief will be

7    entered, "the appointment of a trustee during the gap period would be more tenuous, probably

8    improper, and likely an abuse of discretion."  *See id.*  In analyzing whether there is a reasonable

9    likelihood that a debtor will eventually be found to be a proper involuntary debtor, courts analyze

10   whether the petitioning creditors are proper petitioning creditors under 11 U.S.C. § 303.  *See, e.g.,*

11   *In re Diamondhead Casino Corp.*, 540 B.R. at 506.

12        The Petitioning Creditors are required to demonstrate that it is reasonably likely that an

13   order for relief will be entered in this case as a prerequisite to the appointment of an interim

14   trustee.  Because the Petitioning Creditors failed to even address this threshold requirement, the

15   Motion should be denied for a failure of proof.  Moreover, the Petitioning Creditors cannot prove

16   that an order for relief will be entered because, among other issues, their claims are subject to bona

17   fide disputes.[2]

18        **B.    Binding Ninth Circuit Law—A Dispute as to Any Portion of a Claim**

19             **Disqualifies the Petitioning Creditor**

20        Section 303(b) of the Bankruptcy Code provides that:

21             An involuntary case against a person is commenced by the filing with
             the bankruptcy court of a petition under chapter 7 or 11 of this title—

22
             (1) by three or more entities*, each of which is either a holder of a claim*
23           *against such person that is not contingent as to liability or the subject*
             *of a bona fide dispute as to liability or amount,* or an indenture trustee
24           representing such a holder, if such noncontingent, undisputed claims
             aggregate at least $16,750 more than the value of any lien on property
25           of the debtor securing such claims held by the holders of such claims;

26

27        [2]    Jadelle disputes all of the elements that the Petitioning Creditors must prove for the entry of an order for
     relief.  However, for purposes of opposing this Motion, Jadelle has focused on the disputes concerning the Petitioning
28   Creditors' claims.

10                    OPPOSITION TO MOTION TO
                                                                          APPOINT INTERIM TRUSTEE

11 U.S.C. § 303(b) (emphasis added).

As briefed in the pending Motion to Dismiss, the Ninth Circuit has made clear that a dispute as to any portion of a claim disqualifies the petitioning creditor.  In *Blixseth,* the Ninth Circuit held unequivocally as follows:

> A creditor whose claim is the subject of a bona fide dispute as to amount lacks standing to serve as a petitioning creditor under § 303(b)(1) *even if a portion of the claim amount is undisputed*."

*Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1186 (9th Cir. 2019) (emphasis added).

A claim is subject to bona fide dispute if "there is an objective basis for either a factual or legal dispute as to the validity of the debt."  *See In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1064 (9th Cir. 2001).  Importantly, in the Ninth Circuit, "[a] bankruptcy court is not asked to evaluate the potential outcome of a dispute, but merely to determine whether there are facts that give rise to a *legitimate disagreement* over whether money is owed, or, in certain cases, how much."  *See id.* (emphasis added); *see also In re BDC, 56 LLC,* 330 F.3d 111, 117-18 (2d Cir. 2003) ("The legislative history makes it clear that Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal.  Congress plainly did not intend to require a debtor to pay a legitimately disputed debt simply to avoid the stigma of bankruptcy.").

### C.    A Creditor Cannot Avoid a Dispute by Asserting a Claim in a Lesser Amount

A creditor cannot avoid a bona fide dispute by asserting a claim in a lesser amount for purposes of the involuntary petition.  Permitting such a tactic would render the plain language of the Code and the Ninth Circuit's decision in *Blixseth* meaningless.  Moreover, at least one bankruptcy court has expressly rejected an attempt by a creditor to understate its asserted claim to pass the eligibility requirements of the Code.

In *Mountain Dairies Inc.*, the petitioning creditor commenced an involuntary petition based on a breach of contract claim related to the sale of milk to the putative debtor.  *See In re Mountain Dairies, Inc.*, 372 B.R. 623, 626-27 (Bankr. S.D.N.Y. 2007).  The involuntary petition was filed after a court dismissed the petitioning creditor's lawsuit without prejudice on forum

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

OPPOSITION TO MOTION TO
APPOINT INTERIM TRUSTEE

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   selection grounds. *See id.* at 628-29. The putative debtor asserted disputes regarding the amount

2   of the petitioning creditors' claim. *See id.* at 629.

3          In response to the court's conclusion that the claim was subject to bona fide disputes, the

4   petitioning creditor requested permission to amend the involuntary petition "to assert only the

5   portion of its claim that is not subject to *bona fide* dispute." *See id.* at 633 (emphasis in original).

6   The court rejected the petitioning creditor's request for multiple reasons. The court reasoned that

7   the reduction of the petitioning creditor's claim would not "eliminate the bona fide dispute." *See*

8   *id.* at 634. Rather, the creditor's request raised "serious concerns over the legitimacy of [the

9   petitioning creditor's] entire claim." *See id.* According to the court, "[t]hat a claim could have

10  been filed in good faith when a substantial portion of that claim was the subject of a dispute on its

11  face is untenable." *See id.* The court further noted that the petitioning creditor would have it

12  conclude that no dispute existed for purposes of the threshold requirement of whether the creditor

13  was eligible and then have the court resolve the multiple disputes concerning its claim in the

14  higher amount. *See id.* at 633. Lastly, the court was concerned that the petitioning creditor's

15  position would cause "plaintiffs in two-party disputes to flock to bankruptcy court in the hopes of

16  a brisk resolution of those disputes." *See id.* at 634. As such, the court dismissed the involuntary

17  petition. *See id.* at 637.

18         Here, the Petitioning Creditors' claims are subject to multiple bona fide disputes such that

19  there is no reasonable likelihood that Jadelle will be found to be a proper involuntary debtor.[3]

20                 **D.    All Three Petitioning Creditors' Claims Are Disputed Litigation Claims**

21         "Bankruptcy courts routinely consider the existence and character of pending but

22  unresolved litigation as evidence of a bona fide dispute." *In re Green Hills Dev. Co.*, *L.L.C.*, 741

23  F.3d 651, 659 (5th Cir. 2014); *see also In re TPG Troy, LLC*, 492 B.R. 150, 159-60 (Bankr.

24  S.D.N.Y. 2013), *subsequently aff'd*, 793 F.3d 228 (2d Cir. 2015) (stating that courts have held that

25  the existence of pending litigation strongly suggests the existence of a bona fide dispute).

