**SMILEY WANG-EKVALL, LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:    714 445-1000
Facsimile:    714 445-1002

Attorneys for Jadelle Jewelry and Diamonds, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:20-bk-13530-BR |
| JADELLE JEWELRY AND DIAMONDS, LLC, | Chapter 7 |
| Putative Debtor. | **PUTATIVE DEBTOR'S EMERGENCY MOTION FOR (1) RECONSIDERATION OF THE COURT'S ORDER, OR (2) ALTERNATIVELY, A STAY OF THE BANKRUPTCY CASE; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| | **[Declaration of Robert S. Marticello, Declaration of Michael V Schafler, Request for Judicial Notice, and Index of Exhibits filed concurrently herewith]** |
| | **HEARING:** |
| | **DATE:    To Be Determined** |
| | **TIME:    To Be Determined** |
| | **CTRM:    1668** |
| | **255 E. Temple Street** |
| | **Los Angeles, CA 90012** |

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................1

II.  BACKGROUND .................................................................................................4

    A.  Hearing on the Motion to Dismiss and the Court's Order ...........................4

    B.  The Ineligible Creditors Immediately Begin to Take Advantage of the Order..........6

    C.  The Criminal Investigation..........................................................................7

III.  THE COURT CAN AND SHOULD RECONSIDER THE ORDER BECAUSE IT
IS CONTRARY TO THE CODE AND TO NINTH CIRUIT PRECEDENT .....................9

    A.  Entry of an Order for Relief Would Be Contrary to the Code .................10

    B.  The Court May Dismiss This Case Without a Creditor List ...................12

IV.  IF THE COURT DOES NOT RECONSIDER ITS ORDER, THEN A STAY
PURSUANT TO THE FIFTH AMENDMENT IS NECESSARY AND PROPER ...........14

    A.  Courts Have Discretion to Stay Cases as Justice Requires ......................14

    B.  The Most Important Factor in Deciding Whether to Stay a Case is the
Overlap Between the Proceedings..................................................................16

    C.  Courts Can Stay Cases Against Companies on Fifth Amendment Grounds............17

V.  THE STAY OF THIS CASE IS APPROPRIATE .............................................17

    A.  The Issues in the Criminal Investigation Overlap with the Bankruptcy Case..........17

    B.  Absent a Stay, the Rechnitz Parties and Jadelle Will Be Substantially
Prejudiced and Burdened ...............................................................................19

    C.  The Ineligible Creditors Will Not Be Prejudiced by a Stay ...................20

    D.  Judicial Economy Is Served by the Proposed Stay ..................................21

    E.  Persons Not Parties to this Action Will Not Be Adversely Impacted by the
Proposed Stay..................................................................................................21

    F.  The Interest of the Public Favors a Stay...................................................22

VI.  CONCLUSION ..................................................................................................23

i

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

2          Jadelle Jewelry and Diamonds, LLC, the putative debtor ("Jadelle"), files this motion (the

3  "Motion") for either (1) reconsideration of the Court's order entered on June 10, 2020 [Docket No.

4  39] (the "Order"); or (2) alternatively, a stay of the bankruptcy case.  Victor Franco Noval

5  ("Noval"), Peter Marco, LLC ("Marco"), and First International, Inc. ("First International"), shall

6  be collectively referred to as the "Ineligible Creditors."  In support of this Motion, Jadelle submits

7  the concurrently-filed Declaration of Robert S. Marticello, Declaration of Michael V Schafler,

8  Request for Judicial Notice, and Index of Exhibits, and the following memorandum of points and

9  authorities.

10

11              **MEMORANDUM AND POINTS AND AUTHORITIES**

12  **I.      INTRODUCTION**

13          Jadelle requests that the Court reconsider the Order, or, alternatively, stay this involuntary

14  case pending the conclusion of the ongoing criminal investigation.  As discussed herein, the Order

15  is contrary to the express provisions of the Code.  Moreover, the Ineligible Creditors have made

16  clear their intent to misuse the Order and gain an unfair and unwarranted advantage in this and

17  other pending litigation.  The Order, and the Ineligible Creditors' intent to exploit it, have placed

18  Jona Rechnitz and Rachel Rechnitz (collectively, the "Rechnitz Parties") in precisely the type of

19  Hobson's choice that a temporary stay is meant to remedy when there are parallel civil and

20  criminal proceedings.  In fact, here, the consequences of invoking the Fifth Amendment are far

21  more severe than would typically be the case because it will result in the ultimate relief requested

22  by the Ineligible Creditors—an order for relief, which they otherwise lack the standing to obtain.

23          The Court may and should reconsider the Order.  The entry of an order for relief if the

24  Rechnitz Parties do not file the joint declaration required by the Order would be contrary to the

25  express language of the Code.  An order for relief is permitted "***only if***" certain circumstances are

26  satisfied, none of which have been satisfied here.  *See* 11 U.S.C. § 303(b) & (h).  Jadelle timely

27  contested the involuntary petition by its motion to dismiss, there are no eligible petitioning

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   creditors, and there has been no finding that Jadelle is not paying its undisputed debts as they

2   come due.  Put simply, there is no basis in the Code to enter an order for relief.

3           As it stands, the Order essentially imposes unauthorized terminating sanctions against

4   Jadelle for the Rechnitz Parties' permissible exercise of their Fifth Amendment rights.  Neither the

5   Rechnitz Parties nor Jadelle have done anything to warrant such (or any other) sanctions.  At most,

6   the Rechnitz Parties' assertion of their Fifth Amendment rights gives rise to an adverse inference at

7   trial, as opposed to the immediate entry of the ultimate judgment sought by the Ineligible

8   Creditors.  Thus, at a minimum, the Court should reconsider the aspect of the Order requiring the

9   filing of the joint declaration and for the entry of an order for relief if the Rechnitz Parties do not

10  file the joint declaration.

11          The Court can also reconsider the Order in its entirety by vacating it and dismissing this

12  case.  The case was commenced by three petitioning creditors, all of whom the Court has

13  concluded are not eligible (based on their own admissions).  A putative debtor must file a creditor

14  list and creditors must be afforded a reasonably opportunity to join an involuntary petition pending

15  trial only when required by Bankruptcy Rule 1003(b).  By its express terms, and as interpreted by

16  both the Ninth Circuit and the Ninth Circuit BAP, Bankruptcy Rule 1003(b) does not apply in this

17  case.  As a result, under the Ninth Circuit's decision in *In re Vortex Fishing*, the Court is not

18  required to "pause" to afford non-petitioners with an opportunity to join, but is to determine the

19  issues of this case "'at the earliest practicable time and forthwith' enter a dispositive order."

