**SMILEY WANG-EKVALL, LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone: 714 445-1000
Facsimile: 714 445-1002

Attorneys for Jadelle Jewelry and Diamonds, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re

JADELLE JEWELRY AND DIAMONDS, LLC,

Putative Debtor.

Case No. 2:20-bk-13530-BR

Chapter 7

**PUTATIVE DEBTOR'S INDEX OF EXHIBITS IN SUPPORT OF PUTATIVE DEBTOR'S EMERGENCY MOTION FOR (1) RECONSIDERATION OF THE COURT'S ORDER, OR (2) ALTERNATIVELY, A STAY OF THE BANKRUPTCY CASE**

**DATE: To Be Determined**
**TIME: To Be Determined**
**CTRM: 1668**
**255 E. Temple Street**
**Los Angeles, CA 90012**

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

Jadelle Jewelry and Diamonds, LLC, the putative debtor ("Jadelle"), hereby submits the following index of exhibits in support of the concurrently filed *Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, A Stay of the Bankruptcy Case*.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

| Exhibit No. | Title or Description of Document |
|---|---|
| 1 | Transcript of June 9, 2020: Status Conference re Involuntary Petition; Hearing Re: Motion of Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages; and Hearing Re: Creditors' Motion for Appointment of Interim Chapter 7 Trustee |
| 2 | Order: (1) Directing Rachel Rechnitz and Jona Rechnitz to File Joint Declaration Under Penalty of Perjury; (2) Setting Date by Which Petitioning Creditors May Contact Creditors Identified In Joint Declaration and Conduct Certain Discovery; (3) Setting Date for Hearing on Status Conference; and (4) Setting Date for Filing of Joint Status Report Prior to Status Conference [Docket No. 39] |
| 3 | Supplemental Declaration of Baruch C. Cohen Regarding Third Party Defendants' Motion for Stay of Proceedings, USDC Case No. 2:20-cv-02580-ODW-AS, Docket No. 61; |
| 4 | June 11, 2020 Email from Ronald Richards to Robert Marticello with attached discovery; |
| 5 | Verified Complaint filed by Victor Franco Noval in *Noval v. Rechnitz, et al.*; |
| 6 | The amended third party complaint filed by Peter Marco on April 24, 2020, in the action entitled *David Rovinsky v. Peter Voutsas*, USDC Case No. 2:20-cv-02580-ODW-AS; |
| 7 | Declaration of Oved Anter In Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee [Docket No. 15]; |
| 8 | March 10, 2020 Minute Order entered in *Noval v. Rechnitz, et al.*; |
| 9 | Docket in *Noval v. Rechnitz, et al.* as of May 26, 2020; |
| 10 | Docket as of June 15, 2020 in *David Rovinsky v. Peter Voutsas*, USDC Case No. 2:20-cv-02580-ODW-AS; and |
| 11 | Relevant excerpt from Petitioning Creditors' Opposition to Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages [Docket No. 19]. |

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

Respectfully submitted,

DATED: June 15, 2020

SMILEY WANG-EKVALL, LLP

By: */s/ Robert S. Marticello*
ROBERT S. MARTICELLO
MICHAEL L. SIMON
Attorneys for Jadelle Jewelry and Diamonds, LLC.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# EXHIBIT "1"

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES

--oOo--

| | |
|---|---|
| In Re: | ) Case No. 2:20-bk-13530-BR |
| | ) |
| JADELLE JEWELRY AND DIAMONDS LLC, *a Delaware Limited Liability Company,* | ) Chapter 7 |
| | ) |
| Debtor, | ) Los Angeles, California<br>) June 9, 2020 |
| ------------------------------ | ) Tuesday, 10:00 A.M. |

STATUS CONFERENCE RE INVOLUNTARY PETITION

HEARING RE: MOTION OF PUTATIVE DEBTOR'S MOTION TO DISMISS INVOLUNTARY PETITION AND REQUEST FOR ATTORNEY'S FEES, COSTS, AND DAMAGES

HEARING RE: CREDITORS' MOTION FOR APPOINTMENT OF INTERIM CHAPTER 7 TRUSTEE

TRANSCRIPT OF TELEPHONIC PROCEEDINGS
BEFORE THE HONORABLE BARRY RUSSELL
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor: ROBERT S. MARTICELLO, ESQ.
Smiley Wang-Ekvall, LLP
3200 Park Center Drive
Suite #250
Costa Mesa, California 92626

Proceedings produced by electronic sound recording; transcript produced by transcription service.

| | |
|---|---|
| For Victor Franco Noval: | RONALD N. RICHARDS, ESQ.<br>Law Offices of Ronald Richards<br>PO Box 11480<br>Beverly Hills, California 90213 |
| For First International Diamond: | DANIEL A. LEV, ESQ.<br>333 South Grand Avenue<br>Suite #3400<br>Los Angeles, California 90071 |
| Court Recorder: | Nancy Vandensteen<br>U.S. Bankruptcy Court<br>Central District of California<br>Edward R. Roybal Federal Building and Courthouse<br>255 East Temple Street, Room #940<br>Los Angeles, California 90012<br>(855) 460-9641 |
| Court Transcriptionist: | Ruth Ann Hager, C.E.T.**D-641<br>Ben Hyatt Certified Deposition Reporters<br>17835 Ventura Boulevard<br>Suite #310<br>Encino, California 91316 |

LOS ANGELES, CALIFORNIA, TUESDAY, JUNE 9, 2020

11:14 A.M.

--oOo--

THE CLERK: #10.00 through #12.00, Jadelle Jewelry.

THE COURT: Hold on just a second, as far as appearances. Okay. We have the Jadelle Jewelry matter. We have a couple people listening, apparently, the *New York Daily News* is interesting. I'm not exactly sure why, but the public is always welcome. Not to say anything, but just listening mode. These are public hearings. Had we not had this virus, we would have -- there would have been -- somebody would be welcome to be in court, but so they're on the line but won't be saying anything.

Then my list here shows that we have Mr. Lev for the -- for all three of the creditors. Is that right, Mr. Lev?

MR. LEV: I am here, Your Honor, yes.

THE COURT: Okay. And then we have -- well, I'm not sure. We have Mr. Cohen on the line. You didn't file anything, did you, Mr. Cohen?

MR. COHEN: Your Honor, Baruch Cohen online. No, I did not file anything.

THE COURT: Okay. Well, you're welcome to listen, but even though you may be interested, I'm not

BENHYATT
Certified Deposition Reporters

going to let you say anything.

Then we have -- of course, the other side of this is Rob -- is the counsel for the -- well, let me see, we have counsel for the debtor. We have a number of them. Robert Marticello -- I can never pronounce your last name -- I know who you are.

MR. MARTICELLO: That was per --

THE COURT: What was your last name again?

MR. MARTICELLO: That was perfect, Your Honor. Good morning. It’s Marticello, Your Honor.

THE COURT: Okay. All right, now --

MR. MARTICELLO: And also --

THE COURT: -- who --

MR. MARTICELLO: Michael Simon (indiscernible).

THE COURT: -- now, you represent the debtor. You have --

MR. MARTICELLO: Correct.

THE COURT: -- then Mr. Richards, you represent the -- Mr. Noval, but I all -- looking here, I see Mr. Lev. Who is re -- Mr. Lev, you represent all three of the creditors?

MR. LEV: Your Honor, the way -- yeah. All of us are on the pleading, Your Honor. We --

THE COURT: Well, who’s --

MR. LEV: -- represent the individ --



THE COURT: I'm not going to let all three of you speak. One -- who's going to be --

MR. LEV: No, no, no, Your Honor. Yes, Your Honor, we've decided to let Mr. Richards make the argument on behalf of the petitioning creditors. To the extent the Court has questions regarding specific issues on specific claims, Mr. Cohen represents two of the petitioning creditors. Mr. Richards represents one of the petitioning creditors. So to the extent you are asking questions regarding Mr. Cohen's clients, Mr. Cohen would respond, but I don't know if we're going to get to that type of detail, so --

THE COURT: Well, okay. Well --

MR. LEV: -- but Mr. Richards will be making the initial presentation.

THE COURT: Well, there's not going to be much of an initial presentation because I've read all the papers. I --

MR. LEV: I understand, Your Honor.

THE COURT: -- really dislike -- I've probably said it a million times -- things on the phone, but we -- that's where we're at.

But -- so anyway, then we have Mr. Simon, but also for the debtor, right?

MR. MARTICELLO: Your Honor, this is Robert

Marticello. Michael Simon is from my firm. He's just listening in.

THE COURT: Oh, okay.

MR. MARTICELLO: I will be handling the --

THE COURT: So, okay. So then -- okay. So I'm going to go to some --

MR. RICHARDS: Your Honor, do you want me to make my appearance? Ronald Richards, just for the record.

THE COURT: Oh, yes, please, please, and whenever you speak, you've got to -- for -- the only way we keep track -- that is, we, being the court recorder -- is who's talking, you've got to -- and if you're physically in court, we can see you, but whenever you say anything just give your name.

I'm going to go through a number of these. There's not going to be any argument on this, but I'm going to go through these evidentiary objections.

The first one is the evidentiary objections to the declaration of Oved Anter. These are all evidentiary objections made by the debtor, so I am going to make these rulings and there's not going to be any argument on it, so we're going to be here forever. So I'm going to -- I'm going to make these -- these -- so if you -- everybody have those in front of them? This has to do with the declaration of Oved Anter, okay? And you all know who --

that’s the representative -- I can never tell with that -- is that a man? Is Oved -- I don’t know if it's -- it looks like an Israeli name, so I don’t know --

MR. COHEN: Yes, Your Honor. Baruch Cohen on CourtCall. Oved Anter is a man.

THE COURT: Okay. I wasn't 100 percent sure, but I thought that was the case. And that’s the president -- the owner and president of International Diamond.

MR. COHEN: Correct.

THE COURT: So I’m going to -- okay, so I’m going to go through the -- excuse me just one second.

Let me -- I will sustain, but, by the way, this is going to be important. Let me ask the debtor in this case before I get to these evidentiary -- one of the two of you. It is pretty clear from all of the papers that -- is it Rechnitz? I’m pronoun -- Jona is the -- and his wife are the own -- are the control -- owners and controlling of the debtor, are they not?

MR. RICHARDS: Hello? Hello?

THE COURT: Yes, that's for the debtor.

MR. RICHARDS: Hello, hello?

THE COURT: That is the case, is it not?

MR. RICHARDS: We didn't hear you, Your Honor. Can you --

THE COURT: Oh.



MR. RICHARDS: -- repeat? On the line right now --

THE COURT: That Jona and his wife are the principals of the debtor, are they not? They're the people that run the debtor?

MR. RICHARDS: I'm still not hearing you.

THE COURT: You can't hear me now?

UNIDENTIFIED VOICE: It's cutting out right at the most important part, Your Honor.

MR. SIMON: Your Honor, you are breaking up.

MR. RICHARDS: This is Ronald Richards. You cut out.

THE COURT: Well, that's a real problem. Can you hear me now?

MR. RICHARDS: I'm still not hearing the Court.

THE CLERK: Is the CourtCall operator on the line?

THE COURT: Oh, great.

COURTCALL OPERATOR: Yes, I'm here.

THE COURT: Well, they apparently can't hear me.

MR. RICHARDS: Yeah. Now I can hear you again, Your Honor. Ronald Richards for the creditor.

THE COURT: Okay, you can?

MR. RICHARDS: If you could just --

THE COURT: Okay. My question is, from the --



excuse me just one second. Just to settle something, from the -- Mister -- let's see, excuse me. From the debtor, Marticello, the two principals are Jona and his wife, right?

MR. MARTICELLO: Well, Ms. Ra -- sorry, this is Robert Marticello, Smiley Wang-Ekvall, for Jadelle. Rachel Rechnitz is the managing member of Jadelle. Mr. Rec -- sorry, Your Honor, can you hear me, because it sounds like it's gone dead.

THE COURT: I can't hear you.

MR. MARTICELLO: Yeah, the line keeps -- Your Honor, the line keeps going in and out, I think for all of us, so we hear things and then --

THE COURT: Okay. Tell me who are the principals of the debtor?

MR. MARTICELLO: So Rachel Rechnitz is the managing member of Jadelle.

THE COURT: Yes.

MR. MARTICELLO: Jona Rechnitz is involved in the operation of the business, but he does not have an official title with the LLC.

THE COURT: Well, who are the two principals?

(No audible response.)

There are only two principals, are there not, in this LLC?

MR. RICHARDS: Well, Your Honor, this is Ronald Richards. The debtors married -- the two principals are husband and wife, so Mr. Rechnitz, obviously, has his community property interest, and we're under the belief that he owns the company with his wife and there's no other members.

THE COURT: Okay, because -- anyway, I -- oh, okay. Well, I will -- okay, I'm going to go through the evidentiary objections. It's pretty clear to me -- I don't know who does what day to day. And by the way, this is not -- as far as the hearing. Is the debtor still operating? I'm asking the debtor's counsel.

MR. RICHARDS: No.

MR. MARTICELLO: Your Honor, my understand -- this is Robert Marti --

THE COURT: Are you talking, because I can't hear you if you are.

MR. MARTICELLO: It went dead, Your -- this is Robert Marticello for Jadelle. It's (indiscernible).

THE COURT: Okay. Is the debtor still operating?

MR. MARTICELLO: Your Honor, my understanding is that the debtor is paying its debts -- undisputed debts as they come due on the agreed to terms.

THE COURT: No, but is the debtor selling anything? I guess that's what I meant. Is the debtor



operating?

MR. MARTICELLO: I think there -- my understanding is that there's been minimal operations post-bankruptcy.

MR. RICHARDS: Your Honor, this is Ronald Richards. There's no debtor at the location. They moved out. That's -- we had trouble serving them. That's why we had to serve --

THE COURT: Well, yeah, I've never physically --

MR. RICHARDS: -- (indiscernible) at their house.

THE COURT: I don't even recall. Where is the -- was this a regular storefront? I know it's pretty -- when you're dealing with diamonds at a million -- $1.2 million, I don't think I've ever seen one, but I guess they exist.

MR. RICHARDS: Your Honor, they were operating out of an executive suite at 9454 Wilshire Boulevard, out of a suite at that location. There's a lot of little businesses in there, and they were -- that's where they were operating. They have no operation whatsoever. No, they're not --

THE COURT: Is that -- let me --

MR. RICHARDS: -- no one's --

THE COURT: -- again, this is just background, but I want to get -- I want to find out what's really going on in this case. Would that be from the debtor's

standpoint? I think counsel would know. Are they still operating out of that location?

MR. MARTICELLO: My understanding is that they're still operating, Your Honor. I don't -- it has been minimal operations, but I don't know if that's inconsistent with the operations that occurred prebankruptcy.

THE COURT: Okay. In any case, I don't want to get any further in it.

MR. RICHARDS: He's not answering your question.

THE COURT: It's more curiosity --

MR. RICHARDS: They're not operating out of (indiscernible) --

THE COURT: -- because everybody on the call --

MR. MARTICELLO: Your Honor --

THE COURT: -- knows a lot more about this case than I do.

MR. MARTICELLO: And I'm sorry, Your Honor, this is Robert Marticello. When I'm speaking, it sounds like the line is going dead, so I don't know if you're hearing what I'm saying --

THE COURT: Well, I did hear --

MR. MARTICELLO: -- so that's the reason for my --

THE COURT: -- I did year you. Okay, let's -- this is going to be very unfortunate --

MR. MARTICELLO: Okay, understood.

THE COURT: -- because there's obviously a lot of money involved in this case and important to all sides.

I am going to go make these evidentiary rulings. The -- can everybody hear me? Of course, if you can't, it's hard for you to say you can't hear me.

MR. RICHARDS: Now I can hear you, Your Honor.

THE COURT: Okay. At least -- we need at least two people, one representing the creditors and --

MR. RICHARDS: Can anybody hear the Court?

THE COURT: -- and I have no idea whether the --

UNIDENTIFIED VOICE: I cannot.

UNIDENTIFIED VOICE: Okay, good.

THE COURT: Okay.

MR. MARTICELLO: Yeah, I hear you. This is Robert Mart --

MR. RICHARDS: I'd rather have the Court just rule, if you guys don't mind --

THE COURT: I am going to make the rulings.

MR. RICHARDS: -- at a later time, and he can (indiscernible) --

THE COURT: I want to make sure everybody hears it.

MR. RICHARDS: Since we're --

THE COURT: This is why I really --

MR. RICHARDS: -- having technical problems.

THE COURT: -- really, intensely dislike hearings on the phone because of just this, but in any case --

(Indiscernible simultaneous speech)

THE COURT: -- I'm going to -- so we don't spend the entire day on these rulings, I'm going to make my rulings.

UNIDENTIFIED VOICE: (Indiscernible) CourtCall? Yes.

THE COURT: Now, this is the objections to the declaration of Oved Anter. I will sustain the first objection.

MR. RICHARDS: Should we recall in?

THE COURT: I don't know of any foundation.

MR. MARTICELLO: No, no, no, you should not do that.

THE COURT: What's that?

MR. MARTICELLO: The CourtCall operator will handle it.

THE COURT: Okay. I will sustain the objection. It says that the controlling principal and insider, Jona Rechnitz --

MR. MARTICELLO: You're all on the line. That's the more important thing. The Judge, they can reconnect.

THE COURT: Can you hear me, by the way?

MR. MARTICELLO: I don't even know where the Judge is calling in from.

THE COURT: Hello, can you hear me?

UNIDENTIFIED VOICE: Right.

THE COURT: Apparently not. Can anybody hear me?

MR. MARTICELLO: I know the Court does not like these calls, so I don't want to make it frustrating.

THE COURT: I hear counsel talking, but --

MR. MARTICELLO: (Indiscernible) --

THE COURT: Is there an operator on?

MR. MARTICELLO: A new operator won't even know what we're talking about. Better we just wait.

THE CLERK: Is the CourtCall operator on?

THE COURT: Hello?

(No audible response.)

Oh, Jesus.

THE CLERK: Is the CourtCall operator on?

THE COURT: Well, we're going to finish this. Can you hear -- can anybody hear me?

(No audible response.)

Is the operator on?

(No audible response.)

This is so un -- can anybody hear me?

COURTCALL OPERATOR: I'm going to try to plug in my headset and see if I can get a response. I'll be right

back with you all.

THE COURT: Who is -- who's talking now?

THE CLERK: That's the CourtCall operator.

THE COURT: Well, can you --

COURTCALL OPERATOR: Your Honor?

THE COURT: -- let the parties know that we're going to continue this hearing, but they can't hear me.

COURTCALL OPERATOR: Can anyone from the Court hear me?

THE COURT: I can hear you. This is the Judge. What about the other people, can they hear you?

UNIDENTIFIED VOICE: And it seemed to work fine for the hour we were waiting.

THE COURT: What I'm trying to figure out is --

MR. LEV: It's just our luck, right?

THE COURT: -- this is just so unacceptable.

UNIDENTIFIED VOICE: (Indiscernible) the power went out at my house for the last hour and a half and I had to call in on a cell phone and I was so nervous that I'd have to disclose I'm on a cell phone, and have the Court get upset, but I was able to --

THE COURT: No, I --

UNIDENTIFIED VOICE: -- get through (indiscernible) --

THE COURT: Well, I'm not upset about the

telephone.

UNIDENTIFIED VOICE: -- the power went out right before our call, if you can believe it.

THE CLERK: (Indiscernible)

THE COURT: Oh, you mean a cell phone? Oh, no, I -- if you know me at all, you know I don't get upset easily, but if your power went out Murphy's law apparently is in action. That's why I'm glad I'm in the court because at home my power went out the other day, but I only do hearings from here.

Is -- why don't -- let's -- I'm going to take a roll call of the people we -- I have no idea whether the press is still on, but if they're on listening mode. The operator -- do you know whether or not the -- there was one --

UNIDENTIFIED VOICE: Well, you're back.

THE COURT: -- from the New York -- Steven Brown. Do you know if Mr. Brown is still on?

MR. MARTICELLO: Your Honor, we're all back on.

COURTCALL OPERATOR: This is (indiscernible) --

THE COURT: I have no way of knowing if Mr. Brown is on from the *New York Daily News*, because he's not on -- it's only on listening mode. Does the operator know whether or not he's still on the listening?

COURTCALL OPERATOR: Yes. He



is(indiscernible) --

THE COURT: Good. Okay, good --

COURTCALL OPERATOR: -- (indiscernible).

THE COURT: -- and I have no way of knowing. Well, the only -- what's been the problem? This is the second or third time we keep coming in and out. Do you -- okay, can any --

MR. MARTICELLO: We can all hear you, Your Honor.

THE COURT: -- if I hear silence on the other side, I'll know you can't hear me. Can everybody hear me?

MR. MARTICELLO: Yes, Your Honor.

MR. RICHARDS: Yes, we can hear you.

THE COURT: But if I don't -- the only reason I knew you couldn't hear me is I heard other people talking to each other and not responding to me. Okay. Well, we're going to try to get through this. We'll do it today one way or another.

First objection --

MR. MARTICELLO: We can hear you, Your Honor.

THE COURT: -- no word on the Oved answer. First objection is sustained. The second is sustained. The third objection as to paragraph 5 is overruled. The next -- the objection number 6, that is sustained, at least on the best evidence rule -- grounds.

The -- by the way, you have a problem in these --

on these -- a lot -- most of these objections have to do with text calls. Do you understand that? That's a violation of the best evidence rule. You can take a picture of it or something, but just saying what's in there, that's a clear violation of the best evidence rule, and that's a lot of this declaration. If we have any further hearings on this, you might seriously consider taking pictures of it or something like that, but just telling me what's in the text is a classic violation of the best evidence rule. Can everybody hear me?

ATTORNEYS: Yes.

THE COURT: Okay, I just want to make sure that -- okay. So that's why I'm sustaining the objections, so objection number 7 on page 3, that's sustained. And then -- and that's going to be true of a lot of this stuff. It's unfortunate, but that's just the way the rules work.

I'm ruling -- I'm moving now to the pages here and I just sustained all of that.

Okay. The next objection is on page 15 of the objections. That is the declaration -- we do have the exhibit, so it will be -- it will -- but we do have the exhibit, but that would be sustained, but we have the exhibit.

The next one is a little bit trickier. The next one on page 15 is in paragraph 9. I'm going to sustain the

first part, which is basically argument, ending with "Jadelle absconded with all of First International's consigned jewelry either pawning them off or retaining," et cetera, et cetera, ending with -- up to the point where it says, "Simply stated." That first part will be sustained. The part, "Simply stated, has not received a single dollar on the 2.8 million-plus," that will be overruled, that second part of the declaration.

The next one is obviously hearsay, that'll be sustained, number -- objection number 10. Objection number 11 would be sustained. A lot of these are conclusions and opinion.

The next one, 12, will be sustained. Number 13, the first part of that up to the words, "Importantly, at no time," the first part of that will be sustained, but the second part, "Importantly, at no time," that will be overruled. And then number 14, that objection will be sustained.

Without going any further, has everybody heard that? Am I still online?

UNIDENTIFIED VOICE: Yes.

UNIDENTIFIED VOICE: Yes, Your Honor.

THE COURT: Okay, good, we've got --

MR. MARTICELLO: Yeah, we heard you, Your Honor.

THE COURT: Okay, wow. Never thought it would be

such an accomplishment to get through evidentiary objections, but we did it. The first part.

Next one, evidentiary objection, declaration of Peter Marco. I'll go through those. Let's see. The first objection in paragraph 3, that will be sustained. That basically is argument.

The next one, again, dealing with the ownership and so forth, that'll be sustained for lack of foundation, although I have a pretty well -- good idea of who at least owns the debtor.

The next one, exhibit -- paragraph 5, the -- t here is an objection and it is to the -- it's number 5, it's sustained. That is the best evidence rule.

The next one to declaration, paragraph 6, that is overruled. And then the paragraph -- also part of paragraph 6, it says, "In late December, after I learned that Jona was sentenced for crimes," that's sustained. Then the next part, "Jona advised me," that is overruled.

And then the same on the -- also paragraph 6, the first part, "This represent -- represented by Jona was false, was made to me and Jona knew it was false," that is sustained, but the rest of it after that, "Jona then persuaded me," that will be overruled. A lot of these are part of it because these are lengthy objections.

The next one, the first -- the part of this

says -- will be sustained, the portion that reads, "In order to foster his image, his honesty, religious, family oriented, trust me, firstly don't even introduce my brother to his own children," et cetera, et cetera, ending with, "Everything goes -- is illegal." And then starting up, "To my surprise," that will be overruled, and then the first part of that quote part up to the part that I just sustained will be overruled. It's just the stuff in the middle that I sustained.

The next objection, paragraph 8, that will be sustained. Paragraph 9, that will be overruled. Paragraph 10, that will be sustained. Number 11, that will be sustained. Number 12, that will be sustained. And the -- again, these are -- by the way, those do not rela -- I'm sustaining it, but not as far as the Exhibit E in that particular case, and in the -- one of the previous ones we do have that Exhibit C in number -- paragraph 10. Those will be allowed. And then we have 12 I just ruled on and 13 is sustained.

Now, again, I'm not going to have any further argument. Did everybody hear everything I said?

MR. RICHARDS: Yes.

MR. MARTICELLO: Yes, Your Honor.

UNIDENTIFIED VOICE: Yes, Your Honor.

THE COURT: Okay. All right, we made it through

another one. Okay. The declaration of Victor Franco --

UNIDENTIFIED VOICE: Your Honor, that was Victor Franco.

THE COURT: Oh, excuse me. I'm sorry, that was, so we -- that was Victor Franco, so we've got -- so we've gotten through three of them so far.

Now we're dealing -- the -- we've gotten through --

MR. COHEN: You haven't -- Your Honor, Baruch Cohen for Marco. You haven't addressed Peter Marco's declaration yet.

THE COURT: Excuse me a second. Okay, hang on a second. Sorry about that. I had it right in front of me and I -- and then I skipped over it. Thank you, Mr. Cohen. Okay, Mister -- objections to Peter Marco. The first will be sustained. The second will be sustained. That is the paragraph 4. The next one, paragraph 6, that will be overruled. Then paragraph 7, that'll be overruled.

The paragraph 8 will be overruled. And by the way, whoever made these objections, I guess it's Marcell -- Mr. Marticello -- misleading is Ravinski's (phonetic) items that were in possession of Ravinski, is hardly an evidentiary objection, just for future reference. I don't know why you put that in there, but that's not an evidentiary objection.

Number 9, that's overruled. Number 10, that is sustained. Number 11, that is sustained. And number 12, that's a best evidence violation, that is sustained. Next one is -- let's see, that's number -- number 13 is sustained. That's a best evidence. Same with number 14, sustained, best evidence. Number 15, best evidence, sustained.

Number 16, that is overruled. Number 17, it's overruled as to the portion that reads, "Repeated demands have been made to Jona and Jadelle to return Marco's consigned jewelry, including Ravinski's ring, necklace but to no avail," that overruled. The rest of that objected to material is sustained.

The next one, 18, is sustained. That's a best evidence violation. The -- number 19 is sustained. Number 20 is sustained. Number 21 is sustained. Number 22 is sustained. 23 is sustained. 24 is sustained. Number 25 is overruled. The -- and we also have this Exhibit C, in any case. The -- number 26 is sustained. Number 27 is sustained.

Again, make sure after -- everybody hear all those?

MR. RICHARDS: Yes.

MR. MARTICELLO: Yes, Your Honor.

THE COURT: Okay, so that's -- thank you,



Mr. Cohen, that's Mr. Marcos. So now we're down -- we have those three.

Now we have the evidentiary objections, request for judicial notice, which is the next item. The -- excuse me. These -- I will sustain those -- all those judicial notice requests have to do with things, in my opinion, are totally irrelevant. If there were a jury here, I don't know, but we don't have juries in this matter, but it's crim -- the criminal background and so forth and transcripts. It's very interesting and I did read it all, but I can tell you it's totally irrelevant. So one of the things I can do very easily, even though I read it, I can totally ignore it. So I am not going to -- I will not take judicial notice of those proceedings, although interesting, not relevant to the issues before me today. So that's -- excuse me, that is that one.

Then we have the objections -- let's see, the final one is the evidentiary objection to the declaration of Ronald Richards. Let me find that. I have that. And all of those objections will be sustained.

Anyway, that takes care of, I believe, of all the various objections, is that correct? Or I do have -- excuse me just one second. I -- that's by -- those objections -- I do have --

MR. RICHARDS: We made objections, Your Honor.

This is Ronald Richards --

THE COURT: Yeah, right --

MR. RICHARDS: -- (indiscernible).

THE COURT: -- that was half of them. I have the other half here. And then the other objections --

Stacy? You're quite correct. I had these, but where are -- is there a list of the others?

Okay, well, let me just go through them here. You're right, I have a whole pile of things here.

I have the -- there's the objections -- well, I'll go through them and if I miss any -- I've gone through -- this one is the evidentiary objections to the declaration of -- oh, here we go. Thank you. I knew I had another list. That was of Levin Prado, right? So that -- we start with those. I have the -- those. I am going to go through them. The -- I'm going -- the first objection is on page 4, I believe. That will be sustained. And then there's objection number 3, which is -- that will be sustained. Then the next one is number 4, that will be sustained. Number 6, that will be overruled. Number 7 will be overruled. Number 8 will be overruled. So that's the ones as to, excuse me, Mr. Prado.

Then we have the next one is evidentiary objections to the declaration of Marc Williams. Let me find that, excuse me. Those -- excuse me just one -- yes,

BENHYATT
Certified Deposition Reporters

those will be sustained, those objections. They just -- well, no, excuse me just one second. No, I -- on that one, I am going to overrule it but I think, to say the least, they have little if no relevance, but there might be some relevance buried in there. But as a practical matter, I'm going to overrule it, but I really don't think they have any real bearing on this case, so I'll leave it at that. Sort of a Pyrrhic victory for the objector.

The petitioning -- let's see, then there's petitioning creditors, the reply. Let's see, I have -- is that -- have I missed any, as far as the object -- the evidentiary objections?

MR. RICHARDS: No, there was no -- I don't think there was any more objections.

THE COURT: I --

MR. RICHARDS: There was no --

THE COURT: Who was talking?

MR. RICHARDS: Ronald Richards. I don't think there was any other --

THE COURT: Yeah.

MR. RICHARDS: I don't think the reply had --

THE COURT: Yeah, as I say, this last one, the objection is overruled but I'd say very slight, if any, relevance. So now we're dealing with the case itself, right? We're done with all that?

Let me ask the -- as far as the -- well, I'm going to skip to the -- I'm not going to deal at the moment with the appointment of a trustee, but we do have the basic -- excuse me just one second -- the motion to dismiss.

So who's going to argue that for the debtor?

MR. MARTICELLO: That would be me, Your Honor, Robert Marticello, for Jadelle.

THE COURT: Okay. Let me ask a couple things. It seems -- I can tell you, just so you get a heads-up from the other side, I think as far as the -- just so you understand, it's true you didn't present any testimony, certainly not by the principals, but I -- but just so the other side be listening carefully, I think you're right. I -- when I -- I mean, I am somewhat of an expert on this. I can take judicial notice, as I have, of all these various pleadings, and not -- and the rule is again, not necessarily for the truth of the matter asserted in there, and that's pretty clear.

However -- the big however is, as you point out, that when you're dealing with admissions the judicial notice doesn't get it in, but if in a previous pleading or a declaration one of the petitioning creditors or all three of them in this case have said things that are -- that show that there is a dispute as to either amount or as to just

liability itself, those are admissible and I assume that you would agree with that, the counsel who's arguing this.

MR. MARTICELLO: Yes, Your Honor. This is Robert Marticello.

MR. RICHARDS: Are you directing this to me, Your Honor, Ronald Richards, or to the counsel?

THE COURT: Well, no, Mr. Richards, you're arguing this, right?

MR. RICHARDS: No, they're arg -- I didn't file a motion to dismiss. The other side did. So who did you want to discuss -- who were you addressing first?

THE COURT: No, no, no, I've got everybody messed up here. No, whoev -- the attorneys -- this was filed -- the motion to dismiss -- let me take a look at the papers here. It was filed obviously by the debtor.

MR. MARTICELLO: Your Honor, this is Robert Marticello --

THE COURT: So you're --

MR. MARTICELLO: -- for Jadelle.

THE COURT: Right, that's who we started off. You're -- like I said, Mr. Marticello, you're going to be arguing the motion to dismiss, right?

MR. MARTICELLO: That's correct, Your Honor.

THE COURT: Okay. Again -- and I'm repeating my frustration. Not with you guys at all. It's just the idea

of being on the phone. If I could see people, it makes things a lot easier, but that's just where we’re at. Okay.

Now, the one thing -- let me just sum -- just for Mr. Marticello, it’s very interesting and would you agree with this -- it’s a rhetorical question -- that I read, of course, the reply of the creditors, but they never that I can see specifically address your specific points. Would that be a fair statement?

MR. MARTICELLO: That’s correct, Your Honor. The way I viewed the opposition was they don’t address the specific disputes that we’ve identified and other evidence by their own statements, but asked the Court for delay through a number of procedural mechanisms.

THE COURT: Okay. Well, the fact is, I’ve read the Oved case and all, very interesting. Involuntary is a very strange animal. It doesn't fit exactly, but the rules are quite clear that you can, under 12(b)(6). It’s not exactly a complaint, but, you know, and the -- but you can, in that case, you can -- and my opinion is pretty firm on that. You look at the face of it -- of course, the face of it is not an awful lot, obviously, on our -- on the approved form. Nevertheless, and you -- a court can and this Court will if things I can take judicial notice of, namely, the various pleadings and the -- and declarations and so forth in other courts, that, in my opinion, anyway,

give you a heads-up, but you made a good point, are clearly, at least as to liability and/or certainly as to amount, are inconsistent, which in my view are -- this is -- these are statements. It’s not hearsay because these are statements of a -- admission, actually, by, you know, statements, you know, under the Federal Rules of Evidence, a statement by a party opponent, namely, the petitioning creditors, it’s not even hearsay, it’s a -- if it’s a statement by a party opponent.

And all these statements that you've presented -- and I’m going to take them one at a time, and that it seems to me on its face, as an example, the -- you have the one claim by Mr. Marco and International, it’s clear on their pleadings that they’re both making a claim on the same jewelry. Is that correct, at least part of it?

MR. MARTICELLO: Yes, Your Honor. This is Robert Marticello for Jadelle.

THE COURT: Yeah. And as far as -- get my -- excuse me a second. The -- as far as Mr. Noval, he basically says that he has the state court action, I believe -- is it state or district court? I know it’s another court, Mr. Noval. It’s a state court, right?

MR. MARTICELLO: Right.

MR. RICHARDS: Mr. Noval is in state -- this is Ronald Richards. Mr. Noval is in state court. Mr. Marco



is in federal court.

THE COURT: Right, okay. Now, as far as Mr. Noval, he made, did he not -- and, again, this is just for Mister -- so the debtor's counsel.

By the way, I know people, when they're -- when the pleadings say "putative" or "alleged," the statute doesn't say it, so I refer to the debtor as the debtor, even though I know this is an involuntary, so that -- just so you understand, that's -- there's nothing in the statute about being an alleged debtor or so forth, but I understand why debtors do it.

There he's saying -- he has different amounts. In the state court he's asking for 7 million, in the bankruptcy, 5.8, and he basically says -- and I can certainly understand how the straightforwardness of that is, "Well, I only put the amount 5.8 because that's the one that he can't really dispute," Mr. Marticello, that's what he says, right?

MR. MARTICELLO: That's correct, Your Honor.

THE COURT: Right. Well, that, on its face, the Ninth Circuit has ruled that that is an admission, in my opinion, that he either owed more, and therefore it is in dispute. I mean, that was a recent change to -- and I assume you agree with that statement, Mr. Marticello?

MR. MARTICELLO: Yes, Your Honor.

THE COURT: Right. Now, as far as Mr. Noval, is that's basically the two things. One is he has different amounts in different lawsuits for the same stuff, but also he’s admitted that the -- that only the amount that’s -- anything else you want to say about Mr. Noval?

MR. MARTICELLO: Your Honor, I have other arguments, but I’m happy to --

THE COURT: Well, no, I want to say anything --

MR. MARTICELLO: -- rest if it’s (indiscernible) --

THE COURT: -- to add because since it’s your motion, I’ll let --

MR. MARTICELLO: Well, I --

THE COURT: -- you respond.

MR. MARTICELLO: With respect to Noval, Your Honor, I would highlight that I agree, Your Honor, the starting point is that Mr. Noval has admitted that he has taken inconsistent positions with his claim and stated a much lower claim in the involuntary petition because he’s attempting to avoid the dispute that the Ninth Circuit has said renders him ineligible to commence his case.

I would also say that based on his judicial admissions, he alleges that he’s a lender and that he loaned Jadelle 5.8 million dollars, and that the loan is governed by the terms of the debt -- the agreement that's

attached to his complaint, but he's seeking an amount in excess of what he has allegedly loaned to Jadelle. He's seeking seven million dollars and he says that seven million dollars is the value of the collateral that secured his loan.

THE COURT: Yeah, and I saw that --

MR. MARTICELLO: And so very simply, he --

THE COURT: -- and I'm somewhat astonished by that argument that you can do -- that he has a claim for a certain amount and if the collateral doesn't cover it or if it goes over that, then the debtor gets it back, right?

MR. MARTICELLO: Well, correct, Your Honor, so -- but my point is as a matter of law his claim in *bona fide* dispute because he's seeking amounts that he can never recover, an amount in excess of what he actually loaned, less payments received and interest on the loan.

THE COURT: Yeah, no, it's --

MR. MARTICELLO: So I think that clearly puts --

THE COURT: It seems to me pretty clear, of course, maybe not so clear from the other side, but it seemed clear to me. I mean, I'm the only person on this call that doesn't -- that is totally neutral.

The next one, Mr. Marco --

MR. RICHARDS: Your Honor, this is Ronald Richards. Can I address that before we go to the next



piece of --

THE COURT: No, not at this point. I'll hear from you. This is not -- that's why I don't like it on the phone. You'll get to be able to respond, but I just want to lay out the plaintiff's side -- that is, the debtor's side, rather.

MR. RICHARDS: Right.

THE COURT: But you'll get a chance, obviously.

Mr. Marco, there he says that the 7,676,000, et cetera, is not correct, but it's really only 6,950,000. Is that correct, counsel for the debtor?

MR. MARTICELLO: That's correct, Your Honor.

THE COURT: And he also -- it's clear from the various pleadings that they and First International are both going after the same claim, that is, that interesting -- I guess I'm living in a different world, but I guess there are diamonds worth over a million dollars, but they're fighting over the same diamond, are they not?

MR. MARTICELLO: Your Honor --

COURTCALL OPERATOR: And, Your Honor, this is the CourtCall operator. Were they able to hear you again?

THE COURT: This -- is everybody still on the line? Oh-oh.

THE CLERK: (Indiscernible)

THE COURT: Mr. Marticello, you're not on the

line? Okay, I guess if you don’t hear me, you're not on the line.

THE CLERK: CourtCall, can you get them connected again, please?

THE COURT: Oh, Jesus.

COURTCALL OPERATOR: Counsel, I just have to confirm you all are still connected.

THE COURT: Mr. Marticello, are you on the line?

UNIDENTIFIED VOICE: Yes, we are.

COURTCALL OPERATOR: (Indiscernible) is connected as well.

THE COURT: Is everybody -- for the operator, is everybody -- why don’t you just state your name really fast if you can hear me. Why don’t --

MR. RICHARDS: Ronald Richards.

MR. MARTICELLO: We’re -- Robert Marticello. We’re back, Your Honor.

THE COURT: Okay.

MR. COHEN: Baruch Cohen.

THE COURT: Okay, okay. Now, you heard -- you heard what my question was that Mr. Marco has admitted that the claim is wrong in the bankruptcy, the 7.6 million is not correct. The right amount is in the -- is 6.9 million, is that correct, Mr. Marticello?

MR. MARTICELLO: That’s correct, Your Honor.

THE COURT: Right, and also they're fighting over the same million-dollar diamond, are they not, that is, the First International?

MR. MARTICELLO: That's correct, Your Honor.

THE COURT: Well, and so -- okay, that's -- and let me -- excuse me just one second. And so anything you want to add as far as the problem with Mr. Marco's claim being not subject to reasonable dispute?

MR. MARTICELLO: I mean, the other inconsistency we have with Mr. Marco, Your Honor, is that he's -- he's alleged that he consigned jewelry to Mr. Rechnitz and not Jadelle specifically, which also creates a factual dispute. And I think that --

THE COURT: Well, wasn't it Mister --

MR. MARTICELLO: -- with respect to all three --

THE COURT: I'm trying to remember -- excuse me. Wasn't it Mr. Marco that -- the two suits he has going, one's against the principals and one's against the bankruptcy, is that correct?

MR. MARTICELLO: That's correct, Your Honor.

THE COURT: And in the one against the individuals, he had the same complaint, but just changed the names.

MR. MARTICELLO: Correct, Your Honor.

THE COURT: That's -- and is that in -- and, now,

is that one in New York or is that here? I just don't remember.

MR. MARTICELLO: It is a district court here, Your Honor. It's before Judge Rice, I believe.

THE COURT: That's here in LA?

MR. MARTICELLO: That's correct, Your Honor.

THE COURT: Okay. I would say if that's not inconsistent, it's hard to imagine anything more. I can understand he might think, "Well, they're really one in the same," but if you -- but if there's obviously a dispute, it seems to me, if you sue the involuntary -- of course the -- that's what this case is, an involuntary, against the princ -- the debtor, which is Jadelle Jewelry. But if you go and sue the principals and say that the property was consigned to them, at least as far as I can see, it -- I can understand why he might take inconsistent positions. But for our purposes there's clearly a dispute by his own mouth.

Would you agree with that, I assume, Mr. Marticello?

MR. MARTICELLO: I agree.

THE COURT: Anything else about Mr. Marco?

MR. MARTICELLO: No, Your Honor.

THE COURT: Okay. And then the final thing about International, then, in their case it's basically the

BENHYATT
Certified Deposition Reporters

dispute is because they and Mr. Marco are seeking in their -- as their claim the same at least -- it may be more than that, but at least the same diamond worth, you know, one-point-something million dollars. Would that be a fair statement?

MR. MARTICELLO: That's a fair statement, Your Honor.

THE COURT: Anything else about International, as far as the objection to their -- them being a petitioning creditor?

MR. MARTICELLO: I think the other inconsistency we have with First International is similar to what we have with Mr. Noval, in the sense that First International takes the position in the involuntary petition, under penalty of perjury, as the amount of his claim, but the declaration he filed, that his princ -- that the principal filed, Mr. Anter filed, in connection with the Trustee's motion, says that the amount is higher. And so I think you have this trend across the creditors where they've attempted to understate their claim in the petition to avoid the dispute that they know exists.

THE COURT: Well, which is -- which years ago that would have been fine. I would have ruled that way. We wouldn't probably be having, well, a lot of this discussion, except for the statute was changed, dealing

with the dispute as to the amount, as opposed to just the claim itself. Anything you want to add till I hear -- I assume Mr. Richards will reply? Anything that you want to say, Marticello, at this point? You'll get to respond to anything Mr. Richards says.

MR. MARTICELLO: Just two points, Your Honor. I think, number one, I think when the Court talked about how clear this is, I agree with the Court that it's clear because of the Ninth Circuit law that we have in the *Blisik* (phonetic) case, which makes clear that a dispute as to any portion of their claim strips the creditor of standing to file an involuntary petition. And the Ninth Circuit case in *Blisik* also states why we have that rule in the Code. It's because disputed claims are to be resolved elsewhere. Bankruptcy involuntary petitions is a measure of last resort. It's a disputed litigation claim that really needs to be resolved in another forum, like --

THE COURT: Well, let me --

MR. MARTICELLO: -- where these claims originated.

THE COURT: -- stop you. You can -- I want to hear, just as far as the other side and then I'll get back to you.

Okay, now who --

MR. MARTICELLO: That's fine, Your Honor,

understood.

THE COURT: Now -- because there were several people representing the various folks, but let me -- now, I know, Mr. Richards, you represent at least Mr. Noval, is that correct?

MR. RICHARDS: Noval. That’s correct.

THE COURT: Now as far as the other two, are you going to deal with them or we have other counsel, Mr. Lev? Are you going to deal just with Mr. Noval --

MR. RICHARDS: No, Your Honor, I’m --

THE COURT: -- or are you going to deal with all three?

MR. RICHARDS: I’m going to deal with Mr. Noval in the global issue of using the other pleadings and Mr. Cohen will address the comments the Court just made about his specific claims, but it may be rendered moot by some of my general positions.

THE COURT: Well, I know your position. I’ve already -- just so you understand, I’ve made my ruling, and I don’t think you quite got it. I can take judicial notice, and generally speaking, not to the truth of the matters asserted, but that’s just by judicial notice. But if you're dealing -- if you're saying that I can’t -- I totally disagree, the cases are all over the place, including my own, that -- so that's my ruling. That’s

BENHYATT
Certified Deposition Reporters

not -- that was not a suggestion, that I will consider and have considered, I'm going to consider admissions by the various people and all the things we've been discussing. So I'd like you to --

MR. RICHARDS: Yeah, I know --

THE COURT: -- given that --

MR. RICHARDS: Your Honor, I'm going to (indiscernible) your point.

THE COURT: -- I know you may not agree with that, but -- well, let me ask you. You don't agree with that proposition?

MR. RICHARDS: No, you can take judicial notice of admissions. I don't disagree with that, but what I do disagree with is the fact that in a state court pleading, the fact that you pled an amount that's inconsistent in the petitioning creditor amount does not create a *bona fide* dispute.

When you file claims in a bankruptcy court, you typically file the claim. You don't add in attorney's fees or costs, where in state court, if there's a default, you're required to put the highest number possible so there's a due process issue if the person defaults. The pleadings rules are totally different, so --

THE COURT: No, but wait a minute --

MR. RICHARDS: -- you never --

THE COURT: -- you're forgetting a little thing about Mr. Noval, who says in his pleading that he only put the principal amount absolutely not in dispute. You read that, did you not?

MR. RICHARDS: Yeah, but the reason why that was put before you was because the principal amount is not in dispute. The number is not a static number. Interest is always accruing --

THE COURT: No, that --

MR. RICHARDS: -- there's always fees accruing.

THE COURT: No, no, no, that's -- that isn't what he said. Do you want me to quote it? "Only the principal amount, absolutely no chance of being disputed." Principal amount. That's what he's talking about. That has no chance of being disputed.

I hear what you're saying. He has basically admitted that this -- in my opinion, you can disagree if you wish, but it's clear to me that he is saying he left off claims, and it's -- and that's all the testimony we have.

The problem is -- Mr. Richards, with your side is you didn't bother in responding to all this. So the record I have right before me is that there's -- that as far as Mr. Noval, he has not listed the entire claim, period. He hasn't explained what you are telling me. That's not in



his -- that’s no evidence before me, so I --

MR. RICHARDS: I know, but, Your Honor, it’s a 12(b) motion, and you're not -- we didn't want to fall into the trap of converting it to a Rule 56 motion.

THE COURT: No, it’s not a --

MR. RICHARDS: If anything --

THE COURT: -- this is not a summary judgment. You don’t get it. The cases are quite clear that normally in a 12(b)(6) you take it on its face, subject to things that I can appropriately take judicial notice. This is not a summary judgment motion. This is a 12(b)(6) motion. And the law is quite clear that in that motion, not converting this to a summary judgment, that the question before me is whether or not there’s a reasonable dispute. If he wanted to respond, that’s the only issue. So I hear what you're saying. This is not a summary judgment. This is a 12(b)(6) motion, and I can’t consider --

MR. RICHARDS: I know, but --

THE COURT: -- the admissions.

MR. RICHARDS: Right, but when the -- by responding to the admissions and getting -- and presenting testimony, we believed that that's -- that converts mister -- now you're weighing credibility. We’re simply -- we simply set forth a *prima facie* claim of the amount that we’re contending is owed that is not in dispute. You can’t

create a dispute by saying, well, in another case, in a different pleading standard, he's now requested all of his expenses and interest, et cetera. We don't have to take that risk when we filed the petition. We filed the petition with a clean claim that is the principal amount, just like even on the claim form for this district --

THE COURT: Well, what --

MR. RICHARDS: -- because we tell you to add --

THE COURT: -- then what -- well, then what -- where -- that statement was made in what pleading? And I have it in front of me, just make sure you understand that -- only the principal. That was in what -- what pleading was that made in?

MR. RICHARDS: In our opposition to the motion to dismiss.

THE COURT: No, no, no, for -- in the oppo -- where did he make that statement?

MR. RICHARDS: About what?

THE COURT: That he only included --

MR. RICHARDS: What specifically, Your Honor?

THE COURT: Let me ask you that. Mister -- let me ask the debtor's counsel. Where did you make that statement?

MR. MARTICELLO: Regarding the calculation of the claim?

THE COURT: Yeah, that he only --

MR. MARTICELLO: Sorry, this is Robert Marticello for the debtor.

THE COURT: Yeah, Mr. Marticello.

MR. MARTICELLO: It's in docket number 16. That's Mr. Noval's declaration, page 6 --

THE COURT: That's his declaration.

MR. MARTICELLO: -- line --

THE COURT: That's not in the state court litigation. That's his declaration.

MR. MARTICELLO: Oh, correct, Your Honor. I'm sorry, I -- yeah, correct. In the state court there's -- are you asking what -- if there was a statement regarding the principal amount owed?

THE COURT: Where he made that statement, that he only included the things that are not in dispute?

MR. MARTICELLO: The statement -- that statement is in his declaration filed with the Trustee motion.

THE COURT: Right, where he said --

MR. RICHARDS: It's not in opposition to the -- that's where -- but that's not relevant to this motion. We -- the -- we -- in this motion we didn't -- we don't need to -- we don't -- we didn't want to fall into the trap of getting into --

THE COURT: No, no, wait, stop.

MR. RICHARDS: -- providing witness testimony --

THE COURT: I'm asking you a very simple question. That statement was not in the state court. That was in his declaration before this Court, was it not?

MR. RICHARDS: In opposition to the motion to dismiss or the Trustee motion?

THE COURT: Well, it doesn't matter, does it? It's a statement that he made.

MR. RICHARDS: Yes, it does.

THE COURT: It's an admission --

MR. RICHARDS: It actually does.

THE COURT: -- is it not? It was a statement in a declaration. I have a whole pile of papers before me, but I know I've read it. I can't remember which one. Mr. Marticello, which -- the declaration was in regards to what pleading?

MR. MARTICELLO: It is document number 16. It's the trust -- it's the declaration of Victor Franco submitted in support of the motion for a trustee.

THE COURT: Okay. And --

MR. MARTICELLO: And it --

THE COURT: -- I don't have that -- actually, I have it in front of me, but can you read -- do you have that in front of you? Can you read the actual statement?

MR. MARTICELLO: I do, Your Honor. He says, at

line 22:

"In fact, in calculating my debt for inclusion in the involuntary petition, I took the most conservative approach by including the principal amount owed and an amount that had absolutely no chance of being disputed."

THE COURT: Okay. Now, Mr. Richards, that's in this court. That was not in state court. I'm going to leave it, but I'm telling you right now, I don't buy your argument.

MR. RICHARDS: Well, Your Honor, there's nothing on --

THE COURT: That's in this particular court and part of these proceedings before me. He is stating exactly what the Ninth Circuit says is subject to reasonable dispute. I'll give -- do you want to say one more -- a couple words on that, but I -- that is so obvious to me what he's doing, what the Ninth Circuit says you can't do. And he's not talking about fees in the state court or anything. He's talking about the claim in this court.

MR. RICHARDS: I know, but --

THE COURT: So do you have any final statement about Mr. Noval? And this is not --

MR. RICHARDS: Yes, Your Honor, and unfortunately --

BENHYATT
Certified Deposition Reporters

THE COURT: -- by the way, summary judgment. This is a 12(b)(6) motion.

MR. RICHARDS: I know, but, Your Honor, unfortunately, this state -- this testimony is being misunderstood. He's explaining in the declaration that the claim that he's making in this case is not subject to dispute. He's not compelled to put on evidence of interest or other things that they could dispute. He's following the procedures. When you make a claim in the Central District, you put the principal amount. You don't put all the other parts of the claim. So he's explaining to you why this --

THE COURT: Well, for instance --

MR. RICHARDS: -- there's an inconsistency in the statement.

THE COURT: -- let's say there are attorney's fees involved in the claim. Those -- and those might be disputed --

MR. RICHARDS: (Indiscernible) --

THE COURT: -- on not being reasonable. Isn't that what the Ninth Circuit is talking about?

MR. RICHARDS: No, Your Honor, because attorney's fees are only by a motion. You wouldn't put stuff that hasn't been ruled on yet. In the original claim you only put the principal. You can't put stuff that is not decided

yet in the future, so --

THE COURT: Oh, you're not saying --

MR. RICHARDS: -- when you petition, if someone’s --

THE COURT: I’ve seen claims --

MR. RICHARDS: -- you don’t --

THE COURT: -- all the time where they say, my claim is such-and-such plus attorney’s fees allowed by the contract.

MR. RICHARDS: Well, that's because --

THE COURT: Doesn't that happen all the time?

MR. RICHARDS: If there’s a contract -- if there’s a contract that calls for prevailing party attorney’s fees, you have to first win. So, no, you wouldn't -- that would only be if there’s like an agreed-upon amount in a contract for attorney’s fees --

THE COURT: Well, in any case --

MR. RICHARDS: -- like a specific amount.

THE COURT: -- Mr. Richards, I’m going to end the discussion on this. I hear you. I just totally disagree and not further any -- and he is not -- because his -- he has stated it himself. You can twist it and put any spin you want on it, but it’s absolutely clear, his statement that he’s -- what he said, and that he is stating that he is only listing the amount, absolutely it can’t be

disputed, and that tells me that there is more to it, he's admitting it. So I am not going to allow him as a petitioning creditor.

Who is going to talk about Mr. Marco?

MR. COHEN: Your Honor, that would be me, Baruch Cohen.

THE COURT: All right. Well, mister -- you've seen where, in the -- he and International going after the same diamond, are they not?

MR. COHEN: We do not agree that they're going after the same diamond. In fact, I didn't see any evidence presented by the putative debtor that's it's the exact same jewelry. We liq --

THE COURT: It looked like to me, in the claim --

MR. COHEN: I did not see the exact same jewelry. Plus, you know, we have a total of approximately 6.9. You know, there's been transactions between the parties as to what the -- both of --

THE COURT: No, but wait a minute.

MR. COHEN: -- these balances, but we --

THE COURT: Didn't he say it in the state court action that -- isn't the claim 7.6?

MR. COHEN: The --

THE COURT: Take a look at --

MR. COHEN: That was in addition -- yeah --

THE COURT: -- his statement in the petitioning creditors. Isn't it 7.6 million, no 6.9?

MR. COHEN: Correct, I believe so.

THE COURT: Okay. So right on the face of it --

MR. COHEN: But then, again -- but we --

THE COURT: -- he's admitting in the other action --

MR. COHEN: -- but let me just finish, Your Honor. The point --

THE COURT: -- that it should be less than the 7.6.

MR. COHEN: Well, you know, when we get a letter from debtor's counsel saying that they want to pay my client -- you know, this is the February 4th, 2020 letter. So regardless of what the number was from one pleading to the other, when Rechnitz's or Jadelle's lawyer writes us saying, "We want to pay you," you know, that's the debtor stating that, "We have no issue as to your amount, as to Marco." And the Court hasn't addressed that, but I don't see how you could get around, when the debtor writes the letter and saying, "Hey, you know, we have a family member who wants to pay you," not raising any dispute as to amount --

THE COURT: I totally disagree.

MR. COHEN: -- not raising any --

THE COURT: I hear you, and you're a fine lawyer, but that's just -- and as a matter of fact from the other side, namely on your side, that there's this family member out there. I don't think you jump and down and say, "Wow, they're going to pay." Would that be a fair statement?

MR. COHEN: That's not necessarily accurate. This is a family member who's quite a philanthropist who has a good reputation, you know, of being philanthropic. He's well known within the -- to our client. He's well known within the Orthodox Jewish community. So without dropping any names, when they say that, you know, Bill Gates is paying your bill you take note. And when we get a letter saying, "Hey, we're paying your bill, you know, we're just trying to fund it" and the debtor's letter says absolutely nothing about there being a dispute then right now what that --

THE COURT: Well, no. I --

MR. COHEN: By the way --

THE COURT: I hear you. But let me ask you this.

MR. COHEN: And Marco is now --

THE COURT: This -- isn't he suing -- but getting back to Mr. Marco, isn't he suing the -- for the same jewelry, the individuals, in state court?

MR. COHEN: I do not be -- no. We're suing the Rechnitzes in state court.

THE COURT: For the same jeweler. They're not the --

MR. COHEN: We are not suing Jadelle.

THE COURT: Doesn't the state court action say the matter is --

MR. COHEN: I do not believe it's --

THE COURT: I've seen the complaint. It says --

MR. COHEN: I'm -- I do not believe it --

THE COURT: -- that the matter is consigned where it's consigned to the -- he took the same language from here and said -- in this case he says, "These jeweler items were consigned through the debtor." And in the state court action he says the same language, they were consigned to the Rechnitzes. Isn't that the correct?

MR. COHEN: You are correct, but it's interchangeable because the invoices are both to Jadelle and to Jona.

THE COURT: Well, you say that but he didn't say that. How is they didn't -- he didn't say -- what he's saying in the one complaint is --

MR. COHEN: I think we're --

THE COURT: He doesn't mention Jadelle at all, does he, in the state court action?

MR. COHEN: Because the state court was stayed by -- it was a U.S. District Court matter, Your Honor,



before --

THE COURT: Okay. District Court. Okay.

MR. COHEN: But in that matter -- that matter because Jadelle already was -- there was an involuntary already placed against it, so there was -- you know, there was no real need to identify Jadelle as the responsible party when in essence the invoices say both.

THE COURT: No. You're talking -- you're adding something to it. You're saying what the invoices say. In one pleading it says it's the individuals that -- consign to it and then the involuntary says there was -- it was the debtor Jadelle. Those are -- you don't think those are inconsistent positions --

MR. COHEN: I think -- I think Peter Marco --

THE COURT: -- that this lease -- not as a matter --

MR. COHEN: No, because when --

THE COURT: -- not to decide it ultimately because they might conceivably both be liable. But I'm saying as far as whether or not there is a -- on the face of it a dispute as to who's liable. Why does that not show a dispute, just on its face?

MR. COHEN: We don't believe it's a dispute. They are one and the same. It's for another substance.

THE COURT: Well, you're -- again, you say

they're one and the same but isn't that subject to dispute? They may say, "No, it's not."

MR. COHEN: We lost the judge again, CourtCall operator.

THE COURT: You can't hear me? Oh-oh.

ATTORNEYS: We hear you now, Your Honor.

THE COURT: I'm back.

MR. RICHARDS: Yeah.

And, you know, are you sure, Mr. Cohen, that you've looked at the pleading because I have and it seems to me that there -- that International and Mr. Marco are going after at least one of the same items. Have you looked at the documents? Are you telling me that they don't overlap?

MR. COHEN: They're mis -- see, that's where the confusion is. There may be an overlap but that in terms of the trans --

THE COURT: Well, not a maybe. They -- it seems to me there is. Am I -- I'm asking you as an officer of the court, have you actually looked at the claims as to whether or not there really is, at least as to this 1.2 million or whatever it's worth, this diamond, are you telling me that that's not the case?

MR. COHEN: No. I'm saying there is overlap but I'm saying it's a confusing web of transactions --

THE COURT: No, no. Wait a minute.

MR. COHEN: -- with Rechnitzes --

THE COURT: Back up.

MR. COHEN: -- Jadelle and my client.

THE COURT: That isn't what you just told me about a couple minutes ago. You said, no, there's no overlap. Be very careful, Mr. Cohen, that --

MR. COHEN: No, what I'm saying is I don't see ev -- Your Honor, I'm very careful. I said I don't see evidence of any overlap.

THE COURT: Okay.

MR. COHEN: It's hard to --

THE COURT: Let me -- let me go back to Mr. Marticello. Why don't you point out to it? I've seen it but I want you to help Mr. Cohen out.

MR. MARTICELLO: Your Honor, the evidence is in Mr. Marco's pleading. It is page -- it's Bates-stamped 100 of Exhibit 7 where it lists First International and the -- Diamond and the amount.

THE COURT: And that -- the Diamond -- I forget. I looked at it and my eyes kind of glazed over, but it does describe -- I don't know what all those numbers mean, but why don't you -- do you have in front of you what the -- I don't know, is that 16 carat? I don't know. I don't know. I'm not a jeweler so I have no idea.

MR. MARTICELLO: Yeah, Your Honor, it -- under the description -- and this is Robert Marticello for the debtor.

THE COURT: Yes.

MR. MARTICELLO: Under the description it says EID -- EID NT 13.62 d/bbs1, then the number sign, and then the number sign, and then the number is 11776564.

THE COURT: And again -- just for the record again --

MR. MARTICELLO: And the Court --

THE COURT: -- you're reading from what?

MR. MARTICELLO: I'm reading from -- this is our request for judicial notice in support of our motion to dismiss. It's Exhibit 7, Bates-stamped 100.

THE COURT: No, no. What is the document? I think I have it but just for the record to be clear what are you reading from?

MR. MARTICELLO: The doc -- oh, the document, it's Marco's third -- amended third-party complaint.

THE COURT: All right. And that's filed in the district court?

MR. MARTICELLO: Correct.

THE COURT: Right. And now shifting to International, they're -- how -- they show that they're looking for the same thing. How do you connect the two?



What about things from them?

MR. MARTICELLO: Well, one, Your Honor, the place that I just read in Marco's third amended complaint, it actually lists First International as the vendor for that particular item, but also coming from Mr. Anter in this Court he submitted the declaration in support of his motion for a trustee --

THE COURT: Right.

MR. MARTICELLO: -- which is document number 15 -- and he states that he consigned certain items to Jadelle and in support of that item he attaches his memos and the memo lists the same item.

THE COURT: All right. Well, that was my recollection. I didn't remember all the documents.

But now, Mr. Cohen, are you -- do you -- are you listening? Do you now see that they're talking about the same item?

MR. COHEN: So, Your Honor, I'm not sure they're the same item. We -- first of all, First International did not file a lawsuit yet.

THE COURT: No. They haven't filed a lawsuit.

MR. COHEN: Number two, that this --

THE COURT: Anyway, let's put it this way.

MR. COHEN: And the --

THE COURT: It is absolutely clear to me that

they -- and it's not unusual -- but they're making the same claim and they may not even know amongst themselves through all these consignments and so forth, but it's absolutely clear to me that they're going after the same diamond. And again, I don't write the law. I don't make the law. But it's clear that in that case they're not only talking about the amount of the claim but actually as to what's included in the claim.

So, Mr. Cohen, do you have anything to add to either Mr. Marco or -- you're dealing with International as well, right?

MR. COHEN: You're right, Your Honor. I'm dealing with both and the problem is that the description doesn't match in both. And in an ideal world if they did match I would be more ready and eager to acknowledge and submit to the point, but they don't match and therefore I'm not 100 percent sure that it's the same.

THE COURT: Okay.

MR. COHEN: But --

THE COURT: Well, there is reference I am convinced --

MR. COHEN: Yeah.

THE COURT: Because there is reference in Mr. Marco's papers that it dealt with International. Obviously, the money we're talking about at this level a

lot of these, you know, outfits and people are dealing with each other it's not unusual. But I am convinced that --

MR. COHEN: Right. But the additional point, Your Honor --

THE COURT: Yes.

MR. COHEN: The additional point, Your Honor, is that Jadelle issued 2.1 -- $2,122,760 worth of bogus checks. There is absolutely no dispute that Jadelle issued that amount of bounced checks.

THE COURT: Well -- and, Mr. Cohen, stop.

MR. COHEN: Well, even --

THE COURT: You're changing the subject. I -- you know, it is pretty clear to me -- and this is not a criminal court. This is just a bankruptcy court dealing with an involuntary. I have no doubt from reading all these pleadings, and the debtor doesn't say they're not correct, that there's all kinds of stuff going on and jewelry that's missing and so forth. So I don't doubt that for a second.

But the only question for me is a very simple one really, is whether or not there is a -- under the -- under bankruptcy law whether there is a dispute as to the amount of the debt. So I have no doubt from these pleadings that probably millions of dollars are probably at least owed by the debtor. That I have no doubt about it. The question



is how much? And that's what this is about. So it seems to me --

MR. RICHARDS: Your Honor, excuse me. Will we be allowed to --

THE COURT: -- that at least as far as people who obviously work together, Marco and International, there is an overlapping claim.

MR. RICHARDS: Your Honor, we should be allowed to -- this is Ronald Richards. We should be allowed to amend our pleadings to -- if that's an issue of any --

THE COURT: No. Let me stop you. No. This is not a -- this -- no, this is a very simple matter. This is not a Ping-Pong match.

So as far as all three of these it is clear to me and for the re -- this is a discussion that there are disputes I've already indicated as to the amount, as to who they're owed to, the dispute as to it and I've listed pretty much all of them.

So, you know, there's not -- this is not a pleading where you can amend. This is dealing with the petition. But what I am going to do as follows. Again -- and this is not the normal complaint, answer and so forth. So the Rule 12(b)(6) does apply but in kind of an unusual way. What I'm going to do as follows.

It -- for the reasons I've stated on the record I

agree with the debtor that these three have disputes, at least as to the amount and/or as to the claim itself. However, again, I'm not ruling -- of course, I'm reiterating myself *ad nauseum* that indeed that's the final, the ult -- at the end of the day those claims can't be proven. I'm just talking about whether petitioning creditor -- I don't doubt that they have claims. It's just a question of whether they're subject to the dispute. That's what's before me. A totally different question.

But what I may do is this and that's why I originally -- and, by the way, so I -- what I'm going to do is the following. I am going to require the -- both -- we have two -- we -- there are two principals of this debtor, right, the Rechnitz -- however you pronounce their last name -- but that is correct, right, from the debtor -- from the debtor's standpoint there are two? They're the -- the only two people in the LLC. They're the only members, is that correct?

MR. MARTICELLO: To my -- Your Honor, this is Robert Marticello for the debtor. My understanding is that Rachel Rechnitz is the member. I -- to my knowledge Mr. Rechnitz is not a member.

THE COURT: Well, what is he? I thought he -- I thought you -- what --

MR. RICHARDS: Your Honor, he was --

BENHYATT
Certified Deposition Reporters

THE COURT: In an LLC you're either a member or you're not.

MR. RICHARDS: Your Honor, Ronald Richards.

THE COURT: I mean, I don't understand. Why is he not a member?

MR. RICHARDS: His wife is the member. She's the member. He's the -- he's a member under community property law.

THE COURT: No, no.

MR. RICHARDS: And he's the one that frank --

THE COURT: Is he an actual member on the papers?

MR. COHEN: He is not, Your Honor. This is Baruch Cohen. He is not a member.

MR. RICHARDS: They objected to all of our discovery requests, all of them that we sent, Your Honor, that were -- last night we received blanket objections.

THE COURT: As to what? I don't have that before me. Because what I'm going to do --

MR. RICHARDS: We --

THE COURT: So you're telling me that again the community -- obviously, because of the community property is one thing. I am going to order the debtor -- so she's basically the one who runs the business end, is that correct?

MR. RICHARDS: No. Mister Rechnitz -- Jonah

Rechnitz runs the business.

THE COURT: Excuse me?

MR. RICHARDS: Jona Rech -- this is Ronald Richards -- Jona Rechnitz runs the business. His wife has been listed as a member, but the person that's committing these frauds and tendering the worthless checks is Jona Rechnitz in connection with his wife. They were married. They have six children --

THE COURT: Okay.

MR. RICHARDS: -- together.

THE COURT: Well, what I'm going to tell you what I'm going to do because I hear --

MR. RICHARDS: It's a community property business.

THE COURT: -- what's going on. In all the pleadings it seems like the -- they're both involved. I don't know which one is more involved. I have no idea.

But I am going to do this. I am going to require the debtor -- and that is both Mr. and Mrs. Rechnitz -- to file a declaration. I'm going to give you -- I'm going to give them one week from today, that is they have to file a complete list of all creditors of the debtor. Those are the only two people I know were involved and they're going to have to -- I'm giving them one week. They would know who the various creditors are. They have one week from

today to file that, listing all creditors of the debtor with the nature of the debt. Just a summary but just, you know, for its -- and jew -- consigned jewelry, what have you, because you had said originally -- I think one counsel for the debtor that they're all paying their debts as they become due. I forget who made that statement but one of you did.

So obviously somebody and I'm not going to be -- worry about which one -- I want a declaration from both of them signing it as to who the -- who are the creditors, how much is owed, the nature of the debt, contact information. namely the address, email, phone, anything possible in order to allow the creditors, as you indicated in your pleadings, to be able to get other people involved.

I know at least two of the creditors here have filed suit. International hasn't. So -- but nevertheless the law does require now with the Oved case with the big problem with the judge. I don't know reading that case was fascinating as to how the things moved so quickly. I'm only trying to be fair to both sides. But it seems to me within one week the debtor and the joint I'm ordering both, both of the principal -- the principals, that would be Mr. and Mrs. Rechnitz, to be able to order under penalty of perjury to file a statement of all the creditors.

And then after that I'm going to -- I am going to

give the -- after receipt of that list I'm going to give -- and I'll give some dates -- I'm going to give the creditors 30 days to contact them. This is not a matter of just discovery, just to be able to -- with the really creditor to be able to see whether they would join in. They may very well want to.

And then what I'm going to do, I'll give you the actual dates. That should be plenty of time. That is 30 days after you get the receipt. And if the debtor -- the principals play games and don't give adequate information that will be a real problem. Then I'm going to continue this for a status conference. I'll give you a specific date for that.

And at this particular time, even though the -- and I'm not going to dismiss the case. I will be preparing the order in this case, by the way. I'm not going to dismiss it and I'm not going to appoint a trustee. I see no reason whatsoever at this point for appointing a trustee. I think the allegations are the debtor did some really -- the principal -- I know the debtor did some really bad things, but I see no -- I think in this particular case if a trustee ultimately is appointed it's going to be preferences, fraudulent transfers and searching out things. But I doubt seriously, from what I've heard, that if in the premises they're going to find at that

location an actual thing.

So I see -- I don’t see at this point any need for a trustee, so I will prepare an order without prejudice. I’m denying the motion for a trustee. I’m going to -- so I’m going to -- I will set this for a further status conference to see whether or not the debtors have complied and this -- again, this is under penalty of perjury. So I would strongly suggest that they tell the truth because, if not, they know the consequences. I’m required by law to refer it to the Justice Department. So I fully expect that in far -- and this is not a -- just a request. This is an order. If the debtors -- if both the debtors -- principals, do not comply with my order I will enter an order for relief. So I want to make it very clear at this point I’ve expressed my view as to, you know, the -- why these particular creditors or these who are subject to dispute -- not that the claims are invalid, but just that they’re subject to dispute -- and I’m required by law to give them an opportunity and give them 30 days from receipt of these declaration from the joint declaration from the principals as to a listing of all of their creditors.

Any -- and again, I’m not going to change what I’ve said and I’ll give you specific dates, but any -- let me ask from the debtor’s standpoint. This is really from



the debtor, Mr. Cohen, or -- do you -- so if you have any question about what I've ordered the debtor -- the principals of the debtor to do?

MR. MARTICELLO: I -- Your Honor, this is Robert Marticello for the debtor. I don't have a question, but I would like to just make one point if I could, Your Honor, because the Court stated it's so required to offer an opportunity to join and I actually do not think that is required under the *Vortex Fishing* cases in the Ninth Circuit --

THE COURT: I'm not saying it's required. I am requiring it.

MR. MARTICELLO: Okay. I understand.

THE COURT: Do you follow? This is -- I'm trying to -- I am -- I have the power to do it and I'm doing it. I don't see anything unreasonable. The -- again, the law is kind of a -- it's pretty clear to me after reading the various opinions that I have to, and I will since I've disqualified, at least for being petitioning creditors -- the three petitioning creditors and they have to have a reasonable time to be able to see if they can get other creditors to join in. It's that simple. What's -- so what's so difficult about that to understand?

And who was it that was just speaking?

MR. MARTICELLO: It's not -- Your Honor, I

BENHYATT
Certified Deposition Reporters

apologize. This is Robert Marticello for the debtor.

THE COURT: Yeah. Well -- and that's -- you understand. That's not difficult to understand, is it, what I'm ordering?

MR. MARTICELLO: It -- I understand the Court's order.

MR. RICHARDS: Your Honor, this is Robert Richards. Just so the record's clear because you keep referring to the debtor's principal. Do you mean Jona and Rachel Rechnitz are required to file a declaration?

THE COURT: Those are the two people. That's it. Those are the only people that I -- there was this other declaration person who was signing checks. But, yes, those are the two people that -- as far as I can tell. That's why I asked you when we started this hearing, who's really -- is -- are the people behind the debtor and obviously those are the two people. And it's -- and the -- and I assume they have -- if they're not ans -- to an -- able to answer that question I'm going to enter an order for relief. I want them to answer truthfully and I want to give the creditors -- the petitioning creditors an opportunity to see if they could convince the three other -- assuming there are more than 12 -- creditors to be able to do it.

Any questions about what I'm ordering?



MR. MARTICELLO: No, Your Honor.

MR. RICHARDS: And from -- this is Ronald Richards.

THE COURT: Okay. Then I'm going to do this. I am going to -- there's -- seven days should be more than enough time. This is not a difficult thing to do, is it, Mr. Marticello? That should be a simple thing for them to do, right?

MR. MARTICELLO: I believe we can accomplish it in seven days, Your Honor.

THE COURT: Okay. So I'm going to do this. I'm going to give you some dates and I'll look at my calendar here. Just so you understand, I just want to get -- I want to give each side a fair opportunity to present the case but I think it's important for both sides, quite frankly, to get this resolved one way or the other. So I'm still looking for my -- I'm looking for my calendar.

Stacy? No, no. An actual calendar.

THE CLERK: (Indiscernible.)

THE COURT: I have such a pile of papers here. I can't find my little -- there it is. It was buried under -- okay. So today, this is June 9th. I will pre -- I -- it may take me a day or two to prepare this order, but this is the order right now. In fact, you may not get the written one. That's why I want to make it absolutely

clear -- everybody hears me -- this is June 6 -- excuse me, this June 9. By the end of the day on June -- let's say -- I'm going to change this. Everybody knows it's all done by email. I want it filed with the Court by 3 o'clock on the 16th of June. So we'll get it and the other -- and the -- obviously, all the three petitioning creditors or counsel they will get the -- this list.

Again, just so there's no misunderstanding, it's got to be signed by both under penalty of perjury that it is a complete list of all creditors of the debtor. And with the amount of the debt -- of the name of -- of course, the name of the creditor, all indication in how to reach them, namely, phone, email, mailing address and the nature of the debt.

MR. RICHARDS: Your Honor, did you say email, too?

THE COURT: Everything.

MR. RICHARDS: Email address?

THE COURT: Any way of contacting them.

MR. RICHARDS: Okay.

THE COURT: That is a physical address, phone, fax, any way of communicating with them, then -- and of all of them. Again, the amount, the name --

MR. RICHARDS: Any cell phones if they have it?

THE COURT: Excuse me?

MR. RICHARDS: And cell phones if they have it?

THE COURT: Yeah. Well, of course. Only if they have it. But I'm not going to be too impressed if they say, "Gee, we really can't reach them." That would be pretty -- a pretty ridiculous response. So in any case it's the name, what the debt's for, just a summary, you know, for a consigned whatever, whatever it is, or it could be non-jewelry. It could be other debts. I don't know what the debtor might have, rent on the place, whatever. I don't -- I don't know. But whatever debts. The name of the creditor, the amount, the nature of the debt and every contact information, an address, email, fax, phone, you know, whatever. And that -- and it's asked by 3:00 p.m. next Tuesday. And that has to be delivered.

And from there I'm going to give the petitioning creditors -- to the approximate -- let's see, that's one, two, three -- I'll give actually a little more. I'll give to July -- Bastille Day, no particular importance to us here in the U.S. -- July 14th for the creditors to try to get any additional person to file -- to join in in the petition.

Is that clear from the petitioning creditors? Mr. Richards, any of the others, is that clear?

MR. RICHARDS: Yes, Your Honor. Just a quick question. When you say "deliver this list," I'm assuming



that they are going to file the two declarations on the docket, correct, by 3:00 p.m.?

THE COURT: Oh, they'll be filed but also they'll be served by email on the -- all the three petitioning cred -- counsel for the petitioning creditors. Yes.

MR. RICHARDS: Okay. Thank you.

THE COURT: And then you'll get to the 6th -- to July 14th by -- again by 5:00 but we'll make it again by 3 o'clock. Just to make it clear, by 3 o'clock on July 14th to have to get somebody else to join in and I'll have no idea how many of those other people are.

And, by the way, if there are -- of course, if there are less than 12 creditors there can be just one but so -- but I don't know. So if there -- so we all know that, that's a bankruptcy if there's more than 12 or 12 or more.

So what I'm going to do and I will know and you will know by the 14th of July at 3 o'clock if you have at least the required number of creditors and then I'm going to set it for a status conference two weeks after that or approximately.

Do we have a date?

THE CLERK: We have July 7th at 3:00.

THE COURT: Okay. So that would be -- no, no, it can't be July 7th. Two weeks after the 14th. So that

BENHYATT
Certified Deposition Reporters

would be -- that would be the 28th.

So I'm going to continue this for a status conference on July 28th at 10:00 a.m. and I'll find out at that point whether I dismiss this because there is not a -- there are no -- not sufficient creditors or if there are go from there. If there are some filed there may be further objections to them. I have no idea but I want -- I -- what I want is a status report one week before the 28th. That is on the 21st I want a status or joint status from just to -- just telling me what's happening. That is, the counsel for the -- well, there's one counsel for the debtor and I guess there are either two or three, depending on how you count, on the creditors to tell me what's going on. There are a lot of possibilities. It may be that there's no further -- no further, you know, creditors and then I -- and then, of course, there's going to be a motion for attorney's fees or -- by the debtor, but I don't know that for sure but that would likely happen. But if there are other creditors then I'd have to know on that status report whether or not there's a dispute as to who -- you know, they're being eligible.

And so I'm going to -- I will ultimately prepare an order on this, but as far as getting that list out and as far as the response and all, I want everybody to know exactly what's going to happen and we will again have



that -- let's see, the hearing will be when again?

THE CLERK: You said July 28th at 10:00.

THE COURT: Yeah. July -- it would be July 28th at 10:00.

Any questions at all about what I've said? I'm not asking the creditors to agree. I just want to understand what I've done. Any question at all?

MR. COHEN: Your Honor, this is Baruch Cohen. I have a question for you.

THE COURT: Yes.

MR. COHEN: Baruch Cohen on CourtCall. I have a question. Okay. So the principals of the debtor, Mr. and Mrs. Rechnitz, to submit a declaration as to the debts of Jadelle as of what date? As of the petition date? Because I suspect that the Rechnitzes are immediately upon conclusion of this hearing going to try and interfere with creditors --

THE COURT: Oh, no, no. That's --

MR. COHEN: -- and try to pay them off.

THE COURT: No, the law is -- no, it's clear and it's a good question and for lots of reasons. It's as of the petition date because what people have tried to do is -- in the past is try to pay off all the debts, you know. And, of course, that's not going to happen --

MR. COHEN: Right.

THE COURT: -- in this case because you've got millions of dollars in this one. I have had a couple cases where --

MR. COHEN: There -- over 30 million we can leave, Your Honor.

THE COURT: -- the debtor says --

MR. COHEN: But what the --

THE COURT: "Well, I'll just pay off the debt so there's no petitioning creditors." That's -- no, law is as of the date of the petition.

MR. RICHARDS: Your Honor --

MR. COHEN: Thank you.

MR. RICHARDS: -- Ronald Richards. It's also important that you make it clear in your order of who a creditor is, that any claims that Mr. Rechnitz has in the Rabbinical Court, because we've been contacted by many debtors that felt they had religious obligations to exhaust that -- our creditors so there's no funny business, that he excludes creditors. It's anybody that he's -- owes money to.

THE COURT: Oh, yeah.

MR. MARTICELLO: Your Honor --

THE COURT: You know, I'm quite familiar, not --

MR. MARTICELLO: -- this is Bob Mar -- Marticello.

THE COURT: -- I mean, with the *bet din*, I guess it's called as I recall. No, no, no. This is -- yeah, make it quite clear. I know you're all very -- I know most of you on the line very bright people. No, this is the -- I understand about their religious court. No, no. This is very simple, not complex at all. We're talking about outside in the -- in the regular world how much -- what creditors they have.

I hear what you said, Mr. Cohen. I don't understand what the debtor would attempt to -- what monkey business the debtor would attempt to do here.

MR. RICHARDS: We're concerned that -- this is Ronald Richards. I'm just concerned that because we -- they objected to all of our discovery and we can't file a motion to compel before the -- well, I'd like permission to file a motion to compel that there be some check-and-balance that we could verify they're not intentionally excluding creditors because we believe there's over 30 million dollars' worth of theft in defaulted payments and bad checks. And so by trusting Jona and Rachel to be honest and not commit perjury is a -- is one thing, but we'd have no way of imploring the adversarial process. So I don't know why we wouldn't be able to take a deposition after they submit the declaration --

THE COURT: Okay.

MR. RICHARDS: -- and make sure that --

THE COURT: You know what I'm going to do, I am going to change one thing because I hadn't thought of that and certainly that possibility. So I'm going to change a couple of things.

I'm going to give you 60 days to get these other people because I was thinking that if there -- I can just see obviously the creditors don't trust the debtor at all, the principals, so I'm going to -- I am going to change that. I had -- it hadn't dawned on me that you would no doubt want to do what you've just suggested so I'm going to change that. So I'm going to change from the -- I'm going to -- that the debtor still by the 16th at 3:00. but I'm going to give you until 60 days. So that would be to the -- approximately 60 days -- to August 14 at 3:00 to get the creditors to join and I'm changing that. And I'm going to continue the hearing to the -- or may -- I may -- no, let me. Let me -- I'm going to keep this on, you know, Aug -- or may -- August 14. And then I'm going to change the hearing. And I'm asking my credit -- my staff here to give me the hearing after that.

THE CLERK: We have August 25th at 10:00.

THE COURT: Yeah. I'm going to continue the hearing to August 25 at 10:00. So I -- yeah, I'm going to take into account that just -- it may not be necessary but

you're right. Thirty days is just not a lot of time to give you the opportunity to do discovery, so I'm changing the hearing date to August 25 at 10:00. The -- by August 14 at 3 o'clock you have the -- at that point is the time that you can get any additional creditors and you -- and as far as the discovery you can go -- immediately get the discovery. I assume you want to take the deposition as to just what we're talking about. I hope you don't do any beyond that. It will make it very unnecessarily complicated.

MR. RICHARDS: I will not do that, Your Honor. I (indiscernible) --

THE COURT: The discovery should just be at this point literally --

MR. RICHARDS: I understand declarations.

THE COURT: -- if you take they're either written discovery or do what you want as to tell -- to be able to cross-examine both of them as to -- you know, that's what we're talking about. So, yeah. I think that's only fair and then the -- so the -- I still want that status report one week before the 25th of September and that would be -- no, was it -- no, wait.

It was the 15th of September, wasn't it?

THE CLERK: August 25th was the status --

MR. RICHARDS: August, Your Honor.

THE COURT: Oh, I'm sorry. August. I'm --

THE CLERK: Yeah.

THE COURT: You know, yeah, this has been a very long morning. I apol -- I actually seem to be in the afternoon now. My head is spinning. August 25 at 10:00. So a week before that is August 18, I want that status report. And by that time it seems to me you will have exhausted the -- getting the information from both the principals. And I hope for their sake that don't know -- at least in this Court anyway if I have any suspicion that they're not being truthful, that would be a problem. And I don't have any reason to suspect they won't be and if they are, then it's really up to the creditors and that time is more -- that's more. They've got 60 days to be able to convince other people to join in. But at that point one or two things are going to happen: either they -- you've not been able to convince other people, then I will dismiss it, or you have and then we'll deal with them.

So any questions about the -- any of that? From the debtor's standpoint --

MR. MARTICELLO: Your Honor --

THE COURT: -- you know basically what the debtor has to do.

MR. COHEN: Yes, Your Honor. Baruch Cohen. Clarification question. A clarification question --



MR. MARTICELLO: Your Honor, this is Robert Marticello with --

THE COURT: I want to hear first from the debtor.

Or, Mr. Marticello, what do you want? What's your question?

MR. MARTICELLO: Sure. Your Honor, I would -- I have a couple points, Your Honor. I would ask that the Court not prejudge any request for discovery at this point. We have three creditors that the Court --

THE COURT: Well, let me stop you. I'm not prejudging anything.

MR. MARTICELLO: -- has determined are not eligible.

THE COURT: But I'm telling you right now -- I'm telling -- that's why I was telling the creditors their discovery, as far as I'm concerned, should be limited to just what we're talking about, who the creditors of the debtor are. What are you worried about?

MR. MARTICELLO: I just -- I'm -- Your Honor, the document requests we were served it basically -- the petitioning creditors are trying to litigate their existing pending litigation disputes before this Court.

THE COURT: That's -- that -- let me ask you this.

MR. MARTICELLO: I have three creditors that

aren't even eligible in this case.

THE COURT: As far as the -- taking the depositions for the purpose of this hearing, the creditors you agree I -- for that purpose only because it can get -- I don't want to be here forever and objections to this side and the other thing. Would you simply limit your discovery? You have to amend it to just the -- what we're talking about, just the creditors. I'm not going to allow you at this point --

MR. MARTICELLO: Yes. We will amend --

THE COURT: -- to be litigating the whole thing --

MR. MARTICELLO: We will amend our discovery.

THE COURT: -- because you might if there --

MR. MARTICELLO: Yeah. We will serve --

THE COURT: If we have an order for relief then I have no problem with that. So let me again --

MR. MARTICELLO: Your Honor --

THE COURT: I didn't fully appreciate that, Mr. Marticello.

So from the creditors' standpoint I would like you -- for I will allow discovery, but why don't you redo the -- why don't you do discovery requests?

MR. RICHARDS: We will, Your Honor. We will --

THE COURT: Limit it just to --

MR. RICHARDS: We thought our current discovery is for other creditors and (indiscernible). We will amend it.

THE COURT: Just to the -- what we're talking about. Just to who all the creditors are and contact information and briefly, very short, you know, as Mister -- Mark Twain was supposed to have said, "If I had more time I would have written you a shorter letter." Keep it brief.

MR. RICHARDS: Right. And, Your Honor, and in the depositions we will stick to those areas as well.

THE COURT: Just to that, that may --

MR. RICHARDS: We will not go into the other areas.

THE COURT: I know that plenty of you want to know where the stuff is. You want to know all kinds of stuff or where the transfer -- whatever. For these purposes I just -- I'm going to limit your discovery to just the very simple questions of what they're going to have to do by the -- by a week from today, in any case. But you certainly can probe further if you wish and they may -- I assume they'll give you the same answers. But, yes, it's just limited. That discovery is just to the -- so redo your discovery just to basically ask him. And as I said, as a practical matter if they comply with my order they will have already answered you but you certainly have

a right to do your own investigations and then under oath, of course, to cross-examine them, you know, at the -- you know, or not cross-examine them. Examine them at your deposition.

So from the creditors' standpoint you now understand --

MR. RICHARDS: Your Honor, we'll --

THE COURT: -- you're going to redo --

MR. RICHARDS: We're going to send out the dep --

THE COURT: -- your discovery?

MR. RICHARDS: Yeah. We're going to send out deposition notices today with a document production related to who the creditors are and documents that will identify the creditors and then we'll see how they respond. I think you're assuming that they're going to participate in this case. Let's just see what happens. We'll follow --

THE COURT: Well, again, I told you, by the way --

MR. RICHARDS: -- the Court's (indiscernible) order.

THE COURT: I know that there are criminal -- there are other charges and so there's a lot of stuff going on. I have no opinion. I know what happened in the state court, but I have no opinion as to the ultimate outcome. But I tell you this, if either -- or they both must comply



and I make it quite clear. If they don't comply with the request, whether it's Fifth Amendment or whatever, then I will enter the order for relief.

Is it the debt -- from the debtor's standpoint, do you understand that? Mr. Marticello, do you understand that?

MR. MARTICELLO: Your Honor, this is Robert Marticello for the debtor. I understand the Court's -- what the Court just said and I will comply with the Court's order. My concern is, Your Honor, like you said there are other things going on and --

THE COURT: No, I understand that. But, no, I'm telling you --

MR. MARTICELLO: -- if there is a -- if there's a --

THE COURT: -- this is really simple and I can't -- I'm not -- I -- people have a right to the -- you know, to take the Fifth and I -- again, whether they do or not I have no idea. But I'm telling you right now the creditors have a right to this information. If they refuse, either of them, I want both of them to sign it because it's not clear to me exactly who's really running the business. My guess is that maybe the husband is but I don't know that, just from the various pleadings. I don't really know.

So there -- therefore, I am requiring both to sign under penalty of perjury. And if nei -- and if they don't both sign it under penalty of perjury, then I will enter an order for relief. I just want you -- you -- I want you in particular and your clients, the debtor, the principals, to understand that. You do -- you understand what I've said. I want them to understand it. That would be the price for not complying with my order. You --

MR. MARTICELLO: I understand, Your Honor.

THE COURT: Mr. Marticello, you understand what I've said obviously. I'm not being facetious. You understand.

And so any --

MR. MARTICELLO: Correct, Your Honor.

THE COURT: Any other questions? This is going to be a long -- this is important, but I think I've given the debtor a fair opportunity. I've agreed as far as their argu -- your arguments as far as these particular creditors, at least not in being -- not that they're claims are not allowed, but that they're just obviously for various reasons that I've stated on the record are not eligible to be petitioning creditors. And you also know the obligation a week from today at 3:00 that for your -- both the principals to do what I've suggested, right?

MR. COHEN: Your Honor, this is Baruch Cohen. I

BENHYATT
Certified Deposition Reporters

have a clarification question.

THE COURT: All right. Briefly. What is it?

MR. COHEN: Briefly. Number one, when we conduct discovery of the principals of the debtor we are allowed to ask them whether there's a dispute as to the amount (indiscernible).

THE COURT: Okay.

MR. COHEN: Not just merely --

THE COURT: Okay. You know that's a good question. I hadn't thought of that and that's why I enjoy these discussions. Yes. I think at that point that's a -- yeah, because that -- what I anticipate is if they list them -- somebody and then they're li -- then you get them to file -- and remember I mentioned that briefly -- and then you get them to sign up being petitioning creditors and then they'll object as -- yes. I think that's a -- that is in -- a fair question to -- they list all of the creditors, period, and then -- that's a very good point. And then to say as to this one are -- is there any dispute either amount or liability and, if so, what is that? Yes. I'll allow that.

MR. MARTICELLO: Your Honor, this is Robert Marticello for the debtor. And you're talking about the creditors -- other creditors on this list, not the petitioning creditors, correct?

THE COURT: Oh, yes. Oh, yeah. Oh, yes, absolute -- no, we're only talking about the additional one. We're not -- we've already gone -- there's nothing new about these three.

MR. MARTICELLO: Understood, Your Honor.

THE COURT: But that's a good point. That will eliminate -- at least it will tee up any particular problems that maybe they're in dispute or not. I think that's a very good point.

Yeah. No, we're only talking -- not -- I'm not talking about these three petitioning creditors. We're talking about the additional ones that they -- that is a list as their other creditors.

So, thank you, Mr. Cohen. That's a very good point.

Anything else?

MR. COHEN: Actually, my counterpoint to that is it's important that the debtors do describe under penalty of perjury why they dispute our client's claim.

THE COURT: No, no, no, no.

MR. COHEN: Why should our three clients --

THE COURT: I've already ruled it.

MR. COHEN: -- be excluded?

THE COURT: I've ruled on it. No. Stop.

MR. COHEN: Okay. Second point. Your Honor,

quickly, second point. To what extent can the Court instruct this debtor and the principals not to engage in funny business by interfering with creditors right now and communicating with them and trying to get them to sign off on claims?

THE COURT: Well, I don't see that that's -- you can talk to them. They can talk to them. I don't see any problem with that. Now, there are criminal laws. They can't threaten them. They can't -- I think that -- I don't see any provision of the law.

Now, the fact of the matter is if these other creditors -- as I told you before, the date of the petition is the time. So even if they were to -- so, you know, they could offer to pay them but, no, I -- you can talk to them. I don't see any reason why the debtor can't talk to them unless there's no threats. So, no, I don't see any reason at all.

So, anyway, any other questions?

MR. COHEN: All right, Your Honor. Thank you very much for your time today.

THE COURT: What's that?

MR. COHEN: No questions.

MR. MARTICELLO: Your Honor, Robert Marticello for the debtor. One question, just to make sure we're clear. Any joinder needs to be filed with the Court by

that 3:00 p.m. deadline on August 14th, is that correct?

THE COURT: That's correct.

MR. MARTICELLO: Thank you, Your Honor.

THE COURT: And at that point, if there's -- if we don't -- and again, one will be sufficient if there are fewer than 12, but I have no idea. I gather there are more than 12. I don't know because I don't think that was ever mentioned in the pleadings. But there's -- if it's li -- if there are -- it could be one, if there are very few creditors but if there are 12 or more then obviously there would be three and that will be it. At that point you either have them or they're not. So I have no idea. I have no idea how many other creditors there are out there from the debtor. These are obviously probably the biggest -- well, not probably, I don't know that, but certainly three big creditors as far as amount.

Anything else? I hate to suggest it. Anything else?

(Laughter.)

MR. MARTICELLO: No, Your Honor.

THE COURT: Okay. It's a very bright group of people. But, you know what, there's some good points that have been made and I think this is fair. Again, obviously the creditors don't agree with it, but as I was saying, it's absolutely clear to me on the documents as far as that



I can take judicial notice of that there is a dispute as to the amount and/or -- subject to dispute.

But as far as this other, I think giving the creditors the 60 days to search out other people and the discovery, at the end of the day I think everybody will have their fair day in court and then I will find out with your status report filed -- what did I say, one week before the -- that's by the 18th --

MR. MARTICELLO: Yes, your Honor.

THE COURT: -- of August that I'll know what's going on in this case. So anyway, it's been interesting.

MR. RICHARDS: Your Honor, Ronald Richards.

THE COURT: And that will conclude this hearing. I'll see you all at the --

MR. RICHARDS: King Solomon couldn't have done better himself today.

THE COURT: By the way, one thing I did not mention that after all of this because it was -- it was extended 30 days. We had a judge's meeting on Friday and as to when we're going to open up. That -- this hearing, by the way, on the 25th is going to be here in court unless some -- something happens that will prevent me from doing that due to who knows what, but we fully intend to be operational of -- subject to each judge. But I don't like these hearings at all. I like seeing people and see -- you

seeing me, I seeing you. So if -- for me anyway this hearing, by the way, is going to be in court unless you are notified a couple of wee -- about two weeks before that something has come up and it won't be, so I want you to understand that. This will be an in-court, real hearing.

MR. COHEN: Will it be an evidentiary hearing, Your Honor?

THE COURT: No. No, no, no, no. This is a status hearing, not an -- no, the only --

MR. COHEN: Well, the status conference.

THE COURT: The -- it's as I said you're -- either we will have three petitioning creditors, assuming there are 12 or more, or we won't. If we don't, then I'm going to dismiss the petition and no doubt the other -- then it will be a status conference and no doubt the other side will be asking for fees. No, there's nothing to be in an evidentiary hearing about. It's basically a status. If there are three then I'll have to see whether or not there's an objection to them as being in dispute and the creditors will know that at least because they'll be asking that question and I'm glad you clarified that and I will -- as far as discovery. So, no, there's no -- there will not be an evidentiary hearing.

MR. COHEN: Understood.

THE COURT: Okay. Thank you. We've worn



everybody out, including me.

MR. RICHARDS: All right. Thank you, Your Honor. You missed my -- when I said King Solomon couldn't have done better himself today.

THE COURT: Well, we had an equally interesting one in the morning which you didn't have to participate in. So, in any case, it's a fascinating case and I'll see you back August 25 -- excuse me. Yeah, August 25 at 10:00. But these orders, even though you don't have it in writing at the moment, consider those -- those are the order of the Court. We'll eventually get a written order but you have all of the dates and so forth and we'll see how it turns out. So I'll see you back on the 25th at 10:00. Anyway, that concludes this hearing. Thank you very much.

ATTORNEYS: Thank you, Your Honor.

THE COURT: Thank you.

(End at 1:03 p.m.)

* * * * * * * *

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

______________________________ Date: 6/12/2020

RUTH ANN HAGER, C.E.T.**D-641

BENHYATT
Certified Deposition Reporters

# EXHIBIT "2"

FILED & ENTERED

JUN 10 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re:

Jadelle Jewelry and Diamonds LLC,

Debtor(s).

Case No.: 2:20-bk-13530-BR

Chapter 7

**ORDER:**

**(1) DIRECTING RACHEL RECHNITZ AND JONA RECHNITZ TO FILE JOINT DECLARATION UNDER PENALTY OF PERJURY;**

**(2) SETTING DATE BY WHICH PETITIONING CREDITORS MAY CONTACT CREDITORS IDENTIFIED IN JOINT DECLARATION AND CONDUCT CERTAIN DISCOVERY;**

**(3) SETTING DATE FOR HEARING ON STATUS CONFERENCE; AND**

**(4) SETTING DATE FOR FILING OF JOINT STATUS REPORT PRIOR TO STATUS CONFERENCE**

Date: June 9, 2020
Time: 10:00 a.m.
Courtroom: 1668

The Court held a hearing on June 9, 2020 on the following two motions: the "Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs and Damages" ("Motion to Dismiss"), filed by the debtor on May 1, 2020, and the "Petitioning Creditors' Notice of Motion and Motion for Appointment of Interim Chapter 7 Trustee" ("Trustee Appointment Motion") filed on May 19, 2020 by petitioning creditors Victor Franco Noval, Peter Marco, LLC and First International Diamond, Inc.

Robert S. Marticello, Esq. of Smiley, Wang-Ekvall, LLP appeared on behalf of the debtor. Ronald Richards of the Law Firm of Ronald L. Richards & Associates, APC, Baruch C. Cohen, APLC and Daniel A. Lev, Esq. of SulmeyerKupetz, A Professional Corporation, appeared on behalf of the petitioning creditors.

With respect to the debtor's Motion to Dismiss, the Court considered the Motion, the petitioning creditors' Opposition to the Motion, the debtor's Reply to the petitioning creditors' Opposition, and all pleadings related to the Motion, Opposition and Reply.

With respect to the petitioning creditors' Trustee Appointment Motion, the Court considered the Motion and all related pleadings including the separately filed declarations of Ronald Richards, Oved Anter, Victor Franco Noval, and Peter Marco, the debtor's Opposition to the Motion, the petitioning creditors' Reply to the debtor's Opposition, and all other pleadings related to the Motion, Opposition and Reply.

The Court also considered the debtor's separately filed declarations of Levin Prado and Marc Williams in Opposition to the Trustee Appointment Motion, the debtor's evidentiary objections to the declarations of Oved Anter, Victor Franco Noval, Peter Marco and Ronald Richards, the petitioning creditors' evidentiary objections to the debtor's Request for Judicial Notice, and all other pleadings related to the Motion, Opposition and Reply.

At the June 9 hearing, the Court ruled on the record on all of the evidentiary objections and heard argument and representations of counsel. After consideration of all of the above, the Court **HEREBY ORDERS AS FOLLOWS**:

1. Rachel Rechnitz and Jona Rechnitz (collectively, the "Rechnitz's") must file a joint declaration, sworn under penalty of perjury, which identifies each and every one of the debtor's creditors as of the date of the filing of the involuntary petition on April 6, 2020. The joint declaration shall include, without limitation, the following information with respect to each creditor identified therein:
    a. the name of the creditor;
    b. the nature of the debt owed to the creditor (*e.g.*, consigned jewelry, rent due and owing, etc.);
    c. the amount of the creditor's claim;
    d. whether the creditor's claim is disputed and, if so, the nature of the dispute; and
    e. complete contact information for each creditor including, but not limited to, the creditor's address, telephone number, cell phone number (if known), fax number (if applicable), and email address (if known);
2. The Rechnitz's shall have seven (7) days from the date of this hearing (*i.e.,* no later than 3:00 p.m. on Tuesday, June 16, 2020) to file their joint declaration with the Court and serve the declaration on counsel for the petitioning creditors;
3. If the Rechnitz's fail to file the joint declaration by that date and time, the Court will deny the debtor's Motion to Dismiss and immediately enter an order

for relief in this case. The entry of such an order for relief will render both the pending Motion to Dismiss and Trustee Appointment Motion moot;

4. If the Rechnitz's file the joint declaration by the required date and time, then:
   a. The petitioning creditors shall have sixty (60) days from the date of this hearing (*i.e.*, no later than 3:00 p.m. on August 14, 2020) to contact the creditors listed in the joint declaration to determine if any of them are willing to join in the involuntary petition;
   b. The petitioning creditors shall have the same sixty (60) day period within which to conduct discovery of the creditors listed in the joint declaration, which discovery shall be limited solely to questions regarding the nature and amount of the creditor's claim and, if the creditor's claim is listed in the joint declaration as disputed, the nature of such dispute;
   c. The Court shall hold a status conference on this involuntary case on August 25, 2020 at 10:00 a.m., and
   d. The parties shall file a joint status report seven (7) days prior to the status conference (*i.e.*, no later than 3:00 p.m. on August 18, 2020).

**IT IS SO ORDERED.**

**###**

Date: June 10, 2020

Barry Russell
United States Bankruptcy Judge

# EXHIBIT "3"

Baruch C. Cohen, Esq. (SBN 159455)
**LAW OFFICE OF BARUCH C. COHEN**
A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501 Fax (888) 316-6107
e-mail: baruchcohen@baruchcohenesq.com

*Attorney for Defendants/Third-Party Plaintiffs PETER VOUTSAS aka PETER MARCO aka PETER VOUTSAS, aka PETER MARCO EXTRAORDINARY JEWELS OF BEVERLY HILLS, dba PETER MARCO LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

DAVID ROVINSKY LLC, a Delaware limited liability company,

Plaintiff,

PETER VOUTSAS aka PETER MARCO aka PETER VOUTSAS, aka PETER MARCO EXTRAORDINARY JEWELS OF BEVERLY HILLS, dba PETER MARCO LLC,

Defendants/Third-Party Plaintiffs,

vs.

JONA S. RECHNITZ, an individual; RACHEL RECHNITZ, an individual; LEVIN PRADO aka LEVON PRADO, an individual,

Third-Party Defendants.

USDC # 2:20-cv-02580-ODW-AS

Hon. Otis D. Wright II

**SUPPLEMENTAL DECLARATION OF BARUCH C. COHEN REGARDING THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS**

[*Concurrently filed with Request for Judicial Notice*]

Date: [Taken off Calendar]
Time:
Courtroom: 5D

Third-Party Plaintiffs PETER VOUTSAS aka PETER MARCO aka PETER VOUTSAS, aka PETER MARCO EXTRAORDINARY JEWELS OF BEVERLY HILLS, dba PETER MARCO LLC ("Marco"), hereby submit a *Supplemental Declaration of Baruch C. Cohen Regarding Third-party Plaintiffs' Third-party Defendants' Motion for Stay of Proceedings*.

On 6-2-2020, this Court vacated the 6-15-2020 hearing on Rechnitz's *Motion to Stay*, and the matter is submitted.

On 6-9-2020, this Court denied Rechnitz's *ex Parte Application for an Order Permitting Submission for in Camera Review, Declaration of Counsel Providing Information to the Court Relating to the Ongoing Criminal Investigation (*"Ex Parte*")*[Doc-57] *Regarding the Motion for Stay of Proceedings* ("Motion") finding that the application does not warrant in camera review.

As to whether this court should stay this proceeding, Marco wishes to advise and update this Court that on 6-10-2020, in the Jadelle involuntary bankruptcy proceeding, Case # 2:20-bk-13530-BR United States Bankruptcy Judge Barry Russell, issued an *Order Directing Rachel Rechnitz and Jona Rechnitz to File Joint Declaration under Penalty of Perjury* [Doc-39] ordered the following:

1. Rachel Rechnitz and Jona Rechnitz (collectively, the "Rechnitz's") must file a file a joint declaration, sworn under penalty of perjury, which identifies each and every one of the debtor's creditors as of the date of the filing of the involuntary petition on April 6, 2020. The joint declaration shall include, without limitation, the following information with respect to each creditor identified therein:
    a. the name of the creditor;
    b. the nature of the debt owed to the creditor (e.g., consigned jewelry, rent due and owing, etc.);
    c. the amount of the creditor's claim;
    d. whether the creditor's claim is disputed and, if so, the nature of the dispute; and
    e. complete contact information for each creditor including, but not limited to, the creditor's address, telephone number, cell phone number (if known), fax number (if applicable), and email address (if known);

2. The Rechnitz's shall have seven (7) days from the date of this hearing (i.e., no later than 3:00 p.m. on Tuesday, June 16, 2020) to file their joint declaration with the Court and serve the declaration on counsel for the petitioning creditors;

3. If the Rechnitz's fail to file the joint declaration by that date and time, the Court will deny the debtor's Motion to Dismiss and immediately enter an order for relief in this case. The entry of such an order for relief will render both the pending Motion to Dismiss and Trustee Appointment Motion moot;

4. If the Rechnitz's file the joint declaration by the required date and time, then:

   a. The petitioning creditors shall have sixty (60) days from the date of this hearing (i.e., no later than 3:00 p.m. on August 14, 2020) to contact the creditors listed in the joint declaration to determine if any of them are willing to join in the involuntary petition;

   b. The petitioning creditors shall have the same sixty (60) day period within which to conduct discovery of the creditors listed in the joint declaration, which discovery shall be limited solely to questions regarding the nature and amount of the creditor's claim and, if the creditor's claim is listed in the joint declaration as disputed, the nature of such dispute.[1]

The point being, is that by filing their Joint Declarations sworn under penalty of perjury regarding their defrauded creditors (like Marco), and their having to be deposed by Petitioning Creditors re same. Rechnitz will *de facto*, have to ***waive*** their

---

[1]A true and correct copy of United States Bankruptcy Court Judge Barry Russell's 6-10-2020 *Order: (1) Directing Rachel Rechnitz and Jona Rechnitz to File Joint Declaration under Penalty of Perjury; (2) Setting Date by Which Petitioning Creditors May Contact Creditors Identified in Joint Declaration and Conduct Certain Discovery; (3) Setting Date for Hearing on Status Conference; and (4) Setting Date for Filing of Joint Status Report Prior to Status Conference* [Doc-39] is attached hereto as Exhibit "1" and is incorporated herein by this reference. See, Declaration of Baruch C. Cohen, and Request for Judicial Notice.

Case 2:20-cv-02580-ODW-AS Document 61 Filed 06/11/20 Page 4 of 11 Page ID #:747

Fifth amendment rights against self-incrimination from criminal liability that they fear in this Motion. If indeed, Rechnitz complies with Judge Russell's Order, this Motion for Stay would be moot.

DATED: June 11, 2020

LAW OFFICE OF BARUCH C. COHEN
A Professional Law Corporation

By /S/ Baruch C. Cohen
Baruch C. Cohen, Esq.
*Attorney for Defendants/Third-Party Plaintiffs PETER VOUTSAS aka PETER MARCO aka PETER VOUTSAS, aka PETER MARCO EXTRAORDINARY JEWELS OF BEVERLY HILLS, dba PETER MARCO LLC*

**SUPPLEMENTAL DECLARATION OF BARUCH C. COHEN REGARDING THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS**

6/11-2:58pm

-4-

EXHIBIT "3", PAGE 105

## SUPPLEMENTAL DECLARATION OF BARUCH COHEN

I, BARUCH C. COHEN, declare and state as follows:

1. The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2. I am a member in good standing and eligible to practice before the following courts: California State Supreme Court; United States Court of Appeals - Ninth Circuit; Bankruptcy Appellate Panel; United States District Courts: Central District of California; Eastern District of California; Northern District of California; and Southern District of California.

3. I am the principal shareholder and President of The Law Office of Baruch C. Cohen, a Professional Law Corporation, located at 4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

4. I proudly represent Defendants/Third-Party Plaintiffs PETER VOUTSAS aka PETER MARCO aka PETER VOUTSAS, aka PETER MARCO EXTRAORDINARY JEWELS OF  BEVERLY HILLS, dba PETER MARCO LLC.

5. This Supplemental Declaration is in support of **THIRD-PARTY PLAINTIFFS' OPPOSITION TO THIRD-PARTY DEFENDANTS' THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS.**

6. A true and correct copy of United States Bankruptcy Court Judge Barry Russell's 6-10-2020 *Order: (1) Directing Rachel Rechnitz and Jona Rechnitz to File Joint Declaration under Penalty of Perjury; (2) Setting Date by Which Petitioning Creditors May Contact Creditors Identified in Joint Declaration and Conduct Certain Discovery; (3) Setting Date for Hearing on Status Conference; and (4) Setting Date for Filing of Joint Status Report Prior to*

*Status Conference* [Doc-39] is attached hereto as Exhibit "1" and is incorporated herein by this reference.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed June 11, 2020, at Los Angeles, California.

By /s/ Baruch C. Cohen
Baruch C. Cohen

SUPPLEMENTAL DECLARATION OF BARUCH C. COHEN REGARDING THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS

-6-

6/11-2:58pm

EXHIBIT "3", PAGE 107



FILED & ENTERED
JUN 10 2020
CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re:

Jadelle Jewelry and Diamonds LLC,

Debtor(s).

Case No.: 2:20-bk-13530-BR

Chapter 7

**ORDER:**

**(1) DIRECTING RACHEL RECHNITZ AND JONA RECHNITZ TO FILE JOINT DECLARATION UNDER PENALTY OF PERJURY;**

**(2) SETTING DATE BY WHICH PETITIONING CREDITORS MAY CONTACT CREDITORS IDENTIFIED IN JOINT DECLARATION AND CONDUCT CERTAIN DISCOVERY;**

**(3) SETTING DATE FOR HEARING ON STATUS CONFERENCE; AND**

**(4) SETTING DATE FOR FILING OF JOINT STATUS REPORT PRIOR TO STATUS CONFERENCE**

Date: June 9, 2020
Time: 10:00 a.m.
Courtroom: 1668

The Court held a hearing on June 9, 2020 on the following two motions: the "Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs and Damages" ("Motion to Dismiss"), filed by the debtor on May 1, 2020, and the "Petitioning Creditors' Notice of Motion and Motion for Appointment of Interim Chapter 7 Trustee" ("Trustee Appointment Motion") filed on May 19, 2020 by petitioning creditors Victor Franco Noval, Peter Marco, LLC and First International Diamond, Inc.

Robert S. Marticello, Esq. of Smiley, Wang-Ekvall, LLP appeared on behalf of the debtor. Ronald Richards of the Law Firm of Ronald L. Richards & Associates, APC, Baruch C. Cohen, APLC and Daniel A. Lev, Esq. of SulmeyerKupetz, A Professional Corporation, appeared on behalf of the petitioning creditors.

With respect to the debtor's Motion to Dismiss, the Court considered the Motion, the petitioning creditors' Opposition to the Motion, the debtor's Reply to the petitioning creditors' Opposition, and all pleadings related to the Motion, Opposition and Reply.

With respect to the petitioning creditors' Trustee Appointment Motion, the Court considered the Motion and all related pleadings including the separately filed declarations of Ronald Richards, Oved Anter, Victor Franco Noval, and Peter Marco, the debtor's Opposition to the Motion, the petitioning creditors' Reply to the debtor's Opposition, and all other pleadings related to the Motion, Opposition and Reply.

The Court also considered the debtor's separately filed declarations of Levin Prado and Marc Williams in Opposition to the Trustee Appointment Motion, the debtor's evidentiary objections to the declarations of Oved Anter, Victor Franco Noval, Peter Marco and Ronald Richards, the petitioning creditors' evidentiary objections to the debtor's Request for Judicial Notice, and all other pleadings related to the Motion, Opposition and Reply.

At the June 9 hearing, the Court ruled on the record on all of the evidentiary objections and heard argument and representations of counsel. After consideration of all of the above, the Court **HEREBY ORDERS AS FOLLOWS**:

1. Rachel Rechnitz and Jona Rechnitz (collectively, the "Rechnitz's") must file a joint declaration, sworn under penalty of perjury, which identifies each and every one of the debtor's creditors as of the date of the filing of the involuntary petition on April 6, 2020. The joint declaration shall include, without limitation, the following information with respect to each creditor identified therein:
    a. the name of the creditor;
    b. the nature of the debt owed to the creditor (*e.g.*, consigned jewelry, rent due and owing, etc.);
    c. the amount of the creditor's claim;
    d. whether the creditor's claim is disputed and, if so, the nature of the dispute; and
    e. complete contact information for each creditor including, but not limited to, the creditor's address, telephone number, cell phone number (if known), fax number (if applicable), and email address (if known);
2. The Rechnitz's shall have seven (7) days from the date of this hearing (*i.e.,* no later than 3:00 p.m. on Tuesday, June 16, 2020) to file their joint declaration with the Court and serve the declaration on counsel for the petitioning creditors;
3. If the Rechnitz's fail to file the joint declaration by that date and time, the Court will deny the debtor's Motion to Dismiss and immediately enter an order

for relief in this case. The entry of such an order for relief will render both the pending Motion to Dismiss and Trustee Appointment Motion moot;

4. If the Rechnitz's file the joint declaration by the required date and time, then:
   a. The petitioning creditors shall have sixty (60) days from the date of this hearing (*i.e.*, no later than 3:00 p.m. on August 14, 2020) to contact the creditors listed in the joint declaration to determine if any of them are willing to join in the involuntary petition;
   b. The petitioning creditors shall have the same sixty (60) day period within which to conduct discovery of the creditors listed in the joint declaration, which discovery shall be limited solely to questions regarding the nature and amount of the creditor's claim and, if the creditor's claim is listed in the joint declaration as disputed, the nature of such dispute;
   c. The Court shall hold a status conference on this involuntary case on August 25, 2020 at 10:00 a.m., and
   d. The parties shall file a joint status report seven (7) days prior to the status conference (*i.e.*, no later than 3:00 p.m. on August 18, 2020).

**IT IS SO ORDERED.**

**###**

Date: June 10, 2020

Barry Russell
United States Bankruptcy Judge

# CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States and I am a resident and employed in Los Angeles, California; that my business address is 4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010; that I am over the age of 18 and not a party to the above-entitled action.

I am employed by a member of the United States District Court for the Central District of California, and at whose direction I caused service of the foregoing document entitled **SUPPLEMENTAL DECLARATION OF BARUCH C. COHEN REGARDING THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS** on all interested parties in this action by the method indicated below at the address stated below:

Marc S. Williams, Esq.
Cohen Williams, LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Email: mwilliams@cohen-williams.com
*Attorney for Third-Party Defendants Jona S. & Rachel Rechnitz*

**[X]** **BY ELECTRONIC TRANSMISSION**: by electronically filing the foregoing with the Clerk of the District Court using its CM/ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies all parties in this case. A pdf version of this document was also transmitted to counsel via electronic mail at the mail address indicated above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 11, 2020 at Los Angeles, California.

By: /s/ Baruch C. Cohen
Baruch C. Cohen

# EXHIBIT "4"

**From:** Ronald Richards <ron@ronaldrichards.com>
**Sent:** Thursday, June 11, 2020 5:12 PM
**To:** Robert Marticello
**Cc:** dlev@sulmeyerlaw.com; Baruch Cohen; Morani Stelmach
**Subject:** DEPOSITION NOTICES
**Attachments:** Exhibit _A_ in Support of Subpoena to Testify At Deposition (Jadelle_Jona Rechnitz).pdf; Notice of Deposition of Jona Rechnitz (Jadelle) (002).pdf; Subpoena to Testify At Deposition (Jadelle_Jona Rechnitz).pdf; Subpoena to Testify At Deposition II (Jadelle_Rachel Rechnitz).pdf; Exhibit _A_ in Support of Subpoena to Testify At Deposition II (Jadelle_^.^.pdf; Notice of Deposition of Rachel Rechnitz (Jadelle).pdf

**Importance:** High

Dear Robert,

Please see attached deposition notices. I am assuming you will agree that we don't need to serve a party member and manager for the deposition, or her husband if that is even the case, or a manager of the entity.

Previously, Marc Cohen did not want me to send a legion of process servers to Jona's house in Beverlywood. Out of my high respect for Marc and Reuven, and of course you, I will not send them there this evening. However, I have three standing by for tomorrow night, at exactly 8:05pm to serve these subpoenas, as well as day service. It would very unfortunate if we had any issue at all on this. I am asking you to produce these people that the court ordered their declarations and deposition. There is also a local rule on deposing declarants that is analogous.

I am happy to send them there all night Friday and Saturday all day, and then non stop until they are served even though I do not believe they have to be served as they are making a general appearance per court order. I am sorry for the tone but some people told me that you would not be cooperative and I said Robert has done a great job and is a true professional. He will not advise his members to avoid service or send a message to Judge Russell that they are avoiding a deposition or discovery as contemplated by the Court.

I would think the judge would frown upon any games as to service as stated above. Finally, if they are not going to provide testimony as has been their position in two other cases which officers of the Court represented they would not, that is fine, just let me know the grounds.

I want you to be aware of the below cases based upon previous positions taken by Jona and Rachel. Please review these cases. We believe if you file the declarations the court requested, you have waived any assertion of the 5th Amendment as to the entire subject matter which will be a large swath of questions about the various creditors and Jona and Rachel's credibility is far game and at issue. Therefore, we don't want to waste time on scheduling these if you are going to invoke. If you are not going to invoke, then will be taking two depositions and serving written discovery. We will also need Jona and Rachel's cell phones for a vendor to upload their text message and emails. We will need ESI discovery on Jona's email account so we need to formulate a ESI protocol between our respective offices. Please tell me how you want to do that and please tell Jona and Rachel that any deleted text messages will be met with motion practice for things I will not mention herein. The relevant cases are below.

See Mitchell v. United States, 526 U.S. 314 (1999)("It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details."). The Supreme Court of the United States of America has articulated two discrete explanations why selective waiver of the privilege against self-incrimination is impermissible; Rogers v. United States, 340 U.S. 367, 371, 71 S.Ct.

438, 95 L.Ed. 344 (1951) (discussing 5th Amendment privilege against self-incrimination, the Supreme Court noted that, having waived the privilege, one cannot later assert it: "To uphold a claim of privilege in this case would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony."). It would provide a perverse incentive to dilatory discovery practice if the Court were to allow a party to escape disclosure of documents it has shown to a testifying expert. CP Kelco U.S. Inc., 213 F.R.D. at 179.; Sundance Image Technology, Inc. v. Cone Editions Press, Ltd. (S.D. Cal., Aug. 19, 2005, No. 02CV2258 B (AJB)) 2005 WL 8173278, at *4.; The Fifth Amendment privilege is not self-executing, however, and may be found to have been waived if it is not invoked in a timely manner. Maness v. Meyers, 419 U.S. 449, 465–66 (1975); Rogers v. United States, 340 U.S. 367, 370–71 (1951); Yakus v. United States, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it."); United States ex rel. Vajtauer v. Comm'r of Immigration at Port of New York, 273 U.S. 103, 113 (1927); Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981). A waiver may be found if one agrees to an order commanding one to do the very thing later claimed to be privileged without invoking the privilege at or before the time of the entry of the order. See S.E.C. v. Telexfree, Inc., 164 F. Supp. 3d 187, 192 (D. Mass. 2015); In re Wolf (Bankr. N.D. Ill., May 24, 2018, No. 14 B 27066) 2018 WL 2386813, at *5; An individual may invoke the Fifth Amendment privilege against self-incrimination in any proceeding "whether civil or criminal, formal or informal, including a bankruptcy proceeding." In re Blan, 239 B.R. 385, 392 (Bankr.W.D.Ark.1999) (citations omitted). It is, however, "not self-executing." In re Gi Yeong Nam, 245 B.R. 216, 227 (Bankr.E.D.Pa.2000) (citing Roberts v. United States, 445 U.S. 552, 559, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980)). The privilege may only be relied upon if it is invoked in a proper and timely manner. Roberts, 445 U.S. at 559–60, 100 S.Ct. 1358; see also 3–344 Collier on Bankruptcy ¶ 344.03 (15th ed. 2015) ("[I]t may not properly be invoked, for example, for the first time at a contempt hearing arising out of the refusal to answer."). If the privilege is not timely asserted, it may be deemed waived. See In re Gi Yeong Nam, 245 B.R. at 226–27 (citing Rogers v. United States, 340 U.S. 367, 373, 71 S.Ct. 438, 95 L.Ed. 344 (1951)); To properly invoke the privilege, a party must produce "for the Court's consideration, a meaningful, articulation of the reasons why [responding] would tend to incriminate him." In re Bartlett, 162 B.R. 73, 79 (Bankr.D.N.H.1993) (citations omitted). The claimant need not "establish the threat of incrimination in detail, of course, since such detailed disclosure may negate the very privilege he seeks to assert." In re Blan, 239 B.R. at 392 (citing In re Connelly, 59 B.R. 421, 433 (Bankr.N.D.Ill.1986)). However, the party must at a minimum show that "the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." Marchetti v. United States, 390 U.S. 39, 59, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); see In re Connelly, 59 B.R. at 433. There need not be an active criminal investigation or proceeding in order to assert the privilege. See, e.g., In re Gi Yeong Nam, 245 B.R. at 225–26 (adequate facts were alleged and certain federal and state statutes identified to find it "conceivable that Defendants could be linked with the federal or state crime of aiding and abetting flight to avoid prosecution"); In re Brown, No. 12–50853–can7, 2014 WL 309403, at *2 (Bankr.W.D.Mo. Jan. 28, 2014) (determining the debtor's response to a particular question may result in his admitting to fraud);

As for our call tomorrow, the other things I want to propose and discuss are not in this email so I look forward to seeing you on the call at 930am and I wish you a pleasant evening. We all respect you and your team and the practice we have engaged in thus far.

Sincerely,

Ronald Richards, Esq.
Law Offices of Ronald Richards & Associates, A.P.C.
310-556-1001 Office
310-277-3325 Fax
www.ronaldrichards.com

Mailing Address:
P.O. Box 11480
Beverly Hills, CA 90213

®

**A multi jurisdictional practice with bar admissions on the East and West Coast**

***CONFIDENTIALITY NOTICE*** This electronic mail transmission has been sent by an attorney. This message and any files or text attached to it are intended only for the recipients named above, and contain information that may be confidential or privileged. If you are not an intended recipient, you must not read, copy, use or disclose this communication. Please also notify the sender by replying to this message, and then delete all copies of it from your system. Thank you.

---

THINK GREEN. PLEASE CONSIDER THE ENVIRONMENT BEFORE YOU PRINT THIS MESSAGE. THANK YOU.

**EXHIBIT "A" IN SUPPORT OF SUBPOENA TO JONA RECHNITZ**

**Production of Documents**

**Definitions:**

The following definitions apply herein:

A. The term "Case" shall mean that bankruptcy case styled In re Jadelle Jewelry and Diamonds, LLC, presently pending in the United States Bankruptcy Court, Central District of California, Los Angeles Division, bearing Case No. 2:20-bk-13530-BR, commenced on April 6, 2020.

B. The term "Claim" shall have the meaning ascribed to it in 11 U.S.C. § 101(5).

C. The term "Creditor" shall have the meaning ascribed to it in 11 U.S.C. § 101(10).

D The term "Communications" shall mean any transmission of information from one person or entity to another by mail, facsimile, electronic mail, text message, instant messaging, audio recordings, journals, diaries, logs, or calendars, including (without limitation) any form of memorialization of personal meetings, conferences, telephone conversations, radio, electronic mail, teleconference, etc.

E The term "Debt" shall have the meaning ascribed to it in 11 U.S.C. § 101(12).

G. The term "Involuntary Petition" shall mean that certain involuntary chapter 7 petition styled In re Jadelle Jewelry and Diamonds, LLC, presently pending in the United States Bankruptcy Court, Central District of California, Los Angeles Division, bearing Case No. 2:20-bk-13530-BR.

H. The term "Jadelle" shall mean Jadelle Jewelry and Diamonds, LLC, and any of its respective officers, directors, employees, affiliates, parents, subsidiaries, representatives, agents, attorneys, and all other persons acting or purporting to act on its behalf, including Jona Rechnitz and Rachel Rechnitz.

I. The term "Jona" shall mean Jona Rechnitz, and his representatives, agents, attorneys, and all other persons acting or purporting to act on his behalf.

J. The term "Petition Date" shall mean April 6, 2020, the date the Involuntary Petition was filed.

K. The term "Rachel" shall mean Rachel Rechnitz, and her representatives, agents, attorneys, and all other persons acting or purporting to act on her behalf.

L. The terms "and" or "or" or "and/or" shall be construed either disjunctively or conjunctively or both, as necessary, to bring within the scope of any request for responses which might otherwise be construed to be outside the scope.

M. The term "Contact Information" shall mean information upon which a person or entity may be reached via mail, telephone, facsimile, e-mail or in person or any other medium that is reasonable, and shall include without limitation, present and last known address(es), phone number(s), facsimile number(s), and e- mail address(es).

N. The terms "Document" or "Documents" shall mean and includes any medium, including without limitation, writings, drawings, graphs, charts, photographs, audio and video recordings, computerized records, such as e-mails, microfilm, microfiche, data compilations, upon which intelligence or information can be recorded, maintained or retrieved, including without limitation, the original or a copy thereof, regardless of the origin and location, of any writing or recording of any type or description, however produced or reproduced, which is in your or your representatives' possession, custody or control, or to which you have or had access, or of which you have knowledge or which you have a right or privilege to examine upon request or demand, and includes any and all writings and recordings as the term is used in Rule 1001(1) of the Federal Rules of Evidence and includes the original (or a copy if the original is not available) and any nonidentical copies (whether different from the original because of notes made on the copy or otherwise).

O. The terms "relate to", "refer to", "evidence", "concern", "pertain to" and "pertaining to" shall mean mentioning, discussing, including, summarizing, describing, reflecting, containing, referring to, relating to, depicting, connected with, embodying, evidencing, constituting, concerning, reporting, purporting or involving an act, occurrence, event, transaction, fact, thing, or course of dealing.

P. The term "you" or "your" shall mean and includes Jadelle. The term "Jadelle" shall be used interchangeably with the terms "you" or "your".

Q. The singular form of a word should be interpreted as plural and the plural should be interpreted as singular to give the word or words the broadest possible meaning.

R. The masculine gender of any word shall be construed to include the masculine, feminine, and neuter gender.

**<u>Requested Documents</u>:**

1. All Documents regarding any Debt owed by Jadelle to a Creditor as of the Petition Date, including, without limitation, Documents evidencing (i) the identity of the Creditor, including Contact Information, (ii) the amount of the Debt, (iii) the basis for the Debt, (iv) the date the Debt was incurred, (v) the account or reference number of the Debt, and (vi) the nature, priority, and validity of the Debt.

2. All Documents regarding any Claim of a Creditor against Jadelle as of the Petition Date, including, without limitation, Documents evidencing (i) the identity of the Creditor, including Contact Information, (ii) the amount of the Claim, (iii) the basis for the Claim, (iv) the date the Claim was incurred, (v) the account or reference number of the Claim, and (vi) the nature, priority, and validity of the Claim.

3. All Documents you contend support your contention that there is a bona fide dispute regarding the amount or liability of any Debt owed by Jadelle to a Creditor as of the Petition Date.

4. All Documents you contend support your contention that there is a bona fide dispute regarding the amount or liability of any Claim of a Creditor against Jadelle as of the Petition Date.

5. All Documents referencing any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, regarding the nature, amount, and validity of any Debt owed by Jadelle to a Creditor as of the Petition Date.

6. All Documents referencing any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, regarding the nature, amount, and validity of any Claim of a Creditor against Jadelle as of the Petition Date.

7. All Documents referencing the post-Petition Date payment of any portion of a Debt owed by Jadelle to a Creditor as of the Petition Date made by Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf.

8. All Documents referencing the post-Petition Date payment of any portion of a Claim of a Creditor against Jadelle as of the Petition Date made by Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf.

## Topics of Examination

1. The nature, amount, and validity of any Debt owed by Jadelle to a Creditor as of the Petition Date, including, without limitation, (i) the identity of the Creditor, including Contact Information, (ii) the amount of the Debt, (iii) the basis for the Debt, (iv) the date the Debt was incurred, (v) the account or reference number of the Debt, and (vi) the nature, priority, and validity of the Debt.

2. Any Documents which support the nature, amount, and validity of any Debt owed by Jadelle to a Creditor as of the Petition Date.

3. Any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, regarding the nature, amount, and validity of any Debt owed by Jadelle to a Creditor as of the Petition Date.

4. Any Documents which support your contention that there is a bona fide dispute regarding the amount or liability of any Debt owed by Jadelle to a Creditor as of the Petition Date.

5. Any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, supporting Jadelle, Rachel, or Jona's contention that there is a bona fide dispute regarding the amount or liability of any Debt owed by Jadelle to a Creditor as of the Petition Date.

6.      Any Documents referencing the post-Petition Date payment of any portion of a Debt owed by Jadelle to a Creditor as of the Petition Date made by Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf.

7.      Any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, referencing the post-Petition Date payment of any portion of a Debt owed by Jadelle to a Creditor as of the Petition Date made by Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf.

8.      The nature, amount, and validity of any Claim of a Creditor against Jadelle as of the Petition Date, including, without limitation, (i) the identity of the Creditor, including Contact Information, (ii) the amount of the Claim, (iii) the basis for the Claim, (iv) the date the Claim was incurred, (v) the account or reference number of the Claim and (vi) the nature, priority, and validity of the Claim.

9.      Any Documents which support the nature, amount, and validity of any Claim of a Creditor against Jadelle as of the Petition Date.

10.     Any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, regarding the nature, amount, and validity of any Claim of a Creditor against Jadelle as of the Petition Date.

11.     Any Documents which support your contention that there is a bona fide dispute regarding the amount or liability of any Claim of a Creditor against Jadelle as of the Petition Date.

12.     Any Communications between Jadelle, Rachel, Jona, or  any person acting, or purporting to act, on their respective behalf, supporting Jadelle, Rachel, or Jona's contention that there is a bona fide dispute regarding the amount or liability of any Claim of a Creditor against Jadelle as of the Petition Date.

13.     Any Documents referencing the post-Petition Date payment of any portion of a Claim of a Creditor against Jadelle as of the Petition Date made by Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf.

14.     Any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, referencing the post-Petition Date payment of any portion of a Claim of a Creditor against Jadelle as of the Petition Date made by Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf.

Daniel A. Lev (CA Bar No. 129622)
dlev@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for Petitioning Creditors

Ronald Richards (CA Bar No. 176246)
ron@ronaldrichards.com
Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
Beverly Hills, California 90213
Telephone: 310.556.1001
Facsimile: 310.277.3325

Attorneys for Victor Franco Noval

Baruch C. Cohen (CA Bar No. 159455)
baruchcohen@baruchcohenesq.com
Law Office of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
Telephone: 323.937.4501
Facsimile: 888.316.6107

Attorneys for Peter Marco, LLC and First International Diamond, Inc.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

In re

JADELLE JEWELRY AND DIAMONDS, LLC,

Alleged Debtor.

Case No. 2:20-bk-13530-BR

Chapter 7

**NOTICE OF SUBPOENA TO APPEAR AT DEPOSITION SERVED ON JONA RECHNITZ**

**DEPOSITION OF JONA RECHNITZ:**

DATE: June 25, 2020
TIME: 10:00 a.m.
PLACE: 333 South Grand Avenue
Suite 3400
Los Angeles, CA 90071

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

| |
|---|
| VICTOR FRANCO NOVAL; PETER MARCO, LLC; and FIRST INTERNATIONAL DIAMOND, INC.,<br><br>Petitioning Creditors,<br><br>vs.<br><br>JADELLE JEWELRY AND DIAMONDS, LLC,<br><br>Alleged Debtor. |

**TO THE ALLEGED DEBTOR, JONA RECHNITZ, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Rule 45 of the Federal Rules of Civil Procedure (made applicable to this bankruptcy case pursuant to Rule 9016 of the Federal Rules of Bankruptcy Procedure), petitioning creditors, Victor Franco Noval ("Noval"), Peter Marco, LLC ("Marco"), and First International Diamond, Inc. ("First International" and together with Noval and Marco, the "Petitioning Creditors"), have caused the "Subpoena to Appear and Testify at a Deposition in a Bankruptcy Case (or Adversary Proceeding)" (the "Subpoena"), to be issued and served upon Jona Rechnitz (the "Subpoenaed Party"). A true and correct copy of the Subpoena is attached hereto as Exhibit "A".

**PLEASE TAKE FURTHER NOTICE** that the Subpoena commands that the Subpoenaed Party appear for deposition, under oath, and that such deposition take place on June 25, 2020, at 10:00 a.m., at **Sulmeyer**Kupetz, A Professional Corporation, 333 South Grand Avenue, Suite 3400, Los Angeles, California 90071.

**PLEASE TAKE FURTHER NOTICE** that the Subpoenaed Party is a natural person.

**PLEASE TAKE FURTHER NOTICE** that the Subpoena commands the Subpoenaed Party to bring to the deposition, and permit inspection and copying of, documents and other information set forth in Exhibit "A" to the Subpoena.

**PLEASE TAKE FURTHER NOTICE** that the deposition will be recorded by audio, audiovisual, and/or stenographic means, and that Petitioning Creditors, at their sole discretion, may elect to conduct the deposition by means of "zoom" or such other form of virtual examination.

DATED: June 11, 2020

**Sulmeyer**Kupetz
A Professional Corporation

By: /s/ *Daniel A. Lev*
Daniel A. Lev
Attorneys for Petitioning Creditors

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

# UNITED STATES BANKRUPTCY COURT

Central District of California

In re JADELLE JEWELRY AND DIAMONDS, LLC,
Alleged Debtor

Case No. 2:20-bk-13530-BR

Chapter 7

*(Complete if issued in an adversary proceeding)*

Plaintiff
v.

Defendants

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Jona Rechnitz
*(Name of person to whom the subpoena is directed)*

☒ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE | DATE AND TIME |
|---|---|
| **Sulmeyer**Kupetz, A Professional Corporation<br>333 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071 | June 25, 2020 at 10:00 a.m. |

The deposition will be recorded by this method: Stenography and/or video

☒ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Exhibit "A"

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: June 12, 2020

CLERK OF COURT

OR

*Signature of Clerk or Deputy Clerk*

*Attorney's signature*
Daniel A. Lev

The name, address, email address, and telephone number of the attorney representing *(name of party) petitioning creditors Victor Franco Noval, Peter Marco, LLC, and First International Diamond, Inc.,* who issues or requests this subpoena, are: Daniel A. Lev, 333 South Grand Avenue, Suite 3400, Los Angeles, California 90071, email: dlev@sulmeyerlaw.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

DAL 2702619v1

American LegalNet, Inc.
www.FormsWorkFlow.com

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any):* Jona Rechnitz __________
on *(date)* June XX, 2020 .

☒ I served the subpoena by delivering a copy to the named person as follows: ____________________

____________________ on *(date)* ________________; or

☐ I returned the subpoena unexecuted because: ____________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ ________________.

My fees are $ ________ for travel and $ ________ for services, for a total of $ ________.

I declare under penalty of perjury that this information is true and correct.

Date: June XX, 2020

________________________
*Server's signature*

________________________
*Printed name and title*

________________________
*Server's address*

Additional information concerning attempted service, etc.:

American LegalNet, Inc.
www.FormsWorkFlow.com

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2)For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B)Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

DAL 2702619v1

American LegalNet, Inc.
www.FormsWorkFlow.com

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Central District of California

In re JADELLE JEWELRY AND DIAMONDS, LLC,
Alleged Debtor

Case No. 2:20-bk-13530-BR

Chapter 7

*(Complete if issued in an adversary proceeding)*

Plaintiff
v.

Defendants

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Rachel Rechnitz
*(Name of person to whom the subpoena is directed)*

☒ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE | DATE AND TIME |
|---|---|
| **Sulmeyer**Kupetz, A Professional Corporation<br>333 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071 | June 26, 2020 at 10:00 a.m. |

The deposition will be recorded by this method: Stenography and/or video

☒ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
See Exhibit "A"

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: June 12, 2020

CLERK OF COURT

OR

*Signature of Clerk or Deputy Clerk*

*Attorney's signature*
Daniel A. Lev

The name, address, email address, and telephone number of the attorney representing *(name of party) petitioning creditors Victor Franco Noval, Peter Marco, LLC, and First International Diamond, Inc.,* who issues or requests this subpoena, are:
Daniel A. Lev, 333 South Grand Avenue, Suite 3400, Los Angeles, California 90071, email: dlev@sulmeyerlaw.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).



**PROOF OF SERVICE**

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any):* Rachel Rechnitz ______ on *(date)* June XX, 2020 .

☒ I served the subpoena by delivering a copy to the named person as follows: ______________________________

______________________________ on *(date)* ______________; or

☐ I returned the subpoena unexecuted because: ______________________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ ______________.

My fees are $ ________ for travel and $ ________ for services, for a total of $ ________.

I declare under penalty of perjury that this information is true and correct.

Date: June XX, 2020

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information concerning attempted service, etc.:

American LegalNet, Inc.
www.FormsWorkFlow.com

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2)For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B)Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

American LegalNet, Inc.
www.FormsWorkFlow.com

# EXHIBIT "5"

Electronically FILED by Superior Court of California, County of Los Angeles on 02/10/2020 12:00 AM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Mariscal,Deputy Clerk
20SMCV00216

Assigned for all purposes to: Santa Monica Courthouse, Judicial Officer: Marc Gross

Ronald Richards (SBN 176246)
ron@ronaldrichards.com
Morani Stelmach, Esq. (SBN 296670)
morani@ronaldrichards.com
LAW OFFICES OF RONALD RICHARDS & ASSOCIATES, A.P.C.
Mailing Address:
P.O. Box 11480
Beverly Hills, California 90213
Telephone: (310) 556-1001
Facsimile: (310) 277-3325

Geoffrey S. Long (SBN 187429)
glong0607@gmail.com
LAW OFFICES OF GEOFFREY LONG, A.P.C.
1601 N. Sepulveda Blvd., No. 729
Manhattan Beach, California 90266
Telephone: (310) 480-5946
Facsimile: (310) 796-5663

Attorneys for Plaintiff VICTOR FRANCO NOVAL

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES – WEST DISTRICT**

VICTOR FRANCO NOVAL, an individual,

Plaintiff,

vs.

JONA S. RECHNITZ, an individual; RACHEL RECHNITZ, an individual; JADELLE INC., a California corporation; JADELLE JEWELRY AND DIAMONDS, LLC, a Delaware limited liability company; LEVIN PRADO aka LEVON PRADO, an individual; XIOMARA CORTEZ, an individual and DOES 1-20.

Defendants.

Case No.

**VERIFIED COMPLAINT FOR:**

(1) Fraud

(2) Civil Theft (*Penal Code,* § 496)

(3) Breach of Contract

(4) Conspiracy to Commit Theft, Fraud, and Fraud by Concealment

(5) Appointment of Receiver

Plaintiff Victor Franco Noval ("Plaintiff" or "Franco") hereby alleges as follows:

**PARTIES**

1. Plaintiff Victor Franco Noval ("Franco") is an individual residing in Beverly Hills, California in the County of Los Angeles.

2. Defendant Jona S. Rechnitz ("Jona") is an individual who is residing in the County of Los Angeles in a rental house located at 9533 Sawyer St., Beverlywood area, City of Los Angeles.

3. Defendant Rachel Rechnitz ("Rachel") is an individual who is residing in the County of Los Angeles in a rental house located at 9533 Sawyer St., Beverlywood area, City of Los Angeles. She is formerly known as Rachel Kahn. Both Jona and Rachel advertise political and powerful celebrity connections to create a false sense of credibility about themselves and their business. They post photos on social media of Kylie Jenner and Kim Kardashian, and Jona is seen with the mayor of New York and holding large amounts of United States Currency.





KYLIE JENNER
AS SEEN ON OUR
INSTAGRAM

2
COMPLAINT
EXHIBIT "5", PAGE 131

4. Defendant Jadelle Inc. ("Jadelle Inc.") is a California corporation whose principle office is in Beverly Hills and whose board member and President is Rachel.

5. Defendant Jadelle Jewelry and Diamonds, LLC ("Jadelle LLC," collectively with Jadelle Inc., the "Jadelle Entities") is a Delaware limited liability company qualified to do business in California. Rachel is the managing member of Jadelle LLC.

6. Defendant Levin Prado aka Levon Prado ("Prado") is the agent for service of process, controller, and check signer for the Jadelle Entities. It is alleged on information and belief that Prado has a girlfriend named Xiomara Cortez at the Wells Fargo Bank Beverly Hills branch who assisted him in furthering Rachel and Jona's fraud by stopping payment on checks and allowing numerous improper check transactions to occur on both of the Jadelle Entities' accounts. Prado is displaying the sign he has indicated with his action towards Plaintiff and others as it relates to their goods and collateral.

7. Xiomara Cortez is an individual believed to reside in the County of Los Angeles who is employed at Wells Fargo Bank. Cortzez was instrumental in allowing Jona and Rachel's frauds to continue by keeping the current bank account open and by allowing Prado to continue to open up accounts and issue worthless instruments.

8. The true names and capacities of defendants Does 1 through 20, whether individual, corporate, associate or otherwise, are unknown to Plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to show the true names and capacities of those defendants after they have been ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged in this complaint and that Plaintiff's damages as alleged in the Complaint were proximately caused by the acts or omissions of such defendant.

9. Plaintiff is informed that, at all times mentioned in this Complaint, Defendants, and each of them, were the partners, joint venturers, agents, employees, alter egos, and representatives of each other in doing the things herein alleged and, in doing so, were acting within the scope of

their respective authorities as agents, employees and representatives, and are jointly and severally liable to Plaintiff.

10. The alleged frauds committed by Jona were committed with Rachel's knowledge and direction, along with the assistance of Prado, making them personally liable. Without Rachel setting upon the entities to commit the frauds, Jona lying to steal the collateral and loan proceeds, and Prado signing the checks, none of the below referenced offenses could have occurred.

**JURISDICTION AND VENUE**

11. This Court has jurisdiction over this entire action because it is a civil action wherein the damages sought are in excess of the jurisdictional limits of this Court, and the Defendants are subject to personal jurisdiction in the State of California

12. Defendants have conducted substantial business in the State of California, are registered and qualified to conduct business in the State of California, are California residents, and/or have purposefully directed tortious activities towards a California resident.

13. Venue in this Court is proper pursuant to California *Code of Civil Procedure*, §§ 395 *et seq*. Venue of this action is in this Court and County because the obligations, acts and liabilities claimed in this action arose and the torts alleged herein took place in Los Angeles County and the parties reside in this County.

**GENERAL FACTUAL ALLEGATIONS**

14. On or about January 24, 2019, the Jadelle Entities, which are owned by Jona and Rachel, borrowed money from Plaintiff pursuant to a written agreement. The terms of the written agreement were memorialized in a Debt Acknowledgment, Promissory Note and Security Agreement ("Debt Agreement") dated March 2019. A true and correct copy of the Debt Agreement is attached hereto and incorporated herein as Exhibit "A".

15. The original principal amount in the Debt Agreement is $2,850,000 at 9% interest per month, however, the total debt owed by Defendants later increased to $5,800,000. The maturity dates are reflected in the Debt Agreement.

16. Pursuant to the Debt Agreement, the loans were secured by jewelry delivered to

Franco and a 2012 Bugatti. Jona delivered the Bugati and the jewelry to Franco as security/collateral for the loan.

17. After a series of further advance transactions, the debt on the loan grew to $5,800,000.

18. The Bugati was liquidated and the funds were credited against principal for a total credit of $400,000.

19. As background on Jona Rechnitz, a sealed information was filed against him in the Southern District of New York on June 6, 2016 for wire fraud. A copy of the information is attached hereto as Exhibit "B".

20. Jona entered a guilty plea on June 6, 2016.

21. On March 15, 2017, the information against Jona was unsealed. On March 15, 2017, Jona was released on bond pursuant to release conditions imposed by Judge Alvin K. Hellerstein.

22. On December 6, 2019, Jona was sentenced to 10 months of custody. He was granted release pending appeal.

23. The government in its sentencing memorandum indicated that "Rechnitz was in a position to cooperate regarding a broad range of subject matters in part because, for several years beginning when he was 26 years old in 2008, Rechnitz rode a wave of unbridled ambition and a seemingly limitless sense of entitlement through a series of misdeeds. Rechnitz had been a brazen criminal, and the seriousness of his crimes of conviction cannot, and should not, be minimized."

24. Yet, apparently misunderstanding his role as a "one of the single most important and prolific white collar cooperating witnesses in the recent history of the Southern District of New York" according to the government, Jona mistakenly believes that this provides him immunity from committing fraud in California.

25. No sooner than within weeks of being sentenced in the Southern District of New York, Jona swindled Franco in a large scale fraud totaling $5,800,000. On information and belief, Jona and Rachel have defrauded other diamond dealers in Southern California and as those victims authorize the release of their names, the complaint will be amended to recover their stolen goods as well.

26. At the time of the fraud, Jona Rechnitz was and still is a convicted felon from the Southern District of New York. He is presently out on bond for a wire fraud conviction where he was granted bail pending appeal. He is married to Rachel Rechnitz and they have six children together.

27. They both now reside in a rental home in the Beverlywood area in the City of Los Angeles.

28. Jona and Rachel operate a jewelry business through two similarly named entities, defendants Jadelle Inc. and Jadelle Jewelry and Diamonds, LLC, herein the Jadelle Entities, whose marque client is the Kardashian family. Each of their clients will be added to this action as the facts unfold showing the stolen collateral was sold to retail customers of Jona and Rachel.

29. The Debt Agreement between the parties was simple. Jona tendered over $7,000,000 worth of diamonds to Plaintiff to be held as a collateral against a loan which totaled $5,800,000.

30. In late December of 2019, AFTER, Jona was sentenced, Jona indicated to Franco that he was going to get a credit line and asked for the release of the diamond collateral in exchange for payment in full. This representation by Jona was false when made. Jona knew the representation was false when made. Jona made this representation with the intention of causing Franco to rely on it. Franco relied on this representation to his detriment.

31. Jona persuaded Franco and Franco's brother to deliver the collateral to Jona and Rachel's office at 9454 Wilshire Blvd. in Beverly Hills. Jona exchanged two checks payable to Franco in exchange for the diamond collateral dated January 14, 2020 and January 16, 2020 in the amounts of $2,500,000 and $1,300,000, respectively. True and correct copies of said checks are attached hereto as Exhibit "C." At the time Jona issued the checks to Franco he had no intention of honoring the checks. Franco relied on Jona issuing and intending to honor the checks by releasing the diamond collateral.

32. Plaintiff and Plaintiff's brother complied by exchanging the diamond collateral and Jona tendered two checks attached hereto as Exhibit "C". The checks, however, were NSF at the time of tender. Jona has repeatedly lied, lulled, and attempted to fabricate one excuse after another to delay paying Plaintiff.

33. Based upon information and belief, Prado, acting in concert with Jona and Rachel, and to further their scheme, had his girlfriend or another representative at Wells Fargo Bank issue a stop payment on the checks, attached hereto as Exhibit "C", that Franco was going to deposit.

34. Jona falsely enlisted attorneys to pretend payment on the loan was coming from family members to buy himself more time. A number of these family members had written letters to the Court for Jona's sentencing.

35. In reality, Jona liquidated Plaintiff's diamond collateral and spent Plaintiff's money, but refuses to tell Plaintiff how he liquidated the collateral or how he spent the loan proceeds.

36. It is apparent that Jona is continuing his criminal conduct in California after being convicted in New York.

37. Upon realizing he had been swindled and defrauded, Franco immediately filed a police report with the Beverly Hills Police.

38. Repeated demands have been made to Jona to return the diamond collateral. Jona, who wants to conceal his criminal conduct from the sentencing judge in New York and the federal prosecutors who vouched for him, as well as U.S. Probation, took numerous steps to lull the victim, Franco, to buy more time.

39. On January 16, 2020, with the assistance of a local Beverly Hills attorney, Jona drafted more documents and an additional check, attached hereto as Exhibit "D" and Exhibit "E", to further stop Franco from disclosing and revealing that Jona's fraudulent conduct has only grown in scope and size and that he has learned nothing from his life of crime which spanned from 2011 to 2015, which then halted while he was cooperating from 2016 to 2018.

40. The fact that Jona only received 10 months custody time with 5 months house arrest has only emboldened him to commit more fraud, grand theft, and to issue worthless instruments.

41. The January 16, 2020 document requested that Franco keep Jona's fraud and breaches confidential until January 23, 2020. Jona, however, did not comply with the January 16, 2020 agreement and no payments have been received. Jona entered into the January 16, 2020 agreement without any intention of performing in order to delay Franco from seeking redress for the fraud and breaches. Franco reasonably and detrimentally relied on the January 16, 2020

agreement.

42. Jona then fired the Beverly Hills attorney and retained a new attorney on January 28, 2020, to resolve this matter.

43. Jona's modus operandi in this fraud is to have numerous well-respected attorneys contact Franco's counsel and advance Jona's false promises of repayment or outside funding along with checks that either are NSF or which Jona had no intention of honoring.

44. Jona directly, and through counsel, has been asked to disclose the location of the diamond collateral and to provide a tracing and accounting of the loan proceeds. Jona has refused to do so.

45. On information and belief, Plaintiff alleges that this is because Jona had pledged diamonds to Franco that in fact were loaned to Jona and were not owned by Jona or Rachel. Upon discovering whose diamonds Jona had pledged, this Complaint will be amended to add that party as they have Franco's collateral and hold it in constructive trust for Plaintiff's benefit.

46. On information and belief, defendant Xiomara Cortez aided and abetted the defendants in committing these frauds. Defendant Cortez assisted in issuing checks, stopping payment, and verifying funds, knowingly allowing Prado to issue numerous worthless checks and never closed the accounts due to her romantic relationship with Prado.

47. Jona, assisted by Rachel, have only become more emboldened in their frauds. On information and belief, they have taken goods on memo from various Southern California diamond merchants. Namely, Peter Marco, Moti Klein, and Julius Klein. The video Jona showed at his sentencing in federal court to the federal judge on December 19, 2019, with Kim Kardashian, was most likely depicted stolen and fraudulently obtained goods from Plaintiff and various diamond merchants. The amount of losses to these various parties is alleged to be over $15,000,000. They are number other victims as well involved in various scams perpetrated by Jona. On information and belief, they include Sotheby's, Leon Landver, Sam Gorodistian, Ben Adhoot, and Yehuda Gamzo. All the alleged victims have the same common pattern evidence used by Jona and Rachel which is to have attorneys contact them, telling them they are getting paid according to Jona.

48. On information and belief, Jona made numerous false statements to the federal

sentencing judge because by December 19 ,2019, Jona's frauds were well under way. This house of fraudulent cards needs to be exposed as his growing victim list is becoming a community wide problem. This lawsuit and other reports that have been filed, will hopefully bring this economic terrorist to justice and Plaintiff prays that this Court take appropriate access to find him financially responsible and appoint a receiver to halt what has now turned into outright theft of merchandise in the tens of millions of dollars afflicting Plaintiff and other victims. As more come forward, Plaintiff will amend and add them to this complaint to turn this into a class if appropriate to stop this man and his wife. Presently, Plaintiff is aware of other victims including Peter Marco, Julius Klein, and Moti Klein as well as multiple other victims including an active insurance investigation.

49. Plaintiff immediately reported this matter to the Beverly Hills Police Department in the hope of stopping Mr. Rechnitz from further victimizing local residents and businesses. The police have notified Plaintiff there are numerous other victims. The filing of this action is intended to bring to light Rechnitz's frauds and have him exposed so no further innocent people are hurt by this economic terrorist. At this point, Plaintiff has no realistic belief that Rechnitz will ever pay him back as the list of victims keeps growing. At this point, Plaintiff only hopes no further persons are swindled by Jona, Rachel, and their team of thieves.

50. On February 4, 2020, his newly retained criminal defense attorney in Los Angeles

sent a carefully scripted mass email to BCC'ing Jona's purported victims, attached as Exhibit "F" which reads as follows:

> We write with an update on Jona Rechnitz. A family member of Mr. Rechnitz has informed our law firm that the family member is seeking to refinance certain real property in order to satisfy Mr. Rechnitz's outstanding liabilities. We currently have no visibility into the family member's interest in the property, the value of the property, or what, if any equity, the family member has in it.
>
> If you are represented by counsel, please let us know and provide your counsel's contact information. Our client's desire is to resolve this matter amicably.

This email comes after Jona had three previous reputable attorneys contact Plaintiff all relaying the same bogus and false words of hope. This type of lulling is widely known under federal law. The email carefully and correctly discloses that the law firm knows nothing of the veracity of the client directed statements and correctly distances the law firm of any endorsement of Jona's numerous attempts to use reputable attorneys to buy himself time. It should be noted that each and every time the reputable attorneys Jona retained, correctly made it clear they were not endorsing or underwriting Jona's promises of repayment of the stolen funds or return of the stolen collateral.

51. Jona and Rachel have directed numerous "lulling letters" in furtherance of their scheme to defraud. A lulling letter is "designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make apprehension of the defendants less likely." *United States v. Manarite*, 44 F.3d 1407, 1412 (9th Cir.1995) (quoting *United States v. Maze*, 414 U.S. 395, 403 (1974)); *United States v. Shaw* (9th Cir. 1996) 97 F.3d 1463. The numerous exhibits attached to this complaint are all examples of lulling letters. They display consciousness of Jona and Rachel's intent to defraud.

52. On February 7, 2020, Plaintiff's counsel was contacted by two partners at Cohen Williams LLP that notwithstanding the February 4, 2020 email, they unfortunately had no further information to report. Plaintiff's counsel asked them to stop contacting him regarding this matter as his client cannot psychologically handle further false promises, lies, and false rays of hope that Jona directs his attorneys to provide his various victims. Plaintiff's counsel informed these fine

reputable attorneys not to update him further as he has moved on and that his client has zero belief Jona will ever pay him back.

53. Plaintiff is hopeful that the publication of this action will cause more victims to not feel ashamed of being fleeced and to report these matters to the proper authorities. Absent public awareness of Jona and his conspirator's frauds, he will keep stealing from people and hurting residents and businesses of Southern California.

54. Jona is using his last cooperation in the Southern District of New York as some sort of ill-conceived immunity as part of the scheme. During the fraud, Jona has indicated that he was not concerned with any problems or things he has done because the FBI needs him as an informant so bad in the New York case where there are appeals they would never do anything to him no matter what he did. This is of course is completely an ignorant and delusional view. The FBI does not immunize crooks to steal simply because they cooperate in a case. Jona uses this as a tool to further his scheme to defraud.

55. Numerous victims have been interviewed in this matter. On information and belief, as to the Sotheby's fraud, Jona falsely represented to Sotheby's he was entitled to diamonds given to Sotheby's for auction, Jona secretly picked them up and has dissipated the assets. The total loss was $3,000,000.00. Just adding up all the victims the Plaintiff's law firm has interviewed the losses exceed $15,000,000. The Plaintiff is encouraging all victims of Jona and Rachel to come forward immediately and to stop believing they are going to get paid.

**FIRST CAUSE OF ACTION**

**FRAUD AGAINST ALL DEFENDANTS**

56. Plaintiff hereby incorporates by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

57. The foregoing representations made by Jona, Rachel, and the other Defendants were false when they were made, and Defendants knew the representations to be false. Defendants did not intend to comply with the promises and representations when they were made.

58. The foregoing representations were made by Jona, Rachel, and Defendants with the intent to deceive Plaintiff and with knowledge that Plaintiff would rely on them.

59. Plaintiff detrimentally and reasonably relied on the foregoing representations.

60. Plaintiff has been damaged by Defendants' false, intentional, and fraudulent representations and concealing of material information, as alleged above, in an amount to be proven at trial, but at least $7,000,000, which represents the collateral Jona lied to steal as well as tendered worthless instruments for.

61. Plaintiff further requests the imposition of a constructive trust against all Defendants who are in possession of the diamond collateral set forth in the Debt Agreement and for an order and judgment that they hold the diamond collateral and/or all proceeds therefrom as constructive trustees for the benefit of Plaintiff.

62. In doing the things herein alleged, Defendants acted willfully, maliciously, and with the intent to cause injury and harm to Plaintiff. Defendants are therefore guilty of malice and/or fraud in conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive and exemplary damages in an amount appropriate to punish Defendants, and each of them, and deter them and others from engaging in similar misconduct

**SECOND CAUSE OF ACTION**

**CIVIL THEFT (Cal. *Penal Code,* § 496) AGAINST ALL DEFENDANTS**

63. Plaintiff hereby incorporates by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

64. As a result of Jona and Defendants' conduct as alleged herein, they have violated California *Penal Code,* section 496.

65. California *Penal Code,* section 496, provides, "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170. However, if the value of the property does not exceed nine hundred fifty dollars ($950), the offense shall be a misdemeanor, punishable only by imprisonment in a county jail not exceeding one year, if such person has no prior convictions

for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290.

66. Jona and Defendants have obtained and received property from Plaintiff, the $5,800,000, in a manner constituting "theft," as that term is defined in California *Penal Code,* section 484(a), "[e]very person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."

67. As a direct and proximate result of Defendants' civil theft, Plaintiff has been damaged in an amount to be proven at trial, but at least $7,000,000.

68. Pursuant to California *Penal Code,* section 496(c), Plaintiff is also entitled to recover treble damages from Defendants.

69. Pursuant to California *Penal Code,* section 496(c), Plaintiff is also entitled to recover attorneys' fees from Defendants.

70. Plaintiff further requests the imposition of a constructive trust against all Defendants who are in possession of the diamond collateral set forth in the Debt Agreement and for an order and judgment that they hold the diamond collateral and/or all proceeds therefrom as constructive trustees for the benefit of Plaintiff.

71. In doing the things herein alleged, Defendants acted willfully, maliciously, and with the intent to cause injury and harm to Plaintiff. Defendants are therefore guilty of malice and/or fraud in conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive and exemplary damages in an amount appropriate to punish Defendants, and each of them, and deter them and others from engaging in similar misconduct

**THIRD CAUSE OF ACTION**

**BREACH OF CONTRACT AGAINST ALL DEFENDANTS**

72. Plaintiff hereby incorporates by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

73. Plaintiff has duly performed all of his obligations, terms, and conditions of the Debt Agreement, except to the extent that his performance has been waived, prevented or excused by the acts, conduct and/or omissions of Defendants.

74. All conditions for Defendants' performance on the Debt Agreement have occurred.

75. Defendants are in breach of the Debt Agreement by failing and refusing to pay Plaintiff all amounts due thereunder and by failing to provide Plaintiff with the collateral required thereunder.

76. As a direct and proximate result of the acts, omissions, and breaches of the Debt Agreement by Defendants, as alleged herein, Plaintiff has suffered damages in a specific amount to be determined at trial, but in the amount of at least $7,000,000.

**FOURTH CAUSE OF ACTION**

**CIVIL CONSPIRACY TO COMMIT THEFT, FRAUD, AND FRAUD BY CONCEALMENT AGAINST ALL DEFENDANTS**

77. Plaintiff hereby incorporates by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

78. Jona, Rachel, and Prado conspired to make an illegal agreement to defraud Franco of his loan proceed and his collateral and to commit civil theft.

79. Jona, with his wife Rachel, have set up serial bogus companies to solicit loans based upon the false premise they have collateral. Meanwhile the collateral is already pledged to a third party or Jona and Rachel have concocted lies to get it back, using Prado as their patsy to sign checks on their corporate checking accounts.

80. Franco is informed, believes, and thereupon alleges that at all times relevant hereto, Defendants, including but not limited to Jona, Rachel, and Prado, formed a civil conspiracy and engaged in the foregoing acts in operation and furtherance of that conspiracy.

81. Plaintiff is informed, believes, and thereupon alleges that at all times relevant hereto, Defendants committed the foregoing misrepresentations, wrongs, theft, and fraud for the purpose and in furtherance of a fraudulent conspiracy and scheme to defraud Plaintiff, as alleged herein.

82. As a result of the civil conspiracy, each and every Defendant is liable and responsible for the acts of the other Defendants in furtherance of the conspiracy and all damages resulting therefrom.

83. As a result of the civil conspiracy, Defendants are jointly and severally liable for $7,000,000.

84. The egregious nature of the Defendants/conspirators' collective conduct is malicious, wanton, and willful. Plaintiff needs to be awarded punitive damages plus a judgment of joint and several liability.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Franco seeks a judgment in her favor and an order granting the following relief:

1. That Plaintiff be awarded compensatory damages in the amount of at least $7,000,000;
2. That Plaintiff be awarded treble damages pursuant to California *Penal Code,* section 496(c);
3. That Plaintiff be awarded reasonable attorneys' fees pursuant to California *Penal Code,* section 496(c);
4. For a constructive trust over the diamond collateral and all proceeds therefrom;
5. That Plaintiff be awarded punitive damages in an amount to be proven at trial;
6. For a receiver to be installed into both defendant companies and personal estates to marshal the remaining assets;
7. That Plaintiff be awarded costs of suit; and
8. That Plaintiff be awarded such further relief as the Court deems just and proper.

DATED: February 8, 2020

LAW OFFICES OF RONALD RICHARDS
& ASSOCIATES, A.P.C.

By: /s/ Ronald Richards
Ronald Richards
Attorneys for Plaintiff Victor Franco Noval

LAW OFFICES OF GEOFFREY LONG, A.P.C.

By: /s/ Geoffrey Long
Geoffrey Long
Attorneys for Plaintiff Victor Franco Noval

**VERIFICATION**

I, Victor Franco Noval, declare:

I have read the foregoing complaint and know the contents thereof.

I am informed and believe based on information provided to me, materials I have reviewed, and my personal knowledge that the matters stated in are true and accurate to the best of my knowledge except where I indicated they are based upon information and belief.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct, and that this verification to this complaint was executed this 9th day of February, 2020, in Beverly Hills, California.

___________________________
Victor Franco Noval

# EXHIBIT A

**DEBT ACKOWLEDGEMENT, PROMISSORY NOTE AND SECURITY AGREEMENT**

DEBT ACKOWLEDGEMENT, PROMISSORY NOTE AND SECURITY AGREEMENT, is made this ___ day of March, 2019, by and between Jadelle Jewelry and Diamonds, LLC, a Delaware limited liability company, located at 9454 Wilshire Boulevard, Penthouse #1, Beverly Hills, CA 90210 ("Jadelle") and Victor Franco Noval, an individual with an address of 1141 Summit Drive, Beverly Hills, CA 90210 ("Noval"). Jadelle and Noval are hereinafter referred to collectively as "the Parties".

WHEREAS Noval has made loans in the aggregate amount of $2,850,000.00 to Jadelle;

NOW, THEREFORE, in consideration of the foregoing, the representations, warranties, covenants and agreements hereinafter set forth, the loans previously advanced to Jadelle and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby mutually agree as follows:

**ACKNOWLEDGEMENT**

1.      Jadelle does hereby confirm and acknowledge that has received the followed loan amounts from Noval:

      a.  On January 24, 2019, the sum of $1,100,000.00;
      b.  On February 27, 2019, the sum of $750,000.00;
      c.  On March 8, 2019, the sum of $400,000.00; and
      d.  On March 26, 2019, the sum of $600,000.00.

**TERMS OF PAYMENT**

2.      Interest: Commencing on the date hereof, Jadelle shall pay to Noval, interest on the full outstanding balance, accruing at a rate of nine percent (9%) per annum, which shall be payable in monthly installments on the first business day of each month, commencing April 1, 2019.

3.      Maturity Date: The full balance of all sum outstanding shall be due on the date that is six (6) months from the date of each advance as set forth in ¶ 1 above.

4.      Extension: The term of this loan may be extended by mutual agreement of the Parties.

**GUARANTEE AND SECURITY**

5.      The payment obligations set forth herein are secured by jewelry which Jadelle has provided to Noval and which Noval is holding in its possession as collateral for the amounts due hereunder. In addition thereto, the obligations of Jadelle are further secured by its pledge of

$400,000.00 in value of that certain 2012 Bugatti vehicle presently stored in a garage owned and operated by Noval.

**SEVERABILITY**

6. In the event any provision of this Agreement is deemed to be void, invalid, or unenforceable, that provision shall be severed from the remainder of this Agreement so as not to cause the invalidity or unenforceability of the remainder of this Agreement. All remaining provisions of this Agreement shall then continue in full force and effect. If any provision shall be deemed invalid due to its scope or breadth including, but not limited to, the interest rate set forth herein, such provision shall be deemed valid to the extent of the scope and breadth permitted by law.

**MODIFICATION**

7. Except as otherwise provided in this document, this agreement may be modified, superseded, or voided only upon the written and signed agreement of the Parties. Further, the physical destruction or loss of this document shall not be construed as a modification or termination of the agreement contained herein.

**EXCLUSIVE JURISDICTION FOR SUIT IN CASE OF BREACH**

8. The Parties, by entering into this agreement, submit to jurisdiction in State of New York for adjudication of any disputes and/or claims between the parties under this agreement. Furthermore, the parties hereby agree that the courts of State of California shall have exclusive jurisdiction over any disputes between the parties relative to this agreement, whether said disputes sounds in contract, tort, or other areas of the law.

9. This Agreement shall be interpreted under, and governed by, the laws of the state of California.

IN WITNESS WHEREOF, this DEBT ACKOWLEDGEMENT, PROMISSORY NOTE AND SECURITY AGREEMENT has been duly executed by or on behalf of the parties hereto as of the date first above written.

**Borrower**
*Jadelle Jewelry and Diamonds, LLC*

By: Levin Prado
Its: Authorized Signatory

**Lender**

Victor Franco Noval

# EXHIBIT B

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/6/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JONA RECHNITZ,

Defendant.

SEALED INFORMATION

16 Cr.

16 CRIM 389

COUNT ONE

The United States Attorney charges:

1. From in or about 2011, up to and including in or about 2015, in the Southern District of New York and elsewhere, JONA RECHNITZ, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Sections 1343 and 1346.

2. It was a part and an object of the conspiracy that JONA RECHNITZ, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to deprive the public of its intangible right to the honest services of law enforcement and other public officials, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation

JUDGE SULLIVAN

of Title 18, United States Code, Sections 1343 and 1346, to wit, RECHNITZ, and others known and unknown, provided financial and personal benefits and political contributions to public officials, including law enforcement officials, in exchange for official action as requested by RECHNITZ and others, and as opportunities arose, and in connection therewith and in furtherance thereof, RECHNITZ, and others known and unknown, transmitted and caused to be transmitted interstate, e-mails, telephone calls, and electronic wire transfers of funds.

3. It was also a part and an object of the conspiracy that JONA RECHNITZ, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to deprive the members of the Corrections Officers' Benevolent Association ("COBA"), the union which represents the corrections officers of New York City, of their intangible right to the honest services of a senior COBA official, who was also a corrections officer (the "COBA Official"), would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346, to wit, RECHNITZ facilitated the payment of approximately $60,000 to the COBA

Official on behalf of a hedge fund operator in exchange for the COBA Official's direction of an investment of union funds in the hedge fund, and in connection therewith and in furtherance thereof, RECHNITZ, and others known and unknown, transmitted and caused to be transmitted interstate, e-mails, telephone calls, and electronic wire transfers of funds.

(Title 18, United States Code, Section 1349.)

FORFEITURE ALLEGATION

4. As a result of committing the offense alleged in Count One of this Information, JONA RECHNITZ, the defendant, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, which constitutes or is derived from proceeds traceable to the offense alleged in Count One of the Information.

Substitute Asset Provision

5. If any of the above-described forfeitable property, as a result of any act or omission of JONA RECHNITZ, the defendant:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

           (3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981,
Title 21, United States Code, Section 853, and
Title 28, United States Code, Section 2461.)

Preet Bharara
PREET BHARARA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

- v. -

JONA RECHNITZ,

Defendant.

---

SEALED INFORMATION

16 Cr.

(Title 18, United States Code, Section 1349.)

PREET BHARARA
United States Attorney.

---

# EXHIBIT C

WELLS FARGO BANK

8820

WILSHIRE CRESCENT 9354 WILSHIRE BLVD BEVERLY HILLS, CA 90212

11-4288/1210

DATE 1/16/20

PAY TO THE ORDER OF Franco Noval $ 1,300,000.00

one million Three hundred DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS CA 90212-2931

LOAN REPAYMENT

Levi Prado

⑆121042882⑆864⑈ ⑈8820

WELLS FARGO BANK

8817

WILSHIRE CRESCENT 9354 WILSHIRE BLVD BEVERLY HILLS, CA 90212

DATE 1/14/20

11-4288/1210

PAY TO THE ORDER OF Franco Noval $ 2,500,000.00

Two million Five hundred Thousand DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS CA 90212-2931

Levi Prado

LOAN REPAYMENT

⑈8817

⑆121042882⑆864

# EXHIBIT D

This document is to memorialize the current relationship between the parties. It is not intended to create a forbearance or an extension of credit of any kind.

On January 16, 2020, Jonah reached out to me to resolve this matter. On the advice of counsel, I disclosed to Jonah that I had filed a police report against Jonah on January 15th, 2020 for fraud and grand theft. I told Jonah that he needs to pay me independently and apart from any reports I filed and that at no time have I used the filing of the report to resolve this matter. Besides disclosing to Jonah that I did file the report after he reached out to me to resolve this matter, I made no other characterizations or comments about the report but I was advised that Jonah should know that one was in fact filed.

Per my request I have asked Jonah to issue a new replacement check for $4.5m dated January 22, 2020. Jonah has represented he does not have the funds in his account at the time this replacement was issued. Noval is acknowledging this. Jonah intends on using his best efforts to have the funds by January 22, 2020. I agree not to deposit the new replacement check for 4.5MM until Thursday Jan 23, 2020.

I have agreed and have instructed my associates to refrain from discussing anything with the press or anyone unless the check gets returned or bounces for Stop Payment or NSF on the agreed upon deposit date. I will honor his request assuming he follows through with his above representations.

I agree to keep all matters confidential between the parties involved and will hold on any further reports until January 23, 2020 as long as the terms of this agreement are met.

Sincerely,

Victor Franco Noval

1/15/2020    1/16/20

I, Jonah Rechnitz, have read the above facts and representations in this document. I agree they are accurate.

Jonah Rechnitz

Date    1/16/20

# EXHIBIT E

**WELLS FARGO BANK**

8823

WILSHIRE CRESCENT 9354 WILSHIRE BLVD BEVERLY HILLS, CA 90212

DATE 1-22-20

11-4288/1210

PAY TO THE ORDER OF Franco Noval $ 4,500,000.00

Four million Five hundred Thousand DOLLARS

**JADELLE JEWELRY AND DIAMONDS, LLC**
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS CA 90212-2931

LOAN REPAYMENT

⑆121042882⑆8649⑈ ⑈8823

# EXHIBIT F

**Ronald Richards**

**From:** Reuven Cohen <rcohen@
**Sent:** Tuesday, February 4, 2020 9:40 PM
**To:** Reuven Cohen; Marc Williams
**Subject:** Jona Rechnitz

We write with an update on Jona Rechnitz. A family member of Mr. Rechnitz has informed our law firm that the family member is seeking to refinance certain real property in order to satisfy Mr. Rechnitz's outstanding liabilities. We currently have no visibility into the family member's interest in the property, the value of the property, or what, if any equity, the family member has in it.

If you are represented by counsel, please let us know and provide your counsel's contact information.

Our client's desire is to resolve this matter amicably.

Sincerely,

Reuven L. Cohen
Cohen Williams LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Tel: 213-232-5163
Fax: 213-232-5167
rcohen@
www.cohen-williams.com

# EXHIBIT "6"

Baruch C. Cohen, Esq. (SBN 159455)
**LAW OFFICE OF BARUCH C. COHEN**
A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501 Fax (888) 316-6107
e-mail: baruchcohen@baruchcohenesq.com

Attorney for Third-Party Plaintiffs PETER VOUTSAS aka PETER MARCO aka PETER MARCO EXTRAORDINARY JEWELS OF BEVERLY HILLS, dba PETER MARCO LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

DAVID ROVINSKY LLC, a Delaware limited liability company,

Plaintiff,

PETER VOUTSAS aka PETER MARCO aka PETER VOUTSAS, aka PETER MARCO EXTRAORDINARY JEWELS OF BEVERLY HILLS, dba PETER MARCO LLC,

Defendants/Third-Party Plaintiffs,

vs.

JONA S. RECHNITZ, an individual; RACHEL RECHNITZ, an individual; LEVIN PRADO aka LEVON PRADO, an individual,

Third-Party Defendants.

USDC # 2:20-cv-02580-ODW-AS

**AMENDED THIRD-PARTY COMPLAINT FOR:**

1. **INTENTIONAL MISREPRESENTATION & FRAUD;**
2. **CIVIL THEFT (PENAL CODE, § 496);**
3. **EMBEZZLEMENT;**
4. **CIVIL CONSPIRACY TO COMMIT THEFT, FRAUD, AND FRAUD BY CONCEALMENT;**
5. **CONVERSION;**
6. **BREACH OF CONTRACT;**
7. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**
8. **ACCOUNT STATED; &**
9. **UNETHICAL BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200**

**DEMAND FOR A JURY TRIAL**

Third-Party Plaintiffs PETER VOUTSAS aka PETER MARCO aka PETER MARCO EXTRAORDINARY JEWELS OF BEVERLY HILLS, dba PETER MARCO LLC. (“Marco”) hereby allege the following against Third-Party

Defendants JONA S. RECHNITZ, RACHEL RECHNITZ, LEVIN PRADO aka LEVON PRADO, (collectively "Third-Party Defendants") as follows:

**THE PARTIES, JURISDICTION, AND VENUE**

1. Third-Party Plaintiff PETER VOUTSAS aka PETER MARCO ("Marco") is an individual residing in Los Angeles County, State of California.

2. Third-Party Plaintiff PETER MARCO LLC is a limited liability company qualified to do business in California qualified to do business in California. Marco is the managing member of PM-LLC.

3. Third-Party Plaintiff PETER MARCO EXTRAORDINARY JEWELS OF BEVERLY HILLS is a dba of Marco and PETER MARCO LLC.

4. All Third-Party Plaintiffs are collectively herein referred to as ("Marco").

5. Third-Party Defendant JONA S. RECHNITZ ("Jona") is an individual residing in Los Angeles County, State of California. Jona is also Rachel's husband.

6. Third-Party Defendant RACHEL RECHNITZ ("Rachel") is an individual residing in Los Angeles County, State of California. Rachel is the managing member of Jadelle LLC and the Chief Executive Officer for Jadelle Inc. Rachel is also Jona's wife.

7. Jona and Rachel Rechnitz operate a jewelry business through two similarly named entities, Jadelle Inc. and Jadelle Jewelry and Diamonds, LLC, herein the Jadelle Entities, whose marque client is the Kardashian family. Both Jona and Rachel Rechnitz advertise political and powerful celebrity connections to create a false sense of credibility about themselves and their business, posting photos on their social media of Kylie Jenner and Kim Kardashian.

8. The alleged frauds committed by Jona were committed with Rachel's knowledge and direction, making her personally liable. Without Rachel setting up the entities to commit the frauds, Jona lying to steal Marco's

Consigned Jewelry, none of the below referenced offenses could have occurred.

9. On information and belief, on 4-6-2020, an involuntary chapter 7 bankruptcy proceeding was filed against Jadelle Jewelry and Diamonds, LLC, a Delaware limited liability company, Jadelle Jewelry, LLC, and Jadelle Inc., a California corporation, USBC # 2:20-bk-13530-BR. The petitioning creditors are: First International Diamond, Inc., with Trade Debt/Damages of $1,976,225.00, Peter Marco, LLC, with Trade Debt/Damages of $7,676,744.00 (The correct amount is $6,950,444.40) and Victor Franco Noval with Trade Debt/Damages of $5,800,000.00, with total petitioners' claims of $15,452,969.00.[1] See, "***Corrupt de Blasio donor Jona Rechnitz's alleged victims trying to force him into bankruptcy***" (https://nypost.com/2020/04/07/de-blasio-donor-jona-rechnitzs-alleged-victims-trying-to-bankrupt-him/), and "***Creditors File Petition to Put Jadelle Jewelry in Bankruptcy***" (https://www.jckonline.com/editorial-article/jadelle-jewelry-bankruptcy/).

10. Presently, Third-Party Plaintiffs are currently stayed from pursuing the Jadelle entities in this Court by virtue of the automatic stay of bankruptcy (11 U.S. Code § 362). Marco will be filing claims against the Jadelle entities debtors in the United States Bankruptcy Court.

11. Non-party JADELLE JEWELRY AND DIAMONDS, LLC ("Jadelle LLC," collectively with Jadelle Inc., the "Jadelle Entities") (now in an involuntary bankruptcy) is a Delaware limited liability company qualified to do business in California. Rachel is the managing member of Jadelle LLC.

---

[1]A true and correct copy of the involuntary chapter 7 bankruptcy proceeding *In re Jadelle Jewelry and Diamonds, LLC, a Delaware limited liability company, Jadelle Jewelry, LLC, and Jadelle Inc., a California corporation*, USBC # 2:20-bk-13530-BR is attached as Exhibit "1" and is incorporated herein by this reference.

12. Non-party JADELLE JEWELRY, LLC, ("Jadelle LLC," collectively with Jadelle Inc., the "Jadelle Entities") (now in an involuntary bankruptcy) is a California limited liability company qualified to do business in California. Rachel is the managing member of Jadelle LLC.

13. Non-party JADELLE INC. ("Jadelle Inc.") (now in an involuntary bankruptcy) is a California corporation whose principle office is in Beverly Hills and whose CEO, CFO, and Secretary is Rachel.

14. Third-Party Defendant LEVIN PRADO AKA LEVON PRADO ("Prado") is the agent for service of process, controller, and check signer for the Jadelle Entities.

15. The alleged frauds committed by Jona were committed with Rachel's knowledge and direction, along with the assistance of Prado, making them personally liable. Without Rachel setting upon the entities to commit the frauds, Jona's lying to steal Marco's Consigned Jewelry, and Prado signing the check, none of the below referenced offenses could have occurred.

16. Upon information and belief, Third-Party Plaintiffs believe, that at all times relevant hereto Third-Party Defendants, including but not limited to (the Jadelle entities) Jona, Rachel, and Prado, formed a civil conspiracy and engaged in acts in operation and furtherance of that conspiracy.

17. Third-Party Plaintiffs are informed and believe, and so allege, that, at all times mentioned, each of the Third-Party Defendants was the agent, servant, joint venturer, co-conspirator, and/or employee of some or all of the remaining Third-Party Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of that relationship and with the full permission and consent of such Third-Party Defendants. Third-Party Plaintiffs are informed and believe, and so allege, that each Third-Party Defendant ratified, approved, and adopted as its own some or all of the acts of

each of the other Third-Party Defendants. Third-Party Plaintiffs are informed and believe, and thereon allege, that each of the Third-Party Defendants materially aided in some or all of the violations of the other Third-Party Defendants.

18. Third-Party Plaintiffs are informed and believe, and so allege, that the Third-Party Defendants are the alter egos of each other and there exists, and at all relevant times herein there existed, a unity of interest and ownership and control among the Third-Party Defendants, such that any individuality and separateness among them has ceased to exist, and they are alter egos of each other, and thus one or more Third-Party Defendants' business is nothing more than a shell, instrumentality, or conduit through which the remaining Third-Party Defendants carry on certain of their business.

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs.

20. Venue in this district is appropriate pursuant to 28 U.S.C. § 1391(b) because Third-Party Defendants reside in this district and a substantial part of the events giving rise to this action occurred here.

21. On 3-18-2020 2020, David Rovinsky Inc., filed a complaint against Marco, Case # 2:20-cv-02580 for negligence, conversion, fraud, negligent misrepresentation, civil theft (Cal. Penal Code § 496), and aiding and abetting conversion and civil theft seeking damages of $1,130,000.00.

22. Pursuant to FRCP 13(g), Third-Party Plaintiffs cross-claims against Third-Party Defendants, as they are responsible for the Rovinsky claim.

23. Pursuant to FRCP 19, Third-Party Defendants constitute "Required Party' as they are subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

a. (A) in that person's absence, the court cannot accord complete relief among existing parties; or

b. (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

i. (i) as a practical matter impair or impede the person's ability to protect the interest; or

ii. (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

24. Pursuant to FRCP 20, Third-Party Defendants may be joined in this action in one action as defendants if:

a. (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

b. (B) any question of law or fact common to all defendants will arise in the action.

## GENERAL ALLEGATIONS

## JONA RECHNITZ

25. On information and belief, Jona is infamously known for his involvement with a federal probe into corruption in the NYPD and the de Blasio mayoral campaign. He reportedly funneled money into the 2013 de Blasio campaign and bribed police commanders. He admitted to directing campaign donations to Mayor de Blasio in exchange for access to City Hall and showering NYPD leaders with prostitutes and other bribes to cultivate them as allies. He pleaded guilty to charges of to providing financial and personal benefits and political contributions to public officials including law enforcement officials

in exchange for official action in March of 2017. Asked about Jona's testimony, the mayor called Jona *"a liar and a felon*."

26. On 6-6-2016, in the criminal matter entitled: *United States of America vs. Jona Rechnitz*, 1:16-cr-00389-AKH, before the United States District Court Southern District of New York, a sealed information was filed against Jona for wire fraud, who then entered a guilty plea. On 3-15-2017, the information against Jona was unsealed, and Jona was released on bond pursuant to release conditions imposed by Judge Alvin K. Hellerstein. On 12-6-2019, Jona was sentenced to 10 months of custody, and was granted release pending appeal.

27. Interestingly, among the Mandatory Conditions of Jona's release was that he not commit another federal, state or local crime.[2]

28. Indeed, in Jona's 10-16-2019 letter to Judge Hellerstein seeking a reduced sentence, Jona wrote the Court (he shared this letter with Marco):

> *Dear Judge Hellerstein:* ***I am a felon. I am a criminal****. I am the ONLY person to blame for that.* ***I have caused tremendous pain and embarrassment to my family, my religion, and to myself****. There is no way to undo what's been done. It's permanent, and for that I am truly sorry to everyone hurt by my crimes and actions. It eats me alive each and every day. When I wake up, when I go to sleep, it is always on my mind for the past 4 years.* ***My actions harmed the people of New York, The people of Correction Officers Benevolent Association, my friends, my family and my community****. I will forever carry this burden, as I deserve to. I have read of your Honor asking at various sentencings, why do good people do bad things? In my case, not assuming I'm a good person, I can answer this question.* ***Arrogance, greed, and insecurity****.* ***Arrogance. I felt I was above the law****. At this young age in my late 20's I was busy accepting honors at dinners and board positions at prestigious institutions.* ***It got to my head****.* ***Greed****.* ***I wanted to gain contacts to grow my business, to make money and gain stature in the long run****.* ***Insecurity. I wanted to gain popularity by my peers and become a big shot in my community and business circles****.* [Emphasis added].

---

[2] A true and correct copy of Jona's 3-3-2020 *Judgement In a Criminal Case* in *United States of America vs. Jona Rechnitz*, 1:16-cr-00389-AKH is attached hereto as Exhibit "2" and is incorporated herein by this reference.

> ***Shame on me.*** *Finally, I couldn't wiggle my way out of this one. It changed my life as I knew it forever.* ***As a supposed religious man, I have been a disgrace to my religion. The only way to fix this is to make serving G-d my main focus for the rest of my life. I try to every day. I have changed as a person religiously, through prayer, my public and private behavior, and I always stop and think before I'm about to do something to see if it is something my parents, my family, and G-d would approve of.*** [Emphasis added].

---

> *Your Honor, there are so many examples that I am omitting* ***as I don't want to portray myself as the victim here. I caused a lot of pain and harm to others through my criminal activity and don't want to detract from that.*** *JONA RECHNITZ.* [Emphasis added]. [3]

29. On 12-19-19, as reported in the New York Times, ***'Liar,' and Star Witness in City Graft Cases, Gets 10-Month Sentence***" (https://www.nytimes.com/2019/12/19/nyregion/jona-rechnitz-corruption-sentencing.html) Jona was sentenced to five months in prison and five months of house arrest, followed by three years on parole, apologized to Judge Alvin K. Hellerstein for his criminal and immoral behavior, and asked the judge for leniency.

> "***I've been a real fraud to God, a fraud to my wife and family, a fraud as an American, a fraud as a businessman***, *and a fraud to the people of New York, namely, the hard-working COBA members, and I'm truly sorry for that.* ***My actions have hurt many people, and I'm very sorry for that. I continue to pay for my mistakes on a daily basis***. [Emphasis added].

---

> *"While living in New York City,* ***I wrongly felt pressure to become a bigshot****. I was working for one of the largest real restate companies in 2007, and it got to my head. I was in my late 20's, and big people in the real estate industry were dealing with me.* ***My ego was big, and I so badly wanted to impress these people in order to advance my career and profile****. This is where things started to spiral out of control. This is where I went so off the rails for a number of years.* ***I assure your Honor that these past years and the experience I've gone through has changed me. I will never act that way again****."* [Emphasis added].

[3] A true and correct copy of Jona's 10-16-2019 letter to Judge Hellerstein seeking a reduced sentence is attached hereto as Exhibit "3" and is incorporated herein by this reference.

---

> ***"I've been a big hypocrite to my religion. I failed to conduct myself properly between myself and my fellow man and between myself and my relationship with God. I have strayed. I did all of these horrible things without worrying about God or the consequences that come with this sort of behavior****. I cannot express to your Honor how ashamed I am for desecrating my religion.* ***I have and will continue to repent to God every single day. I have and continued to make amends. Part of my efforts to make right included cooperating as a first step. I have a lot more work to do."*** [Emphasis added].

---

> *"This is one of several jobs that I have in the coming months* ***as I continue to sort out my life in a lawful path. In fact, I will spend the rest of my life trying to make amends for my criminal behavior****. I will try to make a better name for my family, for my religion, and for myself.* ***I am on the path to recovery, your Honor. I am a better family man; I am a better friend; I am a more religious person. I am working again to make an honest living****."* [Emphasis added].
>
> *"THE COURT: What is the new business? Jadelle?*
>
> *"Jadelle, yes. I really paid a hefty price for cooperating with the government for my crimes. Most recently, the New York Post put up an article that was mentioned this morning -- your Honor may not be aware – accusing me of hobnobbing and flirting with the rich and famous at a time when I claim I am a pariah to society. In fact, Jadelle Jewelery hosted a jewelery show to promote the brand and new jewelry collection. The event was to make sales and increase business. One attendee was a Kim Kardashian, a client of Jadelle."*

---

> *"Within my community, within the media, and through self-introspection. In New York City, I am persona non grata. I am to blame.* ***I burnt a lot of bridges and relationships and had to relocate to California. I am so truly sorry for my behavior. I am a changed man****..."*
>
> ***"I don't see any way to start over a third time. I'm on my second chance****..."*

---

> *"THE COURT: ... And yet in the life that's been depicted in this court,* ***he cheapens people. He works on their insecurities and their quest for material possessions and just does the opposite. He diminishes people****...."*[4]

---

[4] A true and correct copy of the relevant portions of the transcript of Jona's 12-19-2019 Sentencing Hearing is attached hereto as Exhibit "4" and is incorporated

30. On information and belief, Jona made numerous false statements to the federal sentencing judge because by 12-19-2019, Jona's frauds (below) were well under way. One of the primary reasons for documenting Jona's criminal activities with specificity and by the attachments to this Complaint is to properly expose his fraud and to preempt the "spin" that he and his family will inevitably spin to the community of his innocence and that he is unfairly being pursued. Jona's house of fraudulent cards needs to be exposed. "*The only thing necessary for the triumph of evil is for good men to do nothing*." (Edmund Burke, in a letter addressed to Thomas Mercer). Abuse thrives in a culture of silence.

**MARCO & RECHNITZ (JADELLE)**

31. From the period 8-26-2018 - 12-23-2019, Marco & Jona enjoyed a successful and trusting relationship with each other whereby they engaged in approximately 32 transactions totaling approximately **$39,369,620** in value, whereby they bought merchandise from each other and/or returned merchandise to each other. Jona introduced Marco to famous celebrities, including NBA stars Shaquille "Shaq" O'Neal, Scottie Pippen, Sam Cassell, boxing champ Floyd Mayweather, pop stars Kim Kardishian & Kris Jenner, and artist Alec Monopoly, to name a few, who Marco parlayed Jona's introductions into clients and/or to advance his social media presence by being connected to them.

32. From the period 10-29-2019 - 1-7-2020 (notwithstanding his then legal troubles in NY), Jona assured Marco that he was back from NY refocused on his business, and acquired **$6,950,444.40** of additional jewelry from Marco on consignment for the purpose of reselling them to his clients (including Plaintiff's Ring and Necklace).

---

herein by this reference.

33. At the time, Marco had no reason to believe that the $6,950,444.40 consignments with Rechnitz would be in jeopardy, primarily because of his successful and trusting relationship with Jona, the 32 prior transactions with him totaling approximately **$39,369,620** in value. Accordingly, Marco LLC consigned the following pieces of Consigned Jewelry to Rechnitz.

| # | Date | Vendor | Item | Cost |
|---|---|---|---|---|
| 1 | 10-29-2019 | Luna | Yellow & White Choker Necklace / Bracelet - 69.13 ct 10stone 34.9ct 412,500 yellow /wt choker/bracelet | $150,000.00 |
| 2 | 11-11-2019 | Marco LLC | Three Butterfly Rings for Kris Jenner & the Kardashians | $22,000.00 |
| 3 | 11-19-2019 | David Rovinsky | NECKLACE - 18KYG Diamond necklace, 134.71 Fancy Yellow, internally flawless, VS2 , 49 stones. | $1,300,000.00 |
| 4 | 11-26-2019 | Marco LLC | Two Watches for Jona's client Justin Bieber | $89,000.00 |
| 5 | 11-27-2019 | David Rovinsky | RING - 43.10 Carat Fancy Yellow diamond+ 6.82 carats. | $1,650,000.00 |
| 8 | | Marco LLC | Two Diamond fashion rings for Jona's client Kim Kardashian | $5,000.00 |
| 7 | 12-2-2019 | Norman Silverman (Lazar) | BRACELET - Multi-shape 14 stone diamond bracelet, 45.47 carats, white gold. | $500,000.00 |
| 8 | 12-5-2019 | Marco LLC | Watch for Jona's father Robert & <br><br> Mixed gold & diamond pieces, for Jona's client Alec Andon Monopoly | $145,000.00<br>$44,200.00<br>$189,200.00 |
| 9 | 12-9-2019 | Marco LLC | Cufflinks for Jona's client Chaz | $7,000.00 |

| | | | | |
|---|---|---|---|---|
| 10 | 12-12-2019 | Norman Silverman | BY215 - BRACELET - Platinum/18kwg 36.69 carats, 132 stones, 44 radiant 25.52cttw., 66 baguettes 7.57 cttw | $140,000.00 |
| 11 | 12-16-2019 | Norman Silverman | NS10052 - EARRINGS - 18kwg 2stones, 9.02 Round Brilliant, J/Sl2G, GIA# 2165989714, 9.02 Round Brilliant, J/Sl2, GIA# 2205611416 | $335,000.00 |
| 12 | 12-16-2019 | Lazar | LAZ52342 - RING- 20.54 carat Oval diamond ring, H/VVS2, GIA# 6204485119 | $793, 049.40 |
| 13 | 12-16-2019 | First International | EID MT 13.62 D/VVS1, # 11776564 | $1,333, 695.00 |
| 14 | 12-23-2019 | Marco LLC | Watch for Jona's client Kim Kardashian, and Two Diamond fashion rings for Jona's client Kim Kardashian | $141,500.00 |
| 15 | 1-7-2020 | Eli, Inc. | RING - 15.03 Fancy Yellow internally flawless radiant diamond mounted on a WG ring with a diamond halo. | $215,000.00 |
| 16 | | Marco LLC | Saloman (charge back credit card) | $80,000.00 |
| | | | **TOTAL** | **$6,950,444.40** |

34. Prior to 10-29-2019, and thereafter, Rechnitz repeatedly represented to Marco that he had interested buyers for the pieces of Consigned Jewelry, and that consummation of his sales were imminent.

35. As stated above, on 11-19-2019 and on 11-27-2019, Marco LLC consigned Rovinsky's Ring & Necklace to Rechnitz based on his representations that he had buyers for them.

| **Date** | **Vendor** | **Item** | **Cost** |
|---|---|---|---|
| 11-19-2019 | Marco LLC to Rechnitz | NECKLACE - 18KYG Diamond necklace, 134.71 Fancy Yellow, internally flawless, VS2 , 49 stones. | $1,300,000.00 |

| | | | |
|---|---|---|---|
| 11-27-2019 | Marco LLC to Rechnitz | RING - 43.10 Carat Fancy Yellow diamond+ 6.82 carats. | $1,650,000.00 |
| | | **TOTAL** | **$2,950,000.00** |

36. The way consignments work, is that if Rechnitz's sale to his clients did not go though, then Rechnitz would return the pieces of Consigned Jewelry back to Marco, who would in turn, return the Consigned Jewelry back to Marco's vendors.

37. Prior to 10-29-2019, and thereafter, Jona repeatedly indicated to Marco that he had buyers and sold the pieces of Consigned Jewelry (including Rovinsky's Ring & Necklace), and was awaiting receipt of payment from his clients. These representations by Jona to Marco were false when made, and Jona knew the representations were false when made. Jona made these representation with the intention of causing Marco to rely on them. Marco indeed relied on Jona's representations to Marco's detriment.

38. Yet, no sooner than within weeks of being sentenced in the Southern District of New York, Jona, a convicted felon, was apparently so "distraught" and repentant about his criminal past, that instead of reselling Marco' Consigned Jewelry (including Rovinsky's Ring & Necklace) and repaying Marco, Jona swindled Marco in a large scale fraud by absconding with the pieces of Consigned Jewelry, and either pawned them off, or used them as collateral for loans to various questionable sources, and has not repaid Marco the $6,950,444.40. In reality, Jona liquidated Marco' Consigned Jewelry (including Rovinsky's Ring & Necklace). Marco subsequently discovered from colleagues that Jona liquidated all pieces of Marco LLC's Consigned Jewelry (including Rovinsky's Ring & Necklace).

39. On information and belief, at this same time, Jona defrauded other diamond dealers and insurance companies in Southern California, including but not

limited to: Sotheby's, Leon Landver, Ben Adhoot, and Yehuda Gamzo, Oved Anter, Moti Klein, and Julius Klein. The amount of losses to these various parties is alleged to be over $15,000,000.00.

40. But even after Marco discovered Rechnitz's recent frauds from colleagues in the jewelry industry, Rechnitz continued to 'play' Marco and deceive him with further false and misleading stories:

On 1-21-20, at 10:22:38AM, Rechnitz texted Marco of a 'major issue' a 'legal situation' a 'huge crisis' and a 'disaster' that forced him to not consummate his deals with Marco:

> *The stone of Oved's is coming back tomorrow with all of the other stones. Client isn't taking anythinf.* ***I have a major issue now they didn't know about my legal situation and freaked out*** *they also want to reverse previous transactions of mine. He can't be associated with me. A man of his status.* ***I'm dealing with a huge crisis now and my Dad is at bank trying to sort out issue for me in regards to all this. I stopped the wire because they may be sending the necklace and ring back. I need a few hours to deal with them with my lawyer. This is a disaster. I am trying to fix this*** *but won't know for a few hours. I also have Moty Klein in town at the same time while this is all going on which is extra stress as he can't hear any of this. Give me a few hours please and I hope to have better news*. [Emphasis Added].

41. On 1-21-20, at 10:23:29AM, Rechnitz texted Marco a vague admission of guilt and liability:

> ***I understand if you never want to deal with me again or see my fave ever again I am so sorry***. [Emphasis Added].

42. On 1-21-20, 10:24:09AM, Rechnitz texted Marco that he is trying to fix his 'major issue' a 'legal situation' a 'huge crisis' and 'disaster:' :

> ***You need to let me try and resolve this now***. [Emphasis Added]

43. On 1-21-20, at 10:33:53AM, Rechnitz texted Marco his shame and depression that his recent frauds are causing Marco:

> ***You don't even need to type back anything to me I'm depressed. Upset. This all happened Yesterday evening***. *I'm dealing with it. Standby* [Emphasis Added].

44. In addition, and to make matters worse, on 1-5-2020, Jona issued Marco a worthless check that he had no intention of honoring, # 8630 for

$2,950,000.00 post-dated to 1-5-2020 (for the two Rovinsky pieces he had on consignment from Marco).

| Check # | Date | To | $ |
|---|---|---|---|
| 8630 | 1-5-2020 | Peter Marco | $2,950,000.00 |

45. Even had Marco tried to deposit Rechnitz's $2,950,000.00 post-dated check, he could not because Rechnitz had instructed him to rip it up earlier based on his promises to Marco that he would wire the funds to Marco.

46. In addition, and as an aside, on 1-17-2020 Jona issued two worthless checks to another one of his defrauded creditors First International totaling $2,122,760.00 that he had no intention of honoring: (1) Check # 2200 for $922,760.00; and (2) Check # 2201 for $1,200,000.00. Both checks were NSF at the time of tender, in violation of the California Civil Code § 1719 and the California Penal Code §476a.

47. In addition, and to make matters worse, on 1-14-2020 Jona issued another defraused creditor Franco Noval a worthless check that he had no intention of honoring, check # 8817 for $2,500,000.00, and then on 1-16-2020 check # 8820 for $1,300,000.00, and then on 1-22-2020 check # 8823 for $4,500,000.00 also in violation of the California Civil Code § 1719 and the California Penal Code §476a.

| Check # | Date | To | $ |
|---|---|---|---|
| 8630 | 1-5-2020 | Peter Marco | $2,950,000.00 |
| 8817 | 1-14-2020 | Franco Noval | $2,500,000.00 |
| 8820 | 1-16-2020 | Franco Noval | $1,300,000.00 |
| 2200 | 1-17-2020 | First International | $922,760.00 |
| 2201 | 1-17-2020 | First International | $1,200,000.00 |
| 8823 | 1-22-2020 | Franco Noval | $4,500,000.00 |
| | | Total NSF Checks issued by Jona | **$13,372,760.00** |

48. Based upon information and belief, Third-Party Defendant Prado, acting in concert with Jona, and to further his scheme, signed Marco's post-dated check and had his girlfriend or another representative at Wells Fargo Bank issue a stop payment on the check, that Marco was going to deposit.

49. During this entire time, Jona repeatedly lied to Marco that the deals with his clients were consummated. Jona lulled, and attempted to fabricate one excuse after another to delay paying Marco, and hid the truth from them through stonewalling and lies. Repeated demands have been made to Jona to return Marco's Consigned Jewelry (including Rovinsky's Ring & Necklace). Instead, Jona, took numerous steps to lull Marco into a false sense of security to buy more time, and to keep this matter secret via phone calls and WhatsApp texts.

50. On 1-22-2020 at 5:12:52, once Jona's most recent frauds in stealing and liquidating Marco' Consigned Jewelry (including Rovinsky's Ring & Necklace) and of other victims, hit the streets, Jona texted Marco begging him to stay quiet and not report him, lulling him to buy time:

"***I'm at my cousin lawyer and cousin*** *still getting everything sorted out* ***so no noise and no issue*** *I'll see you later still.*" [Emphasis added].

51. On 1-27-20 at 3:47:58, Jona repeated his request that Marco not report him for his fraud:

"*Please confirm the following: They will wait until end of day tomorrow* ***and keep it quiet****. Need to know ASAP*"

and then at 4:03:11:

"*Need to know NOW*.".

52. On 1-29-20 at 7:55:07, Jona repeated his request that Marco not report him for his fraud:

"*All I can say is I'm handling things and **don't discuss anything with anyone. No updates to people who call you** unless it's oved or lazar*." [Emphasis added].

53. On 1-30-2020 at 11:35am, Jona introduced Oved Anter of First International Diamonds to an attorney at Williams & Cohen about the Rechnitz cousin's proposed bailout:

"*Oved meet Reuven. Reuven oved is a vendor I owe and used his goods for loans. **He has been the single biggest force in helping keep people calm**. He needs to hear from you in order to continue please. Thank you*." [Emphasis added].

54. On 2-4-2020, 12:30:22, Jona repeated his request that Marco not report him to news outlets for his fraud:

"*Pls confirm you didn't hear back **or communicate to the paper***." [Emphasis added].

55. On 2-4-2020 at 3:36:55, Jona texted Marco of his fear of being reported to the authorities for his fraud:

"*Is david dealing through you because **I heard he wants to report me** so **confirm that he is holding off** and you'll wait to hear from my lawyers*"

and then at 4:49:01 texted Marco:

"***Make sure you ignore the reporter**. Moty is too. **She can't print without a comment***." [Emphasis added].

56. That night, on 2-4-2020 at 9:40pm, Jona falsely enlisted attorneys to pretend a bailout was coming from family members to buy himself more time. Attorneys from Williams & Cohen wrote Marco about the purported bailout:

"*We write with an update on Jona Rechnitz. **A family member of Mr. Rechnitz has informed our law firm that the family member is seeking to refinance certain real property in order to satisfy Mr. Rechnitz's outstanding liabilities**. We currently have no visibility into the family member's interest in the property, the value of the property, or what, if any equity, the family member has in it. If you are represented by counsel, please let us know and provide your counsel's contact information. Our client's desire is to resolve this matter amicably*."

57. Meanwhile, on 2-10-2020, as reported in the NY Post: ***"Ex-de Blasio crony used Kardashian ties for fraud scheme, lawsuit claims***,"

(https://nypost.com/2020/02/09/ex-de-blasio-crony-used-kardashian-ties-for-fraud-scheme-lawsuit-claims/), and as reported in the 3-6-2020 article in JCK: ***"The Troubling Case of Jona Rechnitz***" (https://www.jckonline.com/editorial-article/the-troubling-case-jona-rechnitz/), and as reported in the 3-10-2020 NY Daily News article "***Corrupt Mayor de Blasio donor Jona Rechnitz faces new FBI probe in L.A.: court papers***" (https://www.nydailynews.com/new-york/ny-rechnitz-los-angeles-probe-20200310-nrzbb6263nga3hkcyob2lw46wq-story.html), one of Jona's recently defrauded victims filed a lawsuit entitled: *Victor Franco Norval vs Jona S. Rechnitz, Rachel Rechnitz, Jadelle Inc., a California Corporation; Jadelle Jewelry and Diamonds, LLC, a Delaware Limited Liability Company; Levin Prado Aka Levon Prado, an Xiomara Cortez*, LASC # 20SMCV00216, for (1) Fraud (2) Civil Theft (Penal Code, § 496), (3) Breach of Contract, (4) Conspiracy to Commit Theft, Fraud, and Fraud by Concealment, (5) Appointment of Receiver seeking damages of $7,000,000.00.

58. Interestingly, on 2-22-2020, Jona's father Robert Rechnitz reiterated the proposed bailout by Jona's cousin to Marco and represented that Marco would be paid "*first in line*" by Jona's cousin.

59. And then on 2-20-2020, as reported in the NY Post "***De Blasio donor Jona Rechnitz accused of $1M scam in California***," (https://nypost.com/2020/02/28/de-blasio-donor-jona-rechnitz-accused-of-1m-scam-in-california/) another one of Jona's defrauded victims filed a lawsuit entitled: *Israel Sam Gorodistian vs. Jadelle Jewelry and Diamonds, LLC, a Delaware Limited Liability Company; Jadelle Inc., a California Corporation; Jona Rechnitz, Rachel Rechnitz, Robert Rechnitz*, LASC # 20STCV07425, for 1. Conversion; 2. Civil Theft (Pen. Code § 496); 3. Fraud – False Promise; 4. Negligent Misrepresentation; 5. Civil Conspiracy to Defraud; 6. Breach of

Oral Contract (2 Counts); 7. Breach of Implied-in-fact Contract (2 Counts); 8. Money Lent; 9. Account Stated; and 10. Breach of Written Guaranty seeking damages of $1,659,333.33.

60. Jona is no stranger to fraud. Unbeknownst to Marco, on 6-3-2019, Jona was sued in the United States Bankruptcy Court Southern District of New York (Manhattan), Adv. Case No, # 19-01236-jlg by Kenneth P. Silverman, Esq., the Chapter 7 Trustee of the Jointly Administered Estates of National Events Holdings, LLC, Chapter 7 Case No.: 17-11556 (JLG) on 35 counts of receiving fraudulent conveyances through an elaborate Ponzi scheme, pursuant to New York Debtor and Creditor Law §276, and (b) pursuant to 11 U.S.C. §§550(a) and 551, 11 U.S.C. §548(a)(1)(A), and (b), 11 U.S.C. §548(a)(1)(B), and (b), totaling $45,000,000.00.

**JONA AND ROBERT RECHNITZ**

61. On information and belief, Jona personally ingratiated himself to Marco, as an Orthodox Jewish diamond dealer, leading Marco to believe that Jona was more trustworthy than others because of his Orthodox faith and belief in Jewish law (and common Orthodox Jewish friends in and out of the Diamond industry), which requires honesty and maximum integrity. These types of internal community relationships such as the Orthodox Jewish diamond community create a vulnerability for affinity fraud to be perpetuated. Jona targeted Marco exploiting his standing in, and knowledge of, the customs and practices of this community to further his fraudulent scheme. This type of illegal activity is commonly referred to as "affinity fraud," and refers to scams that prey upon members of identifiable groups, such as religious or ethnic communities, the elderly, or professional groups. The perpetrators of affinity fraud scams, like Jona, frequently are, or pretend to be, members of the group, and they exploit the trust and friendship that exist in groups of

people who have something in common. The conventional thinking is that the religious man doing business with you is unlikely to ruthlessly rip you off.

62. On information and belief, Jona and his father Robert Rechnitz's ("Robert") *modus operandi* is as follows: Robert would meet Marco in Jona's office and at his office, endearing Marco with old school charm warmth & friendship to place him at ease, while Jona would rip him off in broad daylight and steal from him. Then, once Jona's fraud was discovered by his victims (including Marco), Robert was there officially trying to clean up Jona's messes, further lulling the defrauded creditors (including Marco), with promises of bailouts, putting his friendships with Jona's victims on the line so-to-speak, in the unspoken understanding that an action against Jona would be tantamount to an action against Robert. The two acted in tandem like a tag-team to further defraud Marco and other victims.

63. On the one hand, it is laudable for a loving parent to come to the aid of their child in distress, no matter what. On the other hand, in this case, Marco believes that Robert's involvement was too interwoven with Jona's criminal actions to be innocent or laudable. For example, throughout their relationship, Jona constantly brought his father Robert into the conversations and transactions portraying him to Marco as the moral authority and the one overseeing and coaching Jona's affairs, who's presence conferred legitimacy on Jona's wild bragging and transactions, who appeared at the epicenter whenever Jona's frauds were discovered by his victims (including Marco).

64. On 8-8-19, at 15:24:03, Jona texted Anter about Jona's father Robert:

***My Dad is a nice guy doesn't talk when ppl owe him ?? lee. Yossi. But keeps getting mad I talk to you too much***. [Emphasis added]

65. On 10-28-19 at 8:43:40, Jona texted Marco citing his father as a bailout source for him:

4/24-1:56pm

"*Issue! My account has a charge back from that client! Money was withdrawn from my account not enough funds for your wire this morning Bc sent after cutoff Friday. Will resolve next few hours and* ***get money from my Dad today****. Bear with me until later in the day. I'm sorry. Unforseen.*" [Emphasis added].

66. On 11-5-19 at 9:22:25, Jona texted Marco seeking a bailout for his father:

"*You know me by now if I would ever need anything from a friend YOU this is a level 10. I committed to something by tonight* ***that is not reversible for my Dad*** *and said it is done. Please tell me you got me and let me breathe here. Thx*"

and at 11-5-19 at 10:12:57:

"*I am sorry to pressure you and now I'm just letting you know for me this is super urgent And* ***you are the only person I am comfortable to discuss this with. Obviously it goes without saying I will go all the way for you and I do not need to even say that here but I feel like saying it to remind you I'm always in your corner*** *either way I hope we have good news today because I'm out of options thank you*," [Emphasis added].

and at 11-5-19 at 11:44:55 endeared himself to Marco as his 'brother:'

"***Brother*** *pls help me here*" and finally, at 11-5-19 at 1:58:26: "***My Dad*** *is good with 70*." [Emphasis added].

67. On 1-21-20 at 10:22:38, after Jona's recent frauds to Marco was revealed (by other sources in the community), Jona cited his father as the one trying to solve Jona's frauds, Jona texted Marco:

"*The stone of Oved's is coming back tomorrow with all of the other stones. Client isn't taking anythinf. I have a major issue now they didn't know about my legal situation and freaked out they also want to reverse previous transactions of mine. He can't be associated with me. A man of his status.* ***I'm dealing with a huge crisis now and my Dad is at bank trying to sort out issue for me in regards to all this****. I stopped the wire because they may be sending the necklace and ring back. I need a few hours to deal with them with my lawyer. This is a disaster. I am trying to fix this but won't know for a few hours. I also have Moty Klein in town at the same time while this is all going on which is extra stress as he can't hear any of this. Give me a few hours please and I hope to have better news.*" [Emphasis added].

68. On 1-26-20 at 12:18:08 PM, Jona texted Marco a report of his father's attempts to rectify his most recent frauds to his vendors:

"*And lazar tried to control things a little too much from my cousins money.* ***My Dad very involved*** *joe. Just wait...Promise you*" and at 1-26-20 at 12:18:15: "*now." [Emphasis added].

69. For now, Robert is not a named party, but Marco reserves the right to name him as a Third-Party defendant once facts become known as to the full extent of his involvement with Jona's most recent frauds. Parenthetically, Robert was recently placed into an involuntary bankruptcy/receivership by his creditor ITOR 116 SF LLC in Israel, Case # 27255-09-18 for debts in excess of $2,600,000.00 shekel ($9,500,000.00 dollars) ("***Receiving order against businessman Robert Rechnitz, who is close to Netanyahu***" http://www.calcalist.co.il//articles/0,7340,L-3803076,00.html) but the Israeli bankruptcy does not stay Marco's claims against him in this country.

70. On 3-9-2020, Marco' litigation counsel Baruch C. Cohen ("Cohen") extended a professional courtesy to Robert to inform him that Cohen had been retained by Marco to sue Jona, inquiring (actually, hoping) that Rechnitz's cousin's bailout was imminent, to avoid the litigation. Further, as Robert personally guaranteed the debts to Oved Anter and First International of up to $12,000,000.00, that Cohen would reluctantly have to sue Robert as well. Cohen told Robert that he personally preferred ***not*** to have to sue Robert, as both pray at the same synagogue in Hancock Park and have known each other for years. Cohen acknowledged that Robert attempted to help Cohen in the past and was gracious in Cohen's time of need, as Cohen was to Robert's. Cohen acknowledged that Jona introduced Cohen to Marco. Cohen made it clear that he took no joy in prosecuting these cases on behalf of Marco and Anter against Jona and Robert, as Cohen agonized over it for over a month ever since Marco was being pursued by Rovinsky because of Jona's actions. But, Cohen explained, that Jona placed his clients in a terrible predicament exposing them to millions of dollars of damages from Rovinsky and others, and the scope of Jona's perfidy and betrayal was so breathtaking, overwhelming and devastating, that Marco and Anter absolutely insisted that

Cohen protect their interests. While Cohen did not expect Robert to be pleased with this decision, as Marco's attorney, Cohen owed Marco a 100% duty and must represent his client's interests.

71. Further, in the matter of *Oved Anter & First International Diamonds* ("Anter") vs Rechnitz et al, on 6-25-2019 Robert personally guaranteed up to $12,000,000.00 of Jona's debt to Anter. Robert's 6-25-2019 Personal Guaranty to Anter stated that Robert stood behind Jona and all his dealing. It reads as follows:

*Dear Oved / First International Diamonds Inc., I very much enjoyed speaking to you by phone. Jona has shared some of your conversations with me. Thank you for being a confidant for Jona. He mentioned to me about how your Father had a special bond and relationship with you. I was also privileged to have a close relationship with my Father, as did Jona. I'm sure you will find much success in your dealings together. I completely understand your desire to know that Jona's family is aware of his dealings with you and stands behind him.* ***I am pleased to confirm that I stand behind Jona and all his dealing with you. You have indicated that you have extended memos up to the amount of $12,000,000.00. If for some reason you need to callback your credit line, all merchandise will be returned to you, and any cash deficiencies will be repaid by me.*** *. May your confidence in Jona and your extension of credit be profitable for both of you.* BOBBY RECHNITZ / CC: JONA RECHNITZ [Emphasis added]

72. Jona personally handed Robert's 6-25-2019 Personal Guaranty letter to Anter several days after Robert orally promised to personally guaranty Jona's debts to Anter, while all three met at Pat's Kosher Restaurant on Pico Boulevard.

73. On 6-25-19 at 16:22:18, Jona Whatsapp texted Oved - confirming Robert's Personal Guaranty:

"*It's good to know* ***I'm worth 12mm to my Dad*** *not 10mm lol*."

[Emphasis added].

74. On 7-3-19 at 21:58:14 Jona Whatsapp texted Oved again, confirming the UCC Financing Statement and the Personal Guaranties to Anter:

"*OK also I filled out the application so Monday let's go through it I am away until Monday I will come see you Monday I will take care of that and I will get the application filled out with you. No worries.* ***In meantime you have UCC. <u>My Dad guarantee in writing</u>. My***

***guarantee. My wife. Everything and the legal document that's owns me. I want you to feel protected and will make it happen***." [Emphasis added].

75. On 3-9-2020 Cohen notified Robert that he would have to sue Robert on the personal guarantee to Anter as well.

76. 3-10-2020 was the Jewish holiday of Purim, and Robert approached Cohen in synagogue that night acknowledging the professional courtesy extended to him, and asked to speak to Cohen under the guise and pretext of wanting to talk about "nothing legal, just as friends." Cohen reiterated the above, and Robert repeatedly denied personally guaranteeing the debts to Anter.

77. Robert's denial that he personally guaranteeing the debts to Anter was indeed curious, as Cohen had a copy of Robert's 6-25-2019 Personal Guaranty in his file. So, what was Cohen to make of Robert's denials? Was he involved with Jona's frauds, or was he not?

78. If indeed, Robert did not sign the Personal Guaranty to Anter - as he insisted to Cohen orally - and giving Robert the benefit of the doubt - then that would mean that Jona forged his own father's name to Robert's 6-25-2019 Personal Guaranty to Anter, and shamelessly exploited Anter's trust and his father's name, using a doctored document to continue to commit crimes while out on bail.

79. On 3-10-2020 at approximately 10:00pm that night, Jona resumed and resorted to his criminal behavior and called Marco, livid that Cohen is "going after his family and his father" threatening him and Anter that unless he receives a letter from Marco and Anter that they will be firing Cohen as their attorney, that Jona will engage in an all out war, "destroy" "rip apart" and "mess and fuck Cohen good" with the State Bar (claiming to have texts that Cohen was his lawyer creating a conflict of interest), and report Anter to the IRS for criminal tax evasion. Jona repeated his bogus pledge that his cousin is

still working on bailing him out to make Marco whole within one week, but that it was conditional on them firing Cohen. Jona brazenly assured Marco that his role as one of the single most important and prolific white collar cooperating witnesses in the recent history of the Southern District of New York, with his working closely with the FBI as an informant, along with the fact that he only received 10 months custody time with 5 months house arrest, that since the FBI needs him as an informant so badly in the New York case that they would never do anything to him no matter what he did, making him immune from any further prosecution (mistakenly believing that this provides him some kind of ill-conceived immunity from committing criminal acts of fraud and extortion in California [ie., Penal Code 518]). Tragically, Jona learned nothing from his life of crime and resorted to his old tricks of extortion and blackmail, and if anything, has become emboldened by it.

80. In said conversation, Jona immediately conferenced-in his father Robert into the late night conversation (who was curiously readily available), under the guise and pretext of wanting to talk about "nothing legal, just as friends."

81. Obviously, whatever good will Cohen was prepared to extend to Robert disintegrated by Jona's extortion call and Robert's convenient joinder late that night.

///
///
///
///
///
///
///
///

82. After Jona finished threatening Marco, Cohen and Anter, Jona texted Marco at 10:55pm a veiled confirmation of the conversation:

83.    As to Jona's threats to report Cohen to the State Bar, Jona merely introduced Cohen to Peter Marco and nothing more. Jona was never Cohen's client, and Cohen was never Jona's lawyer, as evidenced by Jona's texts to Cohen.





84. Obviously, by this lawsuit, Cohen is not resigning and will remain counsel of record for both of his clients, and he and Marco will not be scared away or intimidated by Jona's criminal threats of extortion.

85. As reported in the 2-12-2020 NY Post article "***DeBlasio Donor Jona Rechnitz Used Kardashian Ties to Further His Schemes***" (http://thejewishvoice.com/2020/02/deblasio-donor-jona-rechnitz-used-kardashian-ties-to-further-his-schemes/) Jona Rechnitz's dark dealings is eerily similar of the character Howard Ratner, played by actor Adam Sandler, in the 2019 film "Uncut Gems," of a charismatic debt-ridden gambling addict, a wheeling, dealing, greedy Jewish diamond dealer, scheming, ripping people off, swearing and making bold plays to try and advance his own life, clearly headed toward self-destruction.

**FIRST CAUSE OF ACTION**

**INTENTIONAL MISREPRESENTATION & FRAUD**

(*On behalf of Third-Party Plaintiffs as to Jona Rechnitz, Rachel Rechnitz, Levin Prado*)

86. Third-Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

87. The foregoing representations made by Jona, and the Third-Party Defendants were false when they were made, and Third-Party Defendants knew the representations to be false. Jona and the Third-Party Defendants did not intend to comply with the promises and representations when they were made.

88. The foregoing representations were made by Jona and the Third-Party Defendants with the intent to deceive Marco and with knowledge that Marco would rely on them.

89. Third-Party Plaintiffs detrimentally and reasonably relied on the foregoing representations.

90. Third-Party Plaintiffs have been damaged by Third-Party Defendants' false, intentional, and fraudulent representations and concealing of material information, as alleged above, in an amount to be proven at trial, but at least $6,950,444.40, which represents the consigned jewelry Jona lied to steal as well as tendered worthless instruments for.

91. Third-Party Plaintiffs further request the imposition of a constructive trust against all Third-Party Defendants who are in possession of the Consigned Jewelry set forth in the Consignment Memos and for an order and judgment that they hold the consigned jewelry and/or all proceeds therefrom as constructive trustees for the benefit of Marco.

92. In doing the things herein alleged, Jona and the Third-Party Defendants acted willfully, maliciously, and with the intent to cause injury and harm to Marco. All Third-Party Defendants are therefore guilty of malice and/or fraud in conscious disregard of Marco' rights, thereby warranting an assessment of punitive and exemplary damages in an amount appropriate to punish Third-Party Defendants, and each of them, and deter them and others from engaging in similar misconduct.

## SECOND CAUSE OF ACTION

## CIVIL THEFT (Cal. Penal Code § 496)

(*On behalf of Third-Party Plaintiff as to Jona Rechnitz, Rachel Rechnitz*)

93. Third-Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

94. As a result of Jona and Third-Party Defendants' conduct as alleged herein, they have violated California Penal Code, §496 that provides: "[e]very person who buys or receives any property that has been stolen or that has been

obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170. However, if the value of the property does not exceed nine hundred fifty dollars ($950), the offense shall be a misdemeanor, punishable only by imprisonment in a county jail not exceeding one year, if such person has no prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290.

95. Jona and Third-Party Defendants have obtained and received property from Marco, the $6,950,444.40 of Consigned Jewelry, in a manner constituting "theft," as that term is defined in California Penal Code, § 484(a) that provides: "[e]very person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."

96. Third-Party Defendants' conduct constitutes theft, as that term is defined in California Penal Code § 484(a).

97. As a direct and proximate result of Third-Party Defendants' civil theft, Marco has been damaged in an amount to be proven at trial, but at least $6,950,444.40.

98. Pursuant to California Penal Code, § 496(c), Marco is also entitled to recover treble damages from Third-Party Defendants.

99. Pursuant to California Penal Code, § 496(c), Marco is also entitled to recover attorneys' fees from Third-Party Defendants.

100. Marco further requests the imposition of a constructive trust against all Third-Party Defendants who are in possession of the consigned jewelry set forth in the Consignment Memos and for an order and judgment that they hold the consigned jewelry and/or all proceeds therefrom as constructive trustees for the benefit of Marco.

101. In doing the things herein alleged, Third-Party Defendants acted willfully, maliciously, and with the intent to cause injury and harm to Marco. Third-Party Defendants are therefore guilty of malice and/or fraud in conscious disregard of Marco's rights, thereby warranting an assessment of punitive and exemplary damages in an amount appropriate to punish Third-Party Defendants, and each of them, and deter them and others from engaging in similar misconduct.

## THIRD CAUSE OF ACTION

## EMBEZZLEMENT

(*On behalf of Third-Party Plaintiffs as to Jona Rechnitz*)

102. Third-Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

103. Based on the foregoing, Jona, without Marco' knowledge or consent, instead of reselling Marco's Consigned Jewelry (including Rovinsky's Ring & Necklace) and repaying Marco, Jona swindled Marco in a large scale fraud by

absconding with Marco's Consigned Jewelry (including Rovinsky's Ring & Necklace), and either pawned them off, or used them as collateral for loans to various questionable sources, and has not repaid Marco the $6,950,444.40. In reality, Jona liquidated Marco' Consigned Jewelry Marco's Consigned Jewelry (including Rovinsky's Ring & Necklace) , and refused to tell Marco how he liquidated the Consigned Jewelry or how he spent the proceeds. Marco asked Jona to disclose the location of the Consigned Jewelry and to provide a tracing and accounting of the proceeds, and Jona refused to do so.

104. In engaging in the conduct described above, Jona acted despicably, willfully, wantonly, oppressively, fraudulently, or in conscious disregard of Marco's rights, within the meaning of Civil Code § 3924(c), so as to entitle Marco to punitive damages in an amount sufficient to punish or make an example of Jona.

105. As a result of Jona's actions, Marco have been damaged in an amount according to proof, plus interest, costs, and attorneys' fees as permitted by law.

**FOURTH CAUSE OF ACTION**

**CIVIL CONSPIRACY TO COMMIT THEFT, FRAUD, AND FRAUD BY CONCEALMENT**

(*On behalf of Third-Party Plaintiffs as to Jona Rechnitz, Rachel Rechnitz, Levin Prado*)

106. Third-Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

107. Jona, Rachel and Prado conspired to make illegal agreements to defraud Marco of the consigned jewelry and to commit civil theft.

108. Jona, with his wife Rachel, have set up companies to solicit consigned jewelry based upon the false premise they have clients to sell them to.

Meanwhile they took Marco's Consigned Jewelry (including Rovinsky's Ring & Necklace), swindled Marco in a large scale fraud by absconding with the pieces of jewelry, and either pawned them off, or used them as collateral for loans to various questionable sources, and has not repaid Marco the **$6,950,444.40**. In reality, Jona liquidated Marco's consigned jewelry, and refused to tell Marco how he liquidated the consigned jewelry or how he spent the proceeds. Marco asked Jona to disclose the location of the consigned jewelry and to provide a tracing and accounting of the proceeds, and Jona refused to do so.

109. Jona deceived Marco to consign them the $6,950,444.40 in jewelry, with false promises of consummated sales and with false promises of repayment.

110. Third-Party Plaintiffs are informed, believe, and thereupon allege that at all times relevant hereto, Third-Party Defendants formed a civil conspiracy and engaged in the foregoing acts in operation and furtherance of that conspiracy.

111. Third-Party Plaintiffs are informed, believe, and thereupon allege that at all times relevant hereto, Third-Party Defendants committed the foregoing misrepresentations, wrongs, theft, and fraud for the purpose and in furtherance of a fraudulent conspiracy and scheme to defraud Marco, as alleged herein.

112. As a result of the civil conspiracy, each and every Defendant is liable and responsible for the acts of the other Third-Party Defendants in furtherance of the conspiracy and all damages resulting therefrom.

113. As a result of the civil conspiracy, Third-Party Defendants are jointly and severally liable for $6,950,444.40.

114. The egregious nature of the Third-Party Defendants/conspirators' collective conduct is malicious, wanton, and willful. Marco need to be awarded punitive damages plus a judgment of joint and several liability.

///

///

**FIFTH CAUSE OF ACTION**

**CONVERSION**

(*On behalf of Third-Party Plaintiffs as to Jona Rechnitz, Rachel Rechnitz*)

115. Third-Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

116. At all times relevant, by virtue of their Consignment Memos, Marco owned, possessed, or had a right to receive and possess their $6,950,444.40 in Consigned Jewelry.

117. Third-Party Plaintiffs recently discovered that the Third-Party Defendants have intentionally and substantially interfered with Marco's property by means of false and fraudulent activity, including, but not limited to, misappropriating Marco' Consigned Jewelry (including Rovinsky's Ring & Necklace) for their own personal use and other theft according to proof. The Third-Party Defendants engaged in this conduct with the intention of wrongfully benefitting themselves at the expense of Marco.

118. Third-Party Defendants sold, encumbered, or otherwise transferred Marco's Consigned Jewelry (including Rovinsky's Ring & Necklace) to third parties of questionable reputation, subject to Marco's Consignment Memos without the knowledge of Marco. These transferees took possession of Marco' Consigned Jewelry (including Rovinsky's Ring & Necklace). Once Marco discovers the identities of these fraudulent transferees, Marco will amend this Complaint to add them as Third-Party Defendants to a claim and delivery (replevin) cause of action.

119. Third-Party Plaintiffs did not consent to said activities.

120. As a direct and proximate result of the foregoing acts, Third-Party Defendants intended to cause, and have in fact caused, actual harm to Marco, and are liable to Marco for damages in an amount to be proven at trial, but no less than $6,950,444.40.

121. During, and as a further proximate result of, the Third-Party Defendants' wrongful possession and detention of Marco's Consigned Jewelry, Marco has suffered the loss of the deterioration of their property and resulting business losses in an amount to be proven at trial.

122. Furthermore, Marco is informed and believe, and so allege, that the Third-Party Defendants' aforementioned acts were taken with malice, fraud, and oppression and in conscious disregard for Marco's rights, and were done willfully and with the intent to cause injury to Marco. The Third-Party Defendants were aware at all times that Marco was owed either return of the consigned goods or repayment of $6,950,444.40 and intended to surreptitiously misappropriate Marco's consigned goods and funds for their own personal use, seeking only to intentionally and maliciously deceive Marco. Accordingly, Marco is entitled to an award of exemplary and punitive damages against the Third-Party Defendants.

**SIXTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

(*On behalf of Third-Party Plaintiffs as to Jona Rechnitz, Rachel Rechnitz*)

123. Third-Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

124. Third-Party Plaintiffs, (the Jadelle Parties), Jona and Rachel are parties to binding contracts, the Consignment Memos.

125. At all times, Marco performed all conditions, covenants, and promises required in accordance with the terms of the Consignment Memos,, except as

they have been prevented or excused from performing by the acts and/or omissions of (the Jadelle Parties), Jona & Rachel.

126. Under the 10-29-2019 Consignment Memo to Luna, (the Jadelle Parties) and Jona & Rachel were to either return the Yellow & White Choker Necklace / Bracelet to Third-Party Plaintiffs or pay them $150,000.00.

127. Under the 12-2-2019 Consignment Memo to Norman Silverman, (the Jadelle Parties) and Jona & Rachel were to either return the BRACELET - Multi-shape 14 stone diamond bracelet, 45.47 carats, white gold to Third-Party Plaintiffs or pay them $500,000.00.

128. Under the 12-12-2019 Consignment Memo to Norman Silverman, (the Jadelle Parties) and Jona & Rachel were to either return the BY215 - BRACELET - Platinum/18kwg 36.69 carats, 132 stones, 44 radiant 25.52cttw., 66 baguettes 7.57 cttw to Third-Party Plaintiffs or pay them $140,000.00.

129. Under the 12-16-2019 Consignment Memo to Norman Silverman, (the Jadelle Parties) and Jona & Rachel were to either return the NS10052 - EARRINGS - 18kwg 2stones, 9.02 Round Brilliant, J/Sl2G, GIA# 2165989714, 9.02 Round Brilliant, J/Sl2, GIA# 2205611416 to Third-Party Plaintiffs or pay them $335,000.00.

130. Under the 12-16-2019 Consignment Memo to Lazar, (the Jadelle Parties) and Jona & Rachel were to either return the LAZ52342 - RING- 20.54 carat Oval diamond ring, H/VVS2, GIA# 6204485119 to Third-Party Plaintiffs or pay them $793, 049.40.

131. Under the 12-16-2019 Consignment Memo to First International, (the Jadelle Parties) and Jona & Rachel were to either return the EID MT 13.62 D/VVS1, # 11776564 to Third-Party Plaintiffs or pay them $1,333, 695.00.

132. Under the 11-19-2019 Consignment Memo, the Jadelle Parties) and Jona & Rachel were to either return the NECKLACE - 18KYG Diamond necklace,

134.71 Fancy Yellow, internally flawless, VS2 , 49 stones to Third-Party Plaintiffs or pay them $1,300,000.00.

133. Under the 11-27-2019 Consignment Memo to David Rovinsky, (the Jadelle Parties) and Jona & Rachel were to either return the RING - 43.10 Carat Fancy Yellow diamond+ 6.82 carats to Third-Party Plaintiffs or pay them $1,650,000.00.

134. Under the 1-7-2020 Consignment Memo to Eli, Inc., (the Jadelle Parties) and Jona & Rachel were to either return the RING - 15.03 Fancy Yellow internally flawless radiant diamond mounted on a WG ring with a diamond halo to Third-Party Plaintiffs or pay them $215,000.00.

135. (The Jadelle Parties) and Jona & Rachel breached the Consignment Memos by failing to return the consigned jewelry and make full repayment of the $6,950,444.40. As of the date of filing of this complaint, the full amount of Third-Party Plaintiffs' debt in the amount $6,950,444.40 is past due and owing. In addition, accrued and ongoing interest, remains due, owing, and unpaid from (the Jadelle Parties) and Jona & Rachel to Third-Party Plaintiffs.

136. As a direct and proximate result of the foregoing acts, Third-Party Plaintiffs have been damaged in an amount to be proven at trial, together with interest at the maximum legal rate according to proof. (The Jadelle Parties) and Jona & Rachel would receive unjust enrichment if allowed to retain the benefits of Third-Party Plaintiffs' performance under the Consignment Memos without abiding by (the Jadelle Parties) and Jona's & Rachel's own repayment obligations under the Consignment Memos and/or Third-Party Plaintiffs detrimentally relied on the Consignment Memos and would suffer an unconscionable injury if the Consignment Memos were not enforced.

///

///

///

///

**SEVENTH CAUSE OF ACTION**
**BREACH OF THE IMPLIED COVENANT OF**
**GOOD FAITH AND FAIR DEALING**

(*On behalf of Third-Party Plaintiffs as to Jona S. Rechnitz., Rachel Rechnitz, Levin Prado*)

137. Third-Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

138. Based on the foregoing, Third-Party Plaintiffs are informed and believe, and on such information and belief allege, that based on the foregoing, Third-Party Defendants breached the implied covenant of good faith and fair dealing continuously throughout the business relationship with Marco.

139. Third-Party Plaintiffs are informed and believe, and on such information and belief allege, that there may be other facts constituting breach of the implied covenant of good faith and fair dealing which will be presented through discovery or at the time of trial.

140. As a direct and proximate cause of the acts of Third-Party Defendants, Marco suffered damages in an amount according to proof at the time of trial of at least $6,950,444.40.

141. Third-Party Plaintiffs are informed and believe, and on such information and belief allege, that Third-Party Defendants acted despicably, willfully, wantonly, oppressively, fraudulently, or in conscious disregard of Marco's rights. Marco seeks recovery of exemplary damages in an amount according to proof at the time of trial.

142. As a result of Third-Party Defendants' actions, Marco has been damaged in an amount according to proof, plus interest, costs, and attorneys' fees as permitted by law.

///

**EIGHTH CAUSE OF ACTION**

**ACCOUNT STATED**

(*On behalf of Plaintiff as to Jona Rechnitz, Rachel Rechnitz*)

143. Third-Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

144. Based on the foregoing, in Los Angeles County, State of California, an account was stated in writing by and between Marco and (the Jadelle Parties), Jona, Rachel, and on such statement, a balance of $6,950,444.40 was found due to Marco from (the Jadelle Parties), Jona, Rachel, who all agreed to pay to Marco said balances in full.

145. Although demanded by Marco from (the Jadelle Parties), Jona, Rachel, they have failed to fully repay the balance of $6,950,444.40. Repeated demands were made and ignored by Third-Party Defendants. As of the date of filing of this complaint, $6,950,444.40 is the current principal amount past due and owing. In addition, accrued and ongoing interest remains due, owing, and unpaid from (the Jadelle Parties), Jona, Rachel, to Marco.

146. Third-Party Plaintiffs have incurred attorneys' fees in connection with this matter, in an amount to be determined at trial. Because the Consignment Memos are contracts on a book account, Marco are entitled to recover attorneys' fees from (the Jadelle Parties), Jona, Rachel, pursuant to Civil Code section 1717.5.

**NINTH CAUSE OF ACTION**

**UNETHICAL BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200**

(*On behalf of Third-Party Plaintiffs as to Jona S. Rechnitz, Rachel Rechnitz, Levin Prado*)

147. Third-Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

148. Based on the foregoing, Third-Party Plaintiffs are informed, believe, and thereupon allege , that Third-Party Defendants intentionally conspired with each other to restrain competition and deprive Marco of the benefit of their contracts.

149. As a direct and proximate result of the aforementioned conduct of Third-Party Defendants, and each of them, Marco has been damaged in a sum in excess of the jurisdiction of this Court, to be determined according to proof at the time of trial of at least $6,950,444.40.

150. In engaging in the conduct described above, Third-Party Defendants, and each of them, acted willfully and intending to deprive Marco of their property or legal rights, thereby committing acts of fraud, within the meaning of Civil Code §3924(c), so as to entitle Marco to punitive damages in an amount sufficient to punish or make an example of Third-Party Defendants, and each of them.

**PRAYER FOR RELIEF**

WHEREFORE, Third-Party Plaintiffs seek a judgment in their favor and an order granting the following relief:

1. That Marco be awarded compensatory damages in the amount of at least $6,950,444.40;

2. That Marco be awarded treble damages pursuant to California Penal Code, §496(c);

3. That Marco be awarded reasonable attorneys' fees pursuant to California Penal Code, §496©;

4. That Marco be awarded attorneys' fees pursuant to Civil Code section 1717.5.

5. For a constructive trust over the Consigned Jewelry and all proceeds therefrom;

6. That Marco be awarded punitive damages in an amount to be proven at trial;

7. That Marco be awarded costs of suit; and

8. That Marco be awarded such further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Third-Party Plaintiffs hereby demand a trial by jury to the full extent permitted by law.

DATED: April 24, 2020

LAW OFFICE OF BARUCH C. COHEN
A Professional Law Corporation

By /S/ Baruch C. Cohen
Baruch C. Cohen, Esq.
Attorney for Third-Party Plaintiffs PETER VOUTSAS aka PETER MARCO aka PETER MARCO EXTRAORDINARY JEWELS OF BEVERLY HILLS, dba PETER MARCO LLC

# EXHIBIT - 1

United States Bankruptcy Court
Central District of California

## Notice of Involuntary Bankruptcy Case Filing

An involuntary bankruptcy case concerning the debtor (s) listed below was filed under Chapter 7 of the United States Bankruptcy Code, entered on 04/06/2020 at 3:52 PM and filed on 04/06/2020.

**Jadelle Jewelry And Diamonds LLC a Delaware limited liability company**
9454 Wilshire Blvd
Penthouse 01
Beverly Hills, CA 90212
Tax ID / EIN: 00-0000000
*dba* **Jadelle Inc**

The case was filed by the following petitioning creditor(s):

| | |
|---|---|
| **First International Diamond Inc**<br><br>PO Box 3765<br>Beverly Hills, CA 90212 | **Baruch C Cohen**<br>Law Office of Baruch C. Cohen APLC<br>4929 Wilshire Blvd Ste 940<br>Los Angeles, CA 90010<br>323-937-4501 |
| **Peter Marco LLC**<br>252 N Rodeo Dr<br>Bewverly Hills, CA 90210 | **Baruch C Cohen**<br>Law Office of Baruch C. Cohen APLC<br>4929 Wilshire Blvd Ste 940<br>Los Angeles, CA 90010<br>323-937-4501 |
| **Victor Franco Noval**<br>1141 Summit Drive<br>Beverly Hills, CA 90210 | **Ronald N Richards**<br>Law Offices of Ronald Richards & Assoc<br><br>PO Box 11480<br>Beverly Hills, CA 90213<br>310-556-1001 |

The case was assigned case number 2:20-bk-13530-BR to Judge Barry Russell.

If you would like to view the bankruptcy petition and other documents filed by the

petitioning creditor(s) and the debtor, they are available at our *Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 255 East Temple Street,, Los Angeles, CA 90012.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth important deadlines.

**Kathleen J. Campbell**
**Clerk, U.S. Bankruptcy Court**

ORIGINAL

Fill in this information to identify the case:

United States Bankruptcy Court for the: Central District of California (State)

Case number (If known): ____________ Chapter ______

FILED
APR - 6 2020
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

☐ Check if this is an amended filing

Official Form 205

# Involuntary Petition Against a Non-Individual

12/15

**Use this form to begin a bankruptcy case against a non-individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against an individual, use the *Involuntary Petition Against an Individual* (Official Form 105). Be as complete and accurate as possible. If more space is needed, attach any additional sheets to this form. On the top of any additional pages, write debtor's name and case number (if known).**

**Part 1: Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed**

**1. Chapter of the Bankruptcy Code**

*Check one:*

☒ Chapter 7
☐ Chapter 11

**Part 2: Identify the Debtor**

**2. Debtor's name**

JADELLE JEWELRY AND DIAMONDS, LLC, a Delaware limited liability company

**3. Other names you know the debtor has used in the last 8 years**

Include any assumed names, trade names, or *doing business as* names.

Jadelle, Inc.

**4. Debtor's federal Employer Identification Number (EIN)**

☒ Unknown

EIN ___ - ______

**5. Debtor's address**

**Principal place of business**

9621 Brighton Way
Number Street

Beverly Hills CA 90210
City State ZIP Code

Los Angeles
County

**Mailing address, if different**

9454 Wilshire Blvd., Penthouse 01
Number Street

P.O. Box

Beverly Hills CA 90212
City State ZIP Code

**Location of principal assets, if different from principal place of business**

Number Street

City State ZIP Code

American LegalNet, Inc.
www.FormsWorkFlow.com

Debtor Jadelle Jewelry and Diamonds, LLC Case number (if known) ____________
Name

6. **Debtor's website (URL)** ____________

7. **Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding LLP)
☐ Other type of debtor. Specify: ____________

8. **Type of debtor's business**

*Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Railroad (as defined in 11 U.S.C. § 101(44))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
☒ None of the types of business listed.
☐ Unknown type of business.

9. **To the best of your knowledge, are any bankruptcy cases pending by or against any partner or affiliate of this debtor?**

☒ No
☐ Yes. Debtor ____________ Relationship ____________
District ____________ Date filed ____________ MM / DD / YYYY Case number, if known ____________

Debtor ____________ Relationship ____________
District ____________ Date filed ____________ MM / DD / YYYY Case number, if known ____________

**Part 3: Report About the Case**

10. **Venue**

*Check one:*

☒ Over the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district.
☐ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

11. **Allegations**

Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).

The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

*At least one box must be checked:*

☒ The debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount.

☐ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or an agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

12. **Has there been a transfer of any claim against the debtor by or to any petitioner?**

☒ No
☐ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a).

American LegalNet, Inc.
www.FormsWorkFlow.com

Debtor Jadelle Jewelry and Diamonds, LLC
Name

Case number (if known) ______________________

**13. Each petitioner's claim**

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| First International Diamond, Inc. | Trade Debt/Damages | $ 1,976,225.00 |
| Peter Marco, LLC | Trade Debt/Damages | $ 7,676,744.00 |
| Victor Franco Noval | Trade Debt/Damages | $ 5,800,000.00 |
| | Total of petitioners' claims | $ 15,452,969.00 |

*If more space is needed to list petitioners, attach additional sheets. Write the alleged debtor's name and the case number, if known, at the top of each sheet. Following the format of this form, set out the information required in Parts 3 and 4 of the form for each additional petitioning creditor, the petitioner's claim, the petitioner's representative, and the petitioner's attorney. Include the , along with the signature of the petitioner's attorney.*

**Part 4: Request for Relief**

*WARNING* -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

Petitioners request that an order for relief be entered against the debtor under the chapter of 11 U.S.C. specified in this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, attach a certified copy of the order of the court granting recognition.

I have examined the information in this document and have a reasonable belief that the information is true and correct.

cab 2698544v1

**Petitioners or Petitioners' Representative**

Signature of petitioner or representative, including representative's title

Name and mailing address of petitioner

First International Diamond, Inc.
Name

P.O. BOX 3765
Number Street

Beverly Hills CA 90212
City State ZIP Code

Name and mailing address of petitioner's representative, if any

Baruch C. Cohen, Esq.
Law Office of Baruch C. Cohen, APLC
Name

4929 Wilshire Blvd., Suite 940
Number Street

Los Angeles CA 90010
City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 4-3-2020
MM/DD/YYYY

x [signature]

American LegalNet, Inc. www.FormsWorkFlow.com

**Attorneys**

Daniel A. Lev
Printed name

SulmeyerKupetz, A Professional Corporation
Firm name, if any

333 South Grand Avenue
Number Street

| Los Angeles | CA | 90071 |
|---|---|---|
| City | State | ZIP Code |

Contact phone 213.626.2311 Email dlev@sulmeyerlaw.com

Bar number 129622

State CA

x ______________________
Signature of attorney

Date signed 04/06/2020
MM / DD / YYYY

Official Form 205 Involuntary Petition Against a Non-Individual page 3

EXHIBIT "6", PAGE 212

Debtor Jadelle Jewelry and Diamonds, LLC
Name

Case number (if known) ______________________

Signature of petitioner or representative, including representative's title

Name and mailing address of petitioner
Peter Marco, LLC
Name

252 N. Rodeo Dr.
Number Street

Beverly Hills CA 90210
City State ZIP Code

Name and mailing address of petitioner's representative, if any
Baruch C. Cohen, Esq.
Law Offices of Baruch C. Cohen, APLC
Name

4929 Wilshire Blvd., Suite 940
Number Street

Los Angeles CA 90010
City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed On 4-3-2020
MM / DD / YYYY

x [signature]
Signature of petitioner or representative, including representative's title

Name and mailing address of petitioner
Victor Franco Noval
Name

1141 Summit Drive
Number Street

Beverly Hills CA ______
City State ZIP Code

Name and mailing address of petitioner's representative, if any
Ronald Richards, Esq.
Law Offices of Ronald Richards & Associates, A.P.C.
Name

P.O. Box 11480
Number Street

Beverly Hills CA 90213
City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ______
MM / DD / YYYY

x ______________________

American LegalNet, Inc. www.FormsWorkFlow.com

Debtor Jadelle Jewelry and Diamonds, LLC
Name

Case number (if known) ______________________

Name and mailing address of petitioner

Peter Marco, LLC
Name

252 N. Rodeo Dr.
Number Street

Beverly Hills CA 90210
City State ZIP Code

Name and mailing address of petitioner's representative, if any

Baruch C. Cohen, Esq.
Law Offices of Baruch C. Cohen, APLC
Name

4929 Wilshire Blvd., Suite 940
Number Street

Los Angeles CA 90010
City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed On ____________
MM / DD / YYYY

x ______________________
Signature of petitioner or representative, including representative's title

Signature of petitioner or representative, including representative's title

Name and mailing address of petitioner

Victor Franco Noval
Name

1141 Summit Drive
Number Street

Beverly Hills CA 90210
City State ZIP Code

Name and mailing address of petitioner's representative, if any

Ronald Richards, Esq.
Law Offices of Ronald Richards & Associates, A.P.C.
Name

P.O. Box 11480
Number Street

Beverly Hills CA 90213
City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 04/06/2020
MM / DD / YYYY

x Ronald Richards

American LegalNet, Inc.
www.FormsWorkFlow.com

Main Document Page 221 of 316

Main Document Page 1 of 3

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br>BARUCH C. COHEN ESQ.<br>LAW OFFICE OF BARUCH C. COHEN, APLC<br>4929 Wilshire Blvd Ste 940<br>Los Angeles, CA 90010<br>(323 937-4501)<br>DANIEL A LEV, ESQ.<br>333 S GRAND AVE STE 3400<br>LOS ANGELES, CA 90071<br>(213 626-2311)<br>RONALD N RICHARDS, ESQ.<br>P.O. BOX 11480<br>BEVERLY HILLS, CA 90213 (310 556-1001)<br><br>☑ *Attorney for Petitioning Creditor(s)*<br>☐ *Petitioning Creditor(s) appearing without attorney* | FOR COURT USE ONLY |
|---|---|
| **UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION** | |
| In re:<br><br>JADELLE JEWELRY AND DIAMONDS, LLC.,<br>a Delaware limited liability company<br>dba JADELLE INC,<br><br>Debtor(s). | CASE NO.: 20-13530BR<br>CHAPTER: 7<br><br>**SUMMONS AND NOTICE OF STATUS CONFERENCE IN AN INVOLUNTARY BANKRUPTCY CASE** |

To the above-named debtor(s):

Pursuant to 11 U.S.C. § 303, an involuntary petition was filed on 4/6/2020 in this bankruptcy court praying for the entry of an order for relief against you under chapter 7 of title 11 of the Bankruptcy Code. A copy of the involuntary petition accompanies this summons.

A status conference in the involuntary case commenced by the involuntary petition has been set for:

| **Hearing Date:** 6/9/2020<br>**Time:** 10 am<br>**Courtroom:** 1668 | **Place:**<br>☑ 255 East Temple Street, Los Angeles, CA 90012<br>☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367<br>☐ 3420 Twelfth Street, Riverside, CA 92501<br>☐ 411 West Fourth Street, Santa Ana, CA 92701<br>☐ 1415 State Street, Santa Barbara, CA 93101 |
|---|---|

If you wish to oppose the entry of an order for relief, you must file with the clerk of this court an answer to the involuntary petition or a motion pursuant to FRBP 1011(c) within 21 days after the date of service of this summons and attached involuntary petition, plus 3 additional days if you were served by mail. At the same time, you must also serve a copy of the answer or motion on the petitioner's attorney (or on the petitioner, if the petitioner does not have an attorney) at the address stated above. If you file a motion under FRPB 1011(c), your time to answer the petition will be governed by that rule.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012 Page 1 **F 1010-1.SUMMONS.INVOL**

EXHIBIT "6", PAGE 215

**TO THE DEBTOR:**

**IF YOU FAIL TO TIMELY FILE A RESPONSE TO THIS SUMMONS, THE BANKRUPTCY COURT MAY ENTER AN ORDER FOR RELIEF IN ACCORDANCE WITH 11 U.S.C. § 303(h).**

**TO THE PETITIONING CREDITOR(S):**

**IF YOU FAIL TO TIMELY SERVE THE SUMMONS AND INVOLUNTARY PETITION AND/OR TO FILE PROOF OF SERVICE OF DOCUMENT THEREOF WITH THE COURT OR TO APPEAR AT THE STATUS CONFERENCE, THIS INVOLUNTARY CASE MAY BE DISMISSED IN ACCORDANCE WITH LBR 1010-1.**

**KATHLEEN J. CAMPBELL**
**CLERK OF COURT**

SEAL

Date: 4/7/2020

By: STACEY FORTIER
Deputy Clerk

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012* Page 2 **F 1010-1.SUMMONS.INVOL**

EXHIBIT "6", PAGE 216

# EXHIBIT - 2

AO 245B (Rev. 09/19) Judgment in a Criminal Case (form modified within District on Sept. 30, 2019)
Sheet 1

# UNITED STATES DISTRICT COURT

Southern District of New York

UNITED STATES OF AMERICA
v.
Jona Rechnitz

## JUDGMENT IN A CRIMINAL CASE

Case Number: 1: 16 cr. 00389-01(AKH)

USM Number: 77751-054

Alan Levine/ AUSA, Martin Bell
Defendant's Attorney

**THE DEFENDANT:**

☑ pleaded guilty to count(s) 1

☐ pleaded nolo contendere to count(s) which was accepted by the court.

☐ was found guilty on count(s) after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC 1349 | Conspiracy to Commit Honest Services Wire Fraud | 6/6/2016 | 1 |

The defendant is sentenced as provided in pages 2 through 7 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

12/19/2019
Date of Imposition of Judgment

[signature]
Signature of Judge

Hon. Alvin K. Hellerstein, U.S. District Judge
Name and Title of Judge

March 3 2020
Date

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/3/2020

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
5 months. Defendant is notified of his right to appeal.

☑ The court makes the following recommendations to the Bureau of Prisons:
that the defendant be confined at the Lompac or Taft facility outside of Los Angeles.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at ____________ ☐ a.m. ☐ p.m. on ____________ .

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on ____________ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on ____________ to ____________

at ____________ , with a certified copy of this judgment.

____________
UNITED STATES MARSHAL

By ____________
DEPUTY UNITED STATES MARSHAL

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

3 years, of which the first 5 months shall be home confinement.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☑ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☑ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature ______________________ Date ______________

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall provide the probation officer with access to any requested financial information.

2. The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless he/she is in compliance with the installment payment schedule.

3. The defendant shall continue to cooperate with the U.S. Attorney's Office.

4. The defendant's duty to pay restitution in the amount of $19,000,000.00 is joint and several with co-conspirators Norman Seabrook (16 Cr. 467) and Murray Huberfeld (16 Cr. 467) provided, however, that defendant Rechnitz' payments shall be capped at $10,000,000.00. The defendant shall make payments of $500,000 per year, payable in equal monthly installments, due on the last day of each month.

5. The defendant shall be supervised by the district of residence.

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $ 100.00 | $ 19,000,000.00 | $ | $ | $ |

☐ The determination of restitution is deferred until __________ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Correction Officers' Benevolent Association<br>77-10 21st Avenue<br>East Elmhurst, NY 11370 | $19,000,000.00 | $19,000,000.00 | |
| TOTALS | $ 19,000,000.00 | $ 19,000,000.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ ____________

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the ☐ fine ☐ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☑ Lump sum payment of $ 100.00 due immediately, balance due

☐ not later than __________ , or
☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C ☐ Payment in equal ______ *(e.g., weekly, monthly, quarterly)* installments of $ ______ over a period of ______ *(e.g., months or years)*, to commence ______ *(e.g., 30 or 60 days)* after the date of this judgment; or

D ☐ Payment in equal ______ *(e.g., weekly, monthly, quarterly)* installments of $ ______ over a period of ______ *(e.g., months or years)*, to commence ______ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within ______ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☑ Special instructions regarding the payment of criminal monetary penalties:
The defendant shall pay restitution in the amount of $10,000,000.00, joint and several with the $19,000,000.00 restitution obligation of co-conspirators Norman Seabrook (16 Cr. 467) and Murray Huberfeld (16 Cr. 467). The defendant shall make payments of $500,000 per year, payable in equal monthly installments, due on the last day of each month.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

# EXHIBIT - 3

Jona Rechnitz
9533 Sawyer Street
Los Angeles, CA 90035
October 16, 2019

Honorable Alvin K Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Hellerstein:

I am a felon. I am a criminal. I am the ONLY person to blame for that.

I have caused tremendous pain and embarrassment to my family, my religion, and
to myself.

There is no way to undo what's been done. It's permanent, and for that I am truly
sorry to everyone hurt by my crimes and actions. It eats me alive each and every
day. When I wake up, when I go to sleep, it is always on my mind for the past 4
years.

My actions harmed the people of New York, The people of Correction Officers
Benevolent Association, my friends, my family and my community. I will forever
carry this burden, as I deserve to.

I have read of your Honor asking at various sentencings, why do good people do
bad things?

In my case, not assuming I'm a good person, I can answer this question. Arrogance,
greed, and insecurity.

Arrogance. I felt I was above the law. At this young age in my late 20's I was busy
accepting honors at dinners and board positions at prestigious institutions. It got to
my head.

Greed. I wanted to gain contacts to grow my business, to make money and gain
stature in the long run.

Insecurity. I wanted to gain popularity by my peers and become a big shot in my
community and business circles.

Shame on me.

Finally, I couldn't wiggle my way out of this one. It changed my life as I knew it forever.

As a supposed religious man, I have been a disgrace to my religion. The only way to fix this is to make serving G-d my main focus for the rest of my life. I try to every day. I have changed as a person religiously, through prayer, my public and private behavior, and I always stop and think before I'm about to do something to see if it is something my parents, my family, and G-d would approve of.

Making the decision to come forward was the right decision. A very tough decision with tremendous repercussions, but the appropriate decision. It has come with a hefty price. I did not foresee what I was signing up for, and it has been a brutal four years, but I made the right decision. I learned that doing the right thing isn't always the easiest, but it is the only choice. There is right and wrong and nothing in between. It has changed me for the better. It has forced me to change, which I have.

I had to testify in three separate trials. Not an easy task. Outside of the regular pressures a crucial witness deals with, these circumstances were even tougher. There was a lot of press coverage, a lot of community pressure, and a lot of threats and comments made to me. The press put me on trial instead of the defendants. The press called me a snitch and paid more attention to me and my testimony then on the actual trials. They made calls to my friends, my family, and waited outside my home for me to walk outside.

Parts of the community shunned me and my family. Your honor, I can not stress the amount of pain and suffering that we received during this time. Unimaginable pain. Eventually we had to leave town. Leave our lives. Leave immediately.

Then there were the threats and private investigators after me. Threatening voice messages, windows smashed at home, windows smashed in my car several times and my parents cars on the same day at their home, people following me and sitting outside of my home in Los Angeles for periods of time. My wife and I were harassed and video taped at the mall, humiliated in our Synagogue, and embarrassed in public at a local LA high school charity event.

Your Honor, there are so many examples that I am omitting as I don't want to portray myself as the victim here. I caused a lot of pain and harm to others through my criminal activity and don't want to detract from that.

Even at various trials there were intimidation tactics. An attorney representing a defendant yelled at me in the hallway walking in to court and shoved the prosecutor when he confronted him.

The disgusting feeling I had waking up in the morning to go to trial after trial after trial. Sometimes for a week and a half straight.

One of the toughest moments was when a mistrial was declared. I remember feeling like I wanted to tap out. But I could not. I made this decision for me and my beautiful family with the hope of staying together with them at the end of this nightmare. This has been the key factor keeping me going. My family. My amazing, incredible wife and my beautiful 6 children.

The highlight of my week used to be sitting in NYPD Headquarters like a big Macher. Today, my highlight is walking to Synagogue with my children every week, and I let them know it every time we walk. When I ask them what my favorite part of the week is, they say, Daddy! You know the answer, but I still make them repeat it.

Your Honor, I can now tell you proudly I am a hands-on father and husband. I am more of a mentsch. I was not during my criminal years. For that alone, I am grateful to this situation. My wife is an amazing woman. She had a bad feeling about the people I was hanging out with and the people I wanted to impress. She was right. I should have listened to her. I do now.

I had real estate holdings which I had to give up throughout this ordeal. Many investors didn't want to be associated with me, nor do I blame them. In a few cases, some partners viewed my situation as an opportunity forcing me to give up different holdings and assets, taking management decisions and authority from me, ultimately removing me entirely. Starting to make a living again was a struggle for a period of time. Fortunately my wife and I started a new business endeavor, which looks promising. As your Honor can imagine it is hard to find a bank to work with me, so I have secured private loans and financing from family and friends. I finally have a business going that has provided stability and a way to make a living. This case has left me in a big financial hole - I have had to borrow millions of dollars to get this business going and to support my family. I am finally in a position to dedicate myself again to supporting my family. I don't see any way possible to start over a third time. I beg you to allow me to continue on this second journey of life.

This has been a difficult time. I don't feel healthy at all. I am on anti depressant medication, I wake up in the middle of the night in pain and my neck and hands are burning, and I will forever carry this guilt.

Family is everything to me. Cuddling with my children is everything to me. Being a community member and helping others is everything to me. Since this entire ordeal my wife gave birth to two beautiful baby girls. A decision that we made to not put life on hold but to continue with life in the right path and be optimistic that doing the right thing will not hinder our future.

I am a changed man. I suffered a lot. I have been severely punished. My family has suffered a lot. I beg your Honor, please allow me to continue on the path I'm on, together with my family, my wife and 6 young children. They need their Daddy, I need my family together with me, and I promise your Honor, to continue to make

my family proud, my community proud, and your Honor proud.

With humility and sincerity,

Jona

# EXHIBIT - 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

UNITED STATES OF AMERICA,

v. 16 CR 389 (AKH)

JONA RECHNITZ,

Defendant.

Sentence

------------------------------x

New York, N.Y.
December 20, 2019
10:15 a.m.

Before:

HON. ALVIN K. HELLERSTEIN,

District Judge

APPEARANCES

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
BY: MARTIN S. BELL
JESSICA LONERGAN
KIMBERLY RAVENER
LAURA POMERANTZ
Assistant United States Attorneys

COOLEY LLP
Attorneys for Defendant
BY: ALAN LEVINE

Also Present:
Andrew Hamilton, Government Paralegal Specialist
Marc Klausner, NYPD

Joseph Downs, FBI

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

EXHIBIT "6", PAGE 232

and, Judge, appearing before judges of this court, including yourself, we either gain or lose credibility. My hope is that I personally have kept faith with not just a certain caliber of advocacy but also with the truth and with the way things really are.

To the extent that I have amassed that credibility over a period of time, I am laying it entirely on not only the quality of Mr. Rechnitz's cooperation but the value of what that means to the mechanism of justice working with respect to future cooperators.

THE COURT: I have your point, Mr. Bell.

MR. BELL: Thank you, Judge.

THE COURT: Mr. Levine.

MR. LEVINE: Your Honor, I think it might be helpful if the Court hears from Mr. Rechnitz first.

THE COURT: Sure.

Mr. Rechnitz.

THE DEFENDANT: Your Honor, I stand before your Honor and this court with respect for the law, tremendous remorse for my actions and behavior, and with great humility.

Growing up, my parents raised me in a very loving environment --

THE COURT: Don't worry about the microphone, Mr. Rechnitz. Speak to me. I'll hear you.

THE DEFENDANT: Growing up, my parents raised me in a

very loving environment.

THE COURT: That's okay, Mr. Levine. I can hear him. Go ahead.

THE DEFENDANT: Growing up, my parents raised me in a very loving environment with an emphasis on religion and doing the right thing. Here I am. I did not start off this way, and I was raised differently.

I have let down my family, my parents, my in-laws, my wife, my children, friends, and my community in a big way. I made very poor choices, and many people have suffered because of them. I didn't always appreciate the fact that I had the blessing to have six beautiful children in my home and a beautiful wife.

When you get into trouble, you realize the blessings of life and what's important. I took my blessings for granted. I've been a real fraud to God, a fraud to my wife and family, a fraud as an American, a fraud as a businessman, and a fraud to the people of New York, namely, the hard-working COBA members, and I'm truly sorry for that. My actions have hurt many people, and I'm very sorry for that. I continue to pay for my mistakes on a daily basis.

While testifying before your Honor during the Norman

Seabrook trial, a tape was played for the jury. It had recorded a conversation where I was going to attend an Mincha prayer service as a Shiva. Your Honor asked me to explain what

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

EXHIBIT "6", PAGE 236

Shiva and Mincha were for the jury. In fact, your Honor explained it much better than I did afterwards.

At that moment is when it really hit me what a hypocrite I've been. It was that exact moment. Here I am going to pray to God and visiting a mourner to comfort them, and then I turn around and commit these crimes and sins. It is not the way I was raised and not the way I was educated.

While living in New York City, I wrongly felt pressure to become a bigshot. I was working for one of the largest real estate companies in 2007, and it got to my head.

I was in my late 20's, and big people in the real estate industry were dealing with me. My ego was big, and I so badly wanted to impress these people in order to advance my career and profile. This is where things started to spiral out of control. This is where I went so off the rails for a number of years.

I assure your Honor that these past years and the experience I've gone through has changed me. I will never act that way again. My family and I have been through too much.

I have been forced to self-reflect, and I have identified many of my flaws in order to grow from my mistakes. I apologize for my criminal and immoral behavior for trying to

bribe my way through these years of my life.

I left the moral way of going about business and my religious beliefs. I bestowed gifts upon police officers in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

EXHIBIT "6", PAGE 238

exchange for favors in return. I raised and contributed large sums of money for the mayor of New York City and his projects in the hope of obtaining benefit in return.

I introduced Norman Seabrook and Murray Huberfeld to each other for the purposes of COBA to invest funds into Murrey's fund, Platinum Partners, so that they could both mutually financially benefit from one another and to elevate my status with them.

I knowingly delivered a $60,000 kickback payment to Norman Seabrook from Murray Huberfeld. This corrupt bargain is something that continues to haunt me. I have struggled with how it is I let my life go astray this way and how I took leave of my adherence of the law and spirituality.

I've been a big hypocrite to my religion. I failed to conduct myself properly between myself and my fellow man and between myself and my relationship with God. I have strayed.

I did all of these horrible things without worrying about God or the consequences that come with this sort of behavior. I cannot express to your Honor how ashamed I am for desecrating my religion.

I have and will continue to repent to God every single day. I have and continued to make amends. Part of my efforts

to make right included cooperating as a first step. I have a lot more work to do.

I did the best I could for the government and told the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

EXHIBIT "6", PAGE 240

truth about myself, and I realize that I will have to make financially right those that I hurt.

Please allow me just a few more minutes to discuss the cooperation. I hired Mr. Levine in 2016, May 2016. When I realized that there was an investigation heating up, I knew I had not told the truth to the New York City police officers and Internal Affairs Bureau a few months earlier.

Right away, based on my initial conversations with Mr. Levine and Ms. Laura Birger, I authorized them to meet with the assistant U.S. attorneys and begin the process of making a proffer, agreeing to plead guilty and signing a cooperation agreement.

I understood from those initial meetings with both my lawyers and the government, if I was going to cooperate with the government, I needed to be 100 percent truthful.

I have been completely forthcoming in all my meetings and on the witness stand throughout three separate trials. There is not any question that I was asked that I did not answer truthfully, and there are many events and conduct that I told the government that they did not know.

Included in my early proffer sessions with the government -- this was in the spring of 2016. I gave the

government information about two different hard-lending businesses that I was involved in.

One turned into a criminal case in which Peralta was

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

EXHIBIT "6", PAGE 242

charged with a Ponzi scheme, and the second one also turned into a criminal case charging Nissen with the same scheme.

At the time, I was unaware these were both Ponzi schemes and, as a result, personally lost money for myself and others. Since then, I am more cautious and conservative in my business dealings.

My financial dealings with both were a mess with lots of transactions, paying and receiving, some on my own behalf and some on behalf of third parties, including cash transactions.

I was simply unable to sort all those transactions out, and I have yet to file a 2015 tax return. I told my lawyers and the government about that at the time immediately.

After speaking with my accountant during 2016, I realized I cannot file my 2015 tax returns accurately because I did not have a handle on all the transactions, and I can't provide my accountant with complete information.

The situation got more complex in 2017 for 2016 because criminal charges were filed. I was scheduled to testify in one of the trials, and there was no way to sort out the transactions.

As I testified in all three trials, I have yet to file

the returns for these years up through 2018. I was sued in the Peralta bankruptcy and settled paying over $350,000 to the state.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

EXHIBIT "6", PAGE 244

I have been sued in the Nissen bankruptcy, but that has not moved forward yet, and I do not know what my exposure will be at that bankruptcy. I understand my obligation to resolve that bankruptcy and have filed tax returns for those years. And I also understand the additional problems I have created in my inability to file those returns, including the financial consequences they will cause.

This is one of several jobs that I have in the coming months as I continue to sort out my life in a lawful path. In fact, I will spend the rest of my life trying to make amends for my criminal behavior.

I will try to make a better name for my family, for my religion, and for myself. I am on the path to recovery, your Honor. I am a better family man; I am a better friend; I am a more religious person. I am working again to make an honest living.

Please allow me to continuing on this course undisrupted in order to provide for my large family. I really want to do good, please. I failed myself in a number of ways. I am humbly asking your Honor to stop the bleeding, to continue in this new business I've started in order to provide for my family and to enable me to take care of my financial

responsibilities.

THE COURT: What is the new business? Jadelle?

THE DEFENDANT: Jadelle, yes. I really paid a hefty

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

EXHIBIT "6", PAGE 246

price for cooperating with the government for my crimes. Most recently, the New York Post put up an article that was mentioned this morning -- your Honor may not be aware -- accusing me of hobnobbing and flirting with the rich and famous at a time when I claim I am a pariah to society.

In fact, Jadelle Jewelery hosted a jewelery show to promote the brand and new jewelry collection. The event was to make sales and increase business. One attendee was a Kim Kardashian, a client of Jadelle.

If one were to read the article, I am portrayed as a hobnobber with no concern in the world, no remorse whatsoever, and like a party animal. I urge your Honor to watch the video that was attached to the article online, and your Honor will see a very different picture.

Your Honor will see me dressed in a suit and a tie trying to sell jewelry, no partying, no hobnobbing, just a man trying to make an honest living.

I am not here to complain about my suffering in the past few years, but I can promise your Honor I have been punished in so many ways I can't begin to describe.

Within my community, within the media, and through self-introspection. In New York City, I am persona non grata.

I am to blame. I burnt a lot of bridges and relationships and had to relocate to California.

I am so truly sorry for my behavior. I am a changed

man. I have had years to make this change. It did not happen overnight, your Honor. I have had four years, close to four years, since this ordeal started.

I beg your Honor, please allow me to remain with my family, my beautiful wife and children, and allow me to continue working so that I can continue to provide for them and make good on my financial obligations.

I don't see any way to start over a third time. I'm on my second chance. Please allow me to continue on this path. Thank you.

THE COURT: Mr. Levine.

MR. LEVINE: Your Honor, I was just going to ask. The hour is late. If the Court would want to take a recess, I would certainly appreciate that.

THE COURT: It's very tempting.

MR. LEVINE: If the Court wishes to proceed, I'd like to proceed.

THE COURT: Keep going, Mr. Levine.

MR. LEVINE: So, your Honor, we're finally here for the day of Mr. Rechnitz's sentence. How did he get here. And I think an important question on the mind of the Court is has he shown remorse.

Your Honor, we've submitted a lot of letters, and what comes out from those letters is the personality of an individual wanting and needing to help people.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

EXHIBIT "6", PAGE 250

THE COURT: I've read the letters. They depict a person who enlarges others by charity, by friendship to others and makes other people feel better.

And yet in the life that's been depicted in this court, he cheapens people. He works on their insecurities and their quest for material possessions and just does the opposite. He diminishes people.

How can you square both?

MR. LEVINE: Your Honor, that's what I was going to say. So this personality that has done so much good for so many people before these events, during these events, and since these events -- it collided with his desire to be independent, to establish himself in Manhattan, and not to take the comfortable road going back to Los Angeles.

It also collided with his desire for immediate success by staying in Manhattan in his late 20's. It introduced him to a world of Jeremy Reichberg. And he realized in that world that with his money, he could do good for police officials and others, to have them at his beck and call for his community and for himself.

What he perceived, incorrectly, would be a win/win, and it turned into a bad/bad. He never should have offered

## CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States and I am a resident and employed in Los Angeles, California; that my business address is 4929 Wilshire Boulevard, Suite 940, Los Angeles CA 90010; that I am over the age of 18 and not a party to the above-entitled action.

I am employed by a member of the United States District Court for the Central District of California, and at whose direction I caused service of the foregoing document entitled **AMENDED THIRD-PARTY COMPLAINT FOR: INTENTIONAL MISREPRESENTATION & FRAUD; CIVIL THEFT (PENAL CODE, § 496); EMBEZZLEMENT; CIVIL CONSPIRACY TO COMMIT THEFT, FRAUD, AND FRAUD BY CONCEALMENT; CONVERSION; BREACH OF CONTRACT; BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; ACCOUNT STATED; & UNETHICAL BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200** on all interested parties in this action by the method indicated below at the address stated below:

| | |
|---|---|
| Anthony R Bisconti, Esq.<br>Bienert Katzman PC<br>601 West 5th Street Suite 720<br>Los Angeles, CA 90071<br>Email: tbisconti@bienertkatzman.com<br>*Attorney for Plaintiff David Rovinsky LLC* | Steven Jay Katzman, Esq.<br>Bienert Katzman PC<br>601 West 5th Street Suite 720<br>Los Angeles, CA 90071<br>Email: skatzman@bienertkatzman.com<br>*Attorney for Plaintiff David Rovinsky LLC* |
| Jason A. Levine, Esq.<br>Hangley Aronchick Segal<br>Pudlin & Schiller<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>Email: jlevine@hangley.com<br>*Attorney for Plaintiff David Rovinsky LLC* | Andrew E. Erdlen, Esq.<br>Hangley Aronchick Segal<br>Pudlin & Schiller<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>Email: aerdlen@hangley.com<br>*Attorney for Plaintiff David Rovinsky LLC* |
| Marc S. Williams, Esq.<br>Cohen Williams, LLP<br>724 South Spring Street, 9th Floor<br>Los Angeles, CA 90014<br>Email: mwilliams@cohen-williams.com<br>*Attorney for Jona & Rachel Rechnitz* | |

**[X]** **BY ELECTRONIC TRANSMISSION**: by electronically filing the foregoing with the Clerk of the District Court using its CM/ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies all parties in this case. A pdf version of this document was also transmitted to counsel via electronic mail at the email address indicated above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 24, 2020 at Los Angeles, California.

By: *<u>/s/ Baruch C. Cohen</u>*
Baruch C. Cohen

# EXHIBIT "7"

Daniel A. Lev (CA Bar No. 129622)
dlev@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for Petitioning Creditors

Ronald Richards (CA Bar No. 176246)
ron@ronaldrichards.com
Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
Beverly Hills, California 90213
Telephone: 310.556.1001
Facsimile: 310.277.3325

Attorneys for Victor Franco Noval

Baruch C. Cohen (CA Bar No. 159455)
baruchcohen@baruchcohenesq.com
Law Office of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
Telephone: 323.937.4501
Facsimile: 888.316.6107

Attorneys for Peter Marco, LLC and First International Diamond, Inc.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

In re

JADELLE JEWELRY AND DIAMONDS, LLC,

Alleged Debtor.

Case No. 2:20-bk-13530-BR

Chapter 7

**DECLARATION OF OVED ANTER IN SUPPORT OF PETITIONING CREDITORS' MOTION FOR APPOINTMENT OF INTERIM CHAPTER 7 TRUSTEE**

DATE: June 9, 2020
TIME: 10:00 a.m.
PLACE: Courtroom "1668"

VICTOR FRANCO NOVAL; PETER MARCO, LLC; and FIRST INTERNATIONAL DIAMOND, INC.,

Petitioning Creditors,

vs.

JADELLE JEWELRY AND DIAMONDS, LLC,

Alleged Debtor.

I, Oved Anter, declare and state as follows:

1. I am an individual over the age of eighteen and am the principal owner and President of First International Diamond, Inc. (“First International”), which is a creditor of Jadelle Jewelry and Diamonds, LLC (the “Debtor” or “Jadelle”). Except as otherwise indicated, all statements contained in this Declaration are based upon my personal knowledge and my review of relevant financial documents. If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein based upon my personal knowledge or review of documents.

2. I make this Declaration in support of the “Notice of Motion and Petitioning Creditors’ Motion for Appointment of Interim Chapter 7 Trustee; Memorandum of Points and Authorities in Support Thereof” (the “Motion”), filed concurrently herewith.

3. In the past, First International consigned large amounts of jewelry and diamonds to Jadelle and its controlling principal and insider Jona Rechnitz (“Jona” and together with his wife Rachel Rechnitz (“Rachel”), the “Rechnitz’s”). In an attempt to protect First International’s right to the consigned jewelry, on March 6, 2019, First International recorded a UCC-1 Financing Statement (the “UCC-1”) against Jadelle, by recording the UCC-1 with the California Secretary of State. The UCC-1 was recorded as Instrument No. 77246760002, Filing No. 19-7700745484. The UCC-1 was expressly

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

between Jadelle and First International. A true and correct copy of the March 6, 2019, UCC-1 is attached hereto as Exhibit "A" and incorporated herein by reference.

4. On December 13, 2019, and again on December 30, 2019, after Jona was sentenced in New York in his criminal action, First International consigned 7 pieces of jewelry worth $2,826,890 to Jadelle for resale to Jadelle's clients. At the time, I had no reason to believe that the $2,826,890 consignments with Jadelle would be in jeopardy, primarily because of our prior relationship and our prior transactions. True and correct copies of the Consignment Memos documenting the separate consignment transactions between First International and Jadelle totaling $2,826,890 are attached hereto as Exhibit "B" and incorporated herein by reference.

5. Prior to December 13, 2019, and December 30, 2019, and continuing thereafter, Jona, on behalf of Jadelle, repeatedly indicated to me that he had a buyer and sold two pieces of First International's consigned Jewelry, specifically, the 13 62 PS D-VVS1 GIA, Harry Winston Mt/tr (with a cost value of $1,200,000), and the Reverse Diamond Earrings 1.20 ct (the DIAM RD E IF 11923922166) (with a cost value of $907,715), and was awaiting receipt of payment from Jadelle's "client," and the rest of the jewelry remained in Jadelle's possession on consignment.

6. On January 2, 2020, at 11:52:42, Jona, on behalf of Jadelle, texted me, confirming that he would not release First International's merchandise to Jadelle's buyer until First International was first paid. The text exchange between me and Jona read as follows:

> Jona Rechnitz: Please confirm the following agreement: 1) you're my lunch date every Friday. That's the day we review the goods on hand every week and settle up bills. 2) I am authorized to ship the 3 emerald cut rings and Ascher bracelet to Loren ridinger my client in miami. *Anything she buys will be paid next Friday anything she doesn't buy is back in my office next week*. 3) the Harry Winston 13ct and

1 Oct eif *are both in my possession and I'm busy with the stones through next Wednesday*. *Next Wednesday they will be returned wherever you instruct me. If they are sold I will collect payment before releasing them and pay you first.* 4) I will see your stupid movie next week with YOU. 5) this is our understanding that we will both stick to and I look forward to doing good healthy business together this year.

Oved Anter: Deal.

Jona Rechnitz: Deal and we are never discussing this type of stuff ever again won't need to and won't. [Emphasis Added].

7. Notwithstanding Jona's January 2, 2020, promise, on behalf of Jadelle, not to release First International's merchandise to Jadelle's buyer until First International was first paid, from January 15 through January 24, 2020, Jona, on behalf of Jadelle, texted me that he gave the consigned merchandise away. He then proceeded to lull me with stories about his mother's illness and how Jadelle still intended to pay me. The following text exchanges between me and Jona reveal how Jona was stalling in order to buy time to continue his and Jadelle's illicit and fraudulent activities:

[1/15/20, 02:53:03] Oved Anter: All good, you ?

[1/15/20, 08:11:47] Jona Rechnitz: 70%. Hoping wire hits today of it was sent Sunday afternoon should arrive this afternoon I think. Bank said can take up to 3-5 days.

[1/15/20, 08:16:33] Oved Anter: Never heard 3 to 5 days for a wire from Absolutely nonsense.

[1/15/20, 08:16:43] Oved Anter: Wire is a press of a button.

[1/15/20,08:17:22] Oved Anter: Please call me when you're able to, hope you're feeling better.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[1/15/20, 08:17:37] Jona Rechnitz: *It should hit today I think let's see.*

[1/15/20, 08:21:22] Oved Anter: Please call Biton if you don't mind.

[1/15/20, 08:21:29] Oved Anter: By 10.

[1/15/20, 08:21:36] Oved Anter: How do you feel

[1/15/20,08:22:54] Jona Rechnitz: Not great will call now.

[1/15/20,08:40:03] Oved Anter: Gm, I need huge favor my daughter SHIRA needs a live in, Hers is leaving in a few days going back to her country, please help if you know any.

[1/15/20, 08:41:42] Jona Rechnitz: Ok.

[1/15/20, 12:34:39] Oved Anter: FYI spoke to Helen Dayan to double Check myself, wire from Israel comes in the next day, please let me know what's going on.

[1/15/20, 12:59:08] Jona Rechnitz: *I am sure it will hit tomorrow.*

[1/15/20, 15:47:55] Oved Anter: *Did you ship the Emeralds back.*

[1/15/20,15:49:29] Jona Rechnitz: Yes.

[1/15/20,15:50:03] Oved Anter: Thanks, did she keep everything.

[1/15/20, 18:49:03] Oved Anter: Call me.

[1/15/20, 19:07:31] Jona Rechnitz: Missed voice call.

[1/15/20, 19:07:50] Jona Rechnitz: Missed voice call.

[1/15/20, 19:07:58] Jona Rechnitz: Tried you back.

[1/15/20, 19:08:02] Jona Rechnitz: School event.

[1/15/20,19:08:07] Jona Rechnitz: Talk tomorrow am.

[1/15/20, 19:14:34] Oved Anter: Ok.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[1/15/20, 19:17:38] Jona Rechnitz: Around 10 or earlier.

[1/15/20, 19:21:53] Oved Anter: Sorry was on the other line, will speak am, I really need to have you wire am so I can take care of certain obligations.

[1/15/20, 19:23:39] Jona Rechnitz: *If wire hits as it should you'll get it*.

[1/15/20, 19:24:19] Jona Rechnitz: *If it doesn't we will call them and see what' s going on but I believe it will hit - ever since my sentencing my bank has been very slow ok international wires*.

[1/15/20, 19:24:24] Jona Rechnitz: Happened last week too.

[1/15/20, 19:25:02] Oved Anter: *There is no if you were not supposed to let go of merchandise until we get paid.*

[1/15/20, 19:25:52] Jona Rechnitz: What.

[1/15/20, 19:26:19] Jona Rechnitz: *I closed deal told you Mazal asked for invoices and finalized deal with you.*

[1/15/20, 19:26:29] Jona Rechnitz: *I gave them the stones.*

[1/15/20, 19:26:36] Jona Rechnitz: These are people I know very well.

[1/15/20, 19:26:39] Jona Rechnitz: *I guarantee it.*

[1/15/20, 19:26:58] Oved Anter: *Yeah but we have an agreement that you don't release Merch until we get Paid*.

[1/15/20,19:27:08] Oved Anter: I appreciate it guarantees will you be able to cough up the money.

[1/15/20,19:27:13] Jona Rechnitz: Yes.

[1/15/20, 19:28:09] Oved Anter: Ok because I really need to get paid tomorrow.

[1/15/20,19:28:36] Jona Rechnitz: *1) wire comes in you get paid 2) I get the stones back if issue 3) I pay you don't get stiffed. Only 3 options, I don't foresee any issue. I have sold them before. Never had any problem whatsoever. And after they pay they need the certificates and I also need invoices reflective of our prices we agreed upon.*

[1/15/20, 19:28:58] Jona Rechnitz: *If they pay me tomorrow it is not able to wire until next day you know that. Pending and not useable until overnight.*

[1/15/20, 19:29:03] Jona Rechnitz: I want to be very clear.

[1/15/20, 19:29:13] Jona Rechnitz: I can give a check if their Wire arrives.

[1/15/20, 19:30:18] Oved Anter: What happens if the wire does not arrive.

[1/15/20, 19:30:45] Oved Anter: If it's not in your account tomorrow that means it was not sent.

[1/15/20, 19:31:00] Oved Anter: It was sent on Sunday as you said the latest would have been in your account on Tuesday.

[1/15/20, 19:31:06] Oved Anter: Anyway we will talk tomorrow.

[1/15/20, 19:31:46] Jona Rechnitz: Ok done guessing. It's eating me alive. *They told me they sent it.* International wired take few days always for me. Sometimes 5 days. Check it out yourself. Wells Fargo.

[1/15/20, 19:32:03] Oved Anter: Does not.

[1/15/20, 19:32:30] Jona Rechnitz: I'm not arguing.

[1/15/20, 19:32:57] Jona Rechnitz: It's been 3 days.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[1/15/20, 19:33:08] Jona Rechnitz: I expect and hope it comes tomorrow.

[1/15/20, 19:33:11] Jona Rechnitz: That's all.

[1/15/20, 19:34:08] Jona Rechnitz: If you need me to undo this deal tell me I can't deal with the pressure every time I sell something. Or Let's just see what happens tomorrow.

[1/16/20, 09:28:57] Jona Rechnitz: *Sent bank the swift they see it coming in today you were right will be in touch once it hits.*

[1/16/20, 09:29:04] Jona Rechnitz: Going to shul.

[1/16/20, 09:32:50] Oved Anter: *So I don't understand what you're saying they are saying that it coming in.*

[1/16/20, 09:34:43] Jona Rechnitz: *Yes.*

[1/16/20, 09:34:48] Jona Rechnitz: *They tracked it.*

[1/16/20, 09:35:15] Oved Anter: Good, so you can send me a check before noon please.

[1/16/20, 09:35:56] Jona Rechnitz: No.

[1/16/20, 09:36:13] Jona Rechnitz: When funds hit my account I will let you know then wire you.

[1/16/20, 09:36:21] Jona Rechnitz: *I'm not writing a check for money I don't have yet.*

[1/16/20, 09:36:40] Jona Rechnitz: And not writing a check and being pressured like this. Money will hit then I will wire.

[1/16/20, 09:37:05] Oved Anter: OK let me know when it hits I'd rather have a wire anyway.

[1/16/20,09:37:13] Jona Rechnitz: Ok.

[1/16/20, 10:53:48] Jona Rechnitz: I keep checking account. Will update you.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[1/16/20, 14:10:22] Oved Anter: I just want to confirm you received the money and I will have it tomorrow for sure by 10 a wire to me.

[1/16/20, 14:17:09] Jona Rechnitz: *I told you you'll have it wired tomorrow morning already.*

[1/16/20, 14:19:23] Oved Anter: Ok and don't be a bitch please to me.

[1/17/20, 00:13:33] Jona Rechnitz: Please send me total amounts in The morning for both payments and I need invoices as well thx Shirin can send the invoices anytime but please make sure I have them for my records.

[1/17/20, 07:49:37] Oved Anter: Call me please.

[1/17/20, 08:53:35] Oved Anter: ?

[1/17/20, 09:14:36] Jona Rechnitz: Missed voice call.

[1/17/20, 09:15:21] Jona Rechnitz: Missed voice call.

[1/17/20, 09:30:44] Oved Anter: Can shirin pick up the check from your office at 10:30 so she can take it downtown.

[1/17/20, 09:32:00] Oved Anter: Or f he can bring to my office by 10:30.

[1/17/20, 09:34:13] Jona Rechnitz: *It will be done on next hour or so.*

[1/17/20,09:59:33] Oved Anter: ShirahS maid just quit I need help urgent if you know anyone or can ask around.

[1/17/20, 10:17:28] Oved Anter: Are the ec back.

[1/17/20, 10:19:15] Jona Rechnitz: I'll ask.

[1/17/20, 10:19:33] Jona Rechnitz: She's choosing over the weekend and sending for Monday.

[1/17/20,10:19:36] Jona Rechnitz: She's taking 1.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[1/17/20, 10:20:07] Oved Anter: I thought you said she Past I need the one that she doesn't want for sure right away please.

[1/17/20, 10:20:33] Oved Anter: That's ridiculous.

[1/17/20, 10:24:22] Jona Rechnitz: I can never please you. It's not ever enough. I can't deal this way. I didn't tell you in with my. Other don't say a word paramedics were here. So I'm not in the mood. My siblings don't know. She had blood clot. Please.

[1/17/20, 10:24:36] Jona Rechnitz: This message was deleted.

[1/17/20, 10:25:20] Oved Anter: I explained to the urgency why I need the money in my account today and you said you were in the morning, you're not doing it, I need check immediately so I can send somebody downtown so they can clear it for me as soon as possible, I'm sorry about this but that does not stop you guys from signing a check.

[1/17/20, 10:25:50] Jona Rechnitz: What are you talking about!!!!!!

[1/17/20, 10:25:53] Oved Anter: You told me you gave him instructions yesterday.

[1/17/20, 10:25:54] Jona Rechnitz: *I said it's on way to you.*

[1/17/20, 10:25:58] Jona Rechnitz: Stop it oved.

[1/17/20, 10:26:04] Jona Rechnitz: This is ridiculous!!!!!!

[1/17/20, 10:37:41] Jona Rechnitz: Watch the video of my mother! Don't tell anyone. Checks are on the way to you. We will talk before shabbos if everything is ok on my end -

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

Oved if you really love me like I think you Then read our texts again and you will understand how I feel.

[1/17/20, 10:38:11] Oved Anter: What video.

[1/17/20, 10:38:27] Jona Rechnitz: My mother I sent you !!

[1/17/20, 10:38:40] Oved Anter: I didn't realize it's your mom.

[1/17/20, 10:38:40] Jona Rechnitz: I texted you dealing with emergency with paramedics and my mother blood clot.

[1/17/20, 10:38:58] Oved Anter: You already use that excuse a few days ago with somebody else.

[1/17/20, 10:39:03] Jona Rechnitz: Yes yesterday.

[1/17/20, 10:39:09] Jona Rechnitz: It happened.

[1/17/20, 10:39:12] Jona Rechnitz: I'm woth her.

[1/17/20,10:39:17] Jona Rechnitz: R u serious??????

[1/17/20,10:39:55] Jona Rechnitz: You're not embarrassed right now. I'm with her now I can't believe you.

[1/17/20, 10:40:02] Jona Rechnitz: I don't need any excuses.

[1/17/20, 10:40:07] Jona Rechnitz: *I sent your checks!!!!!*

[1/17/20,10:40:18] Jona Rechnitz: Why are you pressuring me like this it's ridiculous.

[1/17/20, 10:42:18] Oved Anter: I explained it to you last night and you're putting me in an extremely bad predicament if the monies not there on Monday.

[1/17/20, 10:42:18] Oved Anter: And I thought you understood that's why I was happy you wiring me before 10 o'clock today as you said before.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[1/17/20, 10:42:18] Oved Anter: And now I'm not sure it's going to be cleared on time.

[1/17/20, 10:44:10] Jona Rechnitz: *I told you that checks on way to you momentarily.* This is extremely unpleasant. I'm don't texting you now. Everything is my fault. Shabbat Shalom.

[1/20/20, 05:48:53] Oved Anter: Gm , please make sure I will get the ec rings latest tomorrow.

[1/20/20, 09:28:39] Oved Anter: Let me know if you got the message, and call meet and talk today please.

[1/20/20, 10:10:22] Jona Rechnitz: Message Received. Not working today with family kids off from school.

[1/20/20, 10:11:58] Oved Anter: Ok thank you.

[1/20/20, 10:17:50] Oved Anter: *Please make sure the ec are here tomorrow please.*

[1/20/20, 10:21:42] Jona Rechnitz: *Ok.*

[1/20/20, 22:13:30] Jona Rechnitz: Good night. Sorry for my sensitivity and attitude lately. I've been going through a lot personally and in my family. You know I feel very close to you. Good night.

[1/21/20, 13:39:07] Oved Anter: Call me.

[1/21/20, 14:49:23] Oved Anter: I need the ec.

[1/21/20, 14:51:08] Jona Rechnitz: *Tomorrow you'll have it. So sorry.*

[1/21/20, 14:55:16] Oved Anter: Ok thank you.

[1/22/20, 11:28:32] Oved Anter: Before I go nuts please send me now whatever leftovers you have with you, but now.

[1/22/20, 11:28:52] Oved Anter: Whatever amount it is.

[1/22/20,11:31:46] Jona Rechnitz: *Ok.*

[1/22/20, 11:37:17] Jona Rechnitz: *Oved please give me until tomorrow to get your items back and returned safely. Please I beg you keep this between us and give me until tomorrow.*

[1/22/20, 11:37:56] Jona Rechnitz: I'm working with my family now to get it please bottom of my heart.

[1/22/20, 11:38:15] Oved Anter: Send what you have now, I will hold off till tomorrow and will talk about rest.

[1/22/20, 11:38:18] Jona Rechnitz: I'm not well but have big heart for you and helped your family when o could please help me.

[1/22/20, 11:38:20] Jona Rechnitz: Thx.

[1/22/20, 11:38:21] Jona Rechnitz: Ok.

[1/22/20, 13:01:06] Oved Anter: You also have 5 rows bracelet with princess cut.

[1/22/20, 13:32:29] Oved Anter: Do you have the 18 ct fy.

[1/22/20,13:34:41] Jona Rechnitz: The yellow I returned to you?

[1/22/20, 13:35:03] Jona Rechnitz: I never took it back.

[1/22/20, 13:42:44] Oved Anter: Sorry you're right.

[1/22/20, 14:57:09] Jona Rechnitz: You know I really do love you and that's why I helped you from my heart with Andrew and other things. I feel so close to you and I'm trying to get this all resolved now. Just know you mean a lot to me.

[1/22/20, 14:59:26] Oved Anter: Thank you Jona and it's same here, stay strong for your kids and parents, try to

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

resolve this with help of your cousin, when the fog goes away let's sit down and figure out…..

[1/22/20, 15:00:16] Jona Rechnitz: Ok thx.

[1/22/20,15:04:02] Oved Anter: Are you still there.

[1/22/20, 15:07:16] Jona Rechnitz: Ya.

[1/22/20, 15:07:44] Oved Anter: Ok let me know when done and update please.

[1/22/20, 15:08:05] Jona Rechnitz: Ok.

[1/22/20, 16:57:45] Jona Rechnitz: In a meeting.

[1/22/20, 16:58:06] Oved Anter: Ok call me when done.

[1/22/20, 21:19:59] Oved Anter: Hi, what's new.

[1/22/20, 21:39:52] Jona Rechnitz: *Will have good news hopefully tomorrow just finished meeting.*

[1/22/20,21:41:23] Oved Anter: Ok good, really wishing you good.

[1/22/20, 21:43:14] Jona Rechnitz: I know thx.

[1/23/20, 08:56:56] Oved Anter: Gm, give me a call when you have a chance please.

[1/23/20, 09:09:11] Jona Rechnitz: *Please give me a few hours everything is safe and being resolved.*

[1/23/20, 09:09:27] Jona Rechnitz: *I really wish you kept this to yourself. Please continue.*

[1/23/20, 09:09:46] Oved Anter: Ok np But call me because I want to ask you a couple of questions.

[1/23/20, 10:15:36] Oved Anter: Come give me a hug and I have to run to the doctors I'm downstairs.

[1/23/20, 19:29:51] Oved Anter: Sorry Forgot your charger in my pocket.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[1/23/20,19:31:01] Jona Rechnitz: Missed voice call.

[1/23/20, 19:33:05] Jona Rechnitz: Enjoy it. It's the best.

[1/24/20, 08:37:24] Oved Anter: Call me please.

[1/24/20, 08:37:34] Jona Rechnitz: 30 min ok?

[1/24/20, 08:37:41] Oved Anter: Yes.

[1/24/20, 08:57:36] Jona Rechnitz: imma.pdf * 1 page document omitted.

[1/24/20, 08:57:49] Jona Rechnitz: IMMA INTERNATIONAL INVOICE.pdf * 1 page document omitted.

[1/24/20, 15:17:03] Jona Rechnitz: Shabbat Shalom thank you.

[1/24/20, 15:17:12] Jona Rechnitz: You're a true friend and a great person.

[1/24/20, 15:17:43] Oved Anter: Shabbat shalom, I think it was on the text to text that to you.

[1/24/20, 15:17:58] Oved Anter: Relax and enjoy Shabbat.

[1/24/20,15:18:10] Oved Anter: My finger was on the text.

[1/24/20, 15:39:24] Jona Rechnitz: You're more than a friend and mentsch.

[1/24/20,15:39:35] Jona Rechnitz: You may have saved my life.

[1/24/20, 15:57:42] Oved Anter: Thank you.

[1/24/20, 15:58:12] Oved Anter: Now shut the phone. Shabbat shalom. [Emphasis Added].

8. In addition to the foregoing, on January 17, 2020, First International received two checks drawn on Jadelle's Wells Fargo Bank account in the total aggregate amount of $2,122,760, specifically, (i) check no. 2200 in the amount of $922,760, and (ii) check no. 2201 in the amount of $1,200,000. Both of these checks were NSF at the time

of tender. True and correct copies of the January 17, 2020, checks are attached hereto as Exhibit "C" and incorporated herein by reference.

9. There can be no dispute that Jona's representations to me and First International were false, in that, instead of reselling First International's two pieces of consigned jewelry and repaying First International, and returning the balance of the consigned jewelry held by Jadelle, Jona and Jadelle absconded with all of First International's consigned jewelry, either pawning them off, retaining the proceeds of sales, or using the jewelry as collateral for business or personal loans to various questionable sources. Simply stated, First International has not received a single dollar of the $2,826,890 in consigned jewelry. Nor has First International received the consigned jewelry back from Jadelle. Jona and Jadelle either liquidated or fraudulently transferred First International's consigned jewelry for their own benefit.

10. I have since learned that, during the time Jona and Jadelle were defrauding me and First International, Jona and Jadelle were defrauding other diamond dealers and insurance companies in Southern California, including, but not limited to, Sotheby's, Peter Marco, Leon Landver, Ben Adhoot, Yehuda Gamzo, Moti Klein, and Julius Klein. I have been advised that the amount of losses to these various parties is alleged to be over $15,000,000.

11. During this entire time, Jona, on behalf of Jadelle, repeatedly lied to me that the deals with his clients were consummated. Jona and Jadelle lulled me into a false sense of security, and attempted to fabricate one excuse after another to delay paying First International or returning the consigned jewelry as part of their effort to hide the truth from me through stonewalling and lies. Repeated demands have been made to Jona and Jadelle to return First International's consigned jewelry, but to no avail. Instead, Jona and Jadelle took numerous steps to pacify me in order to buy more time, and to keep this matter secret via phone calls and WhatsApp texts.

12. Emblematic of Jona's deceit, on February 4, 2020, at 9:40, Jona, again on behalf of Jadelle, falsely enlisted attorneys to pretend a bailout was coming from

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

family members to buy himself and Jadelle more time. Attorneys from Cohen Williams LLP wrote me an email about the purported bailout:

> We write with an update on Jona Rechnitz. A family member of Mr. Rechnitz has informed our law firm that the family member is seeking to refinance certain real property in order to satisfy Mr. Rechnitz's outstanding liabilities. We currently have no visibility into the family member's interest in the property, the value of the property, or what, if any equity, the family member has in it. If you are represented by counsel, please let us know and provide your counsel's contact information. Our client's desire is to resolve this matter amicably.

A true and correct copy of the February 4, 2020, email is attached hereto as Exhibit "D" and incorporated herein by reference.

13. I understood the Cohen Williams LLP email to mean exactly what it stated, in other words, that Jona and Jadelle wanted to know what was owed to First International so that its undisputed debt could be paid in full. Importantly, at no time have Jadelle or the Rechnitz's, or anyone acting or purporting to act on their behalf, ever disputed the bona fide status of First International's claim, either as to its nature, validity, or amount.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

14. In my opinion, as one of the three petitioning creditors in Jadelle's involuntary petition, the appointment of an interim trustee during the period between now and when an order for relief is entered is crucial to protect and preserve the assets of Jadelle and to prevent any further irreparable harm to me, First International, and other similarly situated creditors.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of May, 2020, at Los Angeles, California.

Oved Anter

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

# EXHIBIT A

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
3102751200

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)
FIRST INTERNATIONAL DIAMOND INC
P.O. BOX 3765
BEVERLY HILLS, CA 90212
USA

DOCUMENT NUMBER: 77246760002
FILING NUMBER: 19-7700745484
FILING DATE: 03/06/2019 13:44

IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME: JADELLE JEWELRY AND DIAMONDS LLC | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |
| 1c. MAILING ADDRESS: 9621 BRIGHTON WAY | CITY: BEVERLY HILLS | STATE: CA | POSTAL CODE: 90210 | COUNTRY: USA | |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME: JADELLE JEWELRY AND DIAMONDS LLC | | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |
| 2c. MAILING ADDRESS: 9454 WILSHIRE BLVD #PHG01 | CITY: BEVERLY HILLS | STATE: CA | POSTAL CODE: 90210 | COUNTRY: USA | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) Provide only one Secured Party name (3a or 3b)

| | | | | | |
|---|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME: FIRST INTERNATIONAL DIAMOND INC | | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |
| 3c. MAILING ADDRESS: P.O. BOX 3765 | CITY: BEVERLY HILLS | STATE: CA | POSTAL CODE: 90212 | COUNTRY: USA | |

4. COLLATERAL: This financing statement covers the following collateral:

This Financing statement covers the following collateral:
All property, Goods and merchandise which have been, are now, or may at any time be delivered on consignment consigned or entrusted by
First International Diamond Inc to JADELLE JEWELRY AND DIAMONDS LLC, including without limitation,diamonds,gemstones and other
precious and semi-precious jewelery,rings,bracelets and all other property, goods and merchandise in which diamonds,gemstones,precious

or semi-precious metals or stones are processed,mounted,included or converted and any accessory items, and the proceeds (including without limitation, insurance proceeds and proceeds from sale or other disposition)and receivables arising there from, wheresoever located, future consignment and deliveries are covered.
As related to or connected with the property described above, all accounts, accounts receivables, other receivables, contract rights, chattel paper, general intangibles, whether now owned or hereafter acquired by the debtor or in which the debtor may now or hereafter

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9 NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement, if line 1b was left blank because individual Debtor name did not fit, check here ☐

9a ORGANIZATION'S NAME
JADELLE JEWELRY AND DIAMONDS LLC

OR

9b INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INTITAL(S) | SUFFIX

DOCUMENT NUMBER: 77246760002

IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME
JADELLE JEWELRY AND DIAMONDS LLC

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5700 WILSHIRE BLVD #355 | LOS ANGELES | CA | 90036-3659 | USA |

11 ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a ORGANIZATION'S NAME

OR

| 11b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (collateral):
acquire an interest and proceeds from all the foregoing.
This financing statement covers consignments made by secured party to any of the debtor's affiliated companies, stores or DBAs wherever located.

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT: ☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

15. Name and address of RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY



**SECRETARY OF STATE**

**STATE OF CALIFORNIA**

## UCC Filing Acknowledgement

03/06/2019

Page 1 of 2

FIRST INTERNATIONAL DIAMOND INC
P.O. BOX 3765
BEVERLY HILLS CA 90212

| | |
|---|---|
| Filing Fee: | $5.00 |
| Total Fee: | **$5.00** |

The California Secretary of State's Office has received and filed your document. The information below reflects the data that was indexed in our system. Please review the information for accuracy. Included is an image of the filed document to assist you in your review. If you find a potential error, please notify the UCC Section at the number listed below at your earliest convenience.

Filing Type: **Financing Statement** File Date: **03/06/2019** File Time: **13:44**

Filing Number: **19-7700745484** Lapse Date: **03/06/2024**

Debtor(s):

| | |
|---|---|
| ORGANIZATION | **JADELLE JEWELRY AND DIAMONDS LLC** |
| | **9621 BRIGHTON WAY BEVERLY HILLS CA USA 90210** |
| ORGANIZATION | **JADELLE JEWELRY AND DIAMONDS LLC** |
| | **9454 WILSHIRE BLVD #PHG01 BEVERLY HILLS CA USA 90210** |
| ORGANIZATION | **JADELLE JEWELRY AND DIAMONDS LLC** |
| | **5700 WILSHIRE BLVD #355 LOS ANGELES CA USA 90036-3659** |

Secured Party(ies):

| | |
|---|---|
| ORGANIZATION | **FIRST INTERNATIONAL DIAMOND INC** |
| | **P.O. BOX 3765 BEVERLY HILLS CA USA 90212** |

Filing by the Secretary of State is not conclusive proof that all conditions for securing priority have been met. Ensuring that accurate information is on the document to be filed is the responsibility of the filing party. If this filing is challenged, the Secretary of State does not guarantee that the filing is legally sufficient to secure priority under UCC Article 9 and expressly disclaims any liability for failure of the filing party to secure priority resulting from the information contained in the filed document, or the lack of information on the filed document.

UNIFORM COMMERCIAL CODE 1500 11TH STREET, 2ND FL. • SACRAMENTO, CA 95814 • PO BOX 942835 • SACRAMENTO, CA 94235-0001 • (916) 653-3516 • HTTPS://UCCCONNECT.SOS.CA.GOV

PROGRAMS ARCHIVES, BUSINESS PROGRAMS, ELECTIONS, INFORMATION TECHNOLOGY, CALIFORNIA STATE HISTORY MUSEUM, MANAGEMENT SERVICES, SAFE AT HOME, DOMESTIC PARTNERS REGISTRY, NOTARY PUBLIC, POLITICAL REFORM

# EXHIBIT B

**First International Diamond Inc.**
2220 Avenue Of The Stars, Suite 1005
Los Angeles, CA 90067
Tel: (310) 275-1200 Fax: (310) 276-3700

# MEMORANDUM
**8415**

**Date:** 12/13/2019

**MEMO IS GIVEN OUT FOR 5 DAYS.**

| ACCOUNT NO. | 2119 | PHONE NO. | 310-721-5151 | SHIP VIA | | SP | OV |
|---|---|---|---|---|---|---|---|

MEMO TO:
Jadelle Jewelry LLC
9454 Wilshire Blvd
PH1
Beverly Hills, CA 90212

SHIP TO:
Jadelle Jewelry LLC
9454 Wilshire Blvd
PH1
Beverly Hills, CA 90212

| NO | LOT NUMBER | CARAT | UNITS | DESCRIPTION | % | PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|
| 1 | REBBR0001 | | 1 | 5 rows PR 27.48 ct, 370 diamonds | | $36,225.00 | $36,225.00 |
| | | 0.00 | 1 | | | | |

| | |
|---|---|
| SUB TOTAL | $36,225.00 |
| SHIPPING | $0.00 |
| MEMO TOTAL | $36,225.00 |

See Back Side For Full Terms & Conditions SIGNATURE:________________________.

Page 1 of 1

**First International Diamond Inc.**
2220 Avenue Of The Stars, Suite 1005
Los Angeles, CA 90067
Tel: (310) 275-1200 Fax: (310) 276-3700

# MEMORANDUM
**8431**

**Date: 12/30/2019**

MEMO IS GIVEN OUT FOR 5 DAYS.

| ACCOUNT NO. | 2119 | PHONE NO. | 310-721-5151 | SHIP VIA | | SP | OV |
|---|---|---|---|---|---|---|---|

MEMO TO: Jadelle Jewelry LLC, 9454 Wilshire Blvd, PH1, Beverly Hills, CA 90212

SHIP TO: Jadelle Jewelry LLC, 9454 Wilshire Blvd, PH1, Beverly Hills, CA 90212

| NO | LOT NUMBER | CARAT | UNITS | DESCRIPTION | % | PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|
| 1 | MT-5072 | | 1 | 13.62 PS D-VVS1 GIA, Harry Winston Mt/tr | | ,200,000.00 | $1,200,000.00 |
| 2 | OVEL101 | 10.03 | 1 | DIAM RD E IF 11923922166 | | $90,500.00 | $907,715.00 |
| | | 10.03 | 2 | | | SUB TOTAL | $2,107,715.00 |
| | | | | | | SHIPPING | $0.00 |
| | | | | | | MEMO TOTAL | $2,107,715.00 |

See Back Side For Full Terms & Conditions SIGNATURE:____________________.

Page 1 of 1

# EXHIBIT C

EXHIBIT C   027

EXHIBIT "7", PAGE 279



BANK LEUMI USA
MEMBER FDIC
350 Madison Avenue - 4th Flr
New York, NY 10017

Date: 01/22/20
Account: 8300418101
Page: 1 of 1

**Notice Of Returned Item**
**CHARGEBACK**

FIRST INTERNATIONAL DIAMOND INC
PO BOX 3765
BEVERLY HILLS CA 90212

The deposited item(s) listed below were returned unpaid and the Transaction Clearing Account noted above was debited for the amount of the item(s) returned.

| Date | Amount | Deposit Amt | Reason |
|---|---|---|---|
| 01/17/2020 | 922,760.00 | 2,122,760.00 | NSF - Not Sufficient Funds |
| 01/17/2020 | 1,200,000.00 | 2,122,760.00 | NSF - Not Sufficient Funds |

Please call Bank Leumi Customer Service (800-892-5430) with any questions regarding this notice.

WELLS FARGO BANK 2200
WILSHIRE CRESCENT 9354 WILSHIRE BLVD BEVERLY HILLS, CA 90212
DATE 1/17/2020 11-4288/1210
PAY TO THE ORDER OF First International Diamond Inc $ 922,760.00
Nine hundred twenty two thousand seven hundred sixty DOLLARS
JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS CA 90212-2931
⑆121042882⑆8649261313⑈2200

Item# 5250005545274 01/22/2020 $922,760.00
Reason: NSF - Not Sufficient Funds

WELLS FARGO BANK 2201
WILSHIRE CRESCENT 9354 WILSHIRE BLVD BEVERLY HILLS, CA 90212
DATE 1/17/2020 11-4288/1210
PAY TO THE ORDER OF First International Diamond Inc $ 1,200,000.00
One Million two hundred thousand dollars DOLLARS
JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS CA 90212-2931
⑆121042882⑆8649261313⑈2201

Item# 5250005545276 01/22/2020 $1,200,000.00
Reason: NSF - Not Sufficient Funds

*026002794*
01/22/2020
5250005545274
This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

RETURN REASON (A)
NOT SUFFICIENT FUNDS

Bank Leumi

5250005530192
[026002794] 01/17/2020

NSF

WELLS FARGO BANK
WILSHIRE CRESCENT 9354 WILSHIRE BLVD BEVERLY HILLS, CA 90212

2200
11-4288/1210

DATE 1/17/2020

PAY TO THE ORDER OF First International Diamond Inc $ 922,760.00

Nine hundred twenty two thousand seven hundred sixty DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS CA 90212-2931

[signature]

⑆121042882⑆8649261313⑈2200

4⑆121042882⑆ 8649261313⑈2200 ⑈0092276000⑈

*026002794*
01/22/2020
5250005545276
This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

RETURN REASON (A)
NOT SUFFICIENT FUNDS

Bank Leumi

5250005530191
[026002794] 01/17/2020

NSF

WELLS FARGO BANK
WILSHIRE CRESCENT 9354 WILSHIRE BLVD BEVERLY HILLS, CA 90212

2201
11-4288/1210

DATE 1/17/2020

PAY TO THE ORDER OF First International Diamond Inc $ 1,200,000.00

One Million two hundred thousand dollars DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS CA 90212-2931

[signature]

⑆121042882⑆8649261313⑈2201

4⑆121042882⑆ 8649261313⑈2201 ⑈0120000000⑈





Main Document Page 289 of 316

Main Document Page 30 of 35

EXHIBIT C 030

EXHIBIT "7", PAGE 282

**From:** donotreply@leumiusa.com
**Sent:** Wednesday, January 29, 2020 12:32 PM
**To:** Shirin Husnani
**Subject:** OUTGOING TRANSACTION ADVICE

## BANK LEUMI ADVICE OF DEBIT

ON JANUARY 29, 2020, WE DEBITED YOUR ACCOUNT D/XXXXXX8101 FOR USD 300,000.00

## DETAILS OF PAYMENT

| | |
|---|---|
| PAYMENT DATE AND TIME: | 29-JAN-2020 15:30:15 EST |
| PAID AMOUNT: | USD 300,000.00 |
| METHOD OF PAYMENT: | FED Payment |
| TRANSACTION NUMBER: | 202001290003947 |
| IMAD(CYCLE DATE/LTERM/IMSN) | 20200129/B1Q8031C/000231/ |
| OMAD(CYCLE DATE/LTERM/OMSN) | 20200129/I1B7033R/018732/ |
| REFERENCE: | 202001290003947 |
| PAID TO: | F/121000248<br>WELLS FARGO BANK, NA<br>SAN FRANCISCO<br>CA |
| BENEFICIARY: | X/XXXXXX5544<br>LIPAZ SCHWARTZ |
| DEBITED TO: | D/XXXXXX8101<br>FIRST INTERNATIONAL DIAMOND INC<br>PO BOX 3765<br>BEVERLY HILLS CA 90212 |
| ORIGINATOR TO BENEFICIARY INFO: | |

This e-mail contains confidential and privileged information. If you are not the intended recipient (or have received this e-mail in error), please notify the sender immediately and destroy this e-mail. Any unauthorized copying, disclosure or distribution of the material in this e-mail is strictly prohibited. When contacting this institution, please use reference number: 202001290003947.

NOTE: The information in this message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is

Main Document Page 291 of 316

Main Document Page 32 of 35

# EXHIBIT D

EXHIBIT D 032

EXHIBIT "7", PAGE 284

**Ronald Richards**

**From:** Reuven Cohen <rcohen@cohen-williams.com>
**Sent:** Tuesday, February 4, 2020 9:40 PM
**To:** Reuven Cohen; Marc Williams
**Subject:** Jona Rechnitz

We write with an update on Jona Rechnitz. A family member of Mr. Rechnitz has informed our law firm that the family member is seeking to refinance certain real property in order to satisfy Mr. Rechnitz's outstanding liabilities. We currently have no visibility into the family member's interest in the property, the value of the property, or what, if any equity, the family member has in it.

If you are represented by counsel, please let us know and provide your counsel's contact information.

Our client's desire is to resolve this matter amicably.

Sincerely,

Reuven L. Cohen
Cohen Williams LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Tel: 213-232-5163
Fax: 213-232-5167
rcohen@cohen-williams.com
www.cohen-williams.com

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): DECLARATION OF OVED ANTER IN SUPPORT OF PETITIONING CREDITORS' MOTION FOR APPOINTMENT OF INTERIM CHAPTER 7 TRUSTEE will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) May 19, 2020 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) May 19, 2020 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ________________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 19, 2020 | Cheryl Caldwell | */s/ Cheryl Caldwell* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

EXHIBIT "7", PAGE 286

**ADDITIONAL SERVICE INFORMATION (if needed):**

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **Baruch C Cohen** bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- **Daniel A Lev** dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- **Robert S Marticello** Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- **Ronald N Richards** ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- **Neal Salisian** ECF@salisianlee.com
- **United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

EXHIBIT "7", PAGE 287

# EXHIBIT "8"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

West District, Santa Monica Courthouse, Department R

**20SMCV00216**
**VICTOR FRANCO NOVAL vs JONA S. RECHNITZ, et al.**

March 10, 2020
8:30 AM

Judge: Honorable Marc D. Gross
Judicial Assistant: P. Anyankor
Courtroom Assistant: A. Wiggins

CSR: None
ERM: None
Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Ronald Richards

For Defendant(s): Marc S Williams and Reven L. Cohen

**NATURE OF PROCEEDINGS:** Hearing on Ex Parte Application Advancing Motion for Stay

The matter is called for hearing.

Ex Parte Application Hearing is held.

The Court now rules as follows:

The Ex Parte Application for Order Shortening Time and Advancing Hearing Date on Defendant Motion for Stay of Proceedings filed by Jona S. Rechnitz, Rachel Rechnitz, Jadelle Inc., a California corporation, Jadelle Jewelry and Diamonds, LLC, a Delaware limited liability company on 03/09/2020 is Granted in Part.

Pursuant to the request of moving party, the Hearing on Motion for Stay of Proceedings scheduled for 02/25/2021 is advanced to this date and continued to 04/09/2020 at 08:30 AM in Department R at Santa Monica Courthouse.

Moving Papers are filed.

Opposition and Reply are due per code.

The Court orders the case TEMPORARILY STAYED, pending a decision on the above-scheduled hearing.

Defendant(s) may submit a supplemental declaration re: update regarding the status of the criminal investigation with new information that was not available at today's hearing (03/10/2020). The declaration is to be e-filed sixteen (16) court days, plus time for service, prior to the hearing.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

West District, Santa Monica Courthouse, Department R

**20SMCV00216**
**VICTOR FRANCO NOVAL vs JONA S. RECHNITZ, et al.**

March 10, 2020
8:30 AM

Judge: Honorable Marc D. Gross
Judicial Assistant: P. Anyankor
Courtroom Assistant: A. Wiggins

CSR: None
ERM: None
Deputy Sheriff: None

---

Counsel for the Defendant(s) is to give notice.

# EXHIBIT "9"

## CASE INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Case Number:** 20SMCV00216
VICTOR FRANCO NOVAL VS JONA S. RECHNITZ, ET AL.

**Filing Courthouse:** Santa Monica Courthouse

**Filing Date:** 02/10/2020
**Case Type:** Fraud (no contract) (General Jurisdiction)
**Status:** Pending

Click here to access document images for this case
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page

## FUTURE HEARINGS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**08/10/2020** at 08:30 AM in Department R at 1725 Main Street, Santa Monica, CA 90401
Case Management Conference

**11/03/2020** at 08:30 AM in Department R at 1725 Main Street, Santa Monica, CA 90401
Hearing on Motion for Stay of Proceedings

## PARTY INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

CORTEZ XIOMARA - Defendant

JADELLE INC. A CALIFORNIA CORPORATION - Defendant

JADELLE JEWELRY AND DIAMONDS LLC A DELAWARE LIMITED LIABILITY COMPANY - Defendant

LONG GEOFFREY - Attorney for Plaintiff

NOVAL VICTOR FRANCO - Plaintiff

PRADO LEVIN AKA LEVON PRADO - Defendant

RECHNITZ JONA S. - Defendant

RECHNITZ RACHEL - Defendant

RICHARDS RONALD - Attorney for Plaintiff

WILLIAMS MARC S - Attorney for Defendant

## DOCUMENTS FILED

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### Documents Filed (Filing dates listed in descending order)

**05/07/2020** Notice (AMENDED NOTICE OF CONTINUED HEARING ON DEFENDANTS? MOTION FOR STAY OF PROCEEDINGS AND CASE REASSIGNMENT)
Filed by Victor Franco Noval (Plaintiff)

**05/07/2020** Notice (NOTICE OF CONTINUED CASE MANAGEMENT CONFERENCE)
Filed by Victor Franco Noval (Plaintiff)

**04/30/2020** Notice of Continuance Due to COVID-19 State of Emergency Declarations
Filed by Clerk

**04/30/2020** Notice Re: Continuance of Hearing and Order
Filed by Clerk

**04/29/2020** Notice of Case Reassignment and Order for Plaintiff to Give Notice
Filed by Clerk

**03/17/2020** Notice Re: Continuance of Hearing and Order
Filed by Clerk

**03/11/2020** Notice of Ruling
Filed by Jona S. Rechnitz (Defendant); Rachel Rechnitz (Defendant); Jadelle Inc., a California corporation (Defendant) et al.

**03/10/2020** Minute Order ( (Hearing on Ex Parte Application Advancing Motion for Stay))
Filed by Clerk

**03/09/2020** Opposition (PLAINTIFF?S OPPOSITION TO DEFENDANTS? EX PARTE APPLICATION TO STAY ALL PROCEEDINGS IN ACTION AND FOR AN ORDER SHORTENING TIME AND ADVANCING THE HEARING DATE)
Filed by Victor Franco Noval (Plaintiff)

**03/09/2020** Proof of Service by Substituted Service
Filed by Victor Franco Noval (Plaintiff)

**03/09/2020** Ex Parte Application (for Order Shortening Time and Advancing Hearing Date on Defendant Motion for Stay of Proceedings)
Filed by Jona S. Rechnitz (Defendant); Rachel Rechnitz (Defendant); Jadelle Inc., a California corporation (Defendant) et al.

**03/09/2020** Proof of Personal Service
Filed by Victor Franco Noval (Plaintiff)

**03/06/2020** Motion for Stay of Proceedings
Filed by Jona S. Rechnitz (Defendant); Rachel Rechnitz (Defendant); Jadelle Inc., a California corporation (Defendant) et al.

**02/10/2020** Notice of Case Management Conference
Filed by Clerk

**02/10/2020** Notice of Case Assignment - Unlimited Civil Case
Filed by Clerk

**02/10/2020** Civil Case Cover Sheet
Filed by Victor Franco Noval (Plaintiff)

**02/10/2020** Summons (on Complaint)
Filed by Victor Franco Noval (Plaintiff)

**02/10/2020** Complaint
Filed by Victor Franco Noval (Plaintiff)

## PROCEEDINGS HELD

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### Proceedings Held (Proceeding dates listed in descending order)

**04/09/2020** at 08:30 AM in Department R, Marc D. Gross, Presiding
Hearing on Motion for Stay of Proceedings - **Not Held - Continued - Court's Motion**

**03/10/2020** at 08:30 AM in Department R, Marc D. Gross, Presiding
Hearing on Ex Parte Application (Advancing Motion for Stay) - **Held**

## REGISTER OF ACTIONS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### Register of Actions (Listed in descending order)

**05/07/2020** Notice (NOTICE OF CONTINUED CASE MANAGEMENT CONFERENCE)
Filed by Victor Franco Noval (Plaintiff)

**05/07/2020** Notice (AMENDED NOTICE OF CONTINUED HEARING ON DEFENDANTS? MOTION FOR STAY OF PROCEEDINGS AND CASE REASSIGNMENT)
Filed by Victor Franco Noval (Plaintiff)

**04/30/2020** Notice of Continuance Due to COVID-19 State of Emergency Declarations
Filed by Clerk

**04/30/2020** Notice Re: Continuance of Hearing and Order
Filed by Clerk

**04/29/2020** Notice of Case Reassignment and Order for Plaintiff to Give Notice
Filed by Clerk

**04/09/2020** at 08:30 AM in Department R, Marc D. Gross, Presiding
Hearing on Motion for Stay of Proceedings - **Not Held - Continued - Court's Motion**

**03/17/2020** Notice Re: Continuance of Hearing and Order
Filed by Clerk

**03/11/2020** Notice of Ruling
Filed by Jona S. Rechnitz (Defendant); Rachel Rechnitz (Defendant); Jadelle Inc., a California corporation (Defendant) et al.

**03/10/2020** at 08:30 AM in Department R, Marc D. Gross, Presiding
Hearing on Ex Parte Application (Advancing Motion for Stay) - **Held**

**03/10/2020** Minute Order ( (Hearing on Ex Parte Application Advancing Motion for Stay))
Filed by Clerk

**03/09/2020** Opposition (PLAINTIFF?S OPPOSITION TO DEFENDANTS? EX PARTE APPLICATION TO STAY ALL PROCEEDINGS IN ACTION AND FOR AN ORDER SHORTENING TIME AND ADVANCING THE HEARING DATE)
Filed by Victor Franco Noval (Plaintiff)

**03/09/2020** Proof of Personal Service
Filed by Victor Franco Noval (Plaintiff)

**03/09/2020** Ex Parte Application (for Order Shortening Time and Advancing Hearing Date on Defendant Motion for Stay of Proceedings)
Filed by Jona S. Rechnitz (Defendant); Rachel Rechnitz (Defendant); Jadelle Inc., a California corporation (Defendant) et al.

**03/09/2020** Proof of Service by Substituted Service
Filed by Victor Franco Noval (Plaintiff)

**03/06/2020** Motion for Stay of Proceedings
Filed by Jona S. Rechnitz (Defendant); Rachel Rechnitz (Defendant); Jadelle Inc., a California corporation (Defendant) et al.

**02/10/2020** Notice of Case Management Conference
Filed by Clerk

**02/10/2020** Civil Case Cover Sheet
Filed by Victor Franco Noval (Plaintiff)

**02/10/2020** Summons (on Complaint)
Filed by Victor Franco Noval (Plaintiff)

**02/10/2020** Complaint
Filed by Victor Franco Noval (Plaintiff)

**02/10/2020** Notice of Case Assignment - Unlimited Civil Case
Filed by Clerk

# EXHIBIT "10"

ACCO,(ASx),DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
# CIVIL DOCKET FOR CASE #: 2:20-cv-02580-ODW-AS

David Rovinsky LLC v. Peter Marco, LLC et al
Assigned to: Judge Otis D. Wright, II
Referred to: Magistrate Judge Alka Sagar
Demand: $75,000
Cause: 28:1332 Diversity-Fraud

Date Filed: 03/18/2020
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

**Plaintiff**

**David Rovinsky LLC**
*a Delaware limited liability company*

represented by **Anthony R Bisconti**
Bienert Katzman PC
601 West 5th Street Suite 720
Los Angeles, CA 90071
213-528-3400
Fax: 949-369-3701
Email: tbisconti@bienertkatzman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason A Levine**
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square
Ste 27th Floor
Philadelphia, PA 19103
215-568-6200
Email: jlevine@hangley.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven Jay Katzman**
Bienert Katzman PLC
601 West 5th Street Suite 720
Los Angeles, CA 90071
213-528-3400
Fax: 949-369-3701
Email: skatzman@bienertkatzman.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Peter Marco, LLC**
*a California limited liability company*

represented by **Baruch C Cohen**
Law Offices of Baruch C Cohen APLC
4929 Wilshire Boulevard Suite 940
Los Angeles, CA 90010
323-937-4501
Fax: 323-937-4503

Email: baruchcohen@baruchcohenesq.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Peter Voutsas**
*an individual*

represented by **Baruch C Cohen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

**Peter Voutsas**
*an individual*
*TERMINATED: 04/17/2020*

represented by **Baruch C Cohen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

**Peter Marco, LLC**
*a California limited liability company*
*TERMINATED: 04/17/2020*

represented by **Baruch C Cohen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**ThirdParty Defendant**

**Jona Rechnitz**
*TERMINATED: 04/17/2020*

represented by **Brittany L Lane**
Cohen Williams LLP
724 South Spring Street 9th Floor
Los Angeles, CA 90014
213-232-5165
Fax: 213-232-5167
Email: blane@cohen-williams.com
*ATTORNEY TO BE NOTICED*

**Marc S Williams**
Cohen Williams LLP
724 South Spring Street 9th Floor
Los Angeles, CA 90014
213-232-5162
Email: mwilliams@cohen-williams.com
*ATTORNEY TO BE NOTICED*

**Reuven L Cohen**
Cohen Williams LLP
724 South Spring Street 9th Floor
Los Angeles, CA 90014
213-232-5163
Fax: 213-232-5167
Email: rcohen@cohen-williams.com
*ATTORNEY TO BE NOTICED*

**Youngbin Son**
Cohen Williams LLP

724 South Spring Street 9th Floor
Los Angeles, CA 90014
213-232-5152
Fax: 213-232-5167
Email: yson@cohen-williams.com
*ATTORNEY TO BE NOTICED*

**ThirdParty Defendant**

**Levin Prado**
*TERMINATED: 04/17/2020*

**ThirdParty Plaintiff**

**Peter Marco, LLC**
*a California limited liability company*

represented by **Baruch C Cohen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

**Peter Voutsas**
*an individual*
*also known as*
Peter Marco
*also known as*
Peter Marco Extraodinary Jewels of Beverly Hills
*doing business as*
Peter Marco LLC

represented by **Baruch C Cohen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**ThirdParty Defendant**

**Rachel Rechnitz**

represented by **Brittany L Lane**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marc S Williams**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Reuven L Cohen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Youngbin Son**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ThirdParty Defendant**

**Levin Prado**
*also known as*
Levon Prado

**ThirdParty Defendant**

**Jona S Rechnitz** represented by **Brittany L Lane**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marc S Williams**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Reuven L Cohen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Youngbin Son**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/11/2020 | 62 | REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Stay Case 47 *(See Supplemental Declaration in Opposition to Motion to Stay Case [Docket 61]* filed by Defendants Peter Marco, LLC, Peter Voutsas, Third Party Plaintiffs Peter Marco, LLC, Peter Voutsas. (Cohen, Baruch) (Entered: 06/11/2020) |
| 06/11/2020 | 61 | DECLARATION of Baruch C. Cohen Supplemental Declaration in Support of NOTICE OF MOTION AND MOTION to Stay Case 47 filed by Defendants Peter Marco, LLC, Peter Voutsas, Third Party Plaintiffs Peter Marco, LLC, Peter Voutsas. (Cohen, Baruch) (Entered: 06/11/2020) |
| 06/09/2020 | 60 | MINUTES (IN CHAMBERS) by Judge Otis D. Wright, II: RE EX PARTE APPLICATION for Leave for In Camera Review filed by Third Party Defendants Jona S Rechnitz, Jona Rechnitz, Rachel Rechnitz 57 . The Court finds the application does not warrantin camera review and DENIES the Rechnitz Defendants application. (lc) (Entered: 06/09/2020) |
| 06/03/2020 | 59 | DECLARATION of Baruch C. Cohen re Response in Opposition to Motion, 58 *Supplemental Declaration of Baruch C. Cohen Regarding Third-Party Plaintiffs Opposition to Third-Party Defendants Ex Parte Application for an Order Permitting Submission for In Camera Review Relating to the Ongoing Criminal Investigation* filed by Defendants Peter Marco, LLC, Peter Voutsas, Third Party Plaintiffs Peter Marco, LLC, Peter Voutsas. (Cohen, Baruch) (Entered: 06/03/2020) |
| 06/02/2020 | 58 | OPPOSITION to EX PARTE APPLICATION for Leave for In Camera Review 57 filed by Defendants Peter Marco, LLC, Peter Voutsas, Third Party Plaintiffs Peter Marco, LLC, Peter Voutsas. (Attachments: # 1 Request for Judicial Notice, # 2 Proposed Order)(Cohen, Baruch) (Entered: 06/02/2020) |
| 06/02/2020 | 57 | EX PARTE APPLICATION for Leave for In Camera Review filed by Third Party Defendants Jona S Rechnitz, Jona Rechnitz, Rachel Rechnitz. (Attachments: # 1 Declaration, # 2 Proposed Order)(Williams, Marc) (Entered: 06/02/2020) |
| 06/02/2020 | 56 | The hearing on the MOTION to Stay Case 47 , scheduled for June 15, 2020 at 1:30 P.M., is hereby VACATED and taken off calendar. No appearances are necessary. The matter stands submitted, and will be decided upon without oral argument. An order will issue.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (sce) TEXT ONLY ENTRY (Entered: 06/02/2020) |

| | | |
|---|---|---|
| 06/01/2020 | 55 | REPLY in Support of NOTICE OF MOTION AND MOTION to Stay Case 47 filed by Third Party Defendants Jona S Rechnitz, Jona Rechnitz, Rachel Rechnitz. (Williams, Marc) (Entered: 06/01/2020) |
| 05/27/2020 | 54 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Notice of Lodging 53 . The following error(s) was/were found: Proposed Document was not submitted as separate attachment. Other error(s) with document(s): Refiled Notice of Lodging, however the proposed order was efiled as 1 pdf with the Notice of Lodging, instead of it being submitted as a Separate Attachment as advised previously docket no. 51. Filer bypassed the party for whom filing is made. Docket entry only shows attorney's name.. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (lc) (Entered: 05/27/2020) |
| 05/26/2020 | 53 | NOTICE OF LODGING filed *Amended Notice of Lodging* re Objection/Opposition (Motion related), 48 (Cohen, Baruch) (Entered: 05/26/2020) |
| 05/22/2020 | 52 | OPPOSITION to NOTICE OF MOTION AND MOTION to Stay Case 47 filed by Plaintiff David Rovinsky LLC. (Bisconti, Anthony) (Entered: 05/22/2020) |
| 05/21/2020 | 51 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Notice of Lodging 50 (no link to filer only shows attorney. The following error(s) was/were found: Incorrect document is attached to the docket entry. Proposed Document was not submitted as separate attachment. Other error(s) with document(s): 1) Filer used G-92 form, which is only applicable re "MANUALLY" filed or lodged documents at Clerk's Office filing window. 2) Filer should have prepared a Notice of Lodging on pleading format, to which the Proposed order should have been submitted as a SEPARATE attachment thereto... instead of 1 all inclusive pdf as in this filing. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (lc) (Entered: 05/21/2020) |
| 05/20/2020 | 50 | NOTICE OF LODGING filed re Objection/Opposition (Motion related), 48 (Cohen, Baruch) (Entered: 05/20/2020) |
| 05/20/2020 | 49 | REQUEST FOR JUDICIAL NOTICE *Third-Party Plaintiffs Request for Judicial Notice in Support of Opposition to Third-Party Defendants Motion for Stay of Proceedings* filed by Third Party Plaintiffs Peter Marco, LLC, Peter Voutsas. (Cohen, Baruch) (Entered: 05/20/2020) |
| 05/20/2020 | 48 | Third-Party Plaintiffs Opposition to Third-Party Defendants Motion for Stay of Proceedings; Memorandum of Points & Authorities; Declaration of Baruch C. Cohen re: NOTICE OF MOTION AND MOTION to Stay Case 47 filed by Third Party Plaintiffs Peter Marco, LLC, Peter Voutsas. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(Cohen, Baruch) (Entered: 05/20/2020) |
| 05/18/2020 | 47 | NOTICE OF MOTION AND MOTION to Stay Case filed by Third-Party Defendants Jona S Rechnitz, Jona Rechnitz, Rachel Rechnitz. Motion set for hearing on 6/15/2020 at 01:30 PM before Judge Otis D. Wright II. (Attachments: # 1 Proposed Order) (Williams, Marc) (Entered: 05/18/2020) |
| 05/12/2020 | 46 | ORDER by Judge Otis D. Wright, II: the following document(s) be STRICKEN for failure to comply with the Local Rules, General Order and/or the Courts Case Management Order: NOTICE OF MOTION AND MOTION to Stay Case 44 , for the following reasons: Comply with instructions on discrepancy doc no.45. Refile correctly and for |

| | | |
|---|---|---|
| | | failure to comply with LR 7-3. The conference shall take place at least seven (7) days prior to the filing of the motion. (lc) (Entered: 05/12/2020) |
| 05/12/2020 | 45 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: NOTICE OF MOTION AND MOTION to Stay Case 44 . The following error(s) was/were found: Hearing information is missing, incorrect, or not timely. Other error(s) with document(s): Although filer used correct motion event, it appears filer bypassed CM system prompt re date, time and selection of Judge...as a result the motion is NOT set on Judge's Motion calendar for the date shown on the pdf document as 6/8/20 1:30 PM.In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (lc) (Entered: 05/12/2020) |
| 05/11/2020 | 44 | (STRICKEN PER 5/11/2020 ORDER, DOCKET NO. 46). NOTICE OF MOTION AND MOTION to Stay Case filed by Third-Party Defendants Jona S Rechnitz, Jona Rechnitz, Rachel Rechnitz. (Attachments: # 1 Proposed Order) (Williams, Marc) Modified on 5/12/2020 (lc). (Entered: 05/11/2020) |
| 05/11/2020 | 43 | Notice of Appearance or Withdrawal of Counsel: for attorney Youngbin Son counsel for Third Party Defendants Jona S Rechnitz, Jona Rechnitz, Rachel Rechnitz. Adding Youngbin Son as counsel of record for Jona S. Rechnitz and Rachel Rechnitz for the reason indicated in the G-123 Notice. Filed by Third-Party Defendants Jona S. Rechnitz and Rachel Rechnitz. (Attorney Youngbin Son added to party Jona S Rechnitz(pty:3pd), Attorney Youngbin Son added to party Jona Rechnitz(pty:3pd), Attorney Youngbin Son added to party Rachel Rechnitz(pty:3pd))(Son, Youngbin) (Entered: 05/11/2020) |
| 05/11/2020 | 42 | Notice of Appearance or Withdrawal of Counsel: for attorney Brittany L Lane counsel for Third Party Defendants Jona S Rechnitz, Jona Rechnitz, Rachel Rechnitz. Adding Brittany L. Lane as counsel of record for Jona S. Rechnitz and Rachel Rechnitz for the reason indicated in the G-123 Notice. Filed by Third-Party Defendants Jona S. Rechnitz and Rachel Rechnitz. (Attorney Brittany L Lane added to party Jona S Rechnitz(pty:3pd), Attorney Brittany L Lane added to party Jona Rechnitz(pty:3pd), Attorney Brittany L Lane added to party Rachel Rechnitz(pty:3pd))(Lane, Brittany) (Entered: 05/11/2020) |
| 05/11/2020 | 41 | Notice of Appearance or Withdrawal of Counsel: for attorney Reuven L Cohen counsel for Third Party Defendants Jona S Rechnitz, Jona Rechnitz, Rachel Rechnitz. Adding Reuven L. Cohen as counsel of record for Jona S. Rechnitz and Rachel Rechnitz for the reason indicated in the G-123 Notice. Filed by Third-Party Defendants Jona S. Rechnitz and Rachel Rechnitz. (Attorney Reuven L Cohen added to party Jona S Rechnitz(pty:3pd), Attorney Reuven L Cohen added to party Jona Rechnitz(pty:3pd), Attorney Reuven L Cohen added to party Rachel Rechnitz(pty:3pd))(Cohen, Reuven) (Entered: 05/11/2020) |
| 05/11/2020 | 40 | Notice of Appearance or Withdrawal of Counsel: for attorney Marc S Williams counsel for Third Party Defendants Jona S Rechnitz, Jona Rechnitz, Rachel Rechnitz. Adding Marc S. Williams as counsel of record for Jona S. Rechnitz and Rachel Rechnitz for the reason indicated in the G-123 Notice. Filed by Third-Party Defendants Jona S. Rechnitz and Rachel Rechnitz. (Attorney Marc S Williams added to party Jona S Rechnitz(pty:3pd), Attorney Marc S Williams added to party Jona Rechnitz(pty:3pd), Attorney Marc S Williams added to party Rachel Rechnitz(pty:3pd))(Williams, Marc) (Entered: 05/11/2020) |
| 04/24/2020 | 39 | Amendment to the Third-Party Complaint AMENDED THIRD-PARTY COMPLAINT against Third-Party Defendants Levin Prado, Jona S Rechnitz, Rachel Rechnitz amending Third Party Complaint 27 ; JURY DEMAND, filed by Third-Party Plaintiff Peter Marco, LLC(a California limited liability company), Peter Voutsas(an individual)(Cohen, Baruch) (Entered: 04/24/2020) |

| | | |
|---|---|---|
| 04/24/2020 | 38 | ORDER by Judge Otis D. Wright, II: the following document(s) be STRICKEN for failure to comply with the Local Rules, General Order and/or the Courts Case Management Order: Errata 36 , for the following reasons: Read the instructions on the discrepancy on docket no. 37 and the rules to file a 3- amend complaint and resubmit correctly. (lc) (Entered: 04/24/2020) |
| 04/21/2020 | 37 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Errata 36 re Third Party Complaint. The following error(s) was/were found: Clerk unable to determine the sufficiency of submitting corrected pages 26 and 27 re overlapping images over text and the submitting of ONLY reformulated copies of pages 26 and 27. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (lc) (Entered: 04/21/2020) |
| 04/20/2020 | 36 | (STRICKEN PER 4/24/2020 ORDER, DOCKET NO. 38).NOTICE OF ERRATA filed by Third Party Plaintiffs Peter Marco, LLC, Peter Voutsas. correcting Third Party Complaint 27 (Cohen, Baruch) Modified on 4/24/2020 (lc). (Entered: 04/20/2020) |
| 04/17/2020 | 35 | 21 DAY Summons Issued re Third Party Complaint 27 as to third party defendant Levin Prado aka Leon Prado. (lc) (Entered: 04/17/2020) |
| 04/17/2020 | 34 | 21 DAY Summons Issued re Third Party Complaint 27 as to third party defendant Rachel Rechnitz. (lc) (Entered: 04/17/2020) |
| 04/17/2020 | 33 | 21 DAY Summons Issued re Third Party Complaint 27 as to third party defendant Jona S Rechnitz. (lc) (Entered: 04/17/2020) |
| 04/17/2020 | 32 | Request for Clerk to Issue Summons on Third Party Complaint 27 filed by Third Party Plaintiff Peter Marco, LLC(a California limited liability company), Peter Voutsas(an individual). (Attachments: # 1 Summons Request - Rachel Rechnitz, # 2 Summons Request - Levin Prado)(Cohen, Baruch) (Entered: 04/17/2020) |
| 04/17/2020 | 31 | NOTICE OF DEFICIENCIES in Request to Issue Summons RE: Third Party Complaint Summons Request 28 . The following error(s) was found: Summons is not directed to the defendant(s). The defendants name must appear in the To:section of the summons. CLARIFICATION re third party complaint summons to be issued to multiple defendants: 1) Please do NOT abbreviate defendant's name in the "TO:" area nor erroneously combine 2 defendants as one, which does not reflect the two separate defendants properly. Also "Jona" is incomplete and should to be named exactly as" JONA S. RECHNITZ". The summons cannot be issued until this defect has been corrected. Please correct the defect and re-file your request. (lc) (Entered: 04/17/2020) |
| 04/17/2020 | 30 | WAIVER OF SERVICE Returned Executed filed by 3rd Party Plaintiff Peter Marco, LLC(a California limited liability company), Peter Voutsas(an individual). upon Rachel Rechnitz waiver sent by Plaintiff on 4/15/2020, answer due 6/15/2020. Waiver of Service signed by Marc S. Williams. (Cohen, Baruch) (Entered: 04/17/2020) |
| 04/17/2020 | 29 | WAIVER OF SERVICE Returned Executed filed by 3rd Party Plaintiff Peter Marco, LLC(a California limited liability company), Peter Voutsas(an individual). upon Jona Rechnitz waiver sent by Plaintiff on 4/15/2020, answer due 6/15/2020. Waiver of Service signed by Marc S. Williams. (Cohen, Baruch) (Entered: 04/17/2020) |
| 04/17/2020 | 28 | Request for Clerk to Issue Summons on Third Party Complaint 27 filed by 3rd Party Plaintiff Peter Marco, LLC(a California limited liability company), Peter Voutsas(an individual). (Cohen, Baruch) (Entered: 04/17/2020) |
| 04/17/2020 | 27 | THIRD PARTY COMPLAINT against Third-Party Defendants Levin Prado, Jona |

| | | |
|---|---|---|
| | | Rechnitz, Rachel Rechnitz, filed by 3rd Party Plaintiff Peter Marco, LLC, Peter Voutsas. (Cohen, Baruch) (Entered: 04/17/2020) |
| 04/16/2020 | 26 | PROOF OF SERVICE filed by Plaintiff David Rovinsky LLC, re Order,, Set/Reset Hearing, 25 served on April 16, 2020. (Bisconti, Anthony) (Entered: 04/16/2020) |
| 04/15/2020 | 25 | ORDER that the Scheduling Conference is set for 7/27/2020 1:30 PM ; compliance with FRCP 16, and 26(f) and filing of joint report; Counsel for plaintiff shall immediately serve this Order on all parties, including any new parties to the action by Judge Otis D Wright, II (lc) (Entered: 04/15/2020) |
| 04/15/2020 | 24 | ORDER by Judge Otis D. Wright, II: the following document(s) be STRICKEN for failure to comply with the Local Rules, General Order and/or the Courts Case Management Order: Summons Request 20 , Third Party Complaint 19 , for the following reasons: REVIEW LOCAL RULES for these documents and read the instructions on the discrepancies on doc nos. 22 and 23.; (lc) (Entered: 04/15/2020) |
| 04/15/2020 | 23 | NOTICE OF DEFICIENCIES in Request to Issue Summons RE: Summons Request 20 . The following error(s) was found: The case number and/or judge(s)initials are incorrect. RE Third party complaint summons- No formal Third Party Complaint on file. Docket no. 19 is entitled a "CROSS COMPLAINT"; Case number incomplete, missing assigned Judge and Magistrate's initials. Should read as 2:20-cv-02580-ODW-AS. Note a deficiency notice re pdf entitled a "Cross Complaint" issued docket no. 22. The summons cannot be issued until this defect has been corrected. Please correct the defect and re-file your request. (lc) (Entered: 04/15/2020) |
| 04/15/2020 | 22 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Third Party Complaint 19 . The following error(s) was/were found: Case number is incorrect or missing. Pdf document is erroneously Entitled as a "CROSS COMPLAINT" and NOT a Third Party Complaint Other error(s) with document(s): Case number is Incomplete as Missing the assigned Judge and Magistrate's initials: Should read as 2:20-cv-02580-ODW-AS. (note was missing on the answer as well. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (lc) (Entered: 04/15/2020) |
| 04/14/2020 | 21 | CORPORATE DISCLOSURE STATEMENT filed by Third Party Plaintiffs Peter Marco, LLC, Peter Voutsas, Defendants Peter Marco, LLC, Peter Voutsas (Cohen, Baruch) (Entered: 04/14/2020) |
| 04/14/2020 | 20 | (STRICKEN PER 4/15/2020 ORDER, DOCKET NO. 24).Request for Clerk to Issue Summons on Third Party Complaint 19 filed by Defendant, Third-party plaintiff Peter Marco, LLC, Peter Voutsas. (Cohen, Baruch) Modified on 4/15/2020 (lc). (Entered: 04/14/2020) |
| 04/14/2020 | 19 | (STRICKEN PER 4/15/2020 ORDER, DOCKET NO. 24) THIRD PARTY COMPLAINT against Third-Party Defendants Jona Rechnitz, Rachel Rechnitz, Levin Prado ; Jury Demand, filed by Defendant, Third-Party Plaintiff Peter Voutsas, Peter Marco, LLC. (Cohen, Baruch) Modified on 4/15/2020 (lc). (Entered: 04/14/2020) |
| 04/14/2020 | 18 | ANSWER to Complaint (Attorney Civil Case Opening), 1 filed by Defendant Peter Marco, LLC, Peter Voutsas.(Attorney Baruch C Cohen added to party Peter Marco, LLC(pty:dft), Attorney Baruch C Cohen added to party Peter Voutsas(pty:dft))(Cohen, Baruch) (Entered: 04/14/2020) |
| 03/30/2020 | 17 | ORDER GRANTING APPLICATION of Non-Resident Attorney Jason A. Levine to Appear Pro Hac Vice on behalf of Plaintiff David Rovinsky LLC and designating Anthony R Bisconti as local counsel 15 by Judge Otis D. Wright, II (lc) (Entered: 03/30/2020) |

| | | |
|---|---|---|
| 03/27/2020 | 16 | NOTICE Regarding Response to Notice of Pro Hac Vice Application filed by Plaintiff David Rovinsky LLC. (Bisconti, Anthony) (Entered: 03/27/2020) |
| 03/27/2020 | 15 | APPLICATION of Non-Resident Attorney Jason A. Levine to Appear Pro Hac Vice on behalf of Plaintiff David Rovinsky LLC (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. CCACDC-25882802) filed by Plaintiff David Rovinsky LLC. (Bisconti, Anthony) (Entered: 03/27/2020) |
| 03/23/2020 | 14 | MINUTE ORDER IN CHAMBERS by Judge Otis D Wright, II: This action has been assigned to the calendar of Judge Otis D. Wright II. Counsel are STRONGLY encouraged to review the Central Districts website for additional information.. The parties may consent to proceed before a Magistrate Judge appearing on the voluntary consent list. PLEASE refer to Local Rule 79-5 for the submission of CIVIL ONLY SEALED DOCUMENTS. CRIMINAL SEALED DOCUMENTS will remain the same. Please refer to the Judges procedures and schedules for detailed instructions for submission of sealed documents. (lc) (Entered: 03/23/2020) |
| 03/23/2020 | 13 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening), 1 as to defendants Peter Marco, LLC, Peter Voutsas. (lc) (Entered: 03/23/2020) |
| 03/20/2020 | 12 | STIPULATION Extending Time to Answer the complaint as to All Defendants, filed by Plaintiff David Rovinsky LLC.(Bisconti, Anthony) (Entered: 03/20/2020) |
| 03/20/2020 | 11 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening), 1 filed by Plaintiff David Rovinsky LLC. (Bisconti, Anthony) (Entered: 03/20/2020) |
| 03/20/2020 | 10 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Andrew E. Erdlen. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (lh) (Entered: 03/20/2020) |
| 03/20/2020 | 9 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Jason A. Levine. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (lh) (Entered: 03/20/2020) |
| 03/20/2020 | 8 | NOTICE OF DEFICIENCIES in Request to Issue Summons RE: Summons Request 3 . The following error(s) was found: The caption of the summons must match the caption of the complaint verbatim. If the caption is too large to fit in the space provided, enter the name of the first party and then write see attached.Next, attach a face page of the complaint or a second page addendum to the Summons. The summons cannot be issued until this defect has been corrected. Please correct the defect and re-file your request. (lh) (Entered: 03/20/2020) |
| 03/20/2020 | 7 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (lh) (Entered: |

| | | |
|---|---|---|
| | | 03/20/2020) |
| 03/20/2020 | 6 | NOTICE OF ASSIGNMENT to District Judge Otis D. Wright, II and Magistrate Judge Alka Sagar. (lh) (Entered: 03/20/2020) |
| 03/18/2020 | 5 | CORPORATE DISCLOSURE STATEMENT filed by Plaintiff David Rovinsky LLC identifying David Rovinsky LLC as Corporate Parent. (Bisconti, Anthony) (Entered: 03/18/2020) |
| 03/18/2020 | 4 | CERTIFICATE of Interested Parties filed by Plaintiff David Rovinsky LLC, identifying David Rovinsky LLC; Peter Voutsas; Peter Marco, LLC. (Bisconti, Anthony) (Entered: 03/18/2020) |
| 03/18/2020 | 3 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening), 1 filed by Plaintiff David Rovinsky LLC. (Bisconti, Anthony) (Entered: 03/18/2020) |
| 03/18/2020 | 2 | CIVIL COVER SHEET filed by Plaintiff David Rovinsky LLC. (Bisconti, Anthony) (Entered: 03/18/2020) |
| 03/18/2020 | 1 | COMPLAINT Receipt No: ACACDC-25780085 - Fee: $400, filed by Plaintiff David Rovinsky LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Attorney Anthony R Bisconti added to party David Rovinsky LLC(pty:pla))(Bisconti, Anthony) (Entered: 03/18/2020) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/15/2020 07:54:44 | | | |
| **PACER Login:** | msimonpacer | **Client Code:** | JAD01-0001 |
| **Description:** | Docket Report | **Search Criteria:** | 2:20-cv-02580-ODW-AS End date: 6/15/2020 |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

# EXHIBIT "11"

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

opportunity' to exercise their § 303(c) statutory power to join as petitioners . . . ." Id., at 1071.

Vortex Fishing, thus, underscores that all creditors must have a reasonable opportunity to join in an involuntary petition where the number of petitioning creditors is being challenged by the debtor. It was only unnecessary in Vortex Fishing because, in a consolidated hearing, the bankruptcy court correctly found that the involuntary debtor was not in financial distress; joinder, thus, would have been a meaningless endeavor. In sum, once a trial is required to resolve issues in a contested involuntary proceeding, the involuntary debtor must answer within 14 days. See QDOS, 607 B.R. at 345 (a Rule 12(b)(6) motion is no substitute for a trial on dispositive issues, and a putative debtor must answer an involuntary petition and file the requisite creditor list).

Nothing warrants a departure from this line of cases, especially since the Petitioning Creditors are aware of scores of other creditors and victims of Jadelle's fraud. The Debtor has no choice but to follow controlling law and not only answer the petition, but submit its Rule 1003(b) creditor list.[3]

## IV.

## THE MOTION IS DEVOID OF A SINGLE SHRED OF ADMISSIBLE EVIDENCE

Even presuming that relief could be granted under Rule 12(b)(6), there is no evidentiary basis for any of the Debtor's fanciful contentions. Since the sworn testimony of a convicted felon and swindler certainly would not be worth the paper it is written on, and possibly would subject him to perjury charges, the Debtor instead relies on a host of hand-selected pleadings from other courts in a fruitless attempt to create an evidentiary

---

[3] Petitioning Creditors are aware of other creditors who may be interested in joining the involuntary petition to prevent the Debtor and the Rechnitz's from further abusing the legal system and other innocent parties.

Main Document Page 316 of 316

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*): **Putative Debtor's Index of Exhibits in Support of Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **06/15/2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Baruch C Cohen bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- Daniel A Lev dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Robert S Marticello Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Ronald N Richards ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- Neal Salisian ECF@salisianlee.com
- Michael Simon msimon@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) __________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **06/15/2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Via First Legal:
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/15/2020 | Lynnette Garrett | */s/ Lynnette Garrett* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**