**SMILEY WANG-EKVALL, LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:    714 445-1000
Facsimile:    714 445-1002

Attorneys for Jadelle Jewelry and Diamonds,
LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:20-bk-13530-BR |
| JADELLE JEWELRY AND DIAMONDS, LLC, | Chapter 7 |
| Debtor. | **EMERGENCY MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8007 FOR STAY PENDING APPEAL; AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| | [Declaration of Robert S. Marticello, Declaration of Michael V Schafler, Request for Judicial Notice and Index of Exhibits filed concurrently herewith] |

///

///

///

2829078.1

EMERGENCY MOTION

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................2

II.   BACKGROUND ..................................................................................................5

    A.    Commencement of the Case ....................................................................5

    B.    The Hearing on the Motion to Dismiss and the Court's Order .................5

    C.    The Ineligible Creditors Immediately Begin to Take Advantage of the Order ..........7

    D.    The Criminal Investigation .....................................................................7

    E.    The Entry of the Order For Relief ...........................................................8

    F.    The Basis for the Order for Relief ...........................................................9

    G.    The Appointment of the Trustee ............................................................10

III.   THE LEGAL STANDARD FOR STAYING A CASE PENDING APPEAL ...................10

IV.   THE DEBTOR HAS A STRONG LIKELIHOOD OF SUCCESS ON APPEAL ...............11

    A.    The Order For Relief Must Be Vacated ................................................12

        1.    Entry of the Order for Relief Violated the Code ...........................12

        2.    The Order For Relief Cannot Be Justified as a Terminating Sanction ........13

        3.    The Order Is Void for Violation of Due Process .........................17

    B.    The Court's Denial of the Motion to Dismiss Was In Error ....................18

        1.    The Court Was Required to Dismiss the Case Because the Ineligible Creditors Lacked Statutory Standing ..............18

        2.    The Court Was Required to Enter a Dispositive Order Dismissing the Case Under the Bankruptcy Rules ................18

    C.    The Court Erred in Not Dismissing the Case for Bad Faith ....................20

    D.    The Court Erred in Denying the Debtor's Request for a Stay Pending the Related Criminal Investigation .................22

V.    THE DEBTOR WILL BE IRREPARABLY HARMED ABSENT A STAY ...................23

VI.   THE INELIGIBLE CREDITORS WILL NOT BE SUBSTANTIALLY INJURED BY A STAY ...........25

VII.  A STAY WILL NOT HARM NON-PARTIES .....................................................26

VIII. THE PUBLIC INTEREST WEIGHS IN FAVOR OF A STAY .................................26

IX.   CONCLUSION ..................................................................................................27

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

Jadelle Jewelry and Diamonds, LLC, the debtor (the "Debtor"), hereby files this emergency motion (the "Motion") for a stay of the case pending appeal pursuant to Federal Rule of Bankruptcy Procedure 8007.  Victor Franco Noval ("Noval"), Peter Marco, LLC ("Marco"), and First International, Inc. ("First International"), shall be collectively referred to as the "Ineligible Creditors."  In support of this Motion, the Debtor submits the concurrently-filed Declarations of Robert S. Marticello, Declaration of Michael V Schafler, Request for Judicial Notice, and Index of Exhibits, and the following memorandum of points and authorities.

On June 19, 2020, the Debtor filed a notice of appeal to the Bankruptcy Appellate Panel for the Ninth Circuit (the "Appeal").  The Appeal arises from the following four orders of the Court:

1.  The order entered on June 10, 2020 [Docket No. 39] (the "June 10 Order") requiring that Jona Rechnitz and Rachel Rechnitz (the "Rechnitz Parties") file a joint declaration under penalty of perjury identifying an providing certain information regarding the alleged creditors of the Debtor;

2.  The order entered on June 16, 2020 [Docket No. 53] (the "Order Denying a Stay") denying the Debtor's motion for reconsideration of the June 10 Order or, alternatively, for a stay pending the ongoing criminal investigation;

3.  The order entered on June 16, 2020 [Docket No. 54] (the "June 16 Order") directing the entry of an order for relief; and

4.  The order for relief entered on June 16, 2020 [Docket No. 55] (the "Order for Relief").

///
///
///

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## MEMORANDUM AND POINTS AND AUTHORITIES

### I.    INTRODUCTION

By the Motion, the Debtor seeks a stay pending the Appeal.  The questions presented by the Appeal are:

1.    Whether the Court erred when it entered an order for relief when none of the express elements set forth in the Bankruptcy Code had been satisfied; and

2.    Whether the Court erred when it declined to grant the Debtor's motion to dismiss the involuntary petition after finding that each of the three petitioning creditors are ineligible and lacked standing to commence the case.

As demonstrated below, the Debtor is likely to succeed on the merits of both questions and will be irreparably harmed if a stay pending appeal is not granted.

This case was commenced in bad faith by three ineligible petitioning creditors holding disputed litigation claims.  The Debtor timely and appropriately contested the involuntary petition with a motion to dismiss under Rule 12(b)(6).  At the hearing on that motion, the Court determined that all three petitioning creditors were ineligible and lacked standing to commence the case based on their own judicial admissions and the facts subject to judicial notice.  The Court did not, however, grant the motion and dismiss the case.  Instead, the Court ordered *sua sponte* and without briefing that two non-debtors who were not present or represented at the hearing, the Rechnitz Parities, file a joint declaration under penalty of perjury within seven days identifying all of the Debtor's alleged creditors.  The Court further ordered that if the Rechnitz Parties did not file the joint declaration, including due to the invocation of their Fifth Amendment rights, then it would enter an order for relief against the Debtor.  In other words, the Court ordered that it would impose terminating sanctions against the Debtor, if the Rechnitz Parties properly invoked their Fifth Amendment rights.  The Rechnitz Parties permissibly and on advice of counsel exercised their Fifth Amendment rights and declined to file the joint declaration.  The Court entered the June 16 Order denying the *meritorious* motion to dismiss and directing the entry of the Order for Relief (eliminating the Debtor's rights to answer and a trial).

1    A stay pending appeal is appropriate and necessary because there is a strong likelihood that

2  the Debtor will succeed on appeal.  The entry of the Order for Relief is contrary to the Bankruptcy

3  Code, the Bankruptcy Rules, United States Supreme Court precedent, and Ninth Circuit law, and

4  is not a proper exercise of the Court's inherent authority to sanction.

5    The entry of the Order for Relief is contrary to the express and unambiguous provisions of

6  the Code.  Due to the extreme nature of an involuntary bankruptcy case, the Code enumerates the

7  specific requirements that must be satisfied.  An involuntary case must be commenced by the

8  requisite number of eligible petitioning creditors.  *See* 11 U.S.C. § 303(b).  If a putative debtor

9  timely contests the involuntary petition, then a bankruptcy court can order relief "***after trial***" and

10  "***only if***" it finds that the debtor is generally not paying its undisputed debts as they become due.

11  *See* 11 U.S.C. § 303(h) (emphasis added).  The Debtor timely contested the involuntary petition by

12  its motion to dismiss.  There were no eligible petitioning creditors as required by § 303(b).

13  Moreover, there was no trial and the Court did not find, as required by § 303(h), that the Debtor is

14  not paying its undisputed debts as they come due.  As such, the entry of the Order for Relief

15  violated the Code.

16    The entry of the Order for Relief exceeds the Court's inherent authority to sanction a party

17  in at least three respects.  First, the Court lacks the authority to issue sanctions that are contrary to

18  the express provisions of the Code under the Supreme Court's decision in *Law v. Siegel*.  Second,

19  the entry of the Order for Relief was not in response to the type of "extreme circumstances" (*i.e.*,

20  willful deception of the Court) required by the Ninth Circuit to justify terminating sanctions.

