**SMILEY WANG-EKVALL, LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:    714 445-1000
Facsimile:    714 445-1002

Attorneys for Jadelle Jewelry and Diamonds,
LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:20-bk-13530-BR |
| JADELLE JEWELRY AND DIAMONDS, LLC, | Chapter 7 |
| Debtor. | **INDEX OF EXHIBITS IN SUPPORT OF DEBTOR'S EMERGENCY MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8007 FOR STAY PENDING APPEAL** |
| | **DATE:** **To Be Determined**<br>**TIME:** **To Be Determined**<br>**CTRM:** **1668**<br>**255 E. Temple Street**<br>**Los Angeles, CA 90012** |

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

Jadelle Jewelry and Diamonds, LLC, the putative debtor ("Jadelle"), hereby submits the

following index of exhibits in support of the concurrently filed *Debtor's Emergency Motion*

*Pursuant to Federal Rule of Bankruptcy Procedure 8007 For Stay Pending Appeal.*

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2829044.1

INDEX OF EXHIBITS

| Exhibit No. | Title or Description of Document |
|---|---|
| 1 | Order: (1) Directing Rachel Rechnitz and Jona Rechnitz to File Joint Declaration Under Penalty of Perjury; (2) Setting Date by Which Petitioning Creditors May Contact Creditors Identified In Joint Declaration and Conduct Certain Discovery; (3) Setting Date for Hearing on Status Conference; and (4) Setting Date for Filing of Joint Status Report Prior to Status Conference [Docket No. 39] |
| 2 | Order Denying "Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case [Docket No. 53] |
| 3 | Order Directing Clerk of Court to Immediately Enter an Order for Relief Under Chapter 7, and Requiring the Debtor to File All Schedules and Related Documentation for a Chapter 7 Case Within Fourteen Days of the Entry of This Order [Docket No. 54] |
| 4 | Order for Relief and Order to File Schedules, Statements and List(s) [Docket No. 55] |
| 5 | Involuntary Petition [Docket No. 1] |
| 6 | Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages [Docket No. 8] |
| 7 | Transcript of June 9, 2020: Status Conference re Involuntary Petition; Hearing Re: Motion of Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages; and Hearing Re: Creditors' Motion for Appointment of Interim Chapter 7 Trustee |
| 8 | Supplemental Declaration of Baruch C. Cohen Regarding Third Party Defendants' Motion for Stay of Proceedings, USDC Case No. 2:20-cv-02580-ODW-AS, Docket No. 61; |
| 9 | June 11, 2020 Email from Ronald Richards to Robert Marticello with attached discovery; |
| 10 | Verified Complaint filed by Victor Franco Noval in *Noval v. Rechnitz, et al.*; |

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

| Exhibit No. | Title or Description of Document |
|:---:|:---|
| 11 | Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case [Docket No. 44] |
| 12 | June 18, 2020 Letter from Sam S. Leslie |
| 13 | Docket in 2:20-bk-13530-BR as of June 19, 2020 |
| 14 | Putative Debtor's Reply to Petitioning Creditors' Opposition to Putative Debtors' Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages [Docket No. 36] |
| 15 | Excerpt from Petitioning Creditor's Opposition to Motion to Dismiss [Docket No. 15] |

Respectfully submitted,

DATED:  June 19, 2020

SMILEY WANG-EKVALL, LLP

By: _____/s/ Robert S. Marticello_____
ROBERT S. MARTICELLO
MICHAEL L. SIMON
Attorneys for Jadelle Jewelry and Diamonds, LLC.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# EXHIBIT "1"

FILED & ENTERED

JUN 10 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier      DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Jadelle Jewelry and Diamonds LLC,<br><br><br><br><br>Debtor(s). | Case No.: 2:20-bk-13530-BR<br><br>Chapter 7<br><br>**ORDER:**<br><br>**(1)  DIRECTING RACHEL RECHNITZ AND JONA RECHNITZ TO FILE JOINT DECLARATION UNDER PENALTY OF PERJURY;**<br><br>**(2)  SETTING DATE BY WHICH PETITIONING CREDITORS MAY CONTACT CREDITORS IDENTIFIED IN JOINT DECLARATION AND CONDUCT CERTAIN DISCOVERY;**<br><br>**(3)  SETTING DATE FOR HEARING ON STATUS CONFERENCE; AND**<br><br>**(4)  SETTING DATE FOR FILING OF JOINT STATUS REPORT PRIOR TO STATUS CONFERENCE**<br><br>Date:          June 9, 2020<br>Time:          10:00 a.m.<br>Courtroom:  1668 |

EXHIBIT "1", PAGE 4

The Court held a hearing on June 9, 2020 on the following two motions: the "Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs and Damages" ("Motion to Dismiss"), filed by the debtor on May 1, 2020, and the "Petitioning Creditors' Notice of Motion and Motion for Appointment of Interim Chapter 7 Trustee" ("Trustee Appointment Motion") filed on May 19, 2020 by petitioning creditors Victor Franco Noval, Peter Marco, LLC and First International Diamond, Inc.

Robert S. Marticello, Esq. of Smiley, Wang-Ekvall, LLP appeared on behalf of the debtor. Ronald Richards of the Law Firm of Ronald L. Richards & Associates, APC, Baruch C. Cohen, APLC and Daniel A. Lev, Esq. of SulmeyerKupetz, A Professional Corporation, appeared on behalf of the petitioning creditors.

With respect to the debtor's Motion to Dismiss, the Court considered the Motion, the petitioning creditors' Opposition to the Motion, the debtor's Reply to the petitioning creditors' Opposition, and all pleadings related to the Motion, Opposition and Reply.

With respect to the petitioning creditors' Trustee Appointment Motion, the Court considered the Motion and all related pleadings including the separately filed declarations of Ronald Richards, Oved Anter, Victor Franco Noval, and Peter Marco, the debtor's Opposition to the Motion, the petitioning creditors' Reply to the debtor's Opposition, and all other pleadings related to the Motion, Opposition and Reply.

The Court also considered the debtor's separately filed declarations of Levin Prado and Marc Williams in Opposition to the Trustee Appointment Motion, the debtor's evidentiary objections to the declarations of Oved Anter, Victor Franco Noval, Peter Marco and Ronald Richards, the petitioning creditors' evidentiary objections to the debtor's Request for Judicial Notice, and all other pleadings related to the Motion, Opposition and Reply.

EXHIBIT "1", PAGE 5

At the June 9 hearing, the Court ruled on the record on all of the evidentiary objections and heard argument and representations of counsel. After consideration of all of the above, the Court **HEREBY ORDERS AS FOLLOWS**:

1. Rachel Rechnitz and Jona Rechnitz (collectively, the "Rechnitz's") must file a joint declaration, sworn under penalty of perjury, which identifies each and every one of the debtor's creditors as of the date of the filing of the involuntary petition on April 6, 2020. The joint declaration shall include, without limitation, the following information with respect to each creditor identified therein:

   a. the name of the creditor;

   b. the nature of the debt owed to the creditor (*e.g.*, consigned jewelry, rent due and owing, etc.);

   c. the amount of the creditor's claim;

   d. whether the creditor's claim is disputed and, if so, the nature of the dispute; and

   e. complete contact information for each creditor including, but not limited to, the creditor's address, telephone number, cell phone number (if known), fax number (if applicable), and email address (if known);

2. The Rechnitz's shall have seven (7) days from the date of this hearing (*i.e.*, no later than 3:00 p.m. on Tuesday, June 16, 2020) to file their joint declaration with the Court and serve the declaration on counsel for the petitioning creditors;

3. If the Rechnitz's fail to file the joint declaration by that date and time, the Court will deny the debtor's Motion to Dismiss and immediately enter an order

EXHIBIT "1", PAGE 6

for relief in this case. The entry of such an order for relief will render both the pending Motion to Dismiss and Trustee Appointment Motion moot;

4. If the Rechnitz's file the joint declaration by the required date and time, then:

    a.  The petitioning creditors shall have sixty (60) days from the date of this hearing (*i.e.*, no later than 3:00 p.m. on August 14, 2020) to contact the creditors listed in the joint declaration to determine if any of them are willing to join in the involuntary petition;

    b. The petitioning creditors shall have the same sixty (60) day period within which to conduct discovery of the creditors listed in the joint declaration, which discovery shall be limited solely to questions regarding the nature and amount of the creditor's claim and, if the creditor's claim is listed in the joint declaration as disputed, the nature of such dispute;

    c. The Court shall hold a status conference on this involuntary case on August 25, 2020 at 10:00 a.m., and

    d. The parties shall file a joint status report seven (7) days prior to the status conference (*i.e.*, no later than 3:00 p.m. on August 18, 2020).

**IT IS SO ORDERED.**

###

Date: June 10, 2020

Barry Russell
United States Bankruptcy Judge

EXHIBIT "1", PAGE 7

# EXHIBIT "2"

FILED & ENTERED

JUN 16 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier      DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>JADELLE JEWELRY AND DIAMONDS LLC,<br><br>              Debtor(s). | Case No.: 2:20-bk-13530-BR<br><br>Chapter 7<br><br>**ORDER DENYING "PUTATIVE DEBTOR'S EMERGENCY MOTION FOR (1) RECONSIDERATION OF THE COURT'S ORDER, OR (2) ALTERNATIVELY, A STAY OF THE BANKRUPTCY CASE"**<br><br>[No Hearing Date Required] |

This matter is before the Court on the "Putative Debtor's Emergency Motion For (1) Reconsideration Of The Court's Order, Or (2) Alternatively, A Stay Of The Bankruptcy Case" ("Emergency Motion"), filed by the debtor on June 15, 2020.

The Court has considered the Emergency Motion and all related pleadings filed in support thereof, consisting of the supporting declarations of Robert S. Marticello and Michael V. Schafler (including an Errata thereto), an Index of Exhibits and a Request For Judicial Notice as well as the petitioning creditors' Preliminary Opposition thereto.

-1-

EXHIBIT "2", PAGE 8

1
2
3
4
5
6
     The Emergency Motion seeks reconsideration of the Court's order entered on June 10, 2020 ("June 10, 2020 Order") entitled "Order: (1) Directing Rachel Rechnitz And Jona Rechnitz To File Joint Declaration Under Penalty Of Perjury; (2) Setting Date By Which Petitioning Creditors May Contact Creditors Identified In Joint Declaration And Conduct Certain Discovery; (3) Setting Date For Hearing On Status Conference; And (4) Setting Date For Filing Of Joint Status Report Prior To Status Conference."

7
     The June 10 Order specifically ordered, *inter alia* that:

8
9
10
11
12
> 1. Rachel Rechnitz and Jona Rechnitz (collectively, the 'Rechnitz's') must file a joint declaration, sworn under penalty of perjury, which identifies each and every one of the debtor's creditors as of the date of the filing of the involuntary petition on April 6, 2020. The joint declaration shall include, without limitation, the following information with respect to each creditor identified therein: . . .

13
June 10, 2020 Order (docket no. 39), page 3.

14
15
16
17
18
19
20
21
     The Court issued its June 10, 2020 Order following a telephonic hearing on June 9, 2020 on two motions: the "Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs and Damages" ("Motion to Dismiss"), filed by the debtor on May 1, 2020, and the "Petitioning Creditors' Notice of Motion and Motion for  Appointment of Interim Chapter 7 Trustee," filed by the petitioning creditors on May 19, 2020. At that hearing, the Court heard argument and representations of counsel regarding both motions, made evidentiary rulings on the record, and made its oral ruling as reflected in its June 10, 2020 Order.

22
23
24
25
26
27
     A major focus of the Emergency Motion is the debtor's argument that the June 10, 2020 Order deprives the debtor's principals, Rachel and Jona Rechnitz, of their Fifth Amendment privilege against self-incrimination by its requirement that the Rechnitz's file a joint declaration under penalty of perjury regarding the identity of the debtor's creditors and by allowing the petitioning creditors to conduct certain limited discovery with respect to the creditors identified by them.

28

-2-

The Court, however, specifically addressed the Fifth Amendment privilege issue with the debtor's counsel, Robert S. Marticello, at the June 9, 2020 hearing on the debtor's Motion to Dismiss:

> THE COURT:  I know that there are criminal -- there are other charges and so there's a lot of stuff going on. I have no opinion. I know what happened in the state court, but I have no opinion as to the ultimate outcome. But I tell you this, if either -- or they both must comply and I make it quite clear. If they don't comply with the request, whether it's Fifth Amendment or whatever, then I will enter the order for relief. Is it the debt -- from the debtor's standpoint, do you understand that? Mr. Marticello, do you understand that?

> MR. MARTICELLO: Your Honor, this is Robert Marticello for the debtor. I understand the Court's – what the Court just said and I will comply with the Court's order. My concern is, Your Honor, like you said there are other things going on and –

> THE COURT: No, I understand that. But, no, I'm telling you –

> MR. MARTICELLO: -- if there is a -- if there's a –

> THE COURT: -- this is really simple and I can't -- I'm not -- I -- people have a right to the -- you know, to take the Fifth and I -- again, whether they do or not I have no idea. But I'm telling you right now the creditors have a right to this information. If they refuse, either of them, I want both of them to sign it because it's not clear to me exactly who's really running the business. My guess is that maybe the husband is but I don't know that, just from the various pleadings. I don't really know. So there -- therefore, I am requiring both to sign under penalty of perjury. And if nei -- and if they don't both sign it under penalty of perjury, then I will enter an order for relief. I just want you -- you -- I want you in particular and your clients, the debtor, the principals, to understand that. You do -- you understand what I've said. I want them to understand it. That would be the price for not complying with my order. You –

> MR. MARTICELLO: I understand, Your Honor.

> THE COURT: Mr. Marticello, you understand what I've said obviously. I'm not being facetious. You understand. And so any –

-3-

EXHIBIT "2", PAGE 10

1    MR. MARTICELLO: Correct, Your Honor.

2  Transcript of Telephonic Proceedings Before The Honorable Barry Russell, United

3  States Bankruptcy Judge, Docket No. 42 at p. 85, lines 21-25 through p. 87, lines 1-14.

4    The Court notes that despite debtor's counsel's statements in the above

5  proceedings that he understood what the Court had said and would comply with the

6  Court's June 10, 2020 Order, the debtor instead filed the Emergency Motion less than

7  twenty-four (24) hours before the deadline imposed by the June 10, 2020 for the filing of

8  the Rechnitz's joint declaration.

9    The Court further notes that the despite the Emergency Motion's arguments

10  regarding the Rechnitz's Fifth Amendment privilege, the debtor in this case is an LLC,

11  that the Fifth Amendment privilege only applies to individuals, and that the debtor's

12  principals (the Rechnitz's) are not entitled to assert a Fifth Amendment privilege on the

13  debtor's behalf.

14    The Emergency Motion also argues that the Court may dismiss this case without

15  the requirement of a creditor list, and that the Court is not required to provide creditors

16  (other than the petitioning creditors) an opportunity to join in the involuntary petition. The

17  Court finds this argument unpersuasive in this case.

18    It may very well be that there are additional creditors who may have substantial,

19  undisputed claims against the debtor. The debtor's failure to timely file the list of

20  creditors, as required by the Court's June 10, 2020 Order, will prevent the petitioning

21  creditors from being able to identify any such additional potential creditors and will also

22  prevent the petitioning creditors, and any other additional creditors, from attempting to

23  prove that the debtor is not paying its debts as they become due.

24  ///

25  ///

26  ///

27  ///

28  ///

-4-

Finally, the Court finds all other arguments in the Emergency Motion equally ill-founded and unpersuasive. Accordingly, no good cause having been shown to grant the Emergency Motion, the Emergency Motion is **DENIED**.

**IT IS SO ORDERED**.

Date: June 16, 2020

Barry Russell
United States Bankruptcy Judge

-5-

EXHIBIT "2", PAGE 12

# EXHIBIT "3"

**FILED & ENTERED**

**JUN 16 2020**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier     DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>JADELLE JEWELRY AND DIAMONDS LLC,<br><br><br>                              Debtor(s). | Case No.: 2:20-bk-13530-BR<br><br>Chapter 7<br><br>**ORDER DIRECTING CLERK OF COURT TO IMMEDIATELY ENTER AN ORDER FOR RELIEF UNDER CHAPTER 7, AND REQUIRING THE DEBTOR TO FILE ALL SCHEDULES AND RELATED DOCUMENTATION FOR A CHAPTER 7 CASE WITHIN FOURTEEN DAYS OF THE ENTRY OF THIS ORDER**<br><br>[No Hearing Required] |

On June 10, 2020, the Court entered its "Order: (1) Directing Rachel Rechnitz And Jona Rechnitz To File Joint Declaration Under Penalty Of Perjury; (2) Setting Date By Which Petitioning Creditors May Contact Creditors Identified In Joint Declaration And Conduct Certain Discovery; (3) Setting Date For Hearing On Status Conference; And (4) Setting Date For Filing Of Joint Status Report Prior To Status Conference" ("June 10 Order"), wherein the Court specifically ordered, *inter alia,* that:

-1-

1.    Rachel Rechnitz and Jona Rechnitz (collectively, the 'Rechnitz's') must file a joint declaration, sworn under penalty of perjury, which identifies each and every one of the debtor's creditors as of the date of the filing of the involuntary petition on April 6, 2020. The joint declaration shall include, without limitation, the following information with respect to each creditor identified therein:

a. the name of the creditor;

b. the nature of the debt owed to the creditor (*e.g.*, consigned jewelry, rent due and owing, etc.);

c. the amount of the creditor's claim;

d. whether the creditor's claim is disputed and, if so, the nature of the dispute; and

e. complete contact information for each creditor including, but not limited to, the creditor's address, telephone number, cell phone number (if known), fax number (if applicable), and email address (if known);

2. The Rechnitz's shall have seven (7) days from the date of this hearing (*i.e.*, no later than 3:00 p.m. on Tuesday, June 16, 2020) to file their joint declaration with the Court and serve the declaration on counsel for the petitioning creditors;

3. If the Rechnitz's fail to file the joint declaration by that date and time, the Court will deny the debtor's Motion to Dismiss and immediately enter an order for relief in this case. [. . .]

June 10, 2020 Order, docket no. 39, pages 3 and 4.

The debtor filed an "Emergency Motion For (1) Reconsideration Of The Court's Order, Or (2) Alternatively, A Stay Of The Bankruptcy Case" ("Emergency Motion") on June 15, 2020. The Court denied the Emergency Motion by a separate order entered on June 16, 2020.

As of 3:00 p.m. on June 16, 2020, the Rechnitz's failed to file the joint declaration under penalty of perjury, the required list of creditors, or otherwise comply with the June 10, 2020 Order in any respect.  Accordingly, **IT IS HEREBY ORDERED** that:

EXHIBIT "3", PAGE 14

Case 2:20-bk-13530-BR    Doc 54    Filed 06/16/20    Entered 06/16/20 15:59:50    Desc
Main Document        Page 3 of 3

1      1.  The Clerk of Court shall enter an order for relief under chapter 7 of the

2           Bankruptcy Code immediately upon entry of this Order; and

3      2.  The debtor is required to file all schedules and related documentation for a

4           chapter 7 case, in accordance with the Local Bankruptcy Rules, within

5           fourteen (14) days from the date of entry of this Order.

6      **IT IS SO ORDERED.**

7                        ###

Date: June 16, 2020

Barry Russell
United States Bankruptcy Judge

-3-

EXHIBIT "3", PAGE 15

# EXHIBIT "4"

Form ofri–(orlf7,orlf11,iors) VAN–93
Rev. 12/2015

# United States Bankruptcy Court
# Central District of California

### 255 East Temple Street, Los Angeles, CA 90012

## ORDER FOR RELIEF AND ORDER TO FILE SCHEDULES, STATEMENTS AND LIST(S)

**DEBTOR(S) INFORMATION:**
 Jadelle Jewelry And Diamonds LLC a Delaware
limited liability company
dba Jadelle Inc
**SSN:** N/A
**EIN:** 00–0000000

9454 Wilshire Blvd
Penthouse 01
Beverly Hills, CA 90212

**BANKRUPTCY NO.**  2:20–bk–13530–BR
**CHAPTER**  7

Order/Notice to the parties in interest:

An involuntary Chapter 7 petition having been filed against the above–named debtor on April 6, 2020

☐   Debtor consented to the entry of an order of relief.

☐   No pleading or other defense to the petition having been filed within 21 days after service of the summons (or within
any longer period of time precribed by the Court), an Order for Relief is hereby issued against the debtor.

Debtor is ordered to file within **seven** days after entry of this order for relief, a list containing the name and address of each
entity included on Schedule D, E/F, G, and H as prescribed by the Official Forms (Federal Rule of Bankruptcy Procedure 1007
(a)(2)).

Debtor is also ordered to file schedules, statement and Statement About Your Social Security Numbers (Official Form B121)
referred to in Federal Rule of Bankruptcy Procedure 1007(a),(c) and (f) within 14 days after entry of this Order For Relief.

Dated: June 16, 2020

For The Court,

**Kathleen J. Campbell**
Clerk of Court

# EXHIBIT "5"

ORIGINAL

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

__Central__ District of __California__
                        (State)

Case number (*if known*): _____ Chapter _____

**FILED**

**APR - 6 2020**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

☐ Check if this is an amended filing

## Official Form 205
# Involuntary Petition Against a Non-Individual

12/15

Use this form to begin a bankruptcy case against a non-individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against an individual, use the *Involuntary Petition Against an Individual* (Official Form 105). Be as complete and accurate as possible. If more space is needed, attach any additional sheets to this form. On the top of any additional pages, write debtor's name and case number (if known).

**Part 1:   Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed**

| 1. Chapter of the Bankruptcy Code | Check one:<br>☒ Chapter 7<br>☐ Chapter 11 |
|---|---|

**Part 2:   Identify the Debtor**

| 2. Debtor's name | JADELLE JEWELRY AND DIAMONDS, LLC, a Delaware limited liability company |
|---|---|

| 3. Other names you know the debtor has used in the last 8 years<br><br>Include any assumed names, trade names, or *doing business as* names. | Jadelle, Inc. |
|---|---|

| 4. Debtor's federal Employer Identification Number (EIN) | ☒ Unknown<br><br>EIN _____ |
|---|---|

**5. Debtor's address**

Principal place of business

9621    Brighton Way
Number   Street

_____

*Beverly Hills   CA*   90210
City                State   ZIP Code

*Los Angeles*
County

Mailing address, if different

9454    Wilshire Blvd., Penthouse 01
Number   Street

P.O. Box _____

Beverly Hills   CA   90212
City            State   ZIP Code

Location of principal assets, if different from principal place of business

_____
Number   Street

_____
City            State   ZIP Code


American LegalNet, Inc.
www.FormsWorkFlow.com

EXHIBIT "5", PAGE 17

Debtor  __Jadelle Jewelry and Diamonds, LLC_____     Case number (*if known*) _____
                 Name

**6. Debtor's website (URL)** _____

**7. Type of debtor**
☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding LLP)
☐ Other type of debtor. Specify: _____

**8. Type of debtor's business**

*Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Railroad (as defined in 11 U.S.C. § 101(44))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
☒ None of the types of business listed.
☐ Unknown type of business.

**9. To the best of your knowledge, are any bankruptcy cases pending by or against any partner or affiliate of this debtor?**

☒ No
☐ Yes. Debtor _____ Relationship _____
District _____ Date filed _____ Case number, if known _____
                                                            MM / DD / YYYY

Debtor _____ Relationship _____
District _____ Date filed _____ Case number, if known _____
                                                            MM / DD / YYYY

**Part 3:    Report About the Case**

**10. Venue**

*Check one:*

☒ Over the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district.
☐ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

**11. Allegations**

Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).

The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

*At least one box must be checked:*

☒ The debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount.
☐ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or an agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

**12. Has there been a transfer of any claim against the debtor by or to any petitioner?**

☒ No
☐ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a).

Official Form 205                    Involuntary Petition Against a Non-Individual                    page 2

American LegalNet, Inc.
www.FormsWorkFlow.com

EXHIBIT "5", PAGE 18

Debtor    Jadelle Jewelry and Diamonds, LLC    Case number (if known) _____
            Name

**13. Each petitioner's claim**

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| First International Diamond, Inc. | Trade Debt/Damages | $ 1,976,225.00 |
| Peter Marco, LLC | Trade Debt/Damages | $ 7,676,744.00 |
| Victor Franco Noval | Trade Debt/Damages | $ 5,800,000.00 |
| | Total of petitioners' claims | $ 15,452,969.00 |

If more space is needed to list petitioners, attach additional sheets. Write the alleged debtor's name and the case number, if known, at the top of each sheet. Following the format of this form, set out the information required in Parts 3 and 4 of the form for each additional petitioning creditor, the petitioner's claim, the petitioner's representative, and the petitioner's attorney. Include the , along with the signature of the petitioner's attorney.

| Part 4: | Request for Relief |
|---|---|

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

Petitioners request that an order for relief be entered against the debtor under the chapter of 11 U.S.C. specified in this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, attach a certified copy of the order of the court granting recognition.

I have examined the information in this document and have a reasonable belief that the information is true and correct.

cab 2698544v1

| Petitioners or Petitioners' Representative | Signature of petitioner or representative, including representative's title |
|---|---|

Name and mailing address of petitioner

First International Diamond, Inc.
Name

P.O. BOX 3765
Number    Street

Beverly Hills            CA        90212
City                        State        ZIP Code

Name and mailing address of petitioner's representative, if any

Baruch C. Cohen, Esq.
Law Office of Baruch C. Cohen, APLC
Name

4929    Wilshire Blvd., Suite 940
Number    Street

Los Angeles            CA        90010
City                        State        ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    4-3-2020
                    MM/DD/YYYY

x _____

Official Form 205                Involuntary Petition Against a Non-Individual                page 3

American LegalNet, Inc.
www.FormsWorkFlow.com

**Attorneys**

Daniel A. Lev
Printed name

SulmeyerKupetz, A Professional Corporation
Firm name, if any

333 South Grand Avenue
Number    Street

Los Angeles          CA          90071
City                 State       ZIP Code

Contact phone  213.626.2311   Email  dlev@sulmeyerlaw.com

Bar number  129622

State          CA

X _____
Signature of attorney

Date signed  04/06/2020
MM / DD / YYYY

Official Form 205          Involuntary Petition Against a Non-Individual          page 3



EXHIBIT "5", PAGE 20

Debtor    Jadelle Jewelry and Diamonds, LLC
_____
Name

Case number (if known) _____

Signature of petitioner or representative, including representative's title

Name and mailing address of petitioner
Peter Marco, LLC
_____
Name

252    N. Rodeo Dr.
_____
Number    Street

Beverly Hills          CA      90210
_____
City              State    ZIP Code

Name and mailing address of petitioner's representative, if any
Baruch C. Cohen, Esq.
Law Offices of Baruch C. Cohen, APLC
_____
Name

4929    Wilshire Blvd., Suite 940
_____
Number    Street

Los Angeles          CA      90010
_____
City              State    ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed On    4-3-2020
_____
MM / DD / YYYY

x _____
Signature of petitioner or representative, including representative's title

Name and mailing address of petitioner
Victor Franco Noval
_____
Name

1141    Summit Drive
_____
Number    Street

Beverly Hills          CA
_____
City              State    ZIP Code

Name and mailing address of petitioner's representative, if any
Ronald Richards, Esq.
Law Offices of Ronald Richards & Associates, A.P.C.
_____
Name

P.O. Box 11480
_____
Number    Street

Beverly Hills          CA      90213
_____
City              State    ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____
MM / DD / YYYY

x _____

Official Form 205          Involuntary Petition Against a Non-Individual          page 4

American LegalNet, Inc.
www.FormsWorkFlow.com

EXHIBIT "5", PAGE 21

Debtor   Jadelle Jewelry and Diamonds, LLC
Name

Case number (if known)

Signature of petitioner or representative, including representative's title

**Name and mailing address of petitioner**
Peter Marco, LLC
Name

252        N. Rodeo Dr.
Number   Street

Beverly Hills              CA        90210
City                           State      ZIP Code

**Name and mailing address of petitioner's representative, if any**
Baruch C. Cohen, Esq.
Law Offices of Baruch C. Cohen, APLC
Name

4929        Wilshire Blvd., Suite 940
Number   Street

Los Angeles               CA        90010
City                           State      ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed On
_____
MM / DD / YYYY

✗ _____
Signature of petitioner or representative, including representative's title

**Name and mailing address of petitioner**
Victor Franco Noval
Name

1141        Summit Drive
Number   Street

Beverly Hills              CA        90210
City                           State      ZIP Code

**Name and mailing address of petitioner's representative, if any**
Ronald Richards, Esq.
Law Offices of Ronald Richards & Associates, A.P.C.
Name

P.O. Box 11480
Number   Street

Beverly Hills              CA        90213
City                           State      ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    04/06/2020
                        MM / DD / YYYY

✗ _Ronald Richards_

Official Form 205                        Involuntary Petition Against a Non-Individual                        page 4



ORIGINAL

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br>DANIEL A. LEV (CA Bar No. 129622)<br>  *dlev@sulmeyerlaw.com*<br>**Sulmeyer**Kupetz<br>A Professional Corporation<br>333 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071<br>Telephone: 213.626.2311<br>Facsimile: 213.629.4520<br>☒ *Attorney for Petitioning Creditor(s)*<br>☐ *Petitioning Creditor(s) appearing without attorney* | FOR COURT USE ONLY<br><br>**RECEIVED**<br>APR - 6 2020<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>_____ Clerk |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

| In re:<br><br>JADELLE JEWELRY AND DIAMONDS, LLC, a Delaware limited liability company,<br><br><br>Debtor(s). | CASE NO.:<br>CHAPTER: 7<br><br>**SUMMONS AND NOTICE OF STATUS CONFERENCE IN AN INVOLUNTARY BANKRUPTCY CASE** |

To the above-named debtor(s):

Pursuant to 11 U.S.C. § 303, an involuntary petition was filed on April    , 2020, in this bankruptcy court praying for the entry of an order for relief against you under chapter 7 of title 11 of the Bankruptcy Code. A copy of the involuntary petition accompanies this summons.

A status conference in the involuntary case commenced by the involuntary petition has been set for:

| Hearing Date: | Place: |
|---|---|
| Time: | ☒ 255 East Temple Street, Los Angeles, CA 90012 |
| Courtroom: | ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |
| | ☐ 3420 Twelfth Street, Riverside, CA 92501 |
| | ☐ 411 West Fourth Street, Santa Ana, CA 92701 |
| | ☐ 1415 State Street, Santa Barbara, CA 93101 |

If you wish to oppose the entry of an order for relief, you must file with the clerk of this court an answer to the involuntary petition or a motion pursuant to FRBP 1011(c) within 21 days after the date of service of this summons and attached involuntary petition, plus 3 additional days if you were served by mail. At the same time, you must also serve a copy of the answer or motion on the petitioner's attorney (or on the petitioner, if the petitioner does not have an attorney) at the address stated above. If you file a motion under FRPB 1011(c), your time to answer the petition will be governed by that rule.

EXHIBIT "5", PAGE 23

**TO THE DEBTOR:**

IF YOU FAIL TO TIMELY FILE A RESPONSE TO THIS SUMMONS, THE BANKRUPTCY COURT MAY ENTER AN ORDER FOR RELIEF IN ACCORDANCE WITH 11 U.S.C. § 303(h).

**TO THE PETITIONING CREDITOR(S):**

IF YOU FAIL TO TIMELY SERVE THE SUMMONS AND INVOLUNTARY PETITION AND/OR TO FILE PROOF OF SERVICE OF DOCUMENT THEREOF WITH THE COURT OR TO APPEAR AT THE STATUS CONFERENCE, THIS INVOLUNTARY CASE MAY BE DISMISSED IN ACCORDANCE WITH LBR 1010-1.

KATHLEEN J. CAMPBELL
CLERK OF COURT

Date: _____     By: _____
                                                Deputy Clerk

cab 2698547v1 This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                    Page 2                    **F 1010-1.SUMMONS.INVOL**

EXHIBIT "5", PAGE 24

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN AN INVOLUNTARY BANKRUPTCY CASE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Alleged Debtor
Jadelle Jewelry and Diamonds, LLC
c/o Corporate Creations Network, Inc.,
Agent for Service of Process
251 Little Falls Drive
Wilmington, DE 19808

Jadelle, Inc.
c/o Levin Prado, Agent for Service of Process
9454 Wilshire Blvd., Penthouse 01
Beverly Hills, CA 90212

Jadelle Jewelry and Diamonds, LLC
c/o Rachel Rechnitz, Managing Member
9621 Brighton Way
Beverly Hills, CA 90201

Jadelle, Inc.
c/o Rachel Rechnitz, CEO
9454 Wilshire Blvd., Penthouse 01
Beverly Hills, CA 90212

Jadelle, Inc.
c/o Rachel Rechnitz, CEO
9621 Brighton Way
Beverly Hills, Ca 90210

Jadelle, Inc.
c/o Rachel Rechnitz, CEO
5700 Wilshire Blvd., Suite 355
Los Angeles, CA 90036

☐ Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

---

cab 2698547v1 This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                    Page 3                         **F 1010-1.SUMMONS.INVOL**

EXHIBIT "5", PAGE 25

_____    _____
Date            Printed Name                    Signature

cab 2698547v1 This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                          Page 3                      **F 1010-1.SUMMONS.INVOL**

EXHIBIT "5", PAGE 26

ORIGINAL

RECEIVED
APR - 6 2020
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

B2500E (Form 2500E) (12/15)

# United States Bankruptcy Court
## Central District Of California, Los Angeles Division

In re  JADELLE JEWELRY AND DIAMONDS, LLC,
a Delaware limited liability company          ,  )        Case No. _____
               Debtor*                         )
                                               )        Chapter  7  _____
                                               )
                                               )

## SUMMONS TO DEBTOR IN INVOLUNTARY CASE

To the above named debtor:

       A petition under title 11, United States Code was filed against you in this bankruptcy court on
April 6, 2020          (date), requesting an order for relief under chapter  7      of the Bankruptcy
Code (title 11 of the United States Code).

       YOU ARE SUMMONED and required to file with the clerk of the bankruptcy court a motion
or answer to the petition within 21 days after the service of this summons.  A copy of the petition is
attached.

             Address of the clerk:
             255 E. Temple Street
             Los Angeles, CA 90012

At the same time, you must also serve a copy of your motion or answer on petitioner's attorney.

             Name and Address of Petitioner's Attorney:
             Daniel A. Lev
             **Sulmeyer**Kupetz, A Professional Corporation
             333 South Grand Avenue, Suite 3400
             Los Angeles, CA 90071
If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 1011(c).

If you fail to respond to this summons, the order for relief will be entered.


                    _____  (Clerk of the Bankruptcy Court)

        Date: _____      By: _____ (Deputy Clerk)



* Set forth all names, including trade names, used by the debtor within the last 8 years. (Fed. R .Bankr. P. 1005).

cab 2698550v1


American LegalNet, Inc.
www.FormsWorkFlow.com

EXHIBIT "5", PAGE 27

B2500E (Form 2500E) (12/15)

## CERTIFICATE OF SERVICE

I, _____ (name), certify that on _____
(date), I served this summons and a copy of the involuntary petition on _____
(name), the debtor in this case, by *[describe the mode of service and the address at which the debtor was served]*:

If service was made by personal service, by residence service, or pursuant to state law, I further certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.

Under penalty of perjury, I declare that the foregoing is true and correct.

Date _____    Signature _____

Print Name:    _____

Business Address:    _____

_____

cab 2698550v1



# EXHIBIT "6"

**SMILEY WANG-EKVALL, LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:    714 445-1000
Facsimile:    714 445-1002

Attorneys for Jadelle Jewelry and Diamonds, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>JADELLE JEWELRY AND DIAMONDS, LLC,<br><br>         Putative Debtor. | Case No. 2:20-bk-13530-BR<br><br>Chapter 7<br><br>**PUTATIVE DEBTOR'S MOTION TO DISMISS INVOLUNTARY PETITION AND REQUEST FOR ATTORNEY'S FEES, COSTS, AND DAMAGES; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**[Request for Judicial Notice Filed Concurrently Herewith]**<br><br>**DATE:   June 9, 2020**<br>**TIME:   10:00 a.m.**<br>**CTRM:  1668**<br>        **255 E. Temple Street**<br>        **Los Angeles, CA 90012** |

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2822821.1

MOTION TO DISMISS
INVOLUNTARY PETITION

EXHIBIT "6", PAGE 29

## TABLE OF CONTENTS

*Page*

I.  INTRODUCTION ................................................................................................1

II.  BACKGROUND ...............................................................................................3

    A.  General Background ...............................................................................3

    B.  Victor Franco Noval ..............................................................................3

        1.  The Noval Action ........................................................................3

        2.  The Al-Sabah Action Against Noval .........................................5

        3.  The Disputes Regarding Noval's Claim ....................................6

    C.  Peter Marco, LLC ..................................................................................7

        1.  The Marco Action .......................................................................7

        2.  The Disputes Regarding Marco's Claim ....................................8

        3.  First International Diamond, Inc. ................................................9

        4.  The Disputes Regarding First International's Claim ................10

III.  A Putative Debtor May Contest an Involuntary Petition with a Motion to Dismiss...........10

IV.  The Involuntary Petition Must Be Dismissed Because the Petitioning Creditors' Alleged Claims are Subject to Bona Fide Disputes ................................................................12

    A.  Whether a Bona Fide Dispute Exists is Determined by an Objective Standard.........................................................................12

    B.  Ninth Circuit Law—A Dispute as to Any Portion of a Claim Disqualifies the Petitioning Creditor .................................................13

V.  Noval's Alleged Claim is Subject to Bona Fide Disputes ...............................14

VI.  Marco's Alleged Claim is Subject to Bona Fide Disputes ..............................16

VII.  First International's Alleged Claim is Subject to a Bona Fide Dispute .................................18

VIII.  THE INVOLUNTARY PETITION MUST BE DISMISSED BECAUSE THE PETITIONING CREDITORS FILED THE PETITION IN BAD FAITH .......................19

IX.  JADELLE IS ENTITLED TO ATTORNEY'S FEES AND COSTS, AND DAMAGES ................................................................................................22

X.  CONCLUSION ................................................................................................24

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2822821.1

i

MOTION TO DISMISS
INVOLUNTARY PETITION

EXHIBIT "6", PAGE 30

## TABLE OF AUTHORITIES

**Page**

### CASES

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ...................................................... 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-557 (2007) ...................................................... 10

*Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1186 (9th Cir. 2019) ...................................... 12, 13, 15

*Fustolo v. 50 Thomas Patton Drive, LLC*, 816 F.3d 1, 10 (1st Cir. 2016) ............................ 13

*Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 707 (9th Cir. 2004) ..................... 19, 21, 22

*In re BDC*, 56 LLC,  330 F.3d 111 (2d Cir. 2003) ............................................ 12

*In re Bimini Island Air, Inc., 370 B.R. 408, 413 (Bankr. S.D. Fla. 2007)* ......................................12

*In re Green Hills Dev. Co.*, 741 F.3d 651, 659, 660 (5th Cir. 2014) ........................................ 12, 13

*In re John Richards Homes Bldg. Co.*, 439 F.3d 248 (6th Cir. 2006) ............................ 19

*In re Mi La Sul*, 380 B.R. 546 (Bankr. C.D. 2007) ............................................ 19

*In re Mountain Diaries, Inc.*, 372 B.R. 623 (Bankr. S.D.N.Y. 2007) ............................ 19

*In re Reid,* 773 F.2d 945, 946 (7th Cir. 1985) ............................................ 19

*In re Seko Inv., Inc.*, 156 F.3d 1005, 1007-08 (9th Cir. 1998) ................................ 13

*In re Spade*, 269 B.R. 225 (D. Colo. 2001) ............................................ 19

*In re TPG Troy, LLC*, 492 B.R. 150, 159-60 (Bankr. S.D.N.Y. 2013) ............................ 12

*In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057 (9th Cir. 2001) ............................ 12

*In re Wavelength, Inc.*, 61 B.R. 614 (B.A.P. 9th Cir. 1986) ............................ 19

*In re WLB-RSK Venture*, 296 B.R. 509 (Bankr. C.D.Cal. 2003) ........................ 18, 19

*In the Matter of Smith*, 243 B.R. 169 (Bankr. N.D. Ga. 1999) ............................ 19, 20

*Martinez v. Bally's Louisiana, Inc.*,244 F.3d 474 (5th Cir. 2001) ........................ 11

*Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001) ............................ 10

*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ............................ 11

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## STATUTES

11 U.S.C. § 105 ..................................................................................................... 18

11 U.S.C. § 105(a) ................................................................................................. 18

11 U.S.C. § 303 ........................................................................................... 12, 13, 21

11 U.S.C. § 303(i)(2) ............................................................................................. 18

11 U.S.C. § 305(a)(1) ............................................................................................ 21

11 U.S.C. § 303(b) ................................................................................................. 11

11 U.S.C. § 303(b)(1) ....................................................................................... 13, 18

California Business & Professions Code § 17200 ................................................ 7


## OTHER AUTHORITIES

*Bankruptcy Evidence Manual* § 801.22 (2009-2010 ed., vol. 2). .................... 11

Miller and Star, Cal. Real Estate § 37.42 (4th ed.) ........................................... 15


## RULES

Fed. R. Bankr. P. 1011 ........................................................................................... 3

Fed. R. Bankr. P. 1011(b) ..................................................................................... 10

Fed. R. Bankr. P. 9006(f) ....................................................................................... 3

Federal Rule of Civil Procedure ("Rule") 12 ....................................... 10, 15, 17

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 10

Fed. R. Civ. P. 8 .................................................................................................... 10

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

Jadelle Jewelry and Diamonds, LLC, the putative debtor ("Jadelle"), hereby submits this *Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs and Damages* (the "Motion") in response to the involuntary petition filed by First International Diamond, Inc., Peter Marco, LLC, and Victor Franco Noval (collectively, the "Petitioning Creditors"). In support of the Motion, Jadelle submits the following memorandum of points and authorities and the concurrently filed Request for Judicial Notice ("RJN").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This case should be dismissed because, under binding Ninth Circuit law, the Petitioning Creditors are not eligible to commence it.

**A creditor whose claim is the subject of a bona fide dispute as to amount lacks standing to serve as a petitioning creditor under § 303(b)(1) even if a portion of the claim amount is undisputed.**

*Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1186 (9th Cir. 2019). A petitioning creditor is ineligible if *any portion* of its claim is subject to a bona fide dispute, even if some amount of the claim is undisputed. As detailed herein, each Petitioning Creditor's claim is subject to multiple disputes, any single one of which disqualifies the Petitioning Creditor.

The Petitioning Creditors' claims are the subject of pending litigation in other forums. Courts hold that the existence of pending, contested litigation is, on its own, evidence that bona fide disputes exist. Two of the Petitioning Creditors recently commenced suits against Jadelle and it is clear on the face of their complaints that the alleged claims of all three Petitioning Creditors are subject to bona fide disputes as to both amount and liability. Among other disputes, the Petitioning Creditors take inconsistent positions regarding the amounts of their alleged claims, fail to account for payments received, seek amounts that Jadelle simply does not owe as a matter of law, and allege unspecified damages "*to be proven at trial*" that have yet to be quantified or adjudicated. Moreover, two Petitioning Creditors are seeking to collect, in part, the *very same*

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "6", PAGE 33

*claim.*  In short, numerous disputes exist and no amount of mud that the Petitioning Creditors will inevitably sling at Jadelle will change this fact.

The Petitioning Creditors carry the heavy burden of demonstrating the absence of a bona fide dispute.  This Court's role is not to resolve the underlying disputes between the parties or to determine the amounts of the alleged claims.  Rather, the Court is to confirm only that "legitimate disputes" exist.  The Petitioning Creditors simply cannot satisfy their high burden of demonstrating that their claims are not subject to any bona fide disputes of law or fact and as to either liability or amount.

The involuntary petition should also be dismissed because it was filed in bad faith and for an improper purpose.  Involuntary cases are to be measures "of last resort" and pursued *after* parties exhaust their state law remedies.  The parties are involved in complex, multi-party litigation currently pending in different forums that is in its earliest stages.  The parties' disputes must first be adjudicated elsewhere, not here.  The Petitioning Creditors, apparently unhappy with the progress in their chosen forums, seek to avoid an adjudication on the merits and leverage the payment of their disputed claims.  This is bad faith.

Bad faith warranting dismissal exists for multiple reasons.  The Petitioning Creditors commenced this case with claims that are clearly in dispute, which renders them ineligible.  The Petitioning Creditors are using the bankruptcy process as a litigation and collection tactic to leverage the payment of amounts that Jadelle does not owe.  The pending lawsuits demonstrate that state law remedies exist and have not been exhausted.  The Petitioning Creditors are forum shopping; filing this case shortly after one lawsuit was temporarily stayed pending a hearing on the defendants' motion for a stay on 5th Amendment grounds.  The Petitioning Creditors are attempting to circumvent pending court proceedings and Jadelle's constitutional rights.  This involuntary case is the exact type of filing that the safeguards in the Bankruptcy Code are designed to prevent—creditors with disputed claims are not eligible for the extraordinary relief of pushing a business into bankruptcy against its will.  Bankruptcy courts routinely dismiss involuntary cases under these types of circumstances, and this Court should do so here.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2822821.1

2

MOTION TO DISMISS
INVOLUNTARY PETITION

For these reasons and as further detailed below, Jadelle respectfully requests that the Court immediately dismiss the involuntary petition and award Jadelle attorney's fees, costs and compensatory and punitive damages.

## II.    BACKGROUND

### A.    General Background

Jadelle is a Delaware limited liability company.  Rachel Rechnitz is Jadelle's managing member.  Jona Rechnitz is Rachel's husband.

On April 6, 2020, the Petitioning Creditors filed an involuntary chapter 7 petition against Jadelle [Docket No. 1] (the "Involuntary Petition").  Through the Involuntary Petition, the Petitioning Creditors alleged claims against Jadelle under penalty of perjury in the following amounts:

| Name of Petitioner | Claim Amount |
|---|---|
| Victor Franco Noval | $5,800,000 |
| Peter Marco, LLC | $7,676,744 |
| First International Diamond, Inc. | $1,976,225 |

(*See* RJN, Ex. 1 at Bates Stamp 7.)

A response to the Involuntary Petition is due within 21 days of service, plus three additional days if service was by mail.  *See* Fed. R. Bankr. P. 1011 & 9006(f).  Here, the Petitioning Creditors served the Involuntary Petition via mail, and, as a result, Jadelle's response is due on May 1, 2020.

### B.    Victor Franco Noval

#### 1.    The Noval Action

On February 10, 2020, Victor Franco Noval ("Noval") filed a complaint in the Superior Court of the State of California against Jadelle and five other defendants (the "Noval Action").  A true and correct copy of the complaint filed in the Noval Action is attached to the RJN as Exhibit "2" (the "Noval Complaint").  Noval asserts the following causes of action against the defendants:

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   (1) fraud; (2) civil theft; (3) breach of contract; and (4) conspiracy to commit theft, fraud, and

2   fraud by concealment.  (*See* RJN, Ex. 2 at Bates Stamps 29-32.)  Despite listing his claim in the

3   amount of $5.8 million in the Involuntary Petition, in the Noval Complaint, Noval requests

4   damages "in an amount to be proven at trial, but at least $7,000,000," including compensatory

5   damages, treble damages, attorneys' fees, costs of suit, and punitive damages.  (*See id.* at Bates

6   Stamp 30, ¶ 69, and Bates Stamp 33.)  Noval also seeks a constructive trust concerning certain

7   property and the appointment of a receiver.  (*See id.*)

8       In the Noval Complaint, Noval alleges that Jadelle owes him a debt pursuant to a Debt

9   Acknowledgment, Promissory Note and Security Agreement, which is attached to the Noval

10  Complaint as Exhibit "A" (the "Noval Agreement").  (*See* RJN, Ex. 2 at Bates Stamp 32, ¶ 76.)

11  According to the Noval Agreement, Noval loaned Jadelle $2.85 million at 9% interest *per annum*.

12  (*See id.* at Bates Stamp 37.)  The Noval Agreement provides that the monthly interest-only

13  payments were to begin on April 1, 2019 and the maturity date for each installment was six

14  months after such installment was advanced.  (*See id.*)  The Noval Agreement states that the $2.85

15  million loan is secured by unspecified jewelry and a pledge of a 2012 Bugatti vehicle valued at

16  $400,000.  (*See id.* at Bates Stamps 37-38.)  According to the Noval Complaint, the $7,000,000 in

17  purported damages constitutes the value of collateral given to Noval for the loans in the Noval

18  Agreement.  (*See id.* at Bates Stamp 24, ¶ 29.)

19      Noval alleges that "[t]he original principal amount in the Debt Agreement is $2,850,000 at

20  9% interest per month, however, the total debt owed by Defendants later increased to $5,800,000."

21  (*See* RJN, Ex. 2 at Bates Stamp 22, ¶ 15.)  However, nowhere in the Noval Complaint does Noval

22  specify how he calculated the alleged debt of $5.8 million.  (*See generally, id.* at Bates Stamps 18-

23  33.)  Noval does not explain the nature or terms of the amounts in excess of the loans set forth in

24  the Noval Agreement other than to say that the debt grew after a series of further advance

25  transactions.  (*See id.* at Bates Stamps 22, ¶ 15 & 23, ¶ 17.)  In the Noval Complaint, Noval

26  concedes that the Bugatti vehicle was liquidated and alleges that the proceeds were credited

27  against the principal debt in the amount of $400,000.  (*See id.* at ¶ 18.)

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2822821.1

4

MOTION TO DISMISS
INVOLUNTARY PETITION

1  Noval asserts that he filed the Noval Complaint not because he expects to recover

2  anything, but because he wants to encourage criminal proceedings against the defendants.  (*See,*

3  *e.g.*, RJN, Ex. 2 at Bates Stamp 27, ¶ 49, "At this point, Plaintiff has no realistic belief that

4  Rechnitz will ever pay him back . . . ."; *see also id.* at Bates Stamp 29, ¶ 53, "Plaintiff is hopeful

5  that the publication of this action will cause more victims . . . to report these matters to proper

6  authorities.")

7  **2.    The Temporary Stay of the Noval Action**

8  On March 10, 2020, the court in the Noval Action entered an order temporarily staying the

9  case pending the hearing on the defendants' motion for a stay of proceedings.  (*See* RJN Ex. 4,

10  Minute Order, at Bates Stamp 56.)  The Defendants sought a stay to protect their constitutional

11  rights because, as set forth in the Noval Complaint, Noval seeks to encourage criminal

12  proceedings and there is now an ongoing criminal investigation.  The hearing on the motion for

13  stay of proceedings is currently set for November 3, 2020.  (*See* RJN Ex. 3, Noval Action Docket,

14  at Bates Stamp 53.)  The time to respond to the Noval Complaint has not yet passed as of the date

15  of this filing.

16  **3.    The Al-Sabah Action Against Noval**

17  On November 25, 2019, Khaled J. Al-Sabah and Jarrah Khaled Al-Sabah (the "Al-

18  Sabahs") commenced an action in the Superior Court of the State of California against Noval and

19  other defendants (the "Al-Sabah Action").  On April 6, 2020, the Al-Sabah Plaintiffs filed a

20  motion for leave to file a first amended complaint (the "Proposed Al-Sabah First Amended

21  Complaint").   A true and correct copy of relevant excerpts of the Proposed Al-Sabah First

22  Amended Complaint is attached to the RJN as Exhibit "5."

23  Through the Proposed Al-Sabah First Amended Complaint, the Al-Sabahs seek leave to

24  add Jadelle and others as defendants to the Al-Sabah Action.  (*See* RJN, Ex. 5 at Bates Stamp 66.)

25  The primary thrust of the Al-Sabah Action is that Noval's father, Victorino Noval ("Victorino"),

26  and Noval defrauded the Al-Sabahs out of $163 million.  (*See id.* at Bates Stamp 69, ¶ 346.)  In

27  the proposed twenty-eighth cause of action, the Al-Sabahs allege that the monies loaned by Noval

28  to Jadelle and referenced in the Noval Agreement were the monies wrongfully obtained by

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  Victorino and Noval from the Al-Sabahs.  (*See id.* at Bates Stamp 68, ¶ 339.)  Moreover, the Al-

2  Sabahs argue that monies loaned by Noval to Jadelle are property of the Al-Sabahs, and not

3  Noval.  (*See id.* at Bates Stamps 69-70, ¶ 347.)  A few of the relevant allegations are as follows:

4  •  "Khaled . . . alleges, that each and every dollar that the Jadelle Entities borrowed

5  from Victorino and Franco pursuant to the written agreement was funded by the

6  above referenced monies belonging to Khaled which have been wrongly and

7  illegally obtained by Victorino, Franco and the other conspiring Defendants. . . ."

8  (*Id.* at Bates Stamp 68, ¶ 339.)

9  •  "Khaled is further informed and believes that the original principal amount

10  borrowed by the Jadelle Entities was $2,850,000, that the loan was secured by

11  $7,000,000 worth of diamonds delivered to Franco and Victorino, as well as a 2012

12  Bugatti, and that after a series of transactions, the debt on the loan grew to

13  $5,800,000."  (*Id.* at Bates Stamp 68, ¶ 340.)

14  •  "Khaled disputes Franco's and Victorino's claim for damages in the Rechnitz

15  Lawsuit, while any damages Franco and Victorino attempt to recover from the

16  Rechnitz Defendants in the Rechnitz Lawsuit . . . are the legal possession of

17  Khaled."  (*Id.* at Bates Stamp 69-70, ¶ 347.)

18  **4.      The Disputes Regarding Noval's Claim**

19  As further detailed and analyzed below, the disputes concerning Noval's claim include the

20  following:

21  1.      Noval seeks damages that are disputed and have yet to be quantified or proven (*e.g.*

22  according to Noval, at least $7 million to be proven at trial plus additional

23  amounts);

24  2.      Jadelle made re-payments to Noval that are not reflected in his claim;

25  3.      Noval's claim has not been reduced by the $400,000 he received on account of the

26  Bugatti;

27  4.      Noval has not explained how he calculated the alleged amount of $5,800,000;

28

5.  Noval has not demonstrated the terms of amounts in excess of the Noval

Agreement and that such amounts are now due;

6.  Noval is charging usurious interest; and

7.  The Al-Sabahs assert that any amounts allegedly owed by Jadelle to Noval is their

property.

**C.    Peter Marco, LLC**

**1.    The Marco Action**

On March 18, 2020, David Rovinsky Inc. ("Rovinsky") filed a complaint against Peter

Marco LLC ("Marco") and Peter Voutsas in the United States District Court for the Central

District of California asserting the following causes of action: (1) negligence; (2) conversion; (3)

fraud; (4) negligent misrepresentation; (5) civil theft; and (6) aiding and abetting conversion and

civil theft (the "Marco Action").  Rovinsky seeks damages of $1.13 million.  (*See* RJN, Ex. 7 at

Bates Stamp 93, ¶ 21.)

On April 24, 2020, *seven days after the Involuntary Petition was filed*, Marco filed an

amended third party complaint (the "Marco Complaint") against Jona Rechnitz, Rachel Rechnitz,

and Levin Prado (collectively, the "Marco Complaint Defendants").  A true copy of the Marco

Complaint is attached to the RJN as Exhibit "7."  Marco asserts the following causes of action: (1)

fraud; (2) civil theft; (3) embezzlement; (4) civil conspiracy to commit theft, fraud, and fraud by

concealment; (5) conversion; (6) breach of contract; (7) breach of the implied covenant of good

faith and fair dealing; (8) account stated; and (9) unethical business practices in violation of

California Business & Professions Code § 17200.  (*See* RJN, Ex. 7 at Bates Stamps 117-128.)

Despite listing his claim in the amount of $7,676,744 in the Involuntary Petition, in the Marco

Complaint, Marco requests damages of $6,950,444.40 but subject to proof at trial, including

compensatory damages, treble damages, attorneys' fees, costs of suit, and punitive damages.  (*See*

*id.* at Bates Stamp 117, ¶ 90.)

Marco did not name Jadelle as a defendant in the Marco Complaint.  (*See id.* at Bates

Stamp 89.)  Marco alleges that he excluded Jadelle due to the automatic stay and that he intends to

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    pursue his disputed litigation claims against Jadelle before this Court  (*See id.* at Bates Stamp 91, ¶

2    10.)

3            Marco alleges that he consigned jewelry to Jona Rechnitz and that Mr. Rechnitz absconded

4    with the consigned jewelry.  (*See generally, id.* at Bates Stamps 119-120, ¶ 103, alleging that

5    "Jona swindled Marco . . . by absconding with Marco's Consigned Jewelry. . . .")  Specifically,

6    Marco alleges that he consigned sixteen pieces of jewelry *to Mr. Rechnitz*, **not Jadelle**, and he

7    includes a table listing the stated values in the total amount of $6,950,444.40.  (*See id.* at Bates

8    Stamp 99, ¶ 33, "Accordingly, Marco LLC consigned the following pieces of Consigned Jewelry

9    *to Rechnitz.*" (emphasis added); *see also id.* at Bates Stamp 100, ¶ 35, "Marco LLC consigned

10    Rovinsky's Ring & Necklace *to Rechnitz.*" (emphasis added); *id.* at Bates Stamp 118, ¶ 95, "***Jona***

11    ***and Third-Party Defendants*** have obtained and received property from Marco, the $6,950,444.40

12    of Consigned Jewelry. . . ." (emphasis added).)  Marco also admits that Marco asserted the wrong

13    claim amount in the Involuntary Petition:  "The petitioning creditors are . . . Peter Marco, LLC,

14    with Trade Debt/Damages of $7,676,744.00 (**The correct amount is $6,950,444.40**)."  (*See id.* at

15    Bates Stamp 91, ¶ 9.)

16            The time to respond to the Marco Complaint has not yet passed as of the date of this filing.

17    A true copy of the docket in the Marco Action is attached to the RJN as Exhibit "8."

18            **2.**        **The Disputes Regarding Marco's Claim**

19            As further detailed and analyzed below, the disputes concerning Marco's claim include the

20    following:

21            1.        According to Marco, Marco consigned jewelry to Mr. Rechnitz, as opposed to

22                    Jadelle;

23            2.        Marco seeks damages that that are disputed and have yet to be quantified or proven

24                    (*e.g.* according to Marco, an amount to be proven at trial, but at least

25                    $6,950,444.40, plus additional amounts, such as punitive damages, interest and

26                    attorney's fees);

27            3.        Marco and the third petitioning creditor, First International Diamond, Inc. ("First

28                    International") are pursuing Jadelle, in part, for the same exact claim;

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2822821.1

8

MOTION TO DISMISS
INVOLUNTARY PETITION

4.     Marco's list of items allegedly consigned are subject to multiple disputes, including, without limitation, on the basis that certain items were never consigned or received and memos to the contrary appear to have been fabricated, certain items were provided to customers with Marco's knowledge and permission and are still with those customers, and the stated values asserted by Marco for certain consigned items are incorrect;

5.     Marco was previously paid by Jadelle for one particular item; and

6.     For the items owned by Rovinsky, Marco seeks to collect amounts in excess of the damages sought by Rovinsky.

### 3.     First International Diamond, Inc.

First International alleged a claim for $1,976,225. First International has not commenced any litigation against Jadelle for this claim and it is not entirely clear how First International calculated its claim. However, Jadelle disputes that First International is owed the amount in the Involuntary Petition. It is Jadelle's understanding that First International's claim arises from three different consigned sets of jewelry:

First, Marco's alleged claim includes a stone owned by First International at the stated value of $1,333,695.00. (*See* RJN, Ex. 7 at Bates Stamp 100, lines 9-10.) However, Jadelle understands that First International's claim is primarily based on the consignment of this same stone with a stated value of $1,200,000. Marco and First International are attempting to collect, in part, on the same claim and this claim is already the subject of the pending Marco Action. This is a fact that both Petitioning Creditors must recognize.

Second, First International consigned three rings and a bracelet with a stated collective value of approximately $1,000,000. Jadelle understands that First International later reacquired the items from a third party for $300,000.

Third, First International consigned a stone with a stated value of $950,000. Jadelle understands that First International later paid $440,000 to reacquire the stone, *plus* purchase other jewelry, which was owned by another party and not First International.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

MOTION TO DISMISS
INVOLUNTARY PETITION

EXHIBIT "6", PAGE 41

### 4.    The Disputes Regarding First International's Claim

As further detailed and analyzed below, the disputes concerning First International's claim include the following:

1.    It is not entirely clear how First International calculated its claim based on the items discussed above;

2.    First International and Marco are pursuing Jadelle, in part, for the same exact claim and any alleged damage arising from that claim is subject to proof and in dispute;

3.    First International seems to assert a claim based on the stated value for certain items, as opposed to the actual cost that First International paid to reacquire those items; and

4.    First International's claim should not include amounts that it paid to acquire jewelry that did not belong to it, and Jadelle should be credited for the value of those items.

### III.    A PUTATIVE DEBTOR MAY CONTEST AN INVOLUNTARY PETITION WITH A RULE 12 MOTION TO DISMISS

Pursuant to the Federal Rules of Bankruptcy Procedure, an alleged debtor may answer and contest an involuntary petition in the manner prescribed by Federal Rule of Civil Procedure ("Rule") 12. *See* Fed. R. Bank. P. 1011(b).  Rule 12 provides for the service of an answer or the filing of several dispositive motions, including motions to dismiss pursuant to Rule 12(b).

Rule 12(b)(6) tests the legal sufficiency of the averments in the complaint—here, the involuntary petition.  A complaint shall be dismissed when it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  This occurs when a plaintiff's complaint fails to provide grounds for his or her entitlement to relief.  *See* Fed. R. Civ. P. 8; *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-557 (2007).  A plaintiff must allege sufficient facts to support a cognizable legal theory.  *See Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001).

In evaluating the sufficiency of a complaint, the United States Supreme Court employs a two-pronged approach.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  First, the Supreme Court identifies and then disregards any legal conclusions as they are not entitled to an assumption of

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2822821.1

10

MOTION TO DISMISS
INVOLUNTARY PETITION

1  truth. *See id.* at 678 & 680-81.  Mere "labels and conclusions" and/or "formulaic recitation[s] of

2  the elements of a cause of action" will not suffice to overcome a motion to dismiss.  *See Twombly*,

3  550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of

4  action, supported by mere conclusory statements, do not suffice.").  Second, the Supreme Court

5  evaluates whether the non-conclusory factual allegations support a plausible entitlement to relief.

6  *See Iqbal* at 681.  "A claim has facial plausibility when the plaintiff pleads factual content that

7  allows the court to draw the reasonable inference that the defendant is liable for the misconduct

8  alleged." *Id.* at 678 (internal citations omitted). "Factual allegations must be enough to raise a

9  right to relief above the speculative level. . . ." *Twombly*, 550 U.S. at 555.

10        In deciding a motion to dismiss, a court may consider certain documents as part of the

11  complaint.  A court may consider "documents attached to the complaint, documents incorporated

12  by reference in the complaint, or matters of judicial notice. . . ." *See United States v. Ritchie*, 342

13  F.3d 903, 908 (9th Cir. 2003).  "Even if a document is not attached to a complaint, it may be

14  incorporated by reference into a complaint if the plaintiff refers extensively to the document or the

15  document forms the basis of the plaintiff's claim." *Id.*

16        Factual assertions in pleadings are "judicial admissions binding on the party who made

17  them." *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).  Judicial

18  admissions "have the effect of withdrawing a fact from issue and dispensing wholly with the need

19  for proof of the fact." *Id.*  Also, unlike ordinary evidentiary admissions, judicial admissions

20  cannot be refuted with evidence or otherwise.  In sum, a judicial admission is conclusive, binding,

21  and may not be controverted or explained by the party who made it.  *See Lacelaw Corp.*, 861 F.2d

22  at 226; *see also Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476-77 (5th Cir. 2001); Hon.

23  Barry Russell, *Bankruptcy Evidence Manual* § 801.22 (2009-2010 ed., vol. 2).

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2822821.1

11

MOTION TO DISMISS
INVOLUNTARY PETITION

**IV.  THE INVOLUNTARY PETITION MUST BE DISMISSED BECAUSE THE PETITIONING CREDITORS' ALLEGED CLAIMS ARE SUBJECT TO BONA FIDE DISPUTES**

Here, the case must be dismissed for multiples reasons, including, but not limited to, the fact that the Petitioning Creditors are not eligible to commence this case as required by 11 U.S.C. § 303(b).[1]

Section 303(b) of the Bankruptcy Code provides that:

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> (1) by three or more entities, *each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount,* or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $16,750 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $16,750 of such claims.

11 U.S.C. § 303(b) (emphasis added).

**A.  Whether a Bona Fide Dispute Exists is Determined by an Objective Standard**

A claim is subject to a bona fide dispute if "there is an objective basis for either a factual or legal dispute as to the validity of the debt." *See In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1064 (9th Cir. 2001).  Importantly, in the Ninth Circuit, "[a] bankruptcy court is not asked to evaluate the potential outcome of a dispute, but merely to determine whether there are facts that give rise to a *legitimate disagreement* over whether money is owed, or, in certain cases, how much." *See id.* (emphasis added); *see also In re BDC*, 56 LLC  330 F.3d 111, 117-18 (2d Cir. 2003) ("The legislative history makes it clear that Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is

---

[1]  For purposes of this Motion, Jadelle has focused on certain disputes concerning the claims of the Petitioning Creditors.  However, Jadelle also disputes other elements the Petitioning Creditors must prove for the entry of an order for relief.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  factual or legal. Congress plainly did not intend to require a debtor to pay a legitimately disputed

2  debt simply to avoid the stigma of bankruptcy.")  "[T]he burden is on the petitioning creditors to

3  show that no bona fide dispute exists."  *See In re Vortex Fishing Systems, Inc.*, 277 F.3d at 1064;

4  *In re Bimini Island Air, Inc.*, 370 B.R. 408, 413 (Bankr. S.D. Fla. 2007).

5     **"Bankruptcy courts routinely consider the existence and character of pending but**

6  **unresolved litigation as evidence of a bona fide dispute."**  *In re Green Hills Dev. Co., L.L.C.*,

7  741 F.3d 651, 659 (5th Cir. 2014); *see also In re TPG Troy, LLC*, 492 B.R. 150, 159-60 (Bankr.

8  S.D.N.Y. 2013), *subsequently aff'd*, 793 F.3d 228 (2d Cir. 2015) (stating that courts have held that

9  the existence of pending litigation strongly suggests the existence of a bona fide dispute).

10    **B.    Ninth Circuit Law—A Dispute as to Any Portion of a Claim Disqualifies the**

11    **Petitioning Creditor**

12     The Ninth Circuit made clear that a dispute as to any portion of a claim disqualifies the

13  petitioning creditor.  In *Blixseth,* the Ninth Circuit held unequivocally as follows:

14        A creditor whose claim is the subject of a bona fide dispute as to
          amount lacks standing to serve as a petitioning creditor under
15        § 303(b)(1) *even if a portion of the claim amount is undisputed.*"

16  *Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1186 (9th Cir. 2019) (emphasis added); *see also*

17  *Fustolo v. 50 Thomas Patton Drive, LLC*, 816 F.3d 1, 10 (1st Cir. 2016); *In re Green Hills Dev.*

18  *Co.*, 741 F.3d 651, 660 (5th Cir. 2014).

19     The Ninth Circuit specifically rejected the argument that a creditor with a partially

20  undisputed claim should not be disqualified as a petitioning creditor.  *See Blixseth*, 942 F.3d at

21  1186-87.  The Ninth Circuit emphasized that creditors should not be permitted to use any

22  concession or undisputed portion to leverage the collection of the disputed amount.  *See id.* at

23  1186-87; *see also In re Seko Inv., Inc.*, 156 F.3d 1005, 1007-08 (9th Cir. 1998) (Section 303(b)(1)

24  "aim[s] to prevent creditors from using the threat of an involuntary petition to bully an alleged

25  debtor into settling a speculative or validly disputed debt.").

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2822821.1

13

**V.      THE PETITIONING CREDITORS' CLAIMS ARE SUBJECT TO MULTIPLE DISPUTES**

The Petitioning Creditors have not and cannot satisfy their high burden of demonstrating that their claims are not subject to bona fide disputes as to fact or law and as to either liability or amount.  While many disputes exist, the disputes demonstrated by pleadings subject to judicial notice are sufficient to disqualify each of the Petitioning Creditors.  Moreover, as discussed above, the existence of pending litigation, in and of itself, is evidence of bona fide disputes.

**A.      Noval's Alleged Claim is Subject to Bona Fide Disputes**

Noval's alleged $5.8 million claim is subject to several bona fide disputes.  Each dispute on its own disqualifies Noval as a petitioning creditor.

First, Noval has not yet quantified or proven his alleged damages.  The Noval Complaint is a judicial admission that the amount of Noval's alleged claim is subject to a bona fide dispute. According to Noval, his claim is uncertain and has yet to be stated, liquidated and quantified. Noval seeks damages to "be proven at trial. . . ."  (*See, e.g.*, RJN, Ex. 2 at Bates Stamp 30, ¶ 60.) In addition, Noval seeks other types of unquantified damages, such as treble damages, attorney's fees, costs of suit, and punitive damages.  (*See id.* at Bates Stamp 33.)  By Noval's own admission, Noval's entitlement to damages and the amounts he ultimately seeks *have yet to be proven* (and over Jadelle's defense).

Second, as a matter of law, Noval is not entitled to $7 million.  Under no circumstances would Noval be paid this sum.  As set forth in the Noval Complaint, the unspecified jewelry was *collateral*.  (*See id.* at Bates Stamp 24, ¶ 60.)  Like any other lender, at most, Noval is owed the amounts loaned, plus the agreed to interest (subject to the other disputes herein).  A lender is not entitled to the surplus from any collateral in excess of the amounts needed to pay the loan.  Rather, any surplus is returned to the borrower.  Thus, for this reason, Noval's asserted claim of $7 million is subject to bona fide dispute.

Third, Noval has filed conflicting statements under penalty of perjury regarding the amount of his claim.  According to the (verified) Noval Complaint, Noval asserts that his claim is *at least* $7 million.  (*See, e.g.*, RJN, Ex. 2 at Bates Stamp 30, ¶ 60; *see also id.* at Bates Stamp 35.)

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

MOTION TO DISMISS
INVOLUNTARY PETITION

EXHIBIT "6", PAGE 46

1   However, the Involuntary Petition, which is signed under penalty of perjury, states he is owed

2   only $5.8 million.  These conflicting admissions prove that that amount of Noval's claim is in bona

3   fide dispute.

4        Noval's apparent attempt to sidestep disputes concerning his claim by listing a different,

5   lower amount in the Involuntary Petition does not render him eligible.  Noval is taking

6   inconsistent positions in two different forums.  Noval's complaint proves that, on the one hand, he

7   is trying to recover at least $7 million, plus more in the Noval Action, while, on the other hand, he

8   attempts to force Jadelle into bankruptcy by representing he has a much lower claim.  However,

9   Noval cannot avoid Ninth Circuit precedent.  The Ninth Circuit's decision in *Blixseth* prevents this

10   type of maneuver.  The fact remains that Noval's claim is in bona fide dispute.  Contrary to the

11   Involuntary Petition, Noval is not asserting a claim of only $5.8 million, but of millions more.

12   Besides, as explained herein, Jadelle disputes that Noval is owed even $5.8 million.

13        Fourth, Noval's claim is disputed because it does not account for payments made by

14   Jadelle.  In the Noval Complaint, Noval claims that he liquidated the Bugatti vehicle, received

15   proceeds of $400,000, and applied the proceeds against the debt allegedly owed.  (*See* RJN, Ex. 2

16   at Bates Stamp 23, ¶ 18.)  Yet, it appears that neither the Involuntary Petition nor the Noval

17   Complaint actually reflect a $400,000 reduction to Noval's claim.  This is in addition to payments

18   made by Jadelle.  Thus, from the Noval Complaint alone, there are legitimate, bona fide disputes

19   over the amount of Noval's claim against Jadelle.

20        Fifth, Noval has not substantiated the amount and terms of his claim.  To the extent Noval

21   asserts that he is owed $5.8 million, he has not explained how he calculated that sum.  The Noval

22   Agreement reflects loans totaling only $2.85 million and the terms of repayment for *those loans*.

23   (*See* RJN, Ex. 2 at Bates Stamp 37.)  Noval's assertion that the maturity dates for advances in

24   excess of the amounts set forth in the Noval Agreement are reflected in the Noval Agreement is

25   directly contradicted by the terms of that agreement.  (*Compare id.* at Bates Stamp 22, ¶ 15 & 23,

26   ¶ 17; *with id.* at Bates Stamp 37, § 3, stating the maturity date is based on the date of each advance

27   set forth in § 1.)  Noval has not demonstrated the terms of amounts in excess of the Noval

28   Agreement or demonstrated that such amounts are currently due.  In addition to disputes

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2822821.1

15

MOTION TO DISMISS
INVOLUNTARY PETITION

1  concerning the amounts subject to the Noval Agreement, Jadelle disputes that any amounts in
2  excess of the Noval Agreement are due.

3       Sixth, Noval is charging usurious interest.  Noval claims to be charging "9% interest **per**
4  **month**[.]"  (*See* RJN, Ex. 2 at Bates Stamp 22, ¶ 15 (emphasis added).)  However, the Noval
5  Agreement specifies that the interest on the loans reflected in the agreement are to accrue interest
6  at 9% **per annum** (paid monthly).  (*See id.* at Bates Stamp 37, § 2.)  Noval's usurious interest
7  creates a host of remedies and disputes.  A borrower charged usurious rates can bring an action for
8  money paid, can recover penalty damages, can cancel future interest, and can have payments
9  applied to principal.  *See, e.g.*, Miller and Star, Cal. Real Estate § 37.42 (4th ed.) (detailing various
10  remedies).

11       Seventh, the Al-Sabah Action complicates matters further and casts Noval's claim into
12  further dispute.  As demonstrated by their complaint, the Al-Sabahs allege that amounts loaned to
13  Jadelle by Noval belong to them.  (*See* RJN, Ex. 5 at Bates Stamp 69-70, ¶ 347.)  Thus, according
14  to the Al-Sabahs, they should be paid and not Noval, and Noval has no claim against Jadelle at all.
15  (*See id.* at Bates Stamp 69-70 ¶ 347, "Khaled disputes Franco's and Victorino's claim for damages
16  in the Rechnitz Lawsuit. . . .")

17       For all of these reasons, Noval's claim is subject to multiple bona fide disputes.  The
18  majority of these disputes are demonstrated by Noval's own words in his complaint, which is
19  subject to judicial notice and is appropriate to consider on a Rule 12 motion to dismiss.
20  Accordingly, Noval is not eligible to commence the petition.

21      **B.**    **<u>Marco's Alleged Claim is Subject to Bona Fide Disputes</u>**

22       Marco's alleged claim for $7,676,744 against Jadelle is subject to bona fide disputes as to
23  both liability and amount.  Each dispute on its own disqualifies Marco as a petitioning creditor.

24       First, the Marco Complaint is a judicial admission that the amount of Marco's claim in the
25  Involuntary Petition is incorrect and, as such, is subject to a bona fide dispute.  Marco admits that
26  the amount of the $7,676,744 claim that Marco alleges in the Involuntary Petition is incorrect.
27  (*See* RJN, Ex. 7 at Bates Stamp 91, ¶ 9, "The petitioning creditors are . . . Peter Marco, LLC, with
28

1  Trade Debt/Damages of $7,676,744.00 (**The correct amount is $6,950,444.40**).)"  Despite

2  knowledge of this material error, Marco has not attempted to correct it.

3      Second, Marco is taking inconsistent positions across different forums with respect to *who*

4  he consigned jewelry to.  Marco cannot have it both ways.  Marco cannot allege that he consigned

5  items to Mr. Rechnitz to bolster his action against Mr. Rechnitz in district court, then

6  simultaneously assert the same claim against Jadelle to pursue the Involuntary Petition.  In the

7  Marco Action, Marco is separately trying to collect the same debt from Mr. Rechnitz (not Jadelle)

8  based on goods that Marco alleges were consigned to Mr. Rechnitz (not Jadelle).  In the Marco

9  Complaint, Marco repeatedly states that he consigned jewelry to Mr. Rechnitz:

10  • "Accordingly, Marco LLC consigned the following pieces of Consigned Jewelry **to**

11  **Rechnitz**." (RJN, Ex. 7 at Bates Stamp 99, ¶ 33, (emphasis added)."

12  • "Marco LLC consigned Rovinsky's Ring & Necklace **to Rechnitz**."  (*Id.* at Bates

13  Stamp 100, ¶ 35 (emphasis added).)

14  • "***Jona and Third-Party Defendants*** have obtained and received property from

15  Marco, the $6,950,444.40 of Consigned Jewelry . . . ." (*Id.* at Bates Stamp 118, ¶ 95

16  (emphasis added).)

17      Third, Marco is taking inconsistent positions with respect to the amount of his claim.  Like

18  Noval, it appears that Marco is attempting to understate the amount he is seeking to recover.  In

19  the Marco Action, Marco is seeking damages to be proven at trial, but *at least* $6,950,444.40.

20  (*See id.* at Bates Stamp 117, ¶ 90.)  Marco also seeks treble damages, punitive damages, interest,

21  and attorney's fees.  (*See id.* at Bates Stamps 119-120, ¶¶ 98, 104, and 105.)  Therefore, by

22  Marco's own admission, his total claim has yet to be liquidated and quantified, and is subject to

23  proof.  Moreover, to the extent that Marco seeks to recover damages based on the alleged value of

24  consigned items, the amount of damages must be proven at trial.  Like Noval, the nature of

25  Marco's allegations alone also create a number of factual disputes and legal issues to be

26  adjudicated.

27      Fourth, and incredibly, Marco and First International are double-counting the same claim.

28  As reflected in the Marco Complaint, one item was owned by First International and the stated

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2822821.1

17

MOTION TO DISMISS
INVOLUNTARY PETITION

1    value, according to Marco, is $1,333,695.00.  (*See id.* at Bates Stamp 100, lines 9-10.)  However,

2    Jadelle understands that First International is pursuing that same claim (albeit in the amount of

3    $1,200,000).  Marco and First International cannot dispute that they both are attempting to

4    recover, in part, the same claim, and Jadelle cannot be obligated to pay both.  This fact alone puts

5    the claims of both Marco and First International into bona fide dispute.

6        Fifth, numerous disputes exist with respect to the items allegedly consigned by Marco.

7    Disputes exist as to the terms of consigned items and whether any amount is due on certain items.

8    Disputes exist as to whether particular items included in Marco's claim were consigned and

9    whether memos were fabricated.  Disputes exist as to the stated value of items that were

10   consigned, whether Marco is entitled to be paid the stated value (or some lesser amount), and

11   whether Marco was previously paid on account of other items.  For example, with respect to the

12   items owned by Rovinsky, Marco seeks to recover damages from Jadelle in excess of the amounts

13   asserted by Rovinsky.  (*Compare* RJN, Ex. 7 at Bates 93, ¶ 21; *with id.* at Bates Stamp 99, lines

14   12-13 and 16.)  While a determination regarding the existence of certain of these disputes may not

15   be appropriate in connection with the Motion, Jadelle wants the Court to be aware of the full scope

16   of the disputes with Marco's claim.

17       For all of these reasons, Marco's claim is subject to multiple bona fide dispute.  The

18   majority of these disputes are demonstrated by Marco's own words in his complaint, which is

19   subject to judicial notice and is appropriate to consider on a Rule 12 motion to dismiss.

20   Accordingly, Marco is not eligible to commence the petition.

21       **C.    First International's Alleged Claim is Subject to a Bona Fide Dispute**

22       Jadelle disputes that First International is owed $1,976,225.  It appears that the majority of

23   First International's claim is premised on the same item included in Marco's claim.  (*See* RJN, Ex.

24   7 at Bates Stamp 100, lines 9-10.)  The fact that two Petitioning Creditors (Marco and First

25   International) are knowingly overstating their claims by seeking to collect the same sum, standing

26   alone, creates a bona fide dispute.  Moreover, to the extent that First International is seeking to

27   recover the alleged stated value of consigned items and amounts it paid to purchase jewelry

28   belonging to third parties, First International's claim is subject to bona fide disputes.  First

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2822821.1                                    18                          MOTION TO DISMISS
                                                                        INVOLUNTARY PETITION

International's claim should not include amounts that it paid to acquire jewelry that did not belong to it and Jadelle should be credited for the value of those items.  Accordingly, First International's claim is subject to bona fide disputes and First International is not eligible to commence the petition.

First International (as well as the other Petitioning Creditors) bear the burden of demonstrating that their claims are not the subject of bona fide disputes.  First International has yet to even itemize its claim and it is not entirely clear how First International calculated its claim. Under the Supreme Court decisions in *Twombly* and *Iqbal*, the Petitioning Creditors cannot rely on conclusory statements regarding the amount of their respective claims or that their claims are not subject to bona fide disputes to overcome the Motion.

In sum, each Petitioning Creditor's claim is subject to multiple bona fide disputes. Moreover, the disqualification of any one of the Petitioning Creditors requires dismissal of the Involuntary Petition.  Because the Petitioning Creditors are pursuing the Involuntary Petition on the theory that Jadelle had at least twelve creditors as of the petition date, pursuant to § 303(b)(1), the Involuntary Petition requires three eligible petitioning creditors.  *See* 11 U.S.C. § 303(b)(1). Accordingly, each of the foregoing disputes requires the case to be dismissed.

VI.    **THE INVOLUNTARY PETITION MUST BE DISMISSED BECAUSE THE PETITIONING CREDITORS FILED THE PETITION IN BAD FAITH**

Bankruptcy courts uniformly recognize the authority to dismiss an involuntary case commenced in bad faith.  The fact that an involuntary petition can be dismissed is implicit in § 303(i)(2), which authorizes damages against any petitioner that commences a case in bad faith. The bankruptcy courts also have the inherent authority embodied in § 105 to dismiss bad-faith filings.  *See In re WLB-RSK Venture*, 296 B.R. 509, 513 (Bankr. C.D. Cal. 2003) ("Since § 303(i)(2) seems to imply that an involuntary petition can be dismissed for bad faith, and numerous cases support the proposition that bankruptcy petitions of any kind should not be employed for improper purposes, § 105(a) would seem to authorize the court to dismiss an involuntary based on a finding of bad faith.").

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 ♦ Fax 714 445-1002

EXHIBIT "6", PAGE 51

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    In the Ninth Circuit, the existence of bad faith is a question of fact measured by an

2    objective test.  *See In re Wavelength, Inc.*, 61 B.R. 614, 620 (B.A.P. 9th Cir. 1986).  That is, if a

3    reasonable person would believe that the subject conduct constitutes bad faith, then a finding of

4    bad faith is appropriate.  *See id.*; *see also In re Mi La Sul*, 380 B.R. 546, 557 (Bankr. C.D. Cal.

5    2007).

6    Bad faith typically exists where, as here, the petitioners file the involuntary petition for an

7    improper purpose.  Courts have found that an involuntary petition was filed in bad faith when the

8    petitioning creditor actually knows that it's claim is subject to a bona fide dispute as to liability or

9    amount.  *See In re John Richards Homes Bldg. Co.*, 439 F.3d 248 (6th Cir. 2006) (holding that a

10    petition was filed in bad faith given the overwhelming evidence of a bona fide dispute); *see also In*

11    *re Mountain Diaries, Inc.*, 372 B.R. 623 (Bankr. S.D.N.Y. 2007) (finding that it was untenable

12    that a single petitioning creditor could have filed its claim in good faith when a substantial portion

13    of its claim was subject to legitimate dispute); *Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d

14    701, 707 (9th Cir. 2004) ("Filing an involuntary petition should be a measure of last resort because

15    even if the petition is filed in good-faith, it can chill the alleged debtor's credit and sources of

16    supply, and scare away his customers."); *In re Reid,* 773 F.2d 945, 946 (7th Cir. 1985) ("[T]he

17    filing of an involuntary petition is an extreme remedy with serious consequences to the alleged

18    debtor, such as loss of credit standing, inability to transfer assets and carry on business affairs, and

19    public embarrassment.").

20    Similarly, courts have found bad faith where the petitioners used the involuntary process as

21    a customary collection action prior to exhausting available state law remedies.  *See In re Smith*,

22    243 B.R. 169, 197-98 (Bankr. N.D. Ga. 1999) (dismissing a case commenced by the petitioner

23    after an unfavorable ruling in state court and without exhausting state law remedies).  Bankruptcy

24    courts also routinely dismiss involuntary cases commenced as a litigation tactic to gain an

25    advantage in ongoing litigation or to control the forum of the dispute.  *See, e.g.*, *In re WLB-RSK*

26    *Venture*, 296 B.R. 509, 514 (Bankr. C.D. Cal. 2003) (dismissing an involuntary petition filed "as

27    part of a forum shopping litigation tactic. . . ."); *In re Spade*, 269 B.R. 225, 229 (D. Colo. 2001)

28    (dismissing an involuntary petition filed as "a self-serving litigation tactic to control the forum and

2822821.1

20

MOTION TO DISMISS
INVOLUNTARY PETITION

1  enlist a trustee to conduct and pay for discovery into the Debtor's affairs.").  According to the

2  Ninth Circuit, an involuntary case "should be a measure of last resort. . . ."  *See Higgins*, 379 F.3d

3  at  707.

4          The Petitioning Creditors commenced this case in bad faith as follows:

5          The Petitioning Creditors commenced this case despite the fact that their claims are subject

6  to multiple bona fide disputes.  The disputes are self-evident from the Petitioning Creditors' own

7  pleadings, conflicting statements, and the positions they have chosen to take.  The fact that

8  litigation is pending is evidence of bona fide disputes.  Moreover, the Petitioning Creditors seek

9  amounts that, by their own admissions, have yet to be quantified, proven at trial, and adjudicated.

10  The Petitioning Creditors knew or reasonably should have known they were not eligible to

11  commence this case under binding Ninth Circuit law.

12          The Petitioning Creditors are not using the bankruptcy process as a measure of last resort.

13  The Petitioning Creditors have clearly not exhausted available state law remedies.  Rather, as the

14  pending lawsuits unequivocally demonstrate, state law remedies exist and have just begun.

15  Moreover, the Petitioning Creditors who have commenced suits are seeking remedies at odds with

16  bankruptcy, such as constructive trusts on certain property and proceeds for their individual

17  benefits.  The Petitioning Creditors must first exhaust their non-bankruptcy remedies to liquidate

18  their disputed claims.

19          As evidenced by the timing of the filing, the Petitioning Creditors are forum shopping.

20  Two of the Petitioning Creditors initially chose to pursue their respective claims in other, non-

21  bankruptcy forums.  The Involuntary Petition was filed less than one month after the court in the

22  Noval Action, where Noval is seeking the appointment of a receiver over Jadelle, temporarily

23  stayed that case.  *See In the Matter of Smith*, 243 B.R. 169, 197-98 (Bankr. N.D. Ga. 1999)

24  (dismissing a case commenced by the petitioner after an unfavorable ruling in state court and

25  without exhausting state law remedies).  Having received an unfavorable decision in his chosen

26  forum, Noval has tried to avoid that decision by pursuing his claim in this Court.

27          The Petitioning Creditors are seeking to circumvent Jadelle's due process and

28  constitutional rights.  Jadelle has not even answered the complaints.  Moreover, Noval's suit has

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

MOTION TO DISMISS
INVOLUNTARY PETITION

EXHIBIT "6", PAGE 53

1  been temporarily stayed on 5th Amendment grounds.  Jadelle expects that the Petitioning Creditors

2  may attempt to use the bankruptcy process to seek discovery that would not otherwise be

3  permitted pending the stay ordered in the Noval Action.  The Petitioning Creditors are using

4  bankruptcy as a shortcut to avoid an adjudication on the merits and to leverage the payment of

5  their disputed claims.

6      The Petitioning Creditors' inconsistent positions are further examples of bad faith.  Both

7  Noval and Marco have asserted claims in different amounts in their respective suits than listed in

8  the Involuntary Petition.  Marco and First International are both knowingly seeking to recover, in

9  part, on the same claim.  Marco has taken inconsistent positions regarding who he consigned

10  jewelry to in attempt to collect the same claim from two different people in different forums.

11  Moreover, the Petitioning Creditors have taken these inconsistent positions to gain strategic

12  advantages in the various pending suits.

13      In sum, this is not a matter that belongs in bankruptcy court.  It is a litigation matter, in its

14  early stages and pending in multiple forums amongst many parties (the Petitioning Creditors,

15  Jadelle, and others).  Moreover, the Petitioning Creditors hold disputed claims and thus, are not

16  eligible to commence this case.  This complicated web of disputed claims belongs in civil court

17  (where they are already pending).  Accordingly, the case should be dismissed.

18

19  **VII.    JADELLE IS ENTITLED TO ATTORNEY'S FEES AND COSTS, AND DAMAGES**

20      Pursuant to § 303(i):

21      (i) If the court dismisses a petition under this section other than on
        consent of all petitioners and the debtor, and if the debtor does not
22      waive the right to judgment under this subsection, the court may grant
        judgment—

23
        (1) against the petitioners and in favor of the debtor for—
24      (A) costs; or
        (B) a reasonable attorney's fee; or
25      (2) against any petitioners that filed the petition in bad faith, for—
        (A) any damages proximately caused by such filing; or
26      (B) punitive damages.

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2822821.1

22

MOTION TO DISMISS
INVOLUNTARY PETITION

EXHIBIT "6", PAGE 54

1    11 U.S.C. § 303(i).  Bankruptcy courts may award the fees authorized under § 303(i) whether the

2    petition is dismissed under § 303 or via § 305(a)(1).  *See In re Macke Int'l Trade, Inc.*, 370 B.R.

3    236, 248 (B.A.P. 9th Cir. 2012).

4         Whether to award fees pursuant to § 303(i)(1) is determined using a totality of the

5    circumstances test.  *See Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 707 (9th Cir.

6    2004).  However, the Ninth Circuit has made clear that, if an involuntary petition is dismissed, the

7    petitioners *should routinely expect* to pay the putative debtor's attorney's fees and costs.  *See id.*;

8    *see also In re Macke Int'l Trade, Inc.*, 370 B.R. at 249 ("[U]nsuccessful involuntary petitioners

9    should routinely expect to pay the debtor's legal expenses arising from the involuntary filing.").

10   "Thus, when an involuntary petition is dismissed on some ground other than consent of the parties

11   and the debtor has not waived the right to recovery, an involuntary debtor's motion for attorney's

12   fees and costs under § 303(i)(1) raises a rebuttable presumption that reasonable fees and costs are

13   authorized."  *Higgins*, 379 F.3d at 707.  The presumption is intended to remind petitioners that an

14   involuntary case is a "measure of last resort" and to "reinforce the idea that the filing of an

15   involuntary petition should not be undertaken lightly, and will serve to discourage inappropriate

16   and frivolous filings."  *See Higgins*, 379 F.3d at 707 (internal citations and quotation marks

17   omitted).

18        Here, Jadelle is entitled to an award of attorney's fees, costs, and damages.  Dismissal of

19   the case, without more, entitles Jadelle to attorney's fees and costs.  No reason exists to exclude

20   the Petitioning Creditors from the general rule—they did not use bankruptcy as a last resort and

21   should have expected to pay Jadelle's fees.  Moreover, for the reasons discussed above, this case

22   was commenced in bad faith and for an improper purpose when it was clear that the Petitioning

23   Creditors were ineligible to commence the case under binding Ninth Circuit law.  This is the type

24   of bad faith involuntary filing that § 303(i) was designed to prevent.  Accordingly, Jadelle

25   respectfully requests that the Court award it attorney's fees, costs, and damages, subject to proof

26   upon dismissal of the case.

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2822821.1

23

MOTION TO DISMISS
INVOLUNTARY PETITION

EXHIBIT "6", PAGE 55

**VIII.   CONCLUSION**

Based on the foregoing, Jadelle respectfully requests that the Court immediately dismiss the involuntary petition, and award Jadelle attorney's fees, costs, and damages, including punitive damages, subject to proof.

Respectfully submitted,

DATED:  May 1, 2020                    SMILEY WANG-EKVALL, LLP

By:       */s/ Robert S. Marticello*
          ROBERT S. MARTICELLO
          MICHAEL L. SIMON
          Attorneys for Jadelle Jewelry and Diamonds,
          LLC.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2822821.1

24

MOTION TO DISMISS
INVOLUNTARY PETITION

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*): **Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages; and Memorandum of Points and Authorities in Support** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **05/01/2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Baruch C Cohen    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- Neal Salisian    ECF@salisianlee.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **05/01/2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Via First Legal:
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 05/01/2020 | Lynnette Garrett | /s/ Lynnette Garrett |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                        **F 9013-3.1.PROOF.SERVICE**

# EXHIBIT "7"

1              UNITED STATES BANKRUPTCY COURT

2          CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES

3                      --oOo--

4  In Re:                      )  Case No. 2:20-bk-13530-BR
                               )
5  JADELLE JEWELRY AND DIAMONDS )  Chapter 7
   LLC, *a Delaware Limited*    )
6  *Liability Company,*         )
                               )
7  Debtor,                     )  Los Angeles, California
                               )  June 9, 2020
8  ------------------------------)  Tuesday, 10:00 A.M.

9                                STATUS CONFERENCE RE
                                 INVOLUNTARY PETITION
10
                                 HEARING RE: MOTION OF
11                               PUTATIVE DEBTOR'S MOTION
                                 TO DISMISS INVOLUNTARY
12                               PETITION AND REQUEST FOR
                                 ATTORNEY'S FEES, COSTS,
13                               AND DAMAGES

14                               HEARING RE: CREDITORS'
                                 MOTION FOR APPOINTMENT OF
15                               INTERIM CHAPTER 7 TRUSTEE

16
                 TRANSCRIPT OF TELEPHONIC PROCEEDINGS
17               BEFORE THE HONORABLE BARRY RUSSELL
                   UNITED STATES BANKRUPTCY JUDGE
18

19 APPEARANCES:

20 For the Debtor:          ROBERT S. MARTICELLO, ESQ.
                            Smiley Wang-Ekvall, LLP
21                          3200 Park Center Drive
                            Suite #250
22                          Costa Mesa, California  92626

23

24
   Proceedings produced by electronic sound recording;
25 transcript produced by transcription service.



```
 1   For Victor Franco          RONALD N. RICHARDS, ESQ.
     Noval:                     Law Offices of Ronald Richards
 2                              PO Box 11480
                                Beverly Hills, California   90213
 3
     For First International     DANIEL A. LEV, ESQ.
 4   Diamond:                    333 South Grand Avenue
                                 Suite #3400
 5                               Los Angeles, California   90071

 6   Court Recorder:            Nancy Vandensteen
                                U.S. Bankruptcy Court
 7                              Central District of California
                                Edward R. Roybal Federal Building
 8                                 and Courthouse
                                255 East Temple Street, Room #940
 9                              Los Angeles, California   90012
                                (855) 460-9641
10
     Court Transcriptionist:    Ruth Ann Hager, C.E.T.**D-641
11                              Ben Hyatt Certified Deposition
                                   Reporters
12                              17835 Ventura Boulevard
                                Suite #310
13                              Encino, California   91316

14

15

16

17

18

19

20

21

22

23

24

25
```



P 888.272.0022  F 818.343.7119    BENHYATT    www.benhyatt.com
Certified Deposition Reporters

Page                                                                    3

1             LOS ANGELES, CALIFORNIA, TUESDAY, JUNE 9, 2020

2                             11:14 A.M.

3                             --oOo--

4             THE CLERK:  #10.00 through #12.00, Jadelle

5    Jewelry.

6             THE COURT:  Hold on just a second, as far as

7    appearances.  Okay.  We have the Jadelle Jewelry matter.

8    We have a couple people listening, apparently, the *New York*

9    *Daily News* is interesting.  I'm not exactly sure why, but

10   the public is always welcome.  Not to say anything, but

11   just listening mode.  These are public hearings.  Had we

12   not had this virus, we would have -- there would have

13   been -- somebody would be welcome to be in court, but so

14   they're on the line but won't be saying anything.

15            Then my list here shows that we have Mr. Lev for

16   the -- for all three of the creditors.  Is that right,

17   Mr. Lev?

18            MR. LEV:  I am here, Your Honor, yes.

19            THE COURT:  Okay.  And then we have -- well, I'm

20   not sure.  We have Mr. Cohen on the line.  You didn't file

21   anything, did you, Mr. Cohen?

22            MR. COHEN:  Your Honor, Baruch Cohen online.  No,

23   I did not file anything.

24            THE COURT:  Okay.  Well, you're welcome to

25   listen, but even though you may be interested, I'm not

Page                                                                4

1  going to let you say anything.

2          Then we have -- of course, the other side of this

3  is Rob -- is the counsel for the -- well, let me see, we

4  have counsel for the debtor.  We have a number of them.

5  Robert Marticello -- I can never pronounce your last

6  name -- I know who you are.

7          MR. MARTICELLO:  That was per --

8          THE COURT:  What was your last name again?

9          MR. MARTICELLO:  That was perfect, Your Honor.

10 Good morning.  It's Marticello, Your Honor.

11         THE COURT:  Okay.  All right, now --

12         MR. MARTICELLO:  And also --

13         THE COURT:  -- who --

14         MR. MARTICELLO:  Michael Simon (indiscernible).

15         THE COURT:  -- now, you represent the debtor.

16 You have --

17         MR. MARTICELLO:  Correct.

18         THE COURT:  -- then Mr. Richards, you represent

19 the -- Mr. Noval, but I all -- looking here, I see Mr. Lev.

20 Who is re -- Mr. Lev, you represent all three of the

21 creditors?

22         MR. LEV:  Your Honor, the way -- yeah.  All of us

23 are on the pleading, Your Honor.  We --

24         THE COURT:  Well, who's --

25         MR. LEV:  -- represent the individ --

Page                                                                 5

1           THE COURT:  I'm not going to let all three of you

2    speak.  One -- who's going to be --

3           MR. LEV:  No, no, no, Your Honor.  Yes, Your

4    Honor, we've decided to let Mr. Richards make the argument

5    on behalf of the petitioning creditors.  To the extent the

6    Court has questions regarding specific issues on specific

7    claims, Mr. Cohen represents two of the petitioning

8    creditors.  Mr. Richards represents one of the petitioning

9    creditors.  So to the extent you are asking questions

10   regarding Mr. Cohen's clients, Mr. Cohen would respond, but

11   I don't know if we're going to get to that type of detail,

12   so --

13          THE COURT:  Well, okay.  Well --

14          MR. LEV:  -- but Mr. Richards will be making the

15   initial presentation.

16          THE COURT:  Well, there's not going to be much of

17   an initial presentation because I've read all the papers.

18   I --

19          MR. LEV:  I understand, Your Honor.

20          THE COURT:  -- really dislike -- I've probably

21   said it a million times -- things on the phone, but we --

22   that's where we're at.

23          But -- so anyway, then we have Mr. Simon, but

24   also for the debtor, right?

25          MR. MARTICELLO:  Your Honor, this is Robert

Page                                                                6

1  Marticello.  Michael Simon is from my firm.  He's just

2  listening in.

3              THE COURT:  Oh, okay.

4              MR. MARTICELLO:  I will be handling the --

5              THE COURT:  So, okay.  So then -- okay.  So I'm

6  going to go to some --

7              MR. RICHARDS:  Your Honor, do you want me to make

8  my appearance?  Ronald Richards, just for the record.

9              THE COURT:  Oh, yes, please, please, and whenever

10 you speak, you've got to -- for -- the only way we keep

11 track -- that is, we, being the court recorder -- is who's

12 talking, you've got to -- and if you're physically in

13 court, we can see you, but whenever you say anything just

14 give your name.

15             I'm going to go through a number of these.

16 There's not going to be any argument on this, but I'm going

17 to go through these evidentiary objections.

18             The first one is the evidentiary objections to

19 the declaration of Oved Anter.  These are all evidentiary

20 objections made by the debtor, so I am going to make these

21 rulings and there's not going to be any argument on it, so

22 we're going to be here forever.  So I'm going to -- I'm

23 going to make these -- these -- so if you -- everybody have

24 those in front of them?  This has to do with the

25 declaration of Oved Anter, okay?  And you all know who --

P 888.272.0022  F 818.343.7119       BEN**HYATT**
                                         Certified Deposition Reporters    www.benhyatt.com

Page                                                                7

1   that's the representative -- I can never tell with that --

2   is that a man?  Is Oved -- I don't know if it's -- it looks

3   like an Israeli name, so I don't know --

4           MR. COHEN:  Yes, Your Honor.  Baruch Cohen on

5   CourtCall.  Oved Anter is a man.

6           THE COURT:  Okay.  I wasn't 100 percent sure, but

7   I thought that was the case.  And that's the president --

8   the owner and president of International Diamond.

9           MR. COHEN:  Correct.

10          THE COURT:  So I'm going to -- okay, so I'm going

11  to go through the -- excuse me just one second.

12          Let me -- I will sustain, but, by the way, this

13  is going to be important.  Let me ask the debtor in this

14  case before I get to these evidentiary -- one of the two of

15  you.  It is pretty clear from all of the papers that -- is

16  it Rechnitz?  I'm pronoun -- Jona is the -- and his wife

17  are the own -- are the control -- owners and controlling of

18  the debtor, are they not?

19          MR. RICHARDS:  Hello?  Hello?

20          THE COURT:  Yes, that's for the debtor.

21          MR. RICHARDS:  Hello, hello?

22          THE COURT:  That is the case, is it not?

23          MR. RICHARDS:  We didn't hear you, Your Honor.

24  Can you --

25          THE COURT:  Oh.

P 888.272.0022  F 818.343.7119       BEN HYATT
                                     Certified Deposition Reporters       www.benhyatt.com

Page                                                                8

1          MR. RICHARDS:  -- repeat?  On the line right
2    now --
3          THE COURT:  That Jona and his wife are the
4    principals of the debtor, are they not?  They're the people
5    that run the debtor?
6          MR. RICHARDS:  I'm still not hearing you.
7          THE COURT:  You can't hear me now?
8          UNIDENTIFIED VOICE:  It's cutting out right at
9    the most important part, Your Honor.
10         MR. SIMON:  Your Honor, you are breaking up.
11         MR. RICHARDS:  This is Ronald Richards.  You cut
12   out.
13         THE COURT:  Well, that's a real problem.  Can you
14   hear me now?
15         MR. RICHARDS:  I'm still not hearing the Court.
16         THE CLERK:  Is the CourtCall operator on the
17   line?
18         THE COURT:  Oh, great.
19         COURTCALL OPERATOR:  Yes, I'm here.
20         THE COURT:  Well, they apparently can't hear me.
21         MR. RICHARDS:  Yeah.  Now I can hear you again,
22   Your Honor.  Ronald Richards for the creditor.
23         THE COURT:  Okay, you can?
24         MR. RICHARDS:  If you could just --
25         THE COURT:  Okay.  My question is, from the --



Page                                                                                  9

1   excuse me just one second.  Just to settle something, from

2   the -- Mister -- let's see, excuse me.  From the debtor,

3   Marticello, the two principals are Jona and his wife,

4   right?

5             MR. MARTICELLO:  Well, Ms. Ra -- sorry, this is

6   Robert Marticello, Smiley Wang-Ekvall, for Jadelle.  Rachel

7   Rechnitz is the managing member of Jadelle.  Mr. Rec --

8   sorry, Your Honor, can you hear me, because it sounds like

9   it's gone dead.

10            THE COURT:  I can't hear you.

11            MR. MARTICELLO:  Yeah, the line keeps -- Your

12  Honor, the line keeps going in and out, I think for all of

13  us, so we hear things and then --

14            THE COURT:  Okay.  Tell me who are the principals

15  of the debtor?

16            MR. MARTICELLO:  So Rachel Rechnitz is the

17  managing member of Jadelle.

18            THE COURT:  Yes.

19            MR. MARTICELLO:  Jona Rechnitz is involved in the

20  operation of the business, but he does not have an official

21  title with the LLC.

22            THE COURT:  Well, who are the two principals?

23            (No audible response.)

24            There are only two principals, are there not, in

25  this LLC?

P 888.272.0022  F 818.343.7119        BENHYATT        www.benhyatt.com
                                Certified Deposition Reporters

Page                                                                10

1          MR. RICHARDS:  Well, Your Honor, this is Ronald

2    Richards.  The debtors married -- the two principals are

3    husband and wife, so Mr. Rechnitz, obviously, has his

4    community property interest, and we're under the belief

5    that he owns the company with his wife and there's no other

6    members.

7          THE COURT:  Okay, because -- anyway, I -- oh,

8    okay.  Well, I will -- okay, I'm going to go through the

9    evidentiary objections.  It's pretty clear to me -- I don't

10   know who does what day to day.  And by the way, this is

11   not -- as far as the hearing.  Is the debtor still

12   operating?  I'm asking the debtor's counsel.

13         MR. RICHARDS:  No.

14         MR. MARTICELLO:  Your Honor, my understand --

15   this is Robert Marti --

16         THE COURT:  Are you talking, because I can't hear

17   you if you are.

18         MR. MARTICELLO:  It went dead, Your -- this is

19   Robert Marticello for Jadelle.  It's (indiscernible).

20         THE COURT:  Okay.  Is the debtor still operating?

21         MR. MARTICELLO:  Your Honor, my understanding is

22   that the debtor is paying its debts -- undisputed debts as

23   they come due on the agreed to terms.

24         THE COURT:  No, but is the debtor selling

25   anything?  I guess that's what I meant.  Is the debtor

EXHIBIT "7", PAGE 67

Page                                                                    11

1   operating?

2          MR. MARTICELLO:  I think there -- my

3   understanding is that there's been minimal operations

4   post-bankruptcy.

5          MR. RICHARDS:  Your Honor, this is Ronald

6   Richards.  There's no debtor at the location.  They moved

7   out.  That's -- we had trouble serving them.  That's why we

8   had to serve --

9          THE COURT:  Well, yeah, I've never physically --

10          MR. RICHARDS:  -- (indiscernible) at their house.

11          THE COURT:  I don't even recall.  Where is the --

12   was this a regular storefront?  I know it's pretty -- when

13   you're dealing with diamonds at a million -- $1.2 million,

14   I don't think I've ever seen one, but I guess they exist.

15          MR. RICHARDS:  Your Honor, they were operating

16   out of an executive suite at 9454 Wilshire Boulevard, out

17   of a suite at that location.  There's a lot of little

18   businesses in there, and they were -- that's where they

19   were operating.  They have no operation whatsoever.  No,

20   they're not --

21          THE COURT:  Is that -- let me --

22          MR. RICHARDS:  -- no one's --

23          THE COURT:  -- again, this is just background,

24   but I want to get -- I want to find out what's really going

25   on in this case.  Would that be from the debtor's

Page                                                    12

1  standpoint?  I think counsel would know.  Are they still

2  operating out of that location?

3           MR. MARTICELLO:  My understanding is that they're

4  still operating, Your Honor.  I don't -- it has been

5  minimal operations, but I don't know if that's inconsistent

6  with the operations that occurred prebankruptcy.

7           THE COURT:  Okay.  In any case, I don't want to

8  get any further in it.

9           MR. RICHARDS:  He's not answering your question.

10          THE COURT:  It's more curiosity --

11          MR. RICHARDS:  They're not operating out of

12  (indiscernible) --

13          THE COURT:  -- because everybody on the call --

14          MR. MARTICELLO:  Your Honor --

15          THE COURT:  -- knows a lot more about this case

16  than I do.

17          MR. MARTICELLO:  And I'm sorry, Your Honor, this

18  is Robert Marticello.  When I'm speaking, it sounds like

19  the line is going dead, so I don't know if you're hearing

20  what I'm saying --

21          THE COURT:  Well, I did hear --

22          MR. MARTICELLO:  -- so that's the reason for

23  my --

24          THE COURT:  -- I did year you.  Okay, let's --

25  this is going to be very unfortunate --



Page                                                                  13

1            MR. MARTICELLO:  Okay, understood.

2            THE COURT:  -- because there's obviously a lot of

3   money involved in this case and important to all sides.

4            I am going to go make these evidentiary rulings.

5   The -- can everybody hear me?  Of course, if you can't,

6   it's hard for you to say you can't hear me.

7            MR. RICHARDS:  Now I can hear you, Your Honor.

8            THE COURT:  Okay.  At least -- we need at least

9   two people, one representing the creditors and --

10           MR. RICHARDS:  Can anybody hear the Court?

11           THE COURT:  -- and I have no idea whether the --

12           UNIDENTIFIED VOICE:  I cannot.

13           UNIDENTIFIED VOICE:  Okay, good.

14           THE COURT:  Okay.

15           MR. MARTICELLO:  Yeah, I hear you.  This is

16  Robert Mart --

17           MR. RICHARDS:  I'd rather have the Court just

18  rule, if you guys don't mind --

19           THE COURT:  I am going to make the rulings.

20           MR. RICHARDS:  -- at a later time, and he can

21  (indiscernible) --

22           THE COURT:  I want to make sure everybody hears

23  it.

24           MR. RICHARDS:  Since we're --

25           THE COURT:  This is why I really --

Page                                                                  14

1          MR. RICHARDS:  -- having technical problems.

2          THE COURT:  -- really, intensely dislike hearings

3    on the phone because of just this, but in any case --

4          (Indiscernible simultaneous speech)

5          THE COURT:  -- I'm going to -- so we don't spend

6    the entire day on these rulings, I'm going to make my

7    rulings.

8          UNIDENTIFIED VOICE:  (Indiscernible) CourtCall?

9    Yes.

10          THE COURT:  Now, this is the objections to the

11   declaration of Oved Anter.  I will sustain the first

12   objection.

13          MR. RICHARDS:  Should we recall in?

14          THE COURT:  I don't know of any foundation.

15          MR. MARTICELLO:  No, no, no, you should not do

16   that.

17          THE COURT:  What's that?

18          MR. MARTICELLO:  The CourtCall operator will

19   handle it.

20          THE COURT:  Okay.  I will sustain the objection.

21   It says that the controlling principal and insider, Jona

22   Rechnitz --

23          MR. MARTICELLO:  You're all on the line.  That's

24   the more important thing.  The Judge, they can reconnect.

25          THE COURT:  Can you hear me, by the way?

Page                                                                    15

1          MR. MARTICELLO:  I don't even know where the

2    Judge is calling in from.

3          THE COURT:  Hello, can you hear me?

4          UNIDENTIFIED VOICE:  Right.

5          THE COURT:  Apparently not.  Can anybody hear me?

6          MR. MARTICELLO:  I know the Court does not like

7    these calls, so I don't want to make it frustrating.

8          THE COURT:  I hear counsel talking, but --

9          MR. MARTICELLO:  (Indiscernible) --

10         THE COURT:  Is there an operator on?

11         MR. MARTICELLO:  A new operator won't even know

12   what we're talking about.  Better we just wait.

13         THE CLERK:  Is the CourtCall operator on?

14         THE COURT:  Hello?

15         (No audible response.)

16         Oh, Jesus.

17         THE CLERK:  Is the CourtCall operator on?

18         THE COURT:  Well, we're going to finish this.

19   Can you hear -- can anybody hear me?

20         (No audible response.)

21         Is the operator on?

22         (No audible response.)

23         This is so un -- can anybody hear me?

24         COURTCALL OPERATOR:  I'm going to try to plug in

25   my headset and see if I can get a response.  I'll be right

P 888.272.0022  F 818.343.7119     BENHYATT     www.benhyatt.com
Certified Deposition Reporters

Page                                                                    16

1  back with you all.

2          THE COURT:  Who is -- who's talking now?

3          THE CLERK:  That's the CourtCall operator.

4          THE COURT:  Well, can you --

5          COURTCALL OPERATOR:  Your Honor?

6          THE COURT:  -- let the parties know that we're

7  going to continue this hearing, but they can't hear me.

8          COURTCALL OPERATOR:  Can anyone from the Court

9  hear me?

10         THE COURT:  I can hear you.  This is the Judge.

11 What about the other people, can they hear you?

12         UNIDENTIFIED VOICE:  And it seemed to work fine

13 for the hour we were waiting.

14         THE COURT:  What I'm trying to figure out is --

15         MR. LEV:  It's just our luck, right?

16         THE COURT:  -- this is just so unacceptable.

17         UNIDENTIFIED VOICE:  (Indiscernible) the power

18 went out at my house for the last hour and a half and I had

19 to call in on a cell phone and I was so nervous that I'd

20 have to disclose I'm on a cell phone, and have the Court

21 get upset, but I was able to --

22         THE COURT:  No, I --

23         UNIDENTIFIED VOICE:  -- get through

24 (indiscernible) --

25         THE COURT:  Well, I'm not upset about the

P 888.272.0022  F 818.343.7119        BENHYATT
                                      Certified Deposition Reporters      www.benhyatt.com

Page                                                                17

1  telephone.

2          UNIDENTIFIED VOICE:  -- the power went out right

3  before our call, if you can believe it.

4          THE CLERK:  (Indiscernible)

5          THE COURT:  Oh, you mean a cell phone?  Oh, no,

6  I -- if you know me at all, you know I don't get upset

7  easily, but if your power went out Murphy's law apparently

8  is in action.  That's why I'm glad I'm in the court because

9  at home my power went out the other day, but I only do

10 hearings from here.

11         Is -- why don't -- let's -- I'm going to take a

12 roll call of the people we -- I have no idea whether the

13 press is still on, but if they're on listening mode.  The

14 operator -- do you know whether or not the -- there was

15 one --

16         UNIDENTIFIED VOICE:  Well, you're back.

17         THE COURT:  -- from the New York -- Steven Brown.

18 Do you know if Mr. Brown is still on?

19         MR. MARTICELLO:  Your Honor, we're all back on.

20         COURTCALL OPERATOR:  This is (indiscernible) --

21         THE COURT:  I have no way of knowing if Mr. Brown

22 is on from the New York Daily News, because he's not on --

23 it's only on listening mode.  Does the operator know

24 whether or not he's still on the listening?

25         COURTCALL OPERATOR:  Yes.  He

Page                                                                18

1  is(indiscernible) --

2          THE COURT:  Good.  Okay, good --

3          COURTCALL OPERATOR:  -- (indiscernible).

4          THE COURT:  -- and I have no way of knowing.

5  Well, the only -- what's been the problem?  This is the

6  second or third time we keep coming in and out.  Do you --

7  okay, can any --

8          MR. MARTICELLO:  We can all hear you, Your Honor.

9          THE COURT:  -- if I hear silence on the other

10 side, I'll know you can't hear me.  Can everybody hear me?

11         MR. MARTICELLO:  Yes, Your Honor.

12         MR. RICHARDS:  Yes, we can hear you.

13         THE COURT:  But if I don't -- the only reason I

14 knew you couldn't hear me is I heard other people talking

15 to each other and not responding to me.  Okay.  Well, we're

16 going to try to get through this.  We'll do it today one

17 way or another.

18         First objection --

19         MR. MARTICELLO:  We can hear you, Your Honor.

20         THE COURT:  -- no word on the Oved answer.  First

21 objection is sustained.  The second is sustained.  The

22 third objection as to paragraph 5 is overruled.  The

23 next -- the objection number 6, that is sustained, at least

24 on the best evidence rule -- grounds.

25         The -- by the way, you have a problem in these --

P 888.272.0022  F 818.343.7119  BEN HYATT  www.benhyatt.com
Certified Deposition Reporters

Page                                                                              19

1   on these -- a lot -- most of these objections have to do

2   with text calls.  Do you understand that?  That's a

3   violation of the best evidence rule.  You can take a

4   picture of it or something, but just saying what's in

5   there, that's a clear violation of the best evidence rule,

6   and that's a lot of this declaration.  If we have any

7   further hearings on this, you might seriously consider

8   taking pictures of it or something like that, but just

9   telling me what's in the text is a classic violation of the

10  best evidence rule.  Can everybody hear me?

11              ATTORNEYS:  Yes.

12              THE COURT:  Okay, I just want to make sure

13  that -- okay.  So that's why I'm sustaining the objections,

14  so objection number 7 on page 3, that's sustained.  And

15  then -- and that's going to be true of a lot of this stuff.

16  It's unfortunate, but that's just the way the rules work.

17              I'm ruling -- I'm moving now to the pages here

18  and I just sustained all of that.

19              Okay.  The next objection is on page 15 of the

20  objections.  That is the declaration -- we do have the

21  exhibit, so it will be -- it will -- but we do have the

22  exhibit, but that would be sustained, but we have the

23  exhibit.

24              The next one is a little bit trickier.  The next

25  one on page 15 is in paragraph 9.  I'm going to sustain the

Page                                                              20

1  first part, which is basically argument, ending with

2  "Jadelle absconded with all of First International's

3  consigned jewelry either pawning them off or retaining,"

4  et cetera, et cetera, ending with -- up to the point where

5  it says, "Simply stated."  That first part will be

6  sustained.  The part, "Simply stated, has not received a

7  single dollar on the 2.8 million-plus," that will be

8  overruled, that second part of the declaration.

9           The next one is obviously hearsay, that'll be

10 sustained, number -- objection number 10.  Objection

11 number 11 would be sustained.  A lot of these are

12 conclusions and opinion.

13          The next one, 12, will be sustained.  Number 13,

14 the first part of that up to the words, "Importantly, at no

15 time," the first part of that will be sustained, but the

16 second part, "Importantly, at no time," that will be

17 overruled.  And then number 14, that objection will be

18 sustained.

19          Without going any further, has everybody heard

20 that?  Am I still online?

21          UNIDENTIFIED VOICE:  Yes.

22          UNIDENTIFIED VOICE:  Yes, Your Honor.

23          THE COURT:  Okay, good, we've got --

24          MR. MARTICELLO:  Yeah, we heard you, Your Honor.

25          THE COURT:  Okay, wow.  Never thought it would be

P 888.272.0022  F 818.343.7119    BENHYATT    www.benhyatt.com
Certified Deposition Reporters

Page                                                                           21

1 such an accomplishment to get through evidentiary

2 objections, but we did it.  The first part.

3         Next one, evidentiary objection, declaration of

4 Peter Marco.  I'll go through those.  Let's see.  The first

5 objection in paragraph 3, that will be sustained.  That

6 basically is argument.

7         The next one, again, dealing with the ownership

8 and so forth, that'll be sustained for lack of foundation,

9 although I have a pretty well -- good idea of who at least

10 owns the debtor.

11        The next one, exhibit -- paragraph 5, the -- t

12 here is an objection and it is to the -- it's number 5,

13 it's sustained.  That is the best evidence rule.

14        The next one to declaration, paragraph 6, that is

15 overruled.  And then the paragraph -- also part of

16 paragraph 6, it says, "In late December, after I learned

17 that Jona was sentenced for crimes," that's sustained.

18 Then the next part, "Jona advised me," that is overruled.

19        And then the same on the -- also paragraph 6, the

20 first part, "This represent -- represented by Jona was

21 false, was made to me and Jona knew it was false," that is

22 sustained, but the rest of it after that, "Jona then

23 persuaded me," that will be overruled.  A lot of these are

24 part of it because these are lengthy objections.

25        The next one, the first -- the part of this

Page                                                                          22

1   says -- will be sustained, the portion that reads, "In

2   order to foster his image, his honesty, religious, family

3   oriented, trust me, firstly don't even introduce my brother

4   to his own children," et cetera, et cetera, ending with,

5   "Everything goes -- is illegal."  And then starting up, "To

6   my surprise," that will be overruled, and then the first

7   part of that quote part up to the part that I just

8   sustained will be overruled.  It's just the stuff in the

9   middle that I sustained.

10          The next objection, paragraph 8, that will be

11  sustained.  Paragraph 9, that will be overruled.

12  Paragraph 10, that will be sustained.  Number 11, that will

13  be sustained.  Number 12, that will be sustained.  And

14  the -- again, these are -- by the way, those do not rela --

15  I'm sustaining it, but not as far as the Exhibit E in that

16  particular case, and in the -- one of the previous ones we

17  do have that Exhibit C in number -- paragraph 10.  Those

18  will be allowed.  And then we have 12 I just ruled on and

19  13 is sustained.

20          Now, again, I'm not going to have any further

21  argument.  Did everybody hear everything I said?

22          MR. RICHARDS:  Yes.

23          MR. MARTICELLO:  Yes, Your Honor.

24          UNIDENTIFIED VOICE:  Yes, Your Honor.

25          THE COURT:  Okay.  All right, we made it through

P 888.272.0022  F 818.343.7119       BENHYATT       www.benhyatt.com
                                   Certified Deposition Reporters

Page                                                                    23

1  another one.  Okay.  The declaration of Victor Franco --

2           UNIDENTIFIED VOICE:  Your Honor, that was Victor

3  Franco.

4           THE COURT:  Oh, excuse me.  I'm sorry, that was,

5  so we -- that was Victor Franco, so we've got -- so we've

6  gotten through three of them so far.

7           Now we're dealing -- the -- we've gotten

8  through --

9           MR. COHEN:  You haven't -- Your Honor, Baruch

10 Cohen for Marco.  You haven't addressed Peter Marco's

11 declaration yet.

12          THE COURT:  Excuse me a second.  Okay, hang on a

13 second.  Sorry about that.  I had it right in front of me

14 and I -- and then I skipped over it.  Thank you, Mr. Cohen.

15 Okay, Mister -- objections to Peter Marco.  The first will

16 be sustained.  The second will be sustained.  That is the

17 paragraph 4.  The next one, paragraph 6, that will be

18 overruled.  Then paragraph 7, that'll be overruled.

19          The paragraph 8 will be overruled.  And by the

20 way, whoever made these objections, I guess it's Marcell --

21 Mr. Marticello -- misleading is Ravinski's (phonetic) items

22 that were in possession of Ravinski, is hardly an

23 evidentiary objection, just for future reference.  I don't

24 know why you put that in there, but that's not an

25 evidentiary objection.

Page                                                                24

1            Number 9, that's overruled.  Number 10, that is

2    sustained.  Number 11, that is sustained.  And number 12,

3    that's a best evidence violation, that is sustained.  Next

4    one is -- let's see, that's number -- number 13 is

5    sustained.  That's a best evidence.  Same with number 14,

6    sustained, best evidence.  Number 15, best evidence,

7    sustained.

8            Number 16, that is overruled.  Number 17, it's

9    overruled as to the portion that reads, "Repeated demands

10   have been made to Jona and Jadelle to return Marco's

11   consigned jewelry, including Ravinski's ring, necklace but

12   to no avail," that overruled.  The rest of that objected to

13   material is sustained.

14           The next one, 18, is sustained.  That's a best

15   evidence violation.  The -- number 19 is sustained.

16   Number 20 is sustained.  Number 21 is sustained.  Number 22

17   is sustained.  23 is sustained.  24 is sustained.

18   Number 25 is overruled.  The -- and we also have this

19   Exhibit C, in any case.  The -- number 26 is sustained.

20   Number 27 is sustained.

21           Again, make sure after -- everybody hear all

22   those?

23           MR. RICHARDS:  Yes.

24           MR. MARTICELLO:  Yes, Your Honor.

25           THE COURT:  Okay, so that's -- thank you,

Page                                                                        25

1  Mr. Cohen, that's Mr. Marcos.  So now we're down -- we have

2  those three.

3          Now we have the evidentiary objections, request

4  for judicial notice, which is the next item.  The -- excuse

5  me.  These -- I will sustain those -- all those judicial

6  notice requests have to do with things, in my opinion, are

7  totally irrelevant.  If there were a jury here, I don't

8  know, but we don't have juries in this matter, but it's

9  crim -- the criminal background and so forth and

10 transcripts.  It's very interesting and I did read it all,

11 but I can tell you it's totally irrelevant.  So one of the

12 things I can do very easily, even though I read it, I can

13 totally ignore it.  So I am not going to -- I will not take

14 judicial notice of those proceedings, although interesting,

15 not relevant to the issues before me today.  So that's --

16 excuse me, that is that one.

17         Then we have the objections -- let's see, the

18 final one is the evidentiary objection to the declaration

19 of Ronald Richards.  Let me find that.  I have that.  And

20 all of those objections will be sustained.

21         Anyway, that takes care of, I believe, of all the

22 various objections, is that correct?  Or I do have --

23 excuse me just one second.  I -- that's by -- those

24 objections -- I do have --

25         MR. RICHARDS:  We made objections, Your Honor.



P 888.272.0022  F 818.343.7119     www.benhyatt.com

EXHIBIT "7", PAGE 82

Page                                                             26

1  This is Ronald Richards --

2          THE COURT:  Yeah, right --

3          MR. RICHARDS:  -- (indiscernible).

4          THE COURT:  -- that was half of them.  I have the

5  other half here.  And then the other objections --

6          Stacy?  You're quite correct.  I had these, but

7  where are -- is there a list of the others?

8          Okay, well, let me just go through them here.

9  You're right, I have a whole pile of things here.

10         I have the -- there's the objections -- well,

11 I'll go through them and if I miss any -- I've gone

12 through -- this one is the evidentiary objections to the

13 declaration of -- oh, here we go.  Thank you.  I knew I had

14 another list.  That was of Levin Prado, right?  So that --

15 we start with those.  I have the -- those.  I am going to

16 go through them.  The -- I'm going -- the first objection

17 is on page 4, I believe.  That will be sustained.  And then

18 there's objection number 3, which is -- that will be

19 sustained.  Then the next one is number 4, that will be

20 sustained.  Number 6, that will be overruled.  Number 7

21 will be overruled.  Number 8 will be overruled.  So that's

22 the ones as to, excuse me, Mr. Prado.

23         Then we have the next one is evidentiary

24 objections to the declaration of Marc Williams.  Let me

25 find that, excuse me.  Those -- excuse me just one -- yes,

Page                                                                    27

1   those will be sustained, those objections.  They just --

2   well, no, excuse me just one second.  No, I -- on that one,

3   I am going to overrule it but I think, to say the least,

4   they have little if no relevance, but there might be some

5   relevance buried in there.  But as a practical matter, I'm

6   going to overrule it, but I really don't think they have

7   any real bearing on this case, so I'll leave it at that.

8   Sort of a Pyrrhic victory for the objector.

9           The petitioning -- let's see, then there's

10  petitioning creditors, the reply.  Let's see, I have -- is

11  that -- have I missed any, as far as the object -- the

12  evidentiary objections?

13          MR. RICHARDS:  No, there was no -- I don't think

14  there was any more objections.

15          THE COURT:  I --

16          MR. RICHARDS:  There was no --

17          THE COURT:  Who was talking?

18          MR. RICHARDS:  Ronald Richards.  I don't think

19  there was any other --

20          THE COURT:  Yeah.

21          MR. RICHARDS:  I don't think the reply had --

22          THE COURT:  Yeah, as I say, this last one, the

23  objection is overruled but I'd say very slight, if any,

24  relevance.  So now we're dealing with the case itself,

25  right?  We're done with all that?

Page                                                                          28

1          Let me ask the -- as far as the -- well, I'm

2     going to skip to the -- I'm not going to deal at the moment

3     with the appointment of a trustee, but we do have the

4     basic -- excuse me just one second -- the motion to

5     dismiss.

6          So who's going to argue that for the debtor?

7          MR. MARTICELLO:  That would be me, Your Honor,

8     Robert Marticello, for Jadelle.

9          THE COURT:  Okay.  Let me ask a couple things.

10    It seems -- I can tell you, just so you get a heads-up from

11    the other side, I think as far as the -- just so you

12    understand, it's true you didn't present any testimony,

13    certainly not by the principals, but I -- but just so the

14    other side be listening carefully, I think you're right.

15    I -- when I -- I mean, I am somewhat of an expert on this.

16    I can take judicial notice, as I have, of all these various

17    pleadings, and not -- and the rule is again, not

18    necessarily for the truth of the matter asserted in there,

19    and that's pretty clear.

20         However -- the big however is, as you point out,

21    that when you're dealing with admissions the judicial

22    notice doesn't get it in, but if in a previous pleading or

23    a declaration one of the petitioning creditors or all three

24    of them in this case have said things that are -- that show

25    that there is a dispute as to either amount or as to just

Page                                                                      29

1  liability itself, those are admissible and I assume that

2  you would agree with that, the counsel who's arguing this.

3          MR. MARTICELLO:  Yes, Your Honor.  This is Robert

4  Marticello.

5          MR. RICHARDS:  Are you directing this to me, Your

6  Honor, Ronald Richards, or to the counsel?

7          THE COURT:  Well, no, Mr. Richards, you're

8  arguing this, right?

9          MR. RICHARDS:  No, they're arg -- I didn't file a

10 motion to dismiss.  The other side did.  So who did you

11 want to discuss -- who were you addressing first?

12         THE COURT:  No, no, no, I've got everybody messed

13 up here.  No, whoev -- the attorneys -- this was filed --

14 the motion to dismiss -- let me take a look at the papers

15 here.  It was filed obviously by the debtor.

16         MR. MARTICELLO:  Your Honor, this is Robert

17 Marticello --

18         THE COURT:  So you're --

19         MR. MARTICELLO:  -- for Jadelle.

20         THE COURT:  Right, that's who we started off.

21 You're -- like I said, Mr. Marticello, you're going to be

22 arguing the motion to dismiss, right?

23         MR. MARTICELLO:  That's correct, Your Honor.

24         THE COURT:  Okay.  Again -- and I'm repeating my

25 frustration.  Not with you guys at all.  It's just the idea

Page                                                                        30

1  of being on the phone.  If I could see people, it makes

2  things a lot easier, but that's just where we're at.  Okay.

3         Now, the one thing -- let me just sum -- just for

4  Mr. Marticello, it's very interesting and would you agree

5  with this -- it's a rhetorical question -- that I read, of

6  course, the reply of the creditors, but they never that I

7  can see specifically address your specific points.  Would

8  that be a fair statement?

9         MR. MARTICELLO:  That's correct, Your Honor.  The

10 way I viewed the opposition was they don't address the

11 specific disputes that we've identified and other evidence

12 by their own statements, but asked the Court for delay

13 through a number of procedural mechanisms.

14        THE COURT:  Okay.  Well, the fact is, I've read

15 the Oved case and all, very interesting.  Involuntary is a

16 very strange animal.  It doesn't fit exactly, but the rules

17 are quite clear that you can, under 12(b)(6).  It's not

18 exactly a complaint, but, you know, and the -- but you can,

19 in that case, you can -- and my opinion is pretty firm on

20 that.  You look at the face of it -- of course, the face of

21 it is not an awful lot, obviously, on our -- on the

22 approved form.  Nevertheless, and you -- a court can and

23 this Court will if things I can take judicial notice of,

24 namely, the various pleadings and the -- and declarations

25 and so forth in other courts, that, in my opinion, anyway,

Page                                                                    31

1  give you a heads-up, but you made a good point, are

2  clearly, at least as to liability and/or certainly as to

3  amount, are inconsistent, which in my view are -- this

4  is -- these are statements.  It's not hearsay because these

5  are statements of a -- admission, actually, by, you know,

6  statements, you know, under the Federal Rules of Evidence,

7  a statement by a party opponent, namely, the petitioning

8  creditors, it's not even hearsay, it's a -- if it's a

9  statement by a party opponent.

10         And all these statements that you've presented --

11 and I'm going to take them one at a time, and that it seems

12 to me on its face, as an example, the -- you have the one

13 claim by Mr. Marco and International, it's clear on their

14 pleadings that they're both making a claim on the same

15 jewelry.  Is that correct, at least part of it?

16         MR. MARTICELLO:  Yes, Your Honor.  This is Robert

17 Marticello for Jadelle.

18         THE COURT:  Yeah.  And as far as -- get my --

19 excuse me a second.  The -- as far as Mr. Noval, he

20 basically says that he has the state court action, I

21 believe -- is it state or district court?  I know it's

22 another court, Mr. Noval.  It's a state court, right?

23         MR. MARTICELLO:  Right.

24         MR. RICHARDS:  Mr. Noval is in state -- this is

25 Ronald Richards.  Mr. Noval is in state court.  Mr. Marco

Page                                                                        32

1   is in federal court.

2          THE COURT:  Right, okay.  Now, as far as

3   Mr. Noval, he made, did he not -- and, again, this is just

4   for Mister -- so the debtor's counsel.

5          By the way, I know people, when they're -- when

6   the pleadings say "putative" or "alleged," the statute

7   doesn't say it, so I refer to the debtor as the debtor,

8   even though I know this is an involuntary, so that -- just

9   so you understand, that's -- there's nothing in the statute

10  about being an alleged debtor or so forth, but I understand

11  why debtors do it.

12         There he's saying -- he has different amounts.

13  In the state court he's asking for 7 million, in the

14  bankruptcy, 5.8, and he basically says -- and I can

15  certainly understand how the straightforwardness of that

16  is, "Well, I only put the amount 5.8 because that's the one

17  that he can't really dispute," Mr. Marticello, that's what

18  he says, right?

19         MR. MARTICELLO:  That's correct, Your Honor.

20         THE COURT:  Right.  Well, that, on its face, the

21  Ninth Circuit has ruled that that is an admission, in my

22  opinion, that he either owed more, and therefore it is in

23  dispute.  I mean, that was a recent change to -- and I

24  assume you agree with that statement, Mr. Marticello?

25         MR. MARTICELLO:  Yes, Your Honor.

Page                                                                33

1          THE COURT:  Right.  Now, as far as Mr. Noval, is

2   that's basically the two things.  One is he has different

3   amounts in different lawsuits for the same stuff, but also

4   he's admitted that the -- that only the amount that's --

5   anything else you want to say about Mr. Noval?

6          MR. MARTICELLO:  Your Honor, I have other

7   arguments, but I'm happy to --

8          THE COURT:  Well, no, I want to say anything --

9          MR. MARTICELLO:  -- rest if it's

10  (indiscernible) --

11         THE COURT:  -- to add because since it's your

12  motion, I'll let --

13         MR. MARTICELLO:  Well, I --

14         THE COURT:  -- you respond.

15         MR. MARTICELLO:  With respect to Noval, Your

16  Honor, I would highlight that I agree, Your Honor, the

17  starting point is that Mr. Noval has admitted that he has

18  taken inconsistent positions with his claim and stated a

19  much lower claim in the involuntary petition because he's

20  attempting to avoid the dispute that the Ninth Circuit has

21  said renders him ineligible to commence his case.

22         I would also say that based on his judicial

23  admissions, he alleges that he's a lender and that he

24  loaned Jadelle 5.8 million dollars, and that the loan is

25  governed by the terms of the debt -- the agreement that's

Page                                                                 34

1  attached to his complaint, but he's seeking an amount in

2  excess of what he has allegedly loaned to Jadelle.  He's

3  seeking seven million dollars and he says that seven

4  million dollars is the value of the collateral that secured

5  his loan.

6            THE COURT:  Yeah, and I saw that --

7            MR. MARTICELLO:  And so very simply, he --

8            THE COURT:  -- and I'm somewhat astonished by

9  that argument that you can do -- that he has a claim for a

10 certain amount and if the collateral doesn't cover it or if

11 it goes over that, then the debtor gets it back, right?

12           MR. MARTICELLO:  Well, correct, Your Honor, so --

13 but my point is as a matter of law his claim in *bona fide*

14 dispute because he's seeking amounts that he can never

15 recover, an amount in excess of what he actually loaned,

16 less payments received and interest on the loan.

17           THE COURT:  Yeah, no, it's --

18           MR. MARTICELLO:  So I think that clearly puts --

19           THE COURT:  It seems to me pretty clear, of

20 course, maybe not so clear from the other side, but it

21 seemed clear to me.  I mean, I'm the only person on this

22 call that doesn't -- that is totally neutral.

23           The next one, Mr. Marco --

24           MR. RICHARDS:  Your Honor, this is Ronald

25 Richards.  Can I address that before we go to the next

Page                                                                    35

1   piece of --

2           THE COURT:  No, not at this point.  I'll hear

3   from you.  This is not -- that's why I don't like it on the

4   phone.  You'll get to be able to respond, but I just want

5   to lay out the plaintiff's side -- that is, the debtor's

6   side, rather.

7           MR. RICHARDS:  Right.

8           THE COURT:  But you'll get a chance, obviously.

9           Mr. Marco, there he says that the 7,676,000,

10  et cetera, is not correct, but it's really only 6,950,000.

11  Is that correct, counsel for the debtor?

12          MR. MARTICELLO:  That's correct, Your Honor.

13          THE COURT:  And he also -- it's clear from the

14  various pleadings that they and First International are

15  both going after the same claim, that is, that

16  interesting -- I guess I'm living in a different world, but

17  I guess there are diamonds worth over a million dollars,

18  but they're fighting over the same diamond, are they not?

19          MR. MARTICELLO:  Your Honor --

20          COURTCALL OPERATOR:  And, Your Honor, this is the

21  CourtCall operator.  Were they able to hear you again?

22          THE COURT:  This -- is everybody still on the

23  line?  Oh-oh.

24          THE CLERK:  (Indiscernible)

25          THE COURT:  Mr. Marticello, you're not on the

Page                                                        36

1  line?  Okay, I guess if you don't hear me, you're not on
2  the line.
3          THE CLERK:  CourtCall, can you get them connected
4  again, please?
5          THE COURT:  Oh, Jesus.
6          COURTCALL OPERATOR:  Counsel, I just have to
7  confirm you all are still connected.
8          THE COURT:  Mr. Marticello, are you on the line?
9          UNIDENTIFIED VOICE:  Yes, we are.
10          COURTCALL OPERATOR:  (Indiscernible) is connected
11  as well.
12          THE COURT:  Is everybody -- for the operator, is
13  everybody -- why don't you just state your name really fast
14  if you can hear me.  Why don't --
15          MR. RICHARDS:  Ronald Richards.
16          MR. MARTICELLO:  We're -- Robert Marticello.
17  We're back, Your Honor.
18          THE COURT:  Okay.
19          MR. COHEN:  Baruch Cohen.
20          THE COURT:  Okay, okay.  Now, you heard -- you
21  heard what my question was that Mr. Marco has admitted that
22  the claim is wrong in the bankruptcy, the 7.6 million is
23  not correct.  The right amount is in the -- is 6.9 million,
24  is that correct, Mr. Marticello?
25          MR. MARTICELLO:  That's correct, Your Honor.

Page                                                                    37

1            THE COURT:  Right, and also they're fighting over

2    the same million-dollar diamond, are they not, that is, the

3    First International?

4            MR. MARTICELLO:  That's correct, Your Honor.

5            THE COURT:  Well, and so -- okay, that's -- and

6    let me -- excuse me just one second.  And so anything you

7    want to add as far as the problem with Mr. Marco's claim

8    being not subject to reasonable dispute?

9            MR. MARTICELLO:  I mean, the other inconsistency

10   we have with Mr. Marco, Your Honor, is that he's -- he's

11   alleged that he consigned jewelry to Mr. Rechnitz and not

12   Jadelle specifically, which also creates a factual dispute.

13   And I think that --

14           THE COURT:  Well, wasn't it Mister --

15           MR. MARTICELLO:  -- with respect to all three --

16           THE COURT:  I'm trying to remember -- excuse me.

17   Wasn't it Mr. Marco that -- the two suits he has going,

18   one's against the principals and one's against the

19   bankruptcy, is that correct?

20           MR. MARTICELLO:  That's correct, Your Honor.

21           THE COURT:  And in the one against the

22   individuals, he had the same complaint, but just changed

23   the names.

24           MR. MARTICELLO:  Correct, Your Honor.

25           THE COURT:  That's -- and is that in -- and, now,



Page                                                                    38

1   is that one in New York or is that here?  I just don't

2   remember.

3           MR. MARTICELLO:  It is a district court here,

4   Your Honor.  It's before Judge Rice, I believe.

5           THE COURT:  That's here in LA?

6           MR. MARTICELLO:  That's correct, Your Honor.

7           THE COURT:  Okay.  I would say if that's not

8   inconsistent, it's hard to imagine anything more.  I can

9   understand he might think, "Well, they're really one in the

10  same," but if you -- but if there's obviously a dispute, it

11  seems to me, if you sue the involuntary -- of course the --

12  that's what this case is, an involuntary, against the

13  princ -- the debtor, which is Jadelle Jewelry.  But if you

14  go and sue the principals and say that the property was

15  consigned to them, at least as far as I can see, it -- I

16  can understand why he might take inconsistent positions.

17  But for our purposes there's clearly a dispute by his own

18  mouth.

19          Would you agree with that, I assume,

20  Mr. Marticello?

21          MR. MARTICELLO:  I agree.

22          THE COURT:  Anything else about Mr. Marco?

23          MR. MARTICELLO:  No, Your Honor.

24          THE COURT:  Okay.  And then the final thing about

25  International, then, in their case it's basically the

Page                                                                39

1   dispute is because they and Mr. Marco are seeking in

2   their -- as their claim the same at least -- it may be more

3   than that, but at least the same diamond worth, you know,

4   one-point-something million dollars.  Would that be a fair

5   statement?

6            MR. MARTICELLO:  That's a fair statement, Your

7   Honor.

8            THE COURT:  Anything else about International, as

9   far as the objection to their -- them being a petitioning

10  creditor?

11           MR. MARTICELLO:  I think the other inconsistency

12  we have with First International is similar to what we have

13  with Mr. Noval, in the sense that First International takes

14  the position in the involuntary petition, under penalty of

15  perjury, as the amount of his claim, but the declaration he

16  filed, that his princ -- that the principal filed,

17  Mr. Anter filed, in connection with the Trustee's motion,

18  says that the amount is higher.  And so I think you have

19  this trend across the creditors where they've attempted to

20  understate their claim in the petition to avoid the dispute

21  that they know exists.

22           THE COURT:  Well, which is -- which years ago

23  that would have been fine.  I would have ruled that way.

24  We wouldn't probably be having, well, a lot of this

25  discussion, except for the statute was changed, dealing

Page                                                                40

1  with the dispute as to the amount, as opposed to just the

2  claim itself.  Anything you want to add till I hear -- I

3  assume Mr. Richards will reply?  Anything that you want to

4  say, Marticello, at this point?  You'll get to respond to

5  anything Mr. Richards says.

6          MR. MARTICELLO:  Just two points, Your Honor.  I

7  think, number one, I think when the Court talked about how

8  clear this is, I agree with the Court that it's clear

9  because of the Ninth Circuit law that we have in the *Blisik*

10 (phonetic) case, which makes clear that a dispute as to any

11 portion of their claim strips the creditor of standing to

12 file an involuntary petition.  And the Ninth Circuit case

13 in *Blisik* also states why we have that rule in the Code.

14 It's because disputed claims are to be resolved elsewhere.

15 Bankruptcy involuntary petitions is a measure of last

16 resort.  It's a disputed litigation claim that really needs

17 to be resolved in another forum, like --

18          THE COURT:  Well, let me --

19          MR. MARTICELLO:  -- where these claims

20 originated.

21          THE COURT:  -- stop you.  You can -- I want to

22 hear, just as far as the other side and then I'll get back

23 to you.

24          Okay, now who --

25          MR. MARTICELLO:  That's fine, Your Honor,

Page                                                                    41

1   understood.

2           THE COURT:  Now -- because there were several

3   people representing the various folks, but let me -- now, I

4   know, Mr. Richards, you represent at least Mr. Noval, is

5   that correct?

6           MR. RICHARDS:  Noval.  That's correct.

7           THE COURT:  Now as far as the other two, are you

8   going to deal with them or we have other counsel, Mr. Lev?

9   Are you going to deal just with Mr. Noval --

10          MR. RICHARDS:  No, Your Honor, I'm --

11          THE COURT:  -- or are you going to deal with all

12  three?

13          MR. RICHARDS:  I'm going to deal with Mr. Noval

14  in the global issue of using the other pleadings and

15  Mr. Cohen will address the comments the Court just made

16  about his specific claims, but it may be rendered moot by

17  some of my general positions.

18          THE COURT:  Well, I know your position.  I've

19  already -- just so you understand, I've made my ruling, and

20  I don't think you quite got it.  I can take judicial

21  notice, and generally speaking, not to the truth of the

22  matters asserted, but that's just by judicial notice.  But

23  if you're dealing -- if you're saying that I can't -- I

24  totally disagree, the cases are all over the place,

25  including my own, that -- so that's my ruling.  That's

Page                                                                      42

1   not -- that was not a suggestion, that I will consider and

2   have considered, I'm going to consider admissions by the

3   various people and all the things we've been discussing.

4   So I'd like you to --

5            MR. RICHARDS:  Yeah, I know --

6            THE COURT:  -- given that --

7            MR. RICHARDS:  Your Honor, I'm going to

8   (indiscernible) your point.

9            THE COURT:  -- I know you may not agree with

10  that, but -- well, let me ask you.  You don't agree with

11  that proposition?

12           MR. RICHARDS:  No, you can take judicial notice

13  of admissions.  I don't disagree with that, but what I do

14  disagree with is the fact that in a state court pleading,

15  the fact that you pled an amount that's inconsistent in the

16  petitioning creditor amount does not create a *bona fide*

17  dispute.

18           When you file claims in a bankruptcy court, you

19  typically file the claim.  You don't add in attorney's fees

20  or costs, where in state court, if there's a default,

21  you're required to put the highest number possible so

22  there's a due process issue if the person defaults.  The

23  pleadings rules are totally different, so --

24           THE COURT:  No, but wait a minute --

25           MR. RICHARDS:  -- you never --

Page                                                                    43

1          THE COURT:  -- you're forgetting a little thing

2     about Mr. Noval, who says in his pleading that he only put

3     the principal amount absolutely not in dispute.  You read

4     that, did you not?

5          MR. RICHARDS:  Yeah, but the reason why that was

6     put before you was because the principal amount is not in

7     dispute.  The number is not a static number.  Interest is

8     always accruing --

9          THE COURT:  No, that --

10          MR. RICHARDS:  -- there's always fees accruing.

11          THE COURT:  No, no, no, that's -- that isn't what

12     he said.  Do you want me to quote it?  "Only the principal

13     amount, absolutely no chance of being disputed."  Principal

14     amount.  That's what he's talking about.  That has no

15     chance of being disputed.

16          I hear what you're saying.  He has basically

17     admitted that this -- in my opinion, you can disagree if

18     you wish, but it's clear to me that he is saying he left

19     off claims, and it's -- and that's all the testimony we

20     have.

21          The problem is -- Mr. Richards, with your side is

22     you didn't bother in responding to all this.  So the record

23     I have right before me is that there's -- that as far as

24     Mr. Noval, he has not listed the entire claim, period.  He

25     hasn't explained what you are telling me.  That's not in

Page                                                                    44

1  his -- that's no evidence before me, so I --

2              MR. RICHARDS:  I know, but, Your Honor, it's a

3  12(b) motion, and you're not -- we didn't want to fall into

4  the trap of converting it to a Rule 56 motion.

5              THE COURT:  No, it's not a --

6              MR. RICHARDS:  If anything --

7              THE COURT:  -- this is not a summary judgment.

8  You don't get it.  The cases are quite clear that normally

9  in a 12(b)(6) you take it on its face, subject to things

10 that I can appropriately take judicial notice.  This is not

11 a summary judgment motion.  This is a 12(b)(6) motion.  And

12 the law is quite clear that in that motion, not converting

13 this to a summary judgment, that the question before me is

14 whether or not there's a reasonable dispute.  If he wanted

15 to respond, that's the only issue.  So I hear what you're

16 saying.  This is not a summary judgment.  This is a

17 12(b)(6) motion, and I can't consider --

18             MR. RICHARDS:  I know, but --

19             THE COURT:  -- the admissions.

20             MR. RICHARDS:  Right, but when the -- by

21 responding to the admissions and getting -- and presenting

22 testimony, we believed that that's -- that converts

23 mister -- now you're weighing credibility.  We're simply --

24 we simply set forth a *prima facie* claim of the amount that

25 we're contending is owed that is not in dispute.  You can't

Page                                                                45

1  create a dispute by saying, well, in another case, in a

2  different pleading standard, he's now requested all of his

3  expenses and interest, et cetera.  We don't have to take

4  that risk when we filed the petition.  We filed the

5  petition with a clean claim that is the principal amount,

6  just like even on the claim form for this district --

7              THE COURT:  Well, what --

8              MR. RICHARDS:  -- because we tell you to add --

9              THE COURT:  -- then what -- well, then what --

10  where -- that statement was made in what pleading?  And I

11  have it in front of me, just make sure you understand

12  that -- only the principal.  That was in what -- what

13  pleading was that made in?

14              MR. RICHARDS:  In our opposition to the motion to

15  dismiss.

16              THE COURT:  No, no, no, for -- in the oppo --

17  where did he make that statement?

18              MR. RICHARDS:  About what?

19              THE COURT:  That he only included --

20              MR. RICHARDS:  What specifically, Your Honor?

21              THE COURT:  Let me ask you that.  Mister -- let

22  me ask the debtor's counsel.  Where did you make that

23  statement?

24              MR. MARTICELLO:  Regarding the calculation of the

25  claim?

Page                                                              46

1              THE COURT:  Yeah, that he only --

2              MR. MARTICELLO:  Sorry, this is Robert Marticello

3    for the debtor.

4              THE COURT:  Yeah, Mr. Marticello.

5              MR. MARTICELLO:  It's in docket number 16.

6    That's Mr. Noval's declaration, page 6 --

7              THE COURT:  That's his declaration.

8              MR. MARTICELLO:  -- line --

9              THE COURT:  That's not in the state court

10   litigation.  That's his declaration.

11             MR. MARTICELLO:  Oh, correct, Your Honor.  I'm

12   sorry, I -- yeah, correct.  In the state court there's --

13   are you asking what -- if there was a statement regarding

14   the principal amount owed?

15             THE COURT:  Where he made that statement, that he

16   only included the things that are not in dispute?

17             MR. MARTICELLO:  The statement -- that statement

18   is in his declaration filed with the Trustee motion.

19             THE COURT:  Right, where he said --

20             MR. RICHARDS:  It's not in opposition to the --

21   that's where -- but that's not relevant to this motion.

22   We -- the -- we -- in this motion we didn't -- we don't

23   need to -- we don't -- we didn't want to fall into the trap

24   of getting into --

25             THE COURT:  No, no, wait, stop.

Page                                                                    47

1           MR. RICHARDS:  -- providing witness testimony --

2           THE COURT:  I'm asking you a very simple

3   question.  That statement was not in the state court.  That

4   was in his declaration before this Court, was it not?

5           MR. RICHARDS:  In opposition to the motion to

6   dismiss or the Trustee motion?

7           THE COURT:  Well, it doesn't matter, does it?

8   It's a statement that he made.

9           MR. RICHARDS:  Yes, it does.

10          THE COURT:  It's an admission --

11          MR. RICHARDS:  It actually does.

12          THE COURT:  -- is it not?  It was a statement in

13  a declaration.  I have a whole pile of papers before me,

14  but I know I've read it.  I can't remember which one.

15  Mr. Marticello, which -- the declaration was in regards to

16  what pleading?

17          MR. MARTICELLO:  It is document number 16.  It's

18  the trust -- it's the declaration of Victor Franco

19  submitted in support of the motion for a trustee.

20          THE COURT:  Okay.  And --

21          MR. MARTICELLO:  And it --

22          THE COURT:  -- I don't have that -- actually, I

23  have it in front of me, but can you read -- do you have

24  that in front of you?  Can you read the actual statement?

25          MR. MARTICELLO:  I do, Your Honor.  He says, at

P 888.272.0022 F 818.343.7119        BENHYATT
                                     Certified Deposition Reporters        www.benhyatt.com

Page                                                                48

1  line 22:

2           "In fact, in calculating my debt for inclusion in

3      the involuntary petition, I took the most conservative

4      approach by including the principal amount owed and an

5      amount that had absolutely no chance of being

6      disputed."

7           THE COURT:  Okay.  Now, Mr. Richards, that's in

8  this court.  That was not in state court.  I'm going to

9  leave it, but I'm telling you right now, I don't buy your

10 argument.

11          MR. RICHARDS:  Well, Your Honor, there's nothing

12 on --

13          THE COURT:  That's in this particular court and

14 part of these proceedings before me.  He is stating exactly

15 what the Ninth Circuit says is subject to reasonable

16 dispute.  I'll give -- do you want to say one more -- a

17 couple words on that, but I -- that is so obvious to me

18 what he's doing, what the Ninth Circuit says you can't do.

19 And he's not talking about fees in the state court or

20 anything.  He's talking about the claim in this court.

21          MR. RICHARDS:  I know, but --

22          THE COURT:  So do you have any final statement

23 about Mr. Noval?  And this is not --

24          MR. RICHARDS:  Yes, Your Honor, and

25 unfortunately --



Page                                                                    49

1              THE COURT:  -- by the way, summary judgment.

2  This is a 12(b)(6) motion.

3              MR. RICHARDS:  I know, but, Your Honor,

4  unfortunately, this state -- this testimony is being

5  misunderstood.  He's explaining in the declaration that the

6  claim that he's making in this case is not subject to

7  dispute.  He's not compelled to put on evidence of interest

8  or other things that they could dispute.  He's following

9  the procedures.  When you make a claim in the Central

10  District, you put the principal amount.  You don't put all

11  the other parts of the claim.  So he's explaining to you

12  why this --

13              THE COURT:  Well, for instance --

14              MR. RICHARDS:  -- there's an inconsistency in the

15  statement.

16              THE COURT:  -- let's say there are attorney's

17  fees involved in the claim.  Those -- and those might be

18  disputed --

19              MR. RICHARDS:  (Indiscernible) --

20              THE COURT:  -- on not being reasonable.  Isn't

21  that what the Ninth Circuit is talking about?

22              MR. RICHARDS:  No, Your Honor, because attorney's

23  fees are only by a motion.  You wouldn't put stuff that

24  hasn't been ruled on yet.  In the original claim you only

25  put the principal.  You can't put stuff that is not decided

Page                                                              50

1  yet in the future, so --

2           THE COURT:  Oh, you're not saying --

3           MR. RICHARDS:  -- when you petition, if

4  someone's --

5           THE COURT:  I've seen claims --

6           MR. RICHARDS:  -- you don't --

7           THE COURT:  -- all the time where they say, my

8  claim is such-and-such plus attorney's fees allowed by the

9  contract.

10          MR. RICHARDS:  Well, that's because --

11          THE COURT:  Doesn't that happen all the time?

12          MR. RICHARDS:  If there's a contract -- if

13 there's a contract that calls for prevailing party

14 attorney's fees, you have to first win.  So, no, you

15 wouldn't -- that would only be if there's like an agreed-

16 upon amount in a contract for attorney's fees --

17          THE COURT:  Well, in any case --

18          MR. RICHARDS:  -- like a specific amount.

19          THE COURT:  -- Mr. Richards, I'm going to end the

20 discussion on this.  I hear you.  I just totally disagree

21 and not further any -- and he is not -- because his -- he

22 has stated it himself.  You can twist it and put any spin

23 you want on it, but it's absolutely clear, his statement

24 that he's -- what he said, and that he is stating that he

25 is only listing the amount, absolutely it can't be

Page                                                                    51

1   disputed, and that tells me that there is more to it, he's

2   admitting it.  So I am not going to allow him as a

3   petitioning creditor.

4              Who is going to talk about Mr. Marco?

5              MR. COHEN:  Your Honor, that would be me, Baruch

6   Cohen.

7              THE COURT:  All right.  Well, mister -- you've

8   seen where, in the -- he and International going after the

9   same diamond, are they not?

10             MR. COHEN:  We do not agree that they're going

11  after the same diamond.  In fact, I didn't see any evidence

12  presented by the putative debtor that's it's the exact same

13  jewelry.  We liq --

14             THE COURT:  It looked like to me, in the claim --

15             MR. COHEN:  I did not see the exact same jewelry.

16  Plus, you know, we have a total of approximately 6.9.  You

17  know, there's been transactions between the parties as to

18  what the -- both of --

19             THE COURT:  No, but wait a minute.

20             MR. COHEN:  -- these balances, but we --

21             THE COURT:  Didn't he say it in the state court

22  action that -- isn't the claim 7.6?

23             MR. COHEN:  The --

24             THE COURT:  Take a look at --

25             MR. COHEN:  That was in addition -- yeah --

Page                                                                        52

1              THE COURT:  -- his statement in the petitioning

2    creditors.  Isn't it 7.6 million, no 6.9?

3              MR. COHEN:  Correct, I believe so.

4              THE COURT:  Okay.  So right on the face of it --

5              MR. COHEN:  But then, again -- but we --

6              THE COURT:  -- he's admitting in the other

7    action --

8              MR. COHEN:  -- but let me just finish, Your

9    Honor.  The point --

10             THE COURT:  -- that it should be less than the

11   7.6.

12             MR. COHEN:  Well, you know, when we get a letter

13   from debtor's counsel saying that they want to pay my

14   client -- you know, this is the February 4th, 2020 letter.

15   So regardless of what the number was from one pleading to

16   the other, when Rechnitz's or Jadelle's lawyer writes us

17   saying, "We want to pay you," you know, that's the debtor

18   stating that, "We have no issue as to your amount, as to

19   Marco."  And the Court hasn't addressed that, but I don't

20   see how you could get around, when the debtor writes the

21   letter and saying, "Hey, you know, we have a family member

22   who wants to pay you," not raising any dispute as to

23   amount --

24             THE COURT:  I totally disagree.

25             MR. COHEN:  -- not raising any --

P 888.272.0022 F 818.343.7119                **BENHYATT**   www.benhyatt.com
                                             Certified Deposition Reporters

Page                                                                    53

1          THE COURT:  I hear you, and you're a fine lawyer,

2     but that's just -- and as a matter of fact from the other

3     side, namely on your side, that there's this family member

4     out there.  I don't think you jump and down and say, "Wow,

5     they're going to pay."  Would that be a fair statement?

6          MR. COHEN:  That's not necessarily accurate.

7     This is a family member who's quite a philanthropist who

8     has a good reputation, you know, of being philanthropic.

9     He's well known within the -- to our client.  He's well

10    known within the Orthodox Jewish community.  So without

11    dropping any names, when they say that, you know, Bill

12    Gates is paying your bill you take note.  And when we get a

13    letter saying, "Hey, we're paying your bill, you know,

14    we're just trying to fund it" and the debtor's letter says

15    absolutely nothing about there being a dispute then right

16    now what that --

17         THE COURT:  Well, no.  I --

18         MR. COHEN:  By the way --

19         THE COURT:  I hear you.  But let me ask you this.

20         MR. COHEN:  And Marco is now --

21         THE COURT:  This -- isn't he suing -- but getting

22    back to Mr. Marco, isn't he suing the -- for the same

23    jewelry, the individuals, in state court?

24         MR. COHEN:  I do not be -- no.  We're suing the

25    Rechnitzes in state court.

P 888.272.0022  F 818.343.7119       BEN HYATT       www.benhyatt.com
Certified Deposition Reporters

EXHIBIT "7", PAGE 110

Page                                                                54

1          THE COURT:  For the same jeweler.  They're not

2  the --

3          MR. COHEN:  We are not suing Jadelle.

4          THE COURT:  Doesn't the state court action say

5  the matter is --

6          MR. COHEN:  I do not believe it's --

7          THE COURT:  I've seen the complaint.  It says --

8          MR. COHEN:  I'm -- I do not believe it --

9          THE COURT:  -- that the matter is consigned where

10  it's consigned to the -- he took the same language from

11  here and said -- in this case he says, "These jeweler items

12  were consigned through the debtor."  And in the state court

13  action he says the same language, they were consigned to

14  the Rechnitzes.  Isn't that the correct?

15          MR. COHEN:  You are correct, but it's

16  interchangeable because the invoices are both to Jadelle

17  and to Jona.

18          THE COURT:  Well, you say that but he didn't say

19  that.  How is they didn't -- he didn't say -- what he's

20  saying in the one complaint is --

21          MR. COHEN:  I think we're --

22          THE COURT:  He doesn't mention Jadelle at all,

23  does he, in the state court action?

24          MR. COHEN:  Because the state court was stayed

25  by -- it was a U.S. District Court matter, Your Honor,

Page                                                                55

1   before --

2           THE COURT:  Okay.  District Court.  Okay.

3           MR. COHEN:  But in that matter -- that matter

4   because Jadelle already was -- there was an involuntary

5   already placed against it, so there was -- you know, there

6   was no real need to identify Jadelle as the responsible

7   party when in essence the invoices say both.

8           THE COURT:  No.  You're talking -- you're adding

9   something to it.  You're saying what the invoices say.  In

10  one pleading it says it's the individuals that -- consign

11  to it and then the involuntary says there was -- it was the

12  debtor Jadelle.  Those are -- you don't think those are

13  inconsistent positions --

14          MR. COHEN:  I think -- I think Peter Marco --

15          THE COURT:  -- that this lease -- not as a

16  matter --

17          MR. COHEN:  No, because when --

18          THE COURT:  -- not to decide it ultimately

19  because they might conceivably both be liable.  But I'm

20  saying as far as whether or not there is a -- on the face

21  of it a dispute as to who's liable.  Why does that not show

22  a dispute, just on its face?

23          MR. COHEN:  We don't believe it's a dispute.

24  They are one and the same.  It's for another substance.

25          THE COURT:  Well, you're -- again, you say

Page                                                                          56

1  they're one and the same but isn't that subject to dispute?

2  They may say, "No, it's not."

3          MR. COHEN:  We lost the judge again, CourtCall

4  operator.

5          THE COURT:  You can't hear me?  Oh-oh.

6          ATTORNEYS:  We hear you now, Your Honor.

7          THE COURT:  I'm back.

8          MR. RICHARDS:  Yeah.

9          And, you know, are you sure, Mr. Cohen, that

10  you've looked at the pleading because I have and it seems

11  to me that there -- that International and Mr. Marco are

12  going after at least one of the same items.  Have you

13  looked at the documents?  Are you telling me that they

14  don't overlap?

15          MR. COHEN:  They're mis -- see, that's where the

16  confusion is.  There may be an overlap but that in terms of

17  the trans --

18          THE COURT:  Well, not a maybe.  They -- it seems

19  to me there is.  Am I -- I'm asking you as an officer of

20  the court, have you actually looked at the claims as to

21  whether or not there really is, at least as to this 1.2

22  million or whatever it's worth, this diamond, are you

23  telling me that that's not the case?

24          MR. COHEN:  No.  I'm saying there is overlap but

25  I'm saying it's a confusing web of transactions --

Page                                                                                    57

 1              THE COURT:  No, no.  Wait a minute.

 2              MR. COHEN:  -- with Rechnitzes --

 3              THE COURT:  Back up.

 4              MR. COHEN:  -- Jadelle and my client.

 5              THE COURT:  That isn't what you just told me

 6 about a couple minutes ago.  You said, no, there's no

 7 overlap.  Be very careful, Mr. Cohen, that --

 8              MR. COHEN:  No, what I'm saying is I don't see

 9 ev -- Your Honor, I'm very careful.  I said I don't see

10 evidence of any overlap.

11              THE COURT:  Okay.

12              MR. COHEN:  It's hard to --

13              THE COURT:  Let me -- let me go back to

14 Mr. Marticello.  Why don't you point out to it?  I've seen

15 it but I want you to help Mr. Cohen out.

16              MR. MARTICELLO:  Your Honor, the evidence is in

17 Mr. Marco's pleading.  It is page -- it's Bates-stamped 100

18 of Exhibit 7 where it lists First International and the --

19 Diamond and the amount.

20              THE COURT:  And that -- the Diamond -- I forget.

21 I looked at it and my eyes kind of glazed over, but it does

22 describe -- I don't know what all those numbers mean, but

23 why don't you -- do you have in front of you what the -- I

24 don't know, is that 16 carat?  I don't know.  I don't know.

25 I'm not a jeweler so I have no idea.

P 888.272.0022  F 818.343.7119    BEN HYATT    www.benhyatt.com
                                   Certified Deposition Reporters

Page                                                                58

1          MR. MARTICELLO:  Yeah, Your Honor, it -- under

2    the description -- and this is Robert Marticello for the

3    debtor.

4          THE COURT:  Yes.

5          MR. MARTICELLO:  Under the description it says

6    EID -- EID NT 13.62 d/bbs1, then the number sign, and then

7    the number sign, and then the number is 11776564.

8          THE COURT:  And again -- just for the record

9    again --

10          MR. MARTICELLO:  And the Court --

11          THE COURT:  -- you're reading from what?

12          MR. MARTICELLO:  I'm reading from -- this is our

13    request for judicial notice in support of our motion to

14    dismiss.  It's Exhibit 7, Bates-stamped 100.

15          THE COURT:  No, no.  What is the document?  I

16    think I have it but just for the record to be clear what

17    are you reading from?

18          MR. MARTICELLO:  The doc -- oh, the document,

19    it's Marco's third -- amended third-party complaint.

20          THE COURT:  All right.  And that's filed in the

21    district court?

22          MR. MARTICELLO:  Correct.

23          THE COURT:  Right.  And now shifting to

24    International, they're -- how -- they show that they're

25    looking for the same thing.  How do you connect the two?

P 888.272.0022  F 818.343.7119       BEN**HY**ATT        www.benhyatt.com
                                     Certified Deposition Reporters

Page                                                                59

1  What about things from them?

2         MR. MARTICELLO:  Well, one, Your Honor, the place

3  that I just read in Marco's third amended complaint, it

4  actually lists First International as the vendor for that

5  particular item, but also coming from Mr. Anter in this

6  Court he submitted the declaration in support of his motion

7  for a trustee --

8         THE COURT:  Right.

9         MR. MARTICELLO:  -- which is document number

10 15 -- and he states that he consigned certain items to

11 Jadelle and in support of that item he attaches his memos

12 and the memo lists the same item.

13        THE COURT:  All right.  Well, that was my

14 recollection.  I didn't remember all the documents.

15        But now, Mr. Cohen, are you -- do you -- are you

16 listening?  Do you now see that they're talking about the

17 same item?

18        MR. COHEN:  So, Your Honor, I'm not sure they're

19 the same item.  We -- first of all, First International did

20 not file a lawsuit yet.

21        THE COURT:  No.  They haven't filed a lawsuit.

22        MR. COHEN:  Number two, that this --

23        THE COURT:  Anyway, let's put it this way.

24        MR. COHEN:  And the --

25        THE COURT:  It is absolutely clear to me that

Page                                                          60

1  they -- and it's not unusual -- but they're making the same

2  claim and they may not even know amongst themselves through

3  all these consignments and so forth, but it's absolutely

4  clear to me that they're going after the same diamond.  And

5  again, I don't write the law.  I don't make the law.  But

6  it's clear that in that case they're not only talking about

7  the amount of the claim but actually as to what's included

8  in the claim.

9          So, Mr. Cohen, do you have anything to add to

10 either Mr. Marco or -- you're dealing with International as

11 well, right?

12         MR. COHEN:  You're right, Your Honor.  I'm

13 dealing with both and the problem is that the description

14 doesn't match in both.  And in an ideal world if they did

15 match I would be more ready and eager to acknowledge and

16 submit to the point, but they don't match and therefore I'm

17 not 100 percent sure that it's the same.

18         THE COURT:  Okay.

19         MR. COHEN:  But --

20         THE COURT:  Well, there is reference I am

21 convinced --

22         MR. COHEN:  Yeah.

23         THE COURT:  Because there is reference in

24 Mr. Marco's papers that it dealt with International.

25 Obviously, the money we're talking about at this level a

Page                                                                61

1   lot of these, you know, outfits and people are dealing with

2   each other it's not unusual.  But I am convinced that --

3          MR. COHEN:  Right.  But the additional point,

4   Your Honor --

5          THE COURT:  Yes.

6          MR. COHEN:  The additional point, Your Honor, is

7   that Jadelle issued 2.1 -- $2,122,760 worth of bogus

8   checks.  There is absolutely no dispute that Jadelle issued

9   that amount of bounced checks.

10          THE COURT:  Well -- and, Mr. Cohen, stop.

11          MR. COHEN:  Well, even --

12          THE COURT:  You're changing the subject.  I --

13   you know, it is pretty clear to me -- and this is not a

14   criminal court.  This is just a bankruptcy court dealing

15   with an involuntary.  I have no doubt from reading all

16   these pleadings, and the debtor doesn't say they're not

17   correct, that there's all kinds of stuff going on and

18   jewelry that's missing and so forth.  So I don't doubt that

19   for a second.

20          But the only question for me is a very simple one

21   really, is whether or not there is a -- under the -- under

22   bankruptcy law whether there is a dispute as to the amount

23   of the debt.  So I have no doubt from these pleadings that

24   probably millions of dollars are probably at least owed by

25   the debtor.  That I have no doubt about it.  The question

Page                                                                    62

1   is how much?  And that's what this is about.  So it seems

2   to me --

3           MR. RICHARDS:  Your Honor, excuse me.  Will we be

4   allowed to --

5           THE COURT:  -- that at least as far as people who

6   obviously work together, Marco and International, there is

7   an overlapping claim.

8           MR. RICHARDS:  Your Honor, we should be allowed

9   to -- this is Ronald Richards.  We should be allowed to

10  amend our pleadings to -- if that's an issue of any --

11          THE COURT:  No.  Let me stop you.  No.  This is

12  not a -- this -- no, this is a very simple matter.  This is

13  not a Ping-Pong match.

14          So as far as all three of these it is clear to me

15  and for the re -- this is a discussion that there are

16  disputes I've already indicated as to the amount, as to who

17  they're owed to, the dispute as to it and I've listed

18  pretty much all of them.

19          So, you know, there's not -- this is not a

20  pleading where you can amend.  This is dealing with the

21  petition.  But what I am going to do as follows.  Again --

22  and this is not the normal complaint, answer and so forth.

23  So the Rule 12(b)(6) does apply but in kind of an unusual

24  way.  What I'm going to do as follows.

25          It -- for the reasons I've stated on the record I

Page                                                                63

1  agree with the debtor that these three have disputes, at

2  least as to the amount and/or as to the claim itself.

3  However, again, I'm not ruling -- of course, I'm

4  reiterating myself *ad nauseum* that indeed that's the final,

5  the ult -- at the end of the day those claims can't be

6  proven.  I'm just talking about whether petitioning

7  creditor -- I don't doubt that they have claims.  It's just

8  a question of whether they're subject to the dispute.

9  That's what's before me.  A totally different question.

10        But what I may do is this and that's why I

11  originally -- and, by the way, so I -- what I'm going to do

12  is the following.  I am going to require the -- both -- we

13  have two -- we -- there are two principals of this debtor,

14  right, the Rechnitz -- however you pronounce their last

15  name -- but that is correct, right, from the debtor -- from

16  the debtor's standpoint there are two?  They're the -- the

17  only two people in the LLC.  They're the only members, is

18  that correct?

19        MR. MARTICELLO:  To my -- Your Honor, this is

20  Robert Marticello for the debtor.  My understanding is that

21  Rachel Rechnitz is the member.  I -- to my knowledge

22  Mr. Rechnitz is not a member.

23        THE COURT:  Well, what is he?  I thought he -- I

24  thought you -- what --

25        MR. RICHARDS:  Your Honor, he was --

Page                                                                      64

1          THE COURT:  In an LLC you're either a member or

2   you're not.

3          MR. RICHARDS:  Your Honor, Ronald Richards.

4          THE COURT:  I mean, I don't understand.  Why is

5   he not a member?

6          MR. RICHARDS:  His wife is the member.  She's the

7   member.  He's the -- he's a member under community property

8   law.

9          THE COURT:  No, no.

10         MR. RICHARDS:  And he's the one that frank --

11         THE COURT:  Is he an actual member on the papers?

12         MR. COHEN:  He is not, Your Honor.  This is

13  Baruch Cohen.  He is not a member.

14         MR. RICHARDS:  They objected to all of our

15  discovery requests, all of them that we sent, Your Honor,

16  that were -- last night we received blanket objections.

17         THE COURT:  As to what?  I don't have that before

18  me.  Because what I'm going to do --

19         MR. RICHARDS:  We --

20         THE COURT:  So you're telling me that again the

21  community -- obviously, because of the community property

22  is one thing.  I am going to order the debtor -- so she's

23  basically the one who runs the business end, is that

24  correct?

25         MR. RICHARDS:  No.  Mister Rechnitz -- Jonah

Page                                                                65

1   Rechnitz runs the business.

2          THE COURT:  Excuse me?

3          MR. RICHARDS:  Jona Rech -- this is Ronald

4   Richards -- Jona Rechnitz runs the business.  His wife has

5   been listed as a member, but the person that's committing

6   these frauds and tendering the worthless checks is Jona

7   Rechnitz in connection with his wife.  They were married.

8   They have six children --

9          THE COURT:  Okay.

10          MR. RICHARDS:  -- together.

11          THE COURT:  Well, what I'm going to tell you what

12   I'm going to do because I hear --

13          MR. RICHARDS:  It's a community property

14   business.

15          THE COURT:  -- what's going on.  In all the

16   pleadings it seems like the -- they're both involved.  I

17   don't know which one is more involved.  I have no idea.

18          But I am going to do this.  I am going to require

19   the debtor -- and that is both Mr. and Mrs. Rechnitz -- to

20   file a declaration.  I'm going to give you -- I'm going to

21   give them one week from today, that is they have to file a

22   complete list of all creditors of the debtor.  Those are

23   the only two people I know were involved and they're going

24   to have to -- I'm giving them one week.  They would know

25   who the various creditors are.  They have one week from

Page                                                                      66

1  today to file that, listing all creditors of the debtor

2  with the nature of the debt.  Just a summary but just, you

3  know, for its -- and jew -- consigned jewelry, what have

4  you, because you had said originally -- I think one counsel

5  for the debtor that they're all paying their debts as they

6  become due.  I forget who made that statement but one of

7  you did.

8           So obviously somebody and I'm not going to be --

9  worry about which one -- I want a declaration from both of

10 them signing it as to who the -- who are the creditors, how

11 much is owed, the nature of the debt, contact information.

12 namely the address, email, phone, anything possible in

13 order to allow the creditors, as you indicated in your

14 pleadings, to be able to get other people involved.

15          I know at least two of the creditors here have

16 filed suit.  International hasn't.  So -- but nevertheless

17 the law does require now with the Oved case with the big

18 problem with the judge.  I don't know reading that case was

19 fascinating as to how the things moved so quickly.  I'm

20 only trying to be fair to both sides.  But it seems to me

21 within one week the debtor and the joint I'm ordering both,

22 both of the principal -- the principals, that would be Mr.

23 and Mrs. Rechnitz, to be able to order under penalty of

24 perjury to file a statement of all the creditors.

25          And then after that I'm going to -- I am going to



Page                                                                  67

1  give the -- after receipt of that list I'm going to give --

2  and I'll give some dates -- I'm going to give the creditors

3  30 days to contact them.  This is not a matter of just

4  discovery, just to be able to -- with the really creditor

5  to be able to see whether they would join in.  They may

6  very well want to.

7          And then what I'm going to do, I'll give you the

8  actual dates.  That should be plenty of time.  That is 30

9  days after you get the receipt.  And if the debtor -- the

10 principals play games and don't give adequate information

11 that will be a real problem.  Then I'm going to continue

12 this for a status conference.  I'll give you a specific

13 date for that.

14         And at this particular time, even though the --

15 and I'm not going to dismiss the case.  I will be preparing

16 the order in this case, by the way.  I'm not going to

17 dismiss it and I'm not going to appoint a trustee.  I see

18 no reason whatsoever at this point for appointing a

19 trustee.  I think the allegations are the debtor did some

20 really -- the principal -- I know the debtor did some

21 really bad things, but I see no -- I think in this

22 particular case if a trustee ultimately is appointed it's

23 going to be preferences, fraudulent transfers and searching

24 out things.  But I doubt seriously, from what I've heard,

25 that if in the premises they're going to find at that

Page                                                                68

1  location an actual thing.

2          So I see -- I don't see at this point any need

3  for a trustee, so I will prepare an order without

4  prejudice.  I'm denying the motion for a trustee.  I'm

5  going to -- so I'm going to -- I will set this for a

6  further status conference to see whether or not the debtors

7  have complied and this -- again, this is under penalty of

8  perjury.  So I would strongly suggest that they tell the

9  truth because, if not, they know the consequences.  I'm

10  required by law to refer it to the Justice Department.  So

11  I fully expect that in far -- and this is not a -- just a

12  request.  This is an order.  If the debtors -- if both the

13  debtors --  principals, do not comply with my order I will

14  enter an order for relief.  So I want to make it very clear

15  at this point I've expressed my view as to, you know, the -

16  - why these particular creditors or these who are subject

17  to dispute -- not that the claims are invalid, but just

18  that they're subject to dispute -- and I'm required by law

19  to give them an opportunity and give them 30 days from

20  receipt of these declaration from the joint declaration

21  from the principals as to a listing of all of their

22  creditors.

23          Any -- and again, I'm not going to change what

24  I've said and I'll give you specific dates, but any -- let

25  me ask from the debtor's standpoint.  This is really from

P 888.272.0022  F 818.343.7119              www.benhyatt.com

Page                                                                69

1  the debtor, Mr. Cohen, or -- do you -- so if you have any

2  question about what I've ordered the debtor -- the

3  principals of the debtor to do?

4          MR. MARTICELLO:  I -- Your Honor, this is Robert

5  Marticello for the debtor.  I don't have a question, but I

6  would like to just make one point if I could, Your Honor,

7  because the Court stated it's so required to offer an

8  opportunity to join and I actually do not think that is

9  required under the *Vortex Fishing* cases in the Ninth

10 Circuit --

11         THE COURT:  I'm not saying it's required.  I am

12 requiring it.

13         MR. MARTICELLO:  Okay.  I understand.

14         THE COURT:  Do you follow?  This is -- I'm trying

15 to -- I am -- I have the power to do it and I'm doing it.

16 I don't see anything unreasonable.  The -- again, the law

17 is kind of a -- it's pretty clear to me after reading the

18 various opinions that I have to, and I will since I've

19 disqualified, at least for being petitioning creditors --

20 the three petitioning creditors and they have to have a

21 reasonable time to be able to see if they can get other

22 creditors to join in.  It's that simple.  What's -- so

23 what's so difficult about that to understand?

24         And who was it that was just speaking?

25         MR. MARTICELLO:  It's not -- Your Honor, I

Page                                                                    70

1  apologize.  This is Robert Marticello for the debtor.

2         THE COURT:  Yeah.  Well -- and that's -- you

3  understand.  That's not difficult to understand, is it,

4  what I'm ordering?

5         MR. MARTICELLO:  It -- I understand the Court's

6  order.

7         MR. RICHARDS:  Your Honor, this is Robert

8  Richards.  Just so the record's clear because you keep

9  referring to the debtor's principal.  Do you mean Jona and

10 Rachel Rechnitz are required to file a declaration?

11        THE COURT:  Those are the two people.  That's it.

12 Those are the only people that I -- there was this other

13 declaration person who was signing checks.  But, yes, those

14 are the two people that -- as far as I can tell.  That's

15 why I asked you when we started this hearing, who's really

16 -- is -- are the people behind the debtor and obviously

17 those are the two people.  And it's -- and the -- and I

18 assume they have -- if they're not ans -- to an -- able to

19 answer that question I'm going to enter an order for

20 relief.  I want them to answer truthfully and I want to

21 give the creditors -- the petitioning creditors an

22 opportunity to see if they could convince the three other -

23 - assuming there are more than 12 -- creditors to be able

24 to do it.

25        Any questions about what I'm ordering?

Page                                                                          71

1          MR. MARTICELLO:  No, Your Honor.

2          MR. RICHARDS:  And from -- this is Ronald

3    Richards.

4          THE COURT:  Okay.  Then I'm going to do this.  I

5    am going to -- there's -- seven days should be more than

6    enough time.  This is not a difficult thing to do, is it,

7    Mr. Marticello?  That should be a simple thing for them to

8    do, right?

9          MR. MARTICELLO:  I believe we can accomplish it

10   in seven days, Your Honor.

11         THE COURT:  Okay.  So I'm going to do this.  I'm

12   going to give you some dates and I'll look at my calendar

13   here.  Just so you understand, I just want to get -- I want

14   to give each side a fair opportunity to present the case

15   but I think it's important for both sides, quite frankly,

16   to get this resolved one way or the other.  So I'm still

17   looking for my -- I'm looking for my calendar.

18         Stacy?  No, no.  An actual calendar.

19         THE CLERK:  (Indiscernible.)

20         THE COURT:  I have such a pile of papers here.  I

21   can't find my little -- there it is.  It was buried

22   under -- okay.  So today, this is June 9th.  I will pre --

23   I -- it may take me a day or two to prepare this order, but

24   this is the order right now.  In fact, you may not get the

25   written one.  That's why I want to make it absolutely

Page                                                                72

1  clear --  everybody hears me -- this is June 6 -- excuse
2  me, this June 9.  By the end of the day on June -- let's
3  say -- I'm going to change this.  Everybody knows it's all
4  done by email.  I want it filed with the Court by 3 o'clock
5  on the 16th of June.  So we'll get it and the other -- and
6  the -- obviously, all the three petitioning creditors or
7  counsel they will get the -- this list.
8            Again, just so there's no misunderstanding, it's
9  got to be signed by both under penalty of perjury that it
10 is a complete list of all creditors of the debtor.  And
11 with the amount of the debt -- of the name of -- of course,
12 the name of the creditor, all indication in how to reach
13 them, namely, phone, email, mailing address and the nature
14 of the debt.
15            MR. RICHARDS:  Your Honor, did you say email,
16 too?
17            THE COURT:  Everything.
18            MR. RICHARDS:  Email address?
19            THE COURT:  Any way of contacting them.
20            MR. RICHARDS:  Okay.
21            THE COURT:  That is a physical address, phone,
22 fax, any way of communicating with them, then -- and of all
23 of them.  Again, the amount, the name --
24            MR. RICHARDS:  Any cell phones if they have it?
25            THE COURT:  Excuse me?



Page                                                                73

1          MR. RICHARDS:  And cell phones if they have it?

2          THE COURT:  Yeah.  Well, of course.  Only if they

3  have it.  But I'm not going to be too impressed if they

4  say, "Gee, we really can't reach them."  That would be

5  pretty -- a pretty ridiculous response.  So in any case

6  it's the name, what the debt's for, just a summary, you

7  know, for a consigned whatever, whatever it is, or it could

8  be non-jewelry.  It could be other debts.  I don't know

9  what the debtor might have, rent on the place, whatever.  I

10 don't -- I don't know.  But whatever debts.  The name of

11 the creditor, the amount, the nature of the debt and every

12 contact information, an address, email, fax, phone, you

13 know, whatever.  And that -- and it's asked by 3:00 p.m.

14 next Tuesday.  And that has to be delivered.

15         And from there I'm going to give the petitioning

16 creditors -- to the approximate -- let's see, that's one,

17 two, three -- I'll give actually a little more.  I'll give

18 to July -- Bastille Day, no particular importance to us

19 here in the U.S. -- July 14th for the creditors to try to

20 get any additional person to file -- to join in in the

21 petition.

22         Is that clear from the petitioning creditors?

23 Mr. Richards, any of the others, is that clear?

24         MR. RICHARDS:  Yes, Your Honor.  Just a quick

25 question.  When you say "deliver this list," I'm assuming

1   that they are going to file the two declarations on the

2   docket, correct, by 3:00 p.m.?

3           THE COURT:  Oh, they'll be filed but also they'll

4   be served by email on the -- all the three petitioning

5   cred -- counsel for the petitioning creditors.  Yes.

6           MR. RICHARDS:  Okay.  Thank you.

7           THE COURT:  And then you'll get to the 6th -- to

8   July 14th by -- again by 5:00 but we'll make it again by 3

9   o'clock.  Just to make it clear, by 3 o'clock on July 14th

10  to have to get somebody else to join in and I'll have no

11  idea how many of those other people are.

12          And, by the way, if there are -- of course, if

13  there are less than 12 creditors there can be just one but

14  so -- but I don't know.  So if there -- so we all know

15  that, that's a bankruptcy if there's more than 12 or 12 or

16  more.

17          So what I'm going to do and I will know and you

18  will know by the 14th of July at 3 o'clock if you have at

19  least the required number of creditors and then I'm going

20  to set it for a status conference two weeks after that or

21  approximately.

22          Do we have a date?

23          THE CLERK:  We have July 7th at 3:00.

24          THE COURT:  Okay.  So that would be -- no, no, it

25  can't be July 7th.  Two weeks after the 14th.  So that

1  would be -- that would be the 28th.

2          So I'm going to continue this for a status

3  conference on July 28th at 10:00 a.m. and I'll find out at

4  that point whether I dismiss this because there is not a --

5  there are no -- not sufficient creditors or if there are go

6  from there.  If there are some filed there may be further

7  objections to them.  I have no idea but I want -- I -- what

8  I want is a status report one week before the 28th.  That

9  is on the 21st I want a status or joint status from just

10 to -- just telling me what's happening.  That is, the

11 counsel for the -- well, there's one counsel for the debtor

12 and I guess there are either two or three, depending on how

13 you count, on the creditors to tell me what's going on.

14 There are a lot of possibilities.  It may be that there's

15 no further -- no further, you know, creditors and then I --

16 and then, of course, there's going to be a motion for

17 attorney's fees or -- by the debtor, but I don't know that

18 for sure but that would likely happen.  But if there are

19 other creditors then I'd have to know on that status report

20 whether or not there's a dispute as to who -- you know,

21 they're being eligible.

22          And so I'm going to -- I will ultimately prepare

23 an order on this, but as far as getting that list out and

24 as far as the response and all, I want everybody to know

25 exactly what's going to happen and we will again have

Page                                                                        76

1   that -- let's see, the hearing will be when again?

2          THE CLERK:  You said July 28th at 10:00.

3          THE COURT:  Yeah.  July -- it would be July 28th

4   at 10:00.

5          Any questions at all about what I've said?  I'm

6   not asking the creditors to agree.  I just want to

7   understand what I've done.  Any question at all?

8          MR. COHEN:  Your Honor, this is Baruch Cohen.  I

9   have a question for you.

10          THE COURT:  Yes.

11          MR. COHEN:  Baruch Cohen on CourtCall.  I have a

12   question.  Okay.  So the principals of the debtor, Mr. and

13   Mrs. Rechnitz, to submit a declaration as to the debts of

14   Jadelle as of what date?  As of the petition date?  Because

15   I suspect that the Rechnitzes are immediately upon

16   conclusion of this hearing going to try and interfere with

17   creditors --

18          THE COURT:  Oh, no, no.  That's --

19          MR. COHEN:  -- and try to pay them off.

20          THE COURT:  No, the law is -- no, it's clear and

21   it's a good question and for lots of reasons.  It's as of

22   the petition date because what people have tried to do

23   is -- in the past is try to pay off all the debts, you

24   know.  And, of course, that's not going to happen --

25          MR. COHEN:  Right.

Page                                                          77

1            THE COURT:  -- in this case because you've got

2   millions of dollars in this one.  I have had a couple cases

3   where --

4            MR. COHEN:  There -- over 30 million we can

5   leave, Your Honor.

6            THE COURT:  -- the debtor says --

7            MR. COHEN:  But what the --

8            THE COURT:  "Well, I'll just pay off the debt so

9   there's no petitioning creditors."  That's -- no, law is as

10  of the date of the petition.

11           MR. RICHARDS:  Your Honor --

12           MR. COHEN:  Thank you.

13           MR. RICHARDS:  -- Ronald Richards.  It's also

14  important that you make it clear in your order of who a

15  creditor is, that any claims that Mr. Rechnitz has in the

16  Rabbinical Court, because we've been contacted by many

17  debtors that felt they had religious obligations to exhaust

18  that -- our creditors so there's no funny business, that he

19  excludes creditors.  It's anybody that he's -- owes money

20  to.

21           THE COURT:  Oh, yeah.

22           MR. MARTICELLO:  Your Honor --

23           THE COURT:  You know, I'm quite familiar, not --

24           MR. MARTICELLO:  -- this is Bob Mar --

25  Marticello.

P 888.272.0022  F 818.343.7119    BENHYATT   www.benhyatt.com
Certified Deposition Reporters

Page                                                                                    78

1          THE COURT:  -- I mean, with the *bet din*, I guess

2    it's called as I recall.  No, no, no.  This is -- yeah,

3    make it quite clear.  I know you're all very -- I know most

4    of you on the line very bright people.  No, this is the --

5    I understand about their religious court.  No, no.  This is

6    very simple, not complex at all.  We're talking about

7    outside in the -- in the regular world how much -- what

8    creditors they have.

9          I hear what you said, Mr. Cohen.  I don't

10   understand what the debtor would attempt to -- what monkey

11   business the debtor would attempt to do here.

12         MR. RICHARDS:  We're concerned that -- this is

13   Ronald Richards.  I'm just concerned that because we --

14   they objected to all of our discovery and we can't file a

15   motion to compel before the -- well, I'd like permission to

16   file a motion to compel that there be some check-and-

17   balance that we could verify they're not intentionally

18   excluding creditors because we believe there's over 30

19   million dollars' worth of theft in defaulted payments and

20   bad checks.  And so by trusting Jona and Rachel to be

21   honest and not commit perjury is a -- is one thing, but

22   we'd have no way of imploring the adversarial process.  So

23   I don't know why we wouldn't be able to take a deposition

24   after they submit the declaration --

25         THE COURT:  Okay.



Page                                                                    79

1            MR. RICHARDS:  -- and make sure that --

2            THE COURT:  You know what I'm going to do, I am

3     going to change one thing because I hadn't thought of that

4     and certainly that possibility.  So I'm going to change a

5     couple of things.

6            I'm going to give you 60 days to get these other

7     people because I was thinking that if there -- I can just

8     see obviously the creditors don't trust the debtor at all,

9     the principals, so I'm going to -- I am going to change

10    that.  I had -- it hadn't dawned on me that you would no

11    doubt want to do what you've just suggested so I'm going to

12    change that.  So I'm going to change from the -- I'm going

13    to -- that the debtor still by the 16th at 3:00. but I'm

14    going to give you until 60 days.  So that would be to the -

15    - approximately 60 days -- to August 14 at 3:00 to get the

16    creditors to join and I'm changing that.  And I'm going to

17    continue the hearing to the -- or may -- I may -- no, let

18    me.  Let me -- I'm going to keep this on, you know, Aug --

19    or may -- August 14.  And then I'm going to change the

20    hearing.  And I'm asking my credit -- my staff here to give

21    me the hearing after that.

22            THE CLERK:  We have August 25th at 10:00.

23            THE COURT:  Yeah.  I'm going to continue the

24    hearing to August 25 at 10:00.  So I -- yeah, I'm going to

25    take into account that just -- it may not be necessary but



Page                                                                          80

1  you're right.  Thirty days is just not a lot of time to

2  give you the opportunity to do discovery, so I'm changing

3  the hearing date to August 25 at 10:00.  The -- by

4  August 14 at 3 o'clock you have the -- at that point is the

5  time that you can get any additional creditors and you --

6  and as far as the discovery you can go -- immediately get

7  the discovery.  I assume you want to take the deposition as

8  to just what we're talking about.  I hope you don't do any

9  beyond that.  It will make it very unnecessarily

10 complicated.

11        MR. RICHARDS:  I will not do that, Your Honor.  I

12 (indiscernible) --

13        THE COURT:  The discovery should just be at this

14 point literally --

15        MR. RICHARDS:  I understand declarations.

16        THE COURT:  -- if you take they're either written

17 discovery or do what you want as to tell -- to be able to

18 cross-examine both of them as to -- you know, that's what

19 we're talking about.  So, yeah.  I think that's only fair

20 and then the -- so the -- I still want that status report

21 one week before the 25th of September and that would be --

22 no, was it -- no, wait.

23        It was the 15th of September, wasn't it?

24        THE CLERK:  August 25th was the status --

25        MR. RICHARDS:  August, Your Honor.

P 888.272.0022  F 818.343.7119     **BENHYATT**   www.benhyatt.com
Certified Deposition Reporters

Page                                                                  81

 1              THE COURT:  Oh, I'm sorry.  August.  I'm --

 2              THE CLERK:  Yeah.

 3              THE COURT:  You know, yeah, this has been a very

 4    long morning.  I apol -- I actually seem to be in the

 5    afternoon now.  My head is spinning.  August 25 at 10:00.

 6    So a week before that is August 18, I want that status

 7    report.  And by that time it seems to me you will have

 8    exhausted the -- getting the information from both the

 9    principals.  And I hope for their sake that don't know --

10    at least in this Court anyway if I have any suspicion that

11    they're not being truthful, that would be a problem.  And I

12    don't have any reason to suspect they won't be and if they

13    are, then it's really up to the creditors and that time is

14    more -- that's more.  They've got 60 days to be able to

15    convince other people to join in.  But at that point one or

16    two things are going to happen:  either they -- you've not

17    been able to convince other people, then I will dismiss it,

18    or you have and then we'll deal with them.

19              So any questions about the -- any of that?  From

20    the debtor's standpoint --

21              MR. MARTICELLO:  Your Honor --

22              THE COURT:  -- you know basically what the debtor

23    has to do.

24              MR. COHEN:  Yes, Your Honor.  Baruch Cohen.

25    Clarification question.  A clarification question --

P 888.272.0022  F 818.343.7119      BENHYATT
                                    Certified Deposition Reporters      www.benhyatt.com

Page                                                                  82

1          MR. MARTICELLO:  Your Honor, this is Robert

2  Marticello with --

3          THE COURT:  I want to hear first from the debtor.

4          Or, Mr. Marticello, what do you want?  What's

5  your question?

6          MR. MARTICELLO:  Sure.  Your Honor, I would -- I

7  have a couple points, Your Honor.  I would ask that the

8  Court not prejudge any request for discovery at this point.

9  We have three creditors that the Court --

10          THE COURT:  Well, let me stop you.  I'm not

11  prejudging anything.

12          MR. MARTICELLO:  -- has determined are not

13  eligible.

14          THE COURT:  But I'm telling you right now -- I'm

15  telling -- that's why I was telling the creditors their

16  discovery, as far as I'm concerned, should be limited to

17  just what we're talking about, who the creditors of the

18  debtor are.  What are you worried about?

19          MR. MARTICELLO:  I just -- I'm -- Your Honor, the

20  document requests we were served it basically -- the

21  petitioning creditors are trying to litigate their existing

22  pending litigation disputes before this Court.

23          THE COURT:  That's -- that -- let me ask you

24  this.

25          MR. MARTICELLO:  I have three creditors that



P 888.272.0022  F 818.343.7119                    www.benhyatt.com

Page                                                                    83

1   aren't even eligible in this case.

2           THE COURT:  As far as the -- taking the

3   depositions for the purpose of this hearing, the creditors

4   you agree I -- for that purpose only because it can get --

5   I don't want to be here forever and objections to this side

6   and the other thing.  Would you simply limit your

7   discovery?  You have to amend it to just the -- what we're

8   talking about, just the creditors.  I'm not going to allow

9   you at this point --

10          MR. MARTICELLO:  Yes.  We will amend --

11          THE COURT:  -- to be litigating the whole

12  thing --

13          MR. MARTICELLO:  We will amend our discovery.

14          THE COURT:  -- because you might if there --

15          MR. MARTICELLO:  Yeah.  We will serve --

16          THE COURT:  If we have an order for relief then I

17  have no problem with that.  So let me again --

18          MR. MARTICELLO:  Your Honor --

19          THE COURT:  I didn't fully appreciate that,

20  Mr. Marticello.

21          So from the creditors' standpoint I would like

22  you -- for I will allow discovery, but why don't you redo

23  the -- why don't you do discovery requests?

24          MR. RICHARDS:  We will, Your Honor.  We will --

25          THE COURT:  Limit it just to --

Page                                                               84

1          MR. RICHARDS:  We thought our current discovery

2    is for other creditors and (indiscernible).  We will amend

3    it.

4          THE COURT:  Just to the -- what we're talking

5    about.  Just to who all the creditors are and contact

6    information and briefly, very short, you know, as Mister --

7    Mark Twain was supposed to have said, "If I had more time I

8    would have written you a shorter letter."  Keep it brief.

9          MR. RICHARDS:  Right.  And, Your Honor, and in

10   the depositions we will stick to those areas as well.

11         THE COURT:  Just to that, that may --

12         MR. RICHARDS:  We will not go into the other

13   areas.

14         THE COURT:  I know that plenty of you want to

15   know where the stuff is.  You want to know all kinds of

16   stuff or where the transfer -- whatever.  For these

17   purposes I just -- I'm going to limit your discovery to

18   just the very simple questions of what they're going to

19   have to do by the -- by a week from today, in any case.

20   But you certainly can probe further if you wish and they

21   may -- I assume they'll give you the same answers.  But,

22   yes, it's just limited.  That discovery is just to the --

23   so redo your discovery just to basically ask him.  And as I

24   said, as a practical matter if they comply with my order

25   they will have already answered you but you certainly have

Page                                                          85

1  a right to do your own investigations and then under oath,

2  of course, to cross-examine them, you know, at the -- you

3  know, or not cross-examine them.  Examine them at your

4  deposition.

5          So from the creditors' standpoint you now

6  understand --

7          MR. RICHARDS:  Your Honor, we'll --

8          THE COURT:  -- you're going to redo --

9          MR. RICHARDS:  We're going to send out the dep --

10         THE COURT:  -- your discovery?

11         MR. RICHARDS:  Yeah.  We're going to send out

12 deposition notices today with a document production related

13 to who the creditors are and documents that will identify

14 the creditors and then we'll see how they respond.  I think

15 you're assuming that they're going to participate in this

16 case.  Let's just see what happens.  We'll follow --

17         THE COURT:  Well, again, I told you, by the

18 way --

19         MR. RICHARDS:  -- the Court's (indiscernible)

20 order.

21         THE COURT:  I know that there are criminal --

22 there are other charges and so there's a lot of stuff going

23 on.  I have no opinion.  I know what happened in the state

24 court, but I have no opinion as to the ultimate outcome.

25 But I tell you this, if either -- or they both must comply

Page                                                                86

1  and I make it quite clear.  If they don't comply with the

2  request, whether it's Fifth Amendment or whatever, then I

3  will enter the order for relief.

4          Is it the debt -- from the debtor's standpoint,

5  do you understand that?  Mr. Marticello, do you understand

6  that?

7          MR. MARTICELLO:  Your Honor, this is Robert

8  Marticello for the debtor.  I understand the Court's --

9  what the Court just said and I will comply with the Court's

10 order.  My concern is, Your Honor, like you said there are

11 other things going on and --

12         THE COURT:  No, I understand that.  But, no, I'm

13 telling you --

14         MR. MARTICELLO:  -- if there is a -- if there's

15 a --

16         THE COURT:  -- this is really simple and I

17 can't -- I'm not -- I -- people have a right to the -- you

18 know, to take the Fifth and I -- again, whether they do or

19 not I have no idea.  But I'm telling you right now the

20 creditors have a right to this information.  If they

21 refuse, either of them, I want both of them to sign it

22 because it's not clear to me exactly who's really running

23 the business.  My guess is that maybe the husband is but I

24 don't know that, just from the various pleadings.  I don't

25 really know.

Page                                                                87

1          So there -- therefore, I am requiring both to

2   sign under penalty of perjury.  And if nei -- and if they

3   don't both sign it under penalty of perjury, then I will

4   enter an order for relief.  I just want you -- you -- I

5   want you in particular and your clients, the debtor, the

6   principals, to understand that.  You do -- you understand

7   what I've said.  I want them to understand it.  That would

8   be the price for not complying with my order.  You --

9          MR. MARTICELLO:  I understand, Your Honor.

10         THE COURT:  Mr. Marticello, you understand what

11  I've said obviously.  I'm not being facetious.  You

12  understand.

13         And so any --

14         MR. MARTICELLO:  Correct, Your Honor.

15         THE COURT:  Any other questions?  This is going

16  to be a long -- this is important, but I think I've given

17  the debtor a fair opportunity.  I've agreed as far as their

18  argu -- your arguments as far as these particular

19  creditors, at least not in being -- not that they're claims

20  are not allowed, but that they're just obviously for

21  various reasons that I've stated on the record are not

22  eligible to be petitioning creditors.  And you also know

23  the obligation a week from today at 3:00 that for your --

24  both the principals to do what I've suggested, right?

25         MR. COHEN:  Your Honor, this is Baruch Cohen.  I

Page                                                                    88

1   have a clarification question.

2              THE COURT:  All right.  Briefly.  What is it?

3              MR. COHEN:  Briefly.  Number one, when we conduct

4   discovery of the principals of the debtor we are allowed to

5   ask them whether there's a dispute as to the amount

6   (indiscernible).

7              THE COURT:  Okay.

8              MR. COHEN:  Not just merely --

9              THE COURT:  Okay.  You know that's a good

10  question.  I hadn't thought of that and that's why I enjoy

11  these discussions.  Yes.  I think at that point that's a --

12  yeah, because that -- what I anticipate is if they list

13  them -- somebody and then they're li -- then you get them

14  to file -- and remember I mentioned that briefly -- and

15  then you get them to sign up being petitioning creditors

16  and then they'll object as -- yes.  I think that's a --

17  that is in -- a fair question to -- they list all of the

18  creditors, period, and then -- that's a very good point.

19  And then to say as to this one are -- is there any dispute

20  either amount or liability and, if so, what is that?  Yes.

21  I'll allow that.

22             MR. MARTICELLO:  Your Honor, this is Robert

23  Marticello for the debtor.  And you're talking about the

24  creditors -- other creditors on this list, not the

25  petitioning creditors, correct?

Page                                                                      89

1          THE COURT:  Oh, yes.  Oh, yeah.  Oh, yes,

2   absolute -- no, we're only talking about the additional

3   one.  We're not -- we've already gone -- there's nothing

4   new about these three.

5          MR. MARTICELLO:  Understood, Your Honor.

6          THE COURT:  But that's a good point.  That will

7   eliminate -- at least it will tee up any particular

8   problems that maybe they're in dispute or not.  I think

9   that's a very good point.

10         Yeah.  No, we're only talking -- not -- I'm not

11  talking about these three petitioning creditors.  We're

12  talking about the additional ones that they -- that is a

13  list as their other creditors.

14         So, thank you, Mr. Cohen.  That's a very good

15  point.

16         Anything else?

17         MR. COHEN:  Actually, my counterpoint to that is

18  it's important that the debtors do describe under penalty

19  of perjury why they dispute our client's claim.

20         THE COURT:  No, no, no, no.

21         MR. COHEN:  Why should our three clients --

22         THE COURT:  I've already ruled it.

23         MR. COHEN:  -- be excluded?

24         THE COURT:  I've ruled on it.  No.  Stop.

25         MR. COHEN:  Okay.  Second point.  Your Honor,



Page                                                                    90

1  quickly, second point.  To what extent can the Court

2  instruct this debtor and the principals not to engage in

3  funny business by interfering with creditors right now and

4  communicating with them and trying to get them to sign off

5  on claims?

6           THE COURT:  Well, I don't see that that's -- you

7  can talk to them.  They can talk to them.  I don't see any

8  problem with that.  Now, there are criminal laws.  They

9  can't threaten them.  They can't -- I think that -- I don't

10 see any provision of the law.

11          Now, the fact of the matter is if these other

12 creditors -- as I told you before, the date of the petition

13 is the time.  So even if they were to -- so, you know, they

14 could offer to pay them but, no, I -- you can talk to them.

15 I don't see any reason why the debtor can't talk to them

16 unless there's no threats.  So, no, I don't see any reason

17 at all.

18          So, anyway, any other questions?

19          MR. COHEN:  All right, Your Honor.  Thank you

20 very much for your time today.

21          THE COURT:  What's that?

22          MR. COHEN:  No questions.

23          MR. MARTICELLO:  Your Honor, Robert Marticello

24 for the debtor.  One question, just to make sure we're

25 clear.  Any joinder needs to be filed with the Court by



Page                                                                                                    91

1  that 3:00 p.m. deadline on August 14th, is that correct?

2           THE COURT:  That's correct.

3           MR. MARTICELLO:  Thank you, Your Honor.

4           THE COURT:  And at that point, if there's -- if

5  we don't -- and again, one will be sufficient if there are

6  fewer than 12, but I have no idea.  I gather there are more

7  than 12.  I don't know because I don't think that was ever

8  mentioned in the pleadings.  But there's -- if it's li --

9  if there are -- it could be one, if there are very few

10 creditors but if there are 12 or more then obviously there

11 would be three and that will be it.  At that point you

12 either have them or they're not.  So I have no idea.  I

13 have no idea how many other creditors there are out there

14 from the debtor.  These are obviously probably the

15 biggest -- well, not probably, I don't know that, but

16 certainly three big creditors as far as amount.

17          Anything else?  I hate to suggest it.  Anything

18 else?

19          (Laughter.)

20          MR. MARTICELLO:  No, Your Honor.

21          THE COURT:  Okay.  It's a very bright group of

22 people.  But, you know what, there's some good points that

23 have been made and I think this is fair.  Again, obviously

24 the creditors don't agree with it, but as I was saying,

25 it's absolutely clear to me on the documents as far as that

Page                                                                    92

1   I can take judicial notice of that there is a dispute as to

2   the amount and/or -- subject to dispute.

3           But as far as this other, I think giving the

4   creditors the 60 days to search out other people and the

5   discovery, at the end of the day I think everybody will

6   have their fair day in court and then I will find out with

7   your status report filed -- what did I say, one week before

8   the -- that's by the 18th --

9           MR. MARTICELLO:  Yes, your Honor.

10          THE COURT:  -- of August that I'll know what's

11  going on in this case.  So anyway, it's been interesting.

12          MR. RICHARDS:  Your Honor, Ronald Richards.

13          THE COURT:  And that will conclude this hearing.

14  I'll see you all at the --

15          MR. RICHARDS:  King Solomon couldn't have done

16  better himself today.

17          THE COURT:  By the way, one thing I did not

18  mention that after all of this because it was -- it was

19  extended 30 days.  We had a judge's meeting on Friday and

20  as to when we're going to open up.  That -- this hearing,

21  by the way, on the 25th is going to be here in court unless

22  some -- something happens that will prevent me from doing

23  that due to who knows what, but we fully intend to be

24  operational of -- subject to each judge.  But I don't like

25  these hearings at all.  I like seeing people and see -- you

Page                                                                93

1   seeing me, I seeing you.  So if -- for me anyway this

2   hearing, by the way, is going to be in court unless you are

3   notified a couple of wee -- about two weeks before that

4   something has come up and it won't be, so I want you to

5   understand that.  This will be an in-court, real hearing.

6              MR. COHEN:  Will it be an evidentiary hearing,

7   Your Honor?

8              THE COURT:  No.  No, no, no, no.  This is a

9   status hearing, not an -- no, the only --

10             MR. COHEN:  Well, the status conference.

11             THE COURT:  The -- it's as I said you're --

12  either we will have three petitioning creditors, assuming

13  there are 12 or more, or we won't.  If we don't, then I'm

14  going to dismiss the petition and no doubt the other --

15  then it will be a status conference and no doubt the other

16  side will be asking for fees.  No, there's nothing to be in

17  an evidentiary hearing about.  It's basically a status.  If

18  there are three then I'll have to see whether or not

19  there's an objection to them as being in dispute and the

20  creditors will know that at least because they'll be asking

21  that question and I'm glad you clarified that and I will --

22  as far as discovery.  So, no, there's no -- there will not

23  be an evidentiary hearing.

24             MR. COHEN:  Understood.

25             THE COURT:  Okay.  Thank you.  We've worn

**P** 888.272.0022 **F** 818.343.7119    **BENHYATT**
Certified Deposition Reporters    www.benhyatt.com

Page                                                                              94

1  everybody out, including me.

2          MR. RICHARDS:  All right.  Thank you, Your Honor.

3  You missed my -- when I said King Solomon couldn't have

4  done better himself today.

5          THE COURT:  Well, we had an equally interesting

6  one in the morning which you didn't have to participate in.

7  So, in any case, it's a fascinating case and I'll see you

8  back August 25 -- excuse me.  Yeah, August 25 at 10:00.

9  But these orders, even though you don't have it in writing

10 at the moment, consider those -- those are the order of the

11 Court.  We'll eventually get a written order but you have

12 all of the dates and so forth and we'll see how it turns

13 out.  So I'll see you back on the 25th at 10:00.  Anyway,

14 that concludes this hearing.  Thank you very much.

15         ATTORNEYS:  Thank you, Your Honor.

16         THE COURT:  Thank you.

17 (End at 1:03 p.m.)

18                  * * * * * * * *

19         I certify that the foregoing is a correct

20 transcript from the electronic sound recording of the

21 proceedings in the above-entitled matter.

22

23

24 _____        Date:  6/12/2020

25 RUTH ANN HAGER, C.E.T.**D-641

**P** 888.272.0022 **F** 818.343.7119       **BEN HYATT**
                                              Certified Deposition Reporters       www.benhyatt.com

EXHIBIT "8"

1   Baruch C. Cohen, Esq. (SBN 159455)
    **LAW OFFICE OF BARUCH C. COHEN**
2       A Professional Law Corporation
    4929 Wilshire Boulevard, Suite 940
3   Los Angeles, California 90010
    (323) 937-4501    Fax (888) 316-6107
4   e-mail: baruchcohenesq@baruchcohenesq.com

5   *Attorney for Defendants/Third-Party Plaintiffs PETER VOUTSAS aka PETER
    MARCO aka PETER VOUTSAS, aka PETER MARCO EXTRAORDINARY JEWELS*
6   *OF  BEVERLY HILLS, dba PETER MARCO LLC*

7

8              **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11  DAVID ROVINSKY LLC, a Delaware          USDC # 2:20-cv-02580-ODW-AS
    limited liability company,
12                                          Hon. Otis D. Wright II
                Plaintiff,
13                                          **SUPPLEMENTAL DECLARATION**
    PETER VOUTSAS aka PETER                 **OF BARUCH C. COHEN**
14  MARCO aka PETER VOUTSAS, aka            **REGARDING  THIRD-PARTY**
    PETER MARCO EXTRAORDINARY               **DEFENDANTS' MOTION FOR**
15  JEWELS OF BEVERLY HILLS, dba            **STAY OF PROCEEDINGS**
    PETER MARCO LLC,
16                                          [*Concurrently filed with Request for*
         Defendants/Third-Party Plaintiffs, *Judicial Notice*]
17
    vs.
18
    JONA S. RECHNITZ, an individual;        Date: [Taken off Calendar]
19  RACHEL RECHNITZ, an individual;         Time:
    LEVIN PRADO aka LEVON PRADO,            Courtroom: 5D
20  an individual,

21         Third-Party Defendants.

22

23         Third-Party Plaintiffs PETER VOUTSAS aka PETER MARCO aka PETER

24  VOUTSAS, aka PETER MARCO EXTRAORDINARY JEWELS OF  BEVERLY

25  HILLS, dba PETER MARCO LLC ("Marco"), hereby submit a *Supplemental*

26  *Declaration of Baruch C. Cohen Regarding  Third-party Plaintiffs' Third-party*

27  *Defendants' Motion for Stay of Proceedings*.

28          **SUPPLEMENTAL DECLARATION OF BARUCH C. COHEN REGARDING**
              **THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS**

    6/11-2:58pm

1    On 6-2-2020, this Court vacated the 6-15-2020 hearing on Rechnitz's *Motion*

2    *to Stay*, and the matter is submitted.

3    On 6-9-2020, this Court denied Rechnitz's *ex Parte Application for an Order*

4    *Permitting Submission for in Camera Review, Declaration of Counsel Providing*

5    *Information to the Court Relating to the Ongoing Criminal Investigation (*"Ex

6    Parte*)*[Doc-57] *Regarding the Motion for Stay of Proceedings* ("Motion") finding

7    that the application does not warrant in camera review.

8    As to whether this court should stay this proceeding, Marco wishes to advise

9    and update this Court that on 6-10-2020, in the Jadelle involuntary bankruptcy

10    proceeding, Case # 2:20-bk-13530-BR United States Bankruptcy Judge Barry

11    Russell, issued an *Order Directing Rachel Rechnitz and Jona Rechnitz to File Joint*

12    *Declaration under Penalty of Perjury* [Doc-39] ordered the following:

13    1.    Rachel Rechnitz and Jona Rechnitz (collectively, the "Rechnitz's") must file a

14        file a joint declaration, sworn under penalty of perjury, which identifies each

15        and every one of the debtor's creditors as of the date of the filing of the

16        involuntary petition on April 6, 2020. The joint declaration shall include,

17        without limitation, the following information with respect to each creditor

18        identified therein:

19        a.    the name of the creditor;

20        b.    the nature of the debt owed to the creditor (e.g., consigned jewelry, rent

21            due and owing, etc.);

22        c.    the amount of the creditor's claim;

23        d.    whether the creditor's claim is disputed and, if so, the nature of the

24            dispute; and

25        e.    complete contact information for each creditor including, but not

26            limited to, the creditor's address, telephone number, cell phone number

27            (if known), fax number (if applicable), and email address (if known);

28    **SUPPLEMENTAL DECLARATION OF BARUCH C. COHEN REGARDING
THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS**

EXHIBIT "8", PAGE 153

2.    The Rechnitz's shall have seven (7) days from the date of this hearing (i.e., no later than 3:00 p.m. on Tuesday, June 16, 2020) to file their joint declaration with the Court and serve the declaration on counsel for the petitioning creditors;

3.    If the Rechnitz's fail to file the joint declaration by that date and time, the Court will deny the debtor's Motion to Dismiss and immediately enter an order for relief in this case. The entry of such an order for relief will render both the pending Motion to Dismiss and Trustee Appointment Motion moot;

4.    If the Rechnitz's file the joint declaration by the required date and time, then:

    a.    The petitioning creditors shall have sixty (60) days from the date of this hearing (i.e., no later than 3:00 p.m. on August 14, 2020) to contact the creditors listed in the joint declaration to determine if any of them are willing to join in the involuntary petition;

    b.    The petitioning creditors shall have the same sixty (60) day period within which to conduct discovery of the creditors listed in the joint declaration, which discovery shall be limited solely to questions regarding the nature and amount of the creditor's claim and, if the creditor's claim is listed in the joint declaration as disputed, the nature of such dispute.[1]

The point being, is that by filing their Joint Declarations sworn under penalty of perjury regarding their defrauded creditors (like Marco), and their having to be deposed by Petitioning Creditors re same. Rechnitz will *de facto*, have to **_waive_** their

---

[1]A true and correct copy of United States Bankruptcy Court Judge Barry Russell's 6-10-2020 *Order: (1) Directing Rachel Rechnitz and Jona Rechnitz to File Joint Declaration under Penalty of Perjury; (2) Setting Date by Which Petitioning Creditors May Contact Creditors Identified in Joint Declaration and Conduct Certain Discovery; (3) Setting Date for Hearing on Status Conference; and (4) Setting Date for Filing of Joint Status Report Prior to Status Conference* [Doc-39] is attached hereto as Exhibit "1" and is incorporated herein by this reference.  See, Declaration of Baruch C. Cohen, and Request for Judicial Notice.

1    Fifth amendment rights against self-incrimination from criminal liability that they

2    fear in this Motion. If indeed, Rechnitz complies with Judge Russell's Order, this

3    Motion for Stay would be moot.

4

5    DATED:        June 11, 2020            LAW OFFICE OF BARUCH C. COHEN
                                            A Professional Law Corporation
6
                                           By ____/S/ Baruch C. Cohen_____
7                                               Baruch C. Cohen, Esq.
                                           *Attorney for Defendants/Third-Party*
8                                           *Plaintiffs PETER VOUTSAS aka PETER*
                                           *MARCO aka PETER VOUTSAS, aka PETER*
9                                           *MARCO EXTRAORDINARY JEWELS OF*
                                           *BEVERLY HILLS, dba PETER MARCO LLC*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
            **SUPPLEMENTAL DECLARATION OF BARUCH C. COHEN REGARDING**
            **THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS**

                                        -4-
     6/11-2:58pm

**SUPPLEMENTAL DECLARATION OF BARUCH COHEN**

I, BARUCH C. COHEN, declare and state as follows:

1.  The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2.  I am a member in good standing and eligible to practice before the following courts: California State Supreme Court; United States Court of Appeals - Ninth Circuit; Bankruptcy Appellate Panel; United States District Courts: Central District of California; Eastern District of California; Northern District of California; and Southern District of California.

3.  I am the principal shareholder and President of The Law Office of Baruch C. Cohen, a Professional Law Corporation, located at 4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

4.  I proudly represent Defendants/Third-Party Plaintiffs PETER VOUTSAS aka PETER MARCO aka PETER VOUTSAS, aka PETER MARCO EXTRAORDINARY JEWELS OF BEVERLY HILLS, dba PETER MARCO LLC.

5.  This Supplemental Declaration is in support of **THIRD-PARTY PLAINTIFFS' OPPOSITION TO THIRD-PARTY DEFENDANTS' THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS.**

6.  A true and correct copy of United States Bankruptcy Court Judge Barry Russell's 6-10-2020 *Order: (1) Directing Rachel Rechnitz and Jona Rechnitz to File Joint Declaration under Penalty of Perjury; (2) Setting Date by Which Petitioning Creditors May Contact Creditors Identified in Joint Declaration and Conduct Certain Discovery; (3) Setting Date for Hearing on Status Conference; and (4) Setting Date for Filing of Joint Status Report Prior to*

1    *Status Conference* [Doc-39] is attached hereto as Exhibit "1" and is

2    incorporated herein by this reference.

3        I declare under penalty of perjury under the laws of the State of California that

4    the foregoing is true and correct.

5        Executed June 11, 2020, at Los Angeles, California.

6                                        By /s/ *Baruch C. Cohen*

7                                              Baruch C. Cohen

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28              **SUPPLEMENTAL DECLARATION OF BARUCH C. COHEN REGARDING**
                **THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS**

6/11-2:58pm                              -6-



Case 2:20-bk-13530-BR    Doc 39    Filed 06/10/20    Entered 06/10/20 13:01:33    Desc
Main Document      Page 1 of 4

**FILED & ENTERED**

**JUN 10 2020**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier      DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:20-bk-13530-BR |
| Jadelle Jewelry and Diamonds LLC, | Chapter 7 |
| | **ORDER:** |
| | **(1)  DIRECTING RACHEL RECHNITZ AND JONA RECHNITZ TO FILE JOINT DECLARATION UNDER PENALTY OF PERJURY;** |
| Debtor(s). | **(2)  SETTING DATE BY WHICH PETITIONING CREDITORS MAY CONTACT CREDITORS IDENTIFIED IN JOINT DECLARATION AND CONDUCT CERTAIN DISCOVERY;** |
| | **(3)  SETTING DATE FOR HEARING ON STATUS CONFERENCE; AND** |
| | **(4)  SETTING DATE FOR FILING OF JOINT STATUS REPORT PRIOR TO STATUS CONFERENCE** |
| | Date:       June 9, 2020 |
| | Time:       10:00 a.m. |
| | Courtroom: 1668 |

-1-

## Exhibit 1, Page 1 of 5

1
2
3
4
5
6
7

The Court held a hearing on June 9, 2020 on the following two motions: the "Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs and Damages" ("Motion to Dismiss"), filed by the debtor on May 1, 2020, and the "Petitioning Creditors' Notice of Motion and Motion for Appointment of Interim Chapter 7 Trustee" ("Trustee Appointment Motion") filed on May 19, 2020 by petitioning creditors Victor Franco Noval, Peter Marco, LLC and First International Diamond, Inc.

8
9
10
11
12

Robert S. Marticello, Esq. of Smiley, Wang-Ekvall, LLP appeared on behalf of the debtor. Ronald Richards of the Law Firm of Ronald L. Richards & Associates, APC, Baruch C. Cohen, APLC and Daniel A. Lev, Esq. of SulmeyerKupetz, A Professional Corporation, appeared on behalf of the petitioning creditors.

13
14
15

With respect to the debtor's Motion to Dismiss, the Court considered the Motion, the petitioning creditors' Opposition to the Motion, the debtor's Reply to the petitioning creditors' Opposition, and all pleadings related to the Motion, Opposition and Reply.

16
17
18
19
20
21

With respect to the petitioning creditors' Trustee Appointment Motion, the Court considered the Motion and all related pleadings including the separately filed declarations of Ronald Richards, Oved Anter, Victor Franco Noval, and Peter Marco, the debtor's Opposition to the Motion, the petitioning creditors' Reply to the debtor's Opposition, and all other pleadings related to the Motion, Opposition and Reply.

22
23
24
25
26
27
28

The Court also considered the debtor's separately filed declarations of Levin Prado and Marc Williams in Opposition to the Trustee Appointment Motion, the debtor's evidentiary objections to the declarations of Oved Anter, Victor Franco Noval, Peter Marco and Ronald Richards, the petitioning creditors' evidentiary objections to the debtor's Request for Judicial Notice, and all other pleadings related to the Motion, Opposition and Reply.

**Exhibit 1, Page 2 of 5**

Case 2:20-bk-13530-BR    Doc 65    Filed 06/19/20    Entered 06/19/20 17:25:01    Desc
Main Document    Page 168 of 309
Case 2:20-cv-02580-ODW-AS    Document 61    Filed 06/11/20    Page 9 of 11    Page ID #:752

Case 2:20-bk-13530-BR    Doc 39    Filed 06/10/20    Entered 06/10/20 13:01:33    Desc
Main Document    Page 3 of 4

At the June 9 hearing, the Court ruled on the record on all of the evidentiary objections and heard argument and representations of counsel. After consideration of all of the above, the Court **HEREBY ORDERS AS FOLLOWS**:

1. Rachel Rechnitz and Jona Rechnitz (collectively, the "Rechnitz's") must file a joint declaration, sworn under penalty of perjury, which identifies each and every one of the debtor's creditors as of the date of the filing of the involuntary petition on April 6, 2020. The joint declaration shall include, without limitation, the following information with respect to each creditor identified therein:

   a. the name of the creditor;

   b. the nature of the debt owed to the creditor (*e.g.*, consigned jewelry, rent due and owing, etc.);

   c. the amount of the creditor's claim;

   d. whether the creditor's claim is disputed and, if so, the nature of the dispute; and

   e. complete contact information for each creditor including, but not limited to, the creditor's address, telephone number, cell phone number (if known), fax number (if applicable), and email address (if known);

2. The Rechnitz's shall have seven (7) days from the date of this hearing (*i.e.*, no later than 3:00 p.m. on Tuesday, June 16, 2020) to file their joint declaration with the Court and serve the declaration on counsel for the petitioning creditors;

3. If the Rechnitz's fail to file the joint declaration by that date and time, the Court will deny the debtor's Motion to Dismiss and immediately enter an order

-3-

**Exhibit 1, Page 3 of 5**

EXHIBIT "8", PAGE 160

for relief in this case. The entry of such an order for relief will render both the

pending Motion to Dismiss and Trustee Appointment Motion moot;

4.  If the Rechnitz's file the joint declaration by the required date and time, then:

    a.  The petitioning creditors shall have sixty (60) days from the date of

        this hearing (*i.e.*, no later than 3:00 p.m. on August 14, 2020) to

        contact the creditors listed in the joint declaration to determine if any of

        them are willing to join in the involuntary petition;

    b.  The petitioning creditors shall have the same sixty (60) day period

        within which to conduct discovery of the creditors listed in the joint

        declaration, which discovery shall be limited solely to questions

        regarding the nature and amount of the creditor's claim and, if the

        creditor's claim is listed in the joint declaration as disputed, the nature

        of such dispute;

    c.  The Court shall hold a status conference on this involuntary case on

        August 25, 2020 at 10:00 a.m., and

    d.  The parties shall file a joint status report seven (7) days prior to the

        status conference (*i.e.*, no later than 3:00 p.m. on August 18, 2020).

**IT IS SO ORDERED.**

                                 ###

Date: June 10, 2020

                              Barry Russell
                              United States Bankruptcy Judge

**Exhibit 1, Page 4 of 5**

## CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States and I am a resident and employed in Los Angeles, California; that my business address is 4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010; that I am over the age of 18 and not a party to the above-entitled action.

I am employed by a member of the United States District Court for the Central District of California, and at whose direction I caused service of the foregoing document entitled **SUPPLEMENTAL DECLARATION OF BARUCH C. COHEN REGARDING  THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS** on all interested parties in this action by the method indicated below at the address stated below:

Marc S. Williams, Esq.
Cohen Williams, LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Email: mwilliams@cohen-williams.com
*Attorney for Third-Party Defendants Jona S. & Rachel Rechnitz*

**[X]**    **BY ELECTRONIC TRANSMISSION**: by electronically filing the foregoing with the Clerk of the District Court using its CM/ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies all parties in this case. A pdf version of this document was also transmitted to counsel via electronic mail at the mail address indicated above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 11, 2020 at Los Angeles, California.

By: /s/ *Baruch C. Cohen*
Baruch C. Cohen

# EXHIBIT "9"

| | |
|---|---|
| **From:** | Ronald Richards <ron@ronaldrichards.com> |
| **Sent:** | Thursday, June 11, 2020 5:12 PM |
| **To:** | Robert Marticello |
| **Cc:** | dlev@sulmeyerlaw.com; Baruch Cohen; Morani Stelmach |
| **Subject:** | DEPOSITION NOTICES |
| **Attachments:** | Exhibit _A_ in Support of Subpoena to Testify At Deposition (Jadelle_Jona Rechnitz).pdf; Notice of Deposition of Jona Rechnitz (Jadelle) (002).pdf; Subpoena to Testify At Deposition (Jadelle_Jona Rechnitz).pdf; Subpoena to Testify At Deposition II (Jadelle_Rachel Rechnitz).pdf; Exhibit _A_ in Support of Subpoena to Testify At Deposition II (Jadelle_^.^.pdf; Notice of Deposition of Rachel Rechnitz (Jadelle).pdf |

| | |
|---|---|
| **Importance:** | High |

Dear Robert,

Please see attached deposition notices.  I am assuming you will agree that we don't need to serve a party member and manager for the deposition, or her husband if that is even the case, or a manager of the entity.

Previously, Marc Cohen did not want me to send a legion of process servers to Jona's house in Beverlywood.  Out of my high respect for Marc and Reuven, and of course you, I will not send them there this evening.  However, I have three standing by for tomorrow night, at exactly 8:05pm to serve these subpoenas, as well as day service.  It would very unfortunate if we had any issue at all on this.  I am asking you to produce these people that the court ordered their declarations and deposition. There is also a local rule on deposing declarants that is analogous.

I am happy to send them there all night Friday and Saturday all day, and then non stop until they are served even though I do not believe they have to be served as they are making a general appearance per court order.  I am sorry for the tone but some people told me that you would not be cooperative and I said Robert has done a great job and is a true professional.  He will not advise his members to avoid service or send a message to Judge Russell that they are avoiding a deposition or discovery as contemplated by the Court.

I would think the judge would frown upon any games as to service as stated above. Finally, if they are not going to provide testimony as has been their position in two other cases which officers of the Court represented they would not, that is fine, just let me know the grounds.

I want you to be aware of the below cases based upon previous positions taken by Jona and Rachel.  Please review these cases.  We believe if you file the declarations the court requested, you have waived any assertion of the 5th Amendment as to the entire subject matter which will be a large swath of questions about the various creditors and Jona and Rachel's credibility is far game and at issue.  Therefore, we don't want to waste time on scheduling these if you are going to invoke.  If you are not going to invoke, then will be taking two depositions and serving written discovery.   We will also need Jona and Rachel's cell phones for a vendor to upload their text message and emails.  We will need ESI discovery on Jona's email account so we need to formulate a ESI protocol between our respective offices.  Please tell me how you want to do that and please tell Jona and Rachel that any deleted text messages will be met with motion practice for things I will not mention herein.  The relevant cases are below.

See Mitchell v. United States, 526 U.S. 314 (1999)("It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details."). The Supreme Court of the United States of America has articulated two discrete explanations why selective waiver of the privilege against self-incrimination is impermissible; Rogers v. United States, 340 U.S. 367, 371, 71 S.Ct.

EXHIBIT "9", PAGE 163

438, 95 L.Ed. 344 (1951) (discussing 5th Amendment privilege against self-incrimination, the Supreme Court noted that, having waived the privilege, one cannot later assert it: "To uphold a claim of privilege in this case would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony."). It would provide a perverse incentive to dilatory discovery practice if the Court were to allow a party to escape disclosure of documents it has shown to a testifying expert. CP Kelco U.S. Inc., 213 F.R.D. at 179.; Sundance Image Technology, Inc. v. Cone Editions Press, Ltd. (S.D. Cal., Aug. 19, 2005, No. 02CV2258 B (AJB)) 2005 WL 8173278, at *4.; The Fifth Amendment privilege is not self-executing, however, and may be found to have been waived if it is not invoked in a timely manner. Maness v. Meyers, 419 U.S. 449, 465–66 (1975); Rogers v. United States, 340 U.S. 367, 370–71 (1951); Yakus v. United States, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it."); United States ex rel. Vajtauer v. Comm'r of Immigration at Port of New York, 273 U.S. 103, 113 (1927); Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981). A waiver may be found if one agrees to an order commanding one to do the very thing later claimed to be privileged without invoking the privilege at or before the time of the entry of the order. See S.E.C. v. Telexfree, Inc., 164 F. Supp. 3d 187, 192 (D. Mass. 2015);  In re Wolf (Bankr. N.D. Ill., May 24, 2018, No. 14 B 27066) 2018 WL 2386813, at *5; An individual may invoke the Fifth Amendment privilege against self-incrimination in any proceeding "whether civil or criminal, formal or informal, including a bankruptcy proceeding." In re Blan, 239 B.R. 385, 392 (Bankr.W.D.Ark.1999) (citations omitted). It is, however, "not self-executing." In re Gi Yeong Nam, 245 B.R. 216, 227 (Bankr.E.D.Pa.2000) (citing Roberts v. United States, 445 U.S. 552, 559, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980)). The privilege may only be relied upon if it is invoked in a proper and timely manner. Roberts, 445 U.S. at 559–60, 100 S.Ct. 1358; see also 3–344 Collier on Bankruptcy ¶ 344.03 (15th ed. 2015) ("[I]t may not properly be invoked, for example, for the first time at a contempt hearing arising out of the refusal to answer."). If the privilege is not timely asserted, it may be deemed waived. See In re Gi Yeong Nam, 245 B.R. at 226–27 (citing Rogers v. United States, 340 U.S. 367, 373, 71 S.Ct. 438, 95 L.Ed. 344 (1951)); To properly invoke the privilege, a party must produce "for the Court's consideration, a meaningful, articulation of the reasons why [responding] would tend to incriminate him." In re Bartlett, 162 B.R. 73, 79 (Bankr.D.N.H.1993) (citations omitted). The claimant need not "establish the threat of incrimination in detail, of course, since such detailed disclosure may negate the very privilege he seeks to assert." In re Blan, 239 B.R. at 392 (citing In re Connelly, 59 B.R. 421, 433 (Bankr.N.D.Ill.1986)). However, the party must at a minimum show that "the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." Marchetti v. United States, 390 U.S. 39, 59, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); see In re Connelly, 59 B.R. at 433. There need not be an active criminal investigation or proceeding in order to assert the privilege. See, e.g., In re Gi Yeong Nam, 245 B.R. at 225–26 (adequate facts were alleged and certain federal and state statutes identified to find it "conceivable that Defendants could be linked with the federal or state crime of aiding and abetting flight to avoid prosecution"); In re Brown, No. 12–50853–can7, 2014 WL 309403, at *2 (Bankr.W.D.Mo. Jan. 28, 2014) (determining the debtor's response to a particular question may result in his admitting to fraud);

As for our call tomorrow, the other things I want to propose and discuss are not in this email so I look forward to seeing you on the call at 930am and I wish you a pleasant evening.  We all respect you and your team and the practice we have engaged in thus far.


Sincerely,

Ronald Richards, Esq.
Law Offices of Ronald Richards & Associates, A.P.C.
310-556-1001 Office
310-277-3325 Fax
www.ronaldrichards.com


Mailing Address:
P.O. Box 11480
Beverly Hills, CA 90213

EXHIBIT "9", PAGE 164

®



**A multi jurisdictional practice with bar admissions on the East and West Coast**

***CONFIDENTIALITY NOTICE*** This electronic mail transmission has been sent by an attorney. This message and any files or text attached to it are intended only for the recipients named above, and contain information that may be confidential or privileged. If you are not an intended recipient, you must not read, copy, use or disclose this communication. Please also notify the sender by replying to this message, and then delete all copies of it from your system. Thank you.
_____

THINK GREEN. PLEASE CONSIDER THE ENVIRONMENT BEFORE YOU PRINT THIS MESSAGE. THANK YOU.

EXHIBIT "9", PAGE 165

## EXHIBIT "A" IN SUPPORT OF SUBPOENA TO JONA RECHNITZ

### Production of Documents

**Definitions:**

The following definitions apply herein:

A.      The term "Case" shall mean that bankruptcy case styled In re Jadelle Jewelry and Diamonds, LLC, presently pending in the United States Bankruptcy Court, Central District of California, Los Angeles Division, bearing Case No. 2:20-bk-13530-BR, commenced on April 6, 2020.

B.      The term "Claim" shall have the meaning ascribed to it in 11 U.S.C. § 101(5).

C.      The term "Creditor" shall have the meaning ascribed to it in 11 U.S.C. § 101(10).

D       The term "Communications" shall mean any transmission of information from one person or entity to another by mail, facsimile, electronic mail, text message, instant messaging, audio recordings, journals, diaries, logs, or calendars, including (without limitation) any form of memorialization of personal meetings, conferences, telephone conversations, radio, electronic mail, teleconference, etc.

E       The term "Debt" shall have the meaning ascribed to it in 11 U.S.C. § 101(12).

G.      The term "Involuntary Petition" shall mean that certain involuntary chapter 7 petition styled In re Jadelle Jewelry and Diamonds, LLC, presently pending in the United States Bankruptcy Court, Central District of California, Los Angeles Division, bearing Case No. 2:20-bk-13530-BR.

H.      The term "Jadelle" shall mean Jadelle Jewelry and Diamonds, LLC, and any of its respective officers, directors, employees, affiliates, parents, subsidiaries, representatives, agents, attorneys, and all other persons acting or purporting to act on its behalf, including Jona Rechnitz and Rachel Rechnitz.

I.      The term "Jona" shall mean Jona Rechnitz, and his representatives, agents, attorneys, and all other persons acting or purporting to act on his behalf.

J.      The term "Petition Date" shall mean April 6, 2020, the date the Involuntary Petition was filed.

K.      The term "Rachel" shall mean Rachel Rechnitz, and her representatives, agents, attorneys, and all other persons acting or purporting to act on her behalf.

L.      The terms "and" or "or" or "and/or" shall be construed either disjunctively or conjunctively or both, as necessary, to bring within the scope of any request for responses which might otherwise be construed to be outside the scope.

M.    The term "Contact Information" shall mean information upon which a person or entity may be reached via mail, telephone, facsimile, e-mail or in person or any other medium that is reasonable, and shall include without limitation, present and last known address(es), phone number(s), facsimile number(s), and e- mail address(es).

N.    The terms "Document" or "Documents" shall mean and includes any medium, including without limitation, writings, drawings, graphs, charts, photographs, audio and video recordings, computerized records, such as e-mails, microfilm, microfiche, data compilations, upon which intelligence or information can be recorded, maintained or retrieved, including without limitation, the original or a copy thereof, regardless of the origin and location, of any writing or recording of any type or description, however produced or reproduced, which is in your or your representatives' possession, custody or control, or to which you have or had access, or of which you have knowledge or which you have a right or privilege to examine upon request or demand, and includes any and all writings and recordings as the term is used in Rule 1001(1) of the Federal Rules of Evidence and includes the original (or a copy if the original is not available) and any nonidentical copies (whether different from the original because of notes made on the copy or otherwise).

O.    The terms "relate to", "refer to", "evidence", "concern", "pertain to" and "pertaining to" shall mean mentioning, discussing, including, summarizing, describing, reflecting, containing, referring to, relating to, depicting, connected with, embodying, evidencing, constituting, concerning, reporting, purporting or involving an act, occurrence, event, transaction, fact, thing, or course of dealing.

P.    The term "you" or "your" shall mean and includes Jadelle.  The term "Jadelle" shall be used interchangeably with the terms "you" or "your".

Q.    The singular form of a word should be interpreted as plural and the plural should be interpreted as singular to give the word or words the broadest possible meaning.

R.    The masculine gender of any word shall be construed to include the masculine, feminine, and neuter gender.

**Requested Documents:**

1.    All Documents regarding any Debt owed by Jadelle to a Creditor as of the Petition Date, including, without limitation, Documents evidencing (i) the identity of the Creditor, including Contact Information, (ii) the amount of the Debt, (iii) the basis for the Debt, (iv) the date the Debt was incurred, (v) the account or reference number of the Debt, and (vi) the nature, priority, and validity of the Debt.

2.    All Documents regarding any Claim of a Creditor against Jadelle as of the Petition Date, including, without limitation, Documents evidencing (i) the identity of the Creditor, including Contact Information, (ii) the amount of the Claim, (iii) the basis for the Claim, (iv) the date the Claim was incurred, (v) the account or reference number of the Claim, and (vi) the nature, priority, and validity of the Claim.

3.      All Documents you contend support your contention that there is a bona fide dispute regarding the amount or liability of any Debt owed by Jadelle to a Creditor as of the Petition Date.

4.      All Documents you contend support your contention that there is a bona fide dispute regarding the amount or liability of any Claim of a Creditor against Jadelle as of the Petition Date.

5.      All Documents referencing any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, regarding the nature, amount, and validity of any Debt owed by Jadelle to a Creditor as of the Petition Date.

6.      All Documents referencing any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, regarding the nature, amount, and validity of any Claim of a Creditor against Jadelle as of the Petition Date.

7.      All Documents referencing the post-Petition Date payment of any portion of a Debt owed by Jadelle to a Creditor as of the Petition Date made by Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf.

8.      All Documents referencing the post-Petition Date payment of any portion of a Claim of a Creditor against Jadelle as of the Petition Date made by Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf.

## Topics of Examination

1.      The nature, amount, and validity of any Debt owed by Jadelle to a Creditor as of the Petition Date, including, without limitation, (i) the identity of the Creditor, including Contact Information, (ii) the amount of the Debt, (iii) the basis for the Debt, (iv) the date the Debt was incurred, (v) the account or reference number of the Debt, and (vi) the nature, priority, and validity of the Debt.

2.      Any Documents which support the nature, amount, and validity of any Debt owed by Jadelle to a Creditor as of the Petition Date.

3.      Any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, regarding the nature, amount, and validity of any Debt owed by Jadelle to a Creditor as of the Petition Date.

4.      Any Documents which support your contention that there is a bona fide dispute regarding the amount or liability of any Debt owed by Jadelle to a Creditor as of the Petition Date.

5.      Any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, supporting Jadelle, Rachel, or Jona's contention that there is a bona fide dispute regarding the amount or liability of any Debt owed by Jadelle to a Creditor as of the Petition Date.

EXHIBIT "9", PAGE 168

6.      Any Documents referencing the post-Petition Date payment of any portion of a Debt owed by Jadelle to a Creditor as of the Petition Date made by Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf.

7.      Any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, referencing the post-Petition Date payment of any portion of a Debt owed by Jadelle to a Creditor as of the Petition Date made by Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf.

8.      The nature, amount, and validity of any Claim of a Creditor against Jadelle as of the Petition Date, including, without limitation, (i) the identity of the Creditor, including Contact Information, (ii) the amount of the Claim, (iii) the basis for the Claim, (iv) the date the Claim was incurred, (v) the account or reference number of the Claim and (vi) the nature, priority, and validity of the Claim.

9.      Any Documents which support the nature, amount, and validity of any Claim of a Creditor against Jadelle as of the Petition Date.

10.     Any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, regarding the nature, amount, and validity of any Claim of a Creditor against Jadelle as of the Petition Date.

11.     Any Documents which support your contention that there is a bona fide dispute regarding the amount or liability of any Claim of a Creditor against Jadelle as of the Petition Date.

12.     Any Communications between Jadelle, Rachel, Jona, or  any person acting, or purporting to act, on their respective behalf, supporting Jadelle, Rachel, or Jona's contention that there is a bona fide dispute regarding the amount or liability of any Claim of a Creditor against Jadelle as of the Petition Date.

13.     Any Documents referencing the post-Petition Date payment of any portion of a Claim of a Creditor against Jadelle as of the Petition Date made by Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf.

14.     Any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, referencing the post-Petition Date payment of any portion of a Claim of a Creditor against Jadelle as of the Petition Date made by Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf.

EXHIBIT "9", PAGE 169

Daniel A. Lev (CA Bar No. 129622)
  dlev@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for Petitioning Creditors

Ronald Richards (CA Bar No. 176246)
  ron@ronaldrichards.com
Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
Beverly Hills, California 90213
Telephone:  310.556.1001
Facsimile:  310.277.3325

Attorneys for Victor Franco Noval

Baruch C. Cohen (CA Bar No. 159455)
  baruchcohen@baruchcohenesq.com
Law Office of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
Telephone:  323.937.4501
Facsimile: 888.316.6107

Attorneys for Peter Marco, LLC and First International Diamond, Inc.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:20-bk-13530-BR |
| JADELLE JEWELRY AND DIAMONDS, LLC, | Chapter 7 |
| | **NOTICE OF SUBPOENA TO APPEAR AT DEPOSITION SERVED ON JONA RECHNITZ** |
| Alleged Debtor. | **DEPOSITION OF JONA RECHNITZ:** |

DATE:      June 25, 2020
TIME:      10:00 a.m.
PLACE:    333 South Grand Avenue
              Suite 3400
              Los Angeles, CA 90071

DAL 2702611v1

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VICTOR FRANCO NOVAL; PETER MARCO, LLC; and FIRST INTERNATIONAL DIAMOND, INC.,

          Petitioning Creditors,

    vs.

JADELLE JEWELRY AND DIAMONDS, LLC,

          Alleged Debtor.

**TO THE ALLEGED DEBTOR, JONA RECHNITZ, AND THEIR ATTORNEYS OF RECORD:**

       **PLEASE TAKE NOTICE** that, pursuant to Rule 45 of the Federal Rules of Civil Procedure (made applicable to this bankruptcy case pursuant to Rule 9016 of the Federal Rules of Bankruptcy Procedure), petitioning creditors, Victor Franco Noval ("Noval"), Peter Marco, LLC ("Marco"), and First International Diamond, Inc. ("First International" and together with Noval and Marco, the "Petitioning Creditors"), have caused the "Subpoena to Appear and Testify at a Deposition in a Bankruptcy Case (or Adversary Proceeding)" (the "Subpoena"), to be issued and served upon Jona Rechnitz (the "Subpoenaed Party").  A true and correct copy of the Subpoena is attached hereto as Exhibit "A".

       **PLEASE TAKE FURTHER NOTICE** that the Subpoena commands that the Subpoenaed Party appear for deposition, under oath, and that such deposition take place on June 25, 2020, at 10:00 a.m., at **Sulmeyer**Kupetz, A Professional Corporation, 333 South Grand Avenue, Suite 3400, Los Angeles, California 90071.

       **PLEASE TAKE FURTHER NOTICE** that the Subpoenaed Party is a natural person.

EXHIBIT "9", PAGE 171

1      **PLEASE TAKE FURTHER NOTICE** that the Subpoena commands the

2  Subpoenaed Party to bring to the deposition, and permit inspection and copying of,

3  documents and other information set forth in Exhibit "A" to the Subpoena.

4      **PLEASE TAKE FURTHER NOTICE** that the deposition will be recorded by

5  audio, audiovisual, and/or stenographic means, and that Petitioning Creditors, at their

6  sole discretion, may elect to conduct the deposition by means of "zoom" or such other

7  form of virtual examination.

8  DATED: June 11, 2020              **Sulmeyer**Kupetz
                                    A Professional Corporation

9

10

11                                  By: /s/ *Daniel A. Lev*
                                        Daniel A. Lev
12                                      Attorneys for Petitioning Creditors

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Central _____ District of California _____

In re JADELLE JEWELRY AND DIAMONDS, LLC, _____
Alleged Debtor

Case No. 2:20-bk-13530-BR

*(Complete if issued in an adversary proceeding)*

Chapter 7

_____
Plaintiff
v.

_____
Defendants

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Jona Rechnitz _____

*(Name of person to whom the subpoena is directed)*

☒ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE | DATE AND TIME |
|---|---|
| **Sulmeyer**Kupetz, A Professional Corporation<br>333 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071 | June 25, 2020 at 10:00 a.m. |

The deposition will be recorded by this method:  Stenography and/or video

☒ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Exhibit "A"

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: June 12, 2020 _____

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*
                                              Daniel A. Lev

The name, address, email address, and telephone number of the attorney representing *(name of party)* petitioning creditors *Victor Franco Noval, Peter Marco, LLC, and First International Diamond, Inc.,* who issues or requests this subpoena, are: Daniel A. Lev, 333 South Grand Avenue, Suite 3400, Los Angeles, California 90071, email: dlev@sulmeyerlaw.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

DAL 2702619v1


American LegalNet, Inc.
www.FormsWorkFlow.com

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any):* Jona Rechnitz _____
on *(date)* June XX, 2020____ .

☒ I served the subpoena by delivering a copy to the named person as follows: _____
_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .


I declare under penalty of perjury that this information is true and correct.

Date: June XX, 2020_____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*


Additional information concerning attempted service, etc.:

American LegalNet, Inc.
www.FormsWorkFlow.com

EXHIBIT "9", PAGE 174

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

*(2)For Other Discovery.* A subpoena may command:
   (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
   (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
   (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
   (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   (B)*Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)



EXHIBIT "9", PAGE 175

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Central _____   District of   California _____

In re   JADELLE JEWELRY AND DIAMONDS, LLC, _____
　　　　　　　　　Alleged Debtor

　　　　　　　　　　　　　　　　　　　　　　Case No. 2:20-bk-13530-BR

*(Complete if issued in an adversary proceeding)*

　　　　　　　　　　　　　　　　　　　　　　Chapter 7

_____
　　　　　　　　Plaintiff
　　　　　　　　　v.

_____
　　　　　　　　Defendants

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Rachel Rechnitz
　　　　*(Name of person to whom the subpoena is directed)*

☒ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE | DATE AND TIME |
|---|---|
| **Sulmeyer**Kupetz, A Professional Corporation<br>333 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071 | June 26, 2020 at 10:00 a.m. |

The deposition will be recorded by this method:  Stenography and/or video

☒ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Exhibit "A"

　　　　The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  June 12, 2020 _____

　　　　　　　CLERK OF COURT
　　　　　　　　　　　　　　　　　OR

　　_____　　　_____
　　*Signature of Clerk or Deputy Clerk*　　　*Attorney's signature*
　　　　　　　　　　　　　　　　　　Daniel A. Lev

The name, address, email address, and telephone number of the attorney representing *(name of party)* petitioning creditors *Victor Franco Noval, Peter Marco, LLC, and First International Diamond, Inc.,* who issues or requests this subpoena, are: Daniel A. Lev, 333 South Grand Avenue, Suite 3400, Los Angeles, California 90071, email: dlev@sulmeyerlaw.com
### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

DAL 2702614v1



B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any):*  Rachel Rechnitz
on *(date)* June XX, 2020      .

☒ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____on *(date)* _____; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____.


        I declare under penalty of perjury that this information is true and correct.

Date:  June XX, 2020      

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*


Additional information concerning attempted service, etc.:

American LegalNet, Inc.
www.FormsWorkFlow.com

DAL 2702614v1

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
  (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

DAL 2702614v1

American LegalNet, Inc.
www.FormsWorkFlow.com

# EXHIBIT "10"

Electronically FILED by Superior Court of California, County of Los Angeles on 02/10/2020 12:00 AM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Mariscal,Deputy Clerk
20SMCV00216

Assigned for all purposes to: Santa Monica Courthouse, Judicial Officer: Marc Gross

Ronald Richards (SBN 176246)
    ron@ronaldrichards.com
Morani Stelmach, Esq. (SBN 296670)
    morani@ronaldrichards.com
LAW OFFICES OF RONALD RICHARDS &
ASSOCIATES, A.P.C.
Mailing Address:
P.O. Box 11480
Beverly Hills, California 90213
Telephone: (310) 556-1001
Facsimile: (310) 277-3325


Geoffrey S. Long (SBN 187429)
    glong0607@gmail.com
LAW OFFICES OF GEOFFREY LONG, A.P.C.
1601 N. Sepulveda Blvd., No. 729
Manhattan Beach, California 90266
Telephone: (310) 480-5946
Facsimile: (310) 796-5663

Attorneys for Plaintiff VICTOR FRANCO NOVAL

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES – WEST DISTRICT

| | |
|---|---|
| VICTOR FRANCO NOVAL, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>JONA S. RECHNITZ, an individual; RACHEL RECHNITZ, an individual; JADELLE INC., a California corporation; JADELLE JEWELRY AND DIAMONDS, LLC, a Delaware limited liability company; LEVIN PRADO aka LEVON PRADO, an individual; XIOMARA CORTEZ, an individual and DOES 1-20.<br><br>Defendants. | Case No.<br><br>**VERIFIED COMPLAINT FOR:**<br><br> (1) Fraud<br><br>(2) Civil Theft (*Penal Code,* § 496)<br><br>(3) Breach of Contract<br><br>(4) Conspiracy to Commit Theft, Fraud, and Fraud by Concealment<br><br>(5) Appointment of Receiver |

COMPLAINT

1    Plaintiff Victor Franco Noval ("Plaintiff" or "Franco") hereby alleges as follows:

2                                         **PARTIES**

3    1.    Plaintiff Victor Franco Noval ("Franco") is an individual residing in Beverly Hills,

4    California in the County of Los Angeles.

5    2.    Defendant Jona S. Rechnitz ("Jona") is an individual who is residing in the County

6    of Los Angeles in a rental house located at 9533 Sawyer St., Beverlywood area, City of Los Angeles.

7

8

9

10

11        

12

13

14

15

16

17

18

19

20    3.    Defendant Rachel Rechnitz ("Rachel") is an individual who is residing in the County

21    of Los Angeles in a rental house located at 9533 Sawyer St., Beverlywood area, City of Los Angeles.

22    She is formerly known as Rachel Kahn.  Both Jona and Rachel advertise political and powerful

23    celebrity connections to create a false sense of credibility about themselves and their business.  They

24    post photos on social media of Kylie Jenner and Kim Kardashian, and Jona is seen with the mayor

25    of New York and holding large amounts of United States Currency.

26

27

28

                                          1
                                      COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





2
COMPLAINT

4.    Defendant Jadelle Inc. ("Jadelle Inc.") is a California corporation whose principle office is in Beverly Hills and whose board member and President is Rachel.

5.    Defendant Jadelle Jewelry and Diamonds, LLC ("Jadelle LLC," collectively with Jadelle Inc., the "Jadelle Entities") is a Delaware limited liability company qualified to do business in California.  Rachel is the managing member of Jadelle LLC.

6.    Defendant Levin Prado aka Levon Prado ("Prado") is the agent for service of process, controller, and check signer for the Jadelle Entities.  It is alleged on information and belief that Prado has a girlfriend named Xiomara Cortez at the Wells Fargo Bank Beverly Hills branch who assisted him in furthering Rachel and Jona's fraud by stopping payment on checks and allowing numerous improper check transactions to occur on both of the Jadelle Entities' accounts.   Prado is displaying the sign he has indicated with his action towards Plaintiff and others as it relates to their goods and collateral.



3

COMPLAINT

EXHIBIT "10", PAGE 182

7.      Xiomara Cortez is an individual believed to reside in the County of Los Angeles who is employed at Wells Fargo Bank.  Cortez was instrumental in allowing Jona and Rachel's frauds to continue by keeping the current bank account open and by allowing Prado to continue to open up accounts and issue worthless instruments.



8.      The true names and capacities of defendants Does 1 through 20, whether individual, corporate, associate or otherwise, are unknown to Plaintiff, who therefore sues these defendants by such fictitious names.  Plaintiff will amend this complaint to show the true names and capacities of those defendants after they have been ascertained.  Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged in this complaint and that Plaintiff's damages as alleged in the Complaint were proximately caused by the acts or omissions of such defendant.

9.      Plaintiff is informed that, at all times mentioned in this Complaint, Defendants, and each of them, were the partners, joint venturers, agents, employees, alter egos, and representatives of each other in doing the things herein alleged and, in doing so, were acting within the scope of

EXHIBIT "10", PAGE 183

1  their respective authorities as agents, employees and representatives, and are jointly and severally

2  liable to Plaintiff.

3      10.    The alleged frauds committed by Jona were committed with Rachel's knowledge and

4  direction, along with the assistance of Prado, making them personally liable.  Without Rachel setting

5  upon the entities to commit the frauds, Jona lying to steal the collateral and loan proceeds, and Prado

6  signing the checks, none of the below referenced offenses could have occurred.

7                              **JURISDICTION AND VENUE**

8      11.    This Court has jurisdiction over this entire action because it is a civil action wherein

9  the damages sought are in excess of the jurisdictional limits of this Court, and the Defendants are

10  subject to personal jurisdiction in the State of California

11      12.    Defendants have conducted substantial business in the State of California, are

12  registered and qualified to conduct business in the State of California, are California residents,

13  and/or have purposefully directed tortious activities towards a California resident.

14      13.    Venue in this Court is proper pursuant to California *Code of Civil Procedure*, §§ 395

15  *et seq*. Venue of this action is in this Court and County because the obligations, acts and liabilities

16  claimed in this action arose and the torts alleged herein took place in Los Angeles County and the

17  parties reside in this County.

18

19                              **GENERAL FACTUAL ALLEGATIONS**

20      14.    On or about January 24, 2019, the Jadelle Entities, which are owned by Jona and

21  Rachel, borrowed money from Plaintiff pursuant to a written agreement.  The terms of the written

22  agreement were memorialized in a Debt Acknowledgment, Promissory Note and Security

23  Agreement ("Debt Agreement") dated March 2019.  A true and correct copy of the Debt Agreement

24  is attached hereto and incorporated herein as Exhibit "A".

25      15.    The original principal amount in the Debt Agreement is $2,850,000 at 9% interest

26  per month, however, the total debt owed by Defendants later increased to $5,800,000.  The maturity

27  dates are reflected in the Debt Agreement.

28      16.    Pursuant to the Debt Agreement, the loans were secured by jewelry delivered to

                                    5
                              COMPLAINT

1  Franco and a 2012 Bugatti.  Jona delivered the Bugati and the jewelry to Franco as security/collateral

2  for the loan.

3     17.  After a series of further advance transactions, the debt on the loan grew to

4  $5,800,000.

5     18.  The Bugati was liquidated and the funds were credited against principal for a total

6  credit of $400,000.

7     19.  As background on Jona Rechnitz, a sealed information was filed against him in the

8  Southern District of New York on June 6, 2016 for wire fraud.  A copy of the information is attached

9  hereto as Exhibit "B".

10     20.  Jona entered a guilty plea on June 6, 2016.

11     21.  On March 15, 2017, the information against Jona was unsealed.  On March 15, 2017,

12  Jona was released on bond pursuant to release conditions imposed by Judge Alvin K. Hellerstein.

13     22.  On December 6, 2019, Jona was sentenced to 10 months of custody.  He was granted

14  release pending appeal.

15     23.  The government in its sentencing memorandum indicated that "Rechnitz was in a

16  position to cooperate regarding a broad range of subject matters in part because, for several years

17  beginning when he was 26 years old in 2008, Rechnitz rode a wave of unbridled ambition and a

18  seemingly limitless sense of entitlement through a series of misdeeds. Rechnitz had been a brazen

19  criminal, and the seriousness of his crimes of conviction cannot, and should not, be minimized."

20     24.  Yet, apparently misunderstanding his role as a "one of the single most important and

21  prolific white collar cooperating witnesses in the recent history of the Southern District of New

22  York" according to the government, Jona mistakenly believes that this provides him immunity from

23  committing fraud in California.

24     25.  No sooner than within weeks of being sentenced in the Southern District of New

25  York, Jona swindled Franco in a large scale fraud totaling $5,800,000.   On information and belief,

26  Jona and Rachel have defrauded other diamond dealers in Southern California and as those victims

27  authorize the release of their names, the complaint will be amended to recover their stolen goods as

28  well.

6

COMPLAINT

EXHIBIT "10", PAGE 185

26.     At the time of the fraud, Jona Rechnitz was and still is a convicted felon from the Southern District of New York. He is presently out on bond for a wire fraud conviction where he was granted bail pending appeal. He is married to Rachel Rechnitz and they have six children together.

27.     They both now reside in a rental home in the Beverlywood area in the City of Los Angeles.

28.     Jona and Rachel operate a jewelry business through two similarly named entities, defendants Jadelle Inc. and Jadelle Jewelry and Diamonds, LLC, herein the Jadelle Entities, whose marque client is the Kardashian family.  Each of their clients will be added to this action as the facts unfold showing the stolen collateral was sold to retail customers of Jona and Rachel.

29.     The Debt Agreement between the parties was simple.  Jona tendered over $7,000,000 worth of diamonds to Plaintiff to be held as a collateral against a loan which totaled $5,800,000.

30.     In late December of 2019, AFTER, Jona was sentenced, Jona indicated to Franco that he was going to get a credit line and asked for the release of the diamond collateral in exchange for payment in full.  This representation by Jona was false when made.  Jona knew the representation was false when made.  Jona made this representation with the intention of causing Franco to rely on it.  Franco relied on this representation to his detriment.

31.     Jona persuaded Franco and Franco's brother to deliver the collateral to Jona and Rachel's office at 9454 Wilshire Blvd. in Beverly Hills.  Jona exchanged two checks payable to Franco in exchange for the diamond collateral dated January 14, 2020 and January 16, 2020 in the amounts of $2,500,000 and $1,300,000, respectively.  True and correct copies of said checks are attached hereto as Exhibit "C."  At the time Jona issued the checks to Franco he had no intention of honoring the checks.  Franco relied on Jona issuing and intending to honor the checks by releasing the diamond collateral.

32.     Plaintiff and Plaintiff's brother complied by exchanging the diamond collateral and Jona tendered two checks attached hereto as Exhibit "C".  The checks, however, were NSF at the time of tender.  Jona has repeatedly lied, lulled, and attempted to fabricate one excuse after another to delay paying Plaintiff.

7
COMPLAINT

EXHIBIT "10", PAGE 186

33.    Based upon information and belief, Prado, acting in concert with Jona and Rachel, and to further their scheme, had his girlfriend or another representative at Wells Fargo Bank issue a stop payment on the checks, attached hereto as Exhibit "C", that Franco was going to deposit.

34.    Jona falsely enlisted attorneys to pretend payment on the loan was coming from family members to buy himself more time.  A number of these family members had written letters to the Court for Jona's sentencing.

35.    In reality, Jona liquidated Plaintiff's diamond collateral and spent Plaintiff's money, but refuses to tell Plaintiff how he liquidated the collateral or how he spent the loan proceeds.

36.    It is apparent that Jona is continuing his criminal conduct in California after being convicted in New York.

37.    Upon realizing he had been swindled and defrauded, Franco immediately filed a police report with the Beverly Hills Police.

38.    Repeated demands have been made to Jona to return the diamond collateral.  Jona, who wants to conceal his criminal conduct from the sentencing judge in New York and the federal prosecutors who vouched for him, as well as U.S. Probation, took numerous steps to lull the victim, Franco, to buy more time.

39.    On January 16, 2020, with the assistance of a local Beverly Hills attorney, Jona drafted more documents and an additional check, attached hereto as Exhibit "D" and Exhibit "E", to further stop Franco from disclosing and revealing that Jona's fraudulent conduct has only grown in scope and size and that he has learned nothing from his life of crime which spanned from 2011 to 2015, which then halted while he was cooperating from 2016 to 2018.

40.    The fact that Jona only received 10 months custody time with 5 months house arrest has only emboldened him to commit more fraud, grand theft, and to issue worthless instruments.

41.    The January 16, 2020 document requested that Franco keep Jona's fraud and breaches confidential until January 23, 2020.  Jona, however, did not comply with the January 16, 2020 agreement and no payments have been received.  Jona entered into the January 16, 2020 agreement without any intention of performing in order to delay Franco from seeking redress for the fraud and breaches.  Franco reasonably and detrimentally relied on the January 16, 2020

8

COMPLAINT

1   agreement.

2       42.    Jona then fired the Beverly Hills attorney and retained a new attorney on January 28,

3   2020, to resolve this matter.

4       43.    Jona's modus operandi in this fraud is to have numerous well-respected attorneys

5   contact Franco's counsel and advance Jona's false promises of repayment or outside funding along

6   with checks that either are NSF or which Jona had no intention of honoring.

7       44.    Jona directly, and through counsel, has been asked to disclose the location of the

8   diamond collateral and to provide a tracing and accounting of the loan proceeds.  Jona has refused

9   to do so.

10       45.    On information and belief, Plaintiff alleges that this is because Jona had pledged

11   diamonds to Franco that in fact were loaned to Jona and were not owned by Jona or Rachel.   Upon

12   discovering whose diamonds Jona had pledged, this Complaint will be amended to add that party as

13   they have Franco's collateral and hold it in constructive trust for Plaintiff's benefit.

14       46.    On information and belief, defendant Xiomara Cortez aided and abetted the

15   defendants in committing these frauds.  Defendant Cortez assisted in issuing checks, stopping

16   payment, and verifying funds, knowingly allowing Prado to issue numerous worthless checks and

17   never closed the accounts due to her romantic relationship with Prado.

18       47.    Jona, assisted by Rachel, have only become more emboldened in their frauds.  On

19   information and belief, they have taken goods on memo from various Southern California diamond

20   merchants.  Namely, Peter Marco, Moti Klein, and Julius Klein.  The video Jona showed at his

21   sentencing in federal court to the federal judge on December 19, 2019, with Kim Kardashian, was

22   most likely depicted stolen and fraudulently obtained goods from Plaintiff and various diamond

23   merchants.  The amount of losses to these various parties is alleged to be over $15,000,000.  They

24   are number other victims as well involved in various scams perpetrated by Jona. On information

25   and belief, they include Sotheby's, Leon Landver, Sam Gorodistian, Ben Adhoot, and Yehuda

26   Gamzo.  All the alleged victims have the same common pattern evidence used by Jona and Rachel

27   which is to have attorneys contact them, telling them they are getting paid according to Jona.

28       48.    On information and belief, Jona made numerous false statements to the federal

9

COMPLAINT

sentencing judge because by December 19 ,2019, Jona's frauds were well under way.  This house of fraudulent cards needs to be exposed as his growing victim list is becoming a community wide problem.  This lawsuit and other reports that have been filed, will hopefully bring this economic terrorist to justice and Plaintiff prays that this Court take appropriate access to find him financially responsible and appoint a receiver to halt what has now turned into outright theft of merchandise in the tens of millions of dollars afflicting Plaintiff and other victims.  As more come forward, Plaintiff will amend and add them to this complaint to turn this into a class if appropriate to stop this man and his wife.  Presently, Plaintiff is aware of other victims including Peter Marco, Julius Klein, and Moti Klein as well as multiple other victims including an active insurance investigation.

49.    Plaintiff immediately reported this matter to the Beverly Hills Police Department in the hope of stopping Mr. Rechnitz from further victimizing local residents and businesses.  The police have notified Plaintiff there are numerous other victims.  The filing of this action is intended to bring to light Rechnitz's frauds and have him exposed so no further innocent people are hurt by this economic terrorist.  At this point, Plaintiff has no realistic belief that Rechnitz will ever pay him back as the list of victims keeps growing.  At this point, Plaintiff only hopes no further persons are swindled by Jona, Rachel, and their team of thieves.



50.    On February 4, 2020, his newly retained criminal defense attorney in Los Angeles

10

COMPLAINT

sent a carefully scripted mass email to BCC'ing Jona's purported victims, attached as Exhibit "F"

which reads as follows:

> We write with an update on Jona Rechnitz. A family member of Mr. Rechnitz has informed
> our law firm that the family member is seeking to refinance certain real property in order to
> satisfy Mr. Rechnitz's outstanding liabilities. We currently have no visibility into the family
> member's interest in the property, the value of the property, or what, if any equity, the family
> member has in it.
>
> If you are represented by counsel, please let us know and provide your counsel's contact
> information.  Our client's desire is to resolve this matter amicably.

This email comes after Jona had three previous reputable attorneys contact Plaintiff all

relaying the same bogus and false words of hope.  This type of lulling is widely known under federal

law.    The email carefully and correctly discloses that the law firm knows nothing of the veracity

of the client directed statements and correctly distances the law firm of any endorsement of Jona's

numerous attempts to use reputable attorneys to buy himself time.  It should be noted that each and

every time the reputable attorneys Jona retained, correctly made it clear they were not endorsing or

underwriting Jona's promises of repayment of the stolen funds or return of the stolen collateral.

51.    Jona and Rachel have directed numerous "lulling letters" in furtherance of their

scheme to defraud. A lulling letter is "designed to lull the victims into a false sense of security,

postpone their ultimate complaint to the authorities, and therefore make apprehension of the

defendants less likely." *United States v. Manarite*, 44 F.3d 1407, 1412 (9th Cir.1995) (quoting

*United States v. Maze*, 414 U.S. 395, 403 (1974)); *United States v. Shaw* (9th Cir. 1996) 97 F.3d

1463.  The numerous exhibits attached to this complaint are all examples of lulling letters.  They

display consciousness of Jona and Rachel's intent to defraud.

52.    On February 7, 2020, Plaintiff's counsel was contacted by two partners at Cohen

Williams LLP that notwithstanding the February 4, 2020 email, they unfortunately had no further

information to report.   Plaintiff's counsel asked them to stop contacting him regarding this matter

as his client cannot psychologically handle further false promises, lies, and false rays of hope that

Jona directs his attorneys to provide his various victims.  Plaintiff's counsel informed these fine

11

COMPLAINT

1  reputable attorneys not to update him further as he has moved on and that his client has zero belief

2  Jona will ever pay him back.

3        53.    Plaintiff is hopeful that the publication of this action will cause more victims to not

4  feel ashamed of being fleeced and to report these matters to the proper authorities.  Absent public

5  awareness of Jona and his conspirator's frauds, he will keep stealing from people and hurting

6  residents and businesses of Southern California.

7        54.    Jona is using his last cooperation in the Southern District of New York as some sort

8  of ill-conceived immunity as part of the scheme. During the fraud, Jona has indicated that he was

9  not concerned with any problems or things he has done because the FBI needs him as an informant

10  so bad in the New York case where there are appeals they would never do anything to him no matter

11  what he did.  This is of course is completely an ignorant and delusional view.  The FBI does not

12  immunize crooks to steal simply because they cooperate in a case.  Jona uses this as a tool to further

13  his scheme to defraud.

14        55.    Numerous victims have been interviewed in this matter.  On information and belief,

15  as to the Sotheby's fraud, Jona falsely represented to Sotheby's he was entitled to diamonds given

16  to Sotheby's for auction, Jona secretly picked them up and has dissipated the assets.   The total loss

17  was $3,000,000.00.  Just adding up all the victims the Plaintiff's law firm has interviewed the losses

18  exceed $15,000,000.  The Plaintiff is encouraging all victims of Jona and Rachel to come forward

19  immediately and to stop believing they are going to get paid.

20                          **FIRST CAUSE OF ACTION**

21                        **FRAUD AGAINST ALL DEFENDANTS**

22        56.    Plaintiff hereby incorporates by reference as though fully set forth in full herein, all

23  preceding Paragraphs of this Complaint.

24        57.    The foregoing representations made by Jona, Rachel, and the other Defendants were

25  false when they were made, and Defendants knew the representations to be false.  Defendants did

26  not intend to comply with the promises and representations when they were made.

27        58.    The foregoing representations were made by Jona, Rachel, and Defendants with the

28  intent to deceive Plaintiff and with knowledge that Plaintiff would rely on them.

---

12

COMPLAINT

EXHIBIT "10", PAGE 191

59.     Plaintiff detrimentally and reasonably relied on the foregoing representations.

60.     Plaintiff has been damaged by Defendants' false, intentional, and fraudulent representations and concealing of material information, as alleged above, in an amount to be proven at trial, but at least $7,000,000, which represents the collateral Jona lied to steal as well as tendered worthless instruments for.

61.     Plaintiff further requests the imposition of a constructive trust against all Defendants who are in possession of the diamond collateral set forth in the Debt Agreement and for an order and judgment that they hold the diamond collateral and/or all proceeds therefrom as constructive trustees for the benefit of Plaintiff.

62.     In doing the things herein alleged, Defendants acted willfully, maliciously, and with the intent to cause injury and harm to Plaintiff.  Defendants are therefore guilty of malice and/or fraud in conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive and exemplary damages in an amount appropriate to punish Defendants, and each of them, and deter them and others from engaging in similar misconduct

## SECOND CAUSE OF ACTION

### CIVIL THEFT (Cal. *Penal Code,* § 496) AGAINST ALL DEFENDANTS

63.     Plaintiff hereby incorporates by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

64.     As a result of Jona and Defendants' conduct as alleged herein, they have violated California *Penal Code,* section 496.

65.     California *Penal Code,* section 496, provides, "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170. However, if the value of the property does not exceed nine hundred fifty dollars ($950), the offense shall be a misdemeanor, punishable only by imprisonment in a county jail not exceeding one year, if such person has no prior convictions

13

COMPLAINT

for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290.

66.     Jona and Defendants have obtained and received property from Plaintiff, the $5,800,000, in a manner constituting "theft," as that term is defined in California *Penal Code,* section 484(a), "[e]very person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."

67.     As a direct and proximate result of Defendants' civil theft, Plaintiff has been damaged in an amount to be proven at trial, but at least $7,000,000.

68.     Pursuant to California *Penal Code,* section 496(c), Plaintiff is also entitled to recover treble damages from Defendants.

69.     Pursuant to California *Penal Code,* section 496(c), Plaintiff is also entitled to recover attorneys' fees from Defendants.

70.     Plaintiff further requests the imposition of a constructive trust against all Defendants who are in possession of the diamond collateral set forth in the Debt Agreement and for an order and judgment that they hold the diamond collateral and/or all proceeds therefrom as constructive trustees for the benefit of Plaintiff.

71.     In doing the things herein alleged, Defendants acted willfully, maliciously, and with the intent to cause injury and harm to Plaintiff.  Defendants are therefore guilty of malice and/or fraud in conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive and exemplary damages in an amount appropriate to punish Defendants, and each of them, and deter them and others from engaging in similar misconduct

**THIRD CAUSE OF ACTION**

**BREACH OF CONTRACT AGAINST ALL DEFENDANTS**

72.    Plaintiff hereby incorporates by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

73.    Plaintiff has duly performed all of his obligations, terms, and conditions of the Debt Agreement, except to the extent that his performance has been waived, prevented or excused by the acts, conduct and/or omissions of Defendants.

74.    All conditions for Defendants' performance on the Debt Agreement have occurred.

75.    Defendants are in breach of the Debt Agreement by failing and refusing to pay Plaintiff all amounts due thereunder and by failing to provide Plaintiff with the collateral required thereunder.

76.    As a direct and proximate result of the acts, omissions, and breaches of the Debt Agreement by Defendants, as alleged herein, Plaintiff has suffered damages in a specific amount to be determined at trial, but in the amount of at least $7,000,000.

**FOURTH CAUSE OF ACTION**

**CIVIL CONSPIRACY TO COMMIT THEFT, FRAUD, AND FRAUD BY CONCEALMENT AGAINST ALL DEFENDANTS**

77.    Plaintiff hereby incorporates by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

78.    Jona, Rachel, and Prado conspired to make an illegal agreement to defraud Franco of his loan proceed and his collateral and to commit civil theft.

79.    Jona, with his wife Rachel, have set up serial bogus companies to solicit loans based upon the false premise they have collateral.  Meanwhile the collateral is already pledged to a third party or Jona and Rachel have concocted lies to get it back, using Prado as their patsy to sign checks on their corporate checking accounts.

80.    Franco is informed, believes, and thereupon alleges that at all times relevant hereto, Defendants, including but not limited to Jona, Rachel, and Prado, formed a civil conspiracy and engaged in the foregoing acts in operation and furtherance of that conspiracy.

15
COMPLAINT

81.     Plaintiff is informed, believes, and thereupon alleges that at all times relevant hereto, Defendants committed the foregoing misrepresentations, wrongs, theft, and fraud for the purpose and in furtherance of a fraudulent conspiracy and scheme to defraud Plaintiff, as alleged herein.

82.     As a result of the civil conspiracy, each and every Defendant is liable and responsible for the acts of the other Defendants in furtherance of the conspiracy and all damages resulting therefrom.

83.     As a result of the civil conspiracy, Defendants are jointly and severally liable for $7,000,000.

84.     The egregious nature of the Defendants/conspirators' collective conduct is malicious, wanton, and willful.  Plaintiff needs to be awarded punitive damages plus a judgment of joint and several liability.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Franco seeks a judgment in her favor and an order granting the following relief:

1.     That Plaintiff be awarded compensatory damages in the amount of at least $7,000,000;

2.     That Plaintiff be awarded treble damages pursuant to California *Penal Code,* section 496(c);

3.     That Plaintiff be awarded reasonable attorneys' fees pursuant to California *Penal Code,* section 496(c);

4.     For a constructive trust over the diamond collateral and all proceeds therefrom;

5.     That Plaintiff be awarded punitive damages in an amount to be proven at trial;

6.     For a receiver to be installed into both defendant companies and personal estates to marshal the remaining assets;

7.     That Plaintiff be awarded costs of suit; and

8.     That Plaintiff be awarded such further relief as the Court deems just and proper.

16
COMPLAINT

DATED: February 8, 2020                LAW OFFICES OF RONALD RICHARDS
                                       & ASSOCIATES, A.P.C.


                                       By:    /s/ Ronald Richards
                                              Ronald Richards
                                              Attorneys for Plaintiff Victor Franco Noval


                                       LAW OFFICES OF GEOFFREY LONG, A.P.C.


                                       By:    /s/ Geoffrey Long
                                              Geoffrey Long
                                              Attorneys for Plaintiff Victor Franco Noval

17
COMPLAINT

EXHIBIT "10", PAGE 196

**VERIFICATION**

I, Victor Franco Noval, declare:

I have read the foregoing complaint and know the contents thereof.

I am informed and believe based on information provided to me, materials I have reviewed, and

my personal knowledge that the matters stated in are true and accurate to the best of my

knowledge except where I indicated they are based upon information and belief.

I declare under penalty of perjury pursuant to the laws of the State of California that the

foregoing is true and correct, and that this verification to this complaint was executed this 9th day

of February, 2020, in Beverly Hills, California.

_____

Victor Franco Noval

18

COMPLAINT

# EXHIBIT A

## DEBT ACKOWLEDGEMENT, PROMISSORY NOTE AND SECURITY AGREEMENT

DEBT ACKOWLEDGEMENT, PROMISSORY NOTE AND SECURITY AGREEMENT, is made this ___ day of March, 2019, by and between Jadelle Jewelry and Diamonds, LLC, a Delaware limited liability company, located at 9454 Wilshire Boulevard, Penthouse #1, Beverly Hills, CA 90210 ("Jadelle") and Victor Franco Noval, an individual with an address of 1141 Summit Drive, Beverly Hills, CA 90210 ("Noval"). Jadelle and Noval are hereinafter referred to collectively as "the Parties".

WHEREAS Noval has made loans in the aggregate amount of $2,850,000.00 to Jadelle;

NOW, THEREFORE, in consideration of the foregoing, the representations, warranties, covenants and agreements hereinafter set forth, the loans previously advanced to Jadelle and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby mutually agree as follows:

### ACKNOWLEDGEMENT

1.      Jadelle does hereby confirm and acknowledge that has received the followed loan amounts from Noval:

      a.  On January 24, 2019, the sum of $1,100,000.00;
      b.  On February 27, 2019, the sum of $750,000.00;
      c.  On March 8, 2019, the sum of $400,000.00; and
      d.  On March 26, 2019, the sum of $600,000.00.

### TERMS OF PAYMENT

2.      Interest: Commencing on the date hereof, Jadelle shall pay to Noval, interest on the full outstanding balance, accruing at a rate of nine percent (9%) per annum, which shall be payable in monthly installments on the first business day of each month, commencing April 1, 2019.

3.      Maturity Date: The full balance of all sum outstanding shall be due on the date that is six (6) months from the date of each advance as set forth in ¶ 1 above.

4.      Extension: The term of this loan may be extended by mutual agreement of the Parties.

### GUARANTEE AND SECURITY

5.      The payment obligations set forth herein are secured by jewelry which Jadelle has provided to Noval and which Noval is holding in its possession as collateral for the amounts due hereunder. In addition thereto, the obligations of Jadelle are further secured by its pledge of

$400,000.00 in value of that certain 2012 Bugatti vehicle presently stored in a garage owned and operated by Noval.

**SEVERABILITY**

6.      In the event any provision of this Agreement is deemed to be void, invalid, or unenforceable, that provision shall be severed from the remainder of this Agreement so as not to cause the invalidity or unenforceability of the remainder of this Agreement. All remaining provisions of this Agreement shall then continue in full force and effect. If any provision shall be deemed invalid due to its scope or breadth including, but not limited to, the interest rate set forth herein, such provision shall be deemed valid to the extent of the scope and breadth permitted by law.

**MODIFICATION**

7.      Except as otherwise provided in this document, this agreement may be modified, superseded, or voided only upon the written and signed agreement of the Parties. Further, the physical destruction or loss of this document shall not be construed as a modification or termination of the agreement contained herein.

**EXCLUSIVE JURISDICTION FOR SUIT IN CASE OF BREACH**

8.      The Parties, by entering into this agreement, submit to jurisdiction in State of New York for adjudication of any disputes and/or claims between the parties under this agreement. Furthermore, the parties hereby agree that the courts of State of California shall have exclusive jurisdiction over any disputes between the parties relative to this agreement, whether said disputes sounds in contract, tort, or other areas of the law.

9.      This Agreement shall be interpreted under, and governed by, the laws of the state of California.

IN WITNESS WHEREOF, this DEBT ACKOWLEDGEMENT, PROMISSORY NOTE AND SECURITY AGREEMENT has been duly executed by or on behalf of the parties hereto as of the date first above written.

**Borrower**                                        **Lender**
*Jadelle Jewelry and Diamonds, LLC*

By:    Levin Prado                           Victor Franco Noval
Its:    Authorized Signatory

# EXHIBIT B

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  6/6/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                 :     SEALED INFORMATION

                - v. -                   :     16 Cr.

JONA RECHNITZ,                           :     16 CRIM 389

                Defendant.               :

- - - - - - - - - - - - - - - - - x

## COUNT ONE

The United States Attorney charges:

1.    From in or about 2011, up to and including in or
about 2015, in the Southern District of New York and elsewhere,
JONA RECHNITZ, the defendant, and others known and unknown,
willfully and knowingly did combine, conspire, confederate, and
agree together and with each other to violate Title 18, United
States Code, Sections 1343 and 1346.

2.    It was a part and an object of the conspiracy that
JONA RECHNITZ, the defendant, and others known and unknown,
willfully and knowingly, having devised and intending to devise
a scheme and artifice to defraud, and to deprive the public of its
intangible right to the honest services of law enforcement and
other public officials, would and did transmit and cause to be
transmitted by means of wire communication in interstate and
foreign commerce, writings, signs, signals, pictures, and sounds
for the purpose of executing such scheme and artifice, in violation

JUDGE SULLIVAN

of Title 18, United States Code, Sections 1343 and 1346, to wit,

RECHNITZ, and others known and unknown, provided financial and

personal benefits and political contributions to public

officials, including law enforcement officials, in exchange for

official action as requested by RECHNITZ and others, and as

opportunities arose, and in connection therewith and in

furtherance thereof, RECHNITZ, and others known and unknown,

transmitted and caused to be transmitted interstate, e-mails,

telephone calls, and electronic wire transfers of funds.

3.    It was also a part and an object of the conspiracy

that JONA RECHNITZ, the defendant, and others known and unknown,

willfully and knowingly, having devised and intending to devise

a scheme and artifice to defraud, and to deprive the members of

the Corrections Officers' Benevolent Association ("COBA"), the

union which represents the corrections officers of New York City,

of their intangible right to the honest services of a senior COBA

official, who was also a corrections officer (the "COBA

Official"), would and did transmit and cause to be transmitted by

means of wire communication in interstate and foreign commerce,

writings, signs, signals, pictures, and sounds for the purpose of

executing such scheme and artifice, in violation of Title 18,

United States Code, Sections 1343 and 1346, to wit, RECHNITZ

facilitated the payment of approximately $60,000 to the COBA

2

Official on behalf of a hedge fund operator in exchange for the
COBA Official's direction of an investment of union funds in the
hedge fund, and in connection therewith and in furtherance
thereof, RECHNITZ, and others known and unknown, transmitted and
caused to be transmitted interstate, e-mails, telephone calls, and
electronic wire transfers of funds.

(Title 18, United States Code, Section 1349.)

### FORFEITURE ALLEGATION

4.   As a result of committing the offense alleged in
Count One of this Information, JONA RECHNITZ, the defendant, shall
forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C)
and 28 U.S.C. § 2461, all property, real and personal, which
constitutes or is derived from proceeds traceable to the offense
alleged in Count One of the Information.

### Substitute Asset Provision

5.   If any of the above-described forfeitable
property, as a result of any act or omission of JONA RECHNITZ, the
defendant:

(1) cannot be located upon the exercise of due
diligence;

(2) has been transferred or sold to, or deposited
with, a third person;

3

EXHIBIT "10", PAGE 204

(3) has been placed beyond the jurisdiction of the

Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which

cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C.

§ 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), to

seek forfeiture of any other property of the defendant up to the

value of the above forfeitable property.

(Title 18, United States Code, Section 981,
Title 21, United States Code, Section 853, and
Title 28, United States Code, Section 2461.)

PREET BHARARA
United States Attorney

4

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JONA RECHNITZ,

Defendant.

SEALED INFORMATION

16 Cr.

(Title 18, United States Code, Section
1349.)

PREET BHARARA
United States Attorney.

# EXHIBIT C

# WELLS FARGO BANK

8820

WILSHIRE CRESCENT   9354 WILSHIRE BLVD   BEVERLY HILLS, CA 90212

11-4288/1210

DATE 1/16/20

PAY TO THE ORDER OF   Franco Noval

$ 1,300,000.00

one million Three hundred

DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS   CA 90212-2931

Leni Prado

LOAN REPAYMENT

⑆12104288 2⑈864⑇    ⑆8820

# WELLS FARGO BANK

8817

WILSHIRE CRESCENT   9354 WILSHIRE BLVD   BEVERLY HILLS, CA 90212

11-4288/1210

DATE 1/14/20

PAY TO THE ORDER OF   Franco Noval

$ 2,500,000.00

Two million   Five hundred Thousand

DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS   CA 90212-2931

Leni Prado

LOAN REPAYMENT

⑆12104288 2⑈864    ⑆8817

# EXHIBIT D

This document is to memorialize the current relationship between the parties. It is not intended to create a forbearance or an extension of credit of any kind.

On January 16, 2020, Jonah reached out to me to resolve this matter. On the advice of counsel, I disclosed to Jonah that I had filed a police report against Jonah on January 15th, 2020 for fraud and grand theft. I told Jonah that he needs to pay me independently and apart from any reports I filed and that at no time have I used the filing of the report to resolve this matter.   Besides disclosing to Jonah that I did file the report after he reached out to me to resolve this matter, I made no other characterizations or comments about the report but I was advised that Jonah should know that one was in fact filed.

Per my request I have asked Jonah to issue a new replacement check for $4.5m dated January 22, 2020. Jonah has represented he does not have the funds in his account at the time this replacement was issued. Noval is acknowledging this. Jonah intends on using his best efforts to have the funds by January 22, 2020. I agree not to deposit the new replacement check for 4.5MM until Thursday Jan 23, 2020.

I have agreed and have instructed my associates to refrain from discussing anything with the press or anyone unless the check gets returned or bounces for Stop Payment or NSF on the agreed upon deposit date. I will honor his request assuming he follows through with his above representations.

I agree to keep all matters confidential between the parties involved and will hold on any further reports until January 23, 2020 as long as the terms of this agreement are met.

Sincerely,                          1/15/2020      1/16/20

Victor Franco Noval

I, Jonah Rechnitz, have read the above facts and representations in this document. I agree they are accurate.

_____        ___1/16/20_____
Jonah Rechnitz                         Date

# EXHIBIT E

# WELLS FARGO BANK

8823

WILSHIRE CRESCENT   9354 WILSHIRE BLVD   BEVERLY HILLS, CA 90212

DATE  1-22-20

11-4288/1210

PAY TO THE ORDER OF  Franco Noval

$ 4,500,000.00

Four million Five hundred Thousand —————— DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS   CA 90212-2931

LOAN REPAYMENT

⑈121042882⑈8649⑈            ⑈8823

EXHIBIT "10", PAGE 212

# EXHIBIT F

**Ronald Richards**

| | |
|---|---|
| **From:** | Reuven Cohen <rcohen@ |
| **Sent:** | Tuesday, February 4, 2020 9:40 PM |
| **To:** | Reuven Cohen; Marc Williams |
| **Subject:** | Jona Rechnitz |

We write with an update on Jona Rechnitz. A family member of Mr. Rechnitz has informed our law firm that the family member is seeking to refinance certain real property in order to satisfy Mr. Rechnitz's outstanding liabilities. We currently have no visibility into the family member's interest in the property, the value of the property, or what, if any, equity, the family member has in it.

If you are represented by counsel, please let us know and provide your counsel's contact information.

Our client's desire is to resolve this matter amicably.

Sincerely,

Reuven L. Cohen
Cohen Williams LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Tel:  213-232-5163
Fax:  213-232-5167
rcohen@
www.cohen-williams.com

EXHIBIT "10", PAGE 214

# EXHIBIT "11"

**SMILEY WANG-EKVALL, LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:    714 445-1000
Facsimile:    714 445-1002

Attorneys for Jadelle Jewelry and Diamonds, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:20-bk-13530-BR |
| JADELLE JEWELRY AND DIAMONDS, LLC, | Chapter 7 |
| Putative Debtor. | **PUTATIVE DEBTOR'S EMERGENCY MOTION FOR (1) RECONSIDERATION OF THE COURT'S ORDER, OR (2) ALTERNATIVELY, A STAY OF THE BANKRUPTCY CASE; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| | **[Declaration of Robert S. Marticello, Declaration of Michael V Schafler, Request for Judicial Notice, and Index of Exhibits filed concurrently herewith]** |
| | **HEARING:**<br>**DATE:    To Be Determined**<br>**TIME:    To Be Determined**<br>**CTRM:    1668**<br>          **255 E. Temple Street**<br>          **Los Angeles, CA 90012** |

2828340.1

EMERGENCY MOTION

*(Left margin vertical text:)* SMILEY WANG-EKVALL, LLP — 3200 Park Center Drive, Suite 250 — Costa Mesa, California 92626 — Tel 714 445-1000 • Fax 714 445-1002

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................................1

II.   BACKGROUND ...................................................................................................................4

    A.    Hearing on the Motion to Dismiss and the Court's Order .........................................4

    B.    The Ineligible Creditors Immediately Begin to Take Advantage of the Order ..........6

    C.    The Criminal Investigation ........................................................................................7

III.  THE COURT CAN AND SHOULD RECONSIDER THE ORDER BECAUSE IT
    IS CONTRARY TO THE CODE AND TO NINTH CIRUIT PRECEDENT ...................9

    A.    Entry of an Order for Relief Would Be Contrary to the Code ................................10

    B.    The Court May Dismiss This Case Without a Creditor List ...................................12

IV.   IF THE COURT DOES NOT RECONSIDER ITS ORDER, THEN A STAY
    PURSUANT TO THE FIFTH AMENDMENT IS NECESSARY AND PROPER ...........14

    A.    Courts Have Discretion to Stay Cases as Justice Requires .....................................14

    B.    The Most Important Factor in Deciding Whether to Stay a Case is the
    Overlap Between the Proceedings ............................................................................16

    C.    Courts Can Stay Cases Against Companies on Fifth Amendment Grounds ............17

V.    THE STAY OF THIS CASE IS APPROPRIATE .............................................................17

    A.    The Issues in the Criminal Investigation Overlap with the Bankruptcy Case ..........17

    B.    Absent a Stay, the Rechnitz Parties and Jadelle Will Be Substantially
    Prejudiced and Burdened ........................................................................................19

    C.    The Ineligible Creditors Will Not Be Prejudiced by a Stay ...................................20

    D.    Judicial Economy Is Served by the Proposed Stay .................................................21

    E.    Persons Not Parties to this Action Will Not Be Adversely Impacted by the
    Proposed Stay ..........................................................................................................21

    F.    The Interest of the Public Favors a Stay .................................................................22

VI.   CONCLUSION ...................................................................................................................23

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2828340.1                                              i                                  TABLE OF CONTENTS

EXHIBIT "11", PAGE 216

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

Jadelle Jewelry and Diamonds, LLC, the putative debtor ("Jadelle"), files this motion (the "Motion") for either (1) reconsideration of the Court's order entered on June 10, 2020 [Docket No. 39] (the "Order"); or (2) alternatively, a stay of the bankruptcy case.  Victor Franco Noval ("Noval"), Peter Marco, LLC ("Marco"), and First International, Inc. ("First International"), shall be collectively referred to as the "Ineligible Creditors."  In support of this Motion, Jadelle submits the concurrently-filed Declaration of Robert S. Marticello, Declaration of Michael V Schafler, Request for Judicial Notice, and Index of Exhibits, and the following memorandum of points and authorities.

**MEMORANDUM AND POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Jadelle requests that the Court reconsider the Order, or, alternatively, stay this involuntary case pending the conclusion of the ongoing criminal investigation.  As discussed herein, the Order is contrary to the express provisions of the Code.  Moreover, the Ineligible Creditors have made clear their intent to misuse the Order and gain an unfair and unwarranted advantage in this and other pending litigation.  The Order, and the Ineligible Creditors' intent to exploit it, have placed Jona Rechnitz and Rachel Rechnitz (collectively, the "Rechnitz Parties") in precisely the type of Hobson's choice that a temporary stay is meant to remedy when there are parallel civil and criminal proceedings.  In fact, here, the consequences of invoking the Fifth Amendment are far more severe than would typically be the case because it will result in the ultimate relief requested by the Ineligible Creditors—an order for relief, which they otherwise lack the standing to obtain.

The Court may and should reconsider the Order.  The entry of an order for relief if the Rechnitz Parties do not file the joint declaration required by the Order would be contrary to the express language of the Code.  An order for relief is permitted "***only if***" certain circumstances are satisfied, none of which have been satisfied here.  *See* 11 U.S.C. § 303(b) & (h).  Jadelle timely contested the involuntary petition by its motion to dismiss, there are no eligible petitioning

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  creditors, and there has been no finding that Jadelle is not paying its undisputed debts as they

2  come due.  Put simply, there is no basis in the Code to enter an order for relief.

3         As it stands, the Order essentially imposes unauthorized terminating sanctions against

4  Jadelle for the Rechnitz Parties' permissible exercise of their Fifth Amendment rights.  Neither the

5  Rechnitz Parties nor Jadelle have done anything to warrant such (or any other) sanctions.  At most,

6  the Rechnitz Parties' assertion of their Fifth Amendment rights gives rise to an adverse inference at

7  trial, as opposed to the immediate entry of the ultimate judgment sought by the Ineligible

8  Creditors.  Thus, at a minimum, the Court should reconsider the aspect of the Order requiring the

9  filing of the joint declaration and for the entry of an order for relief if the Rechnitz Parties do not

10 file the joint declaration.

11        The Court can also reconsider the Order in its entirety by vacating it and dismissing this

12 case.  The case was commenced by three petitioning creditors, all of whom the Court has

13 concluded are not eligible (based on their own admissions).  A putative debtor must file a creditor

14 list and creditors must be afforded a reasonably opportunity to join an involuntary petition pending

15 trial only when required by Bankruptcy Rule 1003(b).  By its express terms, and as interpreted by

16 both the Ninth Circuit and the Ninth Circuit BAP, Bankruptcy Rule 1003(b) does not apply in this

17 case.  As a result, under the Ninth Circuit's decision in *In re Vortex Fishing*, the Court is not

18 required to "pause" to afford non-petitioners with an opportunity to join, but is to determine the

19 issues of this case "'at the earliest practicable time and forthwith' enter a dispositive order."

20 Because the Court has already determined that the Ineligible Creditors are all ineligible, that

21 dispositive order can and should be an order granting Jadelle's motion to dismiss and dismissing

22 the case.

23        Alternatively, if the Court declines to reconsider its Order, the Court should stay this

24 matter on the basis of the Rechnitz Parties' intent to validly assert their Fifth Amendment privilege

25 against self-incrimination.  The single most important factor in determining whether to stay a

26 proceeding based on a litigant's Fifth Amendment privilege is the extent to which that proceeding

27 and the related criminal investigation overlap.  There can be no question that, here, the criminal

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  investigation, the bankruptcy case, and the Ineligible Creditors' pending civil lawsuits all stem

2  from and relate to the operation of Jadelle and its jewelry business.  In fact, federal prosecutors

3  have unambiguously stated that they are aware of the civil lawsuits and this bankruptcy case and

4  that the allegations in those cases are within the scope of the criminal investigation.  Thus, the

5  single most important factor supports a stay.

6       A balancing of the harms also heavily weighs in favor of staying this case.  The Ineligible

7  Creditors have already asserted that, by complying with the Order, the Rechnitz Parties will have

8  waived their Fifth Amendment rights in this case and in their respective pending suits and the

9  Ineligible Creditors will seek to gain an advantage in all of the civil lawsuits on that basis.  Thus,

10 if the Rechnitz Parties comply with the Order, they risk waiving their constitutional rights in

11 multiple proceedings.  In contrast, the Rechnitz Parties' invocation of the Fifth Amendment will

12 irreparably harm Jadelle as it will be involuntarily placed into bankruptcy in favor of three

13 creditors whom this Court has already determined are clearly not eligible and not entitled to

14 commence this case.  The Ineligible Creditors will thus obtain *an order for relief in a case they*

15 *had no right or standing to commence in the first place*.  This is not a fair result, it invokes too

16 great a penalty for the exercise of Constitutional rights, and is the type of result that the Court can

17 address and prevent through a stay.

18      Dismissal of this case is the most equitable result.  The parallel proceedings are of the

19 Ineligible Creditors own creation.  The Ineligible Creditors prompted the criminal investigation

20 with their allegations and have been attempting to profit ever since.  Noval referred the Rechnitz

21 Parties and Jadelle to law enforcement for criminal prosecution.  Then, Noval and Marco

22 commenced suit.  When Noval's suit was temporarily stayed, the Ineligible Creditors brought the

23 same allegations and disputes to this Court.  Notwithstanding the fact that the Ineligible Creditors

24 had no standing or right to commence this case, they now stand to obtain discovery they cannot

25 currently obtain in their individual lawsuits or an order for relief contrary to the express provisions

26 of the Code.

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   Finally, there is cause for emergency relief.  The Order requires that the Rechnitz Parties

2   file a joint declaration by 3:00 p.m. on Tuesday, June 16, 2020.  As there has been only a week

3   between the hearing that resulted in the Order and that filing deadline, Jadelle could not have been

4   reasonably expected to file this Motion at an earlier time.  Due to the deadline in the Order, Jadelle

5   files this Motion on an emergency basis.  If the Court is inclined to proceed with the entry of an

6   order for relief if the joint declaration is not timely filed, then Jadelle requests an emergency

7   hearing before the deadline.  If, however, the Court is inclined to refrain from entering an order for

8   relief pending consideration or a hearing on this Motion, then Jadelle requests a hearing on the

9   Motion on a date and time convenient from the Court.

10   Accordingly, Jadelle respectfully requests that the Court reconsider the Order and either

11   (1) remove the requirement that a joint declaration be filed by the Rechnitz Parties and providing

12   for the entry of an order for relief if they do not, or (2) vacate the Order, grant Jadelle's motion to

13   dismiss this case, and dismiss this case.  Alternatively, Jadelle respectfully requests that the Court

14   stay this case on account of the Rechnitz Parties assertion of their Fifth Amendment privilege.

15

16   **II.    BACKGROUND**

17   **A.    Hearing on the Motion to Dismiss and the Court's Order**

18   On June 9, 2020, at 10:00 a.m., the Court heard two motions, Jadelle's motion to dismiss

19   this case for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6)

20   [Docket No. 8] (the "Motion to Dismiss") and the Ineligible Creditors' motion for the appointment

21   of an interim trustee [Docket No. 12] (the "Trustee Motion").  A status conference was also on

22   calendar that day.

23   With respect to the Motion to Dismiss, the Court determined that, as argued by Jadelle, the

24   Ineligible Creditors are ineligible to be petitioning creditors.  This Court found that their claims

25   are subject to bona fide disputes as to amount and/or liability based on the Ineligible Creditors'

26   judicial admissions and the facts subject to judicial notice.  (*See* Ex. 1[1] at Bates Stamps 53, line 19

27

28   _____

[1]   Unless otherwise provided, all references to exhibits herein are to the concurrently filed Index of Exhibits.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "11", PAGE 220

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   to 51, line 3, Bates Stamp 62, line 3 to Bates Stamp 63, line 8, Bates Stamp 65, line 14 to Bates

2   Stamp 66, line 2, and Bates Stamp 90, lines 17-22.)  The Court also denied the Trustee Motion

3   without prejudice.  (*See id.* at Bate Stamp 71, lines 2-4.)

4          Nevertheless, the Court ordered the Rechnitz Parties to sign and file, under penalty of

5   perjury, a joint declaration identifying each and every one of Jadelle's creditors as of the petition

6   date of April 6, 2020.  (*See* Ex. 2 at § 1.)  The Court required that such declaration be filed within

7   seven days of the hearing, by 3:00 p.m. on Tuesday, June 16, 2020.  (*See id.* at § 2.)  The Order

8   states that if the Rechnitz Parties fail to file the joint declaration by the deadline, the Court will

9   deny the Motion to Dismiss and "immediately enter an order for relief in this case." (*See id.* at §

10  3.)  The Court ordered the filing of the joint declaration in order to provide the Ineligible Creditors

11  with 60 days to contact other creditors in order to determine whether any such creditors are willing

12  to join the petition.  (*See id.* at § 4.a.)  Any joinders must be filed by 3:00 p.m. on August 14,

13  2020.  (*See id.*; *see also* Ex. 1 at Bate Stamp 93, line 25 to Bates Stamp 94, line 2.)

14         The Order also authorized the Ineligible Creditors to conduct certain limited discovery.

15  (*See* Ex. 2 at § 4.b.)  During the hearing, the Court emphasized that any discovery should be

16  limited and not complicated.  (*See* Ex. 1 at Bates Stamp 83, lines 7-10, the Court stating "I assume

17  you want to take the deposition as to just what we're talking about.  **I hope you don't do any**

18  **beyond that.  It will make it very unnecessarily complicated**." (emphasis added); *see also id.* at

19  Bates Stamp 85, lines 16-18, the Court stating "as far as I'm concerned, should be limited to just

20  what we're talking about, who the creditors of the debtor are.")

21         In response to concerns the Ineligible Creditors would seek discovery regarding their own

22  disputed claims, the Court made clear it wanted the discovery limited to only the existence of, and

23  any asserted disputes related to, the other creditors listed.  (*See id.* at Bates Stamp 85, line 19 to

24  Bates Stamp 86, line 20;[2] *see also id.* at Bates Stamp 87 lines 4-19.)  The Court stated that it did

25  not want the Ineligible Creditors seeking discovery as to their own claims.  (*See id.* at Bates Stamp

26

27  _____

28         [2]   The reference to "Mr. Marticello" stating "We will amend our discovery" is mistaken and should be "Mr.
    Richards."

1  91, line 22 to Bates Stamp 92, line 24.)  The Court stated it that it was not prejudging the requests

2  for discovery.  (*See id.* at Bates Stamp 85, lines 7-18.)

3      **B.      The Ineligible Creditors Immediately Begin to Take Advantage of the Order**

4      The Ineligible Creditors immediately began attempting to misuse and improperly exploit

5  the Order.  On June 11, 2020, the day after entry of the Order, Marco filed a declaration in his

6  pending lawsuit against the Rechnitz Parties.  The declaration was filed in support of Marco's

7  opposition to the Rechnitz Parties' motion for a stay of that case (which motion was already, and

8  still is, under submission with the District Court).  The declaration states, *inter alia*, as follows:

9          The point being, is that by filing their Joint Declarations sworn under
10         penalty of perjury regarding their defrauded creditors (like Marco),
           and their having to be deposed by Petitioning Creditors re same.
11         Rechnitz will *de facto*, have to *waive* their Fifth amendment rights
           against self-incrimination from criminal liability that they fear in this
12         Motion. If indeed, Rechnitz complies with Judge Russell's Order, this
           Motion for Stay would be moot.

13  (*See* Ex. 3 at Bates Stamp 104-105 (emphasis in original).)

14     The Ineligible Creditors also began seeking and demanding discovery that is overly broad

15  and overly complicated.  On June 11, 2020, the Ineligible Creditors, via counsel, contacted

16  Jadelle's counsel to arrange for certain discovery.  (*See* Ex. 4 at Bates Stamp 113.)  Specifically,

17  the Ineligible Creditors stated their intentions of serving deposition and document subpoenas on

18  Mr. Rechnitz and Mrs. Rechnitz.

19     Contrary to the Court's desire that any discovery be simple and limited, the Ineligible

20  Creditors indicated that they were demanding the Rechnitz Parties' cell phones in order "to upload

21  their text messages and emails" and they intended to seek electronically stored information

22  discovery regarding Mr. Rechnitz's email account.  (*See id.*)

23     The Ineligible Creditors served new document requests, but the new document requests

24  included with the subpoenas are still overly broad in at least four respects.[3]  First, the Ineligible

25  Creditors seek all documents and communications related to all "Creditor[s,]" which as defined in

26

27     [3]   Jadelle reserves any and all rights and objections related to the discovery proposed by the Ineligible
       Creditors.

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   the document request would include discovery related to the Ineligible Creditors, which the Court

2   specifically said was not allowed.  (*See* Ex. 4 at Bates Stamps 116-117 .)  Second, the Ineligible

3   Creditors seek documents regarding any payments to creditors after the petition date, even though

4   the Court made clear that the focus of the Ineligible Creditors' inquiry should be as of the petition

5   date.  (*See id.* at Bates Stamp 118; *see also* Ex. 1 at Bates Stamp 80, lines 8-10, stating that post-

6   petition payments are irrelevant because the "law is as of the date of the petition."; *id.* at Bates

7   Stamp 93, lines 6-17.)  Any post-petition payments or communications are irrelevant.[4]  Third, the

8   Ineligible Creditors did not include any time limitations in their discovery requests at all.  (*See id.*

9   at Bates Stamp 116-119.)  Fourth, as discussed above, the Ineligible Creditors' demands for cell

10  phones and electronically stored information is simply overly broad and burdensome in light of

11  the limited issues currently before the Court—the mere existence of other creditors who may or

12  may not want to join the petition.

13       This is a classic case where the Court gave the Ineligible Creditors an inch (that they were

14  not entitled to) and they are racing to take a mile.  It is clear that the Ineligible Creditors, whose

15  bad faith was extensively documented in the Motion to Dismiss, are seeking to use this case and,

16  now, discovery to obtain the type of improper leverage the Ninth Circuit in *Blixseth* was

17  concerned about.  *See Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1184 & 1187 (9th Cir. 2019)

18  (stating the "'bona fide dispute' limitation" is designed to prevent creditors using the involuntary

19  bankruptcy process to leverage the collection of disputed claims).  It was also not lost on Jadelle

20  that the Ineligible Creditors requested that counsel accept service of the subpoenas for the

21  Rechnitz Parties under the threat of sending process servers to their house starting 8:05 p.m. on

22  Friday, June 12.  (*See* Ex. 4. at Bates Stamp 113.)  That is the exact time for sundown and is the

23  beginning of Shabbat, which the Rechnitz Parties strictly observe and which is well known to the

24  Ineligible Creditors.

25       **C.**     **The Criminal Investigation**

26       Rechnitz Parties and Jadelle first became aware of the ongoing criminal investigation

27
---
28       [4]   The Court also made clear that there was nothing improper with Jadelle communicating with its creditors
     post-petition.  (*See* Ex 1 at Bates Stamp 93, lines 6-17.)

1    through a draft Los Angeles Superior Court complaint received from Noval.  (*See* Schafler Decl.

2    at ¶ 3a ; *see also id.*, Ex. B , Cohen Decl. at ¶ 9.)  Rechnitz Parties and Jadelle received the draft

3    Noval complaint on February 4, 2020.  (*See id.* at Ex. B, Cohen Decl. at ¶ 9.)  The draft complaint

4    contained allegations against the Rechnitz Parties and Jadelle, among others, regarding alleged

5    loans made to Jadelle.  (*Id.*)

6          Noval's draft complaint indicated that Noval had filed a police report with the Beverly

7    Hills Police Department ("BHPD") concerning the allegations in the draft complaint.  (*See*

8    Schafler Decl. at Ex. B, Cohen Decl., ¶ 9.)  This is also reflected in Noval's filed complaint.  (*See*

9    Ex. 5 at Bates Stamp 137, ¶ 37.)  On February 7, 2020, counsel for Rechnitz Parties and Jadelle

10   confirmed with a detective from the BHPD that allegations related to the jewelry business had

11   been referred to the Federal Bureau of Investigation ("FBI").  (*See* Schafler Decl. at Ex. B, Cohen

12   Decl. at ¶ 10.)  Thereafter, counsel for the Rechnitz Parties and Jadelle conferred with an Assistant

13   United States Attorney ("AUSA") from the Los Angeles office of the United States Attorney's

14   Office for the Central District of California ("USAO") regarding the status of any criminal

15   investigation.  (*Id.* at ¶ 11.)

16         Based on multiple discussions with the federal prosecutors investigating Jadelle's jewelry

17   business, the following is known:

18         1.    The USAO and FBI are investigating conduct related to the jewelry business

19               operated through Jadelle.

20         2.    The government's investigation includes the allegations that are the subject of and

21               included in the civil complaints filed by Marco and Noval.

22         3.    Mr. Rechnitz is presently a subject of the government's investigation.

23         4.    The government's ongoing investigation goes beyond Mr. Rechnitz's conduct and

24               includes other individuals.  The government does not wish to publicly disclose the

25               nature and scope of its investigation.

26         5.    Mr. Rechnitz may soon be subpoenaed to testify before the grand jury and the

27               government understands that Mr. Rechnitz may assert his Fifth Amendment

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "11", PAGE 224

1    privilege to decline to testify.

2    6.    The government is aware of the involuntary bankruptcy proceedings (in addition to

3    the other civil actions) and this Court's oral ruling on June 10, it understands that

4    Jadelle is seeking a stay based on Mr. Rechnitz's Fifth Amendment privilege, and it

5    does not oppose Mr. Rechnitz's assertion of his Fifth Amendment privilege in this

6    case or in the civil lawsuits.

7    7.    The government's investigation is ongoing.

8    (*See* Schafler Decl. at ¶ 4.)  If Ms. Rechnitz were to be called as a witness, she would for many of

9    the same reasons assert her Fifth Amendment privilege and marital privilege to

10    decline to answer.  (*See id.* at ¶ 5.)

11

12    **III.    THE COURT CAN AND SHOULD RECONSIDER THE ORDER BECAUSE IT IS**

13    **CONTRARY TO THE CODE AND TO NINTH CIRUIT PRECEDENT**

14    The Court has the discretion to reconsider the Order.  The standard governing

15    reconsideration depends on whether the Order is considered interlocutory or final.  The Court has

16    the inherent authority to reconsider and rescind an interlocutory order.  *See City of Los Angeles,*

17    *Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886–87 (9th Cir. 2001) ("[A] district

18    court's authority to rescind an interlocutory order over which it has jurisdiction is an inherent

19    power rooted firmly in the common law and is not abridged by the Federal Rules of Civil

20    Procedure.").  Moreover, the Court has the authority to reconsider an interlocutory order as justice

21    requires under Rule 54(b), which is incorporated into bankruptcy cases by Bankruptcy Rule

22    7054(a).  *See Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015) (stating that Rule 54(b) involves a

23    more flexible standard and reflects the "'inherent power of the rendering district court to afford

24    such relief from interlocutory judgments as justice requires.'").

25    If the Order is considered a final order, then Rule 59 permits the Court to amend the Order

26    or issue a new order *sua sponte* or on a motion by a party.  *See* Fed. R. Civ. P. 59(a)(2), (d), & (e).

27    The Ninth Circuit has articulated the following standard for reconsideration under Rule 59(e):

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

> A district court has considerable discretion when considering a
> motion to amend a judgment under Rule 59(e).  There are four
> grounds upon which a Rule 59(e) motion may be granted: 1) the
> motion is "necessary to correct manifest errors of law or fact upon
> which the judgment is based;" 2) the moving party presents "newly
> discovered or previously unavailable evidence;" 3) the motion is
> necessary to "prevent manifest injustice;" or 4) there is an
> "intervening change in controlling law.

*Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (alternation in

original and citations omitted).

Reconsideration of the Order is appropriate whether it is considered final or interlocutory.

If the Order is interlocutory, then the Court has the inherent power to reconsider it or as justice

requires under Rule 54(b).  If the Order is considered final, then reconsideration is appropriate

because entry of an order for relief in this case would constitute a manifest error of law.

Moreover, the requirement that the Rechnitz Parties file a joint declaration and the entry of an

order for relief if they do not do so was not briefed for the Court, but was raised by the Court *sua*

*sponte* during the hearing on the Motion to Dismiss.

Reconsideration is also appropriate due to the conduct of the Ineligible Creditors.  Despite

the Court's finding that all three Ineligible Creditors are ineligible based on their own admissions,

they are emboldened.  The Ineligible Creditors are seeking discovery more complicated and

broader than the limited discovery it appears the Court envisioned.  They are also using any

compliance with the Court's Order to gain an unfair advantage—the entry of an order for relief in

case they lacked standing to pursue or a waiver of the Rechnitz Parties' Fifth Amendment rights.

## A.    Entry of an Order for Relief Would Be Contrary to the Code

Under the Bankruptcy Code, an involuntary petition must be commenced by the requisite

number of eligible petitioning creditors and, if an involuntary petition is timely controverted, the

court shall, ***after trial***, enter an order for relief "***only if*** — (1) the debtor is generally not paying

such debtor's debts as such debts become due unless such debts are the subject of a bona fide

dispute as to liability or amount. . . ."  *See* 11 U.S.C. § 303(b) & (h) (emphasis added); *see also In*

*re Marciano*, 446 B.R. 407, 420 (Bankr. C.D. Cal. 2010), *aff'd*, 459 B.R. 27 (B.A.P. 9th Cir.

EXHIBIT "11", PAGE 226

1    2011), *aff'd*, 708 F.3d 1123 (9th Cir. 2013) (listing the five elements petitioning creditors must

2    establish).

3    The entry of an order for relief at this preliminary stage simply if the Rechnitz Parties

4    permissibly invoke the Fifth Amendment and decline at their counsel's advice to file the joint

5    declaration as required by the Order would be contrary to the Code.  The Code permits the entry of

6    an order for relief only in certain express circumstances, none of which will have been satisfied in

7    this case.

8    • *First*, Jadelle timely controverted the Involuntary Petition, and, therefore entry of

9    an order for relief due to an alleged debtor's default is not appropriate.  *See* 11

10    U.S.C. § 303(h).

11    • *Second*, the Court concluded that each of the Ineligible Creditors are ineligible

12    under the Ninth Circuit's decision in *Blixseth* and, as a result, the Ineligible

13    Creditors lack standing to commence this case as required by § 303(b) and no other

14    creditors have joined this case.  *See Dep't of Revenue v. Blixseth*, 942 F.3d 1179,

15    1185 (9th Cir. 2019) (stating that a bona fide dispute "strips the creditor of

16    standing. . . .").

17    • *Third*, there has been no finding, after trial, that Jadelle is generally not paying its

18    undisputed debts as they become due on the agreed to terms.  *See* 11 U.S.C. §

19    303(h).

20    Because Jadelle timely controverted the Involuntary Petition, the Court can enter an order

21    for relief if and "only if" there is the requisite number of eligible petitioning creditors and the

22    Court determines after a trial that Jadelle is generally not paying its undisputed debts as they

23    become due on the agreed to terms.  These requirements have not been satisfied.  The entry of an

24    order for relief would, in effect, be an unwarranted terminating sanction contrary to the express

25    language of the Code.  Jadelle should not be penalized or sanctioned as a result of non-debtor third

26    parties exercising their Constitutional rights.  The Ineligible Creditors are not entitled the windfall

27    or (victory by default) that they seek and that they have essentially tried to engineer since the

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2828340.1                    11                    EMERGENCY MOTION

1  outset of their disputes with Jadelle.  Thus, the Court should reconsider its Order and remove the

2  requirements that the Rechnitz Parties file a joint declaration and that an order for relief will be

3  entered if they do not file the joint declaration.

4         **B.    The Court May Dismiss This Case Without a Creditor List**

5         According to the Ninth Circuit, "'[t]he court shall determine the issues of a contested

6  [involuntary] petition at the earliest practicable time and forthwith' enter a dispositive order." *See*

7  *In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1061 (9th Cir. 2002) (quoting Bankruptcy Rule

8  1013(a)) (alterations in original).  The bankruptcy court is required to "pause before [a] hearing on

9  the merits of an involuntary petition *in only one circumstance*." *See id.* (emphasis added).  The

10  court must assure that creditors have a reasonable opportunity to join the petition when required

11  by Bankruptcy Rule 1003(b), *i.e.,* "when the alleged debtor's answer to the petition *filed by fewer*

12  *than three petitioners* asserts that the petition fails" because three petitioning creditors are

13  required.  *See id.* (emphasis added).  In *Vortex Fishing*, the Ninth Circuit concluded that

14  "[b]ecause more than three petitioners filed the initial involuntary petition, notification of other

15  creditors was not required under the joinder provisions of Bankruptcy Rule § 1003(b)." *See id.* at

16  1072.

17         The Ninth Circuit BAP's decision in *QDOS, Inc.*, fully supports granting Jadelle's

18  meritorious Motion to Dismiss and without requiring a creditor list and an opportunity to join the

19  petition.  *QDOS* is distinguishable for three important reasons.  First, the issue presented to the

20  bankruptcy court in that case was whether the case was commenced by too few creditors, *i.e.*, only

21  two eligible creditors when three were required.  *See In re QDOS, Inc.*, 607 B.R. 338, 341-42

22  (B.A.P. 9th Cir. 2019).  Second, the bankruptcy court determined that it could not grant the

23  putative debtor's Rule 12(b)(6) motion to dismiss and triable issues existed.  *See id.* at 341-42 &

24  346-47.  Third, according to the BAP, once the bankruptcy court determined that triable issues

25  existed (and implicitly denied the debtor's motion to dismiss), the debtor was required to answer

26  and, based on the debtor's position, provide a list of creditors as required by Rule 1003(b).  *See id.*

27  at 341 & 347.  However, the BAP recognized that the putative debtor is required to answer the

28

EXHIBIT "11", PAGE 228

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    petition *only if* a Rule 12(b)(6) motion to dismiss is denied.  *See id.* at 345.  Moreover, a debtor is

2    required to comply with Bankruptcy Rule 1003(b) and provide a list of creditors as required

3    pursuant to that rule "*if*" it "asserts that it has more than 12 creditors in its answer. . . ."  *See id.* at

4    345 (emphasis added).  The BAP reversed the bankruptcy court for procedural reasons because it

5    determined that Bankruptcy Rule 1003 applied in that case and the court dismissed the case due to

6    an insufficiency in the number of petitioning creditors without requiring the putative debtor to

7    comply with Bankruptcy Rule 1003.  *See id.* at 341.

8         Where, as here, the case is commenced by three petitioning creditors, Rule 1003(b) does

9    not apply and the court is not required to provide creditors with any opportunity to join.  In *In re*

10   *Taub*, the alleged debtor sought dismissal of an involuntary petition commenced by three

11   petitioning creditors on the basis that the creditors' claims were subject to bona fide dispute as to

12   liability and amount.  *See In re Taub*, 439 B.R. 261, 267 (Bankr. E.D.N.Y. 2010).  The petitioning

13   creditors argued that the court "should provide a window of time for non-petitioning creditors

14   holding unsecured claims to join the Petition."  *See id.* at 271.  The court rejected the creditors'

15   request.  *See id.* at 271-72.  The court held that Bankruptcy Rule 1003 does not apply "when the

16   alleged debtor seeks dismissal of the petition on the basis that the petitioning creditors are not

17   qualified under § 303(b) because their claims are subject to a bona fide dispute."  *See id.* at 271.

18   Relying on the Ninth Circuit's decision in *Vortex Fishing Systems*, the court concluded that

19   because the case was commenced by three petitioners and because the debtor sought dismissal

20   because all three were ineligible, "there is no requirement that non-petitioning creditors be

21   afforded 'a reasonable opportunity' to join the Petition."  *See id.*

22        The Court can and should dismiss this case at this time and without affording non-

23   petitioners an opportunity to join.  According to both the Ninth Circuit and the Ninth Circuit BAP,

24   a creditor list and opportunity to join is required *only where Bankruptcy Rule 1003(b) requires it*.

25   The procedural mistake by the court in *QDOS* was that the BAP concluded that Bankruptcy Rule

26   1003(b) applied in that case and the putative debtor was not required to answer and file a list as the

27   rule requires.  *See In re QDOS, Inc.*, 607 B.R. at 347.  Here, Bankruptcy Rule 1003(b) is

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "11", PAGE 229

inapplicable because the case was not commenced by "fewer than three petitioning creditors[.]"

Like *Taub*, this case was commenced by three creditors and Jadelle sought dismissal on the basis

that all three are ineligible. Moreover, the Court concluded that the claims of the Ineligible

Creditors are subject to bona fide disputes and that the Motion to Dismiss could be granted.

Because Bankruptcy Rule 1003(b) does not apply here, the Court is not required to pause, but

enter a dispositive order "at the earliest practicable time and forthwith[.]" *See In re Vortex Fishing*

*Systems, Inc.*, 277 F.3d at 1061.

This Court has already determined that the Ineligible Creditors are ineligible, and

therefore, under the Code and Ninth Circuit precedent, this Court should issue a dispositive order

granting the Motion to Dismiss and dismissing the case.

## IV.   IF THE COURT DOES NOT RECONSIDER ITS ORDER, THEN A STAY PURSUANT TO THE FIFTH AMENDMENT IS NECESSARY AND PROPER

### A.   Courts Have Discretion to Stay Cases as Justice Requires

It is widely recognized that courts have the authority to stay civil proceedings pending the

resolution of a parallel criminal proceeding. *See Keating v. Office of Thrift Supervision*, 45 F.3d

322, 324 (9th Cir. 1995); *Grubbs v. Irey*, 2008 WL 906246 (E.D. Cal. March 31, 2008). While the

Constitution does not require a stay, the decision whether to stay civil proceedings in the face of a

parallel criminal proceeding depends on "the particular circumstances and competing interests

involved in the case." *See Keating*, 45 F.3d at 324 (quoting *Federal Sav. & Loan Ins. Corp. v.*

*Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)).

The Fifth Amendment privilege against self-incrimination may be asserted "in any

proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." *Fuller v.*

*Superior Court of Los Angeles County*, 87 Cal. App. 4th 299, 305 (2001). In civil actions,

however, a witness invoking his constitutional privilege may be subjected to adverse

consequences arising from the refusal to testify. *See Baxter v. Palmigiano*, 425 U.S. 308, 318-19

(1976). Courts have recognized "the dilemma faced by a defendant who must choose between

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  defending the civil litigation by providing testimony that may be incriminating on the one hand,

2  and losing the case by asserting the constitutional right and remaining silent, on the other hand."

3  *See Fuller*, 87 Cal. App. 4th at 306 (citing *Avant! Corp. v. Superior Court of Santa Clara County*,

4  79 Cal. App. 4th 876, 882 (2000)); *see also People v. Coleman*, 13 Cal. 3d 867, 884-85 (1975)

5  (recognizing "the plight of a defendant in a criminal prosecution who must also defend against

6  civil proceedings involving the same facts.").

7        When faced with pending criminal proceedings, a district court has the discretion to stay

8  civil proceedings "'when the interests of justice seem [] to require such action.'"  *See Keating v.*

9  *Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (quoting *Securities & Exchange*

10  *Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)); *see also Volmar*

11  *Distributors, Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) ("It is well settled that

12  district courts have the inherent power, in the exercise of discretion, to issue a stay when the

13  interests of justice require such action.").  Whether a district court exercises its discretion depends

14  on the particular circumstances and competing interests involved in the case.  *See Federal Sav. &*

15  *Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989).  "Depending on the particular

16  facts of the case, the court may decide to stay civil proceedings, postpone civil discovery, or

17  impose protective orders." *Volmar Distributors, Inc*, 152 F.R.D. at 39.

18        Based on Fifth Amendment privilege concerns, courts have entered stay of civil

19  proceedings to protect the Fifth Amendment privileges of defendants currently under indictment or

20  facing the possibility of indictment.  *See Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D.

21  Mich. 2007) ("[S]imultaneous criminal and civil cases involving the same or closely related facts

22  may give rise to Fifth Amendment concerns sufficient to warrant a stay of the civil proceedings.");

23  *see also eBay, Inc. v. Digital Point Solutions*, 2010 WL 702463 at *3 (N.D. Cal. Feb. 25, 2010)

24  (following *Chao*).

25        "[T]he mere possibility of criminal prosecution is all that is necessary for the Fifth

26  Amendment privilege against self-incrimination to be invoked." *Consumer Fin. Prot. Bureau v.*

27  *Global Fin. Support, Inc.*, 2016 WL 2868698, at *3 (S.D. Cal. May 17, 2016).  Thus, even where a

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2828340.1                                    15                        EMERGENCY MOTION

1  party has not been charged, a stay may still be appropriate.  *See id.* (granting a 120-day stay and

2  setting status conference to determine necessity of a further stay in light of an ongoing

3  investigation by IRS and FBI); *see also Franco v. City of W. Covina*, 2019 WL 6794203, at *2

4  (C.D. Cal. 2019) (granting a stay of a deposition and discovery related to an officer's involvement

5  in a shooting where the authorities were reviewing the legality of the shooting, and noting "[while

6  defendant-officer's] Fifth Amendment rights are implicated to a lesser extent than they would be if

7  charges had been brought against him . . . this case is not one in which there is an 'absence of any

8  hint of criminal proceedings'"); *Clifford v. Trump*, 2018 WL 3435419, at *3, 6 (C.D. Cal. 2018),

9  *reconsideration denied*, 2018 WL 3436832 (C.D. Cal. 2018) (granting defendant's *ex parte*

10  application for a 90-day stay in light of an ongoing criminal investigation, scheduling a status

11  conference at expiration of those 90 days, and noting that "there [was] a large potential factual

12  overlap between the civil and criminal proceedings that would heavily implicate [defendant's]

13  Fifth Amendment rights"); *C.M. by & through McLain v. City of Los Angeles*, 2017 WL

14  10527380, at *2 (C.D. Cal. 2017) ("[T]he Court may still order a stay if there is substantial overlap

15  between the criminal investigation and the allegations in the lawsuit.").

16    **B.    The Most Important Factor in Deciding Whether to Stay a Case is the Overlap**

17       **Between the Proceedings**

18       The most important factor in determining whether to stay a proceeding pending a criminal

19  investigation is the extent to which the matters overlap.  *See Volmar Distributors, Inc. v. New York*

20  *Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (quoting *Parallel Civil and Criminal Proceedings*,

21  129 F.R.D. 201, 203 (S.D.N.Y. 1989) ("The most important factor at the threshold is the degree to

22  which the civil issues overlap with the criminal issues."); *see also Chao*, 498 F.Supp.2d at 1039

23  (stating that "the extent to which the issues in the criminal case overlap with those in the civil case,

24  is regarded as the most important factor." (internal quotation marks omitted)).

25       District courts also consider the following factors: (1) the interest of the plaintiffs in

26  proceeding expeditiously with this litigation or any particular aspect of it, and the potential

27  prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

1    may impose on defendants; (3) the convenience of the court in the management of its cases, and

2    the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation;

3    and (5) the interest of the public in the pending civil and criminal litigation.  *See Federal Sav. &*

4    *Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902-03 (9th Cir. 1989).  Courts are to balance these

5    factors on a case-by-case basis to "avoid prejudice."  *See Volmar Distributors, Inc. v. New York*

6    *Post Co.,* 152 F.R.D. 36, 39 (S.D.N.Y. 1993).

7    **C.    Courts Can Stay Cases Against Companies on Fifth Amendment Grounds**

8    Courts have stayed cases against a company based on the Fifth Amendment rights of an

9    individual where the individuals invocation of his or her Fifth Amendment rights would prevent

10    the company from adequately defending itself.  *See, e.g. Taylor, Bean & Whitaker Mortg. Corp. v.*

11    *Triduanum Fin., Inc.*, 2009 WL 2136986, at *3 (E.D. Cal. July 15, 2009) (holding that the

12    corporate defendant was "likely to be greatly prejudiced in it[s] ability to meaningful defend itself

13    in the civil matter.");  *In re Adelphia Commc'ns Corp.*, 302 B.R. 439, 452 (Bankr. S.D.N.Y. 2003)

14    (finding it "necessary and appropriate" to protect companies from the risk that the individuals

15    invocation of the Fifth Amendment would result in adverse consequences to the companies and

16    could also cause "a threat to a successful reorganization . . . .").  At least one court has also stayed

17    a civil action against a company in the interests of judicial economy and to avoid duplication of

18    effort.  *See Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886

19    F. Supp. 1134, 1139 (S.D.N.Y. 1995) (the defendants also raised the argument that the individuals'

20    invocation of the Fifth Amendment would prevent the company from adequately defending itself).

21

22    **V.    THE STAY OF THIS CASE IS APPROPRIATE**

23    **A.    The Issues in the Criminal Investigation Overlap with the Bankruptcy Case**

24    The criminal investigation and this case involve the same matter.  In fact, the criminal

25    investigation was initiated by a criminal referral by the Ineligible Creditors.  (Schafler Decl, Ex. B,

26    Cohen Decl. at ¶ 9.) There can be no dispute that the pending criminal investigation, the Ineligible

27    Creditors' civil lawsuits, and this bankruptcy case are all inextricably intertwined.  All three stem

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2828340.1                    17                    EMERGENCY MOTION

1  from and relate to Jadelle's business.  There is an ongoing federal criminal investigation

2  concerning the Rechnitz Parties related to the operation of Jadelle and its jewelry business.  (*See*

3  Schafler Decl. at ¶ 4.)  That same business is the focus of the Ineligible Creditors' claims and

4  allegations.  (*See* Ex. 5 at Bates Stamp 134, Ex. 6 at Bates Stamp 166, and Ex. 7 at Bates Stamp

5  254.)  Jadelle's jewelry business is the focus of this case.  In particular, the Order requires a joint

6  declaration under penalty of perjury identifying the persons with whom Jadelle conducted its

7  jewelry business.  Thus, the criminal investigation relates to very transactions underlying the

8  Ineligible Creditors' claims and with the alleged creditors that would be included in the joint

9  declaration ordered by the Court.  Moreover, the Order does not merely require a list, but that the

10  Rechnitz Defendants provide testimony under oath identifying and regarding Jadelle's alleged

11  creditors.  The Rechnitz Parties' Fifth Amendment rights are clearly implicated in this case.

12  The overlap between the criminal investigation and this case is further demonstrated by the

13  Ineligible Creditors' actions since the Order was entered.  Immediately following entry of the

14  Order, Marco filed a declaration with the District Court where his lawsuit is pending asserting that

15  if the Rechnitz Parties comply with the Order, they will have waived their Fifth Amendment rights

16  in that lawsuit.  (*See* Ex. 3 at Bates Stamps 104-105.)  Similarly, in seeking discovery, the

17  Ineligible Creditors have asserted that if the Rechnitz Parties comply with the Order, they will

18  have waived their Fifth Amendment rights "as to the entire subject matter which will be a large

19  swath of questions about the various creditors and Jona and Rachel's credibility is far game and at

20  issue." (*See* Ex. 4 at Bates Stamp 113.)  According to the Ineligible Creditors, if the Rechnitz

21  Parties comply with the Court's Order, they will have waived their Fifth Amendment rights in this

22  case and the pending civil lawsuits.  Moreover, if the Rechnitz Parties comply with the Order, then

23  the Ineligible Creditors will attempt to proceed with overly broad discovery regarding the same

24  transactions at issue in their underlying lawsuits and with the other alleged creditors arising from

25  Jadelle's jewelry business, all of which is the subject of the ongoing criminal investigation.  The

26  criminal investigation, the Ineligible Creditors' lawsuits, and the issues in this case all involve

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  Jadelle and its jewelry business.  Thus, the most important factor considered by courts supports

2  staying this case.

3  **B.**    **Absent a Stay, the Rechnitz Parties and Jadelle Will Be Substantially**

4  **Prejudiced and Burdened**

5  Jadelle and the Rechnitz Parties will be substantially and irreparably prejudiced absent a

6  stay.  The Rechnitz Parties face a Hobson's Choice.  The Rechnitz Parties face the impossible

7  choice of potentially waiving their Fifth Amendment rights in multiple matters by complying with

8  the Order, or, exercising those rights and prejudicing themselves *and Jadelle* as a result.  If the

9  Rechnitz Parties comply with the Order, the Ineligible Creditors are waiting to profit therefrom, by

10  asserting that the Rechnitz Parties have forever and broadly waived their Fifth Amendment rights

11  in this proceeding and their lawsuits.  In contrast, invoking the Fifth Amendment, invites prejudice

12  and negative inferences.  *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir.

13  2000) ("[I]n civil proceedings adverse inferences can be drawn from a party's invocation of this

14  Fifth Amendment right."); *see also Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin.,*

15  *Inc.*, 2009 WL 2136986, at *3 (E.D. Cal. July 15, 2009 ("if discovery moves forward, the

16  defendant will be faced with the difficult choice between asserting his right against self-

17  incrimination, thereby inviting prejudice in the civil case, or waiving those rights, thereby courting

18  liability in the civil case.").

19  The invocation of the Rechnitz Parties' Fifth Amendment rights also will impact Jadelle's

20  ability to defend itself.  This case is unique as the prejudicial impact arising from the Rechnitz

21  Parties exercising their Fifth Amendment rights will go far beyond an adverse inference in this

22  case or the civil lawsuits.  Rather, if the Rechnitz Parties invoke their Fifth Amendment rights,

23  then Jadelle will receive a terminating sanction in the form of the entry of an order for relief

24  (where the statutory requirements for such order have not been met).  Even if the Court does not

25  enter an order for relief, pending the criminal investigation, Jadelle is unable participate in

26  discovery and defend itself in response to the Ineligible Creditors' allegations.  Thus, absent a stay,

27  the Ineligible Creditors will receive an undue advantage—an order for relief in a case where (1)

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "11", PAGE 235

1  they themselves referred the Rechnitz Parties for criminal prosecution, (2) they did not have

2  standing to commence the petition in the first place and (3) they have not and cannot establish the

3  statutory requirements for such an order.

4    **C.    The Ineligible Creditors Will Not Be Prejudiced by a Stay**

5    The Ineligible Creditors will not be prejudiced by a stay.  First, the Ineligible Creditors are

6  ineligible and have no standing to commence or proceed with this case.  Thus, as it now stands,

7  there is no proper petitioning creditor with standing or any interest in proceeding with this case

8  (expeditiously or otherwise).  For this reason alone, the Ineligible Creditors are not prejudiced if

9  this case is temporarily stayed.

10    Second, the Ineligible Creditors seek to avoid the stay or potential stay of their own

11  individual lawsuits.  Noval's lawsuit has been stayed until November 2020.  (*See* Ex. 8 at Bates

12  Stamp 288; *see also* Ex. 9 at Bates Stamp 290.)  There is a motion to stay Marco's lawsuit that is

13  under submission.  (*See* Ex. 10 at Bates Stamp 297, Docket No. 56.)  To the extent those lawsuits

14  are stayed, the Ineligible Creditors should be bound by the courts' rulings.  They should not be

15  allowed to circumvent the stay in the pending civil lawsuits by commencing this case.  If it was

16  not already clear, the discovery contemplated by the Ineligible Creditors demonstrates that this is

17  exactly what they intend to do.

18    Third, the Ineligible Creditors created the parallel proceedings and seek to profit therefrom.

19  They referred the matter to law enforcement for a criminal referral.  (Schafler Decl. at ¶ 3(a).)

20  Having engineered the criminal investigation with their disputed allegations, they then began

21  trying to obtain relief while the Rechnitz Parties and Jadelle have been unable to adequately and

22  fully defend themselves.  The Ineligible Creditors improperly commenced this case only after

23  Noval's suit was temporarily stayed to pursue the same disputed allegations set forth in their

24  lawsuits.  The Ineligible Creditors have been seeking to create the dilemma the Rechnitz Parties

25  are now in order to get precisely the type of advantage provided by the Order.

26    Fourth, at most, any prejudice caused to the Ineligible Creditors is the delay of their

27  attempts to recover money judgments, which is not a basis to deny a request for a stay.  *See Larsen*

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2828340.1                    20                    EMERGENCY MOTION

1  *v. City of Los Angeles*, 2012 WL 12887557, at *9 (C.D. Cal. 2012) ("A delay in recovering

2  potential monetary damages is not sufficient prejudice to warrant denial of a stay.").

3  **D.    Judicial Economy Is Served by the Proposed Stay**

4  Granting a stay is in the interests of judicial economy.  A stay could prevent a number of

5  proceedings and disputes.  If the involuntary case were to proceed, as demonstrated by the

6  Ineligible Creditors' conduct, the discovery addressed to Jadelle and/or to the Rechnitz Parties

7  would relate to topics on which the Rechnitz Parties are entitled to invoke their Fifth Amendment

8  privileges, and a number of disputes related to discovery are likely to ensue.  Similarly, if the

9  Court enters an order for relief, then a trustee will be appointed and there will be a number of

10  potential disclosures either through discovery or Bankruptcy Rule 2004 or as required by the

11  Bankruptcy Code and Rules (*e.g.*, schedules, § 341(a) meeting, etc.) that will implicate the

12  Rechnitz Parties' Fifth Amendment rights.  The proposed stay could negate a series of discovery

13  disputes and motions regarding the boundaries of Rechnitz Parties' rights to invoke their Fifth

14  Amendment privilege in the context of a bankruptcy case.  A stay could also avoid an appeal of

15  the Order and the order for relief and a motion for a stay pending such appeal.  Because these

16  potential disputes could be avoided by a stay pending the criminal investigation, the interests of

17  judicial efficiency weigh in favor of a temporary stay.

18  **E.    Persons Not Parties to this Action Will Not Be Adversely Impacted by the**

19  **Proposed Stay**

20  Any non-parties will not be prejudiced by a stay.  The FBI and USAO have an interest in

21  an investigation unaffected by related proceedings.  The USAO has indicated that it does not

22  oppose a stay of matters related to the criminal investigation.  (*See* Schafler Decl. at ¶ 4(f).)  It

23  remains to be seen whether there are other creditors who wish to join the petition.  The Ineligible

24  Creditors cannot argue that other alleged creditors are not aware of this case.  This case has been

25  pending for over two months and the Ineligible Creditors argued to this Court that they know of

26  other creditors who want to join the petition, which must mean they have already been contacting

27  alleged creditors.  (*See* Ex. 11, excerpt of Opp'n. to Mot. to Dismiss, at Bates Stamp 304, note 3.)

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 ♦ Fax 714 445-1002

2828340.1

21

EMERGENCY MOTION

1   Yet, despite the Ineligible Creditors assertions and efforts, no other creditors have attempted to

2   join the petition. Moreover, even if there are other creditors who may wish to join the petition, a

3   temporary stay will not prejudice them. Again, this case should not have been commenced in the

4   first instance as the Ineligible Creditors lacked standing from the beginning.

5          **F.**     <u>**The Interest of the Public Favors a Stay**</u>

6       The interest of the public would undoubtedly weigh in favor of a stay. The public interest

7   is better served by the completion of the criminal investigation unfettered by the bankruptcy case

8   because courts agree that the resolution of criminal proceedings "is of primary importance to the

9   public." *See S.E.C. v. Nicholas III*, 569 F. Supp. 2d 1065, 1072 (C.D. Cal. 2008) (stating that the

10   related civil proceeding was not "of an equally pressing nature."); *see also Jones v. Conte*, 2005

11   WL 1287017, at *2 (N.D. Cal. Apr. 19, 2005) ("[T]he public interest is furthered by a stay because

12   'the public's interest in the integrity of the criminal case is entitled to precedence over the civil

13   litigant.'"). Therefore, this factor also weighs in favor of the proposed stay.

14       In sum, there is clear overlap between this case and the criminal investigation as both relate

15   to Jadelle's jewelry business. Moreover, a weighing of the other factors considered by courts

16   support the temporary stay of this case. Absent a stay, Jadelle will be irreparably prejudiced and

17   harmed by the entry of an order for relief contrary to the Code. The Ineligible Creditors will not

18   be harmed by a stay and any alleged prejudice cannot outweigh the substantial harm to Jadelle.

19   Accordingly, the Court should stay this case pending the criminal investigation.

20   ///

21   ///

22   ///

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## VI.    CONCLUSION

Based on the foregoing, Jadelle respectfully requests that the Court reconsider the Order and either (1) remove the requirement that a joint declaration be filed by the Rechnitz Parties and providing for the entry of an order for relief if they do not, or (2) vacate the Order, grant the Motion to Dismiss, and dismiss this case.  Alternatively, it should stay this case.

Respectfully submitted,

DATED:  June 15, 2020                    SMILEY WANG-EKVALL, LLP

By:      */s/ Robert S. Marticello*
        ROBERT S. MARTICELLO
        MICHAEL L. SIMON
        Attorneys for Jadelle Jewelry and Diamonds, LLC.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "11", PAGE 239

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*): **Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case; and Memorandum of Points and Authorities in Support** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **06/15/2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Baruch C Cohen    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Robert S Marticello    Rmarticello@swelawfirm.com,
  gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- Neal Salisian    ECF@salisianlee.com
- Michael Simon    msimon@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
    ☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

    ☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **06/15/2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.
<u>Via First Legal:</u>
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

    ☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 06/15/2020 | Lynnette Garrett | */s/ Lynnette Garrett* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

# EXHIBIT "12"

# Sam S. Leslie, CPA
## Chapter 7 Trustee

June 18, 2020

Via: Via Federal Express and
      Email: rmarticello@swelawfirm.com

Robert S. Marticello, Esq.
**Smiley Wang-Ekvall, LLP**
3200 Park Center Drive Ste. 320
Costa Mesa, CA 92626

Re:  Jadelle Jewelry and Diamonds, LLC
     <u>Chapter 7 Bankruptcy Case No. 2:20-bk-13530-BR</u>

Dear Mr. Marticello,

As you know, the above-referenced Debtor was the subject of an Involuntary Chapter 7 bankruptcy case filed on April 6, 2020, and on June 18, 2020 I was appointed as the Chapter 7 Trustee. A copy of the Court's Notice of Chapter 7 Bankruptcy Case reflecting my appointment is included herewith for your reference.

Please be advised that any and all documents of the Debtor, including text messages, emails and correspondence, relating to transactions and the business affairs in which the Debtor and its principals and officers working for and on behalf of the Debtor were involved must be preserved and turned over to me.   Since this case is in a Chapter 7, of course, the Debtor may not transact any business or dispose of any assets. I will require an inspection of the property located at 9533 Sawyer Street and its contents as I understand that property is being used as the home office for the Debtor.

In order to properly administer the above-referenced case, I request production of the following documents:

1. Documents relating to the Debtor, including:
   a. Any and all records relating to consignments (including without limitation, memos of transfer or other records) to Debtor of diamonds and/or jewelry since the Debtor's inception;
   b. Any and all records relating to consignments (including without limitation, memos of transfer or other records) by Debtor to any third party of diamonds and/or jewelry since inception;

# Sam S. Leslie, CPA
## Chapter 7 Trustee

    c. Any and all records relating to sales (including without limitation, invoices or memos of transfer or other records) by Debtor of diamonds and/or jewelry to third parties and/or insiders since inception;

    d. Any and all records relating to pledges or hypothecations by Debtor of diamonds and/or jewelry to third parties and/or insiders since inception;

    e. Any and all records relating to transactions conducted through or with Malca-Amit including, but not limited to, communications with Malca-Amit;

    f. A list of all bank, brokerage, PayPal or similar cash accounts, including names and addresses and the account numbers used and/or controlled by the Debtor or on the Debtor's behalf for the conduct of its business since inception, including without limitation, any new account opened since May 28, 2020;

    g. A copy of all retainer agreements with attorneys entered into by Debtor and its principals, with evidence of what amount of retainer was paid and by whom;

    h. An inventory of all the Debtor's merchandise, diamonds and jewelry on hand and its location and approximate value;

    i. All original GIA certificates on hand;

    j. All records relating to any and all payments made by the Debtor to or on behalf of the Debtor's principals or to related parties in the year before April 6, 2020, and subsequently, whether for living expenses or compensation or any other purpose;

    k. All records relating to any and all payments made by the Debtor to or on behalf of a creditor of Debtor in the 90 days prior to April 6, 2020, and subsequently;

    l. The names and addresses and amounts owed to all persons owed money by the Debtor;

    m. A Balance Sheet for the years 2017, 2018, 2019 and year to date for 2020;

    n. Profit and loss statements for the Debtor for the year ended 2017, 2018, and 2019, and year to date for 2020;

    o. Tax returns for the company for the years: 2019, 2018, and 2017;

    p. Payroll tax returns for the last 3 years;

    q. Bank statements for the 60 months prior to the filing of the bankruptcy case as well as cancelled checks relating to any bank account into which or from which proceeds of the Debtor's operations were deposited or withdrawn, and any statements issued on accounts after the filing of the bankruptcy case;

3435 Wilshire Blvd.  Suite 990, Los Angeles, CA 90010  Phone: 213.368.5000
e-mail: sleslie@Trusteeleslie.com

# Sam S. Leslie, CPA
## Chapter 7 Trustee

    r.   Current list of accounts receivable for the company (aging report);

    s.   Current list of accounts payable for the company (aging report);

    t.   If the company uses accounting software (QuickBooks, Quicken, etc.), provide the accounting in a thumb-drive format, and with any passwords and usernames if necessary; if online accounting software was used, provide login information.

    u.  Where are the vendor files maintained? (As noted above, until we take physical possession, please advise the debtor not to destroy these files)

    v.  Where is the company computer server? (As noted above, until we take physical possession, please advise the debtor not to destroy it or otherwise compromise the data on the server);

    w.  A listing of all the Debtor's personal property, including any autos or other vehicles;

    x..  A listing of all property paid for by the Debtor on behalf of the principals, related parties, and other parties since inception;

    y.  A listing of all persons, whether employees or external, who performed accounting or other financial bookkeeping of the Debtor;

    z.  A listing of insurance companies and copies of all policies for the Debtor since inception, including but not limited to life insurance, errors and omissions, property, or vehicle; and

2.  Does or has the Debtor owned any real estate property? If yes, have the Debtor provide for each property the following:

    a.  Most recent mortgage statement;

    b.  Deed showing debtor on the title;

    c.  Deed of trust;

    d.  Evidence of insurance; or

    e.  Closing statement, if sold

Please provide the above requested documentation and/or clarifications within 7 (seven) days. If any such documents do not exist, please so state. If any documents cannot be provided in that time frame, please provide an explanation of when they will be available.

3435 Wilshire Blvd.  Suite 990, Los Angeles, CA 90010  Phone: 213.368.5000
e-mail:  sleslie@Trusteeleslie.com

EXHIBIT "12", PAGE 243

# Sam S. Leslie, CPA
## Chapter 7 Trustee

As to the any and all inventory, this must be turned over immediately. Please contact me to arrange for this.

Any unearned retainer you are presently holding should be turned over to me as Trustee. The check should be made payable to Sam S. Leslie, ATF, Jadelle Jewelry and Diamonds, LLC

I thank you in advance for your attention to this highly important matter.

Should you have any questions, please contact my office at (213) 368-5000.

Very truly yours,

Sam S. Leslie, CPA
**CHAPTER 7 TRUSTEE**

Enclosure

cc:
Carolyn A. Dye, Esq
Daniel A. Lev. Esq.

**Information to identify the case:**

| | | | |
|---|---|---|---|
| Debtor | **Jadelle Jewelry And Diamonds LLC a Delaware limited liability company** <br> _____ <br> Name | EIN | **00–0000000** |

| | | | |
|---|---|---|---|
| United States Bankruptcy Court | **Central District of California** | Date case filed for chapter **7   4/6/20** | |
| Case number: | **2:20-bk-13530-BR** | | |

## Official Form 309C (For Corporations or Partnerships)

## Notice of Chapter 7 Bankruptcy Case –– No Proof of Claim Deadline                        12/15

For the debtor listed above, a case has been filed under chapter 7 of the Bankruptcy Code. An order for relief has been entered.

**This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines. Read both pages carefully.**

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtor or the debtor's property. For example, while the stay is in effect, creditors cannot sue, assert a deficiency, repossess property, or otherwise try to collect from the debtor. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at www.pacer.gov).

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**Do not file this notice with any proof of claim or other filing in the case.**

| | | |
|---|---|---|
| 1. **Debtor's full name** | Jadelle Jewelry And Diamonds LLC a Delaware limited liability company | |
| 2. **All other names used in the last 8 years** | dba Jadelle Inc | |
| 3. **Address** | 9454 Wilshire Blvd <br> Penthouse 01 <br> Beverly Hills, CA 90212 | |
| 4. **Debtor's attorney** <br> Name and address | Robert S Marticello <br> Smiley Wang–Ekvall, LLP <br> 3200 Park Center Drive, Suite 250 <br> Costa Mesa, CA 92626 | Contact phone 714-445-1000 <br> Email _____ |
| 5. **Bankruptcy trustee** <br> Name and address | Sam S Leslie (TR) <br> 3435 Wilshire Blvd., Suite 990 <br> Los Angeles, CA 90010 | Contact phone 213-368-5000 <br> Email _____ |
| 6. **Bankruptcy clerk's office** <br> Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at www.pacer.gov. | 255 East Temple Street, <br> Los Angeles, CA 90012 | Hours open: <br> 9:00AM to 4:00 PM <br><br> Contact phone 855-460-9641 <br><br> Dated: 6/18/20 |
| 7. **Meeting of creditors** <br> The debtor's representative must attend the meeting to be questioned under oath by the trustee and by creditors. Creditors may attend, but are not required to do so. | July 29, 2020 at 10:00 AM <br><br> The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket. <br><br> The trustee is designated to preside at the meeting of creditors. The case is covered by the chapter 7 blanket bond on file with the court. | Location: <br><br> **TELEPHONIC MEETING, FOR INSTRUCTIONS, CONTACT THE TRUSTEE** |
| 8. **Proof of claim** <br> Please do not file a proof of claim unless you receive a notice to do so. | No property appears to be available to pay creditors. Therefore, please do not file a proof of claim now. <br><br> If it later appears that assets are available to pay creditors, the clerk will send you another notice telling you that you may file a proof of claim and stating the deadline. | |

57/SF

**For more information, see page 2 >**

Official Form 309C (For Corporations or Partnerships) **Notice of Chapter 7 Bankruptcy Case –– No Proof of Claim Deadline**                        page 1

EXHIBIT "12", PAGE 245

PETER C. ANDERSON
UNITED STATES TRUSTEE
OFFICE OF THE UNITED STATES TRUSTEE
915 Wilshire Blvd., Suite 1850
Los Angeles, California 90017-3560
(213) 894-6811

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | ) Chapter 7 (Involuntary) |
| | ) |
| JADELLE JEWELRY AND DIAMONDS, LLC. | ) Case No.: 2:20-bk-13530-BR |
| | ) |
| Alleged Debtor. | ) NOTICE OF APPOINTMENT OF |
| | ) TRUSTEE AND FIXING OF BOND: |
| | ) ACCEPTANCE OF APPOINTMENT AS |
| | ) INTERIM TRUSTEE |

Pursuant to 11 U.S.C. 701 and 11 U.S.C. 322

## SAM LESLIE, of  LOS ANGELES, CA

     is appointed Interim Trustee of the case of said debtor(s) and is hereby designated to preside at the meeting of creditors.  This case is covered by the chapter 7 blanket bond on file with the Court on behalf of the Trustees listed on Schedule A of the bond and any amendments or modifications thereto.

DATED: June 17, 2020

**PETER C. ANDERSON**

UNITED STATES TRUSTEE

I, the undersigned, affirm that to the best of my knowledge and belief, I am disinterested within the meaning of 11 U.S.C. 101(14), and on this basis, I hereby accept my appointment as Interim Trustee in the above case.  I will immediately notify the United States Trustee if I become aware of any facts to the contrary.

DATED: June 18, 2020

Sam Leslie
Interim Trustee

1

# EXHIBIT "13"

Incomplete

# U.S. Bankruptcy Court
## Central District of California (Los Angeles)
### Bankruptcy Petition #: 2:20-bk-13530-BR

*Date filed:* 04/06/2020
*341 meeting:* 07/29/2020
*Deadline for filing claims (govt.):* 12/14/2020
*Deadline for objecting to discharge:* 09/28/2020

*Assigned to:* Barry Russell
Chapter 7
Involuntary

| | |
|---|---|
| ***Debtor*** | represented by **Robert S Marticello** |
| **Jadelle Jewelry And Diamonds LLC a** | Smiley Wang-Ekvall, LLP |
| **Delaware limited liability company** | 3200 Park Center Drive, Suite 250 |
| 9454 Wilshire Blvd | Costa Mesa, CA 92626 |
| Penthouse 01 | 714-445-1000 |
| Beverly Hills, CA 90212 | Email: Rmarticello@swelawfirm.com |
| LOS ANGELES-CA | |
| Tax ID / EIN: 00-0000000 | **Michael Simon** |
| ***dba*** **Jadelle Inc** | 3200 Park Center Dr Ste 250 |
| | Costa Mesa, CA 92626 |
| | 714-445-1000 |
| | Fax : 714-445-1005 |
| | Email: msimon@swelawfirm.com |

| | |
|---|---|
| ***Petitioning Creditor*** | represented by **Baruch C Cohen** |
| **First International Diamond Inc** | Law Office of Baruch C. Cohen |
| PO Box 3765 | APLC |
| Beverly Hills, CA 90212 | 4929 Wilshire Blvd Ste 940 |
| | Los Angeles, CA 90010 |
| | 323-937-4501 |
| | Email: bcc@BaruchCohenEsq.com |
| | |
| | **Daniel A Lev** |
| | 333 South Grand Avenue |
| | Suite 3400 |
| | Los Angeles, CA 90071 |
| | 213-626-2311 |
| | Fax : 213-629-4520 |
| | Email: dlev@sulmeyerlaw.com |

| | |
|---|---|
| ***Petitioning Creditor*** | represented by **Baruch C Cohen** |
| **Peter Marco LLC** | (See above for address) |
| 252 N Rodeo Dr | |
| Beverly Hills, CA 90210 | **Daniel A Lev** |
| | (See above for address) |

*Petitioning Creditor*
**Victor Franco Noval**
1141 Summit Drive
Beverly Hills, CA 90210

represented by **Daniel A Lev**
(See above for address)

**Ronald N Richards**
Law Offices of Ronald Richards &
Assoc
PO Box 11480
Beverly Hills, CA 90213
310-556-1001
Fax : 310-277-3325
Email: ron@ronaldrichards.com

*Trustee*
**Sam S Leslie (TR)**
3435 Wilshire Blvd., Suite 990
Los Angeles, CA 90010
213-368-5000

*U.S. Trustee*
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

| Filing Date | # | Docket Text |
|---|---|---|
| 06/18/2020 | 59<br>(4 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)54 Order (Generic) (BNC-PDF)) No. of Notices: 1. Notice Date 06/18/2020. (Admin.) (Entered: 06/18/2020) |
| 06/18/2020 | 58<br>(6 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)53 Order (Generic) (BNC-PDF)) No. of Notices: 1. Notice Date 06/18/2020. (Admin.) (Entered: 06/18/2020) |
| 06/18/2020 | 57<br>(2 pgs) | Meeting of Creditors 341(a) meeting to be held on 7/29/2020 at 10:00 AM at TR 7, TELEPHONIC MEETING. FOR INSTRUCTIONS CONTACT THE TRUSTEE. Last day to oppose discharge or dischargeability is 9/28/2020. (Fortier, Stacey) (Entered: 06/18/2020) |
| 06/18/2020 | 56<br>(1 pg) | Notice of appointment and acceptance of trustee Filed by Trustee Sam S Leslie (TR). (Leslie (TR), Sam) (Entered: 06/18/2020) |

EXHIBIT "13", PAGE 248

| | | |
|---|---|---|
| 06/16/2020 | <u>55</u><br>(1 pg) | Order for Relief Chapter 7 (BK Case - Involuntary Case) (BNC) Signed on 6/16/2020. Incomplete Filings due by 6/30/2020. Government Proof of Claim due by 12/14/2020. (Fortier, Stacey) (Entered: 06/16/2020) |
| 06/16/2020 | <u>54</u><br>(3 pgs) | Order directing clerk of court to immediately entered an order for relief under chapter 7, and requiring the debtor to file all schedules and related documentation for a chapter 7 case within fourteen days of the entry of this order (see order for relief) Re: (BNC-PDF) (Related Doc # <u>39</u>) Signed on 6/16/2020 (Fortier, Stacey) (Entered: 06/16/2020) |
| 06/16/2020 | <u>53</u><br>(5 pgs) | Order Denying "Putative Debtor's Emergency Motion For (1) Reconsideration Of the Court's Order, Or (2) Alternatively, A Stay of the Banruptcy Case" (see order for details) Re: (BNC-PDF) (Related Doc # <u>44</u> ) Signed on 6/16/2020 (Fortier, Stacey) (Entered: 06/16/2020) |
| 06/16/2020 | <u>52</u><br>(6 pgs; 2 docs) | Declaration re: *DECLARATION OF DANIEL A. LEV IN SUPPORT OF ORDER (1) DENYING PUTATIVE DEBTORS MOTION TO DISMISS INVOLUNTARY PETITION AND REQUEST FOR ATTORNEYS FEES, COSTS, AND DAMAGES AND (2) ENTERING ORDER FOR RELIEF AGAINST PUTATIVE DEBTOR* Filed by Petitioning Creditor Victor Franco Noval (RE: related document(s)39 Order on Generic Motion (BNC-PDF)). (Attachments: # <u>1</u> proof of service) (Richards, Ronald) (Entered: 06/16/2020) |
| 06/16/2020 | <u>51</u><br>(6 pgs; 2 docs) | Notice of lodgment *For immediate signature per court order (Doc#39)* Filed by Petitioning Creditor Victor Franco Noval (RE: related document(s)<u>8</u> Motion *Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages; and Memorandum of Points and Authorities in Support* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company). (Attachments: # <u>1</u> Proposed Order) (Richards, Ronald) (Entered: 06/16/2020) |
| 06/15/2020 | <u>50</u><br>(9 pgs) | Opposition to (related document(s): <u>44</u> Emergency motion *Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case; and Memorandum of Points and Authorities in Support* filed by Debtor Jadelle Jewelry And Diamonds LLC a |

EXHIBIT "13", PAGE 249

| | | |
|---|---|---|
| | | Delaware limited liability company) *(preliminary)* Filed by Petitioning Creditor Victor Franco Noval (Richards, Ronald) (Entered: 06/15/2020) |
| 06/15/2020 | [49](#) (4 pgs) | Request for judicial notice *Putative Debtor's Request for Judicial Notice in Support of Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)[44](#) Emergency motion *Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case; and Memorandum of Points and Authorities in Support*). (Marticello, Robert) (Entered: 06/15/2020) |
| 06/15/2020 | [48](#) (316 pgs) | Exhibit *Putative Debtor's Index of Exhibits in Support of Putative Debtor's Emergency Motion for Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)[44](#) Emergency motion *Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case; and Memorandum of Points and Authorities in Support*). (Marticello, Robert) (Entered: 06/15/2020) |
| 06/15/2020 | [47](#) (19 pgs) | Errata *Notice of Errata re: Declaration of Michael V Schafler in Support of the Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)[46](#) Declaration). (Marticello, Robert) (Entered: 06/15/2020) |
| 06/15/2020 | [46](#) (5 pgs) | Declaration re: *Declaration of Michael V Schafler in Support of the Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)[44](#) Emergency motion *Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the* |

EXHIBIT "13", PAGE 250

| | | |
|---|---|---|
| | | *Bankruptcy Case; and Memorandum of Points and Authorities in Support*). (Marticello, Robert) (Entered: 06/15/2020) |
| 06/15/2020 | 45 (3 pgs) | Declaration re: *Declaration of Robert S. Marticello in Support of Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)44 Emergency motion *Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case; and Memorandum of Points and Authorities in Support*). (Marticello, Robert) (Entered: 06/15/2020) |
| 06/15/2020 | 44 (26 pgs) | Emergency motion *Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case; and Memorandum of Points and Authorities in Support* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (Marticello, Robert) (Entered: 06/15/2020) |
| 06/12/2020 | 43 (5 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)39 Order on Generic Motion (BNC-PDF)) No. of Notices: 1. Notice Date 06/12/2020. (Admin.) (Entered: 06/12/2020) |
| 06/12/2020 | 42 | Transcript regarding Hearing Held 06/09/20 RE: In Re: Jadelle Jewelry and Diamonds, LLC. Remote electronic access to the transcript is restricted until 09/10/2020. The transcript may be viewed at the Bankruptcy Court Clerk's Office on a public terminal **or** purchased through the Transcription Service Provider before the transcript access restriction has ended. [TRANSCRIPTION SERVICE PROVIDER: Ben Hyatt Corporation, Telephone number 8882720022.]. Notice of Intent to Request Redaction Deadline Due By 6/19/2020. Redaction Request Due By 07/6/2020. Redacted Transcript Submission Due By 07/13/2020. Transcript access will be restricted through 09/10/2020. (Hyatt, Mitchell) (Entered: 06/12/2020) |
| 06/10/2020 | 41 (1 pg) | Transcript Order Form, regarding Hearing Date 06/09/20 Filed by Interested Party Israel Sam |

EXHIBIT "13", PAGE 251

| | | |
|---|---|---|
| | | Gorodistian. (Salisian, Neal) Duplicate order- Please see order #20BR22. Party will contact transcription co. Modified on 6/11/2020 (Toliver, Wanda). (Entered: 06/10/2020) |
| 06/10/2020 | 40 | Transcript Record Transmittal (Court transcript records have been uploaded to FDS). For Order Number: 20-BR-22. RE Hearing Date: 6/9/20, [TRANSCRIPTION SERVICE PROVIDER: Ben Hyatt, Telephone number 888/272-0022.] (RE: related document(s)38 Transcript Order Form (Public Request) filed by Petitioning Creditor Peter Marco LLC) (Toliver, Wanda) (Entered: 06/10/2020) |
| 06/10/2020 | 39 (4 pgs) | Order: 1) directing Rachel Rechnitz and Jona Rechnitz to file joint declaration under penalty of perjury; 2) setting date by which petitioning creditors may contact creditors identified in joint declaration and conduct certain discovery; 3) setting date for hearing on status conference; and 4) setting date for filing of joint status report prior to status conference (see order for details) (BNC-PDF) (Related Doc # 8 and 12 Signed on 6/10/2020 (Fortier, Stacey) (Entered: 06/10/2020) |
| 06/09/2020 | 38 (1 pg) | Transcript Order Form, regarding Hearing Date 06/09/20 Filed by Petitioning Creditor Peter Marco LLC. (Cohen, Baruch) (Entered: 06/09/2020) |
| 06/02/2020 | 37 (118 pgs) | Request for judicial notice *Putative Debtor's Request for Judicial Notice in Support of Reply to Petitioning Creditors' Opposition to Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)36 Reply). (Marticello, Robert) (Entered: 06/02/2020) |
| 06/02/2020 | 36 (32 pgs) | Reply to (related document(s): 19 Opposition filed by Petitioning Creditor Victor Franco Noval, Petitioning Creditor First International Diamond Inc, Petitioning Creditor Peter Marco LLC) *Putative Debtor's Reply to Petitioning Creditors' Opposition to Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (Marticello, Robert) (Entered: 06/02/2020) |

EXHIBIT "13", PAGE 252

| 06/02/2020 | [35](#) (10 pgs) | Objection (related document(s): [23](#) Declaration filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company) *Evidentiary Objections to Declaration of Levin Prado in Support of Petitioning Creditors' Reply to Putative Debtor's Opposition to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (Lev, Daniel) (Entered: 06/02/2020) |
| 06/02/2020 | [34](#) (6 pgs) | Objection (related document(s): [22](#) Declaration filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company) *Evidentiary Objections to Declaration of Marc S. Williams in Support of Petitioning Creditors' Reply to Putative Debtor's Opposition to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (Lev, Daniel) (Entered: 06/02/2020) |
| 06/02/2020 | [33](#) (6 pgs) | Reply to (related document(s): [29](#) Objection filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company) *Petitioning Creditors' Reply to Putative Debtor's Evidentiary Objections to Request for Judicial Notice in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (Lev, Daniel) (Entered: 06/02/2020) |
| 06/02/2020 | [32](#) (8 pgs) | Reply to (related document(s): [25](#) Objection filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company, [26](#) Objection filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company, [27](#) Objection filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company, [28](#) Objection filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company) *Petitioning Creditors' Omnibus Reply to Putative Debtor's Evidentiary Objections to Declarations of Ronald Richards, Victor Franco Noval, Peter Marco and Oved Anter in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors |

EXHIBIT "13", PAGE 253

| | | |
|---|---|---|
| | | First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (Lev, Daniel) (Entered: 06/02/2020) |
| 06/02/2020 | 31 (12 pgs) | Request for judicial notice *Request for Judicial Notice in Support of Petitioning Creditors' Reply to Putative Debtor's Opposition to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (RE: related document(s)30 Reply). (Lev, Daniel) (Entered: 06/02/2020) |
| 06/02/2020 | 30 (25 pgs) | Reply to (related document(s): 20 Opposition filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company) *Petitioning Creditors' Reply to Putative Debtor's Opposition to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (Lev, Daniel) (Entered: 06/02/2020) |
| 05/26/2020 | 29 (4 pgs) | Objection (related document(s): 13 Request for judicial notice filed by Petitioning Creditor Victor Franco Noval, Petitioning Creditor First International Diamond Inc, Petitioning Creditor Peter Marco LLC) *Evidentiary Objections to Request for Judicial Notice in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (Simon, Michael) (Entered: 05/26/2020) |
| 05/26/2020 | 28 (7 pgs) | Objection (related document(s): 14 Declaration filed by Petitioning Creditor Victor Franco Noval, Petitioning Creditor First International Diamond Inc, Petitioning Creditor Peter Marco LLC) *Evidentiary Objections to Declaration of Ronald Richards in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (Simon, Michael) (Entered: 05/26/2020) |
| 05/26/2020 | 27 (8 pgs) | Objection (related document(s): 16 Declaration filed by Petitioning Creditor Victor Franco Noval, Petitioning Creditor First International Diamond Inc, Petitioning Creditor Peter Marco LLC) *Evidentiary* |

EXHIBIT "13", PAGE 254

| | | |
|---|---|---|
| | | *Objections to Declaration of Victor Franco in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (Simon, Michael) (Entered: 05/26/2020) |
| 05/26/2020 | 26 (10 pgs) | Objection (related document(s): 17 Declaration filed by Petitioning Creditor Victor Franco Noval, Petitioning Creditor First International Diamond Inc, Petitioning Creditor Peter Marco LLC) *Evidentiary Objections to Declaration of Peter Marco in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (Simon, Michael) (Entered: 05/26/2020) |
| 05/26/2020 | 25 (19 pgs) | Objection (related document(s): 15 Declaration filed by Petitioning Creditor Victor Franco Noval, Petitioning Creditor First International Diamond Inc, Petitioning Creditor Peter Marco LLC) *Evidentiary Objections to Declaration of Oved Anter in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (Simon, Michael) (Entered: 05/26/2020) |
| 05/26/2020 | 24 (3 pgs) | Request for judicial notice *Putative Debtor's Request for Judicial Notice in Support of Opposition to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)20 Opposition). (Simon, Michael) (Entered: 05/26/2020) |
| 05/26/2020 | 23 (5 pgs) | Declaration re: *Declaration of Levin Prado in Support of Putative Debtor's Opposition to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)20 Opposition). (Marticello, Robert) (Entered: 05/26/2020) |
| 05/26/2020 | 22 (3 pgs) | Declaration re: *Declaration of Marc S. Williams in Support of Putative Debtor's Opposition to Petitioning Creditors' Motion for Appointment of* |

EXHIBIT "13", PAGE 255

| | | |
|---|---|---|
| | | *Interim Chapter 7 Trustee* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)20 Opposition). (Marticello, Robert) (Entered: 05/26/2020) |
| 05/26/2020 | 21 (214 pgs) | Exhibit *Putative Debtor's Index of Exhibits in Support of Opposition to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)20 Opposition). (Marticello, Robert) (Entered: 05/26/2020) |
| 05/26/2020 | 20 (36 pgs) | Opposition to (related document(s): 12 Motion to Appoint Trustee *Notice of Motion and Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee; Memorandum of Points and Authorities in Support Thereof, with Proof of Service* filed by Petitioning Creditor Victor Franco Noval, Petitioning Creditor First International Diamond Inc, Petitioning Creditor Peter Marco LLC) *Putative Debtor's Opposition to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (Marticello, Robert) (Entered: 05/26/2020) |
| 05/26/2020 | 19 (34 pgs) | Opposition to (related document(s): 8 Motion *Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages; and Memorandum of Points and Authorities in Support* filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company) *Petitioning Creditors' Opposition to Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages; Memorandum of Points and Authorities in Support Thereof, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (Lev, Daniel) (Entered: 05/26/2020) |
| 05/20/2020 | 18 | Hearing Set (RE: related document(s)12 Motion to Appoint Trustee filed by Petitioning Creditor Victor Franco Noval, Petitioning Creditor First International Diamond Inc, Petitioning Creditor Peter Marco LLC) The Hearing date is set for 6/9/2020 at 10:00 AM at Crtrm 1668, 255 E Temple St., Los Angeles, CA |

| | | |
|---|---|---|
| | | 90012. The case judge is Barry Russell (Fortier, Stacey) (Entered: 05/20/2020) |
| 05/19/2020 | [17](#) (33 pgs) | Declaration re: *Declaration of Peter Marco in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (RE: related document(s)[12](#) Motion to Appoint Trustee *Notice of Motion and Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee; Memorandum of Points and Authorities in Support Thereof, with Proof of Service*). (Lev, Daniel) (Entered: 05/19/2020) |
| 05/19/2020 | [16](#) (20 pgs) | Declaration re: *Declaration of Victor Franco Noval in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (RE: related document(s)[12](#) Motion to Appoint Trustee *Notice of Motion and Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee; Memorandum of Points and Authorities in Support Thereof, with Proof of Service*). (Lev, Daniel) (Entered: 05/19/2020) |
| 05/19/2020 | [15](#) (35 pgs) | Declaration re: *Declaration of Ovel Anter in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (RE: related document(s)[12](#) Motion to Appoint Trustee *Notice of Motion and Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee; Memorandum of Points and Authorities in Support Thereof, with Proof of Service*). (Lev, Daniel) (Entered: 05/19/2020) |
| 05/19/2020 | [14](#) (23 pgs) | Declaration re: *Declaration of Ronald Richards in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (RE: related document(s)[12](#) Motion to Appoint Trustee *Notice of Motion and Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee; Memorandum of Points and Authorities in* |

| | | |
|---|---|---|
| | | *Support Thereof, with Proof of Service*). (Lev, Daniel) (Entered: 05/19/2020) |
| 05/19/2020 | [13](#) (84 pgs) | Request for judicial notice *in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (RE: related document(s)[12](#) Motion to Appoint Trustee *Notice of Motion and Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee; Memorandum of Points and Authorities in Support Thereof, with Proof of Service*). (Lev, Daniel) (Entered: 05/19/2020) |
| 05/19/2020 | [12](#) (23 pgs) | Motion to Appoint Trustee *Notice of Motion and Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee; Memorandum of Points and Authorities in Support Thereof, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (Lev, Daniel) (Entered: 05/19/2020) |
| 05/04/2020 | 11 | Hearing Set (RE: related document(s)[8](#) Generic Motion filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company) The Hearing date is set for 6/9/2020 at 10:00 AM at Crtrm 1668, 255 E Temple St., Los Angeles, CA 90012. The case judge is Barry Russell (Fortier, Stacey) (Entered: 05/04/2020) |
| 05/01/2020 | [10](#) (190 pgs) | Request for judicial notice *Putative Debtor's Request for Judicial Notice in Support of Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)[8](#) Motion *Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages; and Memorandum of Points and Authorities in Support*). (Marticello, Robert) (Entered: 05/01/2020) |
| 05/01/2020 | [9](#) (3 pgs) | Notice of Hearing *on Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)[8](#) Motion *Putative Debtor's Motion to Dismiss* |

| | | |
|---|---|---|
| | | *Involuntary Petition and Request for Attorney's Fees, Costs, and Damages; and Memorandum of Points and Authorities in Support* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company). (Marticello, Robert) (Entered: 05/01/2020) |
| 05/01/2020 | [8](#) (29 pgs) | Motion *Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages; and Memorandum of Points and Authorities in Support* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (Marticello, Robert) (Entered: 05/01/2020) |
| 04/16/2020 | [7](#) (1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Salisian, Neal. (Salisian, Neal) (Entered: 04/16/2020) |
| 04/07/2020 | 6 | Hearing Set (RE: related document(s)[1](#) Involuntary Petition (Chapter 7) filed by Petitioning Creditor Victor Franco Noval, Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company, Petitioning Creditor First International Diamond Inc, Petitioning Creditor Peter Marco LLC) Status hearing to be held on 6/9/2020 at 10:00 AM at Crtrm 1668, 255 E Temple St., Los Angeles, CA 90012. The case judge is Barry Russell (Fortier, Stacey) (Entered: 04/07/2020) |
| 04/07/2020 | [5](#) (5 pgs) | Summons Service Executed in an Involuntary Case on Jadelle Jewelry And Diamonds LLC a Delaware limited liability company 4/7/2020, Answer Due 4/28/2020 Filed by Attorney Daniel A. Lev, Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company. (Lev, Daniel) (Entered: 04/07/2020) |
| 04/07/2020 | [4](#) (3 pgs) | Involuntary Summons Issued on Jadelle Jewelry And Diamonds LLC a Delaware limited liability company relates to [1](#) (Fortier, Stacey) (Entered: 04/07/2020) |
| 04/06/2020 | | Receipt of Overages - $20.00 by 01. Receipt Number 20240439. (admin) (Entered: 04/06/2020) |
| 04/06/2020 | | Receipt of Involuntary Filing Fee - $335.00 by 01. Receipt Number 20240439. (admin) (Entered: 04/06/2020) |
| 04/06/2020 | | |

EXHIBIT "13", PAGE 259

| | | |
|---|---|---|
| | [3](#)<br>(1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Lev, Daniel. (Lev, Daniel) (Entered: 04/06/2020) |
| 04/06/2020 | [1](#)<br>(12 pgs) | Chapter 7 Involuntary Petition Against a Non-Individual. Fee Amount $335 Re: Jadelle Jewelry And Diamonds LLC a Delaware limited liability company Filed by Petitioning Creditor(s): First International Diamond Inc (attorney Baruch C Cohen), Peter Marco LLC (attorney Baruch C Cohen), Victor Franco Noval (attorney Ronald N Richards) . (Collins, Kim S.) (Entered: 04/06/2020) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/19/2020 11:27:36 | | |
| **PACER Login:** | LLWEPacer:4347578:4330007 | **Client Code:** JAD01-0001 |
| **Description:** | Docket Report | **Search Criteria:** 2:20-bk-13530-BR Fil or Ent: filed From: 3/20/2018 To: 6/19/2020 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 8 | **Cost:** 0.80 |

# EXHIBIT "14"

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SMILEY WANG-EKVALL, LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:      714 445-1000
Facsimile:      714 445-1002

Attorneys for Jadelle Jewelry and Diamonds,
LLC

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>JADELLE JEWELRY AND DIAMONDS, LLC,<br><br>        Putative Debtor. | Case No. 2:20-bk-13530-BR<br><br>Chapter 7<br><br>**PUTATIVE DEBTOR'S REPLY TO PETITIONING CREDITORS' OPPOSITION TO PUTATIVE DEBTOR'S MOTION TO DISMISS INVOLUNTARY PETITION AND REQUEST FOR ATTORNEY'S FEES, COSTS, AND DAMAGES**<br><br>**[Request for Judicial Notice In Support of Reply Filed Concurrently Herewith]**<br><br>**HEARING:**<br>**DATE:**    **June 9, 2020**<br>**TIME:**     **10:00 a.m.**<br>**CTRM:**   **1668**<br>          **255 E. Temple Street**<br>          **Los Angeles, CA 90012** |

2826221.1

REPLY

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................1

II. A FORM INVOLUNTARY PETITION CAN BE DISMISSED UNDER RULE 12(B)(6) ...........................................................................................................4

    A. A Putative Debtor May Contest an Involuntary Petition by a Rule 12(b)(6) Motion ....................................................................................4

    B. The Form Involuntary Petition Is Not, as a Matter of Law, Immune From a Rule 12(b)(6) Motion to Dismiss .............................................4

III. COURTS DISMISS COMPLAINTS BASED ON JUDICIAL ADMISSIONS AND FACTS SUBJECT TO JUDICIAL NOTICE...........................................6

    A. The Petitioning Creditors' Assertions Constitute Binding Judicial Admissions ..............................................................................................6

    B. Jadelle's Request for Judicial Notice Is Proper and Should Be Granted ...................6

    C. Courts Are Not Required to Accept as True Allegations that Are Contradicted by Judicial Admissions and Judicially Noticeable Facts.....................8

IV. THE PETITIONING CREDITORS ARE NOT ELIGIBLE BECAUSE THEIR CLAIMS ARE SUBJECT TO BONA FIDE DISPUTES.........................9

    A. Pending Litigation Is Evidence of a Bona Fide Dispute ............................9

    B. The Petitioning Creditors' Claims Are Subject to Bona Fide Dispute Based on the Application of the Judicial Admissions Doctrine and Judicial Notice..........10

        1. Noval's Alleged Claim Is Subject to Bona Fide Disputes Based on Judicial Admissions and Judicially Noticeable Facts ................................11

        2. Marco's Alleged Claim Is Subject to Bona Fide Disputes Based on Judicial Admissions and Judicially Noticeable Facts ................................13

        3. First International's Alleged Claim Is Subject to Bona Fide Disputes Based on Judicial Admissions and Judicially Noticeable Facts.................14

V. THE BANKRUPTCY RULES AND THE NINTH CIRCUIT DO NOT REQUIRE AN ANSWER OR NOTICE TO CREDITORS ....................................15

VI. THE INVOLUNTARY PETITION MUST BE DISMISSED BECAUSE THE PETITIONING CREDITORS COMMENCED THIS CASE IN BAD FAITH.................18

    A. The Court May Dismiss the Involuntary Petition Because it was Commenced in Bad Faith .........................................................................18

    B. The Evidence Before the Court Demonstrates that the Petitioning Creditors Filed the Case in Bad Faith .......................................................21

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "14", PAGE 262

VII.    THE INVOLUNTARY PETITION SHOULD BE DISMISSED WITHOUT
LEAVE TO AMEND ................................................................................................24

VIII.    JADELLE IS WILLING TO FILE A SEPARATE MOTION FOR FEES AND
DAMAGES ...........................................................................................................25

IX.    CONCLUSION ...........................................................................................................25

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2826221.1

ii

TABLE OF CONTENTS

EXHIBIT "14", PAGE 263

## TABLE OF AUTHORITIES

**Page**

### CASES

*Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ........................................ 6

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ............................................ 8

*Doane v. Friendship Airways Leasing, Inc.*, 2012 WL 44487, at *2 (S.D. Fla. 2012) .................. 21

*Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 707 (9th Cir. 2004) ........................... 22, 24

*Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2015 WL 13310465, at *3
  (C.D. Cal. 2015) ......................................................................................... 6, 8

*In re Anmuth Holdings*, 600 B.R. 168, 192 (Bankr. E.D. N.Y. 2019) ........................................ 23

*In re Colon*, 558 B.R. 563, 568 (Bankr. D.P.R. 2016) ...................................................... 20

*In re Cook*, 384 B.R. 282, 294 (Bankr. N.D. Ala. 2008) .................................................... 22

*In re Green Hills Dev. Co., L.L.C.*, 741 F.3d 651, 659 (5th Cir. 2014) ...................................... 9

*In re John Richards Homes Bldg. Co.*, 439 F.3d 248 (6th Cir. 2006) ....................................... 23

*In re Kennedy*, 504 B.R. 815, 824 (Bankr. S.D. Miss. 2014) ........................................... 21, 22

*In re Kidwell*, 158 B.R. 203, 217 (Bankr. E.D. Cal. 1993) ............................................. 21, 24

*In re Lough*, 57 B.R. 993, 996-97 (Bankr. E.D. Mich. 1986) ............................................... 11

*In re Macke Int'l Trade, Inc.*, 370 B.R. 236, 247–48 (B.A.P. 9th Cir. 2007) ............................... 18

*In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994) ............................................................ 19

*In re Mi La Sul*, 380 B.R. 546, 557 (Bankr. C.D. Cal. 2007) ............................................... 18

*In re Miles*, 156 Fed. Appx. 981, 984 (9th Cir. 2005) ...................................................... 18

*In re Mountain Dairies, Inc.*, 372 B.R. 623, 633-34 (Bankr. S.D.N.Y. 2007) ...................... 11, 12, 24

*In re NC and VA Warranty Company, Inc.*, 554 B.R. 110, 121 (Bankr. M.D. N.C. 2016) .............. 7

*In re QDOS, Inc.*, 607 B.R. 338, 345 (B.A.P. 9th Cir. 2019) ..................................... 4, 5, 16, 17

*In re Rambo Imaging, L.L.P.*, 2007 WL 3376163, at *12 (Bankr. W.D. Texas 2007) .................... 5

*In re Smith*, 243 B.R. 169, 198 (Bankr. N.D. Ga. 1999) ................................................... 21

*In re Spade*, 269 B.R. 225, 229 (D. Colo. 2001) .......................................................... 21

*In re Synergistic Technologies, Inc.*, 2007 WL 2264700, at *7 (Bankr. N.D. Tex. 2007) .............. 22

EXHIBIT "14", PAGE 264

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

*In re Taub,* 439 B.R. 261, 270 (Bankr. E.D.N.Y. 2010) ................................................. 4

*In re TPG Troy, LLC,* 492 B.R. 150, 159-60 (Bankr. S.D.N.Y. 2013) ............................. 9

*In re U.S. Corp.,* 2011 WL 1900416, at *3 (Bankr. D. Ariz. 2011) ................................. 18

*In re Vortex Fishing Systems, Inc.,* 277 F.3d 1057, 1061 (9th Cir. 2002) ................. 3, 9, 10, 16, 17

*In re Wavelength, Inc.,* 61 B.R. 614, 620 (B.A.P. 9th Cir. 1986) .................................. 21

*In re WSB-RSK Venture,* 296 B.R. 509, 513 (Bankr. C.D. Cal. 2003) ...................... 18, 20

*Intri-Plex Technologies, Inc. v. Crest Group, Inc.,* 499 F.3d 1048, 1052 (9th Cir. 2007) ............... 8

*Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 999 (9th Cir. 2018) ..................... 6

*Landmark,* 189 B.R. 290, 306 (Bankr. D.N.J. 1995) ...................................................... 24

*Law v. Siegel,* 571 U.S. 415, 422 (2014) ......................................................................... 19

*Maloney v. Scottsdale Ins. Co.,* 256 F. Appx. 29, 31–32 & 32, n. 3 (9th Cir. 2007) ....... 8

*Marrama Citizens Bank of Massachusetts, 549 U.S. 365, 373-74 (2007)* ...................... 19

*Martinez v. Bally's Louisiana, Inc.,* 244 F.3d 474, 476-77 (5th Cir. 2001) .................... 6

*N. Face Apparel Corp. v. Dahan,* 2014 WL 12596716, at *1 (C.D. Cal. 2014) ............... 6

*Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001) ................................................... 8

*Watt v. GMAC Mortg. Corp.,* 457 F.3d 781, 782 (8th Cir. 2006) ................................. 21

*Yeager v. Bowlin,* 2008 WL 3289481, at *3 (E.D. Cal. 2008) ...................................... 7

**STATUTES**

11 U.S.C. § 303 ........................................................................................................ 19, 20

11 U.S.C. § 303(b) ...................................................................................................... 2, 9

11 U.S.C. § 303(b)(1) ...................................................................................................... 5

11 U.S.C. § 303(i)(2) ...................................................................................................... 20

11 U.S.C. § 305 ............................................................................................................... 18

11 U.S.C. § 707(a) ......................................................................................................... 18

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "14", PAGE 265

## OTHER AUTHORITIES

*Bankruptcy Evidence Manual* § 801.22 (2018-2019 ed., vol. 2) ...................................................... 6

## RULES

Bankruptcy Rule 1003 ................................................................................................................ 16

Bankruptcy Rule 1003(b) ..................................................................................................... 16, 17

Bankruptcy Rule 1011 ................................................................................................................ 15

Bankruptcy Rule 1011(b) ............................................................................................................. 4

Bankruptcy Rule 1013(a) ............................................................................................................. 3

Fed. R. Bankr. P. 1003 .............................................................................................................. 16

Fed. R. Bank. P. 1003(b) ............................................................................................................. 3

Fed. R. Evid. 801(d) .................................................................................................................... 8

Rule 12 ........................................................................................................................................ 4

Rule 12(b) .................................................................................................................................... 4

Rule 12(b)(6) ........................................................................................... 1, 2, 4, 5, 8, 17, 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "14", PAGE 266

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

Jadelle Jewelry and Diamonds, LLC, the putative debtor ("Jadelle"), hereby submits this reply to the *Petitioning Creditors' Opposition to Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages* [Docket No. 19] (the "Opposition") filed by First International Diamond, Inc. ("First International"), Peter Marco, LLC ("Marco"), and Victor Franco Noval ("Noval" and together with First International and Marco, the "Petitioning Creditors"), and in support of the *Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages* [Docket No. 8] (the "Motion").[1]  In support of the reply and the Motion, Jadelle submits the concurrently filed Request for Judicial Notice (the "Reply RJN").

## I.    INTRODUCTION

This case should be dismissed for at least two independent reasons.  First, the Petitioning Creditors' claims—as evidenced by their own judicial admissions and inconsistent positions—are subject to multiple bona fides disputes, rendering all three ineligible to commence this case.  *See Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1186 (9th Cir. 2019).  Second, the Petitioning Creditors commenced this case in bad faith and for an improper purpose.

Despite the Petitioning Creditors' incredible position, the law is clear: A putative debtor may contest an involuntary petition by a Rule 12(b)(6) motion to dismiss (and in lieu of an answer).  Motions to dismiss involuntary petitions are routinely filed by alleged debtors and granted by bankruptcy courts.  The Petitioning Creditors would have this Court believe that an involuntary case commenced by the form petition can never be dismissed.  (*See* Opp'n at 7, line 27 to 8, line 2.)  However, as even the cases cited by the Petitioning Creditors recognize, *this is not the law*.  Whether a Rule 12(b)(6) motion to dismiss an involuntary petition should be granted depends on the particular facts and circumstances of the case.

---

[1]    Capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Motion.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "14", PAGE 267

1    Here, the unique facts of this case require dismissal of the Involuntary Petition.  The

2 unique facts are properly before this Court based on two doctrines.  First, the Petitioning Creditors'

3 statements under penalty of perjury or in legal pleadings constitute conclusively binding *judicial*

4 *admissions*.  The Petitioning Creditors fail to address this critical issue.  Second, the Petitioning

5 Creditors' allegations in publically available pleadings are treated as judicially noticed and

6 established facts for purposes of the Motion.  To be clear, Jadelle is not requesting that the Court

7 take judicial notice of the *truth* of the Petitioning Creditors' disputed allegations.  Rather, for

8 purposes of the Motion, Jadelle asks that the Court take judicial notice that the Petitioning

9 Creditors *made* such allegations.

10    The Petitioning Creditors' judicial admissions and judicially noticeable facts establish that

11 their claims are subject to multiple bona fide disputes.  As detailed below, the Petitioning

12 Creditors seek amounts they cannot recover as a matter of law.  The Petitioning Creditors seek

13 unproven amounts based on disputed allegations of fraud.  Moreover, all three Petitioning

14 Creditors have taken inconsistent positions regarding the amount of their own claims.  The fact

15 that the Petitioning Creditors attempted to understate their claims to improperly satisfy the Code's

16 eligibility requirements demonstrates that they know that bona fide disputes exist.

17    Tellingly, the Petitioning Creditors have not provided any substantive response to the bona

18 fide disputes identified by Jadelle.  Instead, the Petitioning Creditors seek to delay the inevitable,

19 arguing that the Court cannot determine that such (plainly evident) disputes exist at this time and

20 based on the evidentiary record before it.  The Petitioning Creditors are wrong.  In deciding a Rule

21 12(b)(6) motion, courts are not required to assume as true any allegations contradicted by judicial

22 admissions and judicially noticeable facts.  Here, the Petitioning Creditors' admissions and the

23 facts subject to judicial notice contradict and prove inaccurate the single, bare bones legal

24 conclusion in the Involuntary Petition that they are "eligible to file this petition under 11 U.S.C.

25 § 303(b)."  Thus, the Petitioning Creditors have failed to state a claim for relief and the

26 Involuntary Petition must be dismissed.

27    The Court is not required to provide creditors with an opportunity to join the Involuntary

28 Petition.  Realizing they are not eligible, the Petitioning Creditors again seek delay, hoping that

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "14", PAGE 268

1    some other alleged creditor will save their improper filing.  However, the Petitioning Creditors'

2    position is squarely contradicted by Ninth Circuit law and the plain language of the Bankruptcy

3    Rules.  Because the Involuntary Petition was not filed by *fewer than three* petitioning creditors,

4    notice to other creditors and an opportunity to join the petition is not required.  *See* Fed. R. Bank.

5    P. 1003(b); *see also In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1072 (9th Cir. 2002).

6    Thus, there is no procedural impediment to the Court granting the Motion at this time.  Moreover,

7    dismissal of the case now is consistent with the requirement that courts resolve contested

8    involuntary cases at the "earliest possible time and forthwith" by dispositive order.  *See In re*

9    *Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1061 (9th Cir. 2002) (quoting Bankruptcy Rule

10    1013(a)).

11        Alternatively, the Court can dismiss the Involuntary Petition because it was filed in bad

12    faith.  The Petitioning Creditors do not seem to seriously dispute that they are forum shopping, but

13    argue that this Court lacks the power to do anything about it.  The Petitioning Creditors' assertion

14    that the Ninth Circuit does not recognize bad faith as a basis for dismissal of an involuntary

15    petition is misleading.  The Ninth Circuit has not held that involuntary petitions filed in bad faith

16    cannot be dismissed.[2]  To the contrary, courts in the Ninth Circuit and across the country have

17    repeatedly dismissed involuntary petitions filed in bad faith.  Dismissal of an involuntary petition

18    filed in bad faith is consistent with the Code, the decisions of the United States Supreme Court and

19    Ninth Circuit, and years of bankruptcy court jurisprudence.

20        The evidence before the Court establishes that the Petitioning Creditors have acted in bad

21    faith.  Bankruptcy courts (including the cases cited by the Petitioning Creditors) uniformly

22    recognize that dismissal of an involuntary petition is proper where petitioning creditors fail to first

23    exhaust their state law remedies.  Here, the recently-commenced pending lawsuits by Marco and

24    Noval demonstrate that state law remedies exist and were far from exhausted prior to the filing of

25    the Involuntary Petition.  The Petitioning Creditors sought to move the pending litigation to this

26    Court only after the Noval Action was stayed in an effort to circumvent that ruling and obtain

27        _____
       [2]    In fact, as discussed below, in an unpublished opinion, the Ninth Circuit upheld the dismissal of
28    involuntary petitions filed in bad faith.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "14", PAGE 269

1    relief on their disputed allegations to which they are not entitled.  The Petitioning Creditors'

2    inconsistent positions and false statements in furtherance of the Involuntary Petition provide

3    further grounds for a finding of bad faith warranting dismissal of the case.

4         Accordingly, Jadelle respectfully requests that the Court immediately dismiss the

5    Involuntary Petition and award Jadelle attorney's fees and costs and compensatory and punitive

6    damages, subject to proof.

7

8    **II.    A FORM INVOLUNTARY PETITION CAN BE DISMISSED UNDER RULE**

9    **12(B)(6)**

10        **A.    A Putative Debtor May Contest an Involuntary Petition by a Rule 12(b)(6)**

11             **Motion**

12        A putative debtor may seek dismissal of an involuntary petition pursuant to Rule 12(b)(6).

13    Bankruptcy Rule 1011(b) expressly authorizes an alleged debtor to contest an involuntary petition

14    in the manner prescribed by Rule 12.  Rule 12, in turn, provides for the filing of several dispositive

15    motions, including a motion to dismiss pursuant to Rule 12(b).  Numerous courts have recognized

16    that an involuntary petition may be contested pursuant to Rule 12(b)(6) (including decisions cited

17    by the Petitioning Creditors).  *See, e.g., In re Taub,* 439 B.R. 261, 270 (Bankr. E.D.N.Y. 2010);

18    *see also In re QDOS, Inc.*, 607 B.R. 338, 345 (B.A.P. 9th Cir. 2019) ("An involuntary debtor may

19    initially contest the involuntary petition through a Civil Rule 12(b)(6) motion. . . .").  Thus,

20    contrary to the Petitioning Creditors' arguments, there is nothing improper with contesting an

21    involuntary petition by a Rule 12(b)(6) motion.  In fact, the Motion is the proper, efficient, and

22    sensible way to resolve Petitioning Creditors' ill-conceived and impermissible involuntary petition.

23        **B.    The Form Involuntary Petition Is Not, as a Matter of Law, Immune From a**

24             **Rule 12(b)(6) Motion to Dismiss**

25        The Petitioning Creditors' assertion that a properly completed form petition defeats a Rule

26    12(b)(6) motion to dismiss as a matter of law is wrong.  (*See* Opp'n at 7, line 27 to 8, line 2.)  The

27    Petitioning Creditors have not provided any binding or persuasive authority for this position.  The

28    Ninth Circuit BAP certainly did not make any such proclamation in *QDOS*.  In *QDOS*, the BAP

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2826221.1                           4                              REPLY

1    recognized that a Rule 12(b)(6) motion may be filed and that granting a motion to dismiss may be

2    proper if the petitioners fail to plausibly allege that they meet the standards of § 303. *See In re*

3    *QDOS, Inc.*, 607 B.R. 338, 345 (B.A.P. 9th Cir. 2019).

4         The unpublished decision in *Rambo Imaging* is distinguishable. In fact, that decision

5    supports Jadelle's position that, in evaluating a Rule 12(b)(6) motion to dismiss a form petition, the

6    court "considers facts of which it takes judicial notice." *See In re Rambo Imaging, L.L.P.*, 2007

7    WL 3376163, at *12 (Bankr. W.D. Texas 2007). In *Rambo Imaging*, the petitioner seemed to

8    concede that the amount of its claim was disputed, but argued "that a portion of the claim has not

9    been disputed at all, and that such amount exceeds the amount necessary under § 303(b)(1)" to

10    render it eligible. *See id.* at *13. Thus, had the *Rambo Imaging* decision been decided in the

11    Ninth Circuit (where courts must follow *Blixseth*), the outcome may have been different. In the

12    end, *Rambo Imaging* stands for the unremarkable position that, *in that case,* the form petition was

13    sufficient to defeat the putative debtor's motion to dismiss. *See id.* at *11 (stating its conclusion

14    "that the use of the Official Form *in this case* should be found sufficient to overcome the Rule

15    12(b)(6) challenge." (emphasis added)).

16         There is no blanket rule that a properly completed form petition always survives a Rule

17    12(b)(6) motion to dismiss. Again, whether a Rule 12(b)(6) motion should be granted depends on

18    the particular facts of the case. Moreover, the Petitioning Creditors are wrong that case law

19    applying Rule 12(b)(6) outside of the bankruptcy context is irrelevant. (*See* Opp'n at 6, note 2.)

20    As recognized by the Ninth Circuit BAP in *QDOS*, "Rule 12(b)(6) applies in a contested

21    involuntary situation *just as it does generally. . . .*" *See In re QDOS, Inc.*, 607 B.R. at 345

22    (emphasis added). Thus, a form petition may be dismissed based on the rules that typically govern

23    a Rule 12(b)(6) motion to dismiss whether inside or outside of the bankruptcy context.

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "14", PAGE 271

III.    **COURTS DISMISS COMPLAINTS BASED ON JUDICIAL ADMISSIONS AND FACTS SUBJECT TO JUDICIAL NOTICE**

A.    **The Petitioning Creditors' Assertions Constitute Binding Judicial Admissions**

Factual assertions in pleadings constitute judicial admissions and conclusively prove the facts admitted. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). Judicial admissions are "binding on the parties and the Court." *See id*. Judicial admissions "have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Id*. Also, unlike ordinary evidentiary admissions, judicial admissions cannot be refuted with evidence or otherwise. In sum, a judicial admission is conclusive, binding, and may not be controverted or explained by the party who made it. *See Lacelaw Corp.*, 861 F.2d at 226; *see also Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476-77 (5th Cir. 2001); Hon. Barry Russell, *Bankruptcy Evidence Manual* § 801.22 (2018-2019 ed., vol. 2). Statements in complaints, declarations and other pleadings constitute binding judicial admissions. *See Lacelaw Corp.*, 861 F.2d at 226; *see also Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2015 WL 13310465, at *3 (C.D. Cal. 2015), *aff'd*, 677 F. Appx. 336 (9th Cir. 2017) (treating statements in a declaration as judicial admissions conclusively binding on the party who filed it). Thus, the statements and assertions by the Petitioning Creditors in their complaints and declarations are conclusively binding on them.

B.    **Jadelle's Request for Judicial Notice Is Proper and Should Be Granted**

Attached to the Request for Judicial Notice (the "RJN") that Jadelle filed with the Motion are eight items. Each item is a matter of public record obtained from a court docket, *i.e.*, the Petitioning Creditors' complaints, the court dockets for the non-bankruptcy actions, and a court minute order. These items are all "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See Fed. R. Evid. 201(b).*

The Court can "take judicial notice of pleadings and court orders filed in related actions." *See N. Face Apparel Corp. v. Dahan*, 2014 WL 12596716, at *1 (C.D. Cal. 2014); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (stating that a court may take judicial notice of public records). Moreover, the Court can properly take judicial notice of the fact

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    that (1) litigation is pending in other forums, (2) the pleadings attached to the RJN were filed, and

2    (3) the assertions contained in pleadings attached to the RJN were made.  *See, e.g.*, *In re NC and*

3    *VA Warranty Company, Inc.*, 554 B.R. 110, 121 (Bankr. M.D. N.C. 2016) (taking judicial notice

4    of the fact that the debtor made certain allegations contained in a complaint, as opposed to

5    assuming the truth of the allegations); *Yeager v. Bowlin*, 2008 WL 3289481, at *3 (E.D. Cal.

6    2008) (recognizing the distinction between judicial notice of the "'truth of the substantive content"

7    in pleadings and the "fact and content" of the pleadings).

8         Jadelle is not requesting that the Court take judicial notice of the *truth* of the assertions

9    contained in the pleadings attached to the RJN.  Instead, Jadelle requests that the Court take

10   judicial notice that the Petitioning Creditors *made* and are bound by the assertions in those

11   pleadings, *which were prepared and submitted by Petitioning Creditors*.  This is an important

12   distinction that the Petitioning Creditors fail to appreciate.[3]  For example, Jadelle is not requesting

13   that this Court take judicial notice that Noval is actually entitled to $7 million in damages, but,

14   instead, that Noval *asserts* that he is entitled to at least that amount subject to proof (*i.e.*, an

15   amount he is not entitled to as a matter of law).  Moreover, while the truth of the Petitioning

16   Creditors' assertions may be in dispute, the fact that the Petitioning Creditors made them is not.

17   Jadelle will not belabor the point because it is aware that this Court literally wrote the book on

18   evidence in bankruptcy cases.

19        The Petitioning Creditors' alleged due process concerns are curious.  Incredibly, the

20   Petitioning Creditors argue that judicial notice is not proper because it will deprive them of the

21   opportunity to cross examine witnesses.  In this case, *those witnesses are themselves*.  Jadelle

22   requests that the Court take judicial notice of the Petitioning Creditors' own assertions, which

23   reveal numerous inconsistencies, including several that were made under oath.  Moreover, as

24   discussed above, the Petitioning Creditors are not entitled to controvert their judicial admissions in

25   a futile attempt to save the Involuntary Petition from dismissal.  The Petitioning Creditors'

26   desperate assertion that their own statements in their pleadings constitute inadmissible hearsay is

27

28        [3]    For this reason, the cases cited by the Petitioning Creditors for the proposition that the Court cannot
take judicial notice of the truth of their allegations in their pleadings is of little value to the Court's analysis.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   inaccurate as they would be excepted as admissions by party opponents. *See* Fed. R. Evid. 801(d).

2   Thus, Jadelle's request for judicial notice is proper and should be granted, and the judicial

3   admissions and judicially noticeable facts should be considered by the Court.

**C.    Courts Are Not Required to Accept as True Allegations that Are Contradicted by Judicial Admissions and Judicially Noticeable Facts**

6   In deciding a Rule 12(b)(6) motion to dismiss, courts are not required to accept as true

7   allegations in an involuntary petition that are contradicted by the petitioners' judicial admissions or

8   by facts subject to judicial notice.

> The court need not, however, accept as true allegations that contradict
> matters properly subject to judicial notice or by exhibit.  Nor is the
> court required to accept as true allegations that are merely conclusory,
> unwarranted deductions of fact, or unreasonable inferences.

12   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of*

13   *reh'g,* 275 F.3d 1187 (9th Cir. 2001) (internal citation omitted); *see also Daniels-Hall v. Nat'l*

14   *Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("We are not, however, required to accept as true

15   allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial

16   notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

17   inferences.").  Judicial admissions are also properly considered on a motion to dismiss.  *See*

18   *Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2015 WL 13310465, at *3 (C.D. Cal.

19   2015), *aff'd,* 677 F. Appx. 336 (9th Cir. 2017).

20   Courts grant Rule 12(b)(6) motions and dismiss complaints based on the plaintiff's judicial

21   admissions.  *See Maloney v. Scottsdale Ins. Co.*, 256 F. Appx. 29, 31–32 & 32, n. 3 (9th Cir.

22   2007) (affirming the district court's dismissal of a complaint under Rule 12(b)(6) based on

23   plaintiff's judicial admissions); *see also Armstrong v. JP Morgan Chase Bank Nat. Ass'n*, 633

24   Fed.Appx. 909, 911-92 (10th Cir. 2015) (affirming the district court's grant of a 12(b)(6) motion

25   based on the plaintiff's judicial admissions in the bankruptcy case).  Courts can also dismiss

26   complaints under Rule 12(b)(6) based on judicially noticeable facts.  *See Intri-Plex Technologies,*

27   *Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (affirming the district court's grant

28   of motion to dismiss where district court considered pleadings on file in another action).

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    Thus, the Petitioning Creditors' judicial admissions and the facts subject to judicial notice

2    can be considered by the Court in deciding the Motion and evaluating the sufficiency of the

3    Involuntary Petition's allegations.  The Court is not required to assume as true any allegations that

4    are contradicted by the Petitioning Creditors' judicial admissions and the facts subject to judicial

5    notice.

6

7    **IV.    THE PETITIONING CREDITORS ARE NOT ELIGIBLE BECAUSE THEIR**

8    **CLAIMS ARE SUBJECT TO BONA FIDE DISPUTES**

9    The Petitioning Creditors' allegations regarding the purported merits of their claims hinge

10   on the following single general and conclusory statement in the Involuntary Petition:

11   **Each petitioner is eligible to file this petition under 11 U.S.C.**

12   **§ 303(b).**

13   (*See* RJN, Ex. 1 at Bates Stamp 6.)  This statement is not afforded a presumption of truth because

14   it is a legal conclusion.  Moreover, it is contradicted by the existence and nature of the pending

15   litigation and the Petitioning Creditors' judicial admissions and the facts subject to judicial notice.

16   As such, the Petitioning Creditors have failed to establish that they hold non-contingent claims

17   that are not subject to a bona fide dispute as to liability or amount.

18   **A.    Pending Litigation Is Evidence of a Bona Fide Dispute**

19   Pending litigation is *evidence* that bona fide disputes exist.  "Bankruptcy courts routinely

20   consider the existence and character of pending but unresolved litigation *as evidence* of a bona

21   fide dispute."  *In re Green Hills Dev. Co.*, *L.L.C.*, 741 F.3d 651, 659 (5th Cir. 2014) (emphasis

22   added); *see also In re TPG Troy, LLC*, 492 B.R. 150, 159-60 (Bankr. S.D.N.Y. 2013),

23   *subsequently aff'd*, 793 F.3d 228 (2d Cir. 2015) (stating that courts have held that the existence of

24   pending litigation strongly suggests the existence of a bona fide dispute).

25   The Ninth Circuit did not, in *Vortex Fishing Systems*, take a contrary position.  Rather, the

26   Ninth Circuit recognized that the mere existence of litigation, standing alone, is not enough to

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2826221.1                                    9                                    REPLY

1   establish a bona fide dispute.[4]  *See In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1066 (9th

2   Cir. 2002).  The Ninth Circuit recognized that "the existence of affirmative defenses may suggest

3   that a bona fide dispute exists."  *See id.* at 1067.  Thus, the Ninth Circuit's discussion in *Vortex*

4   *Fishing* is not inconsistent with the position and authorities asserted in the Motion.  While the

5   existence of pending litigation may not *per se* establish that a bona fide dispute exists, it is

6   *evidence that bona fide disputes exist.*

7         Here, there is no dispute that each Petitioning Creditor's claim is to some extent subject to

8   litigation.  Noval commenced suit against Jadelle.  While Marco excluded Jadelle from the Marco

9   Action due to this case, it is clear by his inconsistent statements that he is concurrently pursuing

10   the same claim against Mr. Rechnitz and Jadelle in different forums.  The majority of First

11   International's claim is being pursued by Marco in the Marco Action.  Moreover, as demonstrated

12   by their declarations, the Petitioning Creditors base their claims on inherently fact intensive (and

13   unproven and disputed) allegations of fraud.  The Petitioning Creditors also seek damages that

14   they have yet to quantify or prove.  This is all evidence that bona fide disputes exist.

15      **B.**    **The Petitioning Creditors' Claims Are Subject to Bona Fide Dispute Based on**

16           **the Application of the Judicial Admissions Doctrine and Judicial Notice**

17         A dispute as to any portion of a petitioning creditor's claim renders it ineligible.  *See Dep't*

18   *of Revenue v. Blixseth*, 942 F.3d 1179, 1186 (9th Cir. 2019).  The Ninth Circuit has adopted an

19   objective test for determining whether a bona fide dispute exists.  *See In re Vortex Fishing*

20   *Systems, Inc.*, 277 F.3d 1057, 1065 (9th Cir. 2002).  A bona fide dispute exists if there is either a

21   dispute as to a material fact or a meritorious contention of law as to the amount or liability of a

22   petitioning creditor's claim.  *See id.* (quoting *In re Lough*, 57 B.R. 993, 996-97 (Bankr. E.D. Mich.

23

24

25      [4]    The first case cited by the Ninth Circuit for this proposition, *In re Ross*, declined to adopt a *per se*
     rule that the mere pendency of litigation creates a bona fide dispute based on the facts of the case, which

26   appeared to involve a particularly litigious putative debtor.  *See In re Ross*, 63 B.R. 951, 960 (Bankr.
     S.D.N.Y. 1986) ("The facts of this case have caused this court to conclude that it must reject any idea that

27   the mere pendency of a lawsuit relative to a petitioner's claim creates a bona fide dispute. Ross' capacity for
     litigation makes it apparent that adoption of such a *per se* rule would allow any debtor to avoid or defeat an

28   involuntary petition simply through engaging in litigation.").

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "14", PAGE 276

1  1986)).  Courts are not to adjudicate the disputes, but merely ascertain whether they exist.  *See In*

2  *re Mountain Dairies, Inc.*, 372 B.R. 623, 633 (Bankr. S.D.N.Y. 2007).

3         **1.**    **<u>Noval's Alleged Claim Is Subject to Bona Fide Disputes Based on</u>**

4        **<u>Judicial Admissions and Judicially Noticeable Facts</u>**

5        Noval's judicial admissions and the judicially noticeable facts demonstrate that Noval's

6  claim is subject to at least the following bona fide disputes:

7        <u>Noval's judicial admissions establish that he seeks amounts that he cannot recover as a</u>

8  <u>matter of law</u>.  Noval asserts he made loans to Jadelle.  (*See* RJN, Ex. 2 at Bates Stamp 22, ¶¶ 14-

9  16.)  The fact that Noval seeks damages of at least $7 million based on the alleged value of the

10  diamonds he asserts served as the collateral for his loans constitutes a judicial admission and is

11  subject to judicial notice.  (*See* RJN, Ex. 2 at Bates Stamps 22, 24, and 30 ¶¶ 16, 29, and 60.)

12  However, as a purported lender, at most, Noval would be entitled to repayment of his loan, and not

13  the value of the collateral in excess of the loan.  Thus, the amount of Noval's claim, as articulated

14  by Noval, is subject to bona fide dispute as a matter of law.

15        <u>Noval's judicial admissions establish that his claim is overstated because he did not reduce</u>

16  <u>his claim to account for payments he admittedly received</u>.  In the Noval Complaint, Noval asserts

17  that, due to advances, the loan increased to $5,800,000.  (*See* RJN, Ex. 2 at Bates Stamp 23, ¶ 17.)

18  Noval testifies that in calculating his claim for the Involuntary Petition ($5,800,000) he included

19  the principal amount of the alleged loans.  (*See* Reply RJN, Ex. 1, Noval Decl., at Bates Stamp 9,

20  ¶ 12, lines 22-24; *see also id.*, Ex. 2, Richards Decl., at Bates Stamp 28, ¶ 11, lines 3-5.)  Noval

21  admits that he was paid $400,000 and that such sum was "credited against principal[.]"  (*See* RJN,

22  Ex. 2 at Bates Stamp 23, ¶ 18.)  These conflicting judicial admissions by Noval in the Noval

23  Complaint and the Noval Declaration demonstrate a dispute as to the amount of Noval's claim.  He

24  did not reduce the principal amount asserted by the payment he admittedly received.  As a matter

25  of law, Noval cannot recover more than he allegedly loaned, less payments received, as he is

26  admittedly attempting to do.

27        <u>Noval's inconsistent positions under penalty of perjury and admitted attempt to understate</u>

28  <u>his claim to become eligible demonstrates that bona fides dispute exists</u>.  Noval seeks damages "in

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "14", PAGE 277

1  an amount to be proven at trial, but at least $7,000,000[,]" plus treble damages, attorney's fees,

2  costs of suit, and punitive damages. (*See* RJN, Ex. 2 at Bates Stamps 30, ¶ 60, and at Bates

3  Stamp 33.) However, Noval testifies that, in calculating his claim for the Involuntary Petition, he

4  did not include the full amount he is concurrently seeking to collect, but only "**the principal**

5  **amount that had absolutely no chance of being disputed**." (*See* Reply RJN, Ex. 1, Noval Decl.,

6  at Bates Stamp 9, ¶ 12, lines 22-24; *see also id.*, Ex. 2, Richards Decl., at Bates Stamp 28, ¶ 11,

7  lines 3-5.) First, Noval's inconsistent positions and gamesmanship should not be rewarded.

8  Second, Noval's reduction of his claim in an attempt to become eligible reflects he is aware that

9  bona fide disputes exist and "raises serious concerns over the legitimacy over" Noval's entire

10 claim. *See In re Mountain Dairies, Inc.*, 372 B.R. 623, 634 (Bankr. S.D.N.Y. 2007).

11      A bona fide dispute exists regarding whether the full amount allegedly loaned is currently

12 due. Noval asserts that the maturity dates for the amounts advanced in excess of the loans

13 identified in the Noval Agreement are set forth in the Noval Agreement. (*See* RJN, Ex. 2 at Bates

14 Stamp 22, ¶ 15; *see also* Reply RJN, Ex. 1 at Bates Stamp 6, ¶ 5.) However, the Noval

15 Agreement, which is attached to both the Noval Complaint and the Noval Declaration, contradicts

16 Noval's assertion. The fact that the Noval Agreement expressly identifies loans totaling only

17 $2.85 million is subject to judicial notice. The inconsistency between Noval's position and the

18 agreement upon which he relies evidences the bona fide dispute that exists as to whether any

19 amounts in excess of the Noval Agreement are currently due.

20      Noval's judicial admissions establish that he is charging usurious interest. Noval's

21 assertion in the Noval Complaint that interest is to be calculated at "9% per month" is a judicial

22 admission and is subject to judicial notice. (*See* RJN, Ex. 2 at Bates Stamp 22, ¶ 15.) Noval has

23 not disputed that he is calculating his claim with 9% interest per month. However, the fact that the

24 Noval Agreement, on its face, provides for interest of only 9% per *annum*, and not per month, is

25 subject to judicial notice. (*See* RJN, Ex. 2 at Bates Stamp 37.) Thus, Noval's judicial admissions

26 and the facts subject to judicial notice demonstrate that Noval is charging usurious interest and

27 interest that is contrary to the plain language of the Noval Agreement.

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    By his own admission, Noval seeks damages that he has yet to quantify or prove.  Noval

2    asserts a claim in an "amount to be proven at trial, but at least $7,000,000[,]" plus alleged treble

3    damages, attorney's fees, costs of suit, and punitive damages.  (*See* RJN, Ex. 2 at Bates Stamps

4    33.)  The fact that Noval seeks unspecified damages that he hopes to prove is a judicial admission

5    and is subject to judicial notice.  Thus, according to Noval, his claim includes unknown,

6    unliquidated, and unproven amounts.

7        **2.**        **Marco's Alleged Claim Is Subject to Bona Fide Disputes Based on**

8                   **Judicial Admissions and Judicially Noticeable Facts**

9    Marco's judicial admissions and the judicially noticeable facts demonstrate that Marco's

10   claim is subject to at least the following bona fide disputes:

11   Marco admits that the amount of his claim in the Involuntary Petition is overstated and is

12   not recoverable as a matter of law.  In the Marco Complaint, Marco states that the amount listed in

13   the Involuntary Petition under penalty of perjury ($7,676,744.00) is *inaccurate*, and that the

14   correct amount is approximately $700,000 less.  (*See* RJN, Ex. 7 at Bates Stamp 91, ¶ 9, **"The**

15   **correct amount is $6,950,444.40**." (emphasis added).)  Marco's concession in the Marco

16   Complaint is a judicial admission that the amount of his claim is inaccurate.  For this reason alone,

17   Marco's claim is subject to a bona fide dispute.

18   Marco's judicial admissions prove that he has no claim against Jadelle.  Marco is taking

19   inconsistent positions in different forums to recover the same claim.  According to Marco, he

20   consigned jewelry to Mr. Rechnitz, as opposed to Jadelle.  (RJN, Ex. 7 at Bates Stamp 99, ¶ 33.)

21   Marco's position that he consigned the jewelry to Mr. Rechnitz, as opposed to Jadelle, constitutes

22   a judicial admission and is subject to judicial notice.  Thus, due to Marco's inconsistent statements,

23   Marco has no claim against Jadelle as a matter of law and Marco's alleged claim against Jadelle is

24   subject to a bona fide dispute.

25   Marco and First International are both seeking to recover, in part, the same claim.  Marco's

26   claim includes a particular item allegedly owned by First International.  (*See* RJN, Ex. 7 at Bates

27   Stamp 100, lines 9-10.)  However, Mr. Oved Anter has submitted a declaration asserting that this

28   same item is included in the jewelry he consigned to Jadelle.  (*See* Reply RJN, Ex. 4 at Bates

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "14", PAGE 279

Stamps 82, ¶ 5.)  The Petitioning Creditors have not disputed that both Marco and First International include the same item in their respective claims.  This undisputed fact evidenced by the judicial admissions of Marco and First International and the judicially noticeable facts demonstrate that both their claims are subject to bona fide disputes.

*Like Noval, Marco seeks damages that he has yet to quantify or prove.*  In the Marco Action, Marco is seeking damages to be proven at trial, but *at least* $6,950,444.40, plus treble damages, punitive damages, interest, and attorney's fees.  (*See* RJN, Ex. 7 at Bates Stamps 117-120, ¶¶ 90, 98, 104, and 105.)  Therefore, by Marco's own admission, his total claim has yet to be liquidated, quantified, or proven.

**3.    First International's Alleged Claim Is Subject to Bona Fide Disputes Based on Judicial Admissions and Judicially Noticeable Facts**

The Petitioning Creditors' judicial admissions and the judicially noticeable facts demonstrate that First International's claim is subject to at least the following bona fide disputes:

*As discussed above, First International and Marco are attempting to collect, in part, on the same claim.*  According to the Mr. Anter's declaration, First International's claim includes a piece of jewelry identified as "**13.62 PS D-VVSI** GIA, Harry Winston Mt/tr" in the amount of $1,200,000.  (*See* Reply RJN, Ex. 4, Anter Decl., at ¶ 5 (emphasis added); *see also id.*, at Bates Stamp 026.)  Marco's alleged claim includes the same piece of jewelry in the amount of $1,333,695.  (*See* RJN, Ex. 7 at Bates Stamp 100, lines 9-10; *see also* Reply RJN, Ex. 3, Marco Decl., at Bates Stamp 71, referencing "EID MT 5072 13.62 D/VVS1".)  Thus, the judicial admissions and judicially noticeable facts set forth in the Marco Complaint, the Marco Declaration, and the Anter Declaration establish that Marco and First International include the same piece of jewelry in their respective claims.  This is not disputed by the Petitioning Creditors.  As a matter of law, Jadelle cannot be required to pay the same claim twice.  The fact that both First International and Marco are seeking to recover on account of the same item creates bona fide disputes as to both claims.

*Like Noval and Marco, First International has taken inconsistent positions regarding the amount of its claim under penalty of perjury.*  Mr. Anter testifies that First International is

EXHIBIT "14", PAGE 280

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  allegedly owed $2,826,890.  (*See, e.g.*, Reply RJN, Ex. 4, Anter Decl., at 3, ¶ 4.)  However,

2  according to the Involuntary Petition, First International represents under penalty of perjury that

3  the amount of its claim is $1,976,255.  (*See* RJN, Ex. 1 at Bates Stamp 7.)  First International has

4  submitted conflicting statements under penalty of perjury regarding the amount of its claim.  First

5  Internationals' conflicting judicial admissions are proof that the amount it actually asserts is in

6  bona fide dispute.

7        In sum, each Petitioning Creditor's claim is subject to multiple specific bona fide disputes

8  as to liability or amount based on the Petitioning Creditors' judicial admissions and the facts that

9  are subject to judicial notice.  The Petitioning Creditors have not provided any substantive

10  argument to refute that these disputes exist.  The Petitioning Creditors' assertions that there is no

11  admissible evidence of the disputes asserted by Jadelle is *wrong.*  The Petitioning Creditors ask

12  this Court to ignore the consequences of their own actions and assertions.  Due to the judicial

13  admissions and judicially noticeable facts identified above, the legal conclusion in the Involuntary

14  Petition that the Petitioning Creditors are eligible to commence this case is not only *not* entitled to

15  an assumption of truth, but it is clearly inaccurate.  Thus, the Petitioning Creditors have failed to

16  meet the minimal threshold to state a claim that they are eligible under § 303.

17        In addition, the Petitioning Creditors' assertion that Jadelle did not dispute their respective

18  claims prior to filing the Motion is demonstrably false and raises serious questions, unfortunately,

19  regarding their credibility and candor with the Court.  The falsity of this assertion was squarely

20  demonstrated in Jadelle's opposition to the Petitioning Creditors' motion for a trustee.  (*See* Opp'n

21  to Mot. for Trustee at 9, lines 2-19.)

22

23  **V.    THE BANKRUPTCY RULES AND THE NINTH CIRCUIT DO NOT REQUIRE**

24  **AN ANSWER OR NOTICE TO CREDITORS**

25        Jadelle is not required to answer and the Court is not required to provide an opportunity for

26  creditors to join the Involuntary Petition.  The Petitioning Creditors' pleas to the contrary ignore

27  the plain language of the Bankruptcy Rules and Ninth Circuit law.  Bankruptcy Rule 1011

28  "expressly allows the alleged involuntary debtor to file a Civil Rule 12 motion *before answering*."

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "14", PAGE 281

1  *See In re QDOS, Inc.*, 607 B.R. 338, 345 (B.A.P. 9th Cir. 2019) (emphasis added).  By its express

2  terms, Bankruptcy Rule 1003 requires a list of creditors and that creditors be afforded an

3  opportunity to join in the petition only if and unless three elements are satisfied: (1) the petition is

4  filed by fewer than three creditors; (2) the putative debtor answers; and (3) the putative debtor

5  alleges the existence of 12 or more creditors.  The applicable portion of Bankruptcy Rule 1003

6  states as follows:

7  
8  
9  
10  
> If the answer to an involuntary petition filed by fewer than three creditors avers the existence of 12 or more creditors, the debtor shall file with the answer a list of all creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof. If it appears that there are 12 or more creditors as provided in § 303(b) of the Code, the court shall afford a reasonable opportunity for other creditors to join in the petition before a hearing is held thereon.

11  Fed. R. Bankr. P. 1003.

12      The Ninth Circuit has applied Bankruptcy Rule 1003 as it is expressly written.  In *Vortex*

13  *Fishing Systems, Inc.*, the petition was filed by four creditors.  *See In re Vortex Fishing Systems,*

14  *Inc.*, 277 F.3d 1057, 1063 (9th Cir. 2002).  One creditor withdrew and another joined.  *See id.*

15  With motions by two additional creditors to join the involuntary petition pending, the bankruptcy

16  courts dismissed the petition.  The bankruptcy court found that the claims of all four petitioning

17  creditors were subject to legal or factual disputes and that the debtor was generally paying its debts

18  as they came due.  *See id.*  The creditors appealed, asserting, among other arguments, that the

19  bankruptcy court was required to notify the debtor's creditors pursuant to Bankruptcy Rule

20  1003(b).  *See id.* at 1061.

21      The Ninth Circuit affirmed the bankruptcy court's decision.  The Ninth Circuit noted that

22  the Bankruptcy Rules require that "'[t]he court determine the issues of a contested [involuntary]

23  petition at the earliest practicable time and forthwith'. . . ."  *See id.* at 1061 (alterations in original).

24  According to the Ninth Circuit, the bankruptcy court is required to pause "in only one

25  circumstance" — the court must assure that creditors have a reasonable opportunity to join the

26  petition "when the alleged debtor's answer to the petition *filed by fewer than three petitioners*

27  asserts that the petition fails" because three petitioning creditors are required.  *See id.*  The Ninth

28  Circuit concluded:  **"[b]ecause more than three petitioners filed the initial involuntary**

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "14", PAGE 282

1 **petition, notification of other creditors was not required under the joinder provisions of**

2 **Bankruptcy Rule § 1003(b).**" *See id.* at 1072 (emphasis added.)

3          The BAP's decision in *QDOS* cannot contravene the Ninth Circuit's decision in *Vortex* and

4 does not support a conclusion to the contrary. In fact, the *QDOS* decision confirms that the

5 bankruptcy court can dismiss an involuntary petition without requiring an answer. In that case, the

6 putative debtor responded to the petition with a Rule 12(b)(6) motion to dismiss on the basis that

7 one of the three petitioners was not eligible and three petitioners were required. *See In re QDOS,*

8 *Inc.*, 607 B.R. 338, 341 (B.A.P. 9th Cir. 2019). The court was inclined to grant the motion, but

9 did not do so because another alleged creditor belatedly joined the petition. *See id.* Instead, the

10 bankruptcy court set the matter for trial. *See id.* However, the putative debtor did not file an

11 answer to the petition. In the BAP's view, the bankruptcy court implicitly denied the motion to

12 dismiss by setting the matter for trial and, thereby, triggered the putative debtor's requirement to

13 file an answer. *See id.* at 347. Because the bankruptcy court denied the motion to dismiss, the

14 dismissal of the petition without requiring an answer and compliance with Bankruptcy Rule 1003

15 was procedurally improper. *See id.* at 345, 347. However, the BAP's decision reflects that an

16 answer is required only if the motion to dismiss is *denied* (not before) and a trial is required. *See*

17 *id* at 345.

18          Here, the requirements of Bankruptcy Rule 1003(b) are inapplicable. First, Jadelle

19 contested the Involuntary Petition by the Motion, as opposed by an answer. Second, like the

20 petition in *Vortex Fishing System*, the petition was not filed by fewer than three petitioning

21 creditors. As such, notification of other creditors is not required under Bankruptcy Rule 1003(b).

22 Third, unlike the putative debtor in *QDOS*, Jadelle does not merely dispute that the case was

23 commenced with too few creditors. Rather, Jadelle has demonstrated that *none* of the Petitioning

24 Creditors are eligible. This is not a matter of an involuntary case filed by an insufficient number

25 of petitioning creditors, but by *no eligible petitioning creditors*. Fourth, as demonstrated herein,

26 this case can and should be dismissed by granting the Motion. A trial is not required to confirm

27 that bona fide disputes exist, but will only result in unnecessary costs and delay the inevitable.

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "14", PAGE 283

1    In sum, none of the alleged procedural hurdles advanced by the Petitioning Creditors

2    prevent the Court from granting the Motion now.  Jadelle properly contested the Involuntary

3    Petition by a Rule 12(b)(6) motion as is its right to do.  Jadelle is not required to answer and

4    creditors are not entitled to any opportunity to join prior to the Court's adjudication of the Motion.

5    There is simply no impediment to granting the Motion at this time.

6

7    **VI.    THE INVOLUNTARY PETITION MUST BE DISMISSED BECAUSE THE**

8    **PETITIONING CREDITORS COMMENCED THIS CASE IN BAD FAITH**

9    **A.    The Court May Dismiss the Involuntary Petition Because it was Commenced**

10    **in Bad Faith**

11    An involuntary petition may be dismissed for bad faith.  Bankruptcy courts, including

12    those in the Ninth Circuit and within this District, have dismissed involuntary bankruptcy cases

13    commenced in bad faith.  *See, e.g.*, *In re WSB-RSK Venture*, 296 B.R. 509, 514 (Bankr. C.D. Cal.

14    2003); *In re Mi La Sul*, 380 B.R. 546, 557 (Bankr. C.D. Cal. 2007); *In re U.S. Corp.*, 2011 WL

15    1900416, at *3 (Bankr. D. Ariz. 2011); *In re Macke Int'l Trade, Inc.*, 370 B.R. 236, 247–48

16    (B.A.P. 9th Cir. 2007) (upholding the bankruptcy court's dismissal of an involuntary petition

17    pursuant to § 305 based on the totality of the circumstances, including findings that there was

18    pending litigation in another forum that would be more appropriate to resolve the parties' disputes

19    and that, in commencing the involuntary case, the petitioning creditors were forum shopping).

20    Courts have also granted or upheld pre-answer dismissal motions based on bad faith.  *See In re*

21    *WSB-RSK Venture*, 296 B.R. at 512, 514; *see also In re Valdez*, 250 B.R. 386, 395 (Bankr. D. Or.

22    1999) (affirming bankruptcy court's dismissal for bad faith under § 707(a)).

23    The Petitioning Creditors' assertion that the Ninth Circuit does not recognize bad faith as a

24    basis for dismissal of an involuntary petition is not an accurate articulation of the law.  (*See* Opp'n

25    at 3, lines 7-9.)  In an unpublished decision, the Ninth Circuit has upheld the dismissal of

26    involuntary petitions filed in bad faith where the bankruptcy court found that the petitioners failed

27    to "conduct a reasonable inquiry into the relevant facts and pertinent law before commencing the

28    involuntary actions."  *See In re Miles*, 156 Fed. Appx. 981, 984 (9th Cir. 2005) (J. Bezos

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   concurring).  Moreover, while the Ninth Circuit has not addressed this particular issue one way or

2   the other in a published decision, it has recognized that bad faith constitutes cause for purposes of

3   dismissing a chapter 11 case.  *See In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994) (recognizing that

4   "courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition

5   establishes cause for dismissal.").

6        Dismissing an involuntary case commenced in bad faith is not contrary to the Code or the

7   Supreme Court's holding in *Law v. Siegel*.  In that case, the Supreme Court held that § 105 of the

8   Code could not be used to surcharge the debtor's exemption in contravention of a "specific

9   provision of the Code."  *See Law v. Siegel*, 571 U.S. 415, 422 (2014).  Dismissal of an involuntary

10  petition is not contrary to any specific provision of the Code.

11       The Supreme Court's holding in *Law* must also be read with its earlier decision in

12  *Marrama v. Citizens Bank of Massachusetts*.  In *Marrama*, the Supreme Court held that a

13  bankruptcy court may deny a chapter 7 debtor's request to convert his or her case to chapter 13

14  based on pre-petition bad faith.  To the Supreme Court, the "practical effect" of finding that a

15  chapter 13 case could be dismissed based on pre-petition bad faith conduct was "tantamount to a

16  ruling that the individual does not qualify as a debtor under Chapter 13."  *See Marrama*, 549 U.S.

17  365, 373-74 (2007).  Moreover, the Supreme Court found that nothing in the text of the applicable

18  Code provisions (§§ 706 or 1307(c)) "limits the authority of the court to take appropriate action in

19  response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled

20  to the relief available to the typical debtor."  *See id.* at 374-75.  The Supreme Court held that the

21  broad authority granted to bankruptcy judges under § 105 to prevent abuse of process was "surely

22  adequate to authorize an immediate denial of a motion to convert. . . . ."  *See id.* at 375.

23       Read together, the Supreme Court's decisions in *Law* and *Marrama* support the ability of a

24  bankruptcy court to dismiss an involuntary petition filed in bad faith.  Dismissing an involuntary

25  petition filed in bad faith does not violate the holding in *Law* because it does not contravene any

26  specific provision of the Code.  Rather, consistent with the rationale in *Marrama*, nothing in the

27  text of § 303 limits the authority of the bankruptcy courts to take appropriate action in response to

28  bad faith conduct by petitioning creditors.  Moreover, the Supreme Court recognized that, at least

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "14", PAGE 285

1  in the context of a voluntary chapter 13 petition, dismissal of a petition filed in bad faith is proper.

2  Thus, dismissing an involuntary petition filed in bad faith is consistent with the Supreme Court's

3  jurisprudence.

4      The express language of § 303 supports the position that an involuntary case commenced

5  in bad faith can be dismissed.  Section 303(i)(2) authorizes a court to award a debtor proximately-

6  caused and punitive damages against petitioners that file an involuntary case in bad faith.  *See* 11

7  U.S.C. § 303(i)(2).  This provision implies that an involuntary petition must be filed in good faith,

8  and, further, that the case can be dismissed if it is not.  *See In re WSB-RSK Venture*, 296 B.R. 509,

9  513 (Bankr. C.D. Cal. 2003).  The fact that the filing of an involuntary petition in bad faith is so

10  egregious to warrant punitive damages upon dismissal, reinforces the position that it is a basis for

11  dismissal in the first instance.  Under the Petitioning Creditors' rationale, a court would be

12  required to allow an admitted bad faith filing to proceed provided the petitioners met the eligibility

13  requirements in § 303.  There is no principled reason to exclude involuntary petitions from the

14  years of jurisprudence recognizing that petitions must be filed in good faith and that bankruptcy

15  courts have the inherent authority to address abusive filings.

16      As is becoming an unfortunate pattern, the Petitioning Creditors' authority to the contrary

17  is questionable as follows:

18  ▪    The bankruptcy court in *In re Colon* did not hold that the Supreme Court's decision

19      in *Law v. Siegel* prevented it from dismissing an involuntary case for bad faith.

20      Rather, the court *dismissed the involuntary petition*.  *See In re Colon*, 558 B.R. 563,

21      568 (Bankr. D.P.R. 2016).  The court concluded that, after *Law v. Siegel*, it could

22      not save an involuntary petition filed by less than the required number of

23      petitioning creditors based on a judicially created "special circumstances exception.

24      . . ." *See id.* at 564, 568.

25  ▪    The quoted statement in *In re Kidwell* that "the statute makes plain that bad faith is

26      not relevant unless consequential and punitive damages are under consideration"

27      was to highlight the fact that a finding of bad faith is not necessary to award

28      attorney's fees upon dismissal (and, therefore, petitioning creditors should expect to

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "14", PAGE 286

1    pay the alleged debtor's fees), and was not a statement that a petition filed in bad

2    faith cannot be dismissed. *See In re Kidwell*, 158 B.R. 203, 217 (Bankr. E.D. Cal.

3    1993).

4    ▪  In *Kennedy*, the court stated that a finding of bad faith is inappropriate where the

5       petitioner meets the requirements under § 303.  However, the court also stated that

6       "many courts have read a good faith requirement into the bankruptcy code." *See In*

7       *re Kennedy*, 504 B.R. 815, 824 (Bankr. S.D. Miss. 2014).  The court concluded,

8       after extensive analysis, that the petitioners in that case did not commence the

9       involuntary case in bad faith. *See id.* at 824-28.

10    ▪  The quotes attributed to the Eighth Circuit's decision in *Watt* are not found in that

11       case.  The *Watt* decision involved the analysis of the Real Estate Settlement

12       Procedures Act, and not § 303 (or any other provision) of the Bankruptcy Code.

13       *See Watt v. GMAC Mortg. Corp.*, 457 F.3d 781, 782 (8th Cir. 2006).  A similar

14       problem occurred with a Ninth Circuit cite in the Petitioning Creditors' motion for a

15       trustee.  (*See* Opp'n to Mot. for Trustee at 22-23, lines 18-3.)

16    **B.**  **The Evidence Before the Court Demonstrates that the Petitioning Creditors**

17       **Filed the Case in Bad Faith**

18       The existence of bad faith is governed by an objective test.  Under the objective test, bad

19    faith exists if a reasonable person would believe that the subject conduct constitutes bad faith.  *See*

20    *In re Wavelength, Inc.*, 61 B.R. 614, 620 (B.A.P. 9th Cir. 1986).

21       Courts seem to uniformly recognize that commencing an involuntary petition without first

22    exhausting state law remedies constitutes bad faith. *See In re Smith*, 243 B.R. 169, 198 (Bankr.

23    N.D. Ga. 1999) (finding that bad faith existed where the petitioning creditor "made no effort to

24    exhaust its state court collection remedies" and filed the case "as a means to avoid collecting its

25    debt under" applicable state law); *see also Doane v. Friendship Airways Leasing, Inc.*, 2012 WL

26    94487, at *2 (S.D. Fla. 2012) (dismissing a petition where the court found the petitioning creditor

27    filed the petition as his "first choice, not his last"); *In re Spade*, 269 B.R. 225, 229 (D. Colo. 2001)

28    (dismissing an involuntary petition filed as "a self-serving litigation tactic to control the forum and

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "14", PAGE 287

1  enlist a trustee to conduct and pay for discovery into the Debtor's affairs.").  Dismissing an

2  involuntary bankruptcy case commenced without first exhausting state law remedies is consistent

3  with the Ninth Circuit's position that an involuntary case "should be a measure of last resort . . . ."

4  *See Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 707 (9th Cir. 2004).

5  　　　The Petitioning Creditors' blasé attitude toward forum shopping is contrary to the cases

6  they cite.  In *Kennedy*, the court found that, unlike decisions involving petitioning creditors who

7  "failed to make any effort to exhaust their state court remedies[,]" the petitioner in that case

8  attempted to pursue state court collection remedies by *obtaining a judgment at trial* and then

9  seeking to collect.  *See In re Kennedy*, 504 B.R. 815, 826 (Bankr. S.D. Miss. 2014).  While the

10  court in *Synergistic Technologies* recognized that some permissible forum shopping exists (such

11  as, filing bankruptcy to stop a foreclosure), the court found that the petitioner in that case engaged

12  in bad faith forum shopping by attempting to divert pending litigation "to another forum, hopefully

13  with the free help of a bankruptcy trustee."  *See In re Synergistic Technologies, Inc.*, 2007 WL

14  2264700, at *7 (Bankr. N.D. Tex. 2007); *see also In re Cook*, 384 B.R. 282, 294 (Bankr. N.D. Ala.

15  2008) (noting a distinction between improper and proper forum shopping.)  Thus, contrary to the

16  Petitioning Creditors' assertion, not all forum shopping is permissible.

17  　　　Here, the Petitioning Creditors engaged in the type of forum shopping that all courts

18  recognize as bad faith.  Similar to the petitioning creditor in *Synergistic Technologies*, the

19  Petitioning Creditors are diverting pending litigation to the bankruptcy court without first

20  attempting to exhaust their state law collection remedies, hoping to obtain the "free help of a

21  bankruptcy trustee."  *See In re Synergistic Technologies, Inc.*, 2007 WL 2264700, at *7 (Bankr.

22  N.D. Tex. 2007).  Two of the Petitioning Creditors recently commenced lawsuits, which are in

23  their very early stages, and First International has not made any attempt to collect its disputed

24  claim under state law.  The fact that lawsuits are pending and their current status is subject to

25  judicial notice.  It cannot be seriously disputed that, in this case, state law remedies exist and were

26  not exhausted (under any definition of the word) prior to the filing of the Involuntary Petition.

27  　　　The Petitioning Creditors knew (or reasonably should have known) that they were

28  ineligible.  The Petitioning Creditors' assertion that Jadelle did not dispute their claims prior to

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "14", PAGE 288

1  filing the Motion is patently false.  (*See* Opp'n to Trustee Mot. at 9, lines  2-19.)  Moreover, the

2  Ninth Circuit has made clear that a dispute as to any portion of a claim disqualifies the petitioning

3  creditor.  *See Blixseth*, 942 F.3d at 1186.  The Petitioning Creditors could not have credibly filed

4  this case with the belief that they were eligible to commence it.  *See In re Mountain Dairies, Inc.*,

5  372 B.R. 623, 634 (Bankr. S.D.N.Y. 2007) ("That a claim could have been filed in good faith

6  when a substantial portion of that claim was the subject of a dispute on its face is untenable.")  In

7  fact, the Petitioning Creditors' attempts to understate their claims to avoid dispute is evidence that

8  they knew that disputes existed.  Filing a petition in the face of known bona fide disputes

9  constitutes bad faith.  *See, e.g., In re John Richards Homes Bldg. Co.,* 439 F.3d 248 (6th Cir.

10  2006) (holding that a petition was filed in bad faith given the overwhelming evidence of a bona

11  fide dispute).

12         The Petitioning Creditors did not file this case for a proper purpose.  The Petitioning

13  Creditors' assertion that there is no evidence of their motives ignores the timing of the case and

14  their statements before this Court.  First, the Petitioning Creditors filed this case only after the

15  Noval Action was temporarily stayed.  Second, the Petitioning Creditors' assertion in the

16  Opposition that they are not seeking to abridge any constitutional rights of Jadelle is contradicted

17  by their statement in their motion for the appointment of an interim trustee that sidestepping the

18  court-ordered stay is exactly what they are trying to do.  (*See* Trustee Mot. at 7, line 24 to 8, line 4,

19  stating that "an interim trustee can ignore and not be shackled by the multiple motions for stay. . .

20  .")  Commencing this case to avoid a stay of the underlying lawsuits of Marco and Noval

21  constitutes bad faith.  *See In re Anmuth Holdings*, 600 B.R. 168, 192 (Bankr. E.D. N.Y. 2019)

22  (stating that commencing an involuntary case to circumvent, preempt, or stay an adverse state

23  court decision is evidence of bad faith).

24         The Petitioning Creditors' assertion that there is no evidence that they have adopted

25  inconsistent positions is not credible and is squarely contradicted by their own statements under

26  penalty of perjury.  All three Petitioning Creditors have taken inconsistent positions regarding the

27  amount of their respective claims.  All three Petitioning Creditors also submitted inaccurate

28  testimony that neither Jadelle nor Mr. Rechnitz disputed their respective claims prior to filing the

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "14", PAGE 289

1   Motion in an effort to convince this Court that their claims are not subject to bona fide dispute.

2   (*See* Opp'n. to Trustee Mot. at 9, line 2-19.)  This is bad faith.  *See In re Kidwell*, 158 B.R. 203,

3   217 (Bankr. E.D. Cal. 1993) (stating that a materially false statement in support of involuntary

4   petition constitutes bad faith).

5

6   **VII.**   **THE INVOLUNTARY PETITION SHOULD BE DISMISSED WITHOUT LEAVE**

7   **TO AMEND**

8        The Involuntary Petition should be dismissed without leave to amend.  Any amendment

9   would be futile for two reasons.  First, the Petitioning Creditors' claims are subject to bona fide

10   disputes and no amendment will change that fact.  The Ninth Circuit's decision in *Blixseth* would

11   have no meaning if creditors could avoid its holding by listing, in the involuntary petition, a claim

12   in a lower amount than they actually assert.  Moreover, any further attempt by the Petitioning

13   Creditors to reduce their claims to become eligible does not eliminate any bona fide disputes, but,

14   rather, only confirms that disputes exist and "raises serious concerns over the legitimacy of" their

15   claims.  *See In re Mountain Dairies, Inc.*, 372 B.R. 623, 633-34 (Bankr. S.D.N.Y. 2007).

16        Second, no amendment will cure the Petitioning Creditors' bad faith.  Dismissing the

17   Involuntary Petition without leave to amend is consistent with the Ninth Circuit's policy that

18   involuntary petitions "should not be lightly undertaken" and "should be measures of last-resort."

19   *See Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 707 (9th Cir. 2004).  The Petitioning

20   Creditors should not be allowed to improperly commence this case, then try to fix it after the fact.

21   There is a strong policy in favor of creditors making a reasonable inquiry into the relevant facts

22   and pertinent law before commencing an involuntary petition.  *See Landmark*, 189 B.R. 290, 306

23   (Bankr. D.N.J. 1995) (noting that it has been generally recognized that "petitioning creditors

24   should carefully examine the risks undertaken in the filing of an involuntary petition.").  Because

25   this petition was so clearly improper, the Court should dismiss the case without leave to amend.

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "14", PAGE 290

**VIII.    JADELLE IS WILLING TO FILE A SEPARATE MOTION FOR FEES AND DAMAGES**

Jadelle disputes that its request for fees and damages is premature or requires a separate subsequent motion.  However, should the Court grant the Motion and dismiss this case, Jadelle has no objection to filing a separate motion for attorney's fees and proximately-caused and punitive damages.  The basis for Jadelle's request for fees and damages (such as, the Petitioning Creditors' bad faith) was properly at issue in connection with the Motion and has been fully briefed.  As such, the issue on Jadelle's subsequent motion should simply be the amount to be awarded to Jadelle.  Jadelle requests that the Court dismiss the case and reserve jurisdiction to determine the amount of Jadelle's fee and damage request.

**IX.    CONCLUSION**

Based on the foregoing, Jadelle respectfully requests that the Court grant the Motion, dismiss the involuntary petition, and award Jadelle attorney's fees, costs, and damages, including punitive damages, subject to proof.

Respectfully submitted,

DATED:  June 2, 2020                SMILEY WANG-EKVALL, LLP

By:    _/s/ Robert S. Marticello_
       ROBERT S. MARTICELLO
       MICHAEL L. SIMON
       Attorneys for Jadelle Jewelry and Diamonds,
       LLC.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "14", PAGE 291

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*): **Putative Debtor's Reply to Petitioning Creditors' Opposition to Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **06/02/2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Baruch C Cohen    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Robert S Marticello    Rmarticello@swelawfirm.com,
  gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- Neal Salisian    ECF@salisianlee.com
- Michael Simon    msimon@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **06/02/2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Via First Legal:
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/02/2020 | Lynnette Garrett | /s/ Lynnette Garrett |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

# EXHIBIT "15"

1  opportunity' to exercise their § 303(c) statutory power to join as petitioners . . . ." Id., at

2  1071.

3  　　　　Vortex Fishing, thus, underscores that all creditors must have a reasonable

4  opportunity to join in an involuntary petition where the number of petitioning creditors is

5  being challenged by the debtor.  It was only unnecessary in Vortex Fishing because, in a

6  consolidated hearing, the bankruptcy court correctly found that the involuntary debtor was

7  not in financial distress; joinder, thus, would have been a meaningless endeavor.  In sum,

8  once a trial is required to resolve issues in a contested involuntary proceeding, the

9  involuntary debtor must answer within 14 days.  See QDOS, 607 B.R. at 345 (a Rule

10  12(b)(6) motion is no substitute for a trial on dispositive issues, and a putative debtor

11  must answer an involuntary petition and file the requisite creditor list).

12  　　　　Nothing warrants a departure from this line of cases, especially since the

13  Petitioning Creditors are aware of scores of other creditors and victims of Jadelle's fraud.

14  The Debtor has no choice but to follow controlling law and not only answer the petition,

15  but submit its Rule 1003(b) creditor list.[3]

16  **IV.**

17  **THE MOTION IS DEVOID OF A SINGLE SHRED OF ADMISSIBLE EVIDENCE**

18  　　　　Even presuming that relief could be granted under Rule 12(b)(6), there is no

19  evidentiary basis for any of the Debtor's fanciful contentions.  Since the sworn testimony

20  of a convicted felon and swindler certainly would not be worth the paper it is written on,

21  and possibly would subject him to perjury charges, the Debtor instead relies on a host of

22  hand-selected pleadings from other courts in a fruitless attempt to create an evidentiary

23

24

25

26  _____

27  [3] Petitioning Creditors are aware of other creditors who may be interested in joining the involuntary petition
to prevent the Debtor and the Rechnitz's from further abusing the legal system and other innocent parties.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT "15", PAGE 293

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*): **Index of Exhibits in Support of Debtor's Emergency Motion Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **06/19/2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Baruch C Cohen    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- Sam S Leslie (TR)    sleslie@trusteeleslie.com, sleslie@iq7technology.com;trustee@trusteeleslie.com
- Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Robert S Marticello    Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- Neal Salisian    ECF@salisianlee.com
- Michael Simon    msimon@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **06/19/2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Via First Legal:
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/19/2020 | Lynnette Garrett | /s/ Lynnette Garrett |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**