Daniel A. Lev (CA Bar No. 129622)
  dlev@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for Victor Franco Noval, Peter Marco, LLC, and First International Diamond, Inc.

Ronald Richards (CA Bar No. 176246)
  ron@ronaldrichards.com
Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
Beverly Hills, California 90213
Telephone:  310.556.1001
Facsimile:  310.277.3325

Attorneys for Victor Franco Noval

Baruch C. Cohen (CA Bar No. 159455)
  baruchcohen@baruchcohenesq.com
Law Office of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
Telephone:  323.937.4501
Facsimile: 888.316.6107

Attorneys for Peter Marco, LLC and First International Diamond, Inc.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:20-bk-13530-BR |
| JADELLE JEWELRY AND DIAMONDS, LLC, | Chapter 7 |
| | **OPPOSITION TO GOVERNMENT'S MOTION FOR A LIMITED STAY OF DISCOVERY** |
| Debtor. | DATE: September 22, 2020<br>TIME:   2:00 p.m.<br>PLACE: Courtroom "1668" |

DAL 2705557v1 9/8/2020 (2:30 PM)

Creditors, Victor Franco Noval ("Noval"), Peter Marco, LLC ("Marco"), and First International Diamond, Inc. ("First International" and together with Noval and Marco, the "Creditors"), hereby submit their "Opposition to Government's Motion for A Limited Stay of Discovery" (the "Opposition"), in response to the "Government's Motion for A Limited Stay of Discovery; Memorandum of Points and Authorities; Declarations of Dan. G. Boyle and Special Agent Madison MacDonald" (the "Motion"), filed by the United States of America (the "Government"), and represent as follows:

## I.

## **PREFATORY STATEMENT**

Without identifying how a pending criminal investigation into non-debtors warrants even a limited stay of discovery, the Government seeks to stymie the chapter 7 trustee's ongoing investigation into the dissipation of tens of millions of dollars of cash and precious gems from this criminal enterprise. Not only is the basis of the stay founded on nothing more than speculative assumptions, but the scope and extent of the stay remains a mystery. And contrary to the Government's rather dismissive view of the rights of creditors, a stay would certainly prejudice the interests of Creditors and other victims.

As the chapter 7 trustee can certainly attest, a review of the Debtor's bank records, which the Trustee recently produced to Creditors in compliance with this Court's order, has revealed exactly the type of wide-scale fraud that prompted Creditors to file the involuntary petition. The records identify millions of dollars of cash being fraudulently transferred by the Debtor to the Rechnitz's personal accounts, as well as the accounts of friendly insiders and third parties. More disturbing, these transfers occurred during the time Creditors were owed tens of millions of dollars. Thwarting the trustee from further investigating this wide-spread fraud and pursuing the recovery of these transfers would be catastrophic, since it is simply an open invitation for the Rechnitz's and their cohorts to further place these transfers out of the trustee's reach.

To even suggest, therefore, that the "public's interest in a swift progression of Jadelle's bankruptcy proceedings is relatively minimal" demonstrates not only that the

Government is insensitive to creditors who are owed tens of millions of dollars, but that its requested relief is simply overbroad and unwarranted.  Forcing the trustee and creditors to sit on the sidelines while some ancillary criminal investigation weaves it way through the justice system will virtually eliminate any chance creditors have to a meaningful recovery.

In sum, not only is the Motion moot to the extent it fails to identify any discovery that is pending that would even touch on its investigation, but the Government's Motion will do much more harm than good.  As evidenced by the weekend Instagram post by Jona showing Justin Bieber wearing jewelry from his new company "Jadelle Jewelry of Beverly Hills," which he says should not be confused with "Jadelle Jewelry and Diamonds, LLC," the Rechnitz's view the Motion as a "get out of jail free" card which has given them the license to steal yet again.[1]

The opening of another "Jadelle" jewelry business, without any knowledge of, or approval by, the trustee, demonstrates that Jona's criminal conduct knows no bounds.  Jona keeps lying to the Government and has manufactured a series of lies to justify his stealing of millions of dollars.  Also, he has enlisted a business partner/family member to pay over $500,000 in legal fees for himself and Rachel.  Moreover, not only has the Government not even interviewed all of the Creditors regarding this fraud, but the jewelry recently recovered is only worth a couple of hundred thousand dollars, which is a drop in the bucket compared to the $30,000,000 that ran through the Debtor and the Rechnitz's accounts prior to the involuntary petition.

