```
CAROLYN A. DYE (SBN 97527)
15030 Ventura Blvd.
Suite 527
Sherman Oaks, CA 91403
818/287-7003 - Telephone
Email: cdye@cadye.com

Attorney for Sam S. Leslie,
Chapter 7 Trustee
```

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>JADELLE JEWELRY AND DIAMONDS, LLC,<br><br>               Debtor. | Case No. 2:20-bk-13530-BR<br>     [Chapter 7]<br><br>REPLY TO OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION FOR AN ORDER APPROVING DISMISSAL OF CHAPTER 7 CASE AND FOR PAYMENT IN COMPROMISE AND SETTLEMENT OF ADMINISTRATIVE FEES; DECLARATIONS OF SAM S. LESLIE AND JESSICA BAGDANOV IN SUPPORT THEREOF<br><br>Date: June 15, 2021<br>Time: 10:00 a.m<br>Place: Courtroom 1668<br>       255 East Temple Street<br>       Los Angeles, CA 90012 |

TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE AND ALL INTERESTED PARTIES:

    Sam S. Leslie, by and through his counsel, hereby files this Reply to the Opposition to his Motion for an Order Approving Dismissal of Chapter 7 Case and for Payment in Compromise and Settlement of Administrative Fees (the "Motion"). The opposition was filed by Victor Franco Noval, Peter Marco, LLC

and First International Diamond, Inc. (the "Petitioning Creditors").

In summary, the only opposition to the Motion was filed by the very parties who started this case, the Petitioning Creditors. If the case is dismissed, these Petitioning Creditors will not be prejudiced as they will still have the very same claims the Court found were disputed and which can be litigated in other courts. The Opposition takes the same near hysterical tone as the Petitioning Creditors have displayed throughout this entire case. In short, the Petitioning Creditors admonish the Trustee for not doing enough to administer the yet to be identified assets in this case. For whose benefit? To date, only the Petitioning Creditors. At whose risk and expense? The Trustee and his professionals. The Petitioning Creditors do not identify any immediate or potential harm to them if the case is dismissed, therefore, the Petitioning Creditors' concerns are an insufficient basis for the Court to deny this Motion.

Petitioning Creditors would have this Court believe the Trustee did nothing to attempt to identify assets in this case. That is totally incorrect.

At the outset, there were no identified assets in this case, no cash in accounts or inventory to be turned over. Trustee sought records from the Debtor and was given what he was told existed. Trustee then sought confirmation of that information by requesting, via subpoenas, bank records. Letters were initially sent to vendors and persons identified from the Debtor's records advising them of the bankruptcy filing and requesting information about any claim they held. There was only one reply, by

telephone, and that person said he would not file a claim for his company. Trustee's accounting team performed an analysis of the banking transactions, attempted to reconstruct a general ledger (as none existed) and then later through his litigation counsel sent demand letters (a typical preference process) and contacted and interviewed potential creditors who replied.  Efforts to interview the Debtor's principals were made impossible by their assertion of the fifth amendment privilege, ironically, made necessary in their view by the ongoing criminal investigation involving one of the <u>same</u> creditors telling the Court that the Trustee has not done enough.

Trustee takes his responsibilities very seriously and is not one to "give up" on a case even if prospects for a recovery are slim. Nevertheless, having not identified any creditors with undisputed claims who would likely be served by continuing and in light of the mounting administrative expenses with no cash to pay them, Trustee made the decision in his best business judgment that accepting the settlement payment and, in effect, sending the parties back to their respective corners to fight in other venues, was the best option.

The Trustee notes that the Opposition is not supported by any evidence other than the Declaration of Baruch Cohen to the effect that he represents creditors other than the Petitioning Creditors who never filed claims because there was no bar date set. But those same creditors pushed back against the demand letters sent to them, through Baruch Cohen, with defenses (discussed below).

///

-3-

The Trustee is not surrendering any assets or inventory that would be abandoned to the Debtor upon a dismissal. The settlement and dismissal merely partially fills up the proverbial hole created by the filing of this case and the efforts made to administer it, largely for the possible benefit of the Petitioning Creditors.