---

26         [3]   The Motion to Dismiss analyzes numerous disputes concerning the Petitioning Creditors' claims.

27  Jadelle does not want to merely incorporate those disputes herein by reference to the Motion to Dismiss.
    That said, Jadelle did not duplicate the analysis in the Motion to Dismiss. As such, herein, Jadelle has

28  focused on the disputes reinforced and confirmed by the Motion and supporting pleadings.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    The Petitioning Creditors assert contingent, disputed, and unliquidated litigation claims.

2   Each Petitioning Creditor's claim is based on unliquidated damages turning on allegations of

3   fraud.  The Petitioning Creditors' allegations of fraud and the unliquidated and yet-to-be-proven

4   damages they seek are all disputed.  The Petitioning Creditors seek to commence this case, and,

5   now, the appointment of a trustee based on these same disputed allegations and claims.  Moreover,

6   each Petitioning Creditor's claim is the subject of pending litigation.  Both Noval and Marco filed

7   lawsuits.  While First International has not commenced suit, the majority of its claim is being

8   pursued by Marco and is the subject of the Marco Action.  Accordingly, the nature of the claims

9   and the existence of the pending litigation is evidence that bona fide disputes exist rendering the

10  Petitioning Creditors ineligible.

11        **E.    Noval's Alleged Claim is Subject to Bona Fide Disputes**

12              **1.    Noval's Claim is Subject to Bona Fide Dispute Because He Seeks**

13                   **Unliquidated and Unproven Damages**

14        Noval's claim includes damages that he has yet to quantify or prove.  By the Noval

15  Complaint, Noval asserts a claim in an unquantified and unliquidated "amount to be proven at

16  trial, but at least $7,000,000. . . ."  (*See, e.g.*, Ex. 2 at Bates Stamp 30, ¶ 60.)  This is in addition to

17  alleged treble damages, attorney's fees, costs of suit, and punitive damages.  (*See id.* at Bates

18  Stamp 33.)  The fact that Noval seeks unspecified damages that he hopes to prove creates a bona

19  fide dispute.  Moreover, according to Noval, his request for damages in the amount of at least $7

20  million is based on the alleged value of the unspecified jewelry serving as collateral for the loan.

21  (*See id.* at Bates Stamp 24, ¶ 29.)  As discussed in the Motion to Dismiss, Noval is not entitled to

22  $7 million as a matter of law.  (*See* Mot. to Dismiss at 14, lines 19-25.)

23              **2.    Noval's Conflicting Testimony Amounts to an Admission that his Claim**

24                   **is Subject to Bona Fide Dispute**

25        Noval's conflicting testimony under penalty of perjury amounts to an admission that he has

26  a disputed claim.  In the verified Noval Complaint, Noval asserts that he is owed at least

27  $7,000,000.  (*See* Ex. 2 at Bates Stamp 30, ¶ 60.)  However, in the Involuntary Petition, Noval

28  asserts that his claim is only $5,800,000.  Noval declares that "in calculating [his] debt for

1    inclusion in the involuntary petition, [he] took the most conservative approach by including the

2    principal amount that had absolutely no chance of being disputed." (Noval Decl. at ¶ 12.) Noval's

3    attempt to reduce his claim for purposes of the Involuntary Petition is an admission that the full

4    amount he actually asserts is in dispute. Like the court stated in *Mountain Dairies*, the reduction

5    of Noval's claim does not eliminate any bona fide dispute, but, rather, "raises serious concerns

6    over the legitimacy of" Noval's entire claim." *See In re Mountain Diaries, Inc.*, 372 B.R. at 634.

7          Noval is attempting to side step the Code just like the petitioning creditor in *Mountain*

8    *Dairies.* The Ninth Circuit's decision in *Blixseth* would have no meaning if creditors could avoid

9    its holding by listing a claim in an amount lower than they actually assert and seek to recover.

10    The Ninth Circuit specifically recognized that a creditor with a partially disputed claim should be

11    disqualified. *See Blixseth*, 942 F.3d at 1186-87 (9th Cir. 2019). Moreover, in *Mountain Dairies*,

12    the court rejected the petitioning creditor's attempt to reduce its claim to the alleged undisputed

13    amount for purposes of the involuntary petition. *See In re Mountain Dairies, Inc.*, 372 B.R. at

14    633-34. Noval's admitted attempt to understate his claim does not render him eligible—it

15    demonstrates that his claim is in bona fide dispute (and he knows it).

16          **3.**     **Noval's Claim is Subject to Bona Fide Dispute Because He Failed to**

17                    **Account for Payments Received**

18          Noval's claim is subject to bona fide dispute because he asserts a claim in excess of any

19    amounts loaned, less the payments he has received. Noval, by his own admission, overstated his

20    claim by failing to account for payments. Noval asserts that the amount of his claim in the

21    Involuntary Petition is the principal amount of the loans to Jadelle.[4] (*See* Noval Decl. at 6, ¶ 12.)

22    However, Jadelle made payments by check in the amount of $611,900. (*See* Prado Decl. at ¶¶ 2-3;

23    *see also* Ex.11 at Bates Stamps 195-201.) This includes the $400,000 related to the Bugatti, which

24

25          [4]    The assertion that Noval's claim amount in the Involuntary Petition ($5,800,000) is only the
26    principal amount is contradicted by the Noval Complaint and the January 22, 2020 email from his counsel
      attached to the Declaration of Ronald Richards, both of which suggest that, according to Noval, the total
27    amount due (with interest at 9%) is approximately $5,800,000. (*See* Ex. 2 at Bates Stamp 23, ¶ 17; *see also*
      Richards Decl., Ex. C at Bates Stamp 017, stating that Noval is owed $5,875,000.) It is not clear how
28    Noval is actually calculating his claim.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    Noval admits receiving, and is in addition to cash payments.  (*See* Ex. 2 Bates Stamp 23, ¶ 18; *see*

2    *also* Prado Decl. at ¶ 2.)  Noval's testimony confirms that he did not reduce his claim by the

3    amount he received from the Bugatti or any other payments he received.  Thus, the alleged balance

4    must be reduced by the payments Noval received.[5]

5    　　　　**4.　　Noval's Claim is Subject to Bona Fide Dispute Because He Has Not**

6    　　　　　　　**Demonstrated that the Entire Amount is Due**

7    　　　　Noval has not demonstrated that the entire amount of his disputed claim is due.  Noval's

8    testimony that the maturity dates for the advances are reflected in the Noval Agreement is

9    incorrect and is contradicted by the terms of the agreement.  The Noval Agreement reflects loans

10   totaling only $2.85 million and the agreement specifies the maturity date for *those loans*.