20  Because the Court has already determined that the Ineligible Creditors are all ineligible, that

21  dispositive order can and should be an order granting Jadelle's motion to dismiss and dismissing

22  the case.

23          Alternatively, if the Court declines to reconsider its Order, the Court should stay this

24  matter on the basis of the Rechnitz Parties' intent to validly assert their Fifth Amendment privilege

25  against self-incrimination.  The single most important factor in determining whether to stay a

26  proceeding based on a litigant's Fifth Amendment privilege is the extent to which that proceeding

27  and the related criminal investigation overlap.  There can be no question that, here, the criminal

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

1   investigation, the bankruptcy case, and the Ineligible Creditors' pending civil lawsuits all stem

2   from and relate to the operation of Jadelle and its jewelry business.  In fact, federal prosecutors

3   have unambiguously stated that they are aware of the civil lawsuits and this bankruptcy case and

4   that the allegations in those cases are within the scope of the criminal investigation.  Thus, the

5   single most important factor supports a stay.

6          A balancing of the harms also heavily weighs in favor of staying this case.  The Ineligible

7   Creditors have already asserted that, by complying with the Order, the Rechnitz Parties will have

8   waived their Fifth Amendment rights in this case and in their respective pending suits and the

9   Ineligible Creditors will seek to gain an advantage in all of the civil lawsuits on that basis.  Thus,

10  if the Rechnitz Parties comply with the Order, they risk waiving their constitutional rights in

11  multiple proceedings.  In contrast, the Rechnitz Parties' invocation of the Fifth Amendment will

12  irreparably harm Jadelle as it will be involuntarily placed into bankruptcy in favor of three

13  creditors whom this Court has already determined are clearly not eligible and not entitled to

14  commence this case.  The Ineligible Creditors will thus obtain *an order for relief in a case they*

15  *had no right or standing to commence in the first place*.  This is not a fair result, it invokes too

16  great a penalty for the exercise of Constitutional rights, and is the type of result that the Court can

17  address and prevent through a stay.

18         Dismissal of this case is the most equitable result.  The parallel proceedings are of the

19  Ineligible Creditors own creation.  The Ineligible Creditors prompted the criminal investigation

20  with their allegations and have been attempting to profit ever since.  Noval referred the Rechnitz

21  Parties and Jadelle to law enforcement for criminal prosecution.  Then, Noval and Marco

22  commenced suit.  When Noval's suit was temporarily stayed, the Ineligible Creditors brought the

23  same allegations and disputes to this Court.  Notwithstanding the fact that the Ineligible Creditors

24  had no standing or right to commence this case, they now stand to obtain discovery they cannot

25  currently obtain in their individual lawsuits or an order for relief contrary to the express provisions

26  of the Code.

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

Finally, there is cause for emergency relief. The Order requires that the Rechnitz Parties file a joint declaration by 3:00 p.m. on Tuesday, June 16, 2020. As there has been only a week between the hearing that resulted in the Order and that filing deadline, Jadelle could not have been reasonably expected to file this Motion at an earlier time. Due to the deadline in the Order, Jadelle files this Motion on an emergency basis. If the Court is inclined to proceed with the entry of an order for relief if the joint declaration is not timely filed, then Jadelle requests an emergency hearing before the deadline. If, however, the Court is inclined to refrain from entering an order for relief pending consideration or a hearing on this Motion, then Jadelle requests a hearing on the Motion on a date and time convenient from the Court.

Accordingly, Jadelle respectfully requests that the Court reconsider the Order and either (1) remove the requirement that a joint declaration be filed by the Rechnitz Parties and providing for the entry of an order for relief if they do not, or (2) vacate the Order, grant Jadelle's motion to dismiss this case, and dismiss this case. Alternatively, Jadelle respectfully requests that the Court stay this case on account of the Rechnitz Parties assertion of their Fifth Amendment privilege.

## II.    **BACKGROUND**

### A.    Hearing on the Motion to Dismiss and the Court's Order

On June 9, 2020, at 10:00 a.m., the Court heard two motions, Jadelle's motion to dismiss this case for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6) [Docket No. 8] (the "Motion to Dismiss") and the Ineligible Creditors' motion for the appointment of an interim trustee [Docket No. 12] (the "Trustee Motion"). A status conference was also on calendar that day.

With respect to the Motion to Dismiss, the Court determined that, as argued by Jadelle, the Ineligible Creditors are ineligible to be petitioning creditors. This Court found that their claims are subject to bona fide disputes as to amount and/or liability based on the Ineligible Creditors' judicial admissions and the facts subject to judicial notice. (*See* Ex. 1[1] at Bates Stamps 53, line 19

---

[1]    Unless otherwise provided, all references to exhibits herein are to the concurrently filed Index of Exhibits.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

to 51, line 3, Bates Stamp 62, line 3 to Bates Stamp 63, line 8, Bates Stamp 65, line 14 to Bates

Stamp 66, line 2, and Bates Stamp 90, lines 17-22.)  The Court also denied the Trustee Motion

without prejudice.  (*See id.* at Bate Stamp 71, lines 2-4.)

   Nevertheless, the Court ordered the Rechnitz Parties to sign and file, under penalty of

perjury, a joint declaration identifying each and every one of Jadelle's creditors as of the petition

date of April 6, 2020.  (*See* Ex. 2 at § 1.)  The Court required that such declaration be filed within

seven days of the hearing, by 3:00 p.m. on Tuesday, June 16, 2020.  (*See id.* at § 2.)  The Order

states that if the Rechnitz Parties fail to file the joint declaration by the deadline, the Court will

deny the Motion to Dismiss and "immediately enter an order for relief in this case." (*See id.* at §

3.)  The Court ordered the filing of the joint declaration in order to provide the Ineligible Creditors

with 60 days to contact other creditors in order to determine whether any such creditors are willing

to join the petition.  (*See id.* at § 4.a.)  Any joinders must be filed by 3:00 p.m. on August 14,

2020.  (*See id.*; *see also* Ex. 1 at Bate Stamp 93, line 25 to Bates Stamp 94, line 2.)

   The Order also authorized the Ineligible Creditors to conduct certain limited discovery.