21  Neither the Rechnitz Parties nor the Debtor have done anything to warrant terminating (or any

22  other) sanctions.  The Rechnitz Parties permissibly and on advice of counsel exercised their

23  constitutional (Fifth Amendment) rights.  At worst, this gives rise to an adverse inference *at trial*,

24  as opposed to terminating sanctions and the immediate entry of default judgment.  Third, the Ninth

25  Circuit has made clear that imposing the harshest sanction—a terminating sanction—in response

26  to a proper exercise of the Fifth Amendment is an abuse of discretion.  Thus, there is no proper

27  legal basis for the entry of the Order for Relief and the Order for Relief must be vacated.

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    The Court was required to grant the Debtor's motion to dismiss.  Under controlling Ninth

2    Circuit law, a bona fide dispute as to any portion of a creditor's claim strips the creditor of

3    statutory standing under § 303.  The Court found that the Ineligible Creditors lacked standing to

4    commence this case because their respective claims are subject to bona fide disputes and the Court

5    did so based on the standard for a Rule 12(b)(6) motion to dismiss.  According to the Ninth

6    Circuit, a lack of statutory standing *requires* dismissal for failure to state a claim.  Moreover,

7    because the Court concluded that the Debtor's motion to dismiss had merit, it was required, by

8    Bankruptcy Rule 1013(a) and Ninth Circuit precedent, to enter a dispositive order granting the

9    motion and dismissing the case.  The Court's decision to delay granting a meritorious motion to

10   dismiss in order to provide three ineligible creditors a further 60 days to attempt to convince non-

11   petitioners to join the involuntary petition was not permitted by the Code or the Bankruptcy Rules,

12   and was an abuse of discretion.  For all these reasons, there is not only a strong likelihood that the

13   Order for Relief will be vacated, but that the case will be dismissed.

14    A stay is necessary to avoid irreparable harm.  An involuntary bankruptcy is an "extreme

15   remedy with dire consequences . . . ."  *See In re Anmuth Holdings LLC*, 600 B.R. 168, 188 (Bankr.

16   E.D.N.Y. 2019) (internal quotation marks omitted).  The entry of an order for relief may

17   "seriously affect substantive rights" and has "a great potential for irreparable injury. . . ."  *See In re*

18   *Mason*, 709 F.2d 1313, 1316-17 (9th Cir. 1983).  Debtors are dispossessed of their property,

19   operations cease, and a trustee is appointed to gather and liquidate assets.  *See id.* at 1317.

20   Placing a company in bankruptcy against its will and the legal ramifications that automatically and

21   immediately arise, constitute, in and of themselves, irreparable harm.  Here, the irreparable harm

22   from the case proceeding is much greater where *none* of the elements required by the Code for the

23   entry of the Order for Relief were satisfied.  In contrast, the Ineligible Creditors will not be

24   harmed by a stay—they had no standing or right to an order for relief in the first place.  A stay

25   merely preserves the *status quo* and furthers judicial economy pending the Appeal.  Given the

26   extreme nature and serious consequences of the entry of an order for relief, the balance of harms

27   weighs heavily in favor of staying this case pending appeal.

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    Accordingly, the Debtor requests that the Court stay this case pending the Appeal.  Cause

2   exists to hear or decide the Motion on an emergency basis because the Appeal calls into question

3   the existence of this case in its entirety.  Moreover, because the upcoming deadlines relate to

4   topics on which the Rechnitz Parties will invoke their Fifth Amendment privileges, a number of

5   disputes are likely to ensue.  A party must ordinarily seek a stay from the bankruptcy court before

6   requesting a stay from the appellate court.  The Debtor requests a temporary stay pending the

7   Court's consideration of the Motion, and, if the Court is inclined to deny the Motion, a temporary

8   stay to allow the Debtor to file a motion with the appellate court on an emergency basis.

9

10   **II.    <u>BACKGROUND</u>**

11       **A.    <u>Commencement of the Case</u>**

12       On April 6, 2020, the Ineligible Creditors filed an involuntary chapter 7 petition against the

13   Debtor [Docket No. 1] (the "Involuntary Petition").  (*See* Involuntary Petition, Index of Exhibits[1],

14   Ex. 5. at Bates Stamp 17.)  A response to the Involuntary Petition is due within 21 days of service,

15   plus three additional days if service was by mail.  *See* Fed. R. Bankr. P. 1011 & 9006(f).  The

16   Ineligible Creditors served the Involuntary Petition via mail, and, as a result, the Debtor's response

17   was due on May 1, 2020.  On that date, the Debtor filed a motion to dismiss the case for failure to

18   state a claim under Rule 12(b)(6) [Docket No. 8] (the "Motion to Dismiss").  By the Motion to

19   Dismiss, the Debtor also sought dismissal on the grounds that the Ineligible Creditors filed the

20   case in bad faith.

21       **B.    <u>The Hearing on the Motion to Dismiss and the Court's Order</u>**

22       On June 9, 2020, at 10:00 a.m., the Court heard two motions, the Motion to Dismiss and

23   the Ineligible Creditors' motion for the appointment of an interim trustee [Docket No. 12] (the

24   "Trustee Motion").  A status conference was also on calendar that day.

25       With respect to the Motion to Dismiss, the Court determined that, as argued by the Debtor,

26   the Ineligible Creditors are ineligible to be petitioning creditors because their claims are subject to

27

28   ───────────────────
[1] Unless otherwise expressly provided herein, all exhibit references are to the concurrently filed Index of Exhibits.

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   bona fide disputes as to amount and/or liability based on the Ineligible Creditors' judicial

2   admissions and the facts subject to judicial notice.  (*See* Transcript of June 09, 2020 Hearings., Ex.

3   7 at Bates Stamps 89, lines 12 - 23; at Bates Stamp 91, lines 8 - 21; at Bates Stamp 95, lines 7 –

4   18; at Bates Stamp 95, line 24 – Bates Stamp 96, line 5; at Bates Stamp 105, lines 13-16; at Bates

5   Stamp 119, lines 14 – 18; and Bates Stamp 144, lines 20 - 22.)  The Court also determined that the

6   Ineligible Creditors were not allowed to amend the Involuntary Petition.  (*See id.* at Bates Stamp

7   119, lines 8-20.)  The Court also indicated that it was denying the Trustee Motion without

8   prejudice.  (*See id.* at Bate Stamp 125, lines 2-4.)

9           Notwithstanding the conclusion that the Ineligible Creditors had no standing to commence

10  this case, the Court did not grant the Motion to Dismiss.  Instead, the Court ordered, *sua sponte*

11  and without briefing, the Rechnitz Parties, who are not parties to the case and who were not

12  present or represented at the hearing, to sign and file, under penalty of perjury, a joint declaration

13  identifying each and every one of the Debtor's creditors as of the petition date of April 6, 2020.

14  (*See id.* at Ex. 1 at Bates Stamp 6, § 1.)   The Court required that such declaration be filed within

15  seven days of the hearing, by 3:00 p.m. on Tuesday, June 16, 2020.  (*See id.* at § 2.)  The June 10

16  Order resulting from the June 9 hearing states that if the Rechnitz Parties failed to file the joint

17  declaration by the deadline, the Court would deny the Motion to Dismiss and "immediately enter

18  an order for relief in this case." (*See id.* at § 3.)   The Court stated that it would enter the order for

19  relief even if the joint declaration was not filed because the Rechnitz Parties invoked their Fifth

20  Amendment rights.  (*See* Ex. 7 at Bates Stamp 143, lines 1-3.)  The Court did not make any

21  findings of fact to support the entry of an order for relief or the imposition of terminating sanctions

22  against Debtor.

23          The June 10 Order provided the Ineligible Creditors with an additional 60 days to contact

24  other creditors in order to determine whether any such creditors were willing to join the petition.