Astoundingly, the Rechnitz's are so convinced of their newfound sense of immunity that they are flouting it right in front of the Court, the trustee, the Government, and creditors.  Any intended benefit of the Motion, therefore, has been quickly dispelled by the Rechnitz's brazen behavior.  To use the Government's words, permitting a

---

[1] A true and correct copy of the Instagram post is attached hereto as Exhibit "A" and incorporated herein by reference.

tangential criminal investigation to interfere and undermine the trustee's administration of this case would be devastating to the public trust. Unless a stay can be significantly limited in scope and duration, the Motion must be denied.

## II.

## CREDITORS HAVE BEEN SIGNIFICANTLY PREJUDICED BY THE SEALING OF THE DECLARATION OF NOLAN FULLER AND THE MOTION SHOULD NOT EVEN BE CONSIDERED UNTIL IT IS FREELY SHOWN

Inexplicably, the Government is now interceding and interfering in the administration of the Debtor's case by seeking a "limited" stay of discovery until certain ancillary investigations into third parties are completed. The Government's Motion largely is based on the *in camera* submission of the declaration of special agent Nolan Fuller (the "Nolan Declaration"), which presumably lays the foundation for the requested limited stay. The Government, however, fails to provide compelling authority justifying a procedure which prevents Creditors from reviewing the Nolan Declaration in advance of the hearing on the Motion. Without an opportunity to review and comment on the Nolan Declaration, this Court cannot possibly consider the prejudicial relief the Government requests. At a minimum, the Court must permit Creditors and the trustee the right to review the Nolan Declaration *in camera* as well, should the Court be inclined to even consider the requested stay.[2]

Generally, the Ninth Circuit strongly favors maintenance of our traditional system of fair play in which both sides have notice of the arguments and evidence being used against them. See Ibrahim v. Department of Homeland Sec., 2012 WL 6652362, at *2 (N.D. Cal., Dec. 20, 2012). Moreover, this is not a criminal case, where the secrecy of an investigation may justify the requested *in camera* review. This is a civil bankruptcy case where, until this filing, the Government had not even made an appearance. Thus,

---

[2] Creditors were intending to oppose the Government's *ex parte* application to file the Nolan Declaration under seal, but the application was granted mere hours after it was filed.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

the Government's reliance on the single case of Pollard v. F.B.I., 705 F.2d 1151 (9th Cir. 1983) is of no benefit to the Government's position that only the Court should have the benefit of seeing the alleged evidentiary basis for the Motion.

In fact, in Pollard, the government was relying on a specific statute which itself provided for *in camera* inspection of the documents sought to be disclosed. See 5 U.S.C. § 552(a)(4)(B). In addition, the target himself requested *in camera* review of the documents; it was only the *ex parte* nature of the review to which he objected. Here, there is no statute authorizing the Nolan Declaration to be filed under seal, and there is no evidence that the Rechnitz's or the Debtor are even the subject of the alleged investigation. Therefore, Pollard does not permit the type of exclusionary process the Government requests.

In addition, a party seeking to file a confidential document under seal must file a motion to seal and must comply with the Local Rules of Practice and the Ninth Circuit's directives in Kamakana v. City and County of Honolulu, 447 F.3d 1172 (9th Cir. 2006). As noted, there is a strong presumption of public access to judicial files and records and discovery papers in civil cases may not generally be filed with the court. Civil discovery is presumptively public, and may be disclosed in the absence of a protective order. The Ninth Circuit has held that parties seeking to maintain the confidentiality of documents attached to most non-dispositive motions must show good cause exists to overcome the presumption of public access. Kamakana, 447 F.3d at 1179-80.

Parties seeking to maintain the secrecy of documents attached to dispositive motions must show compelling reasons to overcome the presumption of public access.. And if a sealing order is permitted, it must be narrowly tailored. Press-Enterprise Co. v. Superior Ct. of California, 464 U.S. 501, 512 (1984). The sealing of entire documents is improper when any confidential information can be redacted while leaving meaningful information available to the public. In re Roman Catholic Archbishop of Portland, 661 F.3d 417, 425 (9th Cir. 2011).