Parsing through the hyperbole, the arguments made in the Opposition are the following, each of which is addressed below:

1) they question the source of the funds for the settlement;

2) no bar date was set;

3) having identified "$50,000,000 in potentially avoidable transfers," it is premature to abandon these by a dismissal;

4) the Court "realized" this was a criminal enterprise being used as a front by a convicted felon;

5) Trustee could use other information sources than the Rechnitzes to administer this case.

**Source of Funds**. One requirement for accepting the settlement was the Trustee's insistence that the funds be "sourced." In agreeing to move forward, Trustee relied on the representations of the attorney for the Rechnitzes for the source of funds. David Zolkin has or will file shortly declarations from the two parties who loaned money to JSR Capital, LLC and McCadden Property, with the understanding that Jona Rechnitz would use those funds to satisfy the settlement amount. Trustee has no factual basis to believe that either Jona or Rachel Rechnitz was the source of these funds, and no evidence to that effect has been provided by the Petitioning Creditors.

///

**Bar Date.** Trustee explained in the Motion that no Notice of Assets was filed by him as he had not yet identified any assets. The filing of such notice would trigger the Clerk issuing a Notice of bar date. This was simply not necessary to have been done at this stage of the case. Indeed, persons who had done business with the Debtor knew about the case because of letters sent by Trustee's counsel. Further, where no bar date has been set, creditors can always file a proof of claim, but none has done so. Even if Trustee had filed a Notice of Assets, it would have been fairly useless because the Clerk would not have had a "list" of creditors to send it to. Trustee has no reason to believe that issuing a notice of assets would have managed to reach any potential creditor or result in claims being filed.

**Avoidable Transfers.** Trustee assumes that the statement from the Opposition that Trustee identified "$50,000,000 in potentially avoidable transfers" comes from the fee application filed by CBIZ Valuation Group. That statement was not a representation of a predictable result by CBIZ, but merely reflection of the mathematical sum of the disbursements made by Debtor (and secondary disbursements traced from those disbursements) and describes the tasks that were performed to support the fee request. That calculation did not take into account any consideration received by Debtor for the disbursements or defenses that could be raised to claims asserted by the Trustee on account of them. In other words, this figure reflects the gross sum of the transactions that had been scheduled by Cbiz in its work. Having that analysis in hand, the Trustee relied on advice he later received from his special

litigation counsel whose opinion was based on the responses to demand letters sent to identified target defendants. The target defendants provided information supporting their contentions that the funds they received were for legitimate business purposes or they otherwise had legitimate defenses to the Trustee's claims. (Target defendants were persons who received $50,000 or more from the Debtor or other persons of interest.) In the responses to the demand letters sent to the target defendants, there was no clear pattern suggesting that funds were being improperly paid. What was clear was that recoveries would require a significant amount of professional fees to bring the claims to a conclusion as the recipients were adamant (and most were represented by counsel) they intended to defend against any claims.

Without disclosing any of the particulars which were provided as confidential settlement discussions, Mr. Cohen responded to two of these demand letters sent by Trustee's counsel. On behalf of those clients who he says in his Declaration have claims against the Debtor, he responded that his clients did **not** receive avoidable preferences, but instead had a running balance in which his clients sold jewelry and received payments when the jewelry was sold by the Debtor. He rejected any inference that the funds were fraudulent transfers or otherwise subject to claims of the Trustee. These responses were typical of the responses to the demand letters sent by special litigation counsel. (See Declaration of Jessica Bagdanov filed herewith.)

The Trustee would not have agreed to this dismissal if there was any significant reason not to do so. But, having spent many hours and thousands of dollars in professional fees analyzing the

information available to them, the Trustee is not persuaded there is any prospect for recoveries to justify the risks of further effort and expense.