11   (*Compare* Ex. 2 at Bates Stamps 22-23, ¶ 15 and at Bates Stamp 23, ¶ 17; *with id.* at Bates Stamp

12   37, § 3, stating the maturity date is based on the date of each advance set forth in § 1.)  In addition

13   to disputes concerning the amounts subject to the Noval Agreement, Jadelle disputes that any

14   amounts in excess of the Noval Agreement are currently due.

15   　　　　**5.　　The Documents Attached to the Noval Declaration Further**

16   　　　　　　　**Demonstrate that Noval's Claim Is Subject to Bona Fide Disputes**

17   　　　　The documents attached to the Noval Declaration demonstrate that Noval's claim is subject

18   to bona fide disputes.  Noval's assertion that the document attached to his declaration as Exhibit

19   "C" demonstrates that there was no dispute as to his claim is contradicted by the document's own

20   terms.  (*See* Noval Decl. at ¶ 11.)  That document supports the position that the amount owed does

21   not exceed $4.5 million, over $1 million less than the alleged "conservative" amount of Noval's

22   claim in the Involuntary Petition.  (*See* Noval Decl., Ex. C at Bates Stamp 014.)  The January 23

23   email attached to the Richards Declaration as Exhibit "C" further reflects the position that interest

24   payments were made and that the principal balance was reduced to $4,500,000.  (*See* Richards

25   Decl., Ex. C at Bates Stamp 016.)  Thus, as demonstrated by the chart below, the testimony that

26   Noval was unaware of any dispute as to his claim is inaccurate.  (*Compare* Noval Decl. at 6, ¶ 12,

27   ────────────────────

28   　　　[5]　　This amount is subject to Jadelle's other disputes and defenses.

1  lines 20-22 and Richards Decl. at 5, ¶ 11, lines 1-3; *with* Richards Decl., Ex. C at Bates Stamp

2  016.)

| DECLARATION | EXHIBIT |
|---|---|
| "Importantly, at no time did any of these lawyers ever dispute the bona fide status of Noval's claim, either as to its nature, validity, or amount."  (Richards Decl. at 5, ¶ 11, lines 1-3.)<br><br>"Importantly, at no time have Jadelle or the Rechnitz's, or anyone acting or purporting to act on their behalf, ever disputed the bona fide status of my claim, either as to its nature, validity, or amount."  (Noval Decl. at 6, ¶ 12, lines 20-22.) | "Also, Jona indicated that he had made payments and also that he had paid down principal to $4.5 million."  (Richards Decl., Ex. C at Bates Stamp 016, January 23, 2020 email from Mark Hardiman.) |

12          **6.    Noval's Claim Is Subject to Bona Fide Dispute Because He Is Charging**

13          **Usurious Interest**

14          Noval is charging usurious interest.  Noval claims to be charging "9% interest ***per***

15  ***month***[.]" (*See* Ex. 2 at Bates Stamp 22, ¶ 15 (emphasis added).)  However, the Noval Agreement

16  specifies that the interest on the loans reflected in the agreement are to accrue interest at 9% ***per***

17  ***annum*** (paid monthly). (*See id.* at Bates Stamp 37, § 2.)  Noval's usurious interest creates a host of

18  remedies and disputes.  A borrower charged usurious rates can bring an action for money paid, can

19  recover penalty damages, can cancel future interest, and can have payments applied to principal.

20  *See, e.g.*, Miller and Star, Cal. Real Estate § 37.42 (4th ed.) (detailing various remedies).

21  Accordingly, Noval's claim is subject to multiple bona fide disputes.

22          **F.    Marco's Alleged Claim is Subject to Bona Fide Disputes**

23          **1.    Marco's Claim Is Subject to Bona Fide Dispute Because He Seeks to**

24          **Collect for Items that Were Not Consigned to Jadelle**

25          Marco's claim is subject to multiple disputes because it is premised on items that were not

26  consigned to Jadelle.  Marco's claim is based, in part, on a watch in the amount of $145,000 that

27  was allegedly for Mr. Rechnitz's father.  (*See* Ex. 6 at Bates Stamp 83, lines 21-22.)  Attached to

28  the Marco Declaration is a copy of an invoice from December 2019 (the "December Invoice"),

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

OPPOSITION TO MOTION TO
APPOINT INTERIM TRUSTEE

1   which purports to reference the watch for $145,000.  Mr. Marco declares under penalty of perjury

2   that the memos attached to his declaration are true and correct copies.  (*See* Marco Decl. at 4, ¶ 6,

3   lines 5-7.)  However, attached to the Index as Exhibit "12" is the carbon copy created when the

4   original version of the December Invoice was prepared (the "Carbon Copy").  (*See* Prado Decl. at

5   ¶¶ 6-7; *see also* Ex. 12.)  A comparison of the December Invoice and the Carbon Copy reveals that

6   "WATCH JONA FATHER PATEK RG  . . . .  145,000[,]" ***does not appear on the Carbon Copy,***

7   ***suggesting that it was added after the fact and after the invoice was signed by Mr. Prado***.[6]

8   (*Compare* Marco Decl., Ex. A at Bates Stamp 020; *with* Prado Decl. at ¶ 8 & Ex. 12.)  Thus, the

9   Carbon Copy confirms Jadelle's position that it did not receive the watch and Marco's claim is

10  subject to a bona fide dispute.