(*See* Ex. 2 at § 4.b.)  During the hearing, the Court emphasized that any discovery should be

limited and not complicated.  (*See* Ex. 1 at Bates Stamp 83, lines 7-10, the Court stating "I assume

you want to take the deposition as to just what we're talking about.  **I hope you don't do any**

**beyond that.  It will make it very unnecessarily complicated**." (emphasis added); *see also id.* at

Bates Stamp 85, lines 16-18, the Court stating "as far as I'm concerned, should be limited to just

what we're talking about, who the creditors of the debtor are.")

   In response to concerns the Ineligible Creditors would seek discovery regarding their own

disputed claims, the Court made clear it wanted the discovery limited to only the existence of, and

any asserted disputes related to, the other creditors listed.  (*See id.* at Bates Stamp 85, line 19 to

Bates Stamp 86, line 20;[2] *see also id.* at Bates Stamp 87 lines 4-19.)  The Court stated that it did

not want the Ineligible Creditors seeking discovery as to their own claims.  (*See id.* at Bates Stamp

---

[2] The reference to "Mr. Marticello" stating "We will amend our discovery" is mistaken and should be "Mr. Richards."

1   91, line 22 to Bates Stamp 92, line 24.)  The Court stated it that it was not prejudging the requests

2   for discovery.  (*See id.* at Bates Stamp 85, lines 7-18.)

3   **B.    The Ineligible Creditors Immediately Begin to Take Advantage of the Order**

4   The Ineligible Creditors immediately began attempting to misuse and improperly exploit

5   the Order.  On June 11, 2020, the day after entry of the Order, Marco filed a declaration in his

6   pending lawsuit against the Rechnitz Parties.  The declaration was filed in support of Marco's

7   opposition to the Rechnitz Parties' motion for a stay of that case (which motion was already, and

8   still is, under submission with the District Court).  The declaration states, *inter alia*, as follows:

> The point being, is that by filing their Joint Declarations sworn under
> penalty of perjury regarding their defrauded creditors (like Marco),
> and their having to be deposed by Petitioning Creditors re same.
> Rechnitz will *de facto*, have to **waive** their Fifth amendment rights
> against self-incrimination from criminal liability that they fear in this
> Motion. If indeed, Rechnitz complies with Judge Russell's Order, this
> Motion for Stay would be moot.

13  (*See* Ex. 3 at Bates Stamp 104-105 (emphasis in original).)

14  The Ineligible Creditors also began seeking and demanding discovery that is overly broad

15  and overly complicated.  On June 11, 2020, the Ineligible Creditors, via counsel, contacted

16  Jadelle's counsel to arrange for certain discovery.  (*See* Ex. 4 at Bates Stamp 113.)  Specifically,

17  the Ineligible Creditors stated their intentions of serving deposition and document subpoenas on

18  Mr. Rechnitz and Mrs. Rechnitz.

19  Contrary to the Court's desire that any discovery be simple and limited, the Ineligible

20  Creditors indicated that they were demanding the Rechnitz Parties' cell phones in order "to upload

21  their text messages and emails" and they intended to seek electronically stored information

22  discovery regarding Mr. Rechnitz's email account.  (*See id.*)

23  The Ineligible Creditors served new document requests, but the new document requests

24  included with the subpoenas are still overly broad in at least four respects.[3]  First, the Ineligible

25  Creditors seek all documents and communications related to all "Creditor[s,]" which as defined in

26

27      [3]    Jadelle reserves any and all rights and objections related to the discovery proposed by the Ineligible
28  Creditors.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    the document request would include discovery related to the Ineligible Creditors, which the Court

2    specifically said was not allowed.  (*See* Ex. 4 at Bates Stamps 116-117 .)  Second, the Ineligible

3    Creditors seek documents regarding any payments to creditors after the petition date, even though

4    the Court made clear that the focus of the Ineligible Creditors' inquiry should be as of the petition

5    date.  (*See id.* at Bates Stamp 118; *see also* Ex. 1 at Bates Stamp 80, lines 8-10, stating that post-

6    petition payments are irrelevant because the "law is as of the date of the petition."; *id.* at Bates

7    Stamp 93, lines 6-17.)  Any post-petition payments or communications are irrelevant.[4]  Third, the

8    Ineligible Creditors did not include any time limitations in their discovery requests at all.  (*See id.*

9    at Bates Stamp 116-119.)  Fourth, as discussed above, the Ineligible Creditors' demands for cell

10   phones and electronically stored information is simply overly broad and burdensome in light of

11   the limited issues currently before the Court—the mere existence of other creditors who may or

12   may not want to join the petition.

13            This is a classic case where the Court gave the Ineligible Creditors an inch (that they were

14   not entitled to) and they are racing to take a mile.  It is clear that the Ineligible Creditors, whose

15   bad faith was extensively documented in the Motion to Dismiss, are seeking to use this case and,

16   now, discovery to obtain the type of improper leverage the Ninth Circuit in *Blixseth* was

17   concerned about.  *See Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1184 & 1187 (9th Cir. 2019)

18   (stating the "'bona fide dispute' limitation" is designed to prevent creditors using the involuntary

19   bankruptcy process to leverage the collection of disputed claims).  It was also not lost on Jadelle

20   that the Ineligible Creditors requested that counsel accept service of the subpoenas for the

21   Rechnitz Parties under the threat of sending process servers to their house starting 8:05 p.m. on

22   Friday, June 12.  (*See* Ex. 4. at Bates Stamp 113.)  That is the exact time for sundown and is the

23   beginning of Shabbat, which the Rechnitz Parties strictly observe and which is well known to the

24   Ineligible Creditors.

25        **C.    The Criminal Investigation**

26            Rechnitz Parties and Jadelle first became aware of the ongoing criminal investigation

27   _____

28        [4]    The Court also made clear that there was nothing improper with Jadelle communicating with its creditors
     post-petition.  (*See* Ex 1 at Bates Stamp 93, lines 6-17.)

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

through a draft Los Angeles Superior Court complaint received from Noval.  (*See* Schafler Decl. at ¶ 3a ; *see also id.*, Ex. B , Cohen Decl. at ¶ 9.)  Rechnitz Parties and Jadelle received the draft Noval complaint on February 4, 2020.  (*See id.* at Ex. B, Cohen Decl. at ¶ 9.)  The draft complaint contained allegations against the Rechnitz Parties and Jadelle, among others, regarding alleged loans made to Jadelle.  (*Id.*)

Noval's draft complaint indicated that Noval had filed a police report with the Beverly Hills Police Department ("BHPD") concerning the allegations in the draft complaint.  (*See* Schafler Decl. at Ex. B, Cohen Decl., ¶ 9.)  This is also reflected in Noval's filed complaint.  (*See* Ex. 5 at Bates Stamp 137, ¶ 37.)  On February 7, 2020, counsel for Rechnitz Parties and Jadelle confirmed with a detective from the BHPD that allegations related to the jewelry business had been referred to the Federal Bureau of Investigation ("FBI").  (*See* Schafler Decl. at Ex. B, Cohen Decl. at ¶ 10.)  Thereafter, counsel for the Rechnitz Parties and Jadelle conferred with an Assistant United States Attorney ("AUSA") from the Los Angeles office of the United States Attorney's Office for the Central District of California ("USAO") regarding the status of any criminal investigation.  (*Id.* at ¶ 11.)