25  (*See id.* at § 4.a.)  Any joinders were to be filed by 3:00 p.m. on August 14, 2020.  (*See id.*; *see*

26  *also* Ex. 7 at Bate Stamp 147, line 25 – Bates Stamp 148, line 3.)  The June 10 Order also

27

28

1    authorized the Ineligible Creditors to conduct certain limited discovery if the joint declaration was

2    filed by the Rechnitz Parties.  (*See id.* Ex. 1 at Bates Stamp 7, at § 4.b.)

3        **C.**    <u>**The Ineligible Creditors Immediately Begin to Take Advantage of the Order**</u>

4        The Ineligible Creditors immediately began using the June 10 Order as a sword.  On June

5    11, 2020, the day after the entry of the June 10 Order, Marco's counsel filed a declaration in his

6    pending lawsuit against Rechnitz Parties, among others, related to the motion for a stay of that

7    case (which is under submission with the District Court) stating as follows:

8            The point being, is that by filing their Joint Declarations sworn under
        penalty of perjury regarding their defrauded creditors (like Marco),

9            and their having to be deposed by Petitioning Creditors re same.
        Rechnitz will *de facto*, have to <u>***waive***</u> their Fifth amendment rights

10            against self-incrimination from criminal liability that they fear in this
        Motion. If indeed, Rechnitz complies with Judge Russell's Order, this

11            Motion for Stay would be moot.

12    (*See* Supplemental Decl. of B. Cohen, Ex. 8 at Bates Stamps 154-155 (emphasis in original).)

13        The Ineligible Creditors also began seeking discovery that was overly broad and overly

14    complicated.  On June 11, 2020, the Ineligible Creditors, via counsel, contacted the Debtor's

15    counsel to arrange for certain discovery.  (*See* R. Richards June 11, 2020 Email, Ex. 9 at Bates

16    Stamps 163-164.)  Specifically, the Ineligible Creditors stated their intentions of serving

17    deposition and document subpoenas on Mr. and Mrs. Rechnitz.  The Ineligible Creditors'

18    discovery included discovery related to their own respective claims, which the Court made clear

19    was not permitted.  In addition, the Ineligible Creditors demanded the Rechnitz Parties' cell

20    phones in order "to upload their text messages and emails" and noted their intention to seek

21    electronically stored information discovery regarding Mr. Rechnitz's email account.  (*See id.* at

22    Bates Stamp 163.)  The Ineligible Creditors reiterated their position that if the Rechnitz Parties

23    complied with the June 10 Order, they will have waived their Fifth Amendment rights "as to the

24    entire subject matter which will be a large swath of questions about the various creditors and Jona

25    and Rachel's credibility is fair game and at issue."  (*See id.*)

26        **D.**    <u>**The Criminal Investigation**</u>

27        The Ineligible Creditors manufactured the issues relating to the Fifth Amendment in order

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   to gain an unfair advantage in litigation.  Specifically, the Ineligible Creditors referred their civil

2   disputes to law enforcement and persuaded law enforcement to open an investigation.  Now that

3   an investigation is open and the Rechnitz Parties are compelled to assert their Fifth Amendment

4   privilege consistent with legal advice, the Ineligible Creditors seek to gain an undue advantage

5   from their criminal referral while the government investigates.  The Rechnitz Parties and the

6   Debtor first became aware of the ongoing criminal investigation through a draft Los Angeles

7   Superior Court complaint received from Noval on February 4, 2020.  (Schafler Decl. at Ex. B,

8   Cohen Decl. at ¶ 9.)

9        Noval's draft complaint indicated that Noval had filed a police report with the Beverly

10  Hills Police Department ("BHPD") concerning the allegations in the draft complaint.  (*See id.*)

11  This is also reflected in Noval's filed complaint.  (*See* Ex. 10 at Bates Stamp 187, at ¶ 37.)  On

12  February 7, 2020, counsel for the Rechnitz Parties and the Debtor confirmed with a detective from

13  the BHPD that allegations related to the jewelry business had been referred to the Federal Bureau

14  of Investigation ("FBI").  (*See* Schafler Decl. at Ex. B, Cohen Decl. at  ¶ 10.)  Thereafter, counsel

15  for the Rechnitz Parties and the Debtor conferred with an Assistant United States Attorney

16  ("AUSA") from the Los Angeles office of the United States Attorney's Office for the Central

17  District of California ("USAO") regarding the status of any criminal investigation.  (*Id.* at ¶ 11.)

18       The AUSA advised that the USAO typically does not publicly confirm or deny the

19  existence of any investigation, but that public disclosure of facts related to the criminal allegations

20  concerning the jewelry business may adversely impact any investigation, and thus the USAO

21  supported a stay of related civil proceedings.  (*Id.*)  The investigation remains open and the

22  government continues to not oppose a stay based on the Fifth Amendment.  (*Id.*)

23       **E.    The Entry of the Order For Relief**

24       There was a week between the June 9 hearing on the Motion to Dismiss and the June 16

25  deadline to file the joint declaration.  The day prior to the deadline, on June 15, 2020, the Debtor

26  filed a motion for reconsideration of the June 10 Order or, alternatively, to stay the case pending

27  the conclusion of the criminal investigation (the "Reconsideration Motion").  As indicated in the

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    Reconsideration Motion, the Rechnitz Parties did not file a joint declaration by 3:00 p.m. on June

2    16, 2020 due to the invocation of their Fifth Amendment rights on the advice of counsel.  (*See* Ex.

3    11 at Bates Stamp 218-220.)

4          On June 16, 2020, after the 3:00 p.m. deadline passed, the Court entered the order denying

5    the Reconsideration Motion.  In that order, the Court reiterated that it intended to enter the order

6    for relief if the joint declaration was not filed because the Rechnitz Parties invoked their Fifth

7    Amendment rights.  (*See* Ex. 2 at Bates Stamps 8-12.)  The Court also stated that the Debtor did

8    not have a Fifth Amendment right and that the Rechnitz Parties could not assert a Fifth

9    Amendment privilege on behalf of the Debtor.  (*See id.* at Bates Stamp 11.)

10         After entry of the Order Denying a Stay, the Court entered an order directing the Clerk of

11   Court to enter an order for relief under chapter 7 and requiring the Debtor to file all schedules and

12   related documentation for a chapter 7 case, in accordance with the Local Bankruptcy Rules, within

13   fourteen days of the entry of the order.  (*See* Ex. 3 at 15.)  On that same date, the Court entered the

14   Order for Relief.  The Order for Relief requires that the Debtor file a list of creditors and schedules

15   within seven and fourteen days, respectively, after the entry of the Order for Relief.  The deadline

16   to file a list of creditors is June 23, 2020 and the deadline to file schedules under penalty of

17   perjury is June 30, 2020.

18         **F.**    **The Basis for the Order for Relief**

19         The legal basis for the entry of the Order for Relief is not clear.  The Court did not cite to a

20   statute, rule, or other legal basis in its June 10 Order or June 16 Order to support the orders

21   contained therein or the entry of the Order for Relief, and the Court did not make any findings to

22   support the entry of the Order for Relief under the Code or as a terminating sanction.