Moreover, pursuant to Canon 3(a)(4) of the Code of Conduct for United States Judges, "a judge should not initiate, permit, or consider *ex parte* communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers." That Canon further directs that if an *ex parte* communication is received that "bear[s] on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested."

Here, the Government's Motion is almost entirely based on a declaration which only has been seen by the Court. If the Motion is considered without the opportunity for Creditors and the trustee to review, and later comment on, the veracity of the Nolan Declaration, this would amount to an improper *ex parte* communication. See In re Complaint of Judicial Misconduct, 425 F.3d 1179, 1188, n. 4 (9th Cir. 2005) (stating that "[e]x parte communications are those that involve fewer than all of the parties who are legally entitled to be present during the discussion of any matter.")

In sum, court proceedings and records of those proceedings are open to the public, barring exceptional circumstances. This qualified right of public access is deeply rooted in both the common law and the First Amendment. See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589 (1978); Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.), 21 F.3d 24, 26 (2d Cir. 1994). As the Second Circuit observed, "[w]ithout publicity, all other checks [on government power] are insufficient: in comparison of publicity, all other checks are of small account." New York Civil Liberties Union v. New York City Transit Authority, 684 F.3d 286 (2d Cir. 2012). See also In re Bell & Beckwith, 44 B.R. 661, 664 (Bankr. N.D. Ohio 1984) (noting that a "policy of open inspection ... is fundamental to the operation of the bankruptcy system and is the best means of avoiding any suggestion of impropriety that might or could be raised.").

Exceptions to public access are construed narrowly and a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need. See Ferm v. United States Trustee (In re

Crawford), 194 F.3d 954, 960, n. 8 (9th Cir. 1999) (noting that "exceptions ... are construed narrowly"); In re Analytical Sys., Inc., 83 B.R. 833, 835 (Bankr. N.D. Ga. 1987) (noting that "[b]ased on Section 107 and the strong precedent of federal case law, this court concludes that sealing judicial records is appropriate only in very limited situations."). Any party in interest seeking to restrict public access to bankruptcy court records has the burden of proof. Chase v. Chase (In re Chase ), 2008 WL 2945997, at *6 (Bankr. S.D.N.Y. July 25, 2008).

The Motion, therefore, cannot even be considered until Creditors and the trustee have been allowed to review and challenge the Nolan Declaration.

### III.
### EVEN IF THE COURT HAS THE POWER TO STAY THIS CASE, IT SHOULD NOT EXERCISE THAT POWER HERE

The Motion correctly notes that bankruptcy courts have the general authority to stay bankruptcy proceedings when it may implicate a debtor's Fifth Amendment rights. See In re Zinnel, 2013 U.S. Dist. LEXIS 46114, 2013 WL 128439 (E.D. Cal. 2013). However, it is obvious from the Motion that neither the Debtor nor the Rechnitz's appear to the be the subjects of the ongoing criminal investigation. As such, the litany of cases cited in the Motion, which exclusively involve potential Fifth Amendment concerns of the debtor or its principals, are irrelevant to the Motion.

Any overlap in the criminal investigation and this case, therefore, is tenuous, at best, and certainly does not warrant a stay which will be severely prejudicial to the legitimate rights of creditors. If and when the investigation reaches the point that serious concerns arise, then the Government is free to come back to this Court and seek whatever relief it deems necessary. However, the Government cannot be permitted to pre-judge its own investigation and blindly contend that a stay is required because at some point in the future certain targets or witnesses may assert their own Fifth Amendment rights. When weighed against the significant impact this Motion will have on the trustee's investigation into the Debtor's affairs and the millions of dollars of missing

cash and precious gems, the Government's speculative concerns must take a back seat to the trustee's statutory duties.

And contrary to the Government's myopic view that since this case was only filed in April any proposed delay cannot be characterized as highly prejudicial, the recent actions by the Rechnitz's undermines this argument. Here, the Rechnitz's fraud has been going on for years, and the trustee is just now beginning to understand the breadth and scope of this wide-scaled fraud. The first wave of bank records reveal countless intrafamily transfers of millions of dollars of cash during the period Creditors and other victims were chasing down their consigned jewelry and proceeds from alleged sales. A stay would do nothing more than embolden the Rechnitz's and their co-conspirators by giving them even more time to transfer these funds and gems.