**Criminal Enterprise**. The Court ordered a list of creditors be filed. The Debtor's principals, the Rechnitzes, declined to comply based on their Fifth Amendment assertions, and the Court then entered an Order for Relief. That is not the same as a finding the Debtor had been "operated as a criminal enterprise by a convicted felon," as asserted by the Petitioning Creditors. Petitioning Creditors provide no evidence to support that assertion, but apparently just expect the Court to take their word for it.

**Administration without Testimony of Debtor's Principals**.

Certainly, administering a Chapter 7 case is made easier by obtaining the cooperation of a debtor's principals.  Where, as here, the principals have asserted Fifth amendment rights, Trustee must rely on third parties and documents provided either voluntarily  or through Rule 2004 exams. This process was made more difficult than in other cases due to the chaotic state of the Debtor's records and the informal methods used in conducting the jewelry business in general through "memos." Although the Trustee could conceivably depose each vendor who did business with the Debtor and every identified recipient of a payment from the Debtor's accounts, this would be a lengthy and expensive project with no clear result to be undertaken for a clearly identified body of creditors.  Assuming Mr. Cohen is correct that there are creditors holding claims that would be allowed in the end, but having no assets other than litigation claims, there is

no assurance there would be any recoveries, and the process would require an even more expensive effort than has already been incurred. It is well and fine for the Petitioning Creditors, whose fees are being paid currently, one assumes, to be more than happy to foist that effort on the backs of the professionals employed by the Trustee, while at the same time "piggy-backing" on the discovery being conducted by the Trustee (in their own demands for production of documents from the Trustee) for their own purposes.

The Court should note that the settlement is narrowly focused and the Rechnitzes are <u>not</u> receiving any releases. The Rechnitezes do not gain any personal advantage from the settlement. Trustee has accepted the proposed settlement in the exercise of his business judgment, which is given much deference, and there is no sound factual reason in the Opposition suggesting he has made an error and no legal authority cited suggesting the Court should overrule the Trustee's judgment.

The request for an extension of time for discovery should be denied. A continuance of the hearing on this Motion will achieve nothing except provide the Petitioning Creditors another in a series of fishing expeditions that will cause more administrative expense. (Indeed, the Petitioning Creditors, through their subpoenas, have already obtained all the same documents that the Trustee has reviewed.) The Petitioning Creditors can take their own discovery in the other pending cases since their claims, whatever they are, are not affected by this settlement.

The fact that this case has not produced the result the Petitioning Creditors desired is no reason to cause the Trustee

and his professionals to continue the case, likely only resulting in making the current administrative expense hole even deeper.

In short, Petitioning Creditors fail to identify any reason why the Trustee's business judgment should not be respected. Dismissal of the case does not prejudice the Petitioning Creditors. It merely restores the parties to the status they had before attempting to have this Court and the Trustee and his professionals do their work for them. Mr. Leslie confirms in his Declaration that the impetus for this settlement came from the Rechnitzes, not the Trustee. When confronted with the offer and looking ahead at the prospects for the case, Trustee believed then and still believes that dismissing the case minimizes the risks to the estate while not compromising any rights potential creditors may have.

For all the reasons set forth in the Motion, The Trustee respectfully requests that Court grant the Motion, approve the settlement and dismiss this case.

Dated: June 7, 2021

Carolyn A. Dye, Attorney for Sam S. Leslie, Chapter 7 Trustee

**DECLARATION OF SAM S. LESLIE**

I, Sam S. Leslie, declare:

1. I am Sam S. Leslie, the Chapter 7 Trustee in the case of Jadelle Jewelry and Diamonds, LLC. Pursuant to the Notice of Appointment of Trustee and Fixing of Bond; Acceptance of Appointment of Interim Trustee, filed with the Court on June 18, 2020, I was duly appointed as Chapter 7 Trustee. I became the permanent trustee, and I continue to serve in that capacity. If called as a witness, I would competently testify as to the facts set forth herein. Terms defined in the Motion have the same meaning in this declaration.