11      Similarly, Marco's claim includes a bracelet in the amount of $140,000.  (*See* Ex. 6 at

12  Bates Stamp 84, lines 1-3.)  Jadelle disputes that it was consigned a bracelet.  (*See* Ex. 9 at Bates

13  Stamp 174, "The $140,000 bracelet from Norman Silverman was never given to any of my

14  clients.")  Marco, through counsel, claimed that the consignment memo for this item was proof it

15  was received by Jadelle.  (*See* Ex. 10 at Bates Stamp 191.)  However, the purported invoice

16  attached to the Marco Declaration *is not signed*.  (*See* Marco Decl., Ex. A at Bates Stamp 22.)

17  Thus, Marco's purported invoice supports Jadelle's position that it did not receive the bracelet.

18      The watch and the bracelet are just two clear examples of the types of disputes concerning

19  Marco's claim.  A comparison of the consignment memos attached to the Marco Declaration (the

20  "Marco Memos") to the calculation of Marco's claim in the Marco Complaint reveals numerous

21  discrepancies and supports the disputes asserted by Jadelle.  (*See* Mot. to Dismiss at 18, lines 6-

22  16.)  It appears that Marco modified memos after they were signed.  The items listed in the Marco

23  Memos do not support the position that the items referenced in the Marco Complaint were

24  consigned to Mr. Rechnitz or Jadelle.  The Marco Memos do not support the amount of Marco's

25  claim.  In short, the Marco Memos do not support the amounts he seeks, but create more

26  questions.  As detailed in the Motion to Dismiss, there are numerous other disputes regarding the

27      [6]   The watch is not the only item that appears to have been added to the December Invoice after it
28  was signed by Mr. Prado.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    items allegedly consigned and the amounts that Marco seeks to collect.  (*See* Motion to Dismiss at

2    18, lines 6-16.)

3                **2.    The Marco Complaint Contains Judicial Admissions that Bona Fide**

4                **Disputes Exist**

5            The Marco Complaint contains judicial admissions creating multiple bona fide disputes as

6    to Marco's claim.

7            First, in his complaint, Marco concedes that the $7,676,744 amount of his claim set forth

8    in the Involuntary Petition is incorrect. (*See* Ex. 6 at Bates Stamp 75, ¶ 9, "The petitioning

9    creditors are . . . Peter Marco, LLC, with Trade Debt/Damages of $7,676,744.00 (**The correct**

10   **amount is $6,950,444.40**).)" Despite knowledge of this material error, Marco has not attempted to

11   correct it.

12           Second, Marco is taking inconsistent positions across different forums with respect to *who*

13   he consigned jewelry to.  According to the Marco Complaint, Marco consigned items to Mr.

14   Rechnitz, and not Jadelle.  (*See id.* at Bates Stamps 83, ¶ 33, 84, ¶ 35, and 102, ¶ 95.)  However, in

15   submitting his declaration to this Court, Mr. Marco copied the allegations from the Marco

16   Complaint and then merely changed the name of the alleged consignee.  Marco's conflicting

17   assertions subject his claim to bona fide dispute.

| Marco Complaint | Marco Declaration |
|---|---|
| "33.  At the time, Marco had no reason to believe that the $6,950,444.40 consignments with **Rechnitz** would be in jeopardy . . . ." (Ex. 6 at Bates Stamp 83, ¶ 33 (emphasis added).) | "6.  At the time, I had no reason to believe that the $6,950,44.40 in consignments with **Jadelle** would be in jeopardy . . ."  (Marco Decl. at ¶ 6 (emphasis added).) |

22           Third, Marco is taking inconsistent positions with respect to the amount of his claim.  It

23   appears that Marco, like Noval, is attempting to understate the amount he is seeking to recover for

24   purposes of the Involuntary Petition.  In the Marco Action, Marco is seeking damages to be

25   proven at trial, but *at least* $6,950,444.40.  (*See id.* at Bates Stamp 101, ¶ 90.)  In addition, Marco

26   seeks treble damages, punitive damages, interest, and attorney's fees. (*See id.* at Bates Stamps 103-

27   104, ¶¶ 98, 104, and 105.)  Therefore, by Marco's own admission, his total claim has yet to be

28   liquidated and quantified, and is subject to proof.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    Fourth, to the extent that Marco's claim is based on items owned by Rovinsky, it is

2    overstated.  Mr. Marco testifies that Rovinsky is seeking damages from him in an amount in

3    excess of $1,100,000.  (*See* Marco Decl. at 3, ¶ 3, lines 2-3.)  Despite Mr. Marco's misleading

4    testimony to the contrary and as acknowledged by his counsel, the items at issue in Rovinsky's suit

5    against Marco are currently in Rovinsky's possession.  (*See* Ex. 8 at Bates Stamp 172.)  However,

6    as demonstrated by the Marco Complaint, Marco's alleged claim against Jadelle for the Rovinsky

7    items totals $2,950,000, or more than double the amount asserted by Rovinsky.  (*See* Ex. 6 at

8    Bates Stamp 84-85, ¶ 35.)

9    Fifth, as explained below, First International and Marco are attempting to collect, in part,

10   on the same claim.  This fact is confirmed in the Marco Complaint.  (*See* Ex. 6 at Bates Stamp 84,

11   lines 9-10.)

**G.    First International's Alleged Claim is Subject to Bona Fide Disputes**

**1.    The Claims of First International and Marco Are in Bona Fide Dispute Because They Are, in Part, Seeking to Collect on the Same Claim**

15   First International and Marco are attempting to collect, in part, on the same claim.  First

16   International's claim is largely based on a piece of jewelry identified as "**13.62 PS D-VVSI** GIA,

17   Harry Winston Mt/tr" in the amount of $1,200,000.  (*See* Anter Decl. at ¶ 5 (emphasis added); *see*

18   *also id.*, Ex. B at Bates Stamp 026.)  Marco's alleged claim includes the same piece of jewelry

19   with an amount of $1,333,695.  (*See* Ex. 6 at Bates Stamp 84, lines 9-10; *see also* Marco Decl.,

20   Ex. A at Bates Stamp 025, referencing "EID MT 5072 13.62 D/VVS1".)  These are the same

21   pieces of jewelry.  First International and Marco, via counsel, acknowledged that they are double

22   counting the same claim.  (*See* Index Ex. 10 at Bates Stamp 191.)  Jadelle cannot be obligated to

23   pay both Marco and First International the same claim.  The fact that two Petitioning Creditors are

24   knowingly overstating their claims by seeking to collect the same sum, standing alone, creates a

25   bona fide dispute as to both claims.