Based on multiple discussions with the federal prosecutors investigating Jadelle's jewelry business, the following is known:

1.  The USAO and FBI are investigating conduct related to the jewelry business operated through Jadelle.

2.  The government's investigation includes the allegations that are the subject of and included in the civil complaints filed by Marco and Noval.

3.  Mr. Rechnitz is presently a subject of the government's investigation.

4.  The government's ongoing investigation goes beyond Mr. Rechnitz's conduct and includes other individuals.  The government does not wish to publicly disclose the nature and scope of its investigation.

5.  Mr. Rechnitz may soon be subpoenaed to testify before the grand jury and the government understands that Mr. Rechnitz may assert his Fifth Amendment

1    privilege to decline to testify.

2    6.    The government is aware of the involuntary bankruptcy proceedings (in addition to

3    the other civil actions) and this Court's oral ruling on June 10, it understands that

4    Jadelle is seeking a stay based on Mr. Rechnitz's Fifth Amendment privilege, and it

5    does not oppose Mr. Rechnitz's assertion of his Fifth Amendment privilege in this

6    case or in the civil lawsuits.

7    7.    The government's investigation is ongoing.

8    (*See* Schafler Decl. at ¶ 4.)  If Ms. Rechnitz were to be called as a witness, she would for many of

9    the same reasons assert her Fifth Amendment privilege and marital privilege to

10   decline to answer.  (*See id.* at ¶ 5.)

11

12   **III.    THE COURT CAN AND SHOULD RECONSIDER THE ORDER BECAUSE IT IS**

13   **CONTRARY TO THE CODE AND TO NINTH CIRUIT PRECEDENT**

14        The Court has the discretion to reconsider the Order.  The standard governing

15   reconsideration depends on whether the Order is considered interlocutory or final.  The Court has

16   the inherent authority to reconsider and rescind an interlocutory order.  *See City of Los Angeles,*

17   *Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886–87 (9th Cir. 2001) ("[A] district

18   court's authority to rescind an interlocutory order over which it has jurisdiction is an inherent

19   power rooted firmly in the common law and is not abridged by the Federal Rules of Civil

20   Procedure.").  Moreover, the Court has the authority to reconsider an interlocutory order as justice

21   requires under Rule 54(b), which is incorporated into bankruptcy cases by Bankruptcy Rule

22   7054(a).  *See Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015) (stating that Rule 54(b) involves a

23   more flexible standard and reflects the "'inherent power of the rendering district court to afford

24   such relief from interlocutory judgments as justice requires.'").

25        If the Order is considered a final order, then Rule 59 permits the Court to amend the Order

26   or issue a new order *sua sponte* or on a motion by a party.  *See* Fed. R. Civ. P. 59(a)(2), (d), & (e).

27   The Ninth Circuit has articulated the following standard for reconsideration under Rule 59(e):

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

> A district court has considerable discretion when considering a motion to amend a judgment under Rule 59(e).  There are four grounds upon which a Rule 59(e) motion may be granted: 1) the motion is "necessary to correct manifest errors of law or fact upon which the judgment is based;" 2) the moving party presents "newly discovered or previously unavailable evidence;" 3) the motion is necessary to "prevent manifest injustice;" or 4) there is an "intervening change in controlling law."

*Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (alternation in original and citations omitted).

Reconsideration of the Order is appropriate whether it is considered final or interlocutory. If the Order is interlocutory, then the Court has the inherent power to reconsider it or as justice requires under Rule 54(b).  If the Order is considered final, then reconsideration is appropriate because entry of an order for relief in this case would constitute a manifest error of law. Moreover, the requirement that the Rechnitz Parties file a joint declaration and the entry of an order for relief if they do not do so was not briefed for the Court, but was raised by the Court *sua sponte* during the hearing on the Motion to Dismiss.

Reconsideration is also appropriate due to the conduct of the Ineligible Creditors.  Despite the Court's finding that all three Ineligible Creditors are ineligible based on their own admissions, they are emboldened.  The Ineligible Creditors are seeking discovery more complicated and broader than the limited discovery it appears the Court envisioned.  They are also using any compliance with the Court's Order to gain an unfair advantage—the entry of an order for relief in case they lacked standing to pursue or a waiver of the Rechnitz Parties' Fifth Amendment rights.

A.    <u>Entry of an Order for Relief Would Be Contrary to the Code</u>

Under the Bankruptcy Code, an involuntary petition must be commenced by the requisite number of eligible petitioning creditors and, if an involuntary petition is timely controverted, the court shall, ***after trial***, enter an order for relief "***only if*** — (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount. . . ."  *See* 11 U.S.C. § 303(b) & (h) (emphasis added); *see also In re Marciano*, 446 B.R. 407, 420 (Bankr. C.D. Cal. 2010), *aff'd*, 459 B.R. 27 (B.A.P. 9th Cir.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    2011), *aff'd*, 708 F.3d 1123 (9th Cir. 2013) (listing the five elements petitioning creditors must

2    establish).

3          The entry of an order for relief at this preliminary stage simply if the Rechnitz Parties

4    permissibly invoke the Fifth Amendment and decline at their counsel's advice to file the joint

5    declaration as required by the Order would be contrary to the Code.  The Code permits the entry of

6    an order for relief only in certain express circumstances, none of which will have been satisfied in

7    this case.

8          • *First*, Jadelle timely controverted the Involuntary Petition, and, therefore entry of

9             an order for relief due to an alleged debtor's default is not appropriate.  *See* 11

10            U.S.C. § 303(h).

11         • *Second*, the Court concluded that each of the Ineligible Creditors are ineligible

12            under the Ninth Circuit's decision in *Blixseth* and, as a result, the Ineligible

13            Creditors lack standing to commence this case as required by § 303(b) and no other

14            creditors have joined this case.  *See Dep't of Revenue v. Blixseth*, 942 F.3d 1179,

15            1185 (9th Cir. 2019) (stating that a bona fide dispute "strips the creditor of

16            standing. . . .").