23         The Court's order to require that the Rechnitz Parties file a joint declaration under penalty

24   of perjury and providing for the entry of order for relief as the sanction if the declaration was not

25   filed was raised *sua sponte* by the Court during the June 9 hearing on the Motion to Dismiss.  The

26   issues related to the Court's order were not briefed.  Moreover, the Rechnitz Parties, whose rights

27   were implicated by the Court's June 10 Order, were not represented or present at the hearing.  The

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

Court's June 10 Order does not cite to a rule or Code provision for the requirement that the Rechnitz Parties file a joint declaration under penalty of perjury or for entry of an order for relief if the declaration is not timely filed.  The Court did not cite to any such rule or Code provision on the record of the June 9 hearing on the Motion to Dismiss and the Court did not make findings regarding imposing terminating sanctions against the Debtor.  The Court did not entertain argument regarding ordering the filing of the joint declaration and entering the order for relief as a sanction if the Rechnitz Parties did not file the declaration, including due to their Fifth Amendment rights.  (*See* Ex. 17 at Bates Stamp 125, lines 23 -24 ("I'm not going to change what I've said"); at Bates Stamp 126, lines 4-12; and Bates Stamp 143, lines 7 – 25).  The June 16 Order does not cite to any rule or Code provision for the basis of the entry of the Order for Relief.  (*See* Ex. 2 at Bates Stamps 8-12.)

### G.    The Appointment of the Trustee

Following the entry of the Order for Relief, on June 18, 2020, Sam S. Leslie (the "Trustee"), was appointed as the chapter 7 trustee in the case.  That same day, the Trustee emailed a letter to counsel for the Debtor (with a copy to the Ineligible Creditors' counsel), stating that the Debtor may no longer transact business, requesting the turnover of all inventory, and requesting, in seven days, a substantial amount of information.  (*See* Ex. 12 at Bates Stamps 241-244.)

### III.    THE LEGAL STANDARD FOR STAYING A CASE PENDING APPEAL

Federal Rule of Bankruptcy Procedure ("Rule") 8007(a)(1)(A) allows a bankruptcy or appellate court to suspend an order pending appeal.  The motion should initially be made to the bankruptcy court.  *See* Fed. R. Bankr. Pro. 8007(a)(1).  The standard for determining whether to grant a stay pending appeal is similar to the standard for issuing a preliminary injunction.  *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Tribal Vill. of Akutan v. Hodel*, 859 F.2d 662, 663 (9th Cir. 1988).  For both the appellate court and the district court, the factors to be considered are:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits of the appeal; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

the stay will substantially injure the other parties in the proceeding; and (4) where the public interest lies.

*Braunskill*, 481 U.S. at 776.  Equal weight does not need to be given to the four factors and the court may use the sliding scale approach to decide the motion for a stay.  *See Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011).  Courts have typically placed more weight on the first two factors.  *See Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012).

The factor requiring a strong showing of likelihood of success on appeal is not a rigid concept.  It does not mean that the applicant must prove that they are more likely to succeed on appeal than not.  *See Leiva-Perez v. Holder*, 640 F.3d 962, 966-67 (9th Cir. 2011).  After analyzing the different terminology, from a "reasonable probability" to "serious legal questions" to "fair prospect," the Ninth Circuit held:

> We think these formulations are essentially interchangeable, and that none of them demand a showing that success is more likely than not.  Regardless of how one expressed the requirement, the idea is that in order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case for relief on the merits.

*Id.* at 967-68.

According to the Ninth Circuit, a rule that the moving party need *not* demonstrate that success on appeal is probable "makes good sense."  *See id.* at 967.  The Ninth Circuit explained:

> A more stringent requirement would either, in essence, put every case in which a stay is requested on an expedited schedule, with parties required to brief the merits of the case in depth for stay purposes, or would have the court attempting to predict with accuracy the resolution of often-thorny legal issues without adequate briefing and argument.  Such pre-adjudication adjudication would defeat the purpose of a stay, which is to give the reviewing court the time to "act responsibly," rather than doling out "justice on the fly."

*Id.*

## IV.    **THE DEBTOR HAS A STRONG LIKELIHOOD OF SUCCESS ON APPEAL**

An order for relief is a final appealable order.  *See In re Mason* 709 F.2d 1313, 1316 & 1318 (9th Cir. 1985).  "A bankruptcy court's findings of fact are reviewed for clear error and its

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

conclusions of law are reviewed *de novo.* Mixed questions of law and fact are reviewed *de novo.*" *In re Quality Laser Works*, 211 B.R. 936, 940 (B.A.P. 9th Cir. 1997), *aff'd,* 165 F.3d 37 (9th Cir. 1998) (internal citations omitted).

### A. **The Order For Relief Must Be Vacated**

#### 1. **Entry of the Order for Relief Violated the Code**

The Bankruptcy Code permits the entry of an order for relief *only* in certain express circumstances, none of which have been satisfied in this case. Under the Bankruptcy Code, an involuntary petition must be commenced by the requisite number of eligible petitioning creditors. *See* 11 U.S.C. § 303(b). If an involuntary petition is timely controverted, the court shall, ***after trial***, enter an order for relief "*only if* — (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount . . . ." *See* 11 U.S.C. § 303(h) (emphasis added). The entry of an order for relief without making the finding required by § 303(h) constitutes reversible error. *See Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1546 (10th Cir. 1988); *see also In re Arriola Energy Corp.*, 74 B.R. 784, 790-791 (S.D. Tex. 1987) (remanding a case to the bankruptcy court because the putative debtors were denied procedural due process by not having an opportunity to present evidence regarding whether they were generally paying their debts).

The entry of an order for relief was improper because none of the elements of the Code were satisfied.

- *First*, the Debtor timely controverted the Involuntary Petition, and, therefore entry of an order for relief due to an alleged debtor's default is not appropriate. *See* 11 U.S.C. § 303(h).

- *Second*, the Court concluded that each of the Ineligible Creditors are ineligible under the Ninth Circuit's decision in *Blixseth* and, as a result, the Ineligible Creditors lack standing to commence this case as required by § 303(b). *See Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1185 (9th Cir. 2019) (stating that a bona fide dispute "strips the creditor of standing. . . .").

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

- *Third*, there has been no finding, after trial (or at all), that the Debtor is generally not paying its undisputed debts as they become due on the agreed-to terms. *See* 11 U.S.C. § 303(h). **Instead, the Debtor was deprived of its statutory and due process rights to answer and to trial**. *See In re Arriola Energy Corp.*, 74 B.R. at 790-791.

Because the Debtor timely controverted the Involuntary Petition, the Court can enter an order for relief "*only if*" there are the requisite number of petitioning creditors and the Court determines after a trial that the Debtor is generally not paying its undisputed debts as they become due.  These requirements not have not been satisfied.  For this reason alone, the Order for Relief must be vacated.

### 2.    <u>The Order For Relief Cannot Be Justified as a Terminating Sanction</u>

The basis for the Court's entry of the Order for Relief is not clear from the record.  Neither the June 10 Order nor the June 16 Order cite to a rule or statute, or state the contemplated legal grounds for the requirement that the Rechnitz Parties file a joint declaration under penalty of perjury and the entry of an order for relief as the consequence if they did not.  As an involuntary bankruptcy case proceeds as an adversary proceeding with the order for relief serving as the judgment sought by the petitioners, the entry of the Order for Relief can only be viewed as a terminating sanction.  *See In re Mason* 709 F.2d 1313, 1316 & 1318 (9th Cir. 1985) (stating that an involuntary case has many of the "attributes of 'adversary proceedings'" and that the "rules contemplate a procedure much like any other lawsuit. . . .").  Because the Court did not cite to any rule or Code provision to support the issuance of terminating sanctions and because entry of the Order for Relief did not satisfy the elements of the Code, the Debtor has also analyzed the entry of the Order for Relief as an exercise of the Court's inherent authority.  The entry of the Order for Relief also exceeded the Court's inherent authority.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

(a)  **The Entry of the Order for Relief Is Contrary to Supreme Court**
     **Precedent**

The entry of the Order for Relief is contrary to the Supreme Court's holding in *Law v. Siegel*.  In that case, the bankruptcy court surcharged the debtor's homestead exemption as a sanction for his serious misconduct.  *See Law v. Siegel*, 571 U.S. 415, 420-21 (2014).  The Supreme Court stated:

> It is hornbook law that § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." Section 105(a) confers authority to "carry out" the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits. That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere. **Courts' inherent sanctioning powers are likewise subordinate to valid statutory directives and prohibitions. We have long held that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of" the Bankruptcy Code**.