Although the Government says that these concerns can be mitigated by the limited nature of the Government's request, since it is not seeking a complete stay of the action or a complete stay of discovery, the Government never states what it exactly means when it says it only seeks a "limited" stay. Perhaps if the Government was more forthcoming and set forth with specificity what it exactly seeks to stay, and for what period of time, the parties could reach consensus. But without any specifics, Creditors have no assurance that the stay will not dramatically impair the trustee's ultimate pursuit and recovery of these unauthorized transfers.

The simple statement that if a stay is not granted, one or more parties will likely to have choose between involving the Fifth Amendment privilege and potentially negatively impacting the bankruptcy case itself is an empty threat. As the Motion reveals, there are no indictments, and other than mentioning that the Rechnitz's and Noval may, at some point, be required to provide testimony regarding certain transfers, there is nothing indicating why some future event should result in even a limited stay. In fact, Noval, one of the identified potential witnesses, opposes the Motion. The fact that Jona, who is neither a member nor principal of the Debtor, attended the first meeting of creditors and asserted his Fifth Amendment privilege also is irrelevant to whether a stay

is imposed on the parties.

In this regard, while the former Bankruptcy Act expressly conferred broad immunity on a debtor, the current Bankruptcy Code eliminated that immunity. See Bankruptcy Act § 7(a)(10) (former 11 U.S.C. § 25(A)(10)). Since a debtor's bankruptcy testimony can be used in criminal proceedings, a debtor may invoke the Fifth Amendment privilege against self-incrimination in a bankruptcy proceeding unless granted immunity. "A valid assertion of [this] privilege exists where a witness has reasonable cause to apprehend a real danger of incrimination." In re Morganroth, 718 F.2d 161, 167 (6th Cir. 1983) (citing Hoffman v. United States, 341 U.S. 479, 71 S. Ct. 814, 818, 95 L. Ed. 1118 (1951)). Accordingly, the witness must face "a 'real danger,' and not a mere imaginary, remote or speculative possibility of prosecution." Morganroth, 718 F.2d at 167 (citing United States v. Apfelbaum, 445 U.S. 115, 100 S. Ct. 948. 955-56, 63 L. Ed. 2d 250 (1980)). Nothing in the Motion suggests that either of the Rechnitz's are the targets of an criminal investigation, such that their Fifth Amendment concerns should not rightly be used to legitimize a stay meant to stop an investigating into their pre-petition fraud.

Moreover, when a witness's assertion of the privilege is challenged, the court must determine whether the witness's silence is justified. Hoffman v. United States, 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1118 (1951). See also Bank One of Cleveland, N.A. v. Abbe, 916 F.2d 1067 (6th Cir. 1990) (it is for the presiding court to conduct a particularized inquiry and decide if a witness's silence is justified); United States v. Gibbs, 182 F.3d 408, 431 (6th Cir. 1999) (a trial court has broad discretion to determine whether or not a claim to the privilege has merit). "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." Hoffman, 341 U.S. at 486-87. See also Morganroth, 718 F.2d at 169 ("[S]ufficient evidence [to establish a foundation for assertion of Fifth Amendment protection] is presented by a

1 witness if a court can, by the use of reasonable inference or judicial imagination,
2 conceive a sound basis for a reasonable fear of prosecution."). In evaluating the
3 invocation of the privilege, the trial judge "must be governed as much by his personal
4 perception of the peculiarities of the case as by the facts actually in evidence." Hoffman,
5 341 U.S. at 487 (quoting Exparte Irvine, 74 F. 954, 960 (C.C.S.D. Ohio 1896).

6 When the witness cannot establish a credible basis for his assertion that
7 certain testimony may incriminate him, the privilege is not proper and the witness can be
8 compelled to testify. In re Blan, 239 B.R. 385, 393 (Bankr. W.D. Ark. 1999). Here, it is
9 not evident at all from the Motion that the Rechnitz's assertion of the Fifth Amendment
10 privilege will have any impact on the Government's parallel investigation. If such
11 concerns reveal themselves at a later date, the Motion can be resuscitated.