2. I am providing this Declaration in support of the Reply to the Opposition to my Motion to approve the compromise reached with the Debtor and the Rechnitzes and for dismissal of this case for the reasons stated in the Motion and herein.

3. To clarify, the impeteus for the proposed dismissal came from the Rechnitzes, who for their own reasons, made a proposal to me through their attorney, David Zolkin. This Court well knows that the Rechnitzes at the outset resisted the involuntary petition. Recently when given the option of dismissal of this case, I had to consider it. After spending many hours of time and expenses analyzing the information available to me and my professionals with no clear results, I determined to accept the negotiated settlement terms based on the mounting administrative expenses, the many complications presented by the case, the lack of a known creditor body and the fact that the Petitioning Creditors' claims are still disputed. The settlement amount represents only a percentage of the administrative

expenses incurred to date. Thus, accepting the settlement represents a significant sacrifice on the part of my professionals.

4. I believe this Court knows from my history as a Chapter 7 Trustee that I take very seriously my obligations as a Trustee and as a fiduciary to the creditors. I do not easily give up on cases. But where there are so many unknowns, my best business judgment was to stop the proverbial bleeding represented by the mounting estate expenses where no significant prospects for recovery were in sight.

5. The Petitioning Creditors have had the benefit of the documents produced to me, giving them "free discovery." I do not believe that they need any additional time to conduct discovery into any issue that would bear on this settlement. I respectfully request that the settlement be approved and the case be dismissed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of June, 2021, at Los Angeles, California.

_____
Sam S. Leslie

# **DECLARATION OF JESSICA L. BAGDANOV**

I, Jessica L. Bagdanov, declare:

1. I am an attorney duly licensed to practice before all courts of the State of California and this Court. I am a partner in the firm Brutzkus Gubner, employed as special litigation counsel for Sam Leslie, Chapter 7 Trustee of this case. I have personal knowledge of the facts contained in this declaration, and if called as a witness, I would and could competently testify thereto under oath.

2. I make this declaration in support of the Trustee's reply in further support of the Trustee's motion to dismiss this case and approve compromise. All initial capitalized terms used but not defined herein have the same meanings ascribed to them in the Trustee's motion.

3. Brutzkus Gubner ("BG") was employed as special litigation counsel effective July 31, 2020 [Order approving employment, Bk. Doc. 156]. Thereafter, BG assisted the Trustee in investigating the prepetition financial affairs of the Debtor in an effort to potentially locate assets available for creditors. After his appointment, the Trustee obtained bank records of the Debtor from Wells Fargo Bank. Thereafter, BG obtained additional Debtor bank records from Signature Bank via Rule 2004 Exam in order to analyze transfers in and out of these accounts.

4. Among other things, the Trustee's investigation revealed that Levin Prado was a signatory on these accounts, and was the recipient of numerous cash withdrawals. In November 2020, the Court approved a stipulation for Rule 2004 exam of Levin Prado [Order, Bk. Doc. 188]. I conducted a Rule 2004 Exam of Levin Prado on or about November 17, 2020. The examination was conducted via Zoom, and Mr. Prado appeared, albeit on his cell phone video feed only. Prior to the examination, I had forwarded to his counsel a package of exhibits for reference during the examination, containing hundreds of pages of bank and other records to be addressed during the examination. Mr. Prado was not prepared to answer questions about the documents and stated that he had no ability to view the documents during the examination. After answering a few introductory questions, Mr. Prado quickly invoked the 5th Amendment privilege against self-incrimination and refused to answer even the simplest of questions about his work history. He refused to answer my questions regarding his invocation of the 5th Amendment as well, and so I was unable to determine at that time whether the invocation was proper in the first place. In light of

2649754

the fact that he has not in a position to even review documents, I continued the examination to allow my office to mail a hard copy of exhibits to Mr. Prado's counsel prior to the continued exam. Ultimately, I suspended the examination of Mr. Prado indefinitely due to the pending settlement at issue in the Trustee's motion so that the estate would not bear the additional administrative burden of a Rule 2004 examination where the examinee invoked the 5th Amendment on every question.