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## 2. First International Is Taking Inconsistent Positions with Respect to Its Claim

Like Noval and Marco, First International appears to be taking inconsistent positions regarding the amount of its claim in an attempt to induce the Court to enter an order for relief.  In the Involuntary Petition, First International represents under penalty of perjury that the amount of its claim is $1,976,255.  Now, First International claims the amount allegedly owed is $2,826,890.  (*See, e.g.*, Anter Decl. at 3, ¶ 4.)  First Internationals' attempt to understate its claim is proof that the amount it actually asserts is in bona fide dispute.

### 3. First International Has Failed to Substantiate Its Claim

First International has failed to substantiate the amount of its claim.  There are numerous discrepancies between the Anter Declaration and the documents attached thereto.  Mr. Anter testifies that, attached to his declaration, are memos evidencing the consignment of *seven* items totaling *$2,826,890*.  (*See* Anter Decl. at 3, ¶ 4.)  However, the unsigned memos attached to the Anter Declaration reference only *three* items totaling *$2,143,940*.  (*See id.*, Ex. B.)  It is not clear how First International calculated its increased claim.  It appears that First International may now be, in part, basing its claim on the "stated value" of items in its possession, as opposed to any lesser amount First International actually paid to redeem those items.  The conflicting testimony and documentary evidence of Mr. Anter creates bona fide disputes.

### 4. First International Seeks to Collect for Amounts it Paid to Purchase Third Party Merchandise

First International's claim includes amounts it paid to purchase merchandise owned by a third party.  According to First International, its claim is, in part, based on an item identified as "DIAM RD E IF 11923922166" ("DIAM 2166") in the amount of $907,715.  (*See* Anter Decl., Ex. B at Bates Stamp 026.)  As First International conceded through its counsel, that item was redeemed from a third party and is now in First International's possession.  Moreover, it appears that its alleged claim includes amounts that First International paid to acquire DIAM 2166, *plus* other merchandise it did not own.  (*See* Ex. 9 at Bates Stamp 175; *see also id.* Ex. 10 at Bates Stamp 193, stating "[r]egarding your claim that Mr. Anter paid the $440,000 in exchange for

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  multiple pieces of merchandise, not just the DIAM RD E IF 11923922166 item, is true.")  First

2  International's claim should not include amounts that it paid to acquire jewelry that did not belong

3  to it and that it had no claim to, and Jadelle should not be expected to pay for First International's

4  acquisition of those items.

5      In the end, like Noval and Marco, First International's claim is a disputed claim for fraud.

6  (*See id.* at ¶ 9.)  Mr. Anter's testimony is plagued by conclusory and inadmissible allegations of

7  fraud.  Moreover, despite Mr. Anter's testimony, certain of the items First International claims to

8  have consigned to Jadelle are in First International's possession.  (*See* Ex. 8 at Bates Stamp 172.)

9  First International's claim is based on disputed allegations of fraud to recover disputed damages

10  subject to proof.

11

12  **IV.    THE MOTION MUST BE DENIED BECAUSE THE PETITIONING CREDITORS**

13  **HAVE NOT MET THEIR BURDEN OF DEMONSTRATING THAT AN INTERIM**

14  **TRUSTEE IS NECESSARY**

15  **A.    The Appointment of a Trustee Is an Extraordinary Remedy**

16      The Bankruptcy Code provides that during the "gap" period between the involuntary

17  petition date and the date of any order for relief:

18          [T]he court, on request of a party in interest, after notice to the debtor and
           a hearing, and **if *necessary* to preserve the property of the estate or to**
19          **prevent loss to the estate**, may order the United States trustee to appoint
           an interim trustee under section 701 of this title to take possession of the
20          property of the estate and to operate any business of the debtor.

21

22  11 U.S.C. § 303(g) (emphasis added.)

23      An involuntary petition is an "'extreme remedy'" and an order for relief should not be

24  entered lightly.  *See In re Diamondhead Casino Corp.*, 540 B.R. 499, 505 (Bankr. D. Del. 2015).

25  The appointment of an interim trustee is "[a]n even more extreme remedy" than the involuntary

26  bankruptcy filing itself.  *See id.*  Early Supreme Court authority underscores the extreme

27  consequences of a debtor being placed into a bankruptcy case involuntarily and supports

28  construing the applicable statutory provisions so that "the precise circumstances or facts on which

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  [a creditor of the debtor] is authorized to do this, should not only be well defined in the law, but

2  clearly established in the court." *See Wilson v. City Bank*, 84 U.S. 473, 481-82 (1873).

3       In deciding a request for a trustee, courts strictly apply the plain language of the

4  Bankruptcy Code.  An interim trustee should not be appointed unless it is necessary to preserve, or

5  prevent loss to, estate property and to do so during the "gap" period.  *See In re Diamondhead*

6  *Casino Corp.*, 540 B.R. at 507; *see also In re Weed*, 11 B.R. 755, 757 (Bankr. S.D. W.Va. 1981)

7  (stating that "an interim trustee will not be appointed by the Court unless irreparable harm to the

8  estate is likely to result between the time of the filing of the petition and the scheduled hearing.").

9  Moreover, to prevail on a motion for the appointment of an interim trustee, the movant must show

10  a *substantial* risk of loss to the estate.  *See In re Diamondhead Casino Corp.*, 540 B.R. at 505.

11  "[A] request for an interim trustee should be denied in the absence of an *exceptionally strong need*

12  for doing so . . . ." *Id.* (emphasis added); *see also In re Weed*, 11 B.R. at 757 (requiring a showing

13  of irreparable harm).

14       The petitioning creditors have the burden of proof under § 303(g).  *See In re The Ctr. for*

15  *Mgmt. & Tech., Inc.*, 2007 WL 3197221, at *6 (Bankr. D. Md. 2007).