17         • *Third*, there has been no finding, after trial, that Jadelle is generally not paying its

18            undisputed debts as they become due on the agreed to terms.  *See* 11 U.S.C. §

19            303(h).

20         Because Jadelle timely controverted the Involuntary Petition, the Court can enter an order

21   for relief if and "only if" there is the requisite number of eligible petitioning creditors and the

22   Court determines after a trial that Jadelle is generally not paying its undisputed debts as they

23   become due on the agreed to terms.  These requirements have not been satisfied.  The entry of an

24   order for relief would, in effect, be an unwarranted terminating sanction contrary to the express

25   language of the Code.  Jadelle should not be penalized or sanctioned as a result of non-debtor third

26   parties exercising their Constitutional rights.  The Ineligible Creditors are not entitled the windfall

27   or (victory by default) that they seek and that they have essentially tried to engineer since the

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

outset of their disputes with Jadelle.  Thus, the Court should reconsider its Order and remove the requirements that the Rechnitz Parties file a joint declaration and that an order for relief will be entered if they do not file the joint declaration.

**B.**      **The Court May Dismiss This Case Without a Creditor List**

According to the Ninth Circuit, "'[t]he court shall determine the issues of a contested [involuntary] petition at the earliest practicable time and forthwith' enter a dispositive order." *See In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1061 (9th Cir. 2002) (quoting Bankruptcy Rule 1013(a)) (alterations in original).  The bankruptcy court is required to "pause before [a] hearing on the merits of an involuntary petition *in only one circumstance*." *See id.* (emphasis added).  The court must assure that creditors have a reasonable opportunity to join the petition when required by Bankruptcy Rule 1003(b), *i.e.,* "when the alleged debtor's answer to the petition *filed by fewer than three petitioners* asserts that the petition fails" because three petitioning creditors are required. *See id.* (emphasis added).  In *Vortex Fishing*, the Ninth Circuit concluded that "[b]ecause more than three petitioners filed the initial involuntary petition, notification of other creditors was not required under the joinder provisions of Bankruptcy Rule § 1003(b)." *See id.* at 1072.

The Ninth Circuit BAP's decision in *QDOS, Inc.*, fully supports granting Jadelle's meritorious Motion to Dismiss and without requiring a creditor list and an opportunity to join the petition.  *QDOS* is distinguishable for three important reasons.  First, the issue presented to the bankruptcy court in that case was whether the case was commenced by too few creditors, *i.e.*, only two eligible creditors when three were required.  *See In re QDOS, Inc.*, 607 B.R. 338, 341-42 (B.A.P. 9th Cir. 2019).  Second, the bankruptcy court determined that it could not grant the putative debtor's Rule 12(b)(6) motion to dismiss and triable issues existed.  *See id.* at 341-42 & 346-47.  Third, according to the BAP, once the bankruptcy court determined that triable issues existed (and implicitly denied the debtor's motion to dismiss), the debtor was required to answer and, based on the debtor's position, provide a list of creditors as required by Rule 1003(b). *See id.* at 341 & 347.  However, the BAP recognized that the putative debtor is required to answer the

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

petition *only if* a Rule 12(b)(6) motion to dismiss is denied.  *See id.* at 345.  Moreover, a debtor is required to comply with Bankruptcy Rule 1003(b) and provide a list of creditors as required pursuant to that rule "*if*" it "asserts that it has more than 12 creditors in its answer. . . ."  *See id.* at 345 (emphasis added).  The BAP reversed the bankruptcy court for procedural reasons because it determined that Bankruptcy Rule 1003 applied in that case and the court dismissed the case due to an insufficiency in the number of petitioning creditors without requiring the putative debtor to comply with Bankruptcy Rule 1003.  *See id.* at 341.

Where, as here, the case is commenced by three petitioning creditors, Rule 1003(b) does not apply and the court is not required to provide creditors with any opportunity to join.  In *In re Taub*, the alleged debtor sought dismissal of an involuntary petition commenced by three petitioning creditors on the basis that the creditors' claims were subject to bona fide dispute as to liability and amount.  *See In re Taub*, 439 B.R. 261, 267 (Bankr. E.D.N.Y. 2010).  The petitioning creditors argued that the court "should provide a window of time for non-petitioning creditors holding unsecured claims to join the Petition."  *See id.* at 271.  The court rejected the creditors' request.  *See id.* at 271-72.  The court held that Bankruptcy Rule 1003 does not apply "when the alleged debtor seeks dismissal of the petition on the basis that the petitioning creditors are not qualified under § 303(b) because their claims are subject to a bona fide dispute."  *See id.* at 271.  Relying on the Ninth Circuit's decision in *Vortex Fishing Systems*, the court concluded that because the case was commenced by three petitioners and because the debtor sought dismissal because all three were ineligible, "there is no requirement that non-petitioning creditors be afforded 'a reasonable opportunity' to join the Petition."  *See id.*

The Court can and should dismiss this case at this time and without affording non-petitioners an opportunity to join.  According to both the Ninth Circuit and the Ninth Circuit BAP, a creditor list and opportunity to join is required *only where Bankruptcy Rule 1003(b) requires it*.  The procedural mistake by the court in *QDOS* was that the BAP concluded that Bankruptcy Rule 1003(b) applied in that case and the putative debtor was not required to answer and file a list as the rule requires.  *See In re QDOS, Inc.*, 607 B.R. at 347.  Here, Bankruptcy Rule 1003(b) is

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    inapplicable because the case was not commenced by "fewer than three petitioning creditors[.]"

2    Like *Taub*, this case was commenced by three creditors and Jadelle sought dismissal on the basis

3    that all three are ineligible.  Moreover, the Court concluded that the claims of the Ineligible

4    Creditors are subject to bona fide disputes and that the Motion to Dismiss could be granted.

5    Because Bankruptcy Rule 1003(b) does not apply here, the Court is not required to pause, but

6    enter a dispositive order "at the earliest practicable time and forthwith[.]"  *See In re Vortex Fishing*

7    *Systems, Inc.*, 277 F.3d at 1061.

8        This Court has already determined that the Ineligible Creditors are ineligible, and

9    therefore, under the Code and Ninth Circuit precedent, this Court should issue a dispositive order

10   granting the Motion to Dismiss and dismissing the case.