*Law*, 571 U.S. at 421 (emphasis added).  With this in mind, the Supreme Court concluded that the surcharge was unauthorized because it "contravened a specific provision of the Code."  *See id.* at 422.

The Court's decision to direct the entry of the Order for Relief as a sanction was unauthorized because it contravened a specific provision of the Code.  As discussed above, the Code sets forth the specific requirements that must be satisfied for the entry of an order for relief. There must be the requisite number of petitioning creditors.  *See* 11 U.S.C. § 303(b).  Moreover, the Code expressly states that where, as here, the involuntary petition is timely controverted, then an order for relief can be entered "after trial" and "*only if* — (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount . . . ."  *See* 11 U.S.C. § 303(h) (emphasis added).  Given the extreme and serious nature of an involuntary bankruptcy, the Code's express limitation of the circumstances in which an order for relief may be entered makes sense.[2]

---

[2]    The Code's express limitation of the circumstances in which a business can be forced into bankruptcy against its will, and the policy recognized by the Ninth Circuit in *Blixseth* of prohibiting ineligible creditors from using

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    Here, there were no eligible creditors with standing to commence this case and the Court

2    did not find, after a trial, that the Debtor was generally not paying its undisputed debts as they

3    became due.  Under *Law v. Siegel*, the Court lacks the sanctioning power to override the Code and

4    to enter an order for relief contrary to the Code's express provisions.  The entry of the Order for

5    Relief without the requisite number of eligible creditors and without a finding, after trial, that the

6    Debtor was not generally paying its debts as they came due was contrary to specific provisions of

7    the Code—303(b) & (h).  For this reason alone, the Order for Relief must be vacated.

8    The Court's entry of the Order for Relief following denial of the Motion to Dismiss was

9    also contrary to the Bankruptcy Rules.  The Court concluded that the Motion to Dismiss had merit

10    and should be granted (absent any other eligible joining creditors).  However, assuming *arguendo*,

11    the Court had determined that the Motion to Dismiss must be denied (or if the Debtor had not filed

12    a motion to dismiss in the first place), then the consequence required by the Bankruptcy Rules is

13    that the Debtor must file an answer and the involuntary case proceeds to trial.  *See* Fed. R. Bankr.

14    P. 1011(a) &(c); Fed. R. Bankr. P. 1003(b); 11 U.S.C. § 303(h).  Whether the Debtor's answer

15    must be accompanied by a list of creditors is governed by Bankruptcy Rule 1003(b).  The entry of

16    the Order for Relief was contrary to the Code and the Bankruptcy Rules, and deprived the Debtor

17    of its statutory and procedural due process rights to contest the Involuntary Petition.  *See* Fed. R.

18    Bankr. P. 1011(a).

19    **(b)    The Entry of the Order For Relief Exceeded the Court's**

20    **Inherent Authority**

21    Alternatively, even if the entry of the Order for Relief did not violate the Code, it still

22    exceeded the scope of the Court's inherent authority.  Federal courts have the inherent power "to

23    levy sanctions in response to abusive litigation tactics."  *See Fjelstad v. Am. Honda Motor Co.,*

24    *Inc.*, 762 F.2d 1334, 1338 (9th Cir. 1985) (internal quotation marks omitted).  However, a court's

25    inherent power to sanction has limits.  As explained by the Ninth Circuit:

26

27    _____

28    involuntary petitions as a sword, are meaningless if *ineligible* creditors can obtain an order for relief when none of the
elements in the Code are satisfied.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

> In this circuit, courts have inherent power to dismiss an action when a party has **willfully deceived the court** and engaged in conduct utterly inconsistent with the orderly administration of justice. Due process limits the imposition of the severe sanctions of dismissal or default to **extreme circumstances** in which the deception related to matters in controversy and prevents their imposition merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.

*Fjelstad*, 762 F.2d at 1338 (9th Cir. 1985) (internal citations and quotation marks omitted) (emphasis added).

In addition, the Ninth Circuit has made clear that terminating sanctions in response to the invocation of the Fifth Amendment is improper and constitutes an abuse of discretion. *See Campbell v. Gerrans*, 592 F.2d 1054, 1057 (9th Cir. 1979) (discussing in the context of terminating sanctions issued related to discovery under Rule 37); *see also Doe ex. rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) ("[T]he Rules of *Civil* Procedure recognize an appropriate role for the exercise of this privilege, and a refusal to respond to discovery under such invocation cannot justify the imposition of penalties."). In *Campbell*, the plaintiff pled the Fifth Amendment in response to certain interrogatories. *See id.* at 1056. The district court ordered the plaintiff to answer the interrogatories or face dismissal. When the plaintiff did not answer the interrogatories as ordered by the court, the court dismissed the lawsuit. *See id.* The Ninth Circuit, quoting the Supreme Court, made clear that the Fifth Amendment privilege applies regardless of the nature of the proceeding. *See id.* at 1057. The Ninth Circuit held that "[i]mposing the harshest of Rule 37 sanctions on a proper exercise of Fifth Amendment rights is not in accord with Supreme Court decisions." *See id.*

The Court exceeded its inherent authority by directing the entry of the Order for Relief. The Court did not make findings of the type of "extreme circumstances" and "willful deception" necessary to support its imposition of terminating sanctions. Neither the Rechnitz Parties nor the Debtor engaged in any conduct to warrant any sanctions (let alone terminating sanctions). The Order for Relief was not entered to sanction any alleged willful deception of the Court. Instead, the Court issued terminating sanctions against the Debtor for the failure to file a joint declaration (by two individuals who were not even parties to the proceeding). And, the joint declaration was

1    not filed because the Rechnitz Parties permissibly and on advice of counsel exercised their Fifth

2    Amendment rights.  Thus, the entry of the Order for Relief cannot be justified as a terminating

3    sanction under the Court's inherent power.

4         The imposition of terminating sanctions because the Rechnitz Parties permissibly invoked

5    their Fifth Amendment rights violates Ninth Circuit law.  The Ineligible Creditors will certainly

6    argue that the Debtor, an LLC, does not have a Fifth Amendment right.  This argument misses the

7    point and, further, helps to demonstrate the severity of the sanction.  The June 10 Order did not

8    order the Debtor to do anything.  Rather, it ordered two individuals, the Rechnitz Parties, who

9    have Fifth Amendment rights, to provide testimony.  Compliance with the June 10 Order was not

10   within the Debtor's control.  Moreover, the fact remains that terminating sanctions were imposed

11   against the Debtor because the Rechnitz Parties permissibly invoked their Fifth Amendment rights

12   on advice of counsel.  The Reconsideration Motion made clear the dilemma the Rechnitz Parties

13   and the Debtor were facing.  (*See* Ex. 11 at Bates Stamp 235, line 5 – Bates Stamp 236, line 3.)

14   However, in denying the Reconsideration Motion, the Court reiterated that it would direct the

15   entry of the Order for Relief notwithstanding the Rechnitz Parties proper invocation of the Fifth

16   Amendment.  (*See* Ex. 2 at Bates Stamp 10, line 1 – Bates Stamp 11, line 13.)  This was contrary

17   to Ninth Circuit law.  *See Campbell v. Gerrans*, 592 F.2d 1054, 1057 (9th Cir. 1979).

18   **3.**    **The Order Is Void for Violation of Due Process**

19        The Order is void.  An order "issued by a court in a manner inconsistent with the due

20   process clause of the Fifth Amendment" is void.  *See In re Krueger*, 88 B.R. 238, 241 (9th Cir.