12 In short, the Government fails to demonstrate with any specificity how
13 discovery conducted by the trustee or Creditors in order to uncover assets and potential
14 avoidance power claims will have a negative impact on the federal criminal investigation.
15 The mere fact that the trustee and Government may be looking into some of the same
16 pre-petition transactions does not automatically lead to the conclusion that this
17 discoverable information is so sensitive that only the Government should be privy to its
18 disclosure.

### IV.

### CONCLUSION

21 The Government's Motion is devoid of any controlling authority or evidence
22 warranting the draconian relief it seeks. Creditors must be afforded the opportunity to
23 review, and as necessary, challenge the statements contained in the Nolan Declaration in
24 order to adequately respond to the Motion. Absent such a permissive review, the Motion
25 must be denied since the public interest is to allow bankruptcy cases to be timely
26 administered without interference from non-creditors who have no pecuniary interest in
27 the ultimate outcome of the case. The Government's Motion will harm this public interest
28 since there is no evidence that the trustee's investigation into the Debtor's pre-petition

conduct will have any negative effect on the Government's separate criminal investigation. Speculative assumptions of what might occur if certain witnesses invoke their Fifth Amendment privilege is insufficient to stop this case dead in its tracks.

DATED: September 8, 2020         **Sulmeyer**Kupetz
                                  A Professional Corporation


                                  By: /s/ *Daniel A. Lev*
                                  Daniel A. Lev
                                  Attorneys for Victor Franco Noval, Peter Marco, LLC, and First International Diamond, Inc.

DATED: September 8, 2020         Law Offices of Ronald Richards & Associates, APC


                                  By: /s/ *Ronald Richards*
                                  Ronald Richards
                                  Attorneys for Victor Franco Noval

DATED: September 8, 2020         Law Office of Baruch C. Cohen, APLC


                                  By: /s/ *Baruch C. Cohen*
                                  Baruch C. Cohen
                                  Attorneys for Peter Marco, LLC and First International Diamond, Inc.

# EXHIBIT A

12:25 

Done    16 of 16



10,550 likes

**jadellebh** The one and only @justinbieber looking fly in his @jadellebh jewelry for his new hit with @djkhaled and @champagnepapi #popstar  Like Justin and many others Jadelle Jewelry of Beverly Hills has had its ups and downs and bumps in the road. Throughout the pandemic and other situations that arose Jadelle has always catered to its loyal clientele. We keep pushing and are here to stay. We shall prevail. Love always wins. Thank you to our customers and your loyalty. ❤️ Jadelle Jewelry of Beverly Hills. (Not to be confused with Jadelle Jewelry and Diamonds, LLC)

16 hours ago

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION TO GOVERNMENT'S MOTION FOR A LIMITED STAY OF DISCOVERY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) September 8, 2020  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Jessica L Bagdanov**   jbagdanov@bg.law, ecf@bg.law
- **Baruch C Cohen**   bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- **Carolyn A Dye**   trustee@cadye.com
- **Sam S Leslie (TR)**   sleslie@trusteeleslie.com, SLESLIE@ECF.AXOSFS.COM;trustee@trusteeleslie.com
- **Daniel A Lev**   dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- **Robert S Marticello**   Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- **Ronald N Richards**   ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- **Neal Salisian**   ECF@salisianlee.com
- **Michael Simon**   msimon@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Derrick Talerico**   dtalerico@ztlegal.com, maraki@ztlegal.com,sfritz@ztlegal.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **David B Zolkin**   dzolkin@ztlegal.com, maraki@ztlegal.com,sfritz@ztlegal.com

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) September 8, 2020 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Attorneys for United States of America
Dan G. Boyle, Esq.
Assistant United States Attorney
1400 United States Courthouse
312 North Spring Street
Los Angeles, California 90012

☐ Service information continued on attached page.

CC 2704248v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION (if needed):**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) September 8, 2020, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Served By Email:**
Attorneys for United States of America
Dan G. Boyle, Esq.
Email: Daniel.boyle2@usdoj.gov

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 8, 2020 | Cheryl Caldwell | /s/Cheryl Caldwell |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CC 2704248v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**