5.    In addition, in approximately Summer and Fall of 2020 CBIZ conducted an in-depth analysis of the bank transfers in and out of the Wells Fargo and Signature Bank accounts on behalf of the Trustee. It has been extremely difficult to conduct an investigation of this case without any meaningful testimony from insiders of the Debtor. However, based on CBIZ's investigation, in April 2021 my office sent demand letters to approximately 110 unique recipients of transfers from the Debtor within two years prior to the petition date. I have received written communication and/or telephone calls from approximately 40 recipients or their counsel, all of whom have identified various likely defenses to the Trustee's potential claims, including that many recipients provided value for the transfers they received from the Debtor in the form of wholesale jewelry or watches to be resold by the Debtor at retail.

6.    While many demand letters remain outstanding, I am not certain that commencing adversary proceedings on the facts contained in the demand letters (or even only a few of such letters) would result in meaningful recovery of assets for this estate. Because the Trustee only had bank records, without any explanation or information from an insider of the Debtor explaining its business, it has been difficult to identify worthwhile litigation.

7.    In the responses to the demand letters we sent to the potential target defendants, there was no clear pattern suggesting that funds were being improperly paid. What was clear wat that any recoveries would require a significant amount of professional fees to bring the claims to a conclusion as the recipients were adamant (and most were represented by counsel) they intended to defend against any claims. It also appears, at least preliminarily, that the Rechnitzes used assets of the Debtor for their own personal benefit, but it is unclear at this time whether litigating those issues would actually result in any money for the estate. Mr. Prado appeared to be a likely source of helpful information, yet he provided no assistance to the Trustee.

2649754

8.  Given the efforts the Trustee and his professionals have already expended in the investigation, I believe it would be prohibitively expensive to pursue litigation in this case, without the certainty of recovery on any front. It is difficult to see who the Trustee's administration would benefit, other than the remaining petitioning creditors who continue to litigate with the Debtor and its principals outside of this forum.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of June, 2021, at Woodland Hills, California.

_____
Jessica L. Bagdanov

2649754

# 1. PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 3435 Wilshire Blvd., Suite 990, Los Angeles, California 90010.

A true and correct copy of the foregoing document entitled Reply to Opposition to Chapter 7 Trustee's Motion for an Order Approving Dismissal of Chapter 7 Case and for Payment in Compromise and Settlement of Administrative Fees; Declarations of Sam S. Leslie and Jessica Bagdanov in Support Thereof will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On June 7, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| Baruch C. Cohen | bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com |
| Sam S. Leslie (TR) | sleslie@trusteeleslie.com, sleslie@iq7technology.com;trustee@trusteeleslie.com |
| Daniel A. Lev | dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com |
| Robert S. Marticello | Rmarticello@swelawfirm.com, gcruz@swelawfirm.com; lgarrett@swelawfirm.com; jchung@swelawfirm.com |
| Ronald N. Richards | ron@ronaldrichards.com, morani@ronaldrichards.com, justin@ronaldrichards.com |
| Neal Salisian | ECF@salisianlee.com |
| Michael Simon | msimon@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com |
| United States Trustee (LA) | ustpregion16.la.ecf@usdoj.gov |

☐ Service information continued on attached page

**2.    SERVED BY UNITED STATES MAIL:** On June 7, 2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

United States Bankruptcy Court
The Honorable Barry Russell
United States Bankruptcy Judge
255 East Temple Street
Suite 1660
Los Angeles, CA 90012

Jadelle Jewelry and Diamonds LLC
9454 Wilshire Blvd.
Penthouse 01
Beverly Hills, CA 90212-2931

☐ Service information continued on attached page

**3.    SERVED BY PERSONAL DELIVERY - N/A.** Pursuant to Fed.R.Civ.P. 5 and/or controlling LBR, on _____, I arranged for service on the following person as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: June 7, 2021

Shawn Sterrett

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                     F 9013-3.1. PROOF OF SERVICE