16  **B.    The Petitioning Creditors Misstate the Legal Standard and Misquoted the**

17      **Ninth Circuit**

18       The Petitioning Creditors' apparent attempt to soften or broaden the standard for the

19  appointment of an interim trustee is based on a misquote of Ninth Circuit law.  The Petitioning

20  Creditors attribute four quotes to the Ninth Circuit's decision in *Hill v. Douglass*, 78 F.2d 851, 854

21  (9th Cir. 1935) to support examples of when the appointment of a trustee is allegedly appropriate.

22  (*See* Mot. at 16:22-28.)  *However, three of the quotes do not appear in the Hill decision at all.*

23  Moreover, the fourth quote, which is included in the *Hill* decision, *does not address the*

24  *appointment of an interim trustee*, but, rather, the requirement at that time (in 1935) that property

25  be perishable in order for a bankruptcy court to order its sale.  *See Hill*, 78 F.2d at 854.  The Ninth

26  Circuit stated as follows:

27       The contention that there was no showing that the property sold was
       perishable and therefore the court could not order its sale is untenable.

28       It will be conceded that road-making equipment is not within the

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    ordinary concept of perishable property. Yet the courts have been
2    liberal in their construction of this term and have held it to include not
     only that which may deteriorate physically, but that which is liable to
3    deteriorate in price and value.

4    *Id.*

5    Like *Hill*, the Petitioning Creditors' other authorities are distinguishable and provide little,

6    if any, value to the Court's inquiry as follows:

7    • The Petitioning Creditors' seminal case, *In re Fine Diamonds*, contains zero

8    analysis regarding the appointment of an interim trustee, the basis upon which a

9    trustee was appointed in that case, the admissible evidence that was submitted, or

10   whether the request was opposed.  Rather, the reference to the appointment of an

11   interim trustee is contained in a discussion of the prior "procedural matters" in the

12   case. *See In re Fine Diamonds, LLC*, 501 B.R. 159, 175, (Bankr. S.D.N.Y. 2013).

13   • Similarly, the *In re Gems N' Things, Inc.*, decision does not analyze the

14   appointment of an interim trustee.  The discussion of the appointment of an interim

15   trustee in response to the petitioning creditors' allegation that the debtor posted a

16   "going out of business" notice is included in the background of the decision.  *See In*

17   *re Gems N' Things, Inc.*, 60 B.R. 288, 287-89 (Bankr. S.D.N.Y. 1986).

18   • The *In re Alpine Lumber & Nursery* decision analyzed whether the conversion of

19   the case from chapter 7 to chapter 11 terminated the appointment of an interim

20   trustee.  *In re Alpine Lumber & Nursery*, 13 B.R. 977, 978-79 (Bankr. S.D. Cal.

21   1981).

22   • The Petitioning Creditors' citation to the case of *In re Professional Accountants*

23   *Referral Services, Inc.*, for the proposition that the appointment of an interim

24   trustee is authorized under § 105 (in addition to § 303(g)) is misleading.  That case

25   is factually distinguishable because it was an *involuntary chapter 11*, and, as a

26   result, § 303(g) was not applicable.  *See In re Professional Accountants Referral*

27   *Services, Inc.*, 142 B.R. 424, 430-31 (Bankr. D. Colo. 1992).

28

- The court's decision in *In re DiLorenzo* actually supports denial of the Motion as the court, in that case, denied a request to condition the debtor's use of its property under § 303(f) because the movant failed to provide evidence to supports its "fear" that the debtor would transfer estate assets. *See In re DiLorenzo*, 61 B.R. 752, 754-55 (Bankr. S.D.N.Y. 1993).

In sum, the Petitioning Creditors' characterization of the law is not accurate. The appointment of a trustee is an extraordinary remedy that requires, consistent with the plain language of the Code, admissible evidence proving that a trustee is "necessary to preserve property of the state or prevent loss to the estate" during the gap period. *See* 11 U.S.C. § 303(g).

## C. The Petitioning Creditors Have Not Met the Extremely High Burden for an Interim Trustee

Petitioning creditors must show with admissible evidence that the appointment of an interim trustee is necessary to prevent loss during the gap period. The bankruptcy courts' decision in *In Diamondhead Casino Corporation* is instructive. In that case, the petitioning creditors alleged that the putative debtor's management grossly mismanaged the putative debtor, misled and made misrepresentations to investors, and acted contrary to the interests of creditors and shareholders. *See In re Diamondhead Casino Corp.*, 540 B.R. 499, 507 (D. Del. 2013). In response, the court stated that what was missing from petitioning creditors' list of grievances was "any loss to the estate that will occur prior to the hearing on the Motion to Dismiss, or what property will not be preserved in this 'gap period.'" *See id.* The court further stated that the petitioning creditors' allegations (even if their veracity is assumed) "do not show that a trustee is necessary in the gap period to preserve property of the estate or prevent loss." *See id.* at 508. The court held that the alleged "lack of trust in management . . . , no matter how justified," did not warrant the appointment of an interim trustee on the facts of the case. *See id.* Thus, while the court found it was reasonably likely that an order for relief would be entered, it still denied the motion to appoint an interim trustee. *See id.* at 507, 508.

The Petitioning Creditors failed to satisfy the extremely high burden for an interim trustee. The Code requires admissible evidence that a trustee is *necessary* and necessary to preserve, or

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  prevent dissipation of, estate assets during the gap period.  *See* 11 U.S.C. § 303(g).  The

2  Petitioning Creditors have failed to provide any evidence to support this standard.  Rather, the

3  Motion is based on an inadmissible and irrelevant prior conviction and unsupported allegations.

4  **1.    <u>Evidence of the Prior Conviction Is Inadmissible and Irrelevant</u>**

5  The Motion is premised entirely on Mr. Rechnitz's prior conviction for conspiracy to

6  commit wire fraud.  Mr. Rechnitz accepted full responsibility for his conduct and entered into a

7  cooperation agreement with the government.  However, the prior conviction does not support the

8  appointment of a trustee.  Similar to the court's conclusion in *Diamondhead Casino Corp.*, the

9  Petitioning Creditor's personal attacks on, and alleged mistrust of, Mr. Rechnitz do not meet the

10  standard for an interim trustee.  *See In re Diamondhead Casino Corp.*, 540 B.R. at 508.