11

12   **IV.    IF THE COURT DOES NOT RECONSIDER ITS ORDER, THEN A STAY**

13   **PURSUANT TO THE FIFTH AMENDMENT IS NECESSARY AND PROPER**

14   **A.    Courts Have Discretion to Stay Cases as Justice Requires**

15       It is widely recognized that courts have the authority to stay civil proceedings pending the

16   resolution of a parallel criminal proceeding.  *See Keating v. Office of Thrift Supervision*, 45 F.3d

17   322, 324 (9th Cir. 1995); *Grubbs v. Irey*, 2008 WL 906246 (E.D. Cal. March 31, 2008).  While the

18   Constitution does not require a stay, the decision whether to stay civil proceedings in the face of a

19   parallel criminal proceeding depends on "the particular circumstances and competing interests

20   involved in the case."  *See Keating*, 45 F.3d at 324 (quoting *Federal Sav. & Loan Ins. Corp. v.*

21   *Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)).

22       The Fifth Amendment privilege against self-incrimination may be asserted "in any

23   proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory."  *Fuller v.*

24   *Superior Court of Los Angeles County*, 87 Cal. App. 4th 299, 305 (2001).  In civil actions,

25   however, a witness invoking his constitutional privilege may be subjected to adverse

26   consequences arising from the refusal to testify.  *See Baxter v. Palmigiano*, 425 U.S. 308, 318-19

27   (1976).  Courts have recognized "the dilemma faced by a defendant who must choose between

28

defending the civil litigation by providing testimony that may be incriminating on the one hand, and losing the case by asserting the constitutional right and remaining silent, on the other hand." *See Fuller*, 87 Cal. App. 4th at 306 (citing *Avant! Corp. v. Superior Court of Santa Clara County*, 79 Cal. App. 4th 876, 882 (2000)); *see also People v. Coleman*, 13 Cal. 3d 867, 884-85 (1975) (recognizing "the plight of a defendant in a criminal prosecution who must also defend against civil proceedings involving the same facts.").

When faced with pending criminal proceedings, a district court has the discretion to stay civil proceedings "'when the interests of justice seem [] to require such action.'" *See Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (quoting *Securities & Exchange Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)); *see also Volmar Distributors, Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) ("It is well settled that district courts have the inherent power, in the exercise of discretion, to issue a stay when the interests of justice require such action."). Whether a district court exercises its discretion depends on the particular circumstances and competing interests involved in the case. *See Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989). "Depending on the particular facts of the case, the court may decide to stay civil proceedings, postpone civil discovery, or impose protective orders." *Volmar Distributors, Inc*, 152 F.R.D. at 39.

Based on Fifth Amendment privilege concerns, courts have entered stay of civil proceedings to protect the Fifth Amendment privileges of defendants currently under indictment or facing the possibility of indictment. *See Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007) ("[S]imultaneous criminal and civil cases involving the same or closely related facts may give rise to Fifth Amendment concerns sufficient to warrant a stay of the civil proceedings."); *see also eBay, Inc. v. Digital Point Solutions*, 2010 WL 702463 at *3 (N.D. Cal. Feb. 25, 2010) (following *Chao*).

"[T]he mere possibility of criminal prosecution is all that is necessary for the Fifth Amendment privilege against self-incrimination to be invoked." *Consumer Fin. Prot. Bureau v. Global Fin. Support, Inc.*, 2016 WL 2868698, at *3 (S.D. Cal. May 17, 2016). Thus, even where a

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

party has not been charged, a stay may still be appropriate.  *See id.* (granting a 120-day stay and

setting status conference to determine necessity of a further stay in light of an ongoing

investigation by IRS and FBI); *see also Franco v. City of W. Covina*, 2019 WL 6794203, at *2

(C.D. Cal. 2019) (granting a stay of a deposition and discovery related to an officer's involvement

in a shooting where the authorities were reviewing the legality of the shooting, and noting "[while

defendant-officer's] Fifth Amendment rights are implicated to a lesser extent than they would be if

charges had been brought against him . . . this case is not one in which there is an 'absence of any

hint of criminal proceedings'"); *Clifford v. Trump*, 2018 WL 3435419, at *3, 6 (C.D. Cal. 2018),

*reconsideration denied*, 2018 WL 3436832 (C.D. Cal. 2018) (granting defendant's *ex parte*

application for a 90-day stay in light of an ongoing criminal investigation, scheduling a status

conference at expiration of those 90 days, and noting that "there [was] a large potential factual

overlap between the civil and criminal proceedings that would heavily implicate [defendant's]

Fifth Amendment rights"); *C.M. by & through McLain v. City of Los Angeles*, 2017 WL

10527380, at *2 (C.D. Cal. 2017) ("[T]he Court may still order a stay if there is substantial overlap

between the criminal investigation and the allegations in the lawsuit.").

### B. The Most Important Factor in Deciding Whether to Stay a Case is the Overlap Between the Proceedings

The most important factor in determining whether to stay a proceeding pending a criminal

investigation is the extent to which the matters overlap.  *See Volmar Distributors, Inc. v. New York*

*Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (quoting *Parallel Civil and Criminal Proceedings*,

129 F.R.D. 201, 203 (S.D.N.Y. 1989) ("The most important factor at the threshold is the degree to

which the civil issues overlap with the criminal issues."); *see also Chao*, 498 F.Supp.2d at 1039

(stating that "the extent to which the issues in the criminal case overlap with those in the civil case,

is regarded as the most important factor." (internal quotation marks omitted)).

District courts also consider the following factors: (1) the interest of the plaintiffs in

proceeding expeditiously with this litigation or any particular aspect of it, and the potential

prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings

may impose on defendants; (3) the convenience of the court in the management of its cases, and

the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation;

and (5) the interest of the public in the pending civil and criminal litigation. *See Federal Sav. &*

*Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902-03 (9th Cir. 1989).  Courts are to balance these

factors on a case-by-case basis to "avoid prejudice." *See Volmar Distributors, Inc. v. New York*

*Post Co.,* 152 F.R.D. 36, 39 (S.D.N.Y. 1993).