21   1988).  Here, the Order directs two persons who are not debtors, who were not parties to the

22   proceedings, and who were not represented at the hearings on June 9, 2020 to submit a joint

23   declaration under penalty of perjury.  Moreover, the requirement that the Rechnitz Parties submit

24   testimony under penalty of perjury or else an order for relief would be entered against the Debtor

25   was raised *sua sponte* by the Court.  The Rechnitz Parties did not receive any advance notice or an

26   opportunity to be heard regarding the June 10 Order, which implicated their constitutional rights.

27   Accordingly, because the Rechnitz Parties did not receive notice that the Court may order them to

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  take certain action (*i.e.*, file a joint declaration under penalty of perjury and to do so

2  notwithstanding their Fifth Amendment rights), the Order is void.

3        Based on all of the foregoing, there is a strong likelihood that the entry of the Order for

4  Relief will be reversed on appeal.  The next question is whether the case should be remanded or

5  dismissed.  It should be dismissed.

6      **B.**    **The Court's Denial of the Motion to Dismiss Was In Error**

7        **1.**    **The Court Was Required to Dismiss the Case Because the Ineligible**

8            **Creditors Lacked Statutory Standing**

9        The Court was required to dismiss the Involuntary Case.  A "lack of *statutory* standing

10  requires dismissal for failure to state a claim."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th

11  Cir. 2011) (emphasis in original).  A bona fide dispute as to any portion of a creditor's claim

12  "strips the creditor of standing under § 303(b)(1)."  *See Dep't of Revenue v. Blixseth*, 942 F.3d

13  1179, 1185 (9th Cir. 2019).  The Court found that the Ineligible Creditors were ineligible because

14  their claims were subject to bona fide disputes.  Moreover, the Court made that finding within the

15  standard for a Rule 12(b)(6) motion based on their judicial admissions and the facts subject to

16  judicial notice.  Because the Court concluded that the Ineligible Creditors lacked statutory

17  standing to file the Involuntary Petition in connection with the Motion to Dismiss, dismissal for

18  failure to state a claim was required under binding Ninth Circuit Law.  *See Maya v. Centex Corp.*,

19  658 F.3d 1060, 1067 (9th Cir. 2011).

20        **2.**    **The Court Was Required to Enter a Dispositive Order Dismissing the**

21            **Case Under the Bankruptcy Rules**

22        The Ninth Circuit has emphasized on multiple occasions that "'[t]he court shall determine

23  the issues of a contested [involuntary] petition at the earliest practicable time and forthwith' enter a

24  dispositive order."  *See In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1061 (9th Cir. 2002)

25  (quoting Bankruptcy Rule 1013(a)) (alterations in original); *see also In re Bishop, Baldwin,*

26  *Rewald, Dillingham & Wong, Inc.*, 779 F.2d 471, 474 (9th Cir. 1985) (same).  "The 'earliest

27  practicable time' is when the bankruptcy court has 'sufficient information to resolve the conflict'

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

before it." *In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*, 779 F.2d at 474. "Entry of summary judgment where appropriate is unquestionably a literal compliance with Rule 1013." *See id.* at 475-75.

The bankruptcy court is required to "pause before hearing on the merits of an involuntary petition *in only one circumstance*[,]" which does not apply here. *See In re Vortex Fishing Systems, Inc.*, 277 F.3d at 1061. (emphasis added). The court must assure that creditors have a reasonable opportunity to join the petition when required by Bankruptcy Rule 1003(b), *i.e.,* "when the alleged debtor's answer to the petition *filed by fewer than three petitioners* asserts that the petition fails" because three petitioning creditors are required. *See id.* In *Vortex Fishing*, the Ninth Circuit concluded that "[b]ecause more than three petitioners filed the initial involuntary petition, notification of other creditors was not required under the joinder provisions of Bankruptcy Rule § 1003(b)." *See id.* at 1062 (emphasis added). Moreover, according to the Ninth Circuit, the discretion of the court to provide an opportunity for non-petitioners to join in three-petitioner cases must be exercised within the "context of the Rule 1013(a) mandate that the court resolve the merits of the involuntary petition 'at the earliest practicable time.'" *See id.* at 1062. (emphasis added).

Where, as here, the case is commenced by three petitioning creditors, Rule 1003(b) does not apply. In *In re Taub*, the alleged debtor sought dismissal of an involuntary petition commenced by three petitioning creditors on the basis that the creditors' claims were subject to bona fide dispute as to liability and amount. *See In re Taub*, 439 B.R. 261, 267 (Bankr. E.D.N.Y. 2010). The petitioning creditors argued that the court "should provide a window of time for non-petitioning creditors holding unsecured claims to join the Petition." *See id.* at 271. The court rejected the creditors' request. *See id.* at 271-72. The court held that Bankruptcy Rule 1003 does not apply "when the alleged debtor seeks dismissal of the petition on the basis that the petitioning creditors are not qualified under § 303(b) because their claims are subject to a bona fide dispute." *See id.* at 271. Relying on *Vortex Fishing Systems*, the court concluded that because the case was commenced by three petitioners and because the debtor sought dismissal because all three were

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    ineligible, "there is no requirement that non-petitioning creditors be afforded 'a reasonable

2    opportunity' to join the Petition."  *See id.*

3         The Court was required to grant the Motion to Dismiss.  The Court found that each of the

4    Ineligible Creditors were ineligible and lacked standing based on the standard governing a Rule

5    12(b)(6) motions to dismiss.  By its own findings, the Court had sufficient information to resolve

6    the dispute before it, and, as such, the "earliest practicable time" set forth in Bankruptcy Rule 1013

7    had arrived.  *See In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*, 779 F.2d at 474.

8    Granting a meritorious motion to dismiss is "unquestionably a literal compliance with Rule 1013."

9    *See Id.* at 474-75 (discussing entry of summary judgment).  Moreover, Bankruptcy Rule 1003(b) is

10   inapplicable in this case because it was not commenced by "fewer than three petitioning

11   creditors[.]"  Rather, like *Taub*, this case was commenced by three creditors and the Debtor sought

12   dismissal on the basis that all three are ineligible.  Because Bankruptcy Rule 1003(b) did not apply

13   and because the Motion to Dismiss had merit, the Court was required to enter a dispositive order

14   granting the Motion to Dismiss and dismissing the case.  Delaying the ruling on the Motion to

15   Dismiss to require a declaration and permit an additional 60 days for non-petitioners to join was

16   an abuse of discretion and violated Bankruptcy Rule 1013(a) and Ninth Circuit law.

17        **C.**    **The Court Erred in Not Dismissing the Case for Bad Faith**

18        Whether the bankruptcy court applied the correct legal standard in analyzing bad faith is a

19   mixed question of law and fact that is reviewed *de novo*.  *See In re Macke Int'l Trade, Inc.*, 370

20   B.R. 236, 245 (B.A.P. 9th Cir. 2007).  The bankruptcy court's finding of the absence of bad faith is

21   reviewed under the clearly erroneous standard.  *See id.*

22        An involuntary petition may be dismissed for bad faith.  Bankruptcy courts, including

23   those in the Ninth Circuit and within this District, have dismissed involuntary bankruptcy cases

24   commenced in bad faith.  *See, e.g.*, *In re WSB-RSK Venture*, 296 B.R. 509, 514 (Bankr. C.D. Cal.

25   2003); *In re Mi La Sul*, 380 B.R. 546, 557 (Bankr. C.D. Cal. 2007); *In re U.S. Corp.*, 2011 WL

26   1900416, at *3 (Bankr. D. Ariz. 2011); *In re Macke Int'l Trade, Inc.*, 370 B.R. 236, 247–48

27   (B.A.P. 9th Cir. 2007) (upholding the bankruptcy court's dismissal of an involuntary petition

28

1    pursuant to § 305 based on the totality of the circumstances, including findings that there was

2    pending litigation in another forum that would be more appropriate to resolve the parties' disputes

3    and that, in commencing the involuntary case, the petitioning creditors were forum shopping).