11  Mr. Rechnitz's prior conviction is not admissible.  The limited admissibility of a prior

12  criminal conviction is governed by Federal Rule of Evidence 609 and, under that rule, a prior

13  criminal conviction is admissible to impeach a witness (under certain specified circumstances).

14  *See* Fed. R. Evid. 609; *see also Harris v. U.S.*, 2003 WL 25781906, at *1 (C.D. Cal. 2003).  Here,

15  the Petitioning Creditors are not attempting to impeach a testifying witness.  Instead, the

16  Petitioning Creditors are attempting to use a prior criminal conviction to satisfy the legal standard

17  required by § 303(g) and prove that an interim trustee is necessary to preserve estate assets.

18  Any evidence of Mr. Rechnitz's prior conviction is also irrelevant.  The prior conviction

19  relates to a crime by third party, Mr. Rechnitz, not Jadelle.  Moreover, the prior conviction

20  (relating to bribing officials in New York) is completely unrelated to the issues before the Court,

21  *i.e.*, whether the immediate appointment of a trustee is necessary to preserve Jadelle's property

22  during the gap period.  Mr. Rechnitz's prior conviction and his statements in that proceeding are

23  hearsay.  Thus, for multiple reasons, evidence of Mr. Rechnitz's prior conviction (whether in the

24  form of the judgment or the cherry-picked statements by Mr. Rechnitz to the court) is inadmissible

25  and cannot sustain the Petitioning Creditors' evidentiary burden for the appointment of an interim

26  trustee.

27  The other pleadings included by the Petitioning Creditors to attack Mr. Rechnitz do not

28  support the appointment of an interim trustee.  The adversary complaint filed by a chapter 7

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    trustee in New York (the "Bankruptcy Complaint") and the settlement with American Express (the

2    "AMEX Settlement") do not involve Jadelle.  Moreover, neither document proves anything.  The

3    AMEX Settlement is an inadmissible settlement communication that expressly states that it is

4    made "without any admission of liability."  (*See* Petitioning Creditor's RJN, Ex. E at Bates Stamp

5    075, lines 1-2.)  The Bankruptcy Complaint is hearsay, does not prove the truth of the allegations

6    contained therein, and alleges that an unrelated third party (the principal of the debtor in that case)

7    engaged in a Ponzi scheme involving the sale of event tickets.  (*See id.*, Ex. D at Bates Stamp 041,

8    ¶ 1.)

9        In short, the attacks on Mr. Rechnitz do not in any way prove that a trustee is now

10   necessary to preserve property of the estate.

11           **2.    The Petitioning Creditor's Unsupported and Disputed Allegations Do**

12           **Not Support the Appointment of a Trustee**

13       The Petitioning Creditors' testimony is nothing more than the same unproven, disputed,

14   and conclusory allegations of fraud asserted in the underlying lawsuits.  Like in the *Diamondhead*

15   *Casino Corporation* decision, the Petitioning Creditors' allegations (even if assumed true) do not

16   demonstrate that a trustee is necessary to preserve property of Jadelle during the gap period.

17   According to the Petitioning Creditors, *there is no property to preserve*.  Without any evidentiary

18   support, the Petitioning Creditors allege that any assets that Jadelle "may have once had" have

19   already been "sacrificed" for the benefit of insiders or transferred.  (*See, e.g.* Mot. at 7, lines 12-

20   15.)  The Petitioning Creditors have not carried their heavy burden of providing admissible

21   evidence demonstrating that an interim trustee is necessary to preserve, or prevent a loss of,

22   specific property of Jadelle pending the Court's adjudication of this case.

23       The Petitioning Creditors' allegations are not supported by admissible evidence and are

24   pure speculation.  Incredibly, the allegations in the Motion are not supported by citations to any

25   evidence (admissible or otherwise).  For example, the Petitioning Creditors allege, illogically and

26   without laying any foundation, that they know that numerous "*unknown*" victims exist.  The

27   Petitioning Creditors allege that Mr. Rechnitz (as opposed to Jadelle) engaged in "a massive

28   $30,000,000 fraud" and there is a "plethora" of fraudulent transfer claims.  The Petitioning

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    Creditors have not provided a shred of evidence to support their allegations.  To contrary, the

2    Petitioning Creditors are hopeful that the trustee will "uncover" fraudulent transfers once

3    appointed.  (*See* Mot. at 19, lines 8-10.)  That is, the Petitioning Creditors seek the appointment of

4    a trustee to substantiate their allegations and uncover the alleged evidence they have the burden of

5    producing to this Court now to obtain the appointment of a trustee in the first instance

6          The Petitioning Creditors' forum shopping tactics undercut any alleged need for an interim

7    trustee.  Noval and Marco filed their respective lawsuits in February and April, 2020, respectively.

8    Neither Petitioning Creditor sought any emergency relief, such as, a receiver or an injunction, due

9    to an alleged need to preserve property.  In fact, in his complaint, Noval asserts that he does not

10   expect to recover anything, but wants to encourage criminal proceedings against the defendants.

11   (*See, e.g.*, Ex. 2 at Bates Stamp 27, ¶ 49.)  First International did not file a lawsuit or take any

12   action prior to the Involuntary Petition.  The Petitioning Creditors commenced the involuntary

13   case only after the Noval Action was temporarily stayed.  Then, the Motion was not filed until

14   after Jadelle filed its Motion to Dismiss illustrating the numerous disputes with the Petitioning

15   Creditors' claims.  The Petitioning Creditors did not file the Motion because of some alleged

16   urgent need to preserve property, but, rather, to short cut their way to relief on their disputed

17   claims.

18         The Court is not tasked with resolving the disputes between the parties.  The Motion and

19   the Petitioning Creditors' declarations are nothing more than a re-packaging of the complaints.  As

20   explained by the bankruptcy court in *Mountain Dairies*, "the Court is to ascertain whether a bona-

21   fide dispute exists, but 'is not to actually resolve the dispute.'"  *See In re Mountain Dairies, Inc.*,

22   372 B.R. 623, 633 (Bankr. S.D.N.Y. 2007).  Jadelle is being tasked with defending in 7 days the

23   same allegations that would otherwise be vetted in multiple underlying pending lawsuits and with

24   the due process and protections those lawsuits afford.  The Petitioning Creditors are seeking a

25   shortcut to relief on their disputed allegations.  This was the exact concern expressed by the court

26   in *Mountain Dairies* in permitting creditors with disputed claims to commence involuntary cases.