### C.    Courts Can Stay Cases Against Companies on Fifth Amendment Grounds

Courts have stayed cases against a company based on the Fifth Amendment rights of an

individual where the individuals invocation of his or her Fifth Amendment rights would prevent

the company from adequately defending itself. *See, e.g. Taylor, Bean & Whitaker Mortg. Corp. v.*

*Triduanum Fin., Inc.*, 2009 WL 2136986, at *3 (E.D. Cal. July 15, 2009) (holding that the

corporate defendant was "likely to be greatly prejudiced in it[s] ability to meaningful defend itself

in the civil matter."); *In re Adelphia Commc'ns Corp.*, 302 B.R. 439, 452 (Bankr. S.D.N.Y. 2003)

(finding it "necessary and appropriate" to protect companies from the risk that the individuals

invocation of the Fifth Amendment would result in adverse consequences to the companies and

could also cause "a threat to a successful reorganization . . . .").  At least one court has also stayed

a civil action against a company in the interests of judicial economy and to avoid duplication of

effort. *See Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886

F. Supp. 1134, 1139 (S.D.N.Y. 1995) (the defendants also raised the argument that the individuals'

invocation of the Fifth Amendment would prevent the company from adequately defending itself).

## V.    THE STAY OF THIS CASE IS APPROPRIATE

### A.    The Issues in the Criminal Investigation Overlap with the Bankruptcy Case

The criminal investigation and this case involve the same matter.  In fact, the criminal

investigation was initiated by a criminal referral by the Ineligible Creditors.  (Schafler Decl, Ex. B,

Cohen Decl. at ¶ 9.) There can be no dispute that the pending criminal investigation, the Ineligible

Creditors' civil lawsuits, and this bankruptcy case are all inextricably intertwined.  All three stem

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  from and relate to Jadelle's business.  There is an ongoing federal criminal investigation

2  concerning the Rechnitz Parties related to the operation of Jadelle and its jewelry business.  (*See*

3  Schafler Decl. at ¶ 4.)  That same business is the focus of the Ineligible Creditors' claims and

4  allegations.  (*See* Ex. 5 at Bates Stamp 134, Ex. 6 at Bates Stamp 166, and Ex. 7 at Bates Stamp

5  254.)  Jadelle's jewelry business is the focus of this case.  In particular, the Order requires a joint

6  declaration under penalty of perjury identifying the persons with whom Jadelle conducted its

7  jewelry business.  Thus, the criminal investigation relates to very transactions underlying the

8  Ineligible Creditors' claims and with the alleged creditors that would be included in the joint

9  declaration ordered by the Court.  Moreover, the Order does not merely require a list, but that the

10  Rechnitz Defendants provide testimony under oath identifying and regarding Jadelle's alleged

11  creditors.  The Rechnitz Parties' Fifth Amendment rights are clearly implicated in this case.

12  　　　　The overlap between the criminal investigation and this case is further demonstrated by the

13  Ineligible Creditors' actions since the Order was entered.  Immediately following entry of the

14  Order, Marco filed a declaration with the District Court where his lawsuit is pending asserting that

15  if the Rechnitz Parties comply with the Order, they will have waived their Fifth Amendment rights

16  in that lawsuit.  (*See* Ex. 3 at Bates Stamps 104-105.)  Similarly, in seeking discovery, the

17  Ineligible Creditors have asserted that if the Rechnitz Parties comply with the Order, they will

18  have waived their Fifth Amendment rights "as to the entire subject matter which will be a large

19  swath of questions about the various creditors and Jona and Rachel's credibility is far game and at

20  issue." (*See* Ex. 4 at Bates Stamp 113.)  According to the Ineligible Creditors, if the Rechnitz

21  Parties comply with the Court's Order, they will have waived their Fifth Amendment rights in this

22  case and the pending civil lawsuits.  Moreover, if the Rechnitz Parties comply with the Order, then

23  the Ineligible Creditors will attempt to proceed with overly broad discovery regarding the same

24  transactions at issue in their underlying lawsuits and with the other alleged creditors arising from

25  Jadelle's jewelry business, all of which is the subject of the ongoing criminal investigation.  The

26  criminal investigation, the Ineligible Creditors' lawsuits, and the issues in this case all involve

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

Jadelle and its jewelry business.  Thus, the most important factor considered by courts supports staying this case.

**B.**    **Absent a Stay, the Rechnitz Parties and Jadelle Will Be Substantially Prejudiced and Burdened**

Jadelle and the Rechnitz Parties will be substantially and irreparably prejudiced absent a stay.  The Rechnitz Parties face a Hobson's Choice.  The Rechnitz Parties face the impossible choice of potentially waiving their Fifth Amendment rights in multiple matters by complying with the Order, or, exercising those rights and prejudicing themselves *and Jadelle* as a result.  If the Rechnitz Parties comply with the Order, the Ineligible Creditors are waiting to profit therefrom, by asserting that the Rechnitz Parties have forever and broadly waived their Fifth Amendment rights in this proceeding and their lawsuits.  In contrast, invoking the Fifth Amendment, invites prejudice and negative inferences.  *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) ("[I]n civil proceedings adverse inferences can be drawn from a party's invocation of this Fifth Amendment right."); *see also Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*, 2009 WL 2136986, at *3 (E.D. Cal. July 15, 2009 ("if discovery moves forward, the defendant will be faced with the difficult choice between asserting his right against self-incrimination, thereby inviting prejudice in the civil case, or waiving those rights, thereby courting liability in the civil case.").

The invocation of the Rechnitz Parties' Fifth Amendment rights also will impact Jadelle's ability to defend itself.  This case is unique as the prejudicial impact arising from the Rechnitz Parties exercising their Fifth Amendment rights will go far beyond an adverse inference in this case or the civil lawsuits.  Rather, if the Rechnitz Parties invoke their Fifth Amendment rights, then Jadelle will receive a terminating sanction in the form of the entry of an order for relief (where the statutory requirements for such order have not been met).  Even if the Court does not enter an order for relief, pending the criminal investigation, Jadelle is unable participate in discovery and defend itself in response to the Ineligible Creditors' allegations.  Thus, absent a stay, the Ineligible Creditors will receive an undue advantage—an order for relief in a case where (1)

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   they themselves referred the Rechnitz Parties for criminal prosecution, (2) they did not have

2   standing to commence the petition in the first place and (3) they have not and cannot establish the

3   statutory requirements for such an order.

4          **C.     The Ineligible Creditors Will Not Be Prejudiced by a Stay**

5          The Ineligible Creditors will not be prejudiced by a stay.  First, the Ineligible Creditors are

6   ineligible and have no standing to commence or proceed with this case.  Thus, as it now stands,

7   there is no proper petitioning creditor with standing or any interest in proceeding with this case

8   (expeditiously or otherwise).  For this reason alone, the Ineligible Creditors are not prejudiced if

9   this case is temporarily stayed.

10         Second, the Ineligible Creditors seek to avoid the stay or potential stay of their own

11  individual lawsuits.  Noval's lawsuit has been stayed until November 2020.  (*See* Ex. 8 at Bates

12  Stamp 288; *see also* Ex. 9 at Bates Stamp 290.)  There is a motion to stay Marco's lawsuit that is

13  under submission.  (*See* Ex. 10 at Bates Stamp 297, Docket No. 56.)  To the extent those lawsuits

14  are stayed, the Ineligible Creditors should be bound by the courts' rulings.  They should not be

15  allowed to circumvent the stay in the pending civil lawsuits by commencing this case.  If it was

16  not already clear, the discovery contemplated by the Ineligible Creditors demonstrates that this is

17  exactly what they intend to do.

18         Third, the Ineligible Creditors created the parallel proceedings and seek to profit therefrom.

19  They referred the matter to law enforcement for a criminal referral.  (Schafler Decl. at ¶ 3(a).)

20  Having engineered the criminal investigation with their disputed allegations, they then began

21  trying to obtain relief while the Rechnitz Parties and Jadelle have been unable to adequately and

22  fully defend themselves.  The Ineligible Creditors improperly commenced this case only after

23  Noval's suit was temporarily stayed to pursue the same disputed allegations set forth in their

24  lawsuits.  The Ineligible Creditors have been seeking to create the dilemma the Rechnitz Parties

25  are now in order to get precisely the type of advantage provided by the Order.

26         Fourth, at most, any prejudice caused to the Ineligible Creditors is the delay of their

27  attempts to recover money judgments, which is not a basis to deny a request for a stay.  *See Larsen*

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

*v. City of Los Angeles*, 2012 WL 12887557, at *9 (C.D. Cal. 2012) ("A delay in recovering

potential monetary damages is not sufficient prejudice to warrant denial of a stay.").

### D.    Judicial Economy Is Served by the Proposed Stay

Granting a stay is in the interests of judicial economy.  A stay could prevent a number of

proceedings and disputes.  If the involuntary case were to proceed, as demonstrated by the

Ineligible Creditors' conduct, the discovery addressed to Jadelle and/or to the Rechnitz Parties

would relate to topics on which the Rechnitz Parties are entitled to invoke their Fifth Amendment

privileges, and a number of disputes related to discovery are likely to ensue.  Similarly, if the

Court enters an order for relief, then a trustee will be appointed and there will be a number of

potential disclosures either through discovery or Bankruptcy Rule 2004 or as required by the

Bankruptcy Code and Rules (*e.g.*, schedules, § 341(a) meeting, etc.) that will implicate the

Rechnitz Parties' Fifth Amendment rights.  The proposed stay could negate a series of discovery

disputes and motions regarding the boundaries of Rechnitz Parties' rights to invoke their Fifth

Amendment privilege in the context of a bankruptcy case.  A stay could also avoid an appeal of

the Order and the order for relief and a motion for a stay pending such appeal.  Because these

potential disputes could be avoided by a stay pending the criminal investigation, the interests of

judicial efficiency weigh in favor of a temporary stay.

### E.    Persons Not Parties to this Action Will Not Be Adversely Impacted by the Proposed Stay

Any non-parties will not be prejudiced by a stay.  The FBI and USAO have an interest in

an investigation unaffected by related proceedings.  The USAO has indicated that it does not

oppose a stay of matters related to the criminal investigation.  (*See* Schafler Decl. at ¶ 4(f).)  It

remains to be seen whether there are other creditors who wish to join the petition.  The Ineligible

Creditors cannot argue that other alleged creditors are not aware of this case.  This case has been

pending for over two months and the Ineligible Creditors argued to this Court that they know of

other creditors who want to join the petition, which must mean they have already been contacting

alleged creditors.  (*See* Ex. 11, excerpt of Opp'n. to Mot. to Dismiss, at Bates Stamp 304, note 3.)

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   Yet, despite the Ineligible Creditors assertions and efforts, no other creditors have attempted to

2   join the petition.  Moreover, even if there are other creditors who may wish to join the petition, a

3   temporary stay will not prejudice them.  Again, this case should not have been commenced in the

4   first instance as the Ineligible Creditors lacked standing from the beginning.

5       **F.     The Interest of the Public Favors a Stay**

6       The interest of the public would undoubtedly weigh in favor of a stay.  The public interest

7   is better served by the completion of the criminal investigation unfettered by the bankruptcy case

8   because courts agree that the resolution of criminal proceedings "is of primary importance to the

9   public."  *See S.E.C. v. Nicholas III*, 569 F. Supp. 2d 1065, 1072 (C.D. Cal. 2008) (stating that the

10  related civil proceeding was not "of an equally pressing nature."); *see also Jones v. Conte*, 2005

11  WL 1287017, at *2 (N.D. Cal. Apr. 19, 2005) ("[T]he public interest is furthered by a stay because

12  'the public's interest in the integrity of the criminal case is entitled to precedence over the civil

13  litigant.'").  Therefore, this factor also weighs in favor of the proposed stay.

14      In sum, there is clear overlap between this case and the criminal investigation as both relate

15  to Jadelle's jewelry business.  Moreover, a weighing of the other factors considered by courts

16  support the temporary stay of this case.  Absent a stay, Jadelle will be irreparably prejudiced and

17  harmed by the entry of an order for relief contrary to the Code.  The Ineligible Creditors will not

18  be harmed by a stay and any alleged prejudice cannot outweigh the substantial harm to Jadelle.

19  Accordingly, the Court should stay this case pending the criminal investigation.

20  ///

21  ///

22  ///

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1

## VI.    __CONCLUSION__

2       Based on the foregoing, Jadelle respectfully requests that the Court reconsider the Order

3  and either (1) remove the requirement that a joint declaration be filed by the Rechnitz Parties and

4  providing for the entry of an order for relief if they do not, or (2) vacate the Order, grant the

5  Motion to Dismiss, and dismiss this case.  Alternatively, it should stay this case.

6

7                                Respectfully submitted,

8  DATED:  June 15, 2020            SMILEY WANG-EKVALL, LLP

9

10  By:    _/s/ Robert S. Marticello_

    ROBERT S. MARTICELLO

11  MICHAEL L. SIMON

    Attorneys for Jadelle Jewelry and Diamonds,

12  LLC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*): **Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case; and Memorandum of Points and Authorities in Support** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **06/15/2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Baruch C Cohen    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Robert S Marticello    Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- Neal Salisian    ECF@salisianlee.com
- Michael Simon    msimon@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **06/15/2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Via First Legal:
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/15/2020 | Lynnette Garrett | /s/ Lynnette Garrett |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**