4    The existence of bad faith is governed by an objective test.  Under the objective test, bad faith

5    exists if a reasonable person would believe that the subject conduct constitutes bad faith.  *See In re*

6    *Wavelength, Inc.*, 61 B.R. 614, 620 (B.A.P. 9th Cir. 1986).

7         The uncontroverted evidence before the Court demonstrated that the case was commenced

8    in bad faith for the following reasons:

9         1.    As the Ineligible Creditors' pending lawsuits demonstrate, state law remedies exist

10              and were not exhausted; (Ex. 14 at Bates Stamp 287, lines 21 – Bates Stamp 288,

11              line 26);

12        2.    The Ineligible Creditors' claims were clearly subject to bona fide disputes as to at

13              least amount, the Ineligible creditors knew bona fide disputes existed, and the

14              Ineligible Creditors either knew they were ineligible or failed to conduct a

15              reasonable investigation into the relevant facts and pertinent law before

16              commencing the case; (*See id.* at Bates Stamp 288, line 27 – Bate Stamp 289, line

17              11);

18        3.    The commencement of the case constituted forum shopping as the Ineligible

19              Creditors commenced this case only after Noval's lawsuit was stayed and in order

20              to circumvent that ruling; (*See id.* at Bates Stamp 289, lines 12 23); and

21        4.    The Ineligible Creditors have taken inconsistent positions, submitted inaccurate

22              testimony, misquoted Ninth Circuit law, and it appears that one Ineligible Creditor

23              submitted documentary evidence under penalty of perjury that was altered.  (*See id.*

24              at Bates Stamp 289, line 24 – Bates Stamp 290, line 4.)

25        The Court denied the Motion to Dismiss without deciding the issue of the Ineligible

26    Creditors' bad faith.  Based on the Ineligible Creditors' bad faith, the case should have been

27    dismissed.

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    In sum, there can be no question that the Debtor has a substantial case on the merits.  The

2    strength of this factor alone supports a stay pending appeal.  There is a strong likelihood that the

3    Order for Relief will be vacated on appeal.  The elements for the entry of an order for relief were

4    not satisfied.  Moreover, the entry of the Order for Relief as a terminating sanction for the non-

5    compliance with the June 10 Order exceeded the Court's authority.  There is also a strong

6    likelihood that the case will be dismissed.  Because the Court found that the Ineligible Creditors

7    lacked standing based on the Debtor's Motion to Dismiss, the Court was required to grant the

8    Motion to Dismiss and dismiss the case.

9    **D.**    **The Court Erred in Denying the Debtor's Request for a Stay Pending the**

10   **Related Criminal Investigation**

11   An order denying a motion to stay proceedings is reviewed for an abuse of discretion.  *See*

12   *Maciel v. Palmer*, 271 Fed. Appx. 577, 577 (9th Cir. 2008).  The Debtor sought reconsideration of

13   the June 9 Order, or, alternatively, a stay of the case pending the conclusion of the related criminal

14   investigation.  The Court's denial of the Debtor's request for reconsideration was in error for the

15   reasons set forth above.  In addition, the Court's denial of the Debtor's request for a stay was an

16   abuse of discretion.  The Order Denying a Stay does not reflect that the Court considered the most

17   important factor in determining whether to stay a case due to parallel criminal and civil

18   proceedings (the overlap between the two) or weighed the factors typically considered by courts.

19   There can be no dispute that the criminal investigation, the Ineligible Creditors' lawsuits, and the

20   bankruptcy case all relate to the Debtor's jewelry business.  Moreover, as demonstrated in the

21   Debtor's Reconsideration Motion, the other factors considered by courts weigh in favor of a stay.

22   In their opposition to the Reconsideration Motion, the Ineligible Creditors argued that the

23   Debtor, an LLC, does not have a Fifth Amendment right.  This position is set forth in the Court's

24   Order Denying a Stay.  However, the Debtor did not assert that it has a Fifth Amendment right.

25   Rather, the point is that the June 10 Order required two *individuals*, who do have Fifth

26   Amendment rights, to submit testimony.  As argued in the Reconsideration Motion, courts have

27   stayed cases against a company based on the Fifth Amendment rights of an individual where the

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  individuals invocation of his or her Fifth Amendment rights would prevent the company from

2  adequately defending itself.  *See, e.g. Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin.,*

3  *Inc.*, 2009 WL 2136986, at *3 (E.D. Cal. July 15, 2009); *In re Adelphia Commc'ns Corp.*, 302

4  B.R. 439, 452 (Bankr. S.D.N.Y. 2003).  Here, the argument for a stay is even more compelling

5  because the Rechnitz Parties' permissible invocation of their Fifth Amendment rights on advice of

6  counsel resulted in terminating sanctions against the Debtor completely depriving it of the right to

7  defend itself.

8

9  ## V.    <u>THE DEBTOR WILL BE IRREPARABLY HARMED ABSENT A STAY</u>

10       An order for relief constitutes irreparable harm.  "Involuntary bankruptcy is

11  an extreme remedy with dire consequences upon [an alleged debtor]."  *In re Anmuth Holdings*

12  *LLC*, 600 B.R. 168, 188 (Bankr. E.D.N.Y. 2019) (alternation in original) (internal quotation marks

13  omitted).  In determining that an order for relief is an appealable order, the Ninth Circuit has

14  recognized the significant irreparable harm arising from entry of an order for relief in an

15  involuntary case.  *See In re Mason*, 709 F.2d 1313, 1316 (9th Cir. 1983) ("[W]e are convinced that

16  orders for relief should be considered final for purposes of appeal because they 'may determine

17  and seriously affect substantive rights' and 'cause irreparable harm to the losing party if he had to

18  wait to appeal to the end of the bankruptcy case.'").  Moreover, the Ninth Circuit itemized the

19  irreparable harm inflicted on alleged debtors as follows:

20       An order for relief, being a conclusive determination of the debtor's
        status as bankrupt, **carries with it a great potential for irreparable**
21       **injury** if immediate appeal is not allowed.
        An order for relief effectively divests the debtor of his assets, creating
22       an estate controlled by the bankruptcy court. In a Chapter 7 case the
        trustee is obligated to gather the assets of the estate, liquidate them,
23       and to the extent possible satisfy creditors' claims. . . .  During the
        administration of the estate the debtor's rights are limited. On entry of
24       the order for relief he loses control of his assets, which may include a
        business.  Once property of the estate is liquidated there appears to be
25       no way the debtor can force bona fide purchasers to return the
        assets. A debtor may possibly attack the propriety of every sale by
26       appeal, but to effectively do so he must seek to stay the sale. Such a
        procedure, however, is unduly burdensome and it is also unclear
27       whether a debtor, once adjudicated a bankrupt, is a proper party to
        attack a sale by the estate.

28

*In re Mason*, 709 F.2d at 1317 (emphasis added).  The Ninth Circuit similarly recognized the severe consequences of an involuntary case in *Vortex Fishing Sys., Inc.  See Higgin v. Vortex Fishing Sys., Inc.*, 379 F.3d 701, 707 (9th Cir. 2004) 379 F.3d 701, 707 (9th Cir. 2004) ("Filing an involuntary petition should be a measure of last resort because even if the petition is filed in good-faith, it can 'chill[ ] the alleged debtor's credit and sources of supply,' and 'scare away his customers.'" (alterations in original)).

The Debtor is clearly irreparably harmed absent a stay pending appeal.  An involuntary case is always an extreme remedy with dire consequences.  Here, the case is even more extreme as the Debtor is being placed into bankruptcy against its will, without trial, and ***when none of the legal requirements have been satisfied***.  In this case, the entry of the Order for Relief in and of itself constitutes irreparable injury.  Moreover, staying an order for relief entered in favor of ineligible creditors and contrary to the Code is entirely consistent with the Ninth Circuit's view that improper involuntary bankruptcy filings should be discouraged.  *See Vortex Fishing Sys., Inc.*, 379 F.3d at 707 (stating that the presumption in favor of attorney's fees upon dismissal an involuntary case "helps reinforce the idea that '[t]he filing of an [i]nvoluntary [p]etition should not be lightly undertaken,'. . .  and 'will serve to discourage inappropriate and frivolous filings.'" (internal citations omitted) (alterations in original)); *see also Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1184 & 1187 (9th Cir. 2019) (stating the "'bona fide dispute' limitation" is designed to prevent creditors using the involuntary bankruptcy process to leverage the collection of disputed claims).

As recognized by the Ninth Circuit, the legal consequences immediately arising from the entry of the Order for Relief constitute irreparable harm.  A trustee has been appointed who is now tasked with collecting and liquidating assets.  The entry of the Order for Relief created the estate comprised of legal and equitable interests in property as of the petition date of the Debtor.  *See* 11 U.S.C. § 541.  The Debtor is also divested of claims against the Ineligible Creditors and its ability to defend against the Ineligible Creditors' claims is negatively impacted.  The position taken by the Trustee immediately upon his appointment and the substantial amount of information he has

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  already requested in short order demonstrates the irreparable harm to be suffered by the Debtor

2  absent a stay.  (*See* Ex. 12 at Bates Stamps 241-244.)  Moreover, as stated by the Ninth Circuit,

3  requiring the Debtor to contest each and every transaction or act by the Trustee in the case would

4  be unduly burdensome.

5      Absent a stay the Debtor will not be in a position to defend itself or comply with certain

6  requirements.  The Trustee has requested significant information from the Debtor.  (*See* Ex. 12.)

7  The Court has ordered the Debtor to file schedules, which are completed under penalty of perjury,

8  in fourteen days from the entry of the Order for Relief.  The schedules and the information

9  requested by the Trustee will implicate the Fifth Amendment rights of the Rechnitz Parties, and

10  thus, the very issue that resulted in the Order for Relief will lead to a series of disputes post-

11  petition.  (*See* Schafler Decl. at ¶ 5.)  A stay will prevent the disputes likely to occur related to the

12  Rechnitz Parties' Fifth Amendment Rights.

13

14  **VI.    THE INELIGIBLE CREDITORS WILL NOT BE SUBSTANTIALLY INJURED BY**

15      **A STAY**

16      The Ineligible Creditors will not be injured by a stay, substantially or otherwise.  The entry

17  of the Order for Relief was an unwarranted windfall for the Ineligible Creditors.  The Ineligible

18  Creditors were determined to be ineligible and had no standing to commence the case and no right

19  to an order for relief.  Moreover, the Ineligible Creditors have pending lawsuits that provide fora

20  for their disputed claims.  To the extent those lawsuits are stayed, they should be bound by those

21  stays.  One of the Ineligible Creditors' lawsuits is temporarily stayed, and another has a motion for

22  stay under submission.  (*See* Ex. 11, at Bates Stamp 236, lines 11-13.)  The Ineligible Creditors

23  should not be permitted to circumvent their respective pending actions by obtaining free discovery

24  by use of the Trustee or otherwise in the bankruptcy case.

25

26

27

28

## VII.    A STAY WILL NOT HARM NON-PARTIES

The stay will not substantially harm any alleged non-parties.  Again, this case should not have been commenced in the first instance as the Ineligible Creditors lacked standing from the beginning.  This case has been pending for over two months and the Ineligible Creditors argued to this Court that they know of other creditors who want to join the petition, which must mean they have already been contacting alleged creditors.  (*See* Ex. 15, excerpt of Opp'n. to Mot. to Dismiss, at Bates Stamp 293, note 3.)  Yet, despite the Ineligible Creditors assertions and efforts, no other creditors have attempted to join the petition.  Moreover, absent a stay, the Trustee will be required to perform certain services and tasks, but will be required to do so with the appeal over his head and with the risk that the Order for Relief will be vacated.  Thus, a stay pending appeal prevents the risk of a serious waste of time and money by the Trustee if the Order for Relief is vacated.

## VIII.    THE PUBLIC INTEREST WEIGHS IN FAVOR OF A STAY

The public interest weighs in favor of a stay.  Here, there can be no question that the party suffering the most harm is the Debtor, and, for that reason, the public interest supports a stay.  *See also In re Kenny G. Enterprises. LLC*, 2014 WL 1806891, at *3 (C.D. Cal. 2014) ("[t]he public interest here likely follows the party that would suffer the most harm with or without the stay."). Moreover, as articulated by the Ninth Circuit, an involuntary case is an extreme remedy of last resort that has serious ramifications.  *See Higgins v. Vortex Fishing Systems, Inc.,* 379 F.3d 701, 707 (9th Cir. 2004).  Absent a stay, the Ineligible Creditors will continue to reap the benefits of relief to which they are not entitled.  From a policy perspective, allowing this case to proceed would encourage ineligible creditors to file improper involuntary petitions against putative debtors.  The public interest is supported by the stay of the case pending the outcome of the Appeal.

The public interest is also supported by preserving the *status quo* when an appeal could affect the administration of the case.  In *In re Cont'l Coin Corp.*, the District Court affirmed the bankruptcy court's issuance of a stay pending appeal because it preserved the status quo:

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1

2

3

4

> [T]he bankruptcy court found that a stay was in the public interest because "going forward with the merits of the case while an appeal is pending on the very question of what is actionable . . . would be a serious waste of time, money, and judicial resources. Therefore, granting a stay pending appeal will best preserve the status quo and serve to prevent irremediable harm to the trustee and to the estate [.]"

5   *In re Cont'l Coin Corp,* 2009 WL 2589635 at *10 (C.D. Cal. Aug. 21, 2009).  The appeal does not

6   concern a single particular transaction or motion in a case, *but whether the case should exist at all*

7   and whether the Debtor was properly forced into bankruptcy against its will.  Because the pending

8   appeal involves the very question of whether the case is proper, absent a stay, there is a risk of a

9   serious waste of time, money, and judicial resources.

10      Finally, notwithstanding the Ineligible Creditors' allegations that they know of other

11  creditors, this case is the result of litigation between the Debtor and the Ineligible Creditors.  The

12  public simply does not have an interest in these particular private disputes.  Accordingly, this

13  factor also weighs in favor of the proposed stay.

14

15  **IX.**   **CONCLUSION**

16      Based on the foregoing, the Debtor respectfully requests that the Court stay this case

17  pending the Appeal.  The Debtor also requests a temporary stay pending the Court's consideration

18  of the Motion, and, if the Court is inclined to deny the Motion, a temporary stay to allow the

19  Debtor to file a motion with the appellate court on an emergency basis.

20

21                                  Respectfully submitted,

22  DATED:  June 19, 2020          SMILEY WANG-EKVALL, LLP

23

24                          By:    ___*/s/ Robert S. Marticello*___
                                   ROBERT S. MARTICELLO
25                                 MICHAEL L. SIMON
                                   Attorneys for Jadelle Jewelry and Diamonds,
26                                 LLC.

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*): **Emergency Motion Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal; and Memorandum of Points and Authorities**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **06/19/2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Baruch C Cohen    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- Sam S Leslie (TR)    sleslie@trusteeleslie.com, sleslie@iq7technology.com;trustee@trusteeleslie.com
- Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Robert S Marticello    Rmarticello@swelawfirm.com,
  gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- Neal Salisian    ECF@salisianlee.com
- Michael Simon    msimon@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **06/19/2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Via First Legal:
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/19/2020 | Lynnette Garrett | /s/ Lynnette Garrett |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**