27   *See id.* (raising the concern that plaintiffs in two-party disputes will "flock to bankruptcy in hopes

28   of a brisk resolution" of their disputes).

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## V.    <u>THE MOTION IS FURTHER EVIDENCE OF THE PETITIONING CREDITORS' BAD FAITH</u>

"The bankruptcy court is not a collection agency." *See In re Mountain Dairies, Inc.*, 372 B.R. 623, 635 (Bankr. S.D.N.Y. 2007). To the Ninth Circuit, the filing of an involuntary petition "should be a measure of last resort. . . ." *See Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 707 (9th Cir. 2004). Courts dismiss involuntary petitions filed prior to exhausting state law remedies or as a litigation tactic. *See, e.g.*, *In re Smith*, 243 B.R. 169, 197-98 (Bankr. N.D. Ga. 1999) (dismissing a case commenced by the petitioner after an unfavorable ruling in state court and without exhausting state law remedies); *In re WLB-RSK Venture*, 296 B.R. 509, 514 (Bankr. C.D. Cal. 2003) (dismissing an involuntary petition filed "as part of a forum shopping litigation tactic. . . ."); *In re Spade*, 269 B.R. 225, 229 (D. Colo. 2001) (dismissing an involuntary petition filed as "a self-serving litigation tactic to control the forum and enlist a trustee to conduct and pay for discovery into the Debtor's affairs.").

As detailed in the Motion to Dismiss, the involuntary case was commenced in bad faith. The Motion only reinforces this fact. The Ninth Circuit has made clear that a dispute as to any portion of a petitioning creditor's claim renders the creditor ineligible. Contrary to their testimony, the Petitioning Creditors knew that their claims were subject to bona fide disputes. (*See* Richards Decl., Ex. C at Bates Stamp 016; *see also* Williams Decl. at ¶ 3, Ex. 9.) The Petitioning Creditors filed this case in the face of known disputes and contrary to Ninth Circuit law. As stated by the bankruptcy court in *Mountain Dairies*, that "a claim could have been filed in good faith when a substantial portion of that claim was the subject of a bona fide dispute on its face is untenable." *See In re Mountain Dairies, Inc.*, 372 B.R. 623, 634 (Bankr. S.D.N.Y. 2007).

The Petitioning Creditors filed the Involuntary Petition as a litigation tactic. As the pending lawsuits demonstrate, state law remedies exist and have not been exhausted. The Involuntary Petition was filed shortly after the Noval Action was stayed. The Motion reveals that the Petitioning Creditors are attempting to sidestep the court-ordered stay in the Noval Action and the defendants' constitutional rights. (*See* Mot. at 8, line 1 stating that a "trustee can ignore and

1   not be shackled by the multiple motions for stay. . . .")  The Petitioning Creditors are admittedly

2   forum shopping in an attempt to obtain relief on their disputed and unproven allegations.

3        The Petitioning Creditors have taken inconsistent positions under penalty of perjury.  The

4   Petitioning Creditors misquoted Ninth Circuit legal authority.  The Petitioning Creditors have

5   submitted demonstrably inaccurate testimony.  And, as discussed above, it appears that one

6   Petitioning Creditor, Marco, manipulated documentary evidence.  These are all examples of bad

7   faith.

8

9   **VI.    IF THE COURT GRANTS THE MOTION, BANKRUPTCY RULE 2001(b)**

10      **REQUIRES THAT THE PETITIONING CREDITORS POST A BOND**

11       Under Bankruptcy Rule 2001(b), "[a]n interim trustee may not be appointed under this rule

12  unless the movant furnishes a bond in an amount approved by the court, conditioned to indemnify

13  the debtor for costs, attorney's fees, expenses, and damages allowable under § 303(i) of the Code."

14  Fed. R. Bankr. Proc. 2001(b); *see also In re The Ctr. for Mgmt. & Tech., Inc.*, 2007 WL 3197221,

15  at *6 (Bankr. D. Md. 2007) (stating that "the Rule 2001(b) bond requirement is mandatory rather

16  than discretionary.").

17       The Motion should be denied.  However, if the Court grants the Motion, the Petitioning

18  Creditors are required to post a bond before an interim trustee is appointed.  The bond requirement

19  is mandatory.  The Motion does not provide any legal authority to the contrary.  The Petitioning

20  Creditors assert that any bond should be nominal because Jadelle has the right to seek damages

21  under § 303(i), but these are the exact damages that the bond is required to cover.  Thus, the

22  Petitioning Creditors must post a bond in an amount that is sufficient to cover the costs, attorney's

23  fees (incurred to date and to be incurred in defending any trial on the petition), the damages

24  proximately caused by the filing, and punitive damages allowable under § 303(i).  *See* Fed. R.

25  Bankr. Proc. 2001(b).  This is not an insignificant sum.  Should the Court be inclined to appoint a

26  trustee, Jadelle requests a further hearing to prove up the amount of the bond.  However, as

27  discussed herein, if the petition proceeds, Jadelle would be tasked with defending against the same

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   disputed and unproven allegations of fraud that are currently at issue in *multiple* pending lawsuits.

2   The expected attorney's fees alone could easily exceed $500,000.

3

4   **VII.    CONCLUSION**

5         Based on the foregoing, Jadelle respectfully requests that the Court deny the Motion.

6

7         Respectfully submitted,

8   DATED:  May 26, 2020    SMILEY WANG-EKVALL, LLP

9

10  By:      */s/ Robert S. Marticello*

11        ROBERT S. MARTICELLO
    MICHAEL L. SIMON

12        Attorneys for Jadelle Jewelry and Diamonds,
    LLC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2825668.1

OPPOSITION TO MOTION TO
APPOINT INTERIM TRUSTEE

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**


A true and correct copy of the foregoing document entitled (*specify*): **Putative Debtor's Opposition to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **05/26/2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Baruch C Cohen    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Robert S Marticello    Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- Neal Salisian    ECF@salisianlee.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **05/26/2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.
Via First Legal:
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 05/26/2020 | Lynnette Garrett | */s/ Lynnette Garrett